MICHAEL W. BIEN – 096891
GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
SARAH P. ALEXANDER – 291080
ROSEN BIEN
GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California  94104-1823
Telephone:   (415) 433-6830
Facsimile:    (415) 433-7104
Email:        mbien@rbgg.com
              ggrunfeld@rbgg.com
              vswearingen@rbgg.com
              mfreedman@rbgg.com
              spalexander@rbgg.com

JAMES EGAR – 065702
Public Defender
DONALD E. LANDIS, JR. – 149006
Assistant Public Defender
OFFICE OF THE PUBLIC DEFENDER
COUNTY OF MONTEREY
111 West Alisal Street
Salinas, California  93901-2644
Telephone:   (831) 755-5806
Facsimile:    (831) 755-5873
Email:        EgarJS@co.monterey.ca.us
              LandisDE@co.monterey.ca.us

ALAN SCHLOSSER – 049957
MICAELA DAVIS – 282195
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:   (415) 621-2493
Facsimile:    (415) 255-8437
Email:        aschlosser@aclunc.org
              mdavis@aclunc.org

ERIC BALABAN*
CARL TAKEI*
ACLU NATIONAL PRISON PROJECT
915 15th Street N.W., 7th Floor
Washington, D.C.  20005-2302
Telephone:   (202) 393-4930
Facsimile:    (202) 393-4931
Email:        ebalaban@npp-aclu.org
              ctakei@npp-aclu.org

*Admitted *Pro Hac Vice*

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. CV 13 2354 PSG<br><br>**DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Judge:  Hon. Paul S. Grewal<br>Date:   June 3, 2014<br>Time:   10:00 A.M.<br>Crtrm.:  5, 4th Floor<br><br>Trial Date:     None Set |

[1150898-2]

DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1    I, Gay Crosthwait Grunfeld, declare:

2    1.    I am an attorney admitted to practice law in California, a member of the bar

3  of this Court, and a partner in the law firm of Rosen Bien Galvan & Grunfeld LLP

4  ("RBGG"), counsel of record for Plaintiffs.  I have personal knowledge of the matters set

5  forth herein, and if called as a witness I could competently so testify.  I make this

6  declaration in support of Plaintiffs' Motion for Class Certification.

7  **I.    Plaintiffs' Counsel Extensively Investigated the Conditions in Monterey
        County Jail Prior to Filing this Action**

8

9    2.    Plaintiffs' counsel began investigating the conditions in Monterey County

10  Jail (the "Jail") in early 2012.  That year, James Egar, the Public Defender for the County

11  of Monterey, contacted my firm to complain of serious and life-threatening problems his

12  clients were experiencing when incarcerated in the Jail.  Since mid-2012, attorneys and

13  other staff from RBGG, and the Public Defender's Office and, more recently, the

14  American Civil Liberties Union Foundation of Northern California ("ACLU of Northern

15  California"), and the American Civil Liberties Union – National Prison Project

16  ("ACLU-NPP") have, among other investigative activities, (1) conducted more than one

17  hundred interviews of former and current prisoners in the Jail; (2) reviewed tens of

18  thousands of pages of medical and custody records for current and former prisoners in the

19  Jail; (3) reviewed documents produced by Monterey County in response to three requests

20  for information pursuant to the California Public Records Act; and (4) reviewed hundreds

21  of Sheriff's Office reports of incidents that occurred in the Jail.

22    3.    On May 23, 2013, five prisoners in the Jail filed the instant lawsuit against

23  Defendants the County of Monterey (the "County" or "Monterey County"), the Monterey

24  County Sheriff's Office ("Sheriff's Office"), and California Forensic Medical Group, Inc.

25  ("CFMG" and, collectively, "Defendants").  *See* Compl., Dkt. No. 1.  The complaint

26  alleged four primary claims under federal and California law: (1) that Defendants violate

27  the United States and California constitutions through their failure to keep prisoners safe

28  from violence from other prisoners in the Jail; (2) that Defendants violate the United States

1   and California constitutions through their failure to provide adequate medical care to

2   prisoners in the Jail; (3) that Defendants violate the United States and California

3   constitutions through their failure to provide adequate mental health care to prisoners in

4   the Jail; and (4) that Defendants violate federal and California disability rights laws by

5   failing to provide reasonable accommodations and discriminating against prisoners with

6   disabilities in the Jail.

7           4.      Plaintiffs filed the First Amended Complaint on October 31, 2013.  Dkt.

8   No. 16.  Seven new plaintiffs joined the lawsuit in the First Amended Complaint.

9   Plaintiffs filed the Second Amended Complaint on April 11, 2014, adding ten additional

10  plaintiffs to the lawsuit.  Dkt. No. 41.

11  **II.     The Parties Agreed Upon Four Neutral Experts to Evaluate Plaintiffs'**
          **Principal Allegations of Unconstitutional and Illegal Conditions at the Jail**
12

13          5.      On July 29, 2013, before any of the Defendants had filed an answer or other

14  responsive pleading, the Court entered a stipulated order staying the action until January 1,

15  2014.  *See* Dkt. No. 11.  The purpose of the stay was to permit the parties time to

16  "(1) engage in a process of mutually agreeing to experts who will review and analyze the

17  conditions at the Monterey County Jail and issue reports, and (2) to engage in settlement

18  negotiations aimed at achieving mutually agreeable relief."  *See* Dkt. No. 9, at 1.

19          6.      At the outset of the stay, the parties agreed on four neutral experts—one for

20  each of the primary claims in the Complaint—to assess the allegations of Plaintiffs'

21  Complaint.

22          7.      The parties agreed to have Michael Hackett, a correctional security expert,

23  evaluate "whether Defendants adequately protect prisoners from injury and violence in the

24  Jail, including but not limited to, whether Defendants have adequate staffing to prevent

25  violence, actively manage the population to reduce crowding, properly train and supervise

26  the conduct of custody staff, maintain a physical structure that is safe and adequate for

27  monitoring prisoner safety, have clear and adequate policies and procedures with respect to

28  housing, classification, and use of force, have an adequate classification and housing

DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1    assignment system, and what additional steps, policies, and/or procedures, if any,

2    Defendants should implement to address issues of violence in the Jail."  Attached hereto as

3    **Exhibit A** is a true and correct copy of the contract between the County and Mr. Hackett,

4    describing the scope of his assignment at page 10.  This contract was signed by

5    Defendants' counsel and Mr. Hackett on August 23, 2013.

6         8.    The parties agreed to have Dr. Michael Puisis, D.O., an expert in correctional

7    medical services, evaluate "the adequacy of the medical care being provided to inmates at

8    the Monterey County Jail," including "whether Defendants provide medically necessary

9    treatments in a timely manner, provide a sufficient number of qualified health care

10   professionals, properly train and supervise the conduct of health care staff, provide

11   sufficient facilities for medical care, have created an adequate screening and intake process

12   to identify and treat medical care issues faced by newly arriving prisoners, have a reliable

13   and timely manner for alerting health care staff of prisoners' medical needs, maintain

14   adequate, accurate, and complete medical care records, make referrals to outside specialists

15   and hospitals when higher levels of care are needed, and provide appropriate medical care

16   follow-up."  Attached hereto as **Exhibit B** is a true and correct copy of an August 21, 2013

17   email from Peter Bertling, counsel for Defendant CFMG, to Dr. Puisis, setting forth the

18   scope of Dr. Puisis's work as a neutral expert.

19        9.    The parties agreed to have Dr. Richard Hayward, Ph.D., an expert in

20   correctional mental health care services, evaluate "whether Defendants' system for

21   providing mental health care in the jail is adequate, including, but not limited to, whether

22   Defendants provide medically necessary mental health care treatment in a timely manner,

23   provide a sufficient number of qualified mental health care professionals, properly train

24   and supervise the conduct of mental health care staff, provide sufficient facilities for

25   mental health care, have created an adequate screening and intake process to identify and

26   treat mental health care issues faced by newly-arriving prisoners, have a reliable and

27   timely manner for alerting mental health care staff of prisoners' mental health needs,

28   maintain adequate, accurate, and complete mental health care records, provide appropriate

[1150898-2]                                                        3                              CV 13 2354 PSG
─────────────────────────────────────────────────────────────
DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1  mental health care follow-up, administer psychotropic medications with appropriate

2  supervision and periodic evaluation, make referrals to outside specialists and hospitals

3  when higher levels of care are needed, and have clear and adequate policies and

4  procedures to identify, treat, track, and supervise prisoners at risk for suicide or harm to

5  themselves."  Attached hereto as **Exhibit C** is a true and correct copy of an August 21,

6  2013 email from Mr. Bertling to Dr. Hayward, describing Dr. Hayward's assignment as a

7  neutral expert.

8          10.     The parties agreed to appoint SZS Consulting, an organization with expertise

9  in evaluating compliance with disability rights laws, to determine "(1) whether the Jail

10  facilities comply with the standards for accessibility set forth in the ADA, 42 U.S.C.

11  § 12132, and its implementing regulations 29 C.F.R. § 1630, including the ADA

12  Accessibility Guidelines; (2) if not, what modifications are necessary to bring the facilities

13  into compliance with the standards; (3) whether Defendants have adequate policies and

14  procedures in place to identify and track prisoners with disabilities, provide an effective

15  grievance procedure to request disability accommodations, have adequate accommodations

16  for prisoners, have adequate policies and procedures to ensure prisoners with disabilities

17  are notified of emergencies, including alarms, fires, and earthquakes, and have exit

18  protocols, provide prisoners with disabilities with appropriate assistive devices, (giving

19  due consideration to inmate safety issues and the ability to use such devices as weapons),

20  have sufficient accessible housing to meet the needs of their population of prisoners with

21  disabilities, and offer programs and services that are reasonably available to prisoners with

22  disabilities; and (4) evaluate Defendants' policies and procedures to ensure compliance

23  with the ADA, the Rehabilitation Act, and California Government Code sections 11135 *et.*

24  *seq.*"  Attached hereto as **Exhibit D** is a true and correct copy of the fully executed

25  agreement between SZS Consulting and the County, describing the scope of service at

26  p. 10.  This contract was signed by Defendants' counsel on October 22, 2013, and by

27  Syroun Z. Sanossian on October 17, 2013.

28

1    11.    During the late-summer and early-fall of 2013, the four neutral experts

2  conducted their reviews.  Each of the experts conducted at least one site visit to the Jail.

3  The experts also evaluated a number of documents, including Defendants' policies and

4  procedures.

5    12.    Attached hereto as **Exhibit E** are true and correct copies of the Monterey

6  County Sheriff's Office, Custody Operations Bureau, Policies and Procedures, Sections

7  1100-1123, as produced by counsel for the County to Mr. Hackett, the security expert, and

8  to me.

9    13.    Attached hereto as **Exhibit F** is a true and correct copy of the Monterey

10  County Adult Detention Facility Inmate Information Booklet, as produced by counsel for

11  the County to Mr. Hackett and to me.

12    14.    Attached hereto as **Exhibit G** is a true and correct copy of CFMG's Policy

13  and Procedure Manual, Monterey County, Adult Detention Facility, as produced by

14  counsel for CFMG to Dr. Puisis and to me.

15    15.    Attached hereto as **Exhibit H** is CFMG's Monterey County Staffing Plan,

16  produced by counsel for CFMG to Dr. Puisis and to me.

17  **III.    The Neutral Experts Found Serious and Systemic Constitutional, ADA, and
        Rehabilitation Act Violations at the Jail**

18

19    16.    In November 2013, the security, medical, and ADA experts completed their

20  reports and produced them to the parties.

21    17.    Attached hereto as **Exhibit I** is a true and correct copy of the report produced

22  by Mr. Hackett, the security expert, dated November 30, 2013, entitled "Rule 26 Report."

23  I received the report attached to an email from Susan Blitch, counsel for the County and

24  the Sheriff's Office, on December 3, 2013.

25    18.    Attached hereto as **Exhibit J** is a true and correct copy of the report

26  produced by Dr. Puisis, the medical expert, dated November 29, 2013, entitled "Monterey

27  County Jail, Health Care Evaluation," which I received attached to an email from

28  Dr. Puisis on that same date.

[1150898-2]

DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

19.    Attached hereto as **Exhibit K** is a true and correct copy of the report produced by SZS Consulting, the experts in access for people with disabilities, dated November 30, 2013, entitled "ADA Assessment & Review: Monterey County Jail."  I received an email from SZS Consulting on December 4, 2013, providing instructions for accessing the report on SZS Consulting's secure ftp site.  A paralegal at my firm downloaded the report from SZS Consulting's website on December 5, 2013.

20.    Dr. Hayward, the mental health care expert, has not yet produced a final version of his report.  On December 9, 2013, Dr. Hayward sent an email, a true and correct copy of which is attached as **Exhibit L**, to me and other counsel in this case.  The email included as an attachment a draft of his report regarding mental health care services at the Jail.  Attached as **Exhibit M** is a true and correct copy of Dr. Hayward's draft report, entitled "DRAFT Review of Mental Health Services at the Monterey County Jail."  In his email, Dr. Hayward wrote "[p]lease review [my draft report] and respond with any requests for clarification or additional information.  I will respond to your requests prior to finalizing the report."

21.    On December 20, 2013, I sent a letter, a true and correct copy of which is attached hereto as **Exhibit N**, to Dr. Hayward, requesting clarification and additional information regarding his report.

22.    On January 17, 2014, Dr. Hayward sent an email to the parties, attaching a document, a true and correct copy of which is attached as **Exhibit O**, entitled "Initial Response to Feedback to Draft of Review of Mental Health Services at the Monterey County Jail."

23.    On January 21, 2014, Dr. Hayward participated in a telephone conference call with counsel for the parties to discuss his draft report, my letter, and his response to my letter.  On February 11, 2014, I sent a letter to Dr. Hayward to follow up on the January 21, 2014 conference call.  Attached hereto as **Exhibit P** is a true and correct copy of my letter.  In the letter, I requested that Dr. Hayward confirm areas of the mental health care services at the Jail that, during the conference call, he had represented he did not

[1150898-2]

1  review.  I also requested that he provide some additional detail regarding the information

2  upon which he relied to conduct his review of suicides at the Jail and the Jail's suicide

3  prevention program.  I have not received any response from Dr. Hayward to my February

4  11, 2014 letter.  Dr. Hayward has also not provided the parties with a final version of his

5  report.

6  **IV.    Defendants Have Repeatedly Admitted that the Jail Place Prisoners at Risk of
       Harm**

7

8          24.    Over the past few years, employees of Defendants have made numerous

9  public concessions of significant problems at the Jail, some of which are described below.

10         25.    Attached hereto as **Exhibit Q** is a true and correct copy of an article by Ryan

11  Masters that appeared in the Monterey County Weekly entitled "Hell Hole: The Monterey

12  County Jail is an overcrowded pit of violence and despair.  There is no plan to fix it," dated

13  October 26, 2006, and available at http://www.montereycountyweekly.com/news/

14  local_news/the-monterey-county-jail-is-an-overcrowded-pit-of-violence/article_65f77467-

15  346f-5bf7-9b9b-ca73b274d802.html.  Therein, one of the "demoralized and fatigued

16  deputies" interviewed by Mr. Masters describes the Jail as a "very, very hostile work

17  environment" with "increasingly violent" prisoners and construction reminiscent of the

18  "Winchester Mystery House."

19         26.    Attached hereto as **Exhibit R** is a true and correct copy of a press release

20  issued by Maia Carroll, the Communications Coordinator for the Monterey County

21  Administrative Office, entitled "Sheriff to Hold Open House to Showcase Jail Housing

22  Addition Project," and dated October 5, 2012.  Ms. Carroll writes:  "Overcrowding has

23  been a serious problem at the jail for many years, creating a dangerous situation for

24  inmates, jail staff and the community."

25         27.    Attached hereto as **Exhibit S** is a true and correct copy of an article by

26  Sunita Vijayan that appeared in The Salinas Californian entitled "Jail funds welcome,

27  more money sought," dated October 12, 2012, and which an attorney from my office

28  accessed by going to http://www.thecalifornian.com/article/20121012/NEWS01/

DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

[1150898-2]

1  310120027/Jail-funds-welcome-more-money-sought.  Therein, Sheriff Miller discussed

2  "the overcrowded nature of the current [Jail] facility."

3      28.    Attached hereto as **Exhibit T** is a true and correct copy of an article by

4  Sunita Vijayan that appeared in The Salinas Californian entitled "Monterey County Sheriff

5  supports realignment bill," dated February 5, 2013, and which a paralegal from my firm

6  downloaded at http://www.thecalifornian.com/apps/pbcs.dll/article?AID=2013301300056

7  on February 6, 2013.  Monterey County Sheriff Scott Miller discusses therein the

8  "uncomfortable…ratio of inmates" to custody officials in the overcrowded Jail.

9      29.    Attached hereto as **Exhibit U** is a true and correct copy of an article by Jim

10 Johnson that appeared in the Monterey County Herald entitled "Supervisors happy with

11 sheriff's handling of jail," and which is available at http://www.montereyherald.com/state/

12 ci_23040185/county-supervisors-happy-sheriffs-handling-jail.  Therein, Sheriff Miller and

13 a number of Monterey County Supervisors express concern that the Jail is "not equipped to

14 deal with the myriad of general and mental health issues associated with longer-term

15 stays," which have become more common after the passage of the State's Realignment

16 legislation in 2011.

17     30.    Attached hereto as **Exhibit V** is a true and correct copy an article by Julia

18 Reynolds that appeared in the Monterey County Herald entitled "Monterey County Public

19 Defender's Office sues county, Sheriff's Office over jail conditions," dated May 24, 2013,

20 and which is available at http://www.montereyherald.com/local/ci_23318410/monterey-

21 county-public-defenders-office-sues-county-sheriffs.  Sheriff Miller is interviewed by

22 Ms. Reynolds about the "exacerbated" need for "in-custody medical" care and the

23 "overcrowded" conditions in the Jail.

24     31.    Attached hereto as **Exhibit W** is a true and correct copy of an article by

25 Arvin Temkar that appeared in the Monterey County Weekly entitled "Monterey County

26 Closer to Jail Expansion, Amid Criticism," dated October 24, 2013, and available at

27 http://www.montereycountyweekly.com/news/local_news/monterey-county-closer-to-jail-

28 expansion-amid-criticism/article_c6456a92-3c35-11e3-bd74-001a4bcf6878.html.  Therein,

1   Sheriff Miller states:  "My responsibility is to provide suitable, safe housing for inmates,

2   and right now we lack adequate housing by any standards."

3         32.   Attached hereto as **Exhibit X** is a true and correct copy of a guest

4   commentary by Sheriff Miller that appeared in the Monterey County Herald entitled

5   "Monterey sheriff outlines upgrades to jail," posted to the website on January 29, 2014,

6   and which is available at http://www.montereyherald.com/Opinion/ci_25023066/

7   Monterey-sheriff-outlines-upgrades-to-jail.  In his commentary, Sheriff Miller discusses

8   "two recent deaths" in the context of the "chronically overcrowded" Jail, the "constant

9   concern" with "[d]eciding which inmates can be reasonably housed safely together," and

10  "increased strain on our medical and mental health services."

11        33.   Attached hereto as **Exhibit Y** is a true and correct printout from a page from

12  the website for Monterey County entitled "Monterey County Jail Housing Addition Grant

13  ID # A-19-12," which is available at http://www.co.monterey.ca.us/jailexpansion/pdfs/

14  Jail_Housing_Addition_Fact_Sheet_d1.pdf and which an attorney from my office visited

15  most recently on April 18, 2014.  This statement discusses the "overcrowding" that "puts

16  officers, staff, inmates and the public at risk."  The statement also mentions the "indirect

17  supervision," "[i]neffective separation of potentially dangerous inmates," and "labyrinth-

18  like manner of jail additions."

19        34.   Attached hereto as **Exhibit Z** are true and correct copies of 55 applications

20  made by the Sheriff's Office to the Superior Court of California, County of Monterey,

21  pursuant to California Penal Code section 4024.1 between December 2006 and October

22  2012.  These applications were produced to Plaintiff's Counsel on November 1, 2013, in

23  response to Plaintiffs' counsel's October 2, 2013 request.  I am informed and believe that

24  Defendants continue to regularly file Section 4024.1 applications with the Superior Court.

25  However, requests by Plaintiffs' counsel to obtain more recent records have thus far been

26  unsuccessful.

27

28

DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

**V.      Plaintiffs' Counsel Have Obtained Additional Documents Supporting Class Certification**

35.      Attached hereto as **Exhibit AA** is a true and correct copy of the average daily population in the Jail for 2010-2013.  These charts were produced by the County on January 14, 2014, in response to a California Public Records Act request made by Gary Karnes, a member of the National Association for the Advancement of Colored People ("NAACP").  Mr. Karnes sent the County's response to the request to co-counsel at the ACLU of Northern California, who in turn provided me with the information and documents.

36.      Attached hereto as **Exhibit BB** are true and correct copies of Monterey County Sheriff's Office Custody Operations Bureau Inmate Daily Count Sheets from January 1, 2014, to March 10, 2014, excluding February 22, 2014.  The County produced these documents to Plaintiffs' counsel on March 20, 2014, as part of its response to a March 10, 2014 California Public Records Act request by Plaintiffs' counsel for "[a]ny and all writings reflecting the Average Daily Population for Monterey County Jail from January 1, 2012 to the present."

37.      Attached hereto as **Exhibit CC** are true and correct copies of documents related to many of the deaths that have occurred at the Jail since 2010.  The County produced these documents on March 20, 2014, in response to a March 10, 2014 California Public Records Act request by Plaintiffs' counsel for "[a]ny and all writings … related to any deaths of prisoners while in the custody of Monterey County Jail since January 1, 2010 …."  I am informed and believe that David Stevens died on January 20, 2014.  The County produced no documents related to his death.

38.      Attached hereto as **Exhibit DD** are true and correct copies of documents related to suicides that have occurred at the Jail since 2010.  The County produced these documents on March 20, 2014, in response to a March 10, 2014 California Public Records Act request by Plaintiffs' counsel for "[a]ny and all writings … related to suicides committed in Monterey County Jail since January 1, 2010 …."  In response to this request,

DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

[1150898-2]

1    the County initially did not provide any information related to an incident that occurred on

2    or around May 4, 2013, whereby a prisoner attempted suicide and died a few days later at a

3    hospital in San Jose.  Attached hereto as **Exhibit EE** are true and correct copies of

4    documents related to this suicide, which were produced by the County in response to

5    Plaintiffs' counsel's follow-up request dated April 4, 2014.

6         39.    On February 9, 2013, the County produced a report, entitled "County of

7    Monterey, Office of the Sheriff, Needs Assessment," written by TRG Consulting and dated

8    June 19, 2007, in response to a November 30, 2012 California Public Records Act request

9    by Plaintiffs' counsel.  A true and correct copy of this Report was attached as Exhibit A to

10   Plaintiffs' Second Amended Complaint.  *See* Dkt. No. 41.

11        40.    Attached hereto as **Exhibit FF** is a true and correct copy of minutes from a

12   June 10, 2007 meeting of the Monterey County Board of Supervisors, in which the Board

13   of Supervisors approved legislation to "accept the Jail Facility Needs Assessment report."

14   An attorney from my office last accessed a copy of this minute item at

15   https://monterey.legistar.com/LegislationDetail.aspx?ID=1335131&GUID=0B8F9961-

16   FA46-4416-9253-2543FA6E573F&Options=ID|Text|

17   &Search=%22Accept+the+Jail+Facility+Needs+Assessment+report%22 on April 20,

18   2014.

19        41.    Plaintiffs' counsel obtained a copy of a more recent report written by TRG

20   Consulting, entitled "County of Monterey Office of the Sheriff, Jail Needs Assessment,"

21   and dated December 30, 2011.  An attorney in my office last accessed this report at

22   http://www.ebidboard.com/docs/1212/030036/NeedsAssessment-JailHousingAddition.pdf

23   in May 2013.  A true and correct copy of this Report was attached as Exhibit B to

24   Plaintiffs' Second Amended Complaint.  *See* Dkt. No. 41.

25        42.    Attached hereto as **Exhibit GG** is a true and correct copy of a page from the

26   website of Defendant CFMG, entitled "Current Contracts," which is available at

27   http://cfmg.com/locations/current-contracts/ and indicates that CFMG has been providing

28

DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1  health care to prisoners at the Monterey County Jail since January 1984.  An attorney from

2  my office last visited this web address on April 17, 2014.

3       43.    Attached hereto as **Exhibit HH** is a true and correct copy of the contract

4  between the County and CFMG for CFMG to provide medical, mental health, and dental

5  care to prisoners at the Jail from April 1, 2012 to June 30, 2015, entitled "Agreement

6  Between County of Monterey and California Forensic Medical Group for Inmate

7  Healthcare Services for Adult and Juvenile Detention Facilities."  The County produced

8  the contract to Plaintiffs' counsel on February 9, 2013, in response to a November 30,

9  2012 California Public Records Act request by Plaintiffs' counsel.

10      44.    Attached hereto as **Exhibit II** is a true and correct copy of a report written by

11  Matthew W. Brault for the United States Census Bureau, entitled "Americans with

12  Disabilities: 2010" and dated July 2012.  This report is available at

13  http://www.census.gov/prod/2012pubs/p70-131.pdf.

14  **VI.  Incident Reports Provided by the County Show Sustained and Unacceptable**

15      **Levels of Violence in the Jail Continuing to Date**

16      45.    In September 2012, staff in the Sheriff's Department produced 158

17  Crime/Incident Reports ("First Set of Incident Reports") to James Egar, the Monterey

18  County Public Defender.  These Incident Reports document incidents of inmate violence at

19  the Jail between January 16, 2011 and September 1, 2012.  In turn, Mr. Egar provided the

20  complete First Set of Incident Reports to an attorney in my office on September 27, 2012.

21      46.    A review of the First Set of Incident Reports show that the Jail's regular

22  practice is to issue an Incident Report following violent interactions between inmates.  As

23  evidenced by a comparison of the incident time and the report time, Jail staff generally

24  completed Incident Reports within hours, if not minutes, of the underlying incident.  The

25  Incident Reports include the name of the person who prepared the report, the preparer's

26  signature, and the signature of the preparer's supervisor.   The Incident Reports were

27  completed by Jail deputies who responded to the violent incidents and/or had knowledge

28  of the incident.  All Incident Reports include Monterey County Sheriff's Department

DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1    identifying marks, pre-printed form spaces for entering information about the incident, and

2    a synopsis and narrative of the incident details.

3         47.    Each Incident Report in the First Set of Incident Reports is multiple pages in

4    length.  Taken together, the 158 Incident Reports are so voluminous that they cannot be

5    conveniently examined by the Court.  A paralegal of my law firm working under my

6    supervision, Doris Tseng, summarized the contents of the Incident Reports to make them

7    more accessible.  Ms. Tseng's summary of the Incident Reports shows that there were

8    more than 150 separate incidents of violence between prisoners in the twenty-month span

9    between January 2011 and August 2012.  This frequency averages to approximately one

10   violent incident every four days.  In more than 100 of these incidents, at least one prisoner

11   required medical treatment.  In at least 65 of these incidents, the violence between the

12   prisoners occurred outside of the observation of Jail staff.  In at least 38 incidents, a

13   prisoner was attacked by perpetrators he or she was unable to identify.  Violent incidents

14   occurred in almost every space where inmates were held, and were reported in 26 out of 29

15   housing units.  Over 20 incidents involved women prisoners at the Jail.

16        48.    Incident Reports for a more recent period were produced to Plaintiffs'

17   counsel in response to a Public Records Act request dated March 10, 2014 ("Second Set of

18   Incident Reports").  The Second Set of Incident Reports, which spans 2,826 pages and

19   covers the period September 1, 2012, to March 14, 2014, confirms that violent incidents

20   continue to plague the Jail.  These are also so voluminous that they cannot be attached to

21   this declaration for the Court's review.  A summary review of this Second Set of Incident

22   Reports by my associate, Van Swearingen, establishes that there were at least eleven

23   suicide attempts by Jail prisoners during this period.  Moreover, in February 2014, the

24   most recent full month for which Incident Reports are available, there were at least

25   seventeen incidents of violence among Jail prisoners.  This frequency averages to more

26   than one violent incident every other day.  Attached hereto as **Exhibit JJ** are true and

27   correct copies of seventeen Incident Reports dated February 1, 2014, to February 28, 2014,

28   illustrating serious incidents of violence at the Jail, and eleven Incident Reports for the

DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

[1150898-2]

1  period September 1, 2012, to March 14, 2014, describing suicide attempts during that time

2  period.  For example, on February 6, 2014, a prisoner approached a Jail officer in F-Pod

3  asking to "get the [expletive] out of here" after he had been attacked by as many as ten

4  other prisoners.  *See id*. at Case No. 14-0807.  Conditions also remain extremely dangerous

5  in the women's facility.  For example, on February 26, 2014, a female prisoner in R-Pod

6  (one of "two lockdown pods in the women's section") unlocked her own cell door, walked

7  out of her cell, assaulted another female prisoner, then ran "back up to her room and

8  lock[ed] herself back in her cell."  *See id*. at Case No. 01287-14.

9  **VII.  Class Counsel Meet the Requirements of Rule 23(a)(4) and (g)(1) and (4)**

10       49.     The ten attorneys from a private law firm, a government agency, and two

11  non-profit organizations working on this case on behalf of the named plaintiffs and the

12  putative class and subclass bring to bear an extraordinary amount of experience and

13  expertise in prisoners' rights and class action litigation.

14       **A.     Rosen Bien Galvan & Grunfeld LLP**

15       50.     I am a partner at Rosen Bien Galvan & Grunfeld LLP ("RBGG").  I

16  graduated from Columbia Law School in 1984 as a Harlan Fiske Stone Scholar and

17  Articles Editor of the *Columbia Law Review*, after which I clerked for the Honorable Jack

18  B. Weinstein of the United States District Court for the Eastern District of New York.  I

19  was admitted to the California bar in 1985.  I currently serve as one of the lead counsel in

20  *Armstrong v. Brown* (N.D. Cal. No. C 94-2307 CW), a class action against the California

21  Department of Corrections and Rehabilitation ("CDCR") on behalf of more than 10,000

22  CDCR prisoners and parolees with mobility, hearing, vision, learning, kidney and

23  developmental disabilities, and *Ramirez et al. v. Ghilotti Bros., Inc.* (N.D. Cal. No. 3:12-

24  cv-04590-CRB), a class action on behalf of workers denied pay for all hours worked and

25  meal and rest breaks.  I previously served as lead counsel in *L.H. v. Brown* (E.D. Cal. No.

26  CIV. S-06-2042 LKK/GGH), a due process and American with Disabilities Act ("ADA")

27  class action on behalf of juvenile parolees, and recently served as local counsel for

28  plaintiffs in the consumer class action *Ferrington v. McAfee, Inc.* (N.D. Cal. No. 5:10-cv-

14

1  01455-HRL).  In 2013, I was named one of the Top 100 SuperLawyers in Northern

2  California and one of the *Daily Journal*'s Top 100 Women Lawyers in California, and

3  received a CLAY Award.

4       51.    My partner and co-lead counsel Michael Bien graduated from Northwestern

5  University School of Law in 1980.  He then joined the law firm of Brobeck, Phleger &

6  Harrison, where he was elected to partnership in 1987.  In December 1990, he formed the

7  law firm, Rosen, Bien & Asaro (which became Rosen, Bien, Galvan & Grunfeld in 2012),

8  where Mr. Bien is now managing partner.  Mr. Bien has been lead or co-lead counsel in

9  eight major cases representing a prisoner or classes of prisoners in civil rights actions,

10  including *Brown v. Plata*, 131 S. Ct. 1910, 179 L. Ed. 2d 969 (2011).  In each of these

11  cases, he has represented prisoners or classes of prisoners with special needs or

12  vulnerabilities: mental illness, mental retardation, mobility, vision, hearing, learning and

13  developmental disabilities, and victims of sexual assaults.  Mr. Bien has received

14  numerous awards and instances of peer recognition for his litigation work, including but

15  not limited to, Martindale Hubble A-V rating, repeated selection for the Northern

16  California "Super Lawyer" list in Civil Rights, First Amendment, and Business Litigation,

17  and a 2010 CLAY Award.

18       52.    From its formation in 1990, RBGG has been a nationally recognized leader

19  in civil rights, employment, consumer, and antitrust class action litigation.  The firm has

20  specialized in large class action lawsuits seeking to improve conditions in correctional

21  systems.  For example, the firm is currently lead or co-lead class counsel in the following

22  class actions:  *Coleman v. Brown*, E.D. Cal. No. S 90-0520 LKK-JFM P, an Eighth

23  Amendment class action lawsuit against CDCR on behalf of a class of more than 25,000

24  prisoners with serious mental illness; *Hecker v. Brown*, E.D. Cal. No. 2:05-cv-2441 LKK

25  JFM P, an ADA and Rehabilitation Act putative class action lawsuit against CDCR on

26  behalf of all prisoners with mental illness; and *Armstrong*, N.D. Cal. No. C 94-2307 CW.

27

28

DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

53.     RBGG has the capacity thoroughly and vigorously to prosecute the claims in this case and properly represent the plaintiff class and intends to commit all necessary resources to do so.

**B.     American Civil Liberties Union Foundation of Northern California**

54.     The American Civil Liberties Union Foundation of Northern California, Inc. ("ACLU of Northern California") is the largest regional affiliate of the American Civil Liberties Union ("ACLU") and is dedicated to the defense and promotion of the guarantees of liberty and individual rights embodied in the federal and state constitutions.  The ACLU of Northern California has extensive expertise in class action and other impact litigation and has participated in numerous federal cases involving constitutional and statutory challenges to conditions and restrictions affecting incarcerated persons.

55.     Alan L. Schlosser has been an attorney with the ACLU of Northern California since 1976 and the Legal Director since 2000.  As an ACLU attorney, Mr. Schlosser has litigated numerous civil rights cases in federal and state courts, many of them on behalf of plaintiff classes.  Among those cases are the following:  *Kincaid v. City of Fresno*, 244 F.R.D. 597 (E.D. Cal. 2007) (class action successfully challenging City's policy of seizing and immediately destroying homeless people's property); *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131 (N.D. Cal 2000) (class action challenge to racial profiling in making vehicle stops); *Williams v. State of California*, No. 312236 (Cal. Super. Ct., San Francisco filed May 17, 2000) (statewide class action on behalf of all students in California public schools for failure to provide the basic educational necessities guaranteed by the California Constitution); *Lazenby v. City of Vallejo*, No. 97-01750 (E.D. Cal. filed Sept. 17, 1997) (class action challenge to law enforcement searches of homes of welfare recipients without individualized suspicion); *Joyce v. San Francisco*, 486 F. Supp. 843 (N.D. Cal. 1994) (class action challenge to city program that targeted homeless for violations of camping and sleeping ordinances); *Brown v. Jordan*, No. 92-3624 (N.D. Cal. filed Sept. 3, 1992) (class action for damages on behalf of 396 persons arrested during a protest of the Rodney King verdicts); *Int'l Molders Union v. U.S. Immigration and*

1    *Naturalization Serv.*, 643 F. Supp. 844 (N.D. Cal. 1986), *aff'd in part by* 799 F.2d 547 (9th

2    Cir. 1986) (class action challenge to INS practices of detaining, questioning, and arresting

3    workers during factory raids).

4             **C.**      **American Civil Liberties Union – National Prison Project**

5           56.      Formed as a project of the American Civil Liberties Union in 1972, the

6    ACLU-NPP has decades of experience in complex prisoner rights class action suits and

7    has represented prisoners in five cases before the U.S. Supreme Court.  Indeed, Courts

8    have repeatedly recognized the special expertise of NPP staff.  *See Plyler v. Evatt*, 902

9    F.2d 273, 278 (4th Cir. 1990); *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983);

10   *Knop v. Johnson*, 712 F. Supp. 571, 583 (W.D. Mich. 1989); *Lightfoot v. Walker*, 619 F.

11   Supp. 1481, 1487 (S.D. Ill. 1985), *aff'd*, 826 F.2d 516, 522 (7th Cir. 1987); *Ramos v.*

12   *Lamm*, 539 F. Supp. 730, 750 (D. Colo. 1982), *remanded*, 713 F.2d 546 (10th Cir. 1983).

13         57.      Eric Balaban received his J.D. from the University of Virginia School of

14   Law in 1993.  He has been an attorney with the ACLU-NPP since 1994, and senior staff

15   counsel since 2005.  Mr. Balaban has represented over 75,000 prisoners nationwide in

16   federal class action lawsuits challenging unconstitutional and unlawful conditions of

17   confinement.  Among other cases, Mr. Balaban was lead counsel or co-lead counsel in

18   *Graves v. Arpaio*, No. 77-479 (D. Ariz) (class action challenging inadequate health care

19   and hazardous conditions on behalf of pretrial detainees); *Carty v. DeJongh*, 144 F. Supp.

20   2d 395 (D.V.I. 2001) (class action challenging conditions for prisoners held at two U.S.

21   Virgin Islands jails); and *Carruthers v. Lamberti*, No. 76-6086 (S.D. Fla.) (challenge to

22   conditions at the Broward County, Fla. Jail).  He also coordinates the ACLU-NPP's

23   national advocacy campaigns to combat debtor's prisons and to reduce jail populations.

24   Mr. Balaban has published numerous articles on prisoners' rights, including with regard to

25   medical and mental health care, and prison policy, and has had many speaking

26   engagements on the same topics.

27

28

17                    CV 13 2354 PSG

DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

**D.     Monterey County Public Defender**

58.     James Egar, Public Defender for the County of Monterey, has set forth his and his office's qualifications to serve as class counsel in his separate declaration in support of Plaintiffs' Motion for Class Certification.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that this declaration is executed at San Francisco, California this 29th day of April, 2014.


*/s/ Gay Crosthwait Grunfeld*

Gay Crosthwait Grunfeld

CV 13 2354 PSG

DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION