MICHAEL W. BIEN – 096891
GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
SARAH P. ALEXANDER – 291080
ROSEN BIEN
GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California  94104-1823
Telephone:   (415) 433-6830
Facsimile:    (415) 433-7104
Email:        mbien@rbgg.com
              ggrunfeld@rbgg.com
              vswearingen@rbgg.com
              mfreedman@rbgg.com
              spalexander@rbgg.com

JAMES EGAR – 065702
Public Defender
DONALD E. LANDIS, JR. – 149006
Assistant Public Defender
OFFICE OF THE PUBLIC DEFENDER
COUNTY OF MONTEREY
111 West Alisal Street
Salinas, California  93901-2644
Telephone:   (831) 755-5806
Facsimile:    (831) 755-5873
Email:        EgarJS@co.monterey.ca.us
              LandisDE@co.monterey.ca.us

ALAN SCHLOSSER – 049957
MICAELA DAVIS – 282195
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:   (415) 621-2493
Facsimile:    (415) 255-8437
Email:        aschlosser@aclunc.org
              mdavis@aclunc.org

ERIC BALABAN*
CARL TAKEI*
ACLU NATIONAL PRISON PROJECT
915 15th Street N.W., 7th Floor
Washington, D.C.  20005-2302
Telephone:   (202) 393-4930
Facsimile:    (202) 393-4931
Email:        ebalaban@npp-aclu.org
              ctakei@npp-aclu.org

*Admitted *Pro Hac Vice*

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive,<br><br>        Defendants. | Case No. CV 13 2354 PSG<br><br>**DECLARATION OF ANGEL PEREZ IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**EXHIBITS FILED SEPARATELY UNDER SEAL**<br><br>Judge:  Hon. Paul S. Grewal<br>Date:    June 3, 2014<br>Time:   10:00 A.M.<br>Crtrm.: 5, 4th Floor<br><br>Trial Date:        None Set |

A.P.

1    I, Angel Perez, declare:

2    1.    I am a party in the above-entitled action. I have personal knowledge of the

3 matters set forth herein, and if called as a witness, I could and would competently so

4 testify. I make this declaration in support of Plaintiffs' Motion For Class Certification.

5    2.    I am currently a prisoner in Monterey County Jail (the "Jail"). I was most

6 recently booked into the Jail on December 30, 2012. I am a sentenced prisoner, serving a

7 jail term after having been convicted of a crime.

8    3.    I have a large tumor on my right foot that is potentially cancerous. The

9 tumor is approximately 5 centimeters by 3.5 centimeters and sticks out from my foot about

10 3 centimeters near the toes on the outer edge of my right foot. It is hard to the touch and

11 causes me a lot of pain. My condition is worsening—over the past 6 months it has grown

12 about a centimeter and begun to grow up my pinky toe. The pain has increased and it

13 makes it difficult for me to walk.

14    4.    The mass on my foot was first examined in 2008 by doctors in Bakersfield,

15 California when I was serving time at state prison at Tehachapi. Those doctors conducted

16 an MRI and an ultrasound biopsy, the results of which indicated that the mass on my foot

17 could be a sarcoma. It was recommended that I receive an excisional biopsy in order to get

18 a further diagnosis. Attached as **Exhibit A** is a true and correct copy of a page from my

19 Jail medical file containing my MRI results from June 25, 2008, which states that the soft

20 tissue mass "most likely represents a sarcoma or metastatic disease." Attached as

21 **Exhibit B** is a true and correct copy of a page from my Jail medical file containing a

22 diagnosis from the Bakersfield Pathology Medical Group on October 13, 2008, which

23 describes a "differential diagnosis of tenosynovial giant cell tumor, however cannot rule

24 out sarcoma," and states that the doctor would "recommend incisional or excisional biopsy

25 of lesion for further classification." I was in and out prison from 2008 to 2011 before I

26 ended up back here in the Jail at the end of 2012. I did not have a stable life on the outside

27 and was not taking good enough care of myself to seek medical attention, so I did not end

28 up receiving the follow-up procedure.

AP.

5.      When I was admitted to the Jail in December of 2012, the mass on my foot was slightly smaller than now, but still large and protruding from my foot. Despite the size of the mass, medical staff at the Jail never examined or asked me about the mass, even though I have been examined for other conditions during my time at the Jail including, for example, conditions on my left leg and foot.

6.      By October of 2013 the mass on my foot had grown larger and had begun to cause me severe pain. On October 17, 2013 I saw P.A. Whiting, a member of Jail medical staff, and explained my symptoms and told her about my potential cancer diagnosis. I felt that she was not taking my concerns seriously. She gave me the impression that it would take at least a few months before they would even see me again since my records were at the California Department of Corrections. I had also asked for a cane to help me walk, but she denied my request. Attached as **Exhibit C** is a true and correct copy of P.A. Whiting's Progress Notes documenting the October 17, 2013 examination and indicating that she denied my request for a cane. I was concerned that I was not going to receive proper medical care so I filed a grievance to try to get the issue addressed, a true and correct copy of which is attached as **Exhibit D**.

7.      On October 18, 2013 I was examined by Dr. Eliud Garcia, a doctor on Jail medical staff. I also informed him that my 2008 examination had indicated that the mass might be a sarcoma. Attached as **Exhibit E** is a true and correct copy of Dr. Garcia's Progress Notes showing that he was made aware of my condition, ordered that I was to receive a cane to assist with walking and to limit me putting full force on my foot, ordered an x-ray, ordered that I should get an orthopedic clinic evaluation, and noted that records from CDC-Tehachapi and Bakersfield Cancer Center had been requested.

8.      On October 22, 2013, I was sent to see Dr. Pompan, an orthopedic surgeon in the Specialty Clinics at Natividad Medical Center ("Natividad"). Dr. Pompan examined me and reviewed my records from the Bakersfield Pathology Medical Group. Dr. Pompan made a note that my records indicated that the mass could be a sarcoma and he recommended that I (1) receive an MRI and (2) be referred to a tertiary medical center

DECLARATION OF ANGEL PEREZ IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

("e.g. UCSF, Stanford, [UC] Davis") and seen by an expert in orthopedic oncology. That recommendation was acknowledged by Dr. Taylor Fithian and Dr. Garcia, doctors at the Jail. Attached as **Exhibit F** is a true and correct copy of a page from my Jail medical file showing Dr. Pompan's recommendations that I get an MRI and see an orthopedic oncologist, which is signed by Dr. Fithian and Dr. Garcia. Attached as **Exhibit G** is a true and correct copy of pages of my Natividad Outpatient Services Visit Record from my Jail medical file further detailing Dr. Pompan's assessment and recommendations. My attorneys requested my complete file from Natividad which included additional details from Dr. Pompan's assessment including that he concluded that there was nothing he could do for me and that instead I needed "the expertise of a tertiary center and an expert in orthopedic oncology," which would "be present in facilities like UCSF, Stanford or UC Davis." Attached as **Exhibit H** are true and correct copies of Dr. Pompan's evaluation and assessment received directly from Natividad.

9.     Over a week went by with no word on the appointment with the orthopedic oncologist and I was forced to file another sick slip and grievance requesting proper treatment. Attached as **Exhibit I** is a true and correct copy of the November 3, 2013 grievance from my Jail medical file which shows that the only response I got to my grievance was them telling me that I had an appointment scheduled to see a specialist, but that they could not tell me when the appointment was because of jail policy. As it turns out there was no appointment scheduled at that point with the type of specialist, an expert in orthopedic oncology, that had been recommended by Dr. Pompan. Nor had there been an appointment set up at one of the recommended outside hospitals. Not having any idea when I might get the necessary treatment for my potentially cancerous foot was very distressing. I understand that the Jail has policies about how much they can tell us about outside appointments, but I feel like at least I could have been given some information about what kind of specialist I would be seeing and a general timeframe. This would have kept me informed and also would have allowed me to keep my family informed about the status of my care as they have been very concerned.

10.     Instead of sending me to an expert in orthopedic oncology as was recommended, on November 18, 2013 medical staff at the Jail sent me to another orthopedic surgeon at Natividad, whose name I later found out was Dr. James Ushiba. Attached as **Exhibit J** is a true and correct copy of Dr. Ushiba's assessment from my Jail medical file indicating some possible diagnoses for my condition, including sarcoma. During the appointment, I insisted that I be seen by a cancer specialist as recommended by Dr. Pompan. Dr. Ushiba agreed, writing in his note "I am not a cancer specialist. Therefore a referral will be made to [sic] oncological surgeon." I was uncomfortable throughout this appointment with Dr. Ushiba because he refused to provide me with his name during the appointment.

11.     A whole month had passed from the time Dr. Pompan first recommended I see an expert in orthopedic oncology. The only follow up treatment I had received was the appointment with Dr. Ushiba, who it turns out wasn't even the recommended type of specialist. I was very concerned that I wasn't getting the proper treatment, so on November 18, 2013 I filed a grievance to seek the proper medical help and to see an expert in orthopedic oncology as had been recommended. I did not receive a response to the grievance for over 3 weeks. When I did receive a response all it said was that I had a "follow-up appointment with the specialist," but that they could not tell me when the appointment had been scheduled. Attached as **Exhibit K** is a true and correct copy of my grievance of November 18, 2013 and the response of December 11, 2013. As it turns out there was no appointment scheduled at that point with the type of specialist, an expert in orthopedic oncology, that had been recommended by Dr. Pompan, even though the grievance response stated that I had an appointment to see the specialist. Nor had there been an appointment set up at one of the recommended outside hospitals.

12.     Nearly one additional month passed without me receiving medical attention, at which point I was sent to see an oncologist, Dr. Peyman Haghighat, at Natividad. On December 13, 2013 Dr. Haghighat examined me, once again noted the possibility of cancer and also concluded that I "would benefit from evaluation by an oncological surgeon,

1    particularly orthopedic oncological surgeon." He also recommended I "be referred to

2    Stanford University or UCSF for further evaluation and care." Dr. Haghighat further

3    ordered a CT scan of my chest, abdomen and pelvis which was completed on December

4    17, 2013 and which showed "[m]ultiple mildly enlarged left para-aortic lymph nodes,"

5    with a differential diagnosis that included "reactive, metastatic disease, lymphoma,

6    Castleman disease." Attached as **Exhibit L** are true and correct copies of Dr. Haghighat's

7    evaluations and assessments received from Natividad. Attached as **Exhibit M** is a true and

8    correct copy of a page from my Jail medical file showing Dr. Haghighat's conclusion that I

9    needed an evaluation at Stanford or UCSF with an oncologic surgeon, which is also signed

10   by Dr. Fithian and Dr. Garcia. Attached as **Exhibit N** is a true and correct copy of the

11   report from the CT Scan on December 17, 2013.

12         13.    On December 20, 2013 I was sent to an oncologist at Natividad, Dr. Laura

13   Stampleman. Dr. Stampleman expressed extreme concern at my condition and told me I

14   really needed to get it taken care of. She even said that if I didn't get a diagnosis and

15   treatment soon, it was possible that I might have to have all or part of my foot amputated.

16   She said she wanted to refer me to the person she thought best-suited to treat this condition

17   and referred me to a specific orthopedic oncologic surgeon at Stanford. Attached as

18   **Exhibit O** is a true and correct copy of a page from my Jail medical file consisting of a

19   CFMG Medical Referral Form, signed by Dr. Stampleman, referring me to Dr. David

20   Mohler at Stanford Orthopedic Surgical Oncology. The same page of my medical file

21   shows that Dr. Fithian and Dr. Garcia were both aware of this referral as they signed the

22   same referral page. Also attached as **Exhibit P** is a true and correct copy of a page of

23   Doctors Orders from my Jail medical file indicating that I was to get an appointment with

24   Dr. Mohler per Dr. Stampleman's instructions. Attached as **Exhibit Q** are true and correct

25   copies of Dr. Stampleman's evaluation and assessment received from Natividad showing

26   that Dr. Stampleman reviewed the CT scan results, made the plan to refer me to Dr. David

27   Mohler of the orthopedic oncology service at Stanford, and stated that I was follow up at

28

1  her clinic in one week and that they would make sure that I got the referral for the

2  diagnosis and surgical treatment.

3       14.    It is now been nearly 6 months since Dr. Pompan ordered that I see an expert

4  in orthopedic surgical oncology and I still have not seen such a specialist.  Despite having

5  the name of a referral from Dr. Stampleman and having been told by numerous physicians

6  that I needed to have an evaluation with an expert in orthopedic oncology, I still have not

7  seen an expert.

8       15.    I have made numerous requests to see the expert and have made numerous

9  attempts to get an answer as to when I will be getting an appointment.  Attached as

10  **Exhibit R** is a true and correct copy of the grievance I filed on February 26, 2014

11  requesting to see the specialist and asking for information.  After I filed the grievance,

12  medical staff informed me verbally, near the beginning of March 2014, that the specialist

13  would not accept me and that the Jail was looking for alternatives.  The nurse on staff also

14  got very angry with me for using the term malignant in my grievance.  She told me if the

15  tumor was malignant I'd be dead already and ordered me never to use that word in a

16  grievance.  I do not think it is right for the nurse to get angry with me just because I am

17  trying to understand my condition and trying to get any information about whether I will

18  eventually be able to see a specialist.  This does not encourage trust between me and

19  medical staff.  When I received the written response to my grievance on March 5, 2014 it

20  stated that they told me they had been working on my medical case since the end of

21  December and that I had now been made aware that medical staff had made contact with

22  Stanford Medical Center, UCSF and Natividad.  *See* **Exhibit R.**

23       16.    I filed an additional grievance on March 12, 2014 listing out my same

24  concerns about not receiving medical care and about not receiving proper medication for

25  pain management.  Attached as **Exhibit S** is a true and correct copy of my March 12, 2014

26  grievance and the March 21 response from the Jail.  In the March 21 response I was

27  informed that the Stanford doctor had refused to see me and that medical staff were

28

1   working to find another physician to treat me.  I was also notified that I would be sent to a

2   physician at Natividad to evaluate other pain control options.

3       17.    It is my understanding that a sarcoma can kill a person.  And as I explained

4   earlier, I was told by Dr. Stampleman back in December that if I didn't receive appropriate

5   treatment, I could be at risk of losing my foot.  I am incredibly frustrated and scared that I

6   have this potentially serious condition, but have absolutely no ability to obtain a diagnosis

7   or treatment without permission from the Jail.  I've filed a number of grievances and have

8   constantly complained to medical and custody staff.  All of the outside doctors I have seen

9   have recommended that I see the same type of specialist.  As far as I can tell, there's

10  nothing more I can do to get the treatment that has been ordered for me, but I still have not

11  received it.

12      18.    My attorneys recently received records from Natividad that included notes

13  documenting communications between Natividad staff and outside hospitals and between

14  Natividad staff and Jail medical staff about locating an expert.  The last note is from March

15  28, 2014 and indicates that Elaine of CFMG told Natividad staff that I had been accepted

16  at Santa Clara Valley Medical Center.  Attached as **Exhibit T** are true and correct copies

17  of notes received directly from Natividad documenting Natividad staff's communications

18  with outside hospitals and with Jail medical and CFMG staff.  In early April one of the

19  nurses at the Jail informed me that they had located an expert at Santa Clara Valley

20  Medical Center and that they were waiting for a call back from the medical center and that

21  if they didn't hear back from them that medical staff would call them again.  I have not

22  heard anything further from medical staff since then and have not yet seen the expert in

23  orthopedic oncology.

24      19.    I also had concerns that the Jail was trying to put off the treatment until I got

25  out of Jail.  My suspicion appears to be supported by an October 22, 2013 Progress Note

26  signed by Dr. Garcia, a true and correct copy of which is attached as **Exhibit U**.  Although

27  I'm not certain of every word in the note, as far as I can tell, it states that I was seen at

28  Natividad by an orthopedist who referred me to a tertiary facility for "orthopedic

1   oncology." Dr. Garcia then wrote "[w]ill discuss anticipated length of incarceration with

2   Cmmdr. Bass. Poss[ible] need for extended time out of facility." If, as the doctor at

3   Natividad believed, it was necessary for me to receive treatment, I do not understand why

4   Dr. Garcia would confer with custody staff at the Jail who are not medical professionals.

5   In addition, there have been a number of times that I have requested information from

6   nurses about when I will see the specialist and the nurses have responded by asking me

7   when I am getting out of the Jail anyways.

8       20.    Over the six months since I notified medical staff about the tumor, the mass

9   has grown. It now seems like it is growing in the direction of my pinky toe. The pain I

10   experience because of the growth has also become much more severe. I have shooting

11   pain in the ball of my foot and top of my foot and it continues to make it difficult to walk.

12   Back in December, Dr. Stampleman prescribed me Norco every 6 hours to help manage

13   my pain. *See* **Exhibit O**. Doctors Orders also indicate that I was supposed to stop

14   receiving Ultram and Naprosyn and instead begin receiving Vicodin, two times a day for

15   30 days, as of December 23, 2013. *See* **Exhibit P**. However, at least 3 weeks went by

16   after that order before I began receiving the Vicodin. ████████████

17   ████████████████████████████████████

18   ████████████████████.

19       21.    I put in sick call slips and eventually was transitioned to take the pain

20   medication 3 times a day. However, the pain increased and the low dose of pain killer I

21   was receiving was wearing off too quickly. I received the medication at 4:30am, 9:30am

22   and then 6pm, and was then without mediation for the next 10 hours over the night and

23   was in a lot of pain. I was also in a lot of pain during the day because the medication wore

24   off too quickly with the lower dose. I was in a lot of pain for most of the day, and had

25   stabbing, shooting pain in both the ball of my foot and on the top of my foot. The pain

26   occurred when I was walking as well as when I was sitting still. When the medication

27   wears off the pain is an 8 or 9 on a 10 point scale. I was receiving a 5/500 prescription of

28   the painkiller rather than a higher dose 10/325 prescription and I let the staff know that I

1  thought the higher dose would help me manage the pain better.  After making many

2  requests and filing a grievance I was recently transitioned to taking the higher 10/325 dose

3  of Norco three times a day.  This helps more than the lower dose, though I continue to

4  experience pain.

5        22.  There seem to be a lot of people in the Jail who are seriously mentally ill,

6  many of whom have very active symptoms of mental illness.  There have been times in the

7  past when I have been housed in the same unit as people with serious mental illness.  I

8  have seen such prisoners frequently start fights with other prisoners.  It seems to me that

9  housing prisoners with serious, untreated mental illness with other prisoners creates a lot of

10  problems in the Jail.

11        23.  The grievance process has not been effective for me to receive treatment or

12  meaningful responses to my requests for information concerning my condition.  For

13  instance my grievances filed on November 3 and November 18, 2013 requesting

14  information about when I would receive my treatment were answered only with short

15  responses stating that I had an appointment with a specialist, but that they could not tell me

16  when the appointment was scheduled.  *See* **Exhibits I** and **K**.  As it turns out, at neither of

17  these points that I was given these responses, November 6 and December 11, 2013

18  respectively, had I actually been scheduled with the type of specialist, an expert in

19  orthopedic oncology, that had been recommended by Dr. Pompan.  Nor had there been an

20  appointment set up at one of the recommended outside hospitals.

21        24.  In addition, my grievance of November 18, 2013 was not answered for 3

22  weeks.  Then when I filed a grievance on February 26, 2014 I received an initial angry

23  verbal response from the nurse for the way I had characterized my illness.

24        25.  The sick call process has not always been effective to receive treatment

25  either as it often takes 4 to 5 days to get seen, which is a lot to wait especially when you

26  are in severe pain.

27        26.  In addition, my medical file appears to be incomplete.  My attorneys

28  requested my entire medical file.  I reviewed all of the documents that were provided to

DECLARATION OF ANGEL PEREZ IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  my attorneys.  My file does not have copies of records from some of my appointments at
2  Natividad, such as full records from my appointments with Drs. Pompan, Stampleman and
3  Haghighat.  Since the Jail is responsible for helping me get the proper treatment for my
4  serious medical condition it seems important that they have all of the relevant records
5  about my evaluations by outside doctors in my file.  My medical file also does not contain
6  Medication Administration Records after September 23, 2013 even though I have received
7  medication since that date.  There may also be additional files missing of which I am not
8  currently aware.

9        27.    I agreed to be a named plaintiff in this case because I would like to represent
10  other prisoners who have had problems similar to what I have experienced while in
11  Monterey County Jail.  I want to help improve the medical care, mental health care, the
12  safety for prisoners, and the assistance available to prisoners with disabilities.  I have been
13  cooperating fully with my counsel and am responding to all requests for information to the
14  best of my ability and recollection, and will continue to do so in the future.  My lawyers
15  keep me updated on the progress of this case, and I will review all materials provided to
16  me and provide my input to the best of my ability.  When I have questions about the case, I
17  will ask the attorneys for help to understand everything to the best of my ability.

18        I declare under penalty of perjury under the laws of the United States and the State
19  of California that the foregoing is true and correct, and that this declaration is executed at
20  Salinas, California this _17_ day of April, 2014.

Angel Perez

21
22
23
24
25
26
27
28

[1122199-6]

DECLARATION OF ANGEL PEREZ IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# Exhibits A - U

# Filed Under Seal