MICHAEL W. BIEN – 096891
GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
SARAH P. ALEXANDER – 291080
ROSEN BIEN
GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California  94104-1823
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:    mbien@rbgg.com
          ggrunfeld@rbgg.com
          vswearingen@rbgg.com
          mfreedman@rbgg.com
          spalexander@rbgg.com

JAMES EGAR – 065702
Public Defender
DONALD E. LANDIS, JR. – 149006
Assistant Public Defender
OFFICE OF THE PUBLIC DEFENDER
COUNTY OF MONTEREY
111 West Alisal Street
Salinas, California  93901-2644
Telephone:    (831) 755-5806
Facsimile:    (831) 755-5873
Email:    EgarJS@co.monterey.ca.us
          LandisDE@co.monterey.ca.us

ALAN SCHLOSSER – 049957
MICAELA DAVIS – 282195
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:    (415) 621-2493
Facsimile:    (415) 255-8437
Email:    aschlosser@aclunc.org
          mdavis@aclunc.org

ERIC BALABAN*
CARL TAKEI*
ACLU NATIONAL PRISON PROJECT
915 15th Street N.W., 7th Floor
Washington, D.C.  20005-2302
Telephone:    (202) 393-4930
Facsimile:    (202) 393-4931
Email:    ebalaban@npp-aclu.org
          ctakei@npp-aclu.org

*Admitted *Pro Hac Vice*

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. CV 13 2354 PSG<br><br>**DECLARATION OF ROBERT YANCEY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**EXHIBITS FILED SEPARATELY UNDER SEAL**<br><br>Judge:   Hon. Paul S. Grewal<br>Date:    June 3, 2014<br>Time:    10:00 A.M.<br>Crtrm.:  5, 4th Floor<br><br>Trial Date:      None Set |

[1122213-1]

I, Robert Yancey, declare:

1.     I am a party in the above-entitled action. I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would competently so testify. I make this declaration in support of Plaintiffs' Motion For Class Certification.

2.     I have been a prisoner in the Monterey County Jail ("the Jail") on various occasions since 2001 both as a pre-trial detainee and a sentenced prisoner. Most recently, I was booked at the Jail on December 2, 2012, as a pretrial detainee, awaiting resolution of the charges against me. On or around May 16, 2013, I was sent to North Kern State Prison in Delano, California. I am currently incarcerated at Corcoran State Prison in Corcoran, California. I expect to return to Monterey County Jail in the future to testify about events in Monterey County and/or on alleged parole or probation violations.

3.     It is my understanding that I could be sent back to the Jail if I ever need to be present in court related to the criminal charges that resulted in me being sent to prison. I could also be sent back to the Jail if it was necessary for me to testify in this case about the problems I experienced in the Jail. In addition, I also will parole from prison at some point in the future. When I parole, I will be sent back to Monterey County, which is the county in which I was convicted and where I lived prior to my arrest. When I am on parole, I can be arrested and placed in the Jail simply for allegedly violating the terms and conditions of my parole, whether or not the alleged violation constitutes a violation of a criminal law. I am concerned that, if I am sent back to the Jail, I will experience problems similar to the problems I have experienced in the past.

4.     I have been completely deaf since birth. I also have a speech impairment that makes it impossible for me to be understood when speaking. My primary method of communication is American Sign Language. I can also use written notes but do not understand them very well. I am able to lip read a little bit, but not very well. I also have a hard time reading and writing English.

5.     Immediately prior to being booked at the Jail on December 2, 2012, I was treated in the Emergency Room of Natividad Medical Center ("NMC") for injuries

1

CV 13 2354 PSG

DECLARATION OF ROBERT YANCEY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1   resulting from a car accident ▮▮▮▮▮▮▮.  Attached as **Exhibit A** is a true and

2   correct copy of NMC Emergency Medicine Notes and a NMC Operative Report, both

3   dated December 2, 2012, from my Jail medical file.  These documents show that I suffered

4   fractures in my left tibia and my right arm, requiring emergency treatment including

5   sutures in my left ankle and a splint and cast on my right arm.

6       6.      Attached as **Exhibit B** and **Exhibit C** are true and correct copies of my

7   Intake Health Screening form dated December 2, 2012, from my Jail custody file, and my

8   Intake Triage Assessment dated December 2, 2012, from my Jail medical file.  These

9   documents show that the Jail staff was aware that I had a broken right wrist and lacerations

10  to my left ankle.  There is a box on the Intake Health Screening for staff to indicate if I had

11  a hearing disability, but it is not checked on my form.  Staff did indicate on my Intake

12  Triage Assessment that I had a hearing impairment.

13      7.      During the interviews with staff to complete the Intake Health Screening

14  form and the Intake Triage Assessment form, I was not provided with a sign language

15  interpreter.  As a result, I was unable to communicate effectively with staff.  Because I was

16  not provided with a sign language interpreter, it was difficult for me to understand the

17  questions that staff were asking me and, even when I understood the questions, to

18  communicate my answers to staff.  At the time I was in extraordinary pain from the car

19  accident ▮▮▮▮▮▮▮  I was unable to communicate my discomfort to staff during

20  the intake process.

21      8.      Even though sign language is my primary and preferred method of

22  communication, the Jail never provided me with a sign language interpreter for any

23  interactions with Jail custody or medical staff.  This made it very, very difficult for me to

24  communicate with staff.  For example, without a sign language interpreter during the

25  booking process, I was unable to effectively communicate with the custody staff who were

26  asking me important questions that determined my housing assignment.

27      9.      During the first few months of my time in the Jail, I had a cast on my right

28  hand, which is the hand I use to write with.  Before my cast was removed, I could not

DECLARATION OF ROBERT YANCEY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1  easily write notes to communicate with Jail Staff or other prisoners because it was very
2  painful for me to write.  This meant that not only was I not able to communicate using a
3  sign language interpreter, but I also was not able to communicate using written notes.

4        10.    Jail staff members often failed to accommodate my disability or help me
5  access the Jail services because some of them did not know I had a disability.

6        11.    Even when staff did acknowledge that I had a disability, they sometimes
7  failed to help me access the services I needed.  One example is documented in a
8  Disciplinary Action Report dated December 16, 2012, a true and correct copy of which is
9  attached as **Exhibit D**.  On that date, I tried to use the TTY phone during the 60 minutes I
10 was allowed outside of my cell.  Staff refused to take me to use the TTY phone.  I believe
11 staff couldn't take me because there was insufficient custody staff available during that
12 time of the morning to escort me to the receiving area where the TTY phone is located.
13 Later that day, when I was back in my cell, I tried to get the attention of a deputy to request
14 that he provide me with access to the TTY phone.  When I tried to get the deputy's
15 attention, and to get him to take me to use the phone, the Deputy could not understand me
16 and I could not understand him.  He asked the prisoner housed next to me, who happened
17 to know some sign language, to translate for me.  The deputy refused to bring me to use
18 the TTY phone, as it was not time for my hour rotation.  The deputy told me that he
19 needed to check with a sergeant as using the TTY phone was not a special privilege I had.
20 I became agitated at this, and the deputy filed the Disciplinary Action Report against me.

21       12.    At the hearing on the Disciplinary Action report, I was not provided with a
22 sign language interpreter.  As a result I was not able to understand everything that staff
23 said to me or to explain my side of the story.  I was found guilty of violating Jail rules, and
24 lost two weeks of yard and commissary privileges because of this incident.

25       13.    Similarly, I had trouble communicating at another Disciplinary Action
26 hearing on January 27, 2013.  A true and correct copy of the Disciplinary Action Report
27 from this incident is attached hereto as **Exhibit E**.  I was accused of taking some shoes I
28 found in the receiving area that belonged to another prisoner.  Prior to the hearing, the

3

deputy wrote that "Yancy [sic] was asked if he waives time for the DAR but he was not understandable." I was not provided with a sign language interpreter to communicate to the deputy or to participate in my hearing. I found the hearing very confusing. On a DAR Review Board form, a true and correct copy of which is attached as **Exhibit F**, I had to plead guilty or not guilty to the charge by circling my choice. I ultimately circled both Guilty and Not Guilty on the form provided because I did not understand what was occurring. I was found guilty of the infraction and assessed the loss of yard, commissary, and visitation for two weeks. *See* **Exhibit E**.

14.     I was frequently denied access to the TTY phone. There is only one TTY Phone for the Jail, located in the receiving area. I needed an officer to transport me to access it. Officers frequently refused to transport me to the TTY phone. Officers would tell me that they were too busy to do so. When I could convince an officer to bring me there, I often was told I needed to leave the office before I had time to have a conversation. Conversations on a TTY phone take much longer than a spoken conversation because each person has to type everything that they want to say. Officers did not seem to understand this. On December 20, 2012, I submitted a grievance form through the Jail's formal grievance process requesting sign language interpretation for a number of my daily activities as well as equal access to the TTY phone. After searching through my custody and medical records, I am unable to find a copy of this grievance. I never received a response to my grievance. Nothing changed for me after I filed the grievance; I still was not provided a sign language interpreter or other accommodations for my hearing impairment during my time in the Jail.

15.     On January 26, 2013, I filed another grievance form about my lack of access to the TTY phone and a sign language interpreter, a true and correct copy of which was found in my medical file and is attached as **Exhibit G**. In this second grievance, I informed the Jail that the deputies would reject my requests to use the phone. I also informed the Jail that I needed a sign language interpreter for medical appointments, that medical staff would rely on me to "read their lips," and that "I can't read lips well." Jail

DECLARATION OF ROBERT YANCEY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  staff failed to respond to this grievance.  The section on this grievance for staff to describe

2  any Findings/Recommendations is entirely blank.  There is no writing on the appeal from

3  staff at that Jail; all of the writing on the grievance was by me.  In addition, I continued to

4  be denied a sign language interpreter for any of my communications with Jail staff,

5  including at my medical appointments and at disciplinary hearings.

6       16.    I was forced to file another grievance, a true and correct copy of which is

7  attached hereto as **Exhibit H**, on these same issues on February 14, 2013.  In that

8  grievance, I wrote that the Jail had not responded to my request for a sign language

9  interpreter at medical appointments.  I also complained that I had yet to receive the

10  medical tests I requested in January 2013.  As I can see after reviewing my medical file,

11  the Jail did issue findings in response to this grievance—but not about the most important

12  issue.  In the findings section, the Jail staff member noted that I was on the list for testing.

13  The Jail staff member also noted that my cast was due to be removed, which had not been

14  the subject of my grievance, but was instead discussed on a sick call slip I filed on

15  February 12, 2012, a true and correct copy of which is attached as **Exhibit I**.  The

16  "findings" section of the grievance response includes nothing about my primary

17  complaint—namely, that I needed a sign language interpreter for medical appointments.

18  Despite this, Commander Bass marked this grievance as "resolved" on February 25, 2013.

19       17.    I was not provided with a sign language interpreter at religious services,

20  which I attended regularly.

21       18.    The Jail also failed to accommodate me with respect to other Jail programs.

22  For example, during the time that I was in the Jail, none of the televisions to which I had

23  access displayed closed captioning.  I do not know if the televisions did not have the

24  capacity to display closed captioning, or if the guards just did not turn it on.

25       19.    Without an interpreter, I was unable to defend myself when other prisoners

26  in my housing unit accused me of trying to sell scissors.  Although I was thoroughly

27  searched and guards found no contraband on me, I was moved into a different housing unit

28  as a result of this incident on January 10, 2013.  Attached hereto as **Exhibit J** is a true and

1  correct copy of a page from my custody records describing this incident. I was also unable

2  to explain a serious problem I was having to a deputy on April 26, 2013. Attached hereto

3  as **Exhibit K** is a true and correct copy of a page from my custody file showing that I was

4  moved from H-Pod to C-Pod, but that the deputy had no idea what was wrong.

5       20.    My inability to communicate meant that even though I had been in the Jail

6  many times before, the Jail staff misinterpreted my speech problems as a developmental

7  disability. After reviewing my medical records, I see that the Jail contacted the San

8  Andreas Regional Center about me, but that I was not in the Center's system. Attached

9  hereto as **Exhibit L** and **Exhibit M** are true and correct copies of pages from my Jail file

10  showing this contact occurred.

11       21.    By comparison, I received a sign language interpreter for medical

12  appointments and visits at NMC. For example, I was provided a sign language interpreter

13  at a February 25, 2013 appointment about my wrist, and was therefore able to effectively

14  explain that my wrist was still hurting and was stiff.

15       22.    I also felt afraid while I was in the Jail that I would not be safe in the event

16  of an emergency because I did not feel like the Jail staff would be able to communicate

17  with me.

18       23.    Most importantly for my health and safety while I was at the Jail, I was

19  unable to communicate properly with the medical staff regarding my very serious injuries

20  and pain. On December 4, 2012, I was examined by Physician's Assistant Terri Whiting

21  ("PA Whiting"). True and correct copies of pages from my medical file documenting this

22  visit are attached as **Exhibit N**. As noted by PA Whiting, I was in great distress and could

23  not walk or otherwise bear weight on my left leg. PA Whiting did not bring a sign

24  language interpreter with her to this medical examination. It was therefore difficult for me

25  to communicate my extreme discomfort to PA Whiting or for me to understand what PA

26  Whiting was trying to say to me. Even she noted that our communication problems

27  compromised her ability to properly examine me or provide adequate medical care. PA

28  Whiting wrote that "Exam is limited due to decreased verbal communication as well as

6

DECLARATION OF ROBERT YANCEY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1   holding cell." *Id.* I continued to experience serious pain and suffering after this

2   appointment. I believe that had I been able to communicate the extent of my pain and

3   suffering, I may have received better treatment. After this visit, PA Whiting increased my

4   dosage of ibuprofen from 600mg to 800mg three times a day for seven days, which was

5   grossly insufficient to manage my extreme pain. I can see from reviewing my medical file

6   that PA Whiting also ordered me to be placed in the outpatient unit for 72 hours. See

7   **Exhibit L.**

8         24.    The next day, even though PA Whiting had recognized that I needed

9   continued care in the outpatient unit for three days, I was removed from the infirmary and

10  returned to the housing area. I was initially assigned to H Pod in the Men's Section of the

11  Jail. When I was in H Pod, I, and, as far as I could tell, all of the other prisoners were kept

12  in our cells for 23 hours a day. We were only allowed one hour outside of our cells to

13  shower, make phone calls, exercise, and perform all other necessary daily activities.

14        25.    When I left the hospital in December 2012 prior to being booked into the

15  Jail, I had a dressing and stitches on my leg wound. On December 4, 2012, medical staff

16  at the Jail ordered that my dressing be changed daily. Attached hereto as **Exhibit O** is a

17  true and correct copy of my Treatment and Vital Sign Flow Sheet from my medical

18  records noting that I needed a daily dressing change. According to these records, the

19  nursing staff failed to change my dressing on December 8, 10, and 13 with no explanation.

20        26.    My very serious injuries, especially the injuries to my arm, caused me a lot

21  of pain, making it difficult to sleep or function normally. Medical staff repeatedly refused

22  to provide me with the stronger pain medication that had been prescribed and

23  recommended for me by doctors outside of the Jail. When I was released from the NMC

24  Emergency Department on December 2, 2012, the doctors wrote me a prescription for 20

25  tabs of Norco, to be taken as needed for pain. Attached as **Exhibit P** is a true and correct

26  copy of the prescription. I never received this medication. Instead, and as evidenced by

27  my medication administration records from my Jail medical file, true and correct copies of

28  which are attached here as **Exhibit Q**, the Jail only gave me ibuprofen and Naprosyn,

which I received inconsistently and in varying doses from December 2, 2012, until May 13, 2013. These medications were not strong enough to manage my pain.  As a result, I was constantly in pain and struggled to sleep.

27.     On January 7, 2013, at NMC, I saw Dr. Ishizue, an orthopedist at NMC.  He prescribed 50 pills of Vicodin to help with my pain and to help me sleep.  A true and correct copy of this prescription is attached as **Exhibit R**.  A true and correct copy of a CFMG Medical Referral Form, dated January 7, 2013, is attached as **Exhibit S**.  This form notes as "Recommendations to Referring Agency" a treatment of "cast, vicodin."  I never received any Vicodin.

28.     On April 18, 2013, I saw Dr. Pompan, another orthopedist at NMC.  On a CFMG Medical Referral Form he completed on April 18, 2013, Dr. Pompan wrote that I "need[ed] stronger meds than what he is receiving."  A true and correct copy of the CFMG Medical Referral Form, dated April 18, 2013 is attached as **Exhibit T**.

29.     The Jail also failed to respond to numerous requests that I made for better pain management.  On December 5, 2012, I complained to the staff that I was unable to sleep because of the pain in my right arm.  Attached hereto as **Exhibit U** is a true and correct copy of a page from my medical file on which medical staff noted this complaint. On December 6, 2012, I filed a sick call slip explaining that "I got ran over moments before I got arrested and the pain on my arm & legs is extremely excruciating.  The Ibuprofen I'm currently taking is not working."  A true and correct copy of this sick call slip is attached as **Exhibit V**.  The Jail did nothing to respond to this request.  On December 12, 2012, I filed yet another sick call slip again alerting the Jail Staff to my serious pain, a true and correct copy of which is attached as **Exhibit W**.  The Jail did nothing to respond to this request.  On December 18, 2012, instead of responding to my requests for effective pain management, the medical staff lowered my dose of ibuprofen from 800 mg to 600 mg twice a day.  Attached hereto as **Exhibit X** is a true and correct copy of a page from my medical records reflecting this change.  Again on January 4, 2013, using a sick call slip, I requested surgery on my wrist because I couldn't move it and it was

DECLARATION OF ROBERT YANCEY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

in such pain.  A true and correct copy of this sick call slip is attached as **Exhibit Y**.

Although I saw the medical staff after submitting this sick call slip, the Jail did not change

my medications, schedule me for surgery, or otherwise help me with my pain.

30.     Despite my repeated pleas, the Jail did not provide me with the pain

medication I needed to allow me to sleep.  And again on both January 7 and 8, 2013, after

visiting Dr. Ishizue and receiving a prescription for Vicodin, I filed two more sick call

slips to inform the Jail that I did not receive any of the prescribed medication at pill call.

True and correct copies of these sick call slips are attached hereto as **Exhibit Z**.  Because I

was unable to find any sick call slips in my housing unit, which happens often, I filed my

January 8, 2013, sick call notice on a piece of plain paper.  The Jail did nothing in response

to these sick call slips.

31.     I finally had to file a grievance about my pain on May 5, 2013, a true and

correct copy of which is attached hereto as **Exhibit AA**.  I told the Jail staff that I was "still

experiencing significant pain" and that my wrist was not working properly even though the

cast had been removed.  This grievance was marked as resolved on May 8, 2013, but I

never received sufficient pain medication to help me function properly.  The Jail responded

to this grievance by scheduling me for sick call on May 9, 2013.  When I arrived for sick

call, I did not understand why I was there, as the medical staff failed to tell me that this

was their way of responding to my grievance and no sign language interpreter was present.

As my hand was out of a cast then, I was able to communicate to a very limited extent

using handwritten notes.  A true and correct copy of these notes from my May 8, 2013 visit

to sick call is attached as **Exhibit BB**.  A true and correct copy of a page from my medical

file showing that the attending medical staff was not informed about the content of my

grievance is attached as **Exhibit CC**.

32.     The Jail failed to provide me with adequate shower covers for my arm and

leg injuries, both of which needed to be kept dry as my arm was in a cast and my leg had a

dressing.  On December 21, 2012, I filed two sick call slips alerting the Jail to this

problem.  True and correct copies of these slips are attached hereto as **Exhibit DD** and

DECLARATION OF ROBERT YANCEY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

[1122213-1]

1   **Exhibit EE**.  The first slip told the Jail that "I need a new wrap for my arm.  This one I got

2   is already tore and falling apart.  As well as one for my ankle.  Thank you."  Because the

3   shower covers were insufficient, my cast became soggy and began breaking apart.  Thus,

4   my second sick call slip on December 21, 2012, informed the Jail that I needed to have my

5   arm bandage changed as it was "falling off."

6       33.     On January 5, 2013, I saw medical staff about my cast that was falling apart.

7   The medical staff had no shower cover to give me, and so just instructed me to try to keep

8   my arm dry, which would effectively make showering impossible.  Attached hereto as

9   **Exhibit FF** is a true and correct copy of a page from my medical records reflecting this

10  January 5, 2013 visit.  The Jail did nothing to fix the problem.  Almost two months later, as

11  reflected by a page in my medical records, a true and correct copy of which is attached

12  hereto as **Exhibit GG**, I still did not have a shower cover for my arm and it had to be

13  ordered for me again on February 20, 2013.

14      34.     I believe that the Jail is not a safe place.  I know that I experienced some

15  serious breaches in security and communication.  After reviewing my medical file, for

16  example, I see that I was called for sick call on February 25, 2013, but the custody staff

17  was unable to find me as I had recently been moved from G-Pod to C-Pod.  A true and

18  correct copy of a page of my medical file reflecting this is attached hereto as **Exhibit HH**.

19  I do not feel safe in a Jail that loses track of its prisoners.

20      35.     Inadequate record keeping at the Jail also prevented me from receiving the

21  accommodations I needed for my injured left leg.  On March 26, 2013, I requested

22  permission to purchase special shoes to help me walk.  I was struggling to walk in the

23  shoes provided by the Jail as my left shin still hurt too much.  A true and correct copy of a

24  page from my custody file, attached hereto as **Exhibit II**, shows that this request was

25  granted.  However, on April 2, 2013, I tried to purchase shoes from the commissary and

26  was told that there was no order in the system to allow me access to special shoes.  I filed a

27  grievance form that same day to request my shoes.  A true and correct copy of this

28  grievance form is attached as **Exhibit JJ**.  This form was marked as resolved on April 24,

DECLARATION OF ROBERT YANCEY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1   2013—22 days after I filed it.  Since I did not receive a timely response to my grievance, I

2   then had to file a sick call slip on April 4, 2013, again requesting my special shoes.  A true

3   and correct copy of this sick call slip, filed on plain paper, is attached hereto as

4   **Exhibit KK**.  I was seen by PA Whiting on April 5, 2013, where I communicated to the

5   best of my ability by writing out my complaints on paper.  PA Whiting wrote her answers

6   back to me that the order was already in the computer.

7        36.     By April 25, 2013, I still was unable to purchase the shoes at the

8   commissary.  On that day, I submitted another sick call slip as I was experiencing "damn

9   real pain" in my lower left leg and foot.  A true and correct copy of that sick call slip is

10  attached hereto as **Exhibit LL**.

11       37.     I agreed to be a named plaintiff in this case because I would like to represent

12  other prisoners who have had problems similar to what I have experienced while in

13  Monterey County Jail.  I want to help improve the medical care, the safety for prisoners,

14  and especially the assistance available to prisoners with disabilities.  I have been

15  cooperating fully with my counsel and am responding to all requests for information to the

16  best of my ability and recollection, and will continue to do so in the future.  My lawyers

17  keep me updated on the progress of this case, and I will review all materials provided to

18  me and provide my input to the best of my ability.  When I have questions about the case, I

19  will ask the attorneys for help to understand everything to the best of my ability.

20  / / /

21  / / /

22  / / /

[1122213-1]

11

CV 13 2354 PSG

DECLARATION OF ROBERT YANCEY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

38.     This declaration was translated for me in the presence of certified ASL interpreter prior to my signing it below.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that this declaration is executed at Corcoran, California this 2\ day of April, 2014.

Robert Yancey

CV 13 2354 PSG

DECLARATION OF ROBERT YANCEY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

[1122213-1]

# Exhibits A - Z, AA - LL

# Filed Under Seal