**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JESSE HERNANDEZ et al., | Case No. 5:13-cv-02354-PSG |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS** |
| v. | |
| COUNTY OF MONTEREY, et al., | **(Re: Docket Nos. 44, 58, 75)** |
| Defendants. | |

The present motions in this civil rights suit raise two related issues: exactly who may challenge the conditions of a county jail and who exactly may be challenged?  While standing and mootness disputes in cases such as this are hardly new, the question of whether a private provider of jail medical facilities are services can face scrutiny under Title III of the Americans with Disabilities Act does appear to be novel.[1]

---

[1] "Defendants also specifically raise and preserve the affirmative defense that all Plaintiffs' have failed to exhaust administrative procedures under the Prison Litigation Reform Act.  To the extent Defendants are required to raise the defense of failure to exhaust administrative procedures at their initial responsive pleadings, they do so now for each and every Plaintiff. . . . Defendants also reserve their right to assert the defense of statute of limitations."  Docket No. 44 at 2.  Defendants made no further arguments on these points, however, so the court has not considered the Prison Litigation Reform Act or the statute of limitations here.

1

United States District Court
For the Northern District of California

The first motion before the court is a motion to dismiss filed by Defendants County of Monterey and Monterey County Sheriff's Office.[2]  The second motion to dismiss was filed by Defendant California Forensic Medical Group, Incorporated.[3]  Plaintiffs oppose,[4] and the parties appeared for a hearing.[5]  Having considered the arguments, the court denies both motions.

## I.  BACKGROUND

### A.    Factual Background[6]

Plaintiffs are inmates or recently released inmates from the Monterey County jail.[7]  Each plaintiff has been jailed multiple times.[8]  The jail frequently houses more than 1,100 inmates per day,[9] and inmates stay in the jail on average for 30-40 days.[10]  The vast majority of the jail's population constitutes pretrial detainees with unpredictable, but brief, lengths of stay.  The complaint alleges a litany of substandard conditions at the jail, including: violence due to understaffing, overcrowding, inadequate training, policies, procedures, facilities, and prisoner classification; inadequate medical and mental health care screening, attention, distribution, and

---

[2] *See* Docket No. 44 (amended by Docket No. 75).

[3] *See* Docket No. 58.  CFMG joins and incorporates all arguments in the County and County Sheriff's motion to dismiss in its own.  *See id.* at 3.

[4] *See* Docket Nos. 77 and 83.

[5] *See* Docket No. 100.

[6] For the purposes of Defendants' motions, unless otherwise noted, the court draws the following facts from Plaintiffs' second amended complaint, accepted as true.  *See* Docket No. 41.

[7] *See* Docket No. 77 at 1-2.

[8] *See id.* at 1.

[9] *See* Docket No. 41 at ¶ 40.

[10] *See* Docket No. 77 at 1.

2

Case No. 5:13-cv-02354-PSG
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

resources; and lack of policies and practices for identifying, tracking, responding, communicating, and providing accessibility for accommodations for prisoners with disabilities.[11]

The County provides inmates access to health care and services under a contract with CFMG, a private company that administers all jail health care facilities and services.[12]  The contract took effect on April 1, 2012.[13]  The contract provides that CFMG "shall be responsible for the medical care, dental care, and mental health care of an inmate commencing with [] booking."[14]  CFMG is further responsible for "administering medications to inmates," providing required "medical supplies, and medical record supplies," and for "the cost of all pharmaceuticals administered."[15]  Under the contract, CFMG "shall determine the method, details and means of performing services," and CFMG's Medical Director is "responsible to assure the quality of health care provided."[16]  CFMG employs over fifty staff members.[17]

**B.      Procedural Background**

Five plaintiffs filed an initial complaint.[18]  In eight causes of action seeking declaratory and injunctive relief on behalf of a putative class, the complaint alleges the conditions in the jail violate the Eights and Fourteenth Amendments of the United States Constitution, Article I, Sections 7 and 17 of the California Constitution, the Americans with Disabilities Act, the Rehabilitation Act, and

---

[11] *See* Docket No. 41 at ¶¶ 2-5, 7.

[12] *See id.* at ¶ 84.

[13] *See* Docket No. 41 at ¶ 41.

[14] *See* Docket No. 83 at 2 (App'x A at 18).

[15] *Id.* at 21-23.

[16] *Id.*

[17] *See* Docket No. 34 at ¶ 84.

[18] *See* Docket No. 1.

Case No. 5:13-cv-02354-PSG
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

Cal. Gov't Code Section 11135.[19]   In a first amended complaint, eight named plaintiffs were added.[20]   In a second amended complaint, nine new plaintiffs were added and one plaintiff was dismissed, resulting in the current total of 21 named plaintiffs.[21]

The County and Sheriff's Office filed an initial motion to dismiss challenging the standing of one plaintiff not in custody when his claim was filed and the mootness of the claims of nine others who were no longer in custody.[22]   In the meantime, Plaintiffs filed a motion for class certification.[23]   Plaintiffs seek certification of a prisoner class, consisting of all current and future prisoners in the jail, and a prisoners with disabilities subclass, consisting of all current and future prisoners who have a qualifying disability.[24]

CFMG also filed a motion to dismiss of its own, joining the County and Sheriff's Office's motion based on standing as well as challenging Plaintiffs' sixth cause of action against CFMG under Title III of the ADA.[25]   Defendants then amended their motion to dismiss by dropping one plaintiff based on his re-incarceration and adding two others because they had been released from

---

[19] *See* Docket Nos. 1, 16, and 41.

[20] *See* Docket No. 16.

[21] *See* Docket No. 41 at ¶¶ 11-31.

[22] *See* Docket No. 44.

[23] *See* Docket Nos. 48-56.

[24] *See* Docket No. 56 at 20-21.

[25] *See* Docket No. 59.

4

Case No. 5:13-cv-02354-PSG
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

custody.[26]  In their reply brief, Defendants further dropped from their motion yet another plaintiff

because he, too, returned to custody.[27]

## II. LEGAL STANDARDS

### A.     12(b)(6) Motion to Dismiss

A complaint must contain "a short plain statement of the claim showing that the pleader is

entitled to relief."[28]  If a plaintiff fails to proffer "enough facts to state a claim to relief that is

plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief

may be granted.[29]  A claim is facially plausible "when the pleaded factual content allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30]  But

courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[31]  Under

Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the

absence of sufficient facts alleged under a cognizable legal theory."[32]  A court may dismiss a claim

---

[26] *See* Docket No. 75.

[27] *See* Docket No. 90 at 1, n.1.  Plaintiffs filed a sur-reply indicating that still another of those
challenged is currently incarcerated in the jail and that another continues to reside in Monterey
County.  *See* Docket No. 98 at 3-4.  Plaintiffs have since introduced further evidence that another
plaintiff has been re-incarcerated, *see* Docket Nos. 114, 116, one of the released plaintiffs has been
re-incarcerated, and that yet another was re-incarcerated and then released again.  *See* Docket No.
125-1.  Defendants object to the evidence Plaintiffs present on this issue and its exhibits on the
grounds that the documents are not authenticated, the testimony in the supporting declaration is
improper expert testimony, and the declarant lacks personal knowledge.  Docket No. 90 at 7.
These objections are improper and therefore overruled because they do not specifically identify
which statements or exhibits are objectionable on which grounds. *See* Fed. R. Evid. 103(a)(1)(B)
(requiring that a party "state[] the specific ground" of an objection).

[28] Fed. R. Civ. P. 8(a)(2).

[29] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[31] *Twombly*, 550 U.S. at 555.

[32] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[33]

## B.      Standing

To demonstrate standing to seek equitable relief, Article III of the U.S. Constitution requires that (1) a plaintiff has suffered an actual or threatened injury as a result of the defendant's alleged illegal conduct; (2) the injury is "fairly traceable" to the defendant's action; and (3) the injury is likely to be redressed by a favorable decision.[34]  A plaintiff must establish standing as of the filing of the complaint.[35]  Where multiple plaintiffs present the same class claims in multiple complaints, each plaintiff must establish standing as of the date of the filing in which the plaintiff first appears.[36]  Where a plaintiff seeks prospective injunctive relief, he also must demonstrate "that he is realistically threatened by a repetition of [the violation]."[37]  "Where a named plaintiff is a member of a plaintiff class, and 'members of the class have repeatedly suffered personal injuries in the past that can fairly be traced to the [defendants'] standard . . . practices,' the defendant's treatment of the class as a whole must be considered to determine whether the individual plaintiff 'ha[s] been and will continue to be aggrieved by the defendants' [illegal] pattern of conduct."[38]  Put another way, "[w]hen a named plaintiff asserts injuries that have been inflicted upon a class of

[33] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

[34] U.S. Const. Art. III, § 2; *Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *see also Bates v. United Parcel Serv., Inc.*, 511 F.3d 977, 985 (9th Cir. 2007) (holding under the first prong that the plaintiff must have suffered an injury in fact, *i.e.* one that is sufficiently "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"); *Lujan v. Defenders Wildlife*, 504 U.S. 555, 560-61 (1992).

[35] *See County of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991); *Monaco v. Stone*, 187 F.R.D. 50, 66 (E.D.N.Y. 1999).

[36] *See Monaco*, 187 F.R.D. at 66.

[37] *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) (citation omitted).

[38] *Id.* at 864 (quoting *LaDuke v. Nelson*, 762 F.2d, 1318, 1326 (9th Cir. 1985)).

6

plaintiffs, we may consider those injuries in the context of the harm asserted by the class as a whole, to determine whether a credible threat that the named plaintiff's injury will recur has been established."[39]

An exception to the general rules regarding standing pertains to past inmates under supervision.[40]  When a past inmate remains supervised by law enforcement and subject to unlawful conditions without engaging in illegal activity, that plaintiff maintains standing with regard to the unlawful policies or conditions he or she may confront.[41]  The question is whether plaintiffs have "demonstrate[d] a concrete injury and a realistic likelihood that the injury will be repeated."[42]  In *Armstrong v. Davis*, the Ninth Circuit held California parolees with disabilities could challenge policies and practices in state parole revocation proceedings that violated the ADA and the Rehabilitation Act.[43]  The parolees could not be subjected to the discriminatory parole revocation proceedings unless they were arrested and charged with violating the terms and conditions of their parole.  Because they could be arrested without a warrant and for violating parole terms that prohibited otherwise legal conduct,[44]  parolees did not need to "engage in unlawful conduct to become subject to the unlawful practices they s[ought] to enjoin."[45]

_____

[39] *Id.* at 861.

[40] *Id.* at 866.

[41] *See id.* at 860-6.

[42] *Taylor v. Westly*, 488 F.3d 1197, 1199 (9th Cir. 2007) (citing *Armstrong v. Davis*, 275 F.3d at 860-61).

[43] *Armstrong v. Davis*, 275 F.3d at 860-67.

[44] *See id.* at 866.

[45] *Armstrong v. Davis*, 275 F.3d at 866 ("[T]here was 'no string of contingencies necessary to produce an injury'") (quoting *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1041-42 (9th Cir. 1999)).  Arrest for violating the terms and conditions of parole "led inexorably to the injury" of being subjected to the unlawful parole revocation procedures.  *Id.* at 866 n.25.

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

## C.     Mootness

Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)."[46]  In general, a case is moot if there is no longer any personal stake in the outcome[47] or "'present controversy as to which effective relief can be granted,'"[48] even if the plaintiff had standing at the time the complaint was filed.[49]  In *L.A. v. Lyons*,[50] the Supreme Court held that where the plaintiff could only be "expos[ed] to the challenged course of conduct" by breaking the law, his claim was moot because the threat of future harm was too attenuated.

An exception to the mootness doctrine applies in class actions "where it is 'certain that other persons similarly situated' will continue to be subject to the challenged conduct and the claims raised are 'so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'"[51]  In determining whether prisoners' claims are inherently transitory, the court must

---

[46] *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).

[47] *Carty v. Nelson*, 426 F.3d 1064, 1071 (9th Cir. 2005); *Geraghty*, 445 U.S. at 396-97.

[48] *Johnson v. Rancho Santiago Cmty. College Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010).

[49] *ACLU v. Lomax*, 471 F.3d 1010, 1016 (9th Cir. 2006) (internal citations omitted) (requiring "courts to look to changing circumstances that arise after the complaint is filed," and "[i]f a live controversy no longer exists, the claim is moot").

[50] *L.A. v. Lyons*, 461 U.S. 95, 103 (1983) (holding that neither the existence of past injury nor conjecture over the prospect of some future injury creates the case or controversy required for jurisdiction.  The assumption is that a plaintiff "will conduct [his or her] activities within the law and so avoid prosecution and conviction" and subsequent incarceration (citing *O'Shae v. Littleton*, 414 U.S. 488, 495-97 (1974)).

[51] *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (quoting *County of Riverside*, 500 U.S. at, 51-52 (internal quotation marks omitted)).  In *County of Riverside*, class certified comprised "all present and future prisoners in the Riverside County Jail including those pretrial detainees arrested without warrants and held in the Riverside County Jail from August 1, 1987 to the present, and all such future detainees who have been or may be denied prompt probable

8

United States District Court
For the Northern District of California

focus on "the average length of detention in the county jail" and "must look at the claims of the class as a whole" rather than Plaintiffs' "individual claims for relief."[52]

If the inherently transitory exception applies, the mootness determination merges with the standing analysis as of the filing of the complaint.[53]  Inherently transitory claims "relate to [class representatives'] standing at the outset of the case in order to preserve the merits of the case for judicial resolution."[54]  If class claims fall within the transitory exception, a plaintiff need not file a motion for class certification before the mooting of the plaintiff's claim for injunctive relief,[55] unlike cases in which the transitory exception does not apply.[56]

## D.    Title III of the ADA

The ADA's purpose includes a national mandate to eliminate discrimination against individuals with disabilities and to help them to "'integrate into the economic and social mainstream of American life.'"[57]  The ADA's language is broad, emphasizes access to health care,

---

cause, bail or arraignment hearings."  *Id. See also Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997).

[52] *Wade*, 118 F.3d at 670.

[53] *Symczyk*, 133 S. Ct. at 1531.

[54] *Wade*, 118 F.3d at 670 (internal quotation marks omitted).

[55] *See County of Riverside*, 500 U.S. at 51-52; *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2014) (holding that even though the plaintiff's individual claims were mooted prior to the filing of the motion for class certification, the claims of the class were inherently transitory, meaning that the class's "claim for injunctive relief is not moot, and that Article III's justiciability requirements are satisfied."); *Gomez v. Campbell-Ewald Co.*, 805 F. Supp. 2d 923, 928-30 (C.D. Cal. 2011).

[56] *See Sosna*, 419 U.S. at 393, 402-403 (holding that unless a case has been certified by the trial court as a class action prior to the time that the case has been mooted with respect to the named plaintiff, then dismissal is required by the "case or controversy" provisions of Article III of the Federal Constitution); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68, n. 22 (1997) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (internal quotation marks omitted).

[57] Docket No. 89 at 3; *Martin v. PGA Tour, Inc*. 532 U.S. 661, 675, 680 (2000) (stressing

9

and extends to upholding rights and combatting disability discrimination in institutionalized

settings including prisons.[58]

Title III of the ADA provides in part that "no individual shall be discriminated against on

the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by any person who owns,

leases (or leases to), or operates a place of public accommodation."[59]  To survive a motion to

dismiss,[60] Title III requires a plaintiff to plead the following elements: (1) the plaintiff was

disabled within the meaning of the Act; (2) the plaintiff was discriminated against on the basis of

that disability; and (3) the defendant owns, leases or leases to or operates a place of public

accommodation.[61]  Under Title III, "professional offices of a health care provider, hospital, or other

service establishment" are considered public accommodations.[62]

To be liable under Title III of the ADA, an entity need not "own" the location, but may

merely "operate" a place of public accommodation in that space.[63]  The Ninth Circuit has held that

---

Congress' "expansive purpose" that the ADA be "a 'clear and comprehensive national mandate' to
eliminate discrimination against disabled individuals, and to integrate them 'into the economic and
social mainstream of American life'") (quoting H.R. REP. 101-485, pt. 2, 50).

[58] *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998); *Armstrong v.
Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010); *Armstrong v. Brown*, 732 F.3d 955 (9th Cir.
2013); *Armstrong v. Wilson*, 124 F.3d 1019, 1023, 1025 (9th Cir. 1997) (citation omitted)
("Nothing in the legislative history of the . . . ADA reflects an intent by Congress to exclude
prisons or prisoners from the reach of the statutes.").

[59] ADA § 302(a), 42 U.S.C. § 12182(a).

[60] *See, e.g. Norkunas v. Park Rd. Shopping Ctr.*, *Inc.* 777 F. Supp. 2d 998, 999  (W.D.N.C. 2011)
*aff'd*, 474 F. App'x 369 (4th Cir. 2012) (granting motion to dismiss based on ADA Title III claim).

[61] *See* Docket No. 58 at 4; ADA § 302(a), 42 U.S.C. § 12182(a).

[62] Section 12181(7)(F) provides: "[t]he following private entities are considered public
accommodations for purposes of this subchapter, if the operations of such entities affect
commerce—. . . (F). . .a professional office of a health care provider, hospital, or other service
establishment."

[63] 42 U.S.C. § 12182(a); *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 849
(9th Cir. 2004).

Case No. 5:13-cv-02354-PSG
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

"to operate" is "to put or keep in operation, to control or direct the functioning of, or to conduct the affairs of; manage."[64]  This is a broad definition,[65] but this district has previously held an independent contractor must have some nexus establishing he was an "operator" to be subject to Title III of the ADA.[66]

Courts have held that Title II of the ADA,[67] as well as California's Unruh Civil Rights Act[68] and the California Disabled Persons Act,[69] apply to jails, but there is limited jurisprudence on the applicability of Title III of the ADA to private health facilities in jails.[70]  In *Wilkins-Jones*, however, Judge Chen recognized that a health care provider in the jail was a separate entity from

---

[64] *Lentini*, 370 F.3d at 849 (holding an employee who served as Director of Center Sales and Event Services at the California Center for the Arts was an "operator" within the meaning of Title III, and thus accountable for the discriminatory treatment of a theater patron with a disability, because he "was in a position of authority, having the ability to instruct the Center staff on who could or could not be admitted to the theater"); *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 878, n.14 (9th Cir. 2004).

[65] *See e.g. Lentini*, 370 F.3d at 849.

[66] *Aikins v. St. Helena Hosp.* 843 F. Supp 1329, 1335 (N.D. Cal. 1994).

[67] *See, e.g.*, *Yeskey*, 524 U.S. at 212; *Armstrong v. Schwarzenegger*, 622 F.3d at 1068; *Armstrong v. Brown*, 732 F.3d at 955;  *Armstrong v. Wilson*, 124 F.3d at 1023, 1025; *Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1054 (N.D. Cal. 2012) (finding "it is reasonable to consider a jail a public place in the context of inmates' rights to be free from discrimination on the basis of their disabilities. While the general public is not permitted inside a jail at any given time, the government has the power to compel members of the public to a jail under certain circumstances. … [A] jail is more like schools and hospitals contemplated under the ADA, which also restrict public access in certain times and circumstances but are nonetheless designed and intended to provide services, goods, privileges, and advantages to members of the public" (internal quotation marks and citations omitted)).

[68] *See* Cal. Civ. Code § 51; *Wilkins-Jones*, 859 F. Supp. 2d at 1043; *Isbister v. Boys' Club of Santa Cruz*, 40 Cal. 3d 72, 83 (1985) (explaining The Unruh Act's coverage in terms of "business establishments" includes "places of public accommodation").

[69] Civ. Code § 54.1 (protecting the rights of persons with disabilities to full and equal access to a broad list of facilities and accommodations, including "medical facilities, including hospitals, clinics, and physicians' offices" and "places of public accommodation … to which the general public is invited." Cal. Civ. Code § 54.1(a)(1)); *Wilkins-Jones*, 859 F. Supp. 2d at 1043.

[70] *See* Docket No. 89 at 5.

11

Case No. 5:13-cv-02354-PSG
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

the jail and a "business establishment" operating "for profit" within the facility.[71]  While Title II and Title III are "parallel provisions" with Title II covering only public entiles and Title III covering only private entities,[72]  "[t]here are many situations . . . in which public entities stand in very close relation to private entities that are covered by title III."[73]  The result is that "certain activities may be affected, at least indirectly, by both titles. . . .Where public and private entities act jointly, the public entity must ensure that the relevant requirements of title II are met; and the private entity must ensure compliance with title III."[74]

## III. DISCUSSION

**A.      Plaintiffs Have Standing to Pursue Their Claims**

Defendants argue that those Plaintiffs who are no longer incarcerated do not have standing for mootness and for lack of redressability because they are no longer subject to the conditions they challenge.  Citing *Lyons*, Defendants contend it must be assumed a released inmate "will conduct [his] activities within the law and so avoid prosecution and conviction" and incarceration, denying these Plaintiffs' standing[75] because their injury is too abstract and speculative.[76]  Defendants assert those Plaintiffs still in the jail and not a part of their motion to dismiss rebut Plaintiffs' argument that their class is transitory,[77] and because the class is not transitory, Plaintiffs cannot rely on

---

[71] *Wilkins-Jones*, 859 F. Supp. 2d at 1049.

[72] Americans with Disabilities Act Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities, § III–1.7000, *available at* http://www.ada.gov/taman3.html; *Wilkins-Jones*, 859 F. Supp. 2d at 1047.

[73] *Id.*

[74] *Id.*

[75] *See id.*; *Lyons*, 461 U.S. at 103 (citing *O'Shae*, 414 U.S. at 495-97).

[76] *See* Docket No. 90 at 2; *O'Shae*, 414 U.S. at 493-495.

[77] *See* Docket No. 90 at 2.

Case No. 5:13-cv-02354-PSG
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

*Armstrong v. Davis* and similar cases because class certification has not been granted.[78]  "The general rule remains for 42 U.S.C. § 1983 claims for deprivation of rights in a detention setting is that the plaintiff must be incarcerated at the time of filing and throughout the pendency of the matter.  The reasoning for this flows from the principle established in *Lyons*."[79]

Plaintiffs emphasize that because this is a class action for injunctive relief, the claims of the putative class and subclass members must be considered when evaluating standing and mootness, not just those of the named plaintiffs who seek to represent the class.[80]  Plaintiffs argue they qualify for the transitory exception, under which a named plaintiff need only have standing at the time they enter the dispute,[81] considering that the population of the jail is "transitory, fluid, and constantly changing and evolving.  Individual prisoners frequently come and go for stays of days, weeks, and months.  The vast majority of the jail's population are pretrial detainees with completely unpredictable, but generally brief, lengths of stay.  The average term in the jail ranges from 30-40 days, far too short for a prisoner to raise claims about the conditions in the jail and for the court to

---

[78] *See id.* at 4 (citing *Von Colln v. County of Ventura*, 189 F.R.D. 583, 590 (C.D. Cal. 1999) (analyzing standing in conjunction with a motion for class certification); *Parsons v. Ryan*, Case No. 13-cv-16396, 2014 U.S. App. LEXIS 10466 (9th Cir. Ariz. June 5, 2014) (appealing an order certifying a class and a subclass of inmates in Arizona's prison system)); *cf. Wade v. Kirkland*, 118 F.3d 667, 669 (9th Cir. 1997) (deciding not whether the plaintiff's claim was moot but rather remanded the action to the trial court to determine whether the plaintiff could continue as a class representative or whether other putative class members should be allowed to intervene); *R.G. v. Koller*, 415 F. Supp. 2d 1129, 1137 (D. Haw. 2006) (holding "the plaintiffs in this case need not engage in illegal conduct to be returned to [the juvenile facility]").

[79] *See* Docket No. 90 at 8; *Lyons*, 461 U.S. at 95 (neither the existence of past injury nor conjecture over the prospect of some future injury creates the case or controversy required for jurisdiction).

[80] *See* Docket No. 77 at 14.

[81] *County of Riverside*, 500 U.S. at 51-52.

13

Case No. 5:13-cv-02354-PSG
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

issue a decision on class certification.[82]  Plaintiffs further highlight those Plaintiffs who have returned to jail since Defendants filed their motions.[83]

Plaintiffs also argue that even if the transitory exception does not apply, the claims of Plaintiffs who have now been released but are under supervision are not moot.[84]  Plaintiffs' argument regarding supervision is especially pertinent to Plaintiff Yancey, who had been transferred to a different institution by the time Plaintiffs' first complaint was filed,[85] and Plaintiff Miller, who was supervised on probation and not in the jail on the date he became a named plaintiff in this suit.[86]

On balance, the court is persuaded that the short average length of stay of prisoners in the putative class and the plodding speed of legal action qualify Plaintiffs for the inherently transitory exception.[87]

First, Defendants may be right that county jails in the State of California have forever changed as a result of realignment under Assembly Bill 109, more formally known as "The 2011 Realignment Legislation Addressing Public Safety."  The bill shifted responsibility for incarceration and parole supervision of prisoners convicted of certain types of crimes from the state prison system to the counties.[88]  But the vast majority of inmates in the jail continue to be pretrial

---

[82] *See* Docket No. 77 at 1.

[83] *See* Docket Nos. 75; Docket No. 77 at 21; Docket Nos. 98 and 114.

[84] *See* Docket No. 77 at 8, 21; *Armstrong v. Davis*, 275 F.3d at 866.

[85] *See* Docket No. 77 at 19; Docket No. 114.

[86] *See* Docket No. 77 at 8.

[87] *See Wade*, 118 F.3d at 670; *Symczyk*, 133 S. Ct. at 1530; *County of Riverside*, 500 U.S. at 51-52.

[88] *See Coleman v. Brown*, 922 F. Supp. 2d 1004, 1014-15 (E.D. Cal. 2013).

Case No. 5:13-cv-02354-PSG
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

detainees.[89]  For such inmates, "the length of detention cannot be ascertained at the outset and may be ended before class certification by various circumstances."[90]  Nor do those Plaintiffs not subject to Defendants' motion suggest otherwise.  Even those who can expect to remain in the jail for two years or more will likely move on before the resolution of this litigation, which in its second year has yet to reach even the class certification stage.

Second, the average length of incarceration for this largely pretrial detainee population is uncertain and short—only approximately 34 days.[91]  This is too short a period for the court to resolve a motion for class certification.

Third, because all inmates in the jail are alleged to be at risk simply by virtue of being detained, it is "certain that other persons similarly situated will continue to be subject to the challenged conduct."[92]  Under these circumstances, the mooting of Plaintiffs' individual claims, even if before the filing of a motion for class certification, does not impact their standing as long as each plaintiff had standing when they entered the case.[93]

---

[89] *See* Docket No. 49-13, Ex. BB (daily jail population statistics showing that for the period between January 1, 2014 and March 10, 2014, unsentenced prisoners made up a minimum of 67 percent and a maximum of 79 percent of the jail population).

[90] *Lyon v. U.S. Immigration & Customs Enforcement,* Case No. 3:13-cv-5878-EMC, 2014 WL 1493846, at *9 (N.D. Cal. Apr. 16, 2014); *see Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010) ("[T]he length of incarceration in a county jail generally cannot be determined at the outset and is subject to a number of unpredictable factors").

[91] *See* Docket No. 49-13, Ex. AA, Ex. J at 16.

[92] *Symczyk*, 133 S. Ct. at 1531 (internal quotation marks omitted).

[93] *See County of Riverside*, 500 U.S. at 51-52; *cf. Amador v. Andrews*, 655 F.3d 89, 100-01 (2d Cir. 2011); *Olson v. Brown*, 594 F.3d 577, 580-84 (7th Cir. 2010); *Butler v. Suffolk County*, 289 F.R.D. 80, 91-92 (E.D.N.Y. 2013); *Chief Goes Out v. Missoula County*, Case No. CV-12-155-M-DWM, 2013 WL 139938, at *6-7 (D. Mont. Jan. 10, 2013); *see also Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1116-18 (9th Cir. 2003); *Preap v. Johnson*, Case No. 4:13-cv-5754-YGR, 2014 WL 1995064, at *2, n.2 (N.D. Cal. May 15, 2014); *Lyon*, 2014 WL 1493846, at *8.

Case No. 5:13-cv-02354-PSG
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Those Plaintiffs not incarcerated at the jail at the time the complaint was filed stand apart from the other Plaintiffs.[94]  For example, Plaintiff Yancey is presently housed in the state detention facility in Corcoran.  Under *Armstrong v. Davis*, however, he too had standing when he became a named plaintiff in this suit because he was still subject to the disputed conditions of the jail.[95] Even if his release is not scheduled for a number of years, upon the completion of his prison sentence, Plaintiff Yancey will necessarily be supervised on parole in Monterey County by the California Department of Corrections and Rehabilitation's Division of Adult Parole Operations.[96] Plaintiffs also have sufficiently alleged that in the meantime, Plaintiff Yancey would be held in the jail for further proceedings before the Monterey Superior Court during the period of his sentence. As another example, Plaintiff Miller too was already under supervision and subject to the conditions of the jail when he entered the suit.[97] Both therefore have "a personal stake in the outcome of the controversy" and the parties to the controversy are plainly adverse to each other.[98]

In sum, all Plaintiffs may proceed.

**B.      CFMG's Motion to Dismiss Claim Six Regarding Title III of the ADA**

CFMG asserts Plaintiffs' sixth cause of action fails to state a claim because CFMG does not own, lease, or operate a place of "public accommodation" pursuant to 42 U.S.C. § 12181(7)(F).[99]

---

[94] *See* Docket No. 77 at 8.

[95] *See id.* at 19; Docket No. 114.

[96] *See* Cal. Penal Code §§ 3000.08(a) & (b), Cal. Penal Code § 3003(a) (requiring individuals released from prison to be supervised in the country of their "last legal residence . . . prior to his or her incarceration," which for Plaintiff Yancey is Monterey County).

[97] *See* Docket No. 77 at 8; Docket No. 114.

[98] *See Armstrong v. Davis*, 275 F.3d at 866.

[99] *See* Docket No. 83.

16

Case No. 5:13-cv-02354-PSG
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1  Rather, CFMG argues it is an independent contractor with the County of Monterey.[100]  It does not

2  operate the physical space of the jail, neither the jail nor its medical services are open to the

3  public,[101] and many of Plaintiffs' allegations against CFMG did not occur in CFMG's jail clinical

4  rooms.[102]  CFMG argues Plaintiffs' claim against them is superfluous, because Plaintiffs already

5  have a remedy against the jail under Title II.[103]

6         Plaintiffs respond that CFMG is an operator of a place of public accommodation in that it

7  "operates a professional office of a health care provider, hospital, or other service establishment"

8  within the jail—Plaintiffs do not allege CFMG operates other functions of the jail.[104]  The "services

9  establishment" category of public accommodations explicitly includes a "professional office of a

10  health care provider" and a "hospital" as places of public accommodation under Title III.[105]

11  Plaintiffs further argue CFMG is not insulated from Title III liability just because its health care

12  facilities in the jail are not open to the general public.[106]  Instead, the health care facilities that

13  CFMG operates in the jail are covered service establishments and public accommodations within

14  the meaning of Title III.[107]  Under its contract with the jail, CFMG is the "sole provider" of health

---

[100] *See* Docket No. 58 at 6.

[101] *See id.* at 5-6 ("It is neither enumerated within the statutory definition of 42 U.S.C. § 12181, and is not a place 'open to the public'");  *See, e.g., Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 873 (9th Cir. 2004); *cf. Debord v Board of Educ.*, 126 F.3d 1102 1106 (8th Cir. 1997) (regarding a school); *cf. Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1013 (N.D. Ill. 2002) (regarding a city).

[102] *See* Docket No. 89 at 6-7.

[103] *See id.* at 4; Docket No. 59 at 5.

[104] *See* Docket No. 41 at ¶ 398.

[105] *See* 42 U.S.C. § 12181(7)(F).

[106] *See* Docket No. 83 at 1.

[107] *See id.* at 2.

17

services in the jail and so must be responsible for the substantive Title III violations CFMG does

not contest.[108]  CFMG therefore has a nexus establishing itself as an operator of the medical

facilities in the jail.[109]

On balance, the court is persuaded that Plaintiffs have sufficiently alleged that CFMG

operates of a place of public accommodation for purposes of Title III.

First, in *Martin*, the Supreme Court stressed Congress' "expansive purpose"[110] that the

ADA be "a 'clear and comprehensive national mandate' to eliminate discrimination against

disabled individuals, and to integrate them 'into the economic and social mainstream of American

life.'"[111]  The legislative intent was that the statute reach all "critical areas" of society where

persons with disabilities face discrimination, two of which are involved in the instant case:

"'discrimination against individuals with disabilities persists in such critical areas as employment .

. . transportation, communication, recreation, institutionalization, health services, voting, and

access to public services.'"[112]

Second, only recently, this district held that a private provider of county jail health care

could face claims for disability discrimination.[113]  While neither of the two California statutes at

---

[108] *See id.* at 1.

[109] *See id.* at 6.

[110] *See Martin*, 532 U.S. 661 at 680.

[111] *Id*. at 675 (quoting H.R. REP. 101-485, pt. 2, 50).

[112] *Id.* (quoting 42 U.S.C. § 12101(a)(3)).

[113] *Wilkins-Jones*, 859 F. Supp. 2d at 1054 (regarding the Unruh Act and the California Disabled Person Act).

18

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

2

issue in *Wilkins-Jones* were Title III of the ADA, all three statutes require sufficient allegations to tie the alleged discrimination to the operation of a physical place.[114]

3

4

5

6

7

8

Third, the complaint cites "the jail" as the specific place where the discriminatory acts are alleged to have taken place.[115]  To be sure, the "place" of jails is typically considered to be the territory of Title II of the ADA, not Title III.[116]  But courts have consistently found Title III applies to "places of public accommodation" within places that normally do not fit into Title III either because they are owned by a public entity or are operated for other purposes by a public entity.[117]

9

10

11

12

13

14

15

16

17

18

19

[114] *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (holding that for Title III to apply to a private entity operating a "place of public accommodation," a court must evaluate whether "some connection" exists between "an actual physical place" and the private entity employing allegedly discriminatory practices); *Wilkins-Jones*, 859 F. Supp. 2d at 1049 ("PHS/Corizon is thus qualitatively different from a correctional facility itself; while the County's operation of a jail may not be a business, PHS/Corizon is a business establishment operating for profit within a correctional facility") (citing *Burks v. Poppy Const. Co.,* 57 Cal.2d 463, 468–69 (1962) ("The word 'establishment,' as broadly defined, includes not only a fixed location, such as the place where one is permanently fixed for residence or business, but also a permanent commercial force or organization or a permanent settled position (as in life or business)" (internal citations and quotation marks omitted)); *id.* at 1054-55 (holding that while the CDPA applies to jails and the accommodations and services provided therein, it is concerned solely with physical access to public spaces, so plaintiffs could not maintain a claim based on the denial of service); *Lopez v. County of Tulare,* Case No. CV-F-11-1547–LJO–BAM, 2012 WL 33244, at *10 (E.D. Cal. Jan. 6, 2012) ("The CDPA only guarantees physical access to a facility"); *Anderson v. County of Siskiyou,* Case No. 4:10-cv-01428-SBA, 2010 WL 3619821, at *6 (N.D. Cal. Sept. 13, 2010) (dismissing claim where it is "predicated upon the alleged denial of services, not the denial of access to a public facility").

20

21

[115] *See, e.g.*, Docket No. 41 at 2-3, 8, 129.

22

[116] *See Yeskey*, 524 U.S. at 212.

23

24

25

26

27

28

[117] *See, e.g., Disabled Rights Action Comm.*, 375 F.3d at 878 (regarding private association operating a rodeo within a state-owned arena, holding a Title III-covered facility was still covered even if its activities were carried out at or within a publicly-owned facility which is not covered by Title III); *Fiedler v. Am. Multi–Cinema, Inc.,* 871 F.Supp. 35, 37-38 (D.D.C. 1994) (concluding that Title III was applicable to AMC although the federal government owned the property, relying primarily upon the language of Title III, the DOJ regulations, and the DOJ Title III Technical Assistance Manual); *Bowers v. Nat'l Collegiate Athletic Ass'n,* 9 F. Supp. 2d 460, 485–89 (D.N.J. 1998) (holding that private college athletic association could be held liable under Title III for its operation of places of public accommodation owned by its member colleges and universities); *Tatum v. Nat'l Collegiate Athletic Ass'n,* 992 F.Supp. 1114, 1119–21 (E.D. Mo. 1998) (finding that

19

In finding a county jail to be a "public place" or "place of public accommodation" under the Unruh Act and the California Disabled Person Act pertaining to the operations of a private healthcare provider in the jail, Judge Chen in *Wilkins-Jones* articulated:

> [I]t is reasonable to consider a jail a public place in the context of inmates' rights to be free from discrimination on the basis of their disabilities. While the general public is not permitted inside a jail at any given time, the government has the power to compel members of the public to a jail under certain circumstances. … [A] jail is more like schools and hospitals contemplated under the ADA, which also restrict public access in certain times and circumstances but are nonetheless designed and intended to provide services, goods, privileges, and advantages to members of the public.[118]

This same reasoning makes just as much sense when considering whether to understand whether "place of public accommodation" under Title III also covers private operations within jails. Although inartful in identifying CFMG as the accommodation itself, Plaintiffs have sufficiently alleged that CFMG "operates" a professional office in the actual physical "place" of the jail to provide the "public accommodation" of all required medical care.[119] CFMG's motion to dismiss must be denied.

## IV. CONCLUSION

All of Defendants' motions to dismiss are DENIED.  All named plaintiffs remain in the case, and Plaintiffs' sixth cause of action stands.

---

plaintiff had a "reasonable likelihood" of demonstrating that private college athletic association "operates" the athletic facilities owned by its member colleges and universities); *Ganden v. Nat'l Collegiate Athletic Ass'n,* Case No. 96-C-6953, 1996 WL 680000, at *11 (N.D. Ill. Nov. 21, 1996) (holding that regardless of whether a public university owns or operates the athletic facility, private college athletic association may also "operate" the facility for Title III purposes); *Butler v. Nat'l Collegiate Athletic Ass'n,* Case No. C96–1656D, 1996 WL 1058233, at *4–5 (W.D. Wash. Nov. 8, 1996) (noting that Title III does not provide that public facilities operated by private entities cannot constitute public accommodations, and holding that the NCAA may be covered by Title III if it operates the athletic facilities owned by the state university).

[118] *Wilkins-Jones*, 859 F. Supp. 2d at 1049, 1054-55; *see also Yeskey*, 524 U.S. at 212.

[119] *See, e.g.*, Docket No. 41 at 2-3, 8, 129; *see* Docket No. 83 at 15.

Case No. 5:13-cv-02354-PSG
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

1

2   **IT IS SO ORDERED.**

3   Dated: September 29, 2014

4

5   _____
    PAUL S. GREWAL
    United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:13-cv-02354-PSG
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS