CHARLES J. McKEE, SBN 152458
County Counsel
SUSAN K. BLITCH, SBN 187761
Senior Deputy County Counsel
IRVEN L. GRANT, SBN 068950
Deputy County Counsel
MICHAEL R. PHILIPPI, SBN 120967
Deputy County Counsel
County of Monterey
168 West Alisal Street, Third Floor
Salinas, California 93901-2653
Telephone: (831) 755-5045
Facsimile: (831) 755-5283

Attorneys for Defendants COUNTY OF MONTEREY
and MONTEREY COUNTY SHERIFF'S OFFICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Jose Division

| | |
|---|---|
| JESSE HERNANDEZ, CAIN AGUILAR, HA COBB, SUSAN DILLEY, CONNIE DOBBS, SEAN ESQUIVEL, RAMONA GIST, MARTHA GOMEZ, GEORGE GREIM, DENNIS GUYOT, JASON HOBBS, GLENDA HUNTER, ALBERT KEY, BRANDON MEFFORD, WESLEY MILLER, RICHARD MURPHY, JEFF NICHOLS, ANGEL PEREZ, SARAB SARABI, CLYDE WHITFIELD, and ROBERT YANCEY, on behalf of themselves and all others similarly situated, | Case No. CV 13 2354 PSG |
| | **DEFENDANTS MONTEREY COUNTY AND MONTEREY COUNTY SHERIFF'S OFFICE'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
|                                 Plaintiffs, | **Date:**       **October 28, 2014** |
|                   v. | **Time:**       **10:00 a.m.** |
| | **Courtroom:**  **5, 4th Floor** |
| COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive, | **Judge:**      **Hon. Paul S. Grewal** |
| | **Trial Date:**     **September 8, 2015** |
|                                 Defendants. | |

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ iii

    Cases  ........................................................................................................ iii

    Statutues ......................................................................................................v
           Federal.............................................................................................v
           State.................................................................................................v

    Treatises ......................................................................................................v

FACTS ...........................................................................................................1

I.      PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION REQUESTS THE COURT FIND DEFENDANTS DELIBERATELY INDIFFERENT WITHOUT SETTING FORTH A RECOGNIZED STANDARD OF CARE ..........................................................................................................2

II.     PLAINTIFFS' MOTION MEETS NEITHER THE REQUIREMENTS OF FRCP 65 OR THE LIMITATIONS OF THE PRISON LITIGATION REFORM ACT ..........................................................................................3

III.    PRELIMINARY INJUNCTION IS AN EXTRAORDINARY AND DRASTIC REMEDY ................................................................................6

    A.      Mandatory Preliminary Relief ...............................................6

    B.      Irreparable Harm .......................................................................7

    C.      Likelihood of Success ..............................................................8

IV.    PLAINTIFFS CANNOT MEET THE *WINTER* REQUIREMENTS FOR A PRELIMINARY INJUNCTION..............................................................9

    A.      Tuberculosis..............................................................................9

    B.      Drug and alcohol detoxification, continuance of prescription medications and administrative segregation ......................12

    C.      Jail facilities' access and sign language interpreter issues are moot ..................................................................................15

V.     PLAINTIFFS HAVE NOT JUSTIFIED A WAIVER OF THE REQUIRED BOND ........................................................................................................16

VI.    LEGITIMATE PENOLOGICAL AND PUBLIC INTERESTS EXIST TO SUPPORT CURRENT JAIL OPERATIONS ................................................18

VII.   OBJECTIONS TO EVIDENCE ..................................................19

i

A.      Declaration of Eric Balaban..................................................................20

B.      Declaration of Bradley Buell ..............................................................21

C.      Declaration of James Lewis .................................................................21

D.      Declaration of Juan Sanchez................................................................21

E.      Declaration of Robyn Woods...............................................................22

F.      Declaration of Robert Cohen ...............................................................23

VIII.   DEFENDANTS' REQUEST FOR EVIDENTIARY HEARING ......................................24

*Hernandez, et al. v. County of Monterey, et al.*                    Case No.  CV 13-2354 PSG
COUNTY DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Amoco Prod. Co. v. Village of Gambell, AK,* 480 U.S. 531, 107 S. Ct. 1396,
    94 L. Ed. 2d 542 (1987) ..............................................................................7

5

*Anderson v. United States,* 612 F.2d 1112 (9th Cir. 1979) ..............................................6

6

*Bayer HealthCare, LLC v. U.S. Food and Drug Admin.,* 2013 WL 1777481
    *4-5 (D.D.C. April 17, 2013) (Collyer, J.) ...........................................................7

7

*Cal. Shock Trauma Air Rescue v. AIG Domestic Claims, Inc.,* 2009 U.S. Dist.
    LEXIS 63778, 9-12 (E.D. Cal. July 23, 2009) .................................................3

8

9

*Coquina Oil Corp. v. Transwestern Pipeline Co.,* 825 F.2d 1461 (10th Cir.
    1987) ......................................................................................................16

10

*County of Lassen v. State of California,* 4 Cal. App. 4th 1151 (Cal. App.
    3d Dist. 1992) ...........................................................................................2

11

12

*Daubert v. Merrell Dow Pharms.,* 509 U.S. 479 (1993) ...............................20, 23, 24

13

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d
    641 (2006) ...............................................................................................7

14

*Estelle v. Gamble,* 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)...........................11, 12, 19

15

*Farmer v. Brennan,* 511 U.S. 825 (1994) ..........................................................11, 12, 13

16

*Fireman's Fund Ins. Co. v. S.E.K. Constr. Co.,* 436 F.2d 1345, 15 F.R. Serv. 2d
    992 (10th Cir. 1971)...................................................................................17

17

18

*Frank's GMC Truck Ctr., Inc. v. Gen Motors Corp.,* 847 F.2d 100 (3d Cir. 1988)....................17

19

*Gilmore v. People of the State of California,* 220 F.2d 987 (9th Cir. 2000) ...................5, 9, 18-19

20

*Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 425, 94 S. Ct. 1113, 39 L. Ed. 2d
    435 (1974)................................................................................................7-8

21

*Grayson v. K Mart Corp.,* 79 F.3d 1086 (11th Cir. 1996) ...................................................24

22

*Gregg v. Georgia,* 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976)...........................11, 19

23

*Habitat Educ. Ctr. v. United States Forest Serv.,* 607 F.3d 453 (7th Cir. 2010)......................17-18

24

*Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir. 1994) .........................................................12

25

*Hayes v. Snyder,* 546 F.3d 516 (7th Cir. 2008).............................................................14

26

*Holloway v. United States,* 789 F.2d 1372 (9th Cir. 1986).................................................16

27

28

iii

*International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977) ............................................................................20

*Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259 (4th Cir. 1981) ..................................................................................................25

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) ..........................................................3

*Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) ............7

*Martin v. International Olympic Committee*, 740 F.2d 670 (9th Cir. 1984) ...............6

*Mazurek v. Armstrong*, 520 U.S. 968, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) ..........8

*Merrill v. S. Methodist Univ.*, 806 F.2d 600 (5th Cir. 1986) ...................................24

*Munaf v. Geren*, 553 U.S. 674 (2008) .......................................................................6

*O'Shea v. Littleton*, 414 U.S. 488, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) ...............8

*Reno Air Racing Assn., Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006) ....................3

*Rhodes v. Chapman*, 452 U.S. 337, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981) ...........19

*Robinson v. California*, 370 U.S. 660, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962) .........11

*Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011) ....................................................7

*Sprint Commc'n Co. L.P. v. CAT Commc'n Intern, Inc.,* 335 F.3d 235 (3d Cir. 2003) ................................................................................................................17

*Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004) ..........................................................14

*Sweis v. U.S. Foreign Claims Settlement Com'n*, 2013 WL 2986252, *3-4 (D.D.C. Jun 15, 2013) (Kessler, J.) ................................................................................7

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27 (2d Cir. 1995) ...............7

*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 101 S. Ct. 1830, 68 l. Ed. 2d 175 (1981) ................................................................................................................6

*Wilson v. Seiter*, 501 U.S. 294 (1991) .................................................................11, 12

*Wilson v. Superior Court of Los Angeles County,* 21 Cal. 3d 816 (Cal. 1978) ...........2

*Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7 (2008) ..........................6, 7, 9, 11

*Wong v. U.S.,* 373 F.3d 952 (9th Cir. 2004) ..............................................................3

iv

# STATUTES

## Federal

Civil Local Rules, Northern District of California
    Rule 7-5(b).................................................................................................21, 22, 23

Federal Rules of Civil Procedure
    Rule 65..........................................................................................................3
    Rule 65(c)................................................................................................16, 17
    Rule 65(d)......................................................................................................3
    Rule 65(d)(1)..................................................................................................3

Federal Rules of Evidence
    Rule 403.................................................................................................20, 21, 22
    Rule 602.......................................................................................................20, 23
    Rule 701.................................................................................................20, 21, 22, 23
    Rule 702.................................................................................................20. 21, 22, 23
    Rule 801.................................................................................................21, 22, 23
    Rule 802.................................................................................................21, 22, 23

18 U.S.C.
    Section 3626(a)................................................................................................5, 9
    Section 3626(a)(2)..........................................................................................5, 9

42 U.S.C.
    Section 1997e(a).............................................................................................5

United States Constitution...........................................................................................6
    Eighth Amendment.............................................................................11, 12, 13, 19
    Fourteenth Amendment ..................................................................................11

# STATUTES

## State

California Code of Regulations
    Title 15..............................................................................1, 2, 5, 6, 9, 18, 19, 24

California Penal Code
    Sections 4000-4030............................................................................................2
    Sections 6030-6031.5.........................................................................................2

Prison Litigation Reform Act.................................................................................. 3, 5, 6, 8-9

# TREATISES

Moore's Federal Practice - Civil § 101.95 ...................................................................16

11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* (2d ed. 1995)
    § 2948.1...........................................................................................................8

v

1    Defendants County of Monterey and Monterey County Sheriff's Office (hereafter

2    "Monterey Defendants") oppose Plaintiffs' Motion for a Preliminary Injunction.

3                                        **FACTS**

4    Plaintiffs filed this action on May 23, 2013.  Litigation in this case was voluntarily stayed

5    by the parties to explore the possibility of reaching a consensus on implementing procedural

6    changes at the Monterey County Jail to address the concerns raised by Plaintiffs.  Part of this

7    process included retaining "neutral" experts to review the operations at the jail and then provide

8    suggestions of how the policies and procedures at the jail could be modified to address Plaintiffs'

9    concerns.

10    None of the jointly retained experts found any violations of Title 15, California Code of

11    Regulations (Title 15).  In fact, Mr. Hackett reached the conclusion that, **"Inmate services**

12    **currently meet the requirements of California jails despite overcrowded and understaffed**

13    **conditions."**  (Hackett Rpt., Opinion 4.)  Despite the fact Defendants' operation of the Monterey

14    County jail met or exceeded the requirements of Title 15, and that no constitutional violations

15    existed as a result of Defendants' operation of the jail, Defendants recognized that in order to

16    resolve this case they would need to address the allegations made by Plaintiffs.  Thus, the parties

17    engaged in several voluntary mediation sessions and one Court mandated mediation session to

18    see if common ground could be reached so this case could be resolved.  Voluntary efforts to

19    resolve this case broke down when Plaintiffs' counsel insisted on resolving a dispute over the

20    form of a settlement document before any additional discussions could occur on the substance of

21    Plaintiffs' concerns.  Prior to this breakdown, Defendants were developing "remedial plans" to

22    be reviewed by Plaintiffs' counsel to see if an acceptable list of modifications to the jail's

23    operation could be agreed upon with an eye towards resolution of this case.  Despite this

24    roadblock thrown up by Plaintiffs' counsel, Defendants have continued with their process of

25    ongoing review of jail operations and continual improvement to the operation of the jail.

26    In addition, it should be noted that Plaintiffs' counsel's allegations are once again

27    contradicted by the actual care received by Plaintiffs.  For instance, in Ms. Dilley's case, her own

28

1

1   counsel thanks CFMG for Ms. Dilley's care: "I want to thank you and Dr. Garcia for your

2   helpful and prompt attention to Susan Dilley's medical condition."  (Ex. D to Dec. of Blitch.)

**I.      PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION REQUESTS THE
3          COURT FIND DEFENDANTS DELIBERATELY INDIFFERENT WITHOUT
           SETTING FORTH A RECOGNIZED STANDARD OF CARE.**
4

5       Title 15 of the California Code of Regulations is the controlling standard for policies and

6   procedures in California detention facilities.  See generally *Wilson v. Superior Court of Los*

7   *Angeles County*, 21 Cal. 3d 816 (Cal. 1978).  See also *County of Lassen v. State of California*, 4

8   Cal. App. 4th 1151, 1155 n. 3 (Cal. App. 3d Dist. 1992).  California Penal Code sections 4000-

9   4030 define the purposes for which county jails are to be maintained and prescribe detailed rules

10  for their operation.  Penal Code sections 6030- 6031.5 provide that the State Board of

11  Corrections shall establish minimum standards for local detention facilities and shall inspect

12  those facilities for compliance.  Title 15, California Code of Regulations, sections 1000-1282, set

13  forth the minimum standards for local detention facilities adopted by the Board of Corrections.

14      Plaintiffs provide no evidence that the Monterey Defendants or CFMG have failed to

15  comply with the requirements of Title 15.  Indeed, Dr. Puisus and Dr. Cohen did not refer to or

16  follow Title 15 in their analysis.  See Declaration of Irven L. Grant in reference to Dr. Cohen's

17  lack of knowledge of Title 15 and various other medical issue standards.  In effect, Plaintiffs

18  simply reject the sum and substance of Title 15.  Without any announced standard, Plaintiffs are

19  asking this Court to find Defendants were "deliberately indifferent" in their operation of the

20  Monterey County jail.  In effect, Plaintiffs simply reject the sum and substance of Title 15.  This

21  ignores the fact that such a finding would be extremely premature.  Defendants have not had the

22  opportunity to fully litigate this matter and to address the extremely high subjective and objective

23  criteria which define "deliberate indifference".  Plaintiffs are asking this Court to hold that Title

24  15 of the California Code of Regulations, fails to provide adequate inmate protections,

25  constitutes a risk akin to deliberate indifference, is not based on a sufficient constitutional

26

27

28

2

1    standard, or is flat out unconstitutional.[1]  Certainly, this Court has the power to strike down state

2    laws it finds unconstitutional.  However, it would seem to Monterey Defendants, who in good

3    faith were following state regulations, that before such drastic measures are taken, very specific

4    and detailed findings would have to be made through the appropriate evidentiary hearings and

5    that the State of California would necessarily have to be a party to the action.  (See e.g. *Cal.*

6    *Shock Trauma Air Rescue v. AIG Domestic Claims, Inc*., 2009 U.S. Dist. LEXIS 63778, 9-12

7    (E.D. Cal. July 23, 2009) (since none of the present Defendants have "the ability to enact or

8    enforce state laws," they cannot interfere with Plaintiffs' rights under the Supremacy Clause; the

9    instant Defendants are simply the wrong parties against whom to assert such a claim.)

10   **II.    PLAINTIFFS' MOTION MEETS NEITHER THE REQUIREMENTS OF FRCP
             65 OR THE LIMITATIONS OF THE PRISON LITIGATION REFORM ACT.**

11

12        "Every order granting an injunction . . . must: (A) state the reasons why it issued; (B)

13   state its terms specifically; and (C) describe in reasonable detail—and not by referring to the

14   complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).

15   Ambiguities in the proposed order should be resolved against the moving party.  *Reno Air*

16   *Racing Assn., Inc. v. McCord*, 452 F.3d 1126, 1133, 1134 (9th Cir. 2006).  As the *Reno* Court

17   pointed out, the fair notice requirement of Rule 65(d) must be applied in light of the

18   circumstances surrounding its entry.  There is an unacceptable hazard where the order fails to

19   identify with particularity the enjoined conduct in conjunction with sufficient details to make it

20   reasonably understandable.  In effect, because such an order would take effect immediately, there

21   should be no guessing left as to what conduct is enjoined.  Moreover, as best as possible, the

22   order should be stated in plain English.  The Proposed Order setting forth the requested

23   injunction does not meet the requirements of section (C), requiring a detailed description of the

---

[1] In the context of a deliberate indifference claim, a plaintiff must prove that the defendant's deliberate indifference was the actual and proximate cause of the deprivation. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). While direct, personal participation is not required, "the critical question is whether it was reasonably foreseeable that the actions of the particular . . . defendants would lead to the violations alleged to have occurred . . . ." *Wong v. U.S.*, 373 F.3d 952, 966 (9th Cir. 2004).  Plaintiffs are essentially arguing that Defendants should have foreseen that complying with State law was deliberately indifferent.

3

1   acts restrained or required.  As an example, there are references to "timely", "reliable" and

2   "adequately" throughout the proposed Order, where Plaintiffs are asking Defendants be ordered

3   to develop plans that meet these subjective standards.  Since a large component of this litigation

4   is whether the policies and practices of the Defendants are currently "timely", "reliable" and

5   "adequate", such a standard cannot be considered detailed enough.  Most importantly, the

6   proposed Order misstates the nature of external references, such as the CDC guidelines.

7   Plaintiffs refer to these guidelines as "standards".  Plaintiffs have not cited to any authority

8   which imposes mandatory adoption of the CDC guidelines as the sole means to effectively

9   combat the spread of TB.  Further, the CDC guidelines contain within them, alternative methods

10  for conducting screening for and treatment of TB in prisoners.  An example would be the

11  recognition that trained custody staff is capable of doing the initial intake screening for TB.

12    "If custody staff members conduct the intake screening, they should receive
  adequate periodic training in taking a medical history, making necessary

13    observations, and determining the appropriate disposition of inmates with signs or
  symptoms of possible medical problems. Staff conducting medical intake should

14    receive appropriate counseling and education regarding medical confidentiality."
  CDC Recommendations and Reports, July 7, 2006 55(RR09); 1-44.

15

16    Another example is the recognition that jail inmates may not be in custody long enough

17  to start a treatment regime capable of being completed before they are released, thereby creating

18  a danger of developing drug resistant strains of TB.

19    "Continuous treatment is more important in the initial phase of therapy, when the
  bacillary burden is highest and the chance of developing drug resistance greatest.

20    CDC Recommendations and Reports, July 7 2006 55(rr09); pg.21

21    "Achieving completion of treatment for LTBI or TB disease often is difficult ,
  particularly in correctional facilities.  Comprehensive case management that

22    includes discharge planning and coordination with other correctional facilities and
  health departments is needed to ensure completion of therapy for patients with TB

23    disease and LBTI.  CDC Recommendations and Reports, July 7, 2006 55(RR09);
  pg.22

24

25    The upshot of all of this is the proposed Order is far too vague to provide any effective

26  guidance to Defendants on how to comply with the terms of the proposed injunction.

27

28

4

1        The Prison Litigation Reform Act ("PLRA") mandates that prisoner litigants must satisfy

2  additional requirements when seeking preliminary injunctive relief against prison officials:

3        Preliminary injunctive relief must be narrowly drawn, extend no further than
           necessary to correct the harm the court finds requires preliminary relief, and be
4        the least intrusive means necessary to correct that harm. The court shall give
           substantial weight to any adverse impact on public safety or the operation of a
5        criminal justice system caused by the preliminary relief and shall respect the
           principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.
6        18 U.S.C. § 3626(a)(2).

7

8        Thus, § 3626(a)(2) limits the Court's power to grant preliminary injunctive relief to

9  inmates. *Gilmore v. People of the State of California,* 220 F.3d 987, 998 (9th Cir. 2000).

10  "Section 3626(a) . . . operates simultaneously to restrict the equity jurisdiction of federal courts

11  and to protect the bargaining power of prison administrators-**no longer may courts grant or**

12  **approve relief that binds prison administrators to do more than the constitutional**

13  **minimum.**" *Gilmore,* 220 F.3d at 999 (emphasis added).

14        The Monterey County jail has a practice of continually reviewing its procedures and

15  policies and making changes and refinements to the procedures and policies as issues arise.  This

16  practice has been in place long before the current litigation was instigated and continues today.

17  As a result, many of the issues raised by Plaintiffs have already been addressed by Defendants

18  and the operation of the jail today is not the same as how the jail was operated when the

19  "neutral" experts conducted their investigations[2].  These changes have a direct effect on some of

20  the issues raised in the motion for preliminary injunction[3].  Lastly,  Plaintiffs have not provided

21  any evidence to show how the injunctive relief, as requested, is narrowly drawn and is the least

22  intrusive means to correct the alleged harm.  Plaintiffs have not shown how Title 15, the laws of

23  the State of California regulating the operation of county jails, is violative of any constitutionally

24

25  [2] For instance, staffing levels at the jail for both CFMG and the Sheriff's Office have increased in the interim since
26  the time the "neutral" experts did their investigation into jail operations and the time of the motion for preliminary
     injunction. See, Request for Judicial Notice In Support of Opposition to Motion for Class Certification.

27  [3] Indeed, Plaintiffs' grievances have been responded to appropriately and Plaintiffs have failed to exhaust their
28  administrative remedies through the jail system. See, 42 U.S.C. § 1997e(a).

5

1   protected rights.  The fact that Plaintiffs are asking the Court to order injunctive relief which

2   exceeds the requirements of Title 15 and the U.S. Constitution, violates the PLRA.

3   **III.     PRELIMINARY INJUNCTION IS AN EXTRAORDINARY AND DRASTIC
            REMEDY.**

4

5          **A.     Mandatory Preliminary Relief.**

6          "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded

7   as of right."  *Munaf v. Geren*, 553 U.S. 674, 679-80 (2008) (quotation marks and citations

8   omitted).   A preliminary injunction normally seeks to maintain the status quo pending the

9   resolution of the underlying litigation (*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct.

10  1830, 1834, 68 L. Ed. 2d 175 (1981)), but here Plaintiffs seek to alter the status quo by imposing

11  on Defendants a requirement to alter the way Defendants operate the Monterey County jail.

12  An even more stringent standard is applied where mandatory, as opposed to prohibitory,

13  preliminary relief is sought.  The Ninth Circuit has noted that although the same general

14  principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that

15  goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious

16  about issuing a preliminary injunction."  See, *Martin v. International Olympic Committee,* 740

17  F.2d 670, 675 (9th Cir. 1984).  Thus, an award of mandatory preliminary relief is not to be

18  granted unless both the facts and the law clearly favor the moving party and extreme or very

19  serious damage will result.  See, *Anderson v. United States,* 612 F.2d 1112, 1115 (9th Cir. 1979).

20  "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

21         "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to

22  succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

23  preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in

24  the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The

25  Supreme Court has emphasized that a preliminary injunction cannot issue on the basis of

26  speculation or possibility.  *Winter*, 555 U.S. at 20-24.  In *Winter*, the Supreme Court rejected the

27  then-controlling law in the Ninth Circuit, which provided a "more lenient standard" that allowed

28

*Hernandez, et al. v. County of Monterey, et al.*                    Case No.  CV 13-2354 PSG
COUNTY DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

1   for a preliminary injunction "based only on a 'possibility' of irreparable harm." *Id*. at 22.  The

2   Supreme Court emphasized that a preliminary injunction should issue only upon a showing that

3   irreparable harm is "*likely* in the absence of an injunction." *Id*. at 375-76 (emphasis in original).

4   *Winter* now provides the controlling standard for addressing a motion for preliminary injunction.

5   See,  *Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011); *Bayer HealthCare, LLC v. U.S.*

6   *Food and Drug Admin.*, 2013 WL 1777481 * 4-5 (D.D.C. Apr. 17, 2013) (Collyer, J.); *Sweis v.*

7   *U.S. Foreign Claims Settlement Com'n*, 2013 WL 2986252, *3-4 (D.D.C. Jun 15, 2013) (Kessler,

8   J.).  In this case, Plaintiffs' alleged injuries are speculative at best.

9          **B.**   **Irreparable Harm.**

10          With respect to irreparable harm, "the court must actually consider the injury the plaintiff

11   will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits,

12   paying particular attention to whether the 'remedies available at law, such as monetary damages,

13   are inadequate to compensate for that injury.'" *Id*. at 80 (quoting *eBay Inc. v. MercExchange,*

14   *L.L.C.,* 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006)). "Irreparable harm

15   is an injury that is not remote or speculative but actual and imminent, and 'for which a monetary

16   award cannot be adequate compensation.'" *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60

17   F.3d 27, 37 (2d Cir. 1995) (citation omitted).  Irreparable injury must be shown to be "*likely* in

18   the absence of an injunction"; the mere possibility of an irreparable injury will not suffice.

19   *Winter*, 555 U.S. at 22, 129 S. Ct. at 375."  A preliminary injunction is an extraordinary remedy,

20   and "courts 'must balance the competing claims of injury and must  consider the effect on each

21   party of the granting or withholding of the requested relief.'" *Id*. at 24, 129 S. Ct. at 376 (quoting

22   *Amoco Prod. Co. v. Village of Gambell, AK,* 480 U.S. 531, 542, 107 S. Ct. 1396, 1402, 94 L. Ed.

23   2d 542 (1987)).  "[I]njunctive relief . . . may only be awarded upon a clear showing that the

24   plaintiff is entitled to such relief." *Id*. at 22, 129 S. Ct. at 376.

25          The Courts' frequently reiterated standard requires plaintiffs seeking preliminary relief to

26   demonstrate that irreparable injury is *likely* in the absence of an injunction. *Los Angeles* v. *Lyons*,

27   461 U.S. 95, 103, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983); *Granny Goose Foods, Inc.* v.

28

1    *Teamsters*, 415 U.S. 423, 441, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974); *O'Shea* v. *Littleton*, 414

2    U.S. 488, 502, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974); see also 11A C. Wright, A. Miller, & M.

3    Kane, Federal Practice and Procedure § 2948.1, p. 139 (2d ed. 1995) (hereinafter Wright &

4    Miller) (applicant must demonstrate that in the absence of a preliminary injunction, "the

5    applicant is likely to suffer irreparable harm before a decision on the merits can be rendered");

6    *id.*, at 154-155 ("A preliminary injunction will not be issued simply to prevent the possibility of

7    some remote future injury").  Issuing a preliminary injunction based only on a possibility of

8    irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary

9    remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.

10   See, *Mazurek* v. *Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (*per*

11   *curiam*).

12       **C.    Likelihood of Success.**

13       Plaintiffs have not established a likelihood of success on the merits of the underlying

14   case.  Plaintiffs' generalized statements of "inadequate" or "sub-standard" by definition require

15   more than a cursory examination of the policy or practices referred to.   Plaintiffs base the

16   concept of their motion for a preliminary injunction on the premise that all of the allegations of

17   the various inmates are true, and that the conduct of Monterey Defendants and CFMG violates

18   Plaintiffs' rights.  Defendants strenuously contest the allegations made by Plaintiffs.  Defendants

19   assert that not only are the facts as presented by Plaintiffs inaccurate, once the Court does have a

20   true, complete statement of the facts before it, the Court will find there are no ongoing violations

21   of any of the Plaintiffs' rights, and that the conduct of Defendants in operating the Monterey

22   County jail does not rise to the level of deliberate indifference.

23       As stated earlier, the Prison Litigation Reform Act ("PLRA") mandates that prisoner

24   litigants must satisfy additional requirements when seeking preliminary injunctive relief against

25   prison officials:

26       Preliminary injunctive relief must be narrowly drawn, extend no further than
         necessary to correct the harm the court finds requires preliminary relief, and be
27       the least intrusive means necessary to correct that harm. The court shall give
         substantial weight to any adverse impact on public safety or the operation of a

28

8

criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. 18 U.S.C. § 3626(a)(2).

Thus, § 3626(a)(2) limits the Court's power to grant preliminary injunctive relief to inmates.  *Gilmore v. People of the State of California,* 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-**no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum.**"  *Gilmore,* 220 F.3d at 999 (emphasis added).   In our case, Plaintiffs are asking for relief that exceeds the requirements of Title 15.

## IV.     PLAINTIFFS CANNOT MEET THE *WINTER* REQUIREMENTS FOR A PRELIMINARY INJUNCTION.

### A.     Tuberculosis.

In support of Plaintiffs' claims concerning the screening program for TB, Plaintiffs rely on three things, opinions of "experts"; a myriad of statistical data; and, CDC guidelines.

Dr. Puisis has admitted in his deposition testimony that he did not use or refer to Title 15 to formulate any of his opinions in this case. See, transcript of Dr. Puisis' deposition, 257:11-14, attached as Exhibit A to Declaration of Michael R. Philippi, submitted herewith.  Dr. Cohen is not familiar with Title 15.  Dr. Puisis' opinions are not the standard by which jail operations are measured within California.  Title 15 sets those standards.  Further, success on the merits of Plaintiffs' claims requires a determination that the conduct of Defendants rises to the level of deliberate indifference.  That standard is discussed below.

Exhibit B attached to Plaintiffs' motion is a printout from the California Department of Public Health.  Table 5 in Exhibit B shows the rate of increase or decline of reported tuberculosis cases.  The number of reported cases for Monterey County dropped by 41.4 percent from 2004 through 2013.  According to the U.S. Census Bureau, in 2013 the population of California was estimated to be 38,332,521 people.  According to the information in Plaintiffs' Exhibit B, the number of TB cases in California was 2,170 in 2013.  This means .0056609 of one percent of the

9

1    people in California had TB.  For the County of Monterey, the number is substantially smaller.

2    There were 17 cases of TB in Monterey County in 2013, or .0000443 of one percent of the

3    population.  If you limit the analysis to just the population of Monterey County, the number is

4    .0039643 of one percent of the population in Monterey County had TB in 2013.  A de minims

5    number by any reasonable standard.

6           The CDC guidelines are just that, guidelines.  They are not mandatory regulations or

7    standards.  Even within the guidelines, there are optional means of accomplishing the stated task,

8    which is the reduction of incidence of TB.  For instance, on page four of Exhibit A to Plaintiffs'

9    Motion, under the section entitled screening methods, it starts out, "Whenever possible, health-

10   care professionals should perform the initial screening.  However, correctional officers in jails

11   (particularly those housing minimal numbers of inmates) frequently administer health intake

12   questionnaires.  In the section on screening, the CDC states, "The type of screening

13   recommended for a particular facility is determined by an assessment of the risk for TB

14   transmission within the facility."  The CDC also states, "How screening activities should be

15   implemented depends on multiple factors, including 1) the type of facility, 2) the prevalence of

16   TB infection and disease in the facility, 3) the prevalence of TB in the inmates' communities,

17   …."

18          As stated, the incidence of TB in Monterey County represents 4.5/10,000ths of one

19   percent statewide, or 4/1,000s of one percent countywide.  There is no measurable data presented

20   by the CDC, or Plaintiffs, to show if there would be any difference in the rate of TB transmission

21   if medical staff were to conduct the intake screening instead of custody staff.  According to the

22   California Department of Public Health, it has been 5 years since there was a reported case of

23   active TB discovered in the jail.  See, Tuberculosis Cases Among Residents of Correctional

24   Facilities: Reporting Jurisdictions in California, attached as Exhibit B to Declaration of Michael

25   R. Philippi, submitted herewith.   Defendants are not under an obligation to eliminate every

26   possibility of exposure to TB.  The standard for imposition of a preliminary injunction is

27   likelihood versus possibility.  Irreparable injury must be shown to be "*likely* in the absence of an

28

*Hernandez, et al. v. County of Monterey, et al.*                                                    Case No.  CV 13-2354 PSG
COUNTY DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

1    injunction"; the mere possibility of an irreparable injury will not suffice." See, *Winter*, 555 U.S.

2    at 22, 129 S. Ct. at 375.  What all of this means is that Plaintiffs **cannot** establish that inmates are

3    under a substantial risk of serious harm.  Consequently, Plaintiffs cannot establish deliberate

4    indifference on the part of Defendants for not changing their TB screening of incoming inmates

5    at the Monterey County jail.  Absent the likelihood of success on the merits, the Court should not

6    issue a preliminary injunction in this case.

7         Deliberate indifference is defined by the Court in the case of *Farmer v. Brennan,* 511

8    U.S. 825 (1994).  Here, the Court stated that a prison official may be held liable under the

9    Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he

10   knows (has actual knowledge) that inmates face a substantial risk of serious harm and disregards

11   that risk by failing to take reasonable measures to abate it.  In *Wilson v. Seiter,* 501 U.S. 294

12   (1991), the Court said, The Eighth Amendment, which applies to the states through the Due

13   Process Clause of the Fourteenth Amendment, *Robinson* v. *California*, 370 U.S. 660, 666, 8 L.

14   Ed. 2d 758, 82 S. Ct. 1417 (1962), prohibits the infliction of "cruel and unusual punishments" on

15   those convicted of crimes. In *Estelle* v. *Gamble*, 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285

16   (1976), we first acknowledged that the provision could be applied to some deprivations that were

17   not specifically part of the sentence but were suffered during imprisonment. We rejected,

18   however, the inmate's claim in that case that prison doctors had inflicted cruel and unusual

19   punishment by inadequately attending to his medical needs -- because he had failed to establish

20   that they possessed a sufficiently culpable state of mind. Since, we said, only the "'unnecessary

21   **and wanton** infliction of pain'" implicates the Eighth Amendment, *id.*, at 104 (quoting *Gregg* v.

22   *Georgia*, 428 U.S. 153, 173, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976) (joint opinion) (emphasis

23   added)), a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference"

24   to his "serious" medical needs. 429 U.S. at 106.  "It is **only** such indifference" that can violate the

25   Eighth Amendment, *ibid.* (emphasis added); allegations of "inadvertent failure to provide

26   adequate medical care," *id.*, at 105, or of a "negligent . . . diagnosis," *id.*, at 106, simply fail to

27   establish the requisite culpable state of mind." *Id.* at 298.  However, a constitutional violation

28

*Hernandez, et al. v. County of Monterey, et al.*                                Case No.  CV 13-2354 PSG
COUNTY DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

1  occurs only where the deprivation alleged is, objectively, "sufficiently serious."  *Wilson v. Seiter,*

2  501 U.S. 294, 298, 115 L. Ed. 2d 271, 111 S. Ct. 2321, and the official has acted with "deliberate

3  indifference" to inmate health or safety.  The Eighth Amendment outlaws cruel and unusual

4  "punishments," not "conditions," and the failure to alleviate a significant risk that an official

5  should have perceived but did not, while no cause for commendation, cannot be condemned as

6  the infliction of punishment under the Court's cases.  See, *Farmer v. Brennan,* 511 U.S. 825

7  (1994).

8       With respect to medical malpractice and deliberate indifference, the Supreme Court has

9  further explained that mere allegations of negligent malpractice do not state a claim of deliberate

10  indifference:

11       Thus, a complaint that a physician has been negligent in diagnosing or treating a
         medical condition does not state a valid claim of medical mistreatment under the
12       *Eighth Amendment*. Medical malpractice does not become a constitutional
         violation merely because the victim is a prisoner. In order to state a cognizable
13       claim, a prisoner must allege acts or omissions sufficiently harmful to evidence
         deliberate indifference to serious medical needs.
14

15  *Estelle v. Gamble,* 429 U.S. 97, 106 & n.14, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976); see also

16  *Hathaway v. Coughlin,* 37 F.3d 63, at 68 (2d Cir. 1994) ("mere medical malpractice does not

17  constitute an *Eighth Amendment* violation").  So, even if Plaintiffs were to argue that failure to

18  change the intake screening process when checking for instances of TB constituted medical

19  malpractice, the Courts have already said that does not establish deliberate indifference.

20       **B.   Drug and alcohol detoxification, continuance of prescription medications and
              administrative segregation.**

21

22       Plaintiffs also seek an injunction related to their claims of Defendants' inadequate

23  policies and practices for continuing necessary and life-saving prescription medications for

24  prisoners newly-booked into the jail; Defendants' substandard policies and practices for

25  identifying and treating newly booked prisoners experiencing withdrawal from drugs and

26  alcohol; the dangerous conditions in administrative segregation units that place prisoners at

27  extraordinary risk of suicide and self-harm.  All three of these issues; providing prescription

28

1   medication, treatment of individuals withdrawing from alcohol and drug addiction and

2   administrative segregation of inmates with mental health concerns necessarily involve medical

3   decisions, which encompasses many variables: verifiable medical history; drug tolerance and

4   reactions; current medical status.  As a result, for each inmate who is booked into Monterey

5   County jail, an individual analysis is undertaken to determine what, if any, prescription

6   medications are to be provided, whether that inmate is suffering from withdrawal of drug and

7   alcohol addiction and whether that inmate has mental health concerns which would require

8   him/her to be housed in administrative segregation.  There is no "one size fits all" answer to

9   these questions.

10          Plaintiffs are alleging that the policies and practices as they currently exist, concerning

11  how inmates are treated for withdrawal from alcohol and drug addiction and the continuation of

12  prescription medications creates an intolerable and illegal risk to their lives and health.  (Motion,

13  1:7-16.)  As previously stated, the determination of whether an inmate is addicted to drugs or

14  alcohol is done on an individual basis, and involves both custody and medical staff.  If necessary,

15  medical staff will place the inmate on a detoxification plan.  Detoxification from such addictions

16  is neither easy nor comfortable.  Most importantly, however, is that detoxification is not

17  employed as a punishment, but rather as a tool to improve the health of an inmate.  The Eighth

18  Amendment outlaws cruel and unusual "punishments," not "conditions,"  See, *Farmer v.*

19  *Brennan*, 511 U.S. 825 (1994).

20          The same applies to the continuation of prescription medications.  When an inmate is

21  booked into the jail and informs staff they are taking prescription medications, medical staff

22  begins the process of verifying the prescriptions. Not to do so would constitute negligence on the

23  part of medical staff due to the potential for serious harm if inmates were given medications

24  which were not prescribed to them.   Not all medications prescribed by physicians outside of the

25  jail are available to inmates inside the jail. The reasons for this include safety and security

26  concerns with regard to jail operations.  Inmates do lie about their medical histories to try and

27  gain access to narcotic medications either for personal use or for sale to other inmates within the

28

13

1    jail.  In those cases where such medications are not available, medical staff prescribes an

2    appropriate alternative medication.

3          Under both situations, medical staff is responsible for determining which course of

4    action, on an individual basis, is the correct action to take for any given inmate.  Monterey

5    Defendants are entitled to rely on the expertise of medical staff when making such evaluations

6    and starting such treatment regimens.  See, *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008)

7    ("The policy supporting the presumption that non-medical officials are entitled to defer to the

8    professional judgment of the facility's medical officials on questions of prisoners' medical care is

9    a sound one."); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care

10   of medical experts . . . a non-medical prison official will generally be justified in believing that

11   the prisoner is in capable hands").  This is important, because again, the standard for review is

12   deliberate indifference.  If Plaintiffs cannot show a likelihood of success in establishing

13   deliberate indifference on the part of Defendants, then the Court should not grant the motion for

14   preliminary injunction.

15         Plaintiffs claim there is an increased risk of suicide caused by placing inmates with

16   mental health issues in administrative segregation.  They primarily rely on Dr. Pablo Stewart to

17   support this claim.  Dr. Stewart, in his Declaration, states, "according to the Department of

18   Justices' Bureau of Justice Statistics, the average suicide rate in jails throughout the country was

19   43 suicides per 100,000 inmates in 2011."  He goes on to state there have been 3 suicides in the

20   Monterey County jail between 2010 and 2013.  He assumes an average daily population of 1,000

21   inmates at the Monterey County jail.  From this assumption, he calculates a suicide rate of 75

22   suicides per 100,000 inmates at the Monterey County jail.  Unfortunately, Dr. Stewart does not

23   set forth his calculations to arrive at that number.  Simple math however indicates that 3 suicides

24   out of 1,000 inmates results in a rate of .3%.  Multiply that .3% by 100, the number necessary to

25   get to 100,000 from 1,000, and you get a rate of 30 suicides per 100,000 inmates.  This is 13

26   suicides less than the national average of 43 per 100,000, or more than 30% less than the national

27   average!  Arguably, the policies and practices at the Monterey County jail are superior to those

28

14

1   employed at most other jails, since the suicide rate is more than 30% lower than the national

2   average.

3          Plaintiffs state approximately half of all suicides in correctional facilities take place in

4   administrative segregation units.  As authority they cite to the Declaration of Dr. Stewart at

5   paragraph 69.   Dr. Stewart, in his Declaration, offers absolutely no support for this statement.  In

6   fact, he stated he did not look at any data for California.[4]  Further, there is a complete lack of

7   information as to which types of correctional facilities Dr. Stewart is referring to.  Lastly, Dr.

8   Stewart's calculations are suspect as to their accuracy.  It needs to be kept in mind that Dr.

9   Stewart only reviewed documents provided by Plaintiffs' counsel.  He did not do any

10  independent investigation into the conditions of custody at the Monterey County jail, something

11  he believes is important to do.  See, Deposition of Dr. Stewart, 17:21-18:10, Exhibit C to

12  Declaration of Michael R. Philippi, submitted herewith.  Thus Dr. Stewart's entire declaration is

13  suspect as to its accuracy, the soundness of the facts upon which Dr. Stewart's opinions are

14  based and cannot be the basis for a finding of deliberate indifference.

15          **C.      Jail facilities' access and sign language interpreter issues are moot.**

16          Plaintiffs' allegations concerning access to programs and facilities within the jail and

17  access to sign language interpreters are moot.  Despite the fact Monterey Defendants have in the

18  past made reasonable accommodations to hearing impaired inmates, the Monterey County jail

19  has adopted changes to the policy concerning the hearing impaired.  A copy of the updated

20  policy concerning the hearing impaired is attached to the declaration of Michael R. Philippi as

21  Exhibit D, submitted herewith.  A copy of the contract between the Monterey County Jail and

22  DHHSC is attached to the Declaration of Michael R. Philippi as Exhibit E, submitted herewith.

23  Monterey County has changed the location for all but one program conducted in the women's

24

25  [4] Deposition of Dr. Stewart, 7:12-18:

26      "Q. Is there anything else that you can think of? For example, did you look at any statistics regarding the
    rate of suicides in county facilities throughout California, as opposed to the one document you mentioned in your
27  declaration?
        A. I did not look -- I did not look at any particular rate sheet, for example, rates of suicides in county
28  facilities throughout California…"

1   housing unit to provide for access to those with mobility impairments.  There is a reasonable

2   accommodation put in place for the one program whose location has not changed.  A copy of the

3   new policy concerning the location of women's programs is attached to the Declaration of

4   Michael R. Philippi as Exhibit F, submitted herewith.  In addition, changes have been made with

5   regard to access to alternative exercise yards and other programs, so that all inmates have access

6   to exercise yards and jail programs.  These changes are reflected in part in the Men's Yard

7   Schedule and the email from Sergeant DeFranco distributing the Men's Yard Schedule, attached

8   to the declaration of Michael R. Philippi as Exhibit Gsubmitted herewith.

9          Requests concerning preliminary injunctive relief are often mooted by the occurrence of

10   the event sought to be enjoined or the occurrence of the event in accordance with an injunction

11   actually issued.  If the occurrence deprived the court of the ability to grant *any effective relief at*

12   *all,* the request for a preliminary injunction or the appeal of a grant or denial of a preliminary

13   injunction will be moot. See, Moore's Federal Practice - Civil § 101.95.  In *Holloway v. United*

14   *States*, 789 F.2d 1372, 1373 (9th Cir. 1986), the Court stated, "As we reaffirmed very recently, a

15   case is moot when events 'prevent the appellate court from granting any effective relief even if

16   the dispute is decided in favor of the appellant.'"  *Id.* at 1373.  In this case, Monterey Defendants

17   have enacted policy revisions which have directly addressed the allegations of Plaintiffs.  The

18   result of these revisions is that sign language interpreters are now being provided to the hearing

19   impaired and access to programs and alternate exercise yards are now being provided to inmates

20   with mobility concerns.  Thus, the Court cannot grant effective relief on this issue, and therefore

21   the motion for preliminary injunctive relief is moot with regard to these issues.

22   **V.      PLAINTIFFS HAVE NOT JUSTIFIED A WAIVER OF THE REQUIRED BOND.**

23          "The court may issue a **preliminary injunction** . . . only if the movant gives security in

24   an amount that the court considers proper to pay the costs and damages sustained by any party

25   found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  In *Coquina Oil*

26   *Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461 (10th Cir. 1987), for purposes of determining

27

28

*Hernandez, et al. v. County of Monterey, et al.*                                    Case No.  CV 13-2354 PSG
COUNTY DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

1   its jurisdiction, the court wrote that the imposition of bond was a necessary ingredient of an

2   enforceable order for injunction relief.

3       "Generally, a bond is a condition of preliminary injunctive relief." See, *Sprint Commc'n*

4   *Co. L.P. v. CAT Commc'n Intern, Inc.,* 335 F.3d 235, 239 (3d Cir. 2003).   "[W]hile there are

5   exceptions, the instances  which a bond may not be required are so rare that the requirement is

6   almost mandatory."  See, *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.,* 847 F.2d 100, 103

7   (3d Cir. 1988).

8       Rule 65(c) requires applicant for restraining order or preliminary injunction to give as

9   security, such sum as court deems proper, for payment of such costs and damages as may result

10   to any party who is found to have been wrongfully restrained or enjoined. See, *Fireman's Fund*

11   *Ins. Co. v S. E. K. Constr. Co.,* 436 F.2d 1345, 15 F.R. Serv. 2d 992 (10th Cir. 1971).  In *Habitat*

12   *Educ. Ctr. v. United States Forest Serv.,* 607 F.3d 453 (7th Cir. 2010), the Court addressed the

13   argument that a party ostensibly serving the public interest should not be required to post a

14   security bond.  The Court also provided a concise history of the obligation to post a bond by a

15   party seeking a preliminary injunction.  The Court specifically said,

16   > We are not persuaded by Habitat's argument that nonprofit entities, at least those
17   > devoted to public goods of great social value, such as the protection of the
18   > environment, should be exempted from having to post injunction bonds. The
19   > argument flies in the face of Rule 65(c), which not only contains no such
20   > exception but also states flatly that "the court may issue a preliminary injunction
21   > or a temporary restraining order only if the movant gives security in an amount
22   > that the court considers proper to pay the costs and damages sustained by any
23   > party found to have been wrongfully enjoined or restrained." The language of
24   > Rule 65(c) was even more emphatic before changed in 2007; it read: "no
25   > restraining order or preliminary injunction shall issue except upon the giving of
26   > security by the applicant, in such sum as the court deems proper, for the payment
27   > of such costs and damages as may be incurred or suffered by any party who is
28   > found to have been wrongfully enjoined or restrained." The committee notes to
   > the 2007 revision make clear that no substantive change was intended-- only
   > clarification, and consistency in style and terminology.

   > In seeming contradiction of the rule, a number of cases allow a district court to
   > waive the requirement of an injunction bond. In some of these cases the court is
   > satisfied that there's no danger that the opposing party will incur any damages
   > from the injunction. There is no reason to require a bond in such a case--and
   > *cessante ratione legis cessat ipsa lex* (when the reason for a law leaves off, the
   > law leaves off). See, e.g., *Connecticut General Life Ins. Co. v. New Images of*
   > *Beverly Hills,* 321 F.3d 878, 882-83 (9th Cir. 2003); *Doctor's Associates, Inc. v.*
   > *Stuart,* 85 F.3d 975, 985 (2d Cir. 1996); *Hoxworth v. Blinder, Robinson & Co.,*

17

1   903 F.2d 186, 210 (3d Cir. 1990); 11A Wright et al., *supra*, § 2954, pp. 292-93.
    And in another class of cases a bond that would give the opposing party absolute
2   security against incurring any loss from the injunction would exceed the
    applicant's ability to pay and the district court balances (often implicitly) the
3   relative cost to the opponent of a smaller bond against the cost to the applicant of
    having to do without a preliminary injunction that he may need desperately. See,
4   e.g., *Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 567 F.2d 692, 701
    (7th Cir. 1977); *Temple University v. White*, 941 F.2d 201, 220 (3d Cir. 1991);
5   *People ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319,
    1325-26 (9th Cir. 1985); *City of Atlanta v. Metropolitan Atlanta Rapid Transit*
6   *Authority*, 636 F.2d 1084, 1094 (5th Cir. 1981). This case fits neither category.
    The forest service may lose money as a result of the now-dissolved preliminary
7   injunction (in fact it's bound to lose at least a little, as we'll see), and Habitat
    admits that posting the $ 10,000 bond caused it no hardship, let alone deterred it
8   from asking for the injunction--it might have been able to buy a surety bond for as
    little as $ 300. See CourtBondNet, "Bonds for Judicial Proceedings,"
9   www.courtbondnet.com/ judicial.html (visited May 3, 2010).

10      In this case, Plaintiffs have not provided any reason why they should be relieved from the

11  obligation to post an injunction bond.  The purpose behind the requirement to post a bond is to

12  protect a party that is being enjoined from damages it will suffer as a result of the injunction, if it

13  is later found that there was in fact no basis for the injunction.  Defendants in this case will incur

14  real, measurable damages should the Court grant the preliminary junction as presented by

15  Plaintiffs.  To add the staffing that Plaintiffs have continually requested throughout this litigation

16  will cost Defendants in excess of $227,000.00.  This is money that will be diverted from other

17  important programs the County provides for its residents.

18      Plaintiffs have also failed to establish a likelihood of prevailing on the merits of their

19  claim.  As discussed earlier, the "experts" relied upon by Plaintiffs in presenting this motion

20  have not conducted their analysis of jail operations according the duties and requirements

21  imposed by Title 15.  A review of the actual facts of this case will reveal that Defendants have

22  complied with Title 15 and that Plaintiffs will fall far short of establishing deliberate indifference

23  on the part of Defendants.  As such, an injunction bond should be required before any

24  preliminary injunction is issued by the Court.

25  **VI.    LEGITIMATE PENOLOGICAL AND PUBLIC INTERESTS  EXIST TO
            SUPPORT CURRENT JAIL OPERATIONS.**

26

27      It bears repeating that the Court in *Gilmore v. People of the State of California,* 220 F.3d

28

18

---

1   987 stated that, "no longer may courts grant or approve relief that binds prison administrators to

2   do more than the constitutional minimum.  *Id*. at 299.  Furthermore, the Supreme Court has also

3   held that the amendment protects from punishments which "involve the unnecessary and wanton

4   infliction of pain."  *Gregg*, 428 U.S. at 173.  Among unnecessary and wanton infliction of pain

5   are those that are "totally without penological justification."  *Id.* at 183; *Estelle*, 429 U.S. at 103;

6   *Rhodes v. Chapman*, 452 U.S. 337, 346, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981).

7           In our case, Plaintiffs are asking for relief that exceeds the requirements of Title 15 and

8   the Eighth Amendment to the U.S. Constitution.  In addition, the relief they are seeking places

9   the very inmates they represent at risk of harm as well as the general public in Monterey County.

10  As discussed earlier, starting inmates on a course of treatment for TB which cannot be completed

11  before the inmates are released could result in the development of strains of TB which are drug

12  resistant.  This is the result of inmates not completing their treatment regimen after being

13  released from custody.  Now, out of a controlled environment, inmates are free to spread this

14  new, drug resistant strain of TB among the public at large.  One of the reasons inmates with

15  mental health concerns are housed in administrative segregation is due to their vulnerability to be

16  victimized by other inmates, or, their penchant to do themselves harm.  The wholesale placement

17  of these inmates in general population means they will have less protections in place for their

18  personal security.  Further, doing so is a direct interference with the operations of the jail and the

19  individual classification system as required by Title 15. See, Title 15 C.C.R., Art. 5, § 1050.

20  These types of changes impose a burden on the public due to the necessity to divert resources

21  from a functioning system to cover the deficiencies of a "one size fits all" system that does not

22  take into account individual needs.  As previously discussed, there are also legitimate reasons to

23  verify inmate claims of the need for prescription drugs as well as the need to start inmates on a

24  detoxification program.  The public interest is well served by having a healthy, sober inmate

25  population.

26  **VII.    OBJECTIONS TO EVIDENCE.**

27          In general, Plaintiffs' counsel attempt to use unsubstantiated statistics to make general

28

1   analogies to the Monterey County jail that are without any scientific or statistical basis.  For

2   example, they cite statistics for a prison in Alabama and then try to analogize it to the Monterey

3   County jail.  Often, the math calculations of Plaintiffs' counsel and their experts are simply

4   wrong.  This does not meet the *Daubert* requirements nor the requirements of FRE Rules 701

5   and 702.  Statistical evidence must be regarded with a substantial degree of caution.

6   *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 339, 52 L. Ed. 2d 396,

7   97 S. Ct. 1843 (1977). "Statistics are not irrefutable; they come in infinite variety and, like any

8   other kind of evidence, they may be rebutted. In short, their usefulness depends on all the

9   surrounding facts and circumstances." *Id*. at 340.

10      Defendants more specifically, object to the evidence presented by Plaintiffs' counsel as

11   follows:

12          **A.  Declaration of Eric Balaban**

13          Defendants object to the conclusions reached by Plaintiffs' counsel in referring to Mr.

14   Balaban's declaration in that the conclusions reached are not supported by proper data or

15   methodology and the foundation for personal knowledge of these conclusions is not established.

16   Fed. R. Evid. 602 and 701.  Additionally, the statements are prejudicial and contain no probative

17   value.  FRE 403.  The conclusions reached in the points and authorities attributed to Mr.

18   Balaban's declaration fail pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow*

19   *Pharms*., 509 U.S. 579, 590 (1993).

20          Defendants object to Exhibits A through D, and Exhibits F, I, P, Q, and R as being

21   irrelevant and containing inadmissible hearsay.  Defendants also object to these exhibits to

22   Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms*., 509 U.S. 579, 590 (1993).

23   Under Federal Rule of Evidence 702, federal courts, "must ensure that any and all" expert

24   evidence is both relevant and reliable.  Plaintiffs reach conclusions in their points and authorities

25   that are not supported by the exhibits, and do not present any authentication as to the

26   methodology behind the exhibits or Plaintiffs' conclusions.

27   / / /

28
                                                20

**B.  Declaration of Bradley Buell**

Defendants object in that the declaration contains inadmissible hearsay.  Fed. R. Evid. 801 and 802.  Additionally, the statements are prejudicial and contain no probative value.  FRE 403.  In general, Defendants point out that Mr. Buell states why there should not be a class or a preliminary injunction:

> Q.     "In your declaration, starting at the bottom of page 12 and going over to the top of page 13, you talk about "I would like to represent other prisoners who have problems similar to what I have experienced while in Monterey County jail." Can you give me the names of any prisoners that have experienced the same problems you have while you have been in here, in the Monterey County Jail?
>
> A.     No, actually I haven't come across any."

(Depo. Buell 60:25 to 61:8, Ex. A to Dec. of Blitch.)

**C.  Declaration of James Lewis**

Defendants object in that the declaration contains inadmissible hearsay.  Fed. R. Evid. 801 and 802.  Additionally, the statements are prejudicial and contain no probative value.  FRE 403.  To the extent Mr. Lewis makes statements about the standard of medical care at the Monterey County jail or general security or safety at the jail, the testimony should be struck pursuant to Fed. R. Evid. 701, 702 and Civil Local Rule 7-5(b), because Mr. Lewis is not an expert and does not purport to be so, the statements are conclusory, and they represent conclusions about an ultimate question of law

**D.  Declaration of Juan Sanchez**

Defendants object in that the declaration contains inadmissible hearsay.  Fed. R. Evid. 801 and 802.  Additionally, the statements are prejudicial and contain no probative value.  FRE 403.  To the extent Mr. Sanchez makes statements about the standard of medical care at the Monterey County jail or general security or safety at the jail, the testimony should be struck pursuant to Fed. R. Evid. 701, 702 and Civil Local Rule 7-5(b), because Mr. Sanchez is not an expert and does not purport to be so, the statements are conclusory, and they represent conclusions about an ultimate question of law

1        Defendant objects in that it does Mr. Sanchez signed a declaration for which he did not

2    understand.

3        "Q. And just so I'm clear, you don't have an understanding of what the term
         penalty of perjury means?

4         A. No."

5        (Depo. Sanchez 40:4-6, Ex. B to Blitch Dec.)

6        Additionally, Defendant objects in that Mr. Sanchez' deposition testimony tends to

7    contradict his declaration or at least the position for which Plaintiffs' counsel portrays it to

8    represent.  It also represents pure speculation.

9        "Q. Are you concerned for your safety here at the Jail?

10       A. Yes.

11       Q. Explain to me your concerns.

12       A. I don't know, sometimes when that door pops open for you guys to come and
         do counts, I can't hear the door. And there was this one time that I was in the

13       restroom and there was time for a count and I didn't hear the door pop open. So
         there is sometimes where there is times that we could get raided and you guys can

14       run in and tell us to get down on the ground and I won't be able to hear it. I could
         get Tased or I could get shot with a BB gun or something. You know.

15       Q. That hasn't actually happened though, right?

16       A. Yeah.

17       Q. Have you seen that happen to anyone else here at the Monterey County Jail?

18       A. No. No.

19       (Sanchez Depo. 39:11 to 40:3, Ex. B to Blitch Dec.)

20

21       **E.  Declaration of Robyn Woods**

22       Defendants object in that the declaration contains inadmissible hearsay.  Fed. R. Evid.

23   801 and 802.  Additionally, the statements are prejudicial and contain no probative value.  FRE

24   403.  To the extent Ms. Woods makes statements about the standard of medical care at the

25   Monterey County jail, the testimony should be struck pursuant to Fed. R. Evid. 701, 702 and

26   Civil Local Rule 7-5(b), because Ms. Woods is not an expert and does not purport to be so, the

27   statements are conclusory, and they represent conclusions about an ultimate question of law.

28

1   Ms. Woods' deposition testimony belies the veracity of her declaration:

2       "Q. What is it here at the Monterey County Jail that's inadequate about identifying
        and providing care to prisoners with chronic illnesses? What's inadequate about
3       that?

4       A. What's inadequate about it? I'm not sure.

5       Q. Robyn, did you even know that this information was in the declaration, this
        grievance before you signed it?

6       A. Yes.

7       Q. Did you carefully read this grievance before you signed it?

8       A. Yes, but I thought I was just going along with -- I don't know. I just thought I
9       was going along with the document because it was going to help us. I mean, I
        thought it was just to help the system."

10      (Depo. Woods 74:20 to 75:8, Exhibit C to Blitch Dec.)

11

12      **F.  Declaration of Robert Cohen**

13          The Declaration of Robert Cohen contains improper statements that are conclusory and

14  argumentative.  Fed. R. Evid. 702 and Civil Local Rule 7-5(b).  The declaration contains

15  inadmissible hearsay under Fed. R. Evid. 801 and 802.  The data and methodology leading to

16  information reported in the declaration are not established, so foundation for personal knowledge

17  of these results is not established.  Fed. R. Evid. 602 and 701.  Dr. Cohen makes statements

18  without proper foundation and without personal knowledge of the incidents.  Defendants move to

19  exclude Dr. Cohen's declaration under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591,

20  597 (1993), in that Dr. Cohen relies on Plaintiffs' counsels' declarations and Dr. Puisus'

21  declaration in reaching his conclusions and Dr. Cohen does not use any ascertainable standards

22  in reaching his "opinions".  Indeed, Dr. Cohen was not even familiar with the CDC guidelines

23  when he was deposed in this case.  Finally, Dr. Cohen has not reviewed any evidence concerning

24  the actual rate of infection in Monterey County or the Monterey County jail.  Under Federal Rule

25  of Evidence 702, federal courts, "must ensure that any and all" expert evidence is both relevant

26  and reliable.  Proposed testimony must be supported by "appropriate validation", what the

27  Supreme Court in *Daubert* labeled "good grounds,' based on what is known.  Expert testimony

28

                                                23

1   cannot be based on mere "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at

2   590. Dr. Cohen's evaluation of the jail does not incorporate California Medical Association

3   standards, Institute for Medical Quality Standards, or California Code of Regulations (CCR),

4   Adult Title 15 Minimum Standards for Local Detention Facilities in his evaluation.

5   **VIII.   DEFENDANTS' REQUEST FOR EVIDENTIARY HEARING.**

6            As pointed out in Monterey Defendants' opposition to the motion for class certification

7   as well as this opposition to Plaintiffs' motion for a preliminary injunction, in order to determine

8   if any violations of constitutionally protected rights is occurring, or will occur, or has occurred,

9   the Court will need to look at the circumstances surrounding each named Plaintiff and the

10  specific allegations made by those Plaintiffs.  Since many of the allegations being made are not

11  supported by the facts, the Court should conduct evidentiary hearings so the Court can determine

12  what the facts actually are.   For example, two of the named Plaintiffs claimed to be suffering

13  from some form of cancer.  It turns out neither had been diagnosed with cancer.  Plaintiffs have

14  submitted numerous "boilerplate" grievances, alleging all kinds of inadequacies about jail

15  operations within Monterey County, and in many cases those same Plaintiffs submitted

16  declarations under penalty of perjury making virtually the same allegations.  When deposed, it

17  was discovered that a significant portion of the Plaintiffs had no information about the

18  allegations being made, had cognitive impairments that prohibited them from fully understanding

19  the allegations being made, or had severe literacy issues, to the extent they could not even read

20  the grievances and/or declarations, yet Plaintiffs' counsel still submitted them as support for their

21  legal contentions.

22           Monterey Defendants request the Court to schedule evidentiary hearings on each of the

23  six issues raised by Plaintiffs in their motion for preliminary injunction.  Federal appellate courts

24  have stated that the district courts "may" hold evidentiary hearings, *Grayson v. K Mart Corp.*, 79

25  F.3d 1086, 1099 (11th Cir. 1996), or that they "should ordinarily" conduct such hearings, *Merrill*

26  *v. S. Methodist Univ.*, 806 F.2d 600 at 608 (5th Cir. 1986). The Courts' focus is ensuring that

27  parties are "afforded a full opportunity to develop a record containing all the facts pertaining to

28

*Hernandez, et al. v. County of Monterey, et al.*                                   Case No.  CV 13-2354 PSG
COUNTY DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

1   the suggested class and its representatives." *Int'l Woodworkers of Am. v. Chesapeake Bay*

2   *Plywood Corp.*, 659 F.2d 1259, 1268 (4th Cir. 1981).

3

4   Dated:  October 7, 2014

5                                                                  CHARLES J. McKEE
                                                                   County Counsel
6

7                                                                  By   /s/ Michael R. Philippi
8                                                                  MICHAEL R. PHILIPPI, Deputy County Counsel
                                                                   Attorneys for Defendants COUNTY OF
9                                                                  MONTEREY and MONTEREY COUNTY
                                                                   SHERIFF'S OFFICE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28