| | |
|---|---|
| MICHAEL W. BIEN – 096891<br>GAY C. GRUNFELD – 121944<br>VAN SWEARINGEN – 259809<br>MICHAEL FREEDMAN – 262850<br>KRISTA STONE-MANISTA – 269083<br>SARAH P. ALEXANDER – 291080<br>ROSEN BIEN<br>GALVAN & GRUNFELD LLP<br>315 Montgomery Street, Tenth Floor<br>San Francisco, California  94104-1823<br>Telephone:  (415) 433-6830<br>Facsimile:  (415) 433-7104<br>Email:  mbien@rbgg.com<br>ggrunfeld@rbgg.com<br>vswearingen@rbgg.com<br>mfreedman@rbgg.com<br>kstone-manista@rbgg.com<br>spalexander@rbgg.com | ALAN SCHLOSSER – 049957<br>MICAELA DAVIS – 282195<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION OF NORTHERN<br>CALIFORNIA, INC.<br>39 Drumm Street<br>San Francisco, California  94111-4805<br>Telephone:  (415) 621-2493<br>Facsimile:  (415) 255-8437<br>Email:  aschlosser@aclunc.org<br>mdavis@aclunc.org |
| JAMES EGAR – 065702<br>Public Defender<br>DONALD E. LANDIS, JR. – 149006<br>Assistant Public Defender<br>OFFICE OF THE PUBLIC DEFENDER<br>COUNTY OF MONTEREY<br>111 West Alisal Street<br>Salinas, California  93901-2644<br>Telephone:  (831) 755-5806<br>Facsimile:  (831) 755-5873<br>Email:  EgarJS@co.monterey.ca.us<br>LandisDE@co.monterey.ca.us | ERIC BALABAN (*admitted pro hac vice*)<br>CARL TAKEI – 256229<br>NATIONAL PRISON PROJECT of the<br>AMERICAN CIVIL LIBERTIES UNION<br>915 15th Street N.W., 7th Floor<br>Washington, D.C.  20005-2302<br>Telephone:  (202) 393-4930<br>Facsimile:  (202) 393-4931<br>Email:  ebalaban@npp-aclu.org<br>ctakei@npp-aclu.org |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>       v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive,<br><br>              Defendants. | Case No. CV 13 2354 PSG<br><br>**DECLARATION OF GAY CROSTHWAIT GRUNFELD IN OPPOSITION TO CFMG'S MOTION TO STRIKE THE REPORT OF MICHAEL PUISIS, D.O. AND IN SUPPORT OF MOTIONS FOR CLASS CERTIFICATION AND PRELIMINARY INJUNCTION**<br><br>Judge:  Hon. Paul S. Grewal<br>Date:  October 28, 2014<br>Time:  10:00 a.m.<br>Crtrm.:  28<br><br>Trial Date:       September 8, 2015 |

[1326124-2]

I, Gay Crosthwait Grunfeld, declare:

1. I am a member of the Bar of this Court, partner in the law firm, Rosen, Bien, Galvan & Grunfeld LLP, and counsel for the plaintiffs in this litigation. I have personal knowledge of the facts stated herein and if called as a witness, I could and would competently so testify. I make this declaration in Opposition to Defendant CFMG's Motion to Strike the Report of Michael Puisis, D.O., and in Support of Plaintiffs' Motions for Class Certification and for a Preliminary Injunction.

2. On July 26, 2013, counsel for Plaintiffs and Defendants CFMG and County of Monterey signed an agreement to identify and retain joint neutral experts to review conditions at the Monterey County Jail (the "July 26 Agreement"). Under the July 26 Agreement, the parties were required to (1) agree upon four neutral experts to "conduct on-site evaluations of the medical and mental health care provided in the Jail, as well as compliance and general standards of ADA accessibility and accommodation, and classification and violence prevention[]" and (2) engage in settlement discussions two weeks after the completion of the expert reports. The July 26 Agreement also specified that "[t]he experts will determine the materials that they need to undertake their review of the conditions and to make recommendations. Defendants will promptly make these materials available to the experts working within the confines of federal and state law, including HIPAA, and will provide access to the Jail, its staff, and to prisoners." The parties agreed that "[w]ithin 90 days of their selection, the experts will submit written reports setting forth their findings and recommendations" and that "[t]hese reports will be admissible in court as evidence."

3. The July 26 Agreement set August 5, 2013 as the deadline to agree on the four experts. As part of the July 26 Agreement, this Court entered a separate Stipulation and Order staying the litigation until January 1, 2014, to allow the July 26 Agreement to be implemented.

4. As described more fully in the Declaration of Michael W. Bien in Opposition to CFMG's Motion to Strike the Report of Michael Puisis, D.O., and in Support of

[1326124-2]

1                                                                CV 5:13 2354 PSG
DECL. OF GAY CROSTHWAIT GRUNFELD IN OPP. TO CFMG'S MOTION TO STRIKE REPORT OF
MICHAEL PUISIS, D.O. AND ISO MOTIONS FOR CLASS CERTIFICATION & PRELIM. INJUNCTION

Plaintiffs' Motion for Class Certification and Preliminary Injunction, filed herewith, counsel worked diligently to exchange information about potential experts and to agree upon the four who were ultimately selected. Peter Bertling, counsel for CFMG, Susan Blitch, counsel for the County of Monterey, Michael Bien and I extensively emailed and conducted several telephone conferences as we exchanged the names and resumes of the potential neutral experts. Once the four experts were agreed upon, they began work. Under the July 26 Agreement, the experts each had 90 days to complete their reports.

5. In connection with the review of the Jail, CFMG counsel Mr. Bertling took sole responsibility for communicating with the neutral medical expert, Dr. Puisis, and the neutral mental health expert, Dr. Hayward. After selecting Dr. Puisis, Mr. Bertling sent him a description of the scope of his review and some requested documents, as reflected in certain emails on which I was copied, true and correct copies of which are attached hereto as **Exhibit A**. The scope of review for Dr. Puisis came from the July 26 Agreement and was copied verbatim from that Agreement into an email from Mr. Bertling to Dr. Puisis, as follows:

> The Health Care expert will determine whether Defendants' system for providing medical care in the jail is adequate, including, but not limited to, whether Defendants provide medically necessary treatments in a timely manner, provide a sufficient number of qualified health care professionals, properly train and supervise the conduct of health care staff, provide sufficient facilities for medical care, have created an adequate screening and intake process to identify and treat medical care issues faced by newly arriving prisoners, have a reliable and timely manner for alerting health care staff of prisoners' medical needs, maintain adequate, accurate, and complete medical care records, make referrals to outside specialists and hospitals when higher levels of care are needed, and provide appropriate medical care follow-up. ….
>
> In determining whether "adequate" medical and mental health is being provided to inmates at the Monterey County Jail, the experts will be guided by federal and state laws, including, but not limited to Title 15 of the California Administrative Code, §§1200-1220 and related definitions set forth in Article I, 42 U.S.C. [§] 1983 and the federal law which defines "deliberate indifference" to an inmate's serious medical or mental health care needs.

*See* **Exhibit A**. Plaintiffs' counsel was not part of any telephone conversations with Dr. Puisis as he planned his subsequent site visit to the Jail, nor were we present during his

tour of the Jail.

6. Mr. Bertling agreed to copy Plaintiffs' counsel on his communications with Dr. Puisis and Dr. Hayward. Attached hereto as **Exhibit B** is a true and correct copy of an email exchange dated August 22 and September 9, 2013, in which Mr. Bertling promises to "provide [me] with a copy of non-privileged documentation [he] send[s] to Dr. Hayward and Dr. Puisis."

7. As a result of discovery subsequently taken in this case, I have since learned that Plaintiffs' counsel was not always copied on communications with the neutral experts. For example, attached hereto as **Exhibit C** are true and correct copies of emails produced to my office on August 5, 2014, in response to a subpoena to Dr. Hayward. These emails are from Mr. Bertling and his office and from County Counsel Michael Philippi to Dr. Hayward on which Plaintiffs' counsel were not copied. As another example, after issuing a draft report in this case, Dr. Hayward performed a second tour of the Jail and drafted an updated report without the knowledge of Plaintiffs' counsel. Attached hereto as **Exhibit D** is a true and correct copy of the letter I sent Mr. Bertling and Ms. Blitch on June 19, 2014, informing defense counsel that "I was surprised to receive an email from Dr. Hayward on May 31, 2014 enclosing a final report" that referenced a second visit to the Jail.

8. Both Mr. Bertling and Ms. Blitch repeatedly asked Plaintiffs' counsel to not communicate with the experts. Attached hereto as **Exhibit E** are true and correct copies of emails from Mr. Bertling to me dated October 6 and 8, 2013, informing me that I should not have a conference call with Dr. Hayward and counsel. Both CFMG and the County wished to control the documents received by the experts, the items reviewed by the experts, and the Jail visits by the experts.

9. Neither I nor anyone else in my office had any direct communications with Dr. Puisis from the time he was selected to serve as a neutral in this case (on or about August 16, 2013) until the day I received a copy of Dr. Puisis's draft report, "Monterey County Jail Health Care Evaluation," on November 7, 2013, which is described more fully

below.

**The Parties Agreed to a Stipulated Protective Order That All Believed Complied with HIPAA, It Was Entered by the Court on October 9, 2013, and All Four Experts Agreed to Be Bound By It**

10. The July 26 Agreement specifically contemplated that "the Parties will mutually agree to a protective order that is in compliance with federal and state law and that safeguards the inmates' confidential medical information." Consistent with the July 26 Agreement, in order to enable the experts to review medical and mental health information and to ensure the confidentiality of sensitive Jail plans, I prepared a draft protective order and sent it to all counsel on September 12, 2013. A true and correct copy of my email and the attachments are attached hereto as **Exhibit F**.

11. On September 20, 2014, I convened a conference call with Peter Bertling and Susan Blitch to discuss their concerns with regard to the proposed protective order. As part of that conference call, I requested comments and edits from the County and CFMG. Attached hereto as **Exhibit G** is a true and correct copy of an email chain, dated September 18, 2013, through October 3, 2013, between me, Ms. Blitch, Mr. Bertling, and neutral expert SZS Consulting, discussing the Protective Order and the parties' proposed changes. On September 26, 2013, the County circulated proposed changes to the Protective Order. Attached hereto as **Exhibit H** is a true and correct copy of the County's proposed redlined changes. After another conference call on October 7, 2013, I circulated redlined revisions to the protective order to counsel on that same day. Attached hereto as **Exhibit I** is a true and correct copy of my email to Mr. Bertling and Ms. Blitch and the attached redlined protective order.

12. At no time during these discussions did Mr. Bertling inform me of his current view that the proposed protective order failed to meet the requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). To the contrary, all counsel agreed that a principal purpose in entering into a protective order was to comply with HIPAA. Ms. Blitch specifically raised the issue of HIPAA, and added changes to the Protective Order to ensure that HIPAA-protected information would be

covered. *See* **Exhibits G & H**, *supra*.

13. After sending the redlined revisions to counsel on October 7, 2013, each agreed to sign the protective order. Attached hereto as **Exhibit J** is a true and correct copy of the communications from Mr. Bertling and Ms. Blitch in that regard. I submitted the final, fully executed Stipulation and Proposed Protective Order to the Court on October 8, 2013, and it was entered as an Order on October 9, 2013. Mr. Bertling assumed responsibility for getting Dr. Puisis and Dr. Hayward to sign the Protective Order.

**Dr. Puisis's Disclosure of the 29 Patients Whose Charts He Reviewed—Subject to the Protective Order–Did Not Violate HIPAA**

14. On November 6, 2013, Dr. Puisis issued his draft neutral report. On November 7, 2013, I received a copy of Dr. Puisis's draft report from Mr. Bertling. I promptly informed Dr. Puisis that Plaintiffs' counsel would be commenting on the draft neutral report. Attached hereto as **Exhibit K** are true and correct copies of the initial set of emails between Mr. Bertling, Ms. Blitch, my co-counsel, and me on November 7, 2013.

15. Dr. Puisis's draft neutral report included an appendix describing his review of 29 medical charts to inform his opinions on the quality of medical care provided at the Monterey County Jail. In another email dated November 7, 2013, a true and correct copy of which is attached hereto as **Exhibit L**, I asked Dr. Puisis to "[p]lease copy us on the list of patient identifiers; we are covered by the attached Protective Order and agree that the patients' identifiers are Confidential pursuant to that Order." Dr. Puisis replied to my email, copying Mr. Bertling and Ms. Blitch, as well as Mr. Bien and co-counsel Mr. Egar, with a list of the patient identifiers. *See* Declaration of Peter Bertling in Support of Motion to Strike, Dkt. Nos. 182-1 through 182-6, 184-1 through 184-3, Exhibit D. Since receiving that list, I have taken no steps to disseminate it to anyone. I have not filed it in the Court even under seal. I have not used the list for any purpose to date, including to find new plaintiffs, as Mr. Bertling alleges.

16. After reviewing the draft report, I sent Dr. Puisis a letter, copied to all counsel, requesting additional information as to certain topics, a true and correct copy of

1 which is attached hereto as **Exhibit M**.  My letter suggested a conference call with all
2 parties, to which Dr. Puisis, Mr. Bertling, and Ms. Blitch ultimately agreed in a series of
3 emails, true and correct copies of which are attached hereto as **Exhibit N**.  The telephone
4 conference occurred on November 21, 2013, at approximately 4:30 p.m., Pacific Standard
5 Time.  During the course of the telephone conference, Dr. Puisis emphasized that he was
6 waiting for comments and additional information from Defendant CFMG, but that he had
7 not yet received what he was requesting.

8       17.     Shortly after the conference call, Dr. Puisis sent all counsel an email
9 responding to the questions raised in my letter, a true and correct copy of which is attached
10 hereto as **Exhibit O**.

11       18.     Neither at the time Dr. Puisis sent me the list of patient identifiers, nor during
12 the course of setting up and conducting the telephone conference, did Mr. Bertling ever
13 suggest that dissemination of the patient names to me under the Protective Order
14 constituted a violation of HIPAA.  To the contrary, Mr. Bertling and Ms. Blitch expressed
15 concern that our new co-counsel, who had recently appeared in the case, had not yet signed
16 the Protective Order.  In response, I immediately provided Mr. Bertling and Ms. Blitch
17 acknowledgements of the Protective Order from our co-counsel.  Attached hereto as
18 **Exhibit P** is a true and correct copy of an email exchange with Mr. Bertling and
19 Ms. Blitch transmitting the signed Protective Order acknowledgments.

**Dr. Puisis Repeatedly Requested Additional Information from CFMG
Prior to Issuing His Final Report, But Did Not Receive a Response**

22       19.     As a result of the November 21, 2013 telephone conference, Dr. Puisis
23 agreed to share with Plaintiffs' counsel recent communications he had had with CFMG.
24 True and correct copies of Dr. Puisis's communications are attached hereto as **Exhibit Q**.
25 In these communications, Dr. Puisis repeatedly asks Mr. Bertling and Mr. Harness for
26 additional information, but he apparently received no response from CFMG.  *See*
27 **Exhibit O**, *supra*.

28       20.     On November 29, 2013, Dr. Puisis submitted his final report.  Attached

hereto as **Exhibit R** is a true and correct copy of Dr. Puisis's email, copied to all counsel, noting the changes he had made in issuing his final report. From the time I received Dr. Puisis's final report to present, I have had no communications with Dr. Puisis.

**Plaintiffs Alerted Defendants in September 2014 as to a Possible Issue with the Protective Order Requiring Revisions**

21. In August 2014, my office became aware through a third-party subpoena that the Protective Order in this case failed to include a clause governing the destruction or return of documents at the end of litigation that may be required by the HIPAA regulations set forth in 45 C.F.R. § 164.512(e). My associate Sarah P. Alexander alerted Defendants to this concern on September 8, 2014. *See* Declaration of Sarah P. Alexander filed September 25, 2014, Dkt. No. 122, ¶ 3 & Ex. B. Ms. Alexander sent Defendants Plaintiffs' suggested revisions to the Parties' Protective Order and requested that Defendants respond by September 12, 2014. *Id.*, ¶ 3. Neither Ms. Alexander nor anyone else in my office heard from Defendants by that date as to whether they would sign the revised Protective Order.

22. Instead, on September 17, 2014, I received a letter from Mr. Bertling and Ms. Saunders informing me that CFMG would seek to strike Dr. Puisis's report because the parties' previous Protective Order was allegedly not HIPAA compliant. *See* Exhibit E to Declaration of Peter G. Bertling in Support of Motion to Strike Dr. Puisis's Report. Dr. Hayward had also forwarded to my office patient-identifying information pursuant to a subpoena. Mr. Bertling's letter did not mention Dr. Hayward's release of information nor did it suggest that CFMG would move to strike Dr. Hayward's report.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

23. Subsequent communications between the parties failed to result in Defendants signing the revised Protective Order. Ultimately Plaintiffs sought the aid of the Court. *See* Dkt. No. 123. On October 1, 2014, this Court entered the revised Protective Order signed by counsel for all parties. *See* Dkt. No. 305.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that this declaration is executed at San Francisco, California this 14th day of October, 2014.

*/s/ Gay Crosthwait Grunfeld*
Gay Crosthwait Grunfeld

[1326124-2]

8   CV 5:13 2354 PSG
DECL. OF GAY CROSTHWAIT GRUNFELD IN OPP. TO CFMG'S MOTION TO STRIKE REPORT OF MICHAEL PUISIS, D.O. AND ISO MOTIONS FOR CLASS CERTIFICATION & PRELIM. INJUNCTION