| | |
|---|---|
| MICHAEL W. BIEN – 096891 | ALAN SCHLOSSER – 049957 |
| GAY C. GRUNFELD – 121944 | MICAELA DAVIS – 282195 |
| VAN SWEARINGEN – 259809 | AMERICAN CIVIL LIBERTIES UNION |
| MICHAEL FREEDMAN – 262850 | FOUNDATION OF NORTHERN |
| KRISTA STONE-MANISTA – 269083 | CALIFORNIA, INC. |
| SARAH P. ALEXANDER – 291080 | 39 Drumm Street |
| ROSEN BIEN | San Francisco, California 94111-4805 |
| GALVAN & GRUNFELD LLP | Telephone: (415) 621-2493 |
| 315 Montgomery Street, Tenth Floor | Facsimile: (415) 255-8437 |
| San Francisco, California 94104-1823 | Email: aschlosser@aclunc.org |
| Telephone: (415) 433-6830 | mdavis@aclunc.org |
| Facsimile: (415) 433-7104 | |
| Email: mbien@rbgg.com | |
| ggrunfeld@rbgg.com | |
| vswearingen@rbgg.com | |
| mfreedman@rbgg.com | |
| kstone-manista@rbgg.com | |
| spalexander@rbgg.com | |
| | |
| JAMES EGAR – 065702 | ERIC BALABAN (*admitted pro hac vice*) |
| Public Defender | CARL TAKEI – 256229 |
| DONALD E. LANDIS, JR. – 149006 | NATIONAL PRISON PROJECT of the |
| Assistant Public Defender | AMERICAN CIVIL LIBERTIES UNION |
| OFFICE OF THE PUBLIC DEFENDER | 915 15th Street N.W., 7th Floor |
| COUNTY OF MONTEREY | Washington, D.C. 20005-2302 |
| 111 West Alisal Street | Telephone: (202) 393-4930 |
| Salinas, California 93901-2644 | Facsimile: (202) 393-4931 |
| Telephone: (831) 755-5806 | Email: ebalaban@npp-aclu.org |
| Facsimile: (831) 755-5873 | ctakei@npp-aclu.org |
| Email: EgarJS@co.monterey.ca.us | |
| LandisDE@co.monterey.ca.us | |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. CV 13 2354 PSG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF PART OF DECEMBER 12, 2014 MINUTE ORDER**<br><br>Judge: Hon. Paul S. Grewal<br>Date: February 24, 2015<br>Time: 10:00 a.m.<br>Crtrm.: 5, 4th Floor<br><br>Trial Date: September 8, 2015 |

[1506594-1]

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION .................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 2

ARGUMENT ............................................................................................................... 3

I.  THIS COURT MAY RECONSIDER THIS ISSUE UNDER LOCAL RULE 7-9 .................................................................................................. 3

II. RULE 34 PERMITS PLAINTIFFS' EXPERTS TO SPEAK INFORMALLY WITH JAIL STAFF .................................................................................... 4

III. DEPOSITIONS ARE NOT AN ADEQUATE SUBSTITUTE ................................. 8

CONCLUSION ............................................................................................................ 11

[1506594-1]

i

CV 13 2354 PSG

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF PART OF DEC. 12, 2014 MINUTE ORDER

# TABLE OF AUTHORITIES

**Page**

## **CASES**

*Barnhardt v. Meridian Mun. Separate Sch. Dist.*,
   No. 65-1300, 2012 WL 1067105 (S.D. Miss. Mar. 28, 2012) .................................. 6

*Battle v. Anderson*,
   447 F. Supp. 516 (E.D. Okla. 1977) ............................................................... 6

*Bock, et al. v. County of Sutter, et al.*,
   No. 11-0536 (E.D. Cal. May 13, 2013) ........................................................... 5

*Capps v. Atiyeh*,
   No. 80-6014 (D. Or. Feb. 8, 1985) ................................................................ 6

*Coleman v. Schwarzenegger*,
   No. 01-1351, 2007 WL 3231706 (E.D. Cal. Oct. 30, 2007) ..................................... 5

*Daubert v. Merrell Dow Pharm., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ....................................................................... 9

*Domingo ex rel. Domingo v. T.K.*,
   289 F.3d 600 (9th Cir. 2002) ....................................................................... 9

*K.L. v. Edgar*,
   945 F. Supp. 167 (N.D. Ill. 1996) .................................................................. 6

*Lizotte v. N.Y.C. Health & Hosp. Corp.*,
   No. 85-7548, 1990 WL 267421 (S.D.N.Y. Mar. 13, 1990) ..................................... 6

*Martin v. Reynolds Metals Corp.*,
   297 F.2d 49 (9th Cir. 1961) ......................................................................... 4

*Morales v. Turman*,
   59 F.R.D. 157 (E.D. Tex. 1972) ............................................................... 4, 6

*N.Y. State Ass'n for Retarded Children Inc. v. Carey*,
   706 F.2d 956 (2d Cir. 1983) ........................................................................ 5

*Ollier v. Sweetwater Union High Sch. Dist.*,
   768 F.3d 843 (9th Cir. 2014) ....................................................................... 9

*Santana v. Rios*,
   No. 75-1187 (D.P.R. Apr. 1, 1977) ................................................................ 6

*Shumate v. Wilson*,
   No. 95-0619 (E.D. Cal. Feb. 20, 1996) ........................................................... 6

*United States v. Erie County*,
   No. 09-849, 2010 WL 1038650 (W.D.N.Y. Mar. 19, 2010) .................................... 7

[1506594-1]

ii                                                                                              CV 13 2354 PSG

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION
OF PART OF DEC. 12, 2014 MINUTE ORDER

*United States v. Erie County*,
    No. 09-849, 2010 WL 986505 (W.D.N.Y. Mar. 17, 2010) .................................... 5, 7

*United States v. LoRusso*,
    695 F.2d 45 (2d Cir. 1982) ........................................................................................ 3

*Van Slyke v. Capital One Bank*,
    503 F. Supp. 2d 1353 (N.D. Cal. 2007) ..................................................................... 4

*Walker v. Carnival Cruise Lines*,
    107 F. Supp. 2d 1135 (N.D. Cal. 2000) ..................................................................... 4

*Wyatt v. Hanan*,
    No. CIV. A. 3195-N, 1995 WL 699616 (M.D. Ala. Nov. 8, 1995) ........................... 6

**RULES**

Fed. R. Civ. P. 1 ............................................................................................................. 11

Fed. R. Civ. P. 34 .................................................................................................... 1, 2, 4

Fed. R. Evid. 702 .............................................................................................................. 9

N.D. Cal. Civil L.R. 7-9 .......................................................................................... 1, 3, 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 1 advisory committee's note .................................................................. 11

[1506594-1]

iii

CV 13 2354 PSG

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION
OF PART OF DEC. 12, 2014 MINUTE ORDER

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 24, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs Jesse Hernandez, Cain Aguilar, Ha Cobb, Susan Dilley, Connie Dobbs, Sean Esquivel, Ramona Gist, Martha Gomez, George Greim, Dennis Guyot, Jason Hobbs, Glenda Hunter, Albert Key, Brandon Mefford, Wesley Miller, Richard Murphy, Jeff Nichols, Angel Perez, Sarab Sarabi, Clyde Whitfield, and Robert Yancey, on behalf of themselves and all persons similarly situated (collectively, "Plaintiffs"), will and hereby do move this Court pursuant to Northern District of California Civil Local Rule 7-9(b)(3) for leave to file a motion for reconsideration of a portion of its December 12, 2014 discovery order holding that "[a]ny interviews beyond tour management and safety shall be reserved for depositions." *See* Docket No. 398 ("December 12 Order").  This issue was not briefed by the parties so as to allow the Court to consider the practical implications of such an interview ban.  For the reasons set forth below, Plaintiffs assert that this holding constitutes "A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order."  N.D. Cal. Civil L.R. 7-9(b)(3).  Plaintiffs thus request leave to file a motion asking the Court to reconsider whether Plaintiffs' experts may speak informally with staff members during inspections of the Monterey County Jail (the "Jail") pursuant to Federal Rule of Civil Procedure 34.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all pleadings, declarations, and evidence filed in support thereof, the pleadings and orders on file in the above-captioned matter, and any oral argument or evidence permitted at any hearings on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Northern District Civil Local Rule 7-9, Plaintiffs ask leave of the Court to move for reconsideration of the portion of the December 12 Order that states "Any interviews beyond tour management and safety shall be reserved for depositions."  Docket

[1506594-1]

1

CV 13 2354 PSG

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF PART OF DEC. 12, 2014 MINUTE ORDER

1  No. 398.  The parties did not brief this issue before the December 12, 2014 hearing, and
2  the Court was not presented with the legal and factual considerations raised by placing
3  such a limitation on Plaintiffs' experts.

## FACTUAL AND PROCEDURAL BACKGROUND

5  On December 9, 2014, Plaintiffs requested an informal discovery hearing to
6  consider whether Plaintiffs' counsel would receive notice of, and be allowed to
7  accompany, Jail inspections by experts retained by Defendants County of Monterey
8  ("Monterey County") and California Forensic Medical Group, Inc. ("CFMG," collectively,
9  "Defendants").  Decl. of Michael W. Bien in Supp. of Pls.' Mot. for Leave to File Mot. for
10 Reconsideration of Part of December 12, 2014 Minute Order ("Bien Decl."), filed
11 herewith, ¶ 2.  The parties submitted three-page letter briefs solely focused on this question
12 on December 10, 2014.  Docket Nos. 395, 396; Bien Decl. ¶ 2.
13 On December 12, 2014, the Court heard arguments regarding whether Plaintiffs'
14 counsel could accompany Defendants' expert tours.  During the course of the argument,
15 Defendants represented to the Court that Defendants' counsel did not intend to accompany
16 Plaintiffs' expert inspections unless there was "some type of question and answer session
17 with the…staff."  *See* Docket No. 406 (Dec. 12, 2014 Tr.) ("Transcript"), at 11:2-12:3;
18 Bien Decl. ¶ 3.
19 Defendants' representations raised a different issue than what had been briefed by
20 the parties—whether Defendants' counsel would accompany Plaintiffs' expert tours to
21 facilitate Plaintiffs' experts asking questions about Jail operations.  Bien ¶ 4.  Neither party
22 briefed that very different issue before the hearing.  *Id.* ¶ 5.  During oral argument,
23 Plaintiffs explained that such a limitation would interfere with Plaintiffs' experts' ability to
24 investigate the operations of the Jail pursuant to Federal Rule of Civil Procedure 34(a).
25 Transcript at 23:6-16.  The Court stated that "when it comes to Plaintiffs' **counsel** meeting
26 with Defendants' staff and attempting to interview them, I don't think that would be
27 appropriate."  *Id.* at 18:7-10 (emphasis added).  Ultimately, the Court stated that "normally
28 we don't let one party go and interview informally employees of another," *id.* at 23:25-

[1506594-1]

2  CV 13 2354 PSG
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION
OF PART OF DEC. 12, 2014 MINUTE ORDER

1  24:2, and that Plaintiffs should "take a deposition or two or three" in the presence of their
2  experts in order to learn the basic information regarding Jail operations, *id.* at 23:16-17.
3  Later on December 12, 2014, the Court entered a Minute Entry for the proceeding
4  denying Plaintiffs' request to accompany Defendants' expert tours. In addition, the
5  December 12 Order stated that "Any interviews beyond tour management and safety shall
6  be reserved for depositions." Docket No. 398.
7  Informal interviews by expert witnesses of Jail staff are a routine and important part
8  of inspections of correctional facilities. *See* Decl. of Pablo Stewart in Supp. of Pls.' Mot.
9  for Leave to File Mot. for Reconsideration of Part of December 12, 2014 Minute Order
10  ("Stewart Decl."), filed herewith, ¶¶ 2, 8; Bien Decl. ¶¶ 6, 9-10, 19. In this very case
11  Defendants' medical expert Kathryn Wild, RN spoke with staff during her tours, as did the
12  parties' neutral experts Michael Hackett, Richard Hayward, Ph.D., and Michael Puisis,
13  D.O. Bien Decl. ¶¶ 13-15. Plaintiffs' counsel thus asked Defendants' counsel to
14  accompany them on tours to allow Plaintiffs' experts to ask staff "to explain operations of
15  a Jail unit or program and to answer questions." Bien Decl. ¶¶ 6-7 & Ex. A. Defendants
16  denied Plaintiffs' request on January 8, 2015. *Id.* ¶ 8 & Exs. B, C.[1]
17  Plaintiffs now ask the Court for leave to file a motion to reconsider its statement
18  regarding conversations between Plaintiffs' experts and Jail staff.

## ARGUMENT

**I.  THIS COURT MAY RECONSIDER THIS ISSUE UNDER LOCAL RULE 7-9**

"A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment, whether they be oral, … or written … and there is no provision in the rules or any statute that is inconsistent with this power." *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982). In this District, "[m]otions for reconsideration

---

[1] Plaintiffs have exercised "reasonable diligence in bringing" this motion less than two weeks after Defendants denied Plaintiffs' request. *See* N.D. Cal. Civil L.R. 7-9(b).

are decided within the discretion of the district court. 'To prevail on a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision.'" *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1366-67 (N.D. Cal. 2007) (quoting *Walker v. Carnival Cruise Lines*, 107 F. Supp. 2d 1135, 1138 (N.D. Cal. 2000)).

Northern District Civil Local Rule 7-9(b)(3) permits a party to seek leave to file a motion for reconsideration if there was "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Courts have interpreted such failures to include the failure to "fully or adequately consider" factors that may counsel against a particular holding. *Walker*, 107 F. Supp. 2d at 1138. In *Walker*, the court granted the plaintiffs' motion for leave to file a motion for reconsideration to allow the Court to consider the strong public policy considerations that warranted finding a forum selection clause unenforceable against civil rights plaintiffs. *Id.* As explained below, Plaintiffs respectfully suggest that the Court has also failed to "fully or adequately consider" the ways in which an interview ban on Plaintiffs' experts would hinder the experts from inspecting the Jail's operations.

## II.  RULE 34 PERMITS PLAINTIFFS' EXPERTS TO SPEAK INFORMALLY WITH JAIL STAFF

Federal Rule of Civil Procedure 34 provides in relevant part that:

> [a]ny party may serve on any other party a request ... (2) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon.

Fed. R. Civ. P. 34(a)(2). "Rule 34, like the other rules relating to discovery, is to be liberally construed." *Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 56 (9th Cir. 1961). "When important civil rights are in issue in complex litigation of widespread concern, a court must make every effort to enhance the fact-finding process available to counsel for both sides." *Morales v. Turman*, 59 F.R.D. 157, 159 (E.D. Tex. 1972).

[1506594-1]

4   CV 13 2354 PSG
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF PART OF DEC. 12, 2014 MINUTE ORDER

1   To study an "operation" as that term is used in Rule 34, the expert must be able to
2 ask explanatory questions. *Coleman v. Schwarzenegger*, No. 01-1351, 2007 WL 3231706,
3 at *2 (E.D. Cal. Oct. 30, 2007); *United States v. Erie County*, No. 09-849, 2010 WL
4 986505, at *2-3 (W.D.N.Y. Mar. 17, 2010). In *Coleman*, the three-judge court convened
5 to consider "the impact of overcrowding on the delivery of constitutionally adequate
6 medical and mental health care to inmates in California's prisons" addressed the scope of
7 expert tours during pre-trial discovery. 2007 WL 3231706, at *2. The plaintiffs had
8 issued site inspection notices that included a request that "plaintiffs' experts may confer
9 with prison staff and class members concerning access to medical and mental health care
10 and as to issues of housing, programming, exercise and activities for class members." *Id.*
11 at *1 (internal quotation marks omitted). The court concluded that such requests were
12 proper under Rule 34 because "questions by experts directed to prison employees and to
13 class members concerning those matters identified in plaintiffs' inspection requests are
14 properly included as part of an inspection of 'any operation' on the prison facilities to be
15 inspected." *Id.* at *2.

16   Precedent supports this understanding of how an expert studies an operation under
17 Rule 34. Courts routinely grant discovery orders allowing expert interviews with jail staff
18 members in similar cases. *See, e.g.*, Bien Decl., Ex. D (*Bock, et al. v. County of Sutter, et
19 al.*, No. 11-0536, at 4 (E.D. Cal. May 13, 2013) (discovery order requiring "Defendant
20 County of Sutter [to] make a person(s) available to answer any routine questions regarding
21 the general operations of the jail to assist plaintiffs' experts with understanding their
22 observations during the inspection")); *Erie County*, 2010 WL 986505, at *2-3 ("agree[ing]
23 with the *Coleman* court's construction of Rule 34(a)(2)" and granting plaintiffs' experts
24 "access to [jail] staff who are able to provide information about the premises and processes
25 viewed during the inspection" because such interviews are within "the scope of inspection
26 afforded a consultant or expert to inspect an 'operation' on the property"); *N.Y. State Ass'n
27 for Retarded Children Inc. v. Carey*, 706 F.2d 956, 960-61 (2d Cir. 1983) (upholding
28 district court order permitting plaintiffs' counsel and experts to interview institutional

1 defendants' employees during tours); *K.L. v. Edgar*, 945 F. Supp. 167, 168 (N.D. Ill. 1996)
2 (holding "that the [plaintiffs'] experts' questioning of staff is necessary, and cannot be
3 accomplished effectively in any other way than on-site interviews" in case concerning
4 adequacy of care in state mental hospital system); Bien Decl., Ex. E (*Shumate v. Wilson*,
5 No. 95-0619, slip op. at 2-3 (E.D. Cal. Feb. 20, 1996) (overruling defendants' objections to
6 plaintiffs' request that their "expert be permitted to communicate with class members and
7 with staff")); *Lizotte v. N.Y.C. Health & Hosp. Corp.*, No. 85-7548, 1990 WL 267421, at
8 *5 (S.D.N.Y. Mar. 13, 1990) (holding that "plaintiffs' counsel and expert may
9 communicate with any staff member of the HHC psychiatric emergency rooms if that
10 employee is willing or desires to talk to them"); Bien Decl., Ex. F (*Capps v. Atiyeh*, No.
11 80-6014, slip. op. at 1-2 (D. Or. Feb. 8, 1985) (allowing Plaintiffs' expert "to speak to
12 medical staff, patients or both" at Oregon State Penitentiary)); Bien Decl., Ex. G (*Santana
13 v. Rios*, No. 75-1187 (D.P.R. Apr. 1, 1977) (granting experts "the opportunity to interview
14 any minor and staff member")); *Morales*, 59 F.R.D. 157; *see also Barnhardt v. Meridian
15 Mun. Separate Sch. Dist.*, No. 65-1300, 2012 WL 1067105, at *4 (S.D. Miss. Mar. 28,
16 2012) (allowing interviews of "Principals, Assistant Principals, the District Superintendent
17 and the Chief Security Reserve Officer" about school discipline policies during Rule 34
18 inspection to "to aid the [plaintiff's] experts in forming their opinion"); *Wyatt v. Hanan*,
19 No. CIV. A. 3195-N, 1995 WL 699616, at *1 (M.D. Ala. Nov. 8, 1995) (allowing
20 plaintiffs' expert to speak with teachers and students during tour of adolescent center);
21 *Battle v. Anderson*, 447 F. Supp. 516, 524 (E.D. Okla. 1977) (defendant prison system's
22 prohibition on plaintiffs' experts conversing with "line employees or inmates" and
23 "wardens of the various prisons" constituted "a willful attempt to prevent the Court from
24 knowing the truth" about prisons' conditions); Bien Decl. ¶¶ 11-12; Stewart Decl. ¶¶ 2, 8.
25      As in the cases cited above, Plaintiffs' experts will investigate the processes and
26 procedures related to the specific issues raised by Plaintiffs' Second Amended Complaint.
27 *See* Docket No. 41 ("Complaint").  And as in these cases, Plaintiffs' experts need to speak
28 with staff "about the premises and processes viewed during the inspection" to understand

1  what they see during the course of their inspection.  *See Erie County*, 2010 WL 986505, at
2  *2; Stewart Decl. ¶ 7.  In order to understand what Plaintiffs and their experts are
3  observing during the course of their inspections, such as what purposes different areas of
4  the Jail serve, how security checks in each unit or medication distribution take place, or
5  how grievances are collected, it is common sense that Plaintiffs' experts would need to ask
6  staff those questions during their tours.
7        Moreover, there is no danger to Defendants from Plaintiffs' experts asking these
8  questions with defense counsel present on these tours.  *See Erie*, 2010 WL 986505, at *3
9  ("[T]here is no danger of prejudice or element of surprise to Defendants because their
10 attorneys are permitted to accompany the consultants and advise County employees as they
11 see fit.").  Defendants' counsel can object or assert privileges if appropriate.  *See United*
12 *States v. Erie County*, No. 09-849, 2010 WL 1038650, at *1 (W.D.N.Y. Mar. 19, 2010)
13 (denying defendants' motion to stay discovery order permitting interviews of jail staff
14 because defendants cannot show harm as "County attorneys will be present and able to
15 instruct employees during the interviews, thus giving them the opportunity to protect
16 against improper disclosures" and because "the interviews fit within the discovery process
17 authorized by Rule 34").
18       While the Court's decision to bar counsel from opposing party expert tours may
19 appear even-handed, it raises a host of problems.  Defendants' experts will be allowed to
20 ask staff questions based on what they see, but Plaintiffs' experts will not have that same
21 opportunity.  While Plaintiffs' experts can speak to prisoners, and Defendants' experts
22 cannot, these are not equivalent prohibitions.  One cannot expect prisoners to be able to
23 explain Jail operations in a way that staff can.  It further invites needless disputes about
24 what happened on the tour, and whether the experts' communications with staff were
25 appropriate either under the existing order (i.e., whether the communications were properly
26 limited to " tour management and safety"), or under Rule 34 as properly construed to allow
27 reasonable inquiry into the operations being observed.  There is no risk of such disputes if
28 defense counsel are present for Plaintiffs' tours when Plaintiffs' experts asks questions of

1 staff.

## III. DEPOSITIONS ARE NOT AN ADEQUATE SUBSTITUTE

Plaintiffs do not bring this motion to circumvent formal deposition procedures. Informal explanatory questions about what experts observe while touring a jail are standard and approved methods of Rule 34 discovery. *See generally* Section II, *supra*. Plaintiffs' experts cannot themselves take depositions, and any information concerning Jail operations that Plaintiffs' counsel learns through depositions occurring weeks or months after an expert's tour does not and cannot replicate the usefulness of brief communications between experts and staff during the tour.

For example, Plaintiffs allege that the Jail maintains an inadequate screening and intake process that fails to identify individuals with serious medical and mental health needs. Complaint ¶¶ 98-100. In order for Plaintiffs' experts to evaluate what intake procedures are actually followed, the experts need to ask questions of the custody staff that conducts the intake screening to understand why, for example, staff checked the box indicating that a particular prisoner appeared to be under the influence of alcohol, why staff noted or failed to note visible injuries or potential developmental disabilities, or how staff chose the initial housing placement for a particular prisoner. Experts further need to be able to ask questions about why a particular prisoner was referred to medical or psychiatric staff at intake or why an individual was placed in isolation. These are not questions that can be asked later. The basic information contained on the Jail's intake screening forms is insufficient to trigger a staff member's memory of a particular prisoner whom they evaluated weeks or months previously. Bien Decl. ¶ 16.

As another example, Plaintiffs allege that the Jail fails to identify, treat, and supervise prisoners at risk for suicide. Complaint ¶¶ 200-17. To inspect Defendants' suicide watch operations, Plaintiffs' experts will need to be able to ask questions of the clinical and custodial staff responsible for implementing suicide watch procedures, in the context of observing them at work in the actual physical locations where patients on suicide watch are housed and observed. Stewart Decl. ¶¶ 5-7; Bien Decl. ¶ 17. The same

[1506594-1]

8   CV 13 2354 PSG

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF PART OF DEC. 12, 2014 MINUTE ORDER

applies to asking staff how grievances are collected, responded to, and recorded, where and how medical and mental health records are kept, where screenings are done, how sick call lists are created and maintained, how safety checks are conducted, how medication is distributed, or where staff members observing prisoners housed in each unit are stationed. Bien Decl. ¶¶ 17-18.  Plaintiffs' experts may also need to have handwritten notes in prisoner records deciphered for them, or to have the author of medical notes identified, so they can understand medical records.  Bien Decl. ¶ 18.  Likewise, they may have questions about the status of a pending test or laboratory result that has been ordered, but that is not in a prisoner's medical record—the lab results may be among loose filings that staff could easily retrieve if asked while the expert is on-site, or the pending test may have been rescheduled for reasons that staff know but that are not clear from the record itself.  *Id.* Again this critical data would be incredibly difficult or impossible to retrieve via a deposition carried out weeks or months after the experts' tour.

Furthermore, Federal Rule of Evidence 702 requires that expert "testimony is the product of reliable principles and methods."  Fed. R. Evid. 702(c).  *See Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) (experts must be able to "show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field"); *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002).  Reliable methodology in prison litigation requires a thorough tour of the facility that includes conversations with staff members.  Stewart Decl. ¶¶ 2-4.  Indeed, Monterey County objected to Dr. Stewart's report in support of class certification precisely on the grounds that "Dr. Stewart has not conducted any inspection of the Monterey County jail facilities; Dr. Stewart **has not interviewed any County staff, CFMG staff**, or prisoners…"  Docket No. 133-2 (County Evidentiary Objections) (emphasis added). Conversely, it is not a recognized method of data-gathering in prison litigation for experts to rely solely on filtering questions through attorneys in a deposition setting.  Stewart Decl. ¶ 8.  *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860-61 (9th Cir. 2014) (affirming district court's dismissal of expert under *Daubert* because expert failed "speak

to anyone at [school] about the [athletics fields in question]").

Plaintiffs are not alone in recognizing that talking to staff during inspections is the standard methodology for touring a jail.  Defense and neutral experts in this case have already informally interviewed Jail staff in forming their opinions.  Bien Decl. ¶¶ 13-15.  Kathy Wild, Defendant CFMG's expert, testified that she spoke with a number of Jail medical staff members during a site visit about "what each room was for," including "the booking area," "the outpatient housing units," the "clinic," and "the safety cells"; "how people were processed through"; and what different notations in patient records meant.  *Id.* ¶ 13 & Ex. H at 75:19-77:8; 76:20-77:3; 77:9-78:8.  Ms. Wild testified that these kinds of questions are "the same questions you would ask when you're doing a survey, because it – it helps to understand the flow of how things happen in the jail."  *Id.* ¶ 14 & Ex. H  at 76:20-77:3.  Similarly, Dr. Richard Hayward, a neutral expert, included in his report and recommendations a laundry list of the multiple interviews he conducted with a variety of medical and custody staff.  *Id.* ¶ 15.  These conversations allowed Dr. Hayward to learn facts that would otherwise be impossible find out, including why socialization therapy groups were not occurring on the day he toured the Jail.  *Id.*  Dr. Michael Puisis, another neutral expert, testified in his June 16, 2014 deposition that he spoke with multiple CFMG members about, for example, CFMG's staffing plan and staff schedules.  *Id.* & Ex. I at 103:10-108:25; 284:11-285:14.  And Mr. Hackett, another neutral expert, wrote in his report that he spoke with "Department executives, management and line staff" including the Sheriff and Undersheriff.  *Id.* ¶ 15.

Plaintiffs' experts need to be able ask the same kinds of who, what, when, why, and how questions asked by Ms. Wild, Mr. Hackett, Dr. Hayward, and Dr. Puisis during their time in the Jail to understand the operations of the Jail.  Otherwise Plaintiffs' experts will lack all context for understanding what they are seeing.  Forbidding Plaintiffs' experts from asking explanatory questions would result in an inefficient waste of time and resources by necessitating longer tours and more depositions.  This undermines the Federal Rules of Civil Procedure's fundamental goal of "secur[ing] the just, speedy, and

1  inexpensive determination of every action." Fed. R. Civ. P. 1; *see also* Fed. R. Civ. P. 1
2  advisory committee's note to 1993 amendment (recognizing "the affirmative duty of the
3  court to exercise the authority conferred by these rules to ensure that civil litigation is
4  resolved not only fairly, but also without undue cost or delay").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court for leave to file a motion for reconsideration of the Court's December 12 Order that "Any interviews beyond tour management and safety shall be reserved for depositions." Plaintiffs respectfully ask this Court to recognize that it is a standard and approved method of Rule 34 discovery for experts to confer with correctional and medical staff. Plaintiffs ask that their experts be allowed to confer with Jail staff about the operations of the Jail and the implementation of the Jail's custodial, medical, mental health, and disability policies and practices. Plaintiffs further request that this Court modify the portion of its December 12 Order precluding Defendants' counsel from accompanying Plaintiffs' expert tours by providing that Defendants' counsel have the right to be present for any conversation between Plaintiffs' experts and Jail staff.

DATED: January 20, 2015            Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Michael W. Bien*
    Michael W. Bien

Attorneys for Plaintiffs