1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| JESSE HERNANDEZ et al., | ) | Case No.: 5:13-cv-2354-PSG |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING MOTION TO** |
| v. | ) | **CERTIFY CLASS AND DENYING** |
| | ) | **MOTION TO STRIKE** |
| COUNTY OF MONTEREY, et al., | ) | |
| | ) | **(Re: Docket Nos. 48, 181)** |
| Defendants. | ) | |
| | ) | |

On any given day, approximately 1000 adult men and women find themselves in the

Monterey County Jail.[1]  This is a case about their custody and care at the hands of Defendants

County of Monterey, Monterey County Sheriff's Office and California Forensic Medical Group,

Inc.

Plaintiffs are current or former inmates who allege that a variety of jail policies and

practices regarding inmate safety, medical care, mental health care and disabilities expose them to

_____

[1] Unless otherwise cited, all facts come from Plaintiffs' second amended complaint at Docket No. 41.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  a substantial risk of serious harm to which Defendants are deliberately indifferent.  The inmates

2  seek declaratory and injunctive relief from the alleged constitutional violations.

3          After reviewing the substantial record compiled by the parties, which includes four neutral

4  expert reports, two outside expert reports commissioned at the County's request, declarations from

5  two experts retained by Plaintiffs and various inmates, the court finds that Plaintiffs meet the

6  standard for class certification set forth in Federal Rule of Civil Procedure 23 and as construed by

7  the Ninth Circuit.  It therefore certifies a class of inmates challenging jail safety and health care

8  policies and practices, and a subclass of inmates challenging jail disability policies and practices.[2]

9

10  _____

11  [2] The court may take judicial notice of a "fact that is not subject to reasonable dispute because it is
generally known" or "can be accurately and readily determined from sources whose accuracy

12  cannot reasonably be questioned."  Fed. R. Evid. 201(b).  If the fact is not in dispute and may be
verified by resort to the public record, *see id.*, the court takes judicial notice as requested.

13          Plaintiffs first request that the court take judicial notice of 55 applications made by the
Sheriff's Office to the Monterey Superior Court in an attempt to relieve overcrowding, and

14  subsequent orders.  *See* Docket No. 49-11, Ex. Z; Docket No. 54 at 1.  The court takes judicial
notice of these applications and orders because they were filed in state court.  Second, Plaintiffs ask

15  the court to take judicial notice of County charts documenting the jail's average daily population.
*See* Docket No. 49-13, Ex. AA and BB; Docket No. 54 at 2.  As the daily inmate population is

16  verifiable and not in dispute, the court takes judicial notice.  Third, Plaintiffs seek judicial notice of
minutes of the Monterey County Board of Supervisors in which the Board approved legislation to

17  "accept the Jail Facility Needs Assessment Report."  *See* Docket No. 49-16, Ex. FF; Docket No. 54
at 3.  The court takes judicial notice of this legislative enactment.  Fourth, Plaintiffs request judicial

18  notice of the Monterey County Correction Facility Information Manual and certain sections of the
Custody Operations Bureau's Policies and Procedures.  *See* Docket Nos. 49-1, Ex. E; Docket No.

19  49-2; Ex. F; Docket No. 54 at 3-4.  The court takes judicial notice of these agency manuals, rules

20  and policies not subject to a reasonable dispute.  Fifth, Plaintiffs ask for judicial notice of the
United States Census Bureau Report on Americans with Disabilities.  *See* Docket No. 49-17; Ex.

21  II; Docket No. 54 at 4.  The accuracy of these facts are verifiable and certain, and so the court again

22  takes judicial notice.

23          The County first seeks judicial notice of Monterey County Board Orders:  approving
Amendment #1 to Agreement A-1083, *see* Docket No. 140-1, Ex. A; Docket No. 133-1 at 2;

24  designating the Monterey County Sheriff's Office as the authorized representative on Medi-Cal
applications, *see id.*, Ex. B; Docket No. 133-1 at 2; authorizing $4,032,778 in County funds to be

25  used for the County of Monterey Jail Housing Addition, *see id.*, Ex. C; Docket No. 133-1 at 2;
authorizing an additional $4,867,222 in County funds to be used for the Jail Housing Addition

26  Project, *see id.*, Ex. D; Docket No. 133-1 at 2; and authorizing Sheriff Scott Miller to submit an
application for a local adult detention facility construction grant and expenditure of $200,000.  *See*

27  *id.*, Ex. E; Docket No. 133-1 at 2.  The court takes judicial notice that these board orders occurred.
Second, the County seeks judicial notice of affidavits and minute orders of conflict as to Glenda

28  Hunter, Angel Perez, Ha Ngoc Tran, Dennis Guyot, Albert Key and Brandon Mefford.  *See id.*, Ex.

2

# I.

The United States and California Constitutions require California's counties to provide for the safety and well-being of inmates housed in county jails.[3]  To meet these obligations, as well as those imposed by federal and state statutes,[4] Monterey County has promulgated extensive policies governing health care and conditions of confinement.  These policies apply to all of the inmates in its custody and all of its staff throughout its main jail in Salinas.

Since 1984, Monterey County has contracted with CFMG, a private health care provider, to provide medical, dental and mental-health care services to inmates.  Under the terms of its contract, CFMG agreed to follow all County policies and to work with the County to implement additional policies governing such matters as health care staffing, access to prescriptions, emergency care, and mental health services.  Monterey County regularly monitors CFMG's compliance with these policies.

Twenty-one current or former inmates brought this suit.  Plaintiffs allege a variety of jail policies and practices "fail to keep [inmates] safe from violence, to deliver adequate medical and mental health care or to provide required assistance to [inmates] with disabilities."[5]  Plaintiffs support these general allegations with detailed references to dozens of specific jail policies and practices, including inadequate staffing, training, space, inmate classification, intake health

---

H-N; Docket No. 133-1 at 3.  The court takes judicial notice of the Public Defenders' declarations of conflict.

CFMG requests the court take judicial notice of a judicial order at Exhibit G to the Bertling Declaration.  *See* Docket Nos. 243, 184-2, Ex. G.   The court does not do so because Exhibit G to the Bertling Declaration is actually a deposition.

[3] *See* U.S. CONST. amend. VIII; U.S. CONST. amend. XIV; CA Const. art. I, § 7; CA Const. art. I, § 17.

[4] *See, e.g.* Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*; Rehabilitation Act of 1973, 29 U.S.C. § 701; Cal. Gov't Code § 11135.

[5] Docket No. 56 at 1.  While Plaintiffs refer to jail residents as "prisoners," the court will adhere to the alternative reference of "inmates."

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

**United States District Court**
For the Northern District of California

screening, care scheduling, medication, infection control, emergency response and suicidal inmate segregation.

Plaintiffs also claim that inmates are routinely denied reasonable accommodation for their disabilities. They allege, for example, that inmates who cannot climb stairs spend months without going outside because the exercise yard can only be accessed up a flight of stairs. Inmates who use sign language to communicate are not provided interpreters for the intake process, doctor's appointments and disciplinary hearings. Defendants are further alleged not to maintain any central list, electronic or otherwise, of inmates with disabilities and the accommodations they require. The result, say Plaintiffs, is that "because Defendants completely lack policies and practices for evacuating and communicating with [inmates] with disabilities in case of emergencies, including natural disasters and security incidents, [inmates] with disabilities are at increased risk of injury in such circumstances."[6]

With respect to all these claims, Plaintiffs allege that Defendants are aware of these constitutionally defective conditions and tolerate the resulting risk to which inmates are exposed. For example, Plaintiffs allege that in 2007, the County commissioned a third-party evaluation of the jail, which resulted in a June 19, 2007 report called "County of Monterey, Office of the Sheriff, Needs Assessment." The 2007 report concluded that "[t]he current combination of insufficient beds, an inadequate detention facility and understaffing has resulted in an almost untenable situation. In 2011, the County asked the third-party consultant to update the 2007 report to reflect amendments to state law and changes within the Sheriff's Office and the jail population. This updated report, dated December 30, 2011, reached the exact same, word-for-word conclusion:

_____

[6] *Id.* at 19.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1

2

"The current combination of insufficient beds, an inadequate detention facility and understaffing has resulted in an almost untenable situation."[7]

Plaintiffs seek a declaration that Defendants are violating federal and state law and an injunction compelling Defendants to provide inmates with adequate protection from violence from other inmates, to provide inmates with adequate medical and mental health care, and to provide reasonable accommodations to and cease discriminating against inmates with disabilities.[8]

## II.

Shortly after filing their second amended complaint,[9] Plaintiffs moved for class certification. In addition to the detailed allegations of their complaint, Plaintiffs cite thousands of pages of documents that they secured by investigation and from public records requests, expert reports by four neutral specialists in prison medical care and conditions of confinement retained by mutual agreement of the parties, two reports on conditions at the jail commissioned by the County in 2007 and 2011, two declarations from experts they retained and their own declarations. The investigation and records requests produced (1) more than one hundred interviews of former and current inmates in the jail; (2) tens of thousands of pages of medical and custody records for current and former inmates in the jail; (3) documents produced by the County in response to three requests for information pursuant to the California Public Records Act and (4) hundreds of Sheriff's Office reports of incidents that occurred in the jail.

In their responses, Defendants submit declarations from attorneys, jail staff and medical experts, news articles, depositions, declarations, grievance and medical records of Plaintiffs, board orders for improvements and a letter from Monterey County Public Defender James Egar praising

---

[7] *See* Docket No. 41 at 3:9-22.

[8] *See id.* at 132-35.

[9] On September 29, 2014, the court denied Defendants' motions to dismiss the second amended complaint. *See* Docket No. 128.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

CFMG's work.[10]  They claim conditions have improved, despite difficulties due to inmate realignment resulting from the enactment of Assembly Bill 109.[11]

## A.

The 135-page second amended complaint in this case sets out detailed factual allegations concerning the existence of jail policies and practices impacting the safety, health and disability accommodations of all inmates.  According to Plaintiffs, these policies and practices expose all jail inmates to a substantial risk of harm.

Regarding their safety claims, Plaintiffs allege the following policies and practices:  (1) insufficient custody staffing;  (2) inadequate inmate classification system; (3) dangerous and inadequate jail facilities that are difficult to safely monitor; (4) housing more inmates in the jail than the jail's rated capacity and (5) inadequate training of custody staff.

Regarding their medical care claims, Plaintiffs allege the following policies and practices: (1) failure to provide timely access to health care; (2) insufficient custody staffing to ensure inmates receive necessary health care; (3) insufficient health care staff to ensure the timely and appropriate treatment of inmates' serious medical needs; (4) failure to adequately supervise health care staff; (5) failure to provide adequate, clean and confidential clinical spaces;(6) inadequate or non-existent written policies for intake health screening, health care requests, emergency response, continuity of medications, care for inmates with chronic illness, housing of inmates in segregation, care for developmentally disabled inmates, care for patients on dialysis, care for elderly patients, care for patients with dementia, care for patients requiring wheelchairs, care for inmates who have physical disabilities, housing for pregnant women, persons with communicable diseases, the mentally ill and the terminally ill; (7) failure to adequately identify inmates in need of health care,

---

[10] *See* Docket Nos. 133-179; 299, 369, 368.

[11] *See, e.g.,* Docket No. 169 at 17, 19, 29; Docket No. 369 at 2-3.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

including inmates with chronic illness, during the intake process and thereafter; (8) use of inadequately trained custody staff to conduct intake health screening; (9) failure to provide adequate treatment to inmates with chronic diseases; (10) failure to provide adequate treatment to inmates with infectious diseases; (11) failure to provide timely and appropriately treatment by outside medical providers and specialists when necessary; (12) failure to provide timely and adequate treatment for inmates experiencing withdrawal; (13) failure to provide necessary medication and medical devices; (14) failure to timely and adequately respond to requests for health care; (15) failure to provide a confidential means for inmates to request health care; (16) failure to timely and adequately respond to health care emergencies; (17) failure to provide appropriate and timely post-operative and post-hospital discharge care; (18) failure to maintain adequate health care records; (17) failure to operate an adequate quality improvement program; (18) failure to adequately train medical and custody staff regarding the provision of health care to inmates and (19) failure to provide timely and appropriate dental care.

Regarding their mental health claims, Plaintiffs allege the following policies and practices: (1) failure to provide mentally ill inmates medically necessary mental health treatment such as psychotropic medication, therapy and inpatient treatment; (2) failure to provide inmates access to timely and appropriate inpatient mental health care; (3) inadequate suicide prevention policies and practices; (4) failure to provide suicidal and self-harming inmates adequate mental health care; (5) housing inmates with mental illness in administrative segregation because they have mental illnesses; (6) failure to provide a clean, safe and therapeutic location for the housing of inmates at risk for suicide; (7) inappropriate use of safety cells, restraints and restraint chairs; (8) failure to adequately monitor inmates at risk of suicide and (9) failure to eliminate suicide hazards in administrative segregation.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Regarding their disability accommodation claims, Plaintiffs allege the following policies and practices:  (1) failure to identify and track inmates with disabilities; (2) failure to identify and track the accommodations that inmates with disabilities require; (3) failure to ensure that inmates with disabilities receive and retain needed assistive devices and auxiliary aids; (4) failure to ensure that inmates with disabilities that require accommodations in housing receive and retain appropriate housing assignments; (5) housing inmates with disabilities in administrative segregation, where inmates have less access to programs, services, activities and privileges; (6) failure to provide sufficient housing for inmates in wheelchairs; (7) failure to ensure that each program, service or activity offered to inmates in the jail, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities; (8) failure to ensure that each part of the facilities at the jail altered after January 26, 1992, in a manner that affects or could affect the usability of all or part of the jail, complies with relevant accessibility standards, including the Uniform Federal Accessibility Standards, the Americans with Disabilities Act Accessibility Guidelines and the 2010 Americans with Disability Act Standard for Accessible Design; (9) failure to provide effective communication to inmates with disabilities that affect communication; (10) failure to adequately take disabilities into account in the disciplinary process; (11) failure to provide sign language interpreters to inmates who use sign language as their primary method of communication; (12) failure to ensure the safe evacuation of inmates with disabilities in an emergency and (13) failure to operate an effective and prompt grievance system for inmates to request accommodations for their disabilities.

For each of these alleged policies and practices, the second amended complaint sets out multiple paragraphs or pages of particularized factual allegations.  For example, regarding Defendants' alleged safety policies and practices, Plaintiffs allege roughly 150 separate instances of violence were reported from (presumably January) 2011 to September 2012, occurring in nearly

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

every area of the jail, and most requiring medical attention at the jail or the local hospital. Weapons such as shanks and Tomahawks are "readily available" in the jail.[12]  Surveillance is inadequate, as many assailants remain unidentified, most cameras do not have recording capabilities, and the jail's understaffing means officers are rarely positioned to visually identify the attackers.  Reporting is inadequate for fear of retaliation given the lax conditions.  Undertraining of staff means inadequate intervention and confiscation of weapons.  Plaintiffs say that despite incident reports and the 2007 and 2011 Jail Needs Assessments, Defendants lack policies and practices for regularly reviewing incident reports to identify systemic problems.[13]

As another example, regarding the alleged medical care policies and practices, Plaintiffs claim that "[t]hough Defendants have a policy that all [inmates] are supposed to be seen by medical staff on the next available sick call day after submitting a sick call slip, in practice, Defendants use Licensed Vocational Nurses (LVNs) to screen the sick call slips and determine whether the [inmate] should actually be seen by medical or mental health care staff.  No standardized protocols exist to guide LVNs' exercise of discretion in determining when [inmates] should receive a face-to-face appointment with a nurse or other medical or mental health care clinician."[14]  Plaintiffs further allege that "[c]onsequently, LVNs arbitrarily determine whether the content of a sick call slip, often written by [an inmate] who can barely read or write, warrants an appointment with a nurse or physician."  Plaintiffs also detail the harm that members of the proposed class suffer as a result of these policies.[15]

---

[12] *See* Docket No. 41 at 36.

[13] *See id.* at 35-37.

[14] *Id.* at 44.

[15] Plaintiffs allege that during "Plaintiff Hernandez's term of incarceration from April 28, 2012 to September 27, 2013, he required significant medical attention for his ileostomy and, after the ileostomy was removed, for his post-surgical care. On many occasions, Plaintiff Hernandez submitted sick call slips complaining of abdominal pain or other related symptoms. He frequently

9

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As still another example of Plaintiffs' medical care claims, Plaintiffs allege that "Defendants have failed to implement appropriate triage procedures to ensure that non-emergency medical needs are attended to before they develop into emergencies."  According to the complaint, Methicillin-resistant Staphylococcus aureus (commonly known as "staph") infections are frequently reported at the jail.  Many inmates report filing multiple sick call slips for emerging and beginning staph-related wounds, but are not seen until their wounds develop into serious and emergency conditions requiring intense treatment.[16]  The complaint explains that "one [inmate] was not seen for a staph-infection-caused wound until it developed into cellulitis and a necrotizing soft tissue infection, requiring intensive and invasive treatment.  Another [inmate] had a staph infection-caused abscess that required the insertion of a surgical drain into the wound, which Defendants then failed to properly monitor and cleanse following the procedure."[17]

Yet another example of Plaintiffs' medical care claims concern Defendants' alleged policies and practices for medical screening.  Plaintiffs allege "Defendants fail to adequately train custody and medical staff in how to timely and appropriately identify medical problems during the screening and intake process.  When [an inmate] is newly booked into the jail, medical staff may

---

experienced significant delays before he was seen by medical staff. As one example, he submitted a sick call slip on October 2, 2012, complaining of not receiving certain medications for his stomach and was experiencing strong cramping pains; he was not fully evaluated by appropriate medical staff until October 26, 2012—24 days later." *Id.* at 44:12-24.  As another example, Plaintiff Hernandez submitted sick call slips related to pain in his abdomen on November 18, 25, and December 2, 2012. He was not evaluated by an appropriate provider prior to being transferred to the hospital on or around December 11, 2013 for his ileostomy reversal surgery, a period of 23 days." Plaintiffs similarly allege that "[w]hen Plaintiff Sarabi complained about intense pain in his right foot/ankle, and voiced concern about a broken ankle and a possible concussion one hour after he was attacked by another inmate, one of the guards outside his room said, "You're a tough guy, suck it up, if you had broken your ankle you would be in more pain." *Id.* at 46:12-17.

[16] *See id.* at 45.

[17] *See id.*

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

not even play a role in screening the [inmate]."[18]  Plaintiffs further allege that "[c]ustody staff (who are not sufficiently trained to identify medical needs) complete a brief one-page health screening form during a cursory interview with the [inmate] in a non-confidential space.  Medical staff only evaluate [inmates] at intake if the custody staff note a problem on the screening form.  The screening form used by custody fails to capture critical and basic information necessary to identify [inmates] in need of medical attention."[19]

Regarding Defendants' alleged mental health policies and practices, in addition to intake and tracking problems, Plaintiffs allege that "Defendants sometimes place [inmates] who arrive at the jail and who are prescribed psychotropic medications on what Defendants call a detoxification treatment. The detoxification treatment involves refusing, for up to 90 days, to provide [inmates] with the psychotropic medications they were taking before they were booked into the Jail. . . . [Inmates] placed on the detoxification treatment and removed from psychotropic medications experience unnecessary pain and increases in psychiatric symptoms including paranoia, hallucinations, and suicidality. . . . They are also at heightened risk of failing to respond to medications once they are restarted."[20]  As one example, Plaintiff Murphy's January 18, 2013 Intake Health Screening Form (completed by custody staff) and his Intake Triage Assessment form (completed by medical staff of CFMG) indicated self-reported mental health problems.  Further, medical records in CFMG's possession from a prior term Murphy had spent in the jail indicated he suffered from mental illness and had received psychiatric medications.  Only four days after intake did Murphy have an appointment with a Licensed Psychiatric Technician who lacked authority to prescribe treatment or medication.  Murphy submitted several sick slips from that day on, stating:

---

[18] *See* Docket No. 41 at 42.

[19] *Id.* at 42:6-14.

[20] Docket No. 41 at 69-70.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

"need psych meds – seeing and hearing things"; "need psych meds or psych hospital, Attn: head psych please";  "I take varies physch medication . . . for hearing voices and seeing demons coming out of the walls driving me crazy, can't sleep or eat right at all. Ive been trying to see a physch doctor, PLEASE help if possible"; "placing my life in serious danger and possible death after many attempts to receive my medications during and after intake.  I'm a disabled vet who served my country with honorable discharge and should not be treated like trash over a officers attitude."  On January 28, 2013 he informed staff that he was hearing demonic voices that were telling him to kill himself.  Consequently, Defendants placed Murphy in a rubber room, from which he was not released until three days later.  Murphy was not seen by mental health care staff with authority to prescribe treatment until January 29, 2013.

As another example, Plaintiffs allege that Defendants house inmates with mental illness in administrative segregation units in such a way that inmates suffer substantial risk of serious harm.[21] Plaintiffs describe how "Jessie Crow and Daniel Lariviere committed suicide by hanging in administrative segregation in 2010 and 2011 respectively. . . . [I]f Defendants had conducted safety checks every half hour at intermittent and unpredictable times, they may have been able to prevent Mr. Crow or Mr. Lariviere from committing suicide."[22]

Plaintiffs allege inmates with mental illnesses are punished and discriminated against.  For example, after engaging in self-harming behavior, Plaintiff Mefford has been placed on suicide watch and put in an "unsanitary" rubber room at least five separate times for varying lengths of time since entering the jail.  Mefford "was able to continue engaging in self-harming behavior inside the rubber room, by banging his head repeatedly against the door until he was bleeding."[23]

---

[21] *See id.* at 88.

[22] *See id.* at 90.

[23] *See id.* at 78.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Custody staff responded by placing Mefford in a restraint chair.  Mefford freed himself from the restraint chair at least once, and began again hurting himself.  "Custody staff has routinely failed to conduct safety checks twice every thirty minutes as required by the Jail's own policies. The Jail has also failed to provide him with adequate food and water during these periods of time.  Plaintiff MEFFORD has informed the Jail medical and custody staff repeatedly that sensory deprivation and particularly a lack of light make his anxiety and other psychiatric conditions much worse.  He has also stated a reluctance to express his true level of suicidality to staff because of fear of being placed in a rubber room.  Despite this, custody staff continues to place him in rubber rooms."[24] These experiences show inadequate training, identification, tracking, treatment, suicide-watch, facilities, housing, prescription, monitoring, evaluation, records, as well as apparent discrimination and punishment of inmates with mental illnesses.[25]

Regarding Defendants' alleged disabilities accommodation policies and practices, Plaintiffs claim Defendants' failures to accurately identify new inmates' disabilities and needed accommodations during the intake process result in the denial of accommodations mandated by the ADA, Rehabilitation Act, and California disability rights law, placing inmates at risk of discrimination, injury, and exploitation.  For example, during booking into the jail in August 2012 and again in December 2012, custody staff completed Monterey County Sheriff's Office Intake Health Screening forms for Plaintiff Yancey.  Despite Yancey's complete hearing impairment, staff did not indicate on the forms that he had a hearing disability.  Accordingly, staff throughout the jail were unable to identify Yancey as hearing impaired, and he received no accommodations for his disability.[26] Yancey was not provided with a sign language interpreter for his communications

---

[24] *See id.*

[25] *See id.* at 67-88.

[26] *See* Docket No. 41 at 99.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

with jail staff, including at medical appointments, at a disciplinary hearing, during the booking and classification process[27] or for church services.[28]   Yancey submitted a grievance, requesting accommodations relating to his hearing impairment, but he received no response.[29]

Another inmate who was booked into the jail in January 2012 with a mobility impairment required a cane to help him safely ambulate and access his housing unit and required safe access to a bed.  During the intake process, the jail failed to identify him as having a mobility impairment requiring those accommodations; he was not provided with a cane and he was placed in the only available bed in his housing unit on the upper bunk of a triple bunk.  Without a cane, the inmate fell and injured himself on a number of occasions.  He slept on the floor because it was too difficult to access his bunk.[30]

The sum total of all this is that Plaintiffs allege a variety of jail policies and practices applying to all inmates and staff dealing with safety, health care and disabilities, and that these policies and practices expose all members of the proposed class and subclass to a substantial risk of harm.

**B.**

Plaintiffs also support their motion for class certification with documents obtained by investigation and various requests pursuant to California's Public Records Act.  For example, they submit Sheriff's Office's incident reports of the 2011 and 2012 incidents of violence between inmates alleged in the complaint.[31]  Over 100 of these incidents led to at least one inmate requiring

---

[27] *See id.* at 101.

[28] *See* Docket No. 52 at ¶¶ 4, 6-8, 11-13, 23.

[29] *See* Docket No. 41 at 103.

[30] *See id.* at 100.

[31] *See* Docket No. 49 at ¶¶ 45-47.

14

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California

medical treatment.[32]  Widespread violent incidents were reported in 26 out of 29 housing units.[33]

Highlighting the impact of jail overcrowding on inmate safety, Plaintiffs also submit Defendants'

regular applications to the Superior Court for the County of Monterey for orders to release inmates

on an accelerated basis pursuant to California Penal Code § 4024.1.[34]  To support these

applications, jail administrators repeatedly swore that unless the court authorized inmate releases,

the overcrowding in the jail would make it impossible for staff to "adequately supervise inmates

and to properly house them in accordance with the approved classification plan."[35]  In these

applications, CFMG Director Dr. Taylor Fithian also repeatedly "advised that the excessive

number of inmates housed in the jail compromises the health of the inmates and the staff working

at the facility."[36]  Jail administrators, including the Sheriff, also have addressed the impact of

overcrowding in other public forums.[37]

## C.

Plaintiffs submit a total of eight reports from different experts on the policies and practices

in dispute.  Four of these experts are independent of the parties, and were jointly retained by the

parties in 2013.  At the parties' request, the court ordered "a process of mutually agreeing to

experts who will review and analyze the conditions at the Monterey County Jail and issue

reports"[38] in four areas:  medical care, mental health care, corrections and security and disability

---

[32] *See id.* ¶ 47.

[33] *See id.*

[34] Docket Nos. 49-9, 49-10, 49-11, 49-12.

[35] *Id.*

[36] *Id.*

[37] *See* Docket No. 49-3 at ¶¶ 25-33; Docket Nos. 49-7, 49-8.

[38] *See* Docket No. 348 at 2-3; Docket No. 9 at 1; Docket No. 348-1 at ¶ 2; Docket No. 349 at ¶¶ 2-3.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

accommodations and access.[39]  The parties agreed that the resulting reports and recommendations

would provide the framework for negotiating a remedial plan and consent decree.  If settlement

negotiations were unsuccessful, the parties agreed that the reports would be admissible evidence in

the litigation.[40]  The parties exchanged nominations and conferred to identify mutually acceptable

neutral experts.[41]  Two other reports were prepared in 2007 and 2011 by TRG Consulting, a private

consulting firm, at the County's request.[42]

The parties jointly retained Michael Hackett as a neutral expert to evaluate "whether

Defendants adequately protect [inmates] from injury and violence in the Jail."[43]  Hackett reported

that staffing and housing is inadequate, the jail population is overcrowded and the old physical

plant is not adequate for safety monitoring, therefore inciting violence.  He concluded that

Defendants operate the jail in a dangerous manner, placing all inmates at serious risk of harm.

The parties jointly retained Dr. Michael Puisis, D.O. as a neutral expert to evaluate

"whether Defendants' system for providing medical care at the jail is adequate."[44]  Puisis wrote

that the jail's medical staffing is 40-70% less than it should be at all levels, leading to inadequate

intake, evaluation, care, management and surveillance.  Puisis also found the spaces of care

delivery were unhygienic, inadequate and small, discouraging proper examinations.  Almost every

important policy governing medical care suffered from serious infirmities:  intake, requests,

emergency services, continuing medications, scheduling care, segregation and special needs.

---

[39] *See* Docket No. 349 at ¶ 2.

[40] *See id.*

[41] *See* Docket No. 348-1 at ¶¶ 3-4.

[42] *See* Docket No. 41 at ¶¶ 39-41; Docket Nos. 41-1, 41-2, 41-3, 41-4.

[43] *See* Docket No. 56 at 3.

[44] *See* Docket No. 49 at ¶ 8; Docket No. 49-1 Ex. B.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

Puisis concluded Defendants' system-wide policies and practices for providing medical care harmed inmates or placed them at great risk of serious harm due to inadequate diagnosis, treatment infection control, drug and alcohol withdrawal policies, and medical records.[45]

The parties jointly retained Dr. Richard Hayward, Ph.D. as a neutral expert to evaluate "whether Defendants' system for providing mental health care in the jail is adequate."[46] Hayward produced a draft report finding that Defendants' system-wide policies and practices for providing mental health care place inmates at risk of serious harm.[47]

The parties jointly retained SZS Consulting as a neutral expert to evaluate Defendants' compliance with the ADA and other disability rights laws.[48] SZS Consulting's detailed report found that Defendants operate the jail in violation of the rights and needs of inmates with disabilities.[49] SZS identified 119 architectural elements that did not comply with the relevant guidelines.[50] Some of these barriers violated the requirements of federal and state law in multiple ways.[51] The problems SZS identified include the following: the jail has far fewer housing areas

---

[45] CFMG's motion to strike the report of Puisis is DENIED. Puisis is a neutral expert. Contrary to CFMG's assertions, Puisis did not violate HIPAA or the federal privaicy rights of any person. In providing the names of the patients whose charts he reviewed to Plaintiffs' counsel, Puisis acted under the protective order entered in this case. Finally, Puisis is a well-qualified expert in correctional medical services. Puisis used methodology and reasoning in support of his opinions that are scientifically valid, and his credentials and experience qualify him as an expert in this action. *See Daubert v. Merril Dow Farms, Inc.*, 509 U.S. 59, 597 (1993); *Ralston v. Mortgage Investors Grop., Inc.*, Case No. 08-cv-536-JF, 2011 WL 6002640, at *3 (N.D. Cal. Nov. 30, 2011).

[46] Docket No. 49 at ¶ 9; Docket No. 49-1 Ex. C.

[47] Docket No. 49-7 Ex. M.

[48] Docket No. 49 at ¶ 10; Docket No. 49-1 Ex. D.

[49] *See* Docket Nos. 49-4, 49-5, 49-6 Ex. K.

[50] *See id.* at 98-691.

[51] *See id.*

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California

and cells available to inmates in wheelchairs than required by the relevant state and federal laws.[52] None of the areas in which inmates are housed, either temporarily (e.g., holding cells, isolation cells, and safety cells) or more permanently (housing units), are fully accessible to inmates in wheelchairs.[53]  Many areas of the jail in which Defendants offer programs, including housing, health care and exercise, are partially or completely inaccessible to inmates with mobility impairments, including those in wheelchairs.  Not one medical exam room has adequate clearances for inmates in wheelchairs.[54]  Moreover, the exercise facilities for all inmates housed in Pods AJ, K-Pod, the Women's Section, the Rotunda, and the Infirmary, were at least for some inmates located on the roof of the jail, up a long flight of stairs; "[t]he result is that no accessible exercise areas are provided in the facility for female inmates and male inmates have access to exercise areas only if they are housed in dorms A, B, C, or D."[55]

TRG Consulting drafted the 2007 and 2011 reports at the County's request.[56]  The 2007 and 2011 Jail Needs Assessments both concluded that, "[t]he current combination of insufficient beds, an inadequate detention facility and understaffing has resulted in an almost untenable situation [at the jail]."[57]

Plaintiffs also retained expert Dr. Pablo Stewart, M.D., a psychiatrist with decades of experience evaluating correctional mental health care systems.[58]  Stewart based his conclusions on

---

[52] *See id.* at 7-10.

[53] *See id.* at 8, 9; see Docket No. 50 at ¶¶ 18-19; Docket No. 49-1, Ex. D at 49-56.

[54] *See* Docket No. 49-4 at 9.

[55] *Id.* at 9.

[56] *See* Docket No. 41-1 at ¶¶ 39-40, Ex. A; Docket No. 41-4 Ex. B; Docket No. 49 at ¶ 41.

[57] Docket No. 41-1, Ex. A, at EX. 1-2; Docket No. 41-4 Ex. B, at EX.2.

[58] *See* Docket No. 355 at 11.

18

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

reviews of the reports of the joint experts, the relevant policies and procedures and other materials. Stewart concluded that in nearly every respect, Defendants' policies and practices for delivering mental health care to inmates in the jail places all inmates, especially those with serious mental illness, at a substantial risk of serious harm.[59]  Dr. Robert Cohen, M.D., a second medical expert with experience as a director of medical services at Riker's Island,[60] found a variety of policies and practices placed inmates at an unreasonable risk of harm, such as to do with tuberculosis, medication continuity, withdrawal and staffing.

### D.

Beyond the allegations in the second amended complaint, the investigation and public records documents, and the expert reports, Plaintiffs also submitted declarations describing their own experiences with jail policies and practices governing safety, medical care, mental health care and disabilities.  Plaintiffs did not submit these declarations in support of individual constitutional and statutory claims, which they do not bring, but instead offer these declarations as evidence of the defendants' unlawful policies and practices, and as examples of the serious harm to which all inmates in jail custody are allegedly exposed.  For example, Plaintiff Dilley, who suffers from multiple sclerosis, describes how she cannot walk up the stairs to access the exercise yard without experiencing excruciating pain.[61]  Since she was booked into the jail in June 2013, she has only been outside to go to court or medical appointments at outside facilities—she has not been outside at all since mid-December 2013.[62]  Plaintiff Miller has vision loss, and Defendants fail to ensure that vision-impaired inmates are adequately informed of, among other things, administered

---

[59] *See* Docket No. 52 at ¶¶ 6-7, 69, 72, 76.

[60] *See* Docket No. 355 at 11.

[61] Docket No. 52-7 at ¶ 4.

[62] *Id.* ¶ 12-13.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

medications.  This was the case when Defendants provided Miller with an improper insulin injection and he lapsed into unconsciousness.[63]  Each of the other named Plaintiffs submitted a sworn declaration attesting to his or her experiences with jail safety, medical, mental health or disabilities policies.[64]

**III.**

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.  The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[65]

Defendants again object to the Plaintiffs' standing.[66]  The court declines to deviate from its previous order denying Defendants' motions to dismiss for lack of standing.[67]  As the court previously explained, simply because an inmate does not use medical care, receives adequate care once, or does not or get attacked does not mean they are not at an unreasonable risk when policies and practices are deficient.[68]  A transitional group of individuals suffer "injury in fact" if exposed to unreasonable risk.[69]  In any event, the claims at issue are current for at least one named Plaintiff.[70]

---

[63] *See* Docket No. 41 at 52.

[64] *See, e.g.*, Docket No. 52-3 at ¶ 23; Docket No. 52-11 at ¶ 27; Docket No. 52-13 at ¶¶ 3-15; Docket No. 52-15 at ¶¶ 7-10; Docket No. 52-17 at ¶¶ 4-12, 14-17; Docket No. 52-21 at ¶ 23; Docket No. 52-23 at ¶¶ 7-15, 17-20, 22-25, 28-37; Docket No. 52-27 at ¶ 28.

[65] *See* Docket Nos. 8, 34.

[66] *See* Docket No. 133 at 17; Docket No. 169 at 13-14.

[67] *See* Docket No. 128 at 14.

[68] *See* Docket No. 133 at 18.

[69] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints"); *Mazda v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("no class may be certified that contains members lacking Article III standing").

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**

Plaintiffs request that the court certify an inmate class of "all [inmates] who are now or will be in the future in the Jail" and an inmates with disabilities subclass of "all individuals who are now or will be in the future in the Jail and who have a disability, as defined by federal and California law."[71]  Plaintiffs also request that the court appoint Michael Bien and Gay Crosthwait Grunfeld of Rosen Bien Glavan & Grunfeld, LLP, James Egar of the Office of the Public Defender, County of Monterey, Alan Schlosser of the American Civil Liberties Union Foundation of Northern California, and Eric Balaban of the ACLU National Prison Project to represent the certified class and subclass pursuant to Rule 23(g).[72]

"An order that certifies a class action must define the class and the class claims, issues, or defenses."[73]  Clearly delineating the contours of the class provides the parties with clarity and assists class members in understanding their rights and making informed opt-out decisions.[74]  If

---

[70] *See Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007) (en banc) (holding that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements."); *see also Warth v. Seldin*, 422 U.S. 490, 502 (1975) (finding named plaintiffs need not show "that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"); *Lewis v. Casey*, 518 U.S. 343, 395 (1996) (Souter, J., concurring); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011); *Arnott v. U.S. Citizenship and Immigration Servs.*, 290 F.R.D. 579, 584 (C.D. Cal. 2012) (explaining why *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), a case about damages, is not binding).

[71] *See* Docket No. 56 at 2.  Claim arise under the Eighth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 7 and 17 of the California Constitution; the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and California Government Code § 11135.

[72] *See* Docket No. 48 at 2; 355-1 at 7.

[73] Fed. R. Civ. P. 23(c)(1)(B); *Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179, 187 (3d Cir. 2006) ("[T]he text of the order or an incorporated opinion must include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis").

[74] *Wachtel*, 453 F.3d at 187.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

class members are impossible to identify without extensive and individualized fact-finding or "mini-trials," then a class action is inappropriate.[75]

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"[76]  To satisfy class certification requirements, such claims must be capable of satisfaction in "one stroke."[77]  To satisfy the four threshold requirements of Fed. R. Civ. P. 23(a), (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy).[78]  Plaintiffs seeking class certification must also satisfy the requirements of Rule 23(b), subdivisions 1, 2 or 3, which define three different types of classes.[79]

In evaluating whether a party has met the requirements of Rule 23, "Rule 23 does not set forth a mere pleading standard."[80]  A party seeking class certification must "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in*

---

[75] *See Bradford v. Union Pac. R.R. Co.*, Case No. 05-cv-4075, 2007 LEXIS 72951, at *25 (9th Cir. 2007).

[76] *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

[77] *Id.*  at 2551.

[78] *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting Fed. R. Civ. P. 23); *Levya v. Medline Indus., Inc.*, 716 F.3d 510, 512 (9th Cir. 2013); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001).

[79] *See* Fed. R. Civ. P. 23(a)-(b); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998); *Leyva*, 716 F.3d at 512.

[80] *Wal–Mart*, 131 S. Ct. at 2551.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California

*fact* sufficiently numerous parties, common questions of law or fact, etc."[81]  Similarly a party must affirmatively prove that he or she complies with one of the three subsections of Rule 23(b).  This is a "rigorous analysis"[82] that must "'entail some overlap with the merits of the plaintiff's underlying claim.'"[83]  Rule 23(b) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole."[84]

Rule 23(b)(1) allows a class action if "prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual

---

[81] *Id.*

[82] E.g. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542-543 (9th Cir. 2013); *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551; *Mazza*, 666 F.3d at 588 ("Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23").

[83] *See In re Google Inc. Gmail Litig.,*Case No. 5:13-md-02430-LHK, 2014 U.S. Dist. LEXIS 36957 (N.D. Cal. March 18, 2014) (*citing Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194 (2013)); *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551 ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc. We recognized in *Falcon* that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question"); *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable.").

[84] *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2013) (quoting Fed. R. Civ. P. 23(b)(2)).

23

adjudications or would substantially impair or impede their ability to protect their interests."[85] Prison condition cases have been certified under both 23(b)(1)(A)[86] and (B).[87]

Rule 23(b)(2) allows a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[88]  Rule 23(b)(2) is "'almost automatically satisfied in actions primarily seeking injunctive relief.'"[89]  "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'"[90]  Rule 23(b)(2) requires a single injunction or declaratory judgment to provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant.[91]  Rule 23(b) is "unquestionably satisfied when members of a putative class seek

---

[85] Fed. R. Civ. P. 23(b)(1).

[86] *See Ashker v. Governor of State of Cal.*, Case No. 4:09-cv-5796-CW, 2014 WL 2465191 at *7 (N.D. Cal. June 2, 2014) (prison conditions case certified under Rule 23(b)(1)(A) for class actions that create a risk of inconsistent adjudications).

[87] *See* Docket No. 358-4, Ex. VV at 107-10; *Gray v. County of Riverside*, Case No. 13-cv-0444-VAP, Docket No. 131 at 107-10 (C.D. Cal., Sept. 2, 2014) (Order Granting Plaintiffs' Motion for Class Certification, Denying Defendant's Motion to Dismiss, certifying jail conditions class action under both Rule 23(b)(1)(A) and (B)).

[88] Fed. R. Civ. P. 23(b)(2).

[89] *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3rd Cir. 1994)); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010); *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 345 (N.D. Cal. 2008) ("Cases challenging an entity's policies and practices regarding access for the disabled represent the mine run of disability rights class actions certified under Rule 23(b)(2).").

[90] *Wal-Mart*, 131 S. Ct. at 2557 (citation omitted).

[91] *Id.*

24

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole. . . .   [A]s the text of the rule makes clear, . . . [the rule] asks only whether 'the party opposing the class has acted or refused to act on grounds that apply generally to the class.'"[92]

In *Parsons v. Ryan*,[93] the Ninth Circuit held inmates challenging the constitutionality of health care in the Arizona correctional system satisfied the requirements of Rule 23.[94]  Such "systemic, future oriented Eighth Amendment claim[s]"[95]  claims were the "kind . . . firmly established in our constitutional law," in which inmates allege that "policies and practices of [system-]wide application expose all inmates in . . . custody to a substantial *risk* of serious harm."[96]  The plaintiffs in *Parsons* relied "on system-wide deficiencies in the provision of [safety and] medical and mental health care that, taken as a whole, subject . . . [inmates] . . . to 'substantial risk of serious harm.'"[97]  Disability discrimination claims under the Americans with Disabilities Act, Rehabilitation Act, and California Government Code section 11135 are of the same type:  requiring injunctive relief from system-wide policies and practices, which institutionalize a failure to provide necessary accommodations to inmates with all types of disabilities.[98]

Because Plaintiffs seek certification under Rule 23(b)(1) and (2), they need not show "that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test."[99]

---

[92] *Parsons*, 754 F.3d at 688 (quoting Fed. R. Civ. P. 23(b)(2)).

[93] *See id.* at 657.

[94] *Id.* at 676 (emphasis added).

[95] *Id.* at 677 (citing *Brown v. Plata*, 131 S. Ct. 1910, 1925 n.3 (2011)).

[96] *Id.* at 676 (emphasis added).

[97] *Plata*, 131 S. Ct. at 1925 n.3.

[98] *See Armstrong v. Davis*, 275 F.3d 849, 868-69 (9th Cir. 2001); *Pierce v. County of Orange*, 526 F.3d 1190, 1218-23 (9th Cir. 2008).

[99] *See Parsons*, 754 F.3d at 688.

25

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**A.**

As a preliminary matter, under the ascertainability doctrine, the class must be sufficiently definite so that it is feasible for the court to determine membership by reference to objective criteria.[100]  Thus, a class is generally not ascertainable if membership in the class is based on subjective criteria, such as states of mind, or if the court would have to "make a determination about the merits of each claim in deciding whether a particular individual is a class member."[101]  The requirement helps to eliminate "serious administrative burdens that are incongruous with the efficiencies expected in a class action" by compelling easy identification of class members.[102]  It also protects defendants by ensuring the identification of those bound by the final judgment.[103]  But as a general matter, less precision is required of class definitions under Rule 23(b)(2) than under Rule 23(b)(3), where mandatory notice is required by due process.[104]

---

[100] *See Williams v. Oberon Media, Inc.*, 468 Fed. Appx. 768, 771 (9th Cir. 2012) (class motion was properly denied because the proposed members are not "precise, objective or presently ascertainable"); *Khalif L. v. City of Union City*, Case No. 4:09-cv-2723-PJH, 2012 U.S. Dist. LEXIS 64567, *15 (N.D. Cal. May 8, 2012) (finding a class of students "subjected to violence or threats of violence, by 'Latino gangs'" cannot be ascertained).

[101] *Velazquez v. HSBC Finance Corp.*, Case No. 3:08-4592, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009) (defining a "fail-safe class" as (by the merits of [the plaintiffs] legal claims, and [is] therefore unascertainable prior to a finding of liability in the plaintiffs' favor."); *Kamar v. Radio Shack Corp.*, 375 F. App'x 734, 735 (9th Cir. 2010).

[102] *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 446 (E.D. Pa. 2000).

[103] *See Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ("Ascertainability is needed for properly enforcing the preclusive effect of final judgment.  The class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss. If the definition is not clear in its applicability, then satellite litigation will be invited over who was in the class in the first place"); 1 William B. Rubenstein et al., *Newberg on Class Actions*, § 3:1 (5th ed.).

[104] *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812, 105 S. Ct. 2965, 86 L.Ed.2d 628 (holding that notice of right to opt-out of suit for money damages is required by the Due Process Clause); *Yaffe v. Powers,* 454 F.2d 1362, 1366 (1st Cir.1972) (stating that in contrast to certification of a subdivision (b)(3) class, "notice to the members of a(b)(2) class is not required

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California

Defendants dispute the breadth of Plaintiffs' class and subclass definitions.[105]  They contend the class and subclass are not ascertainable because the definitions are vague, require mini-trials and do not precisely identify future members.[106]  But classes like the class and subclass here have been routinely certified.[107]  Class and subclass membership can "be ascertained by reference to objective criteria," and the class definitions "avoid subjective standards (e.g. a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against)."[108]  The proposed class and subclass are sufficiently narrow:  class members are those in the jail, and subclass members are those with disabilities, as defined by federal and state law.[109]

**B.**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  The Rule ensures judicial economy[110] and creates greater access to judicial relief,

---

and the actual membership of the class need not therefore be precisely delimited.").  Manageability is not as important a concern for injunctive classes as for damages classes.  *See Elliott v. Weinberger,* 564 F.2d 1219, 1229 (9th Cir.1977) ("by its terms, Rule 23 makes manageability an issue important only in determining the propriety of certifying an action as a(b)(3), not a(b)(2), class action."), *aff'd in pertinent part sub nom. Califano*, 442 U.S. at 701.

[105] *See* Docket No. 133 at 9.

[106] *See id.* at 34; Docket No. 169 at 17.

[107] *See, e.g.*, *Parsons*, 754 F.3d at 672 (class of "[a]ll [inmates] who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices" in Arizona prisons); *Armstrong v. Davis*, 275 F.3d at 856-57 (certifying class of "all present and future California state [inmates] and parolees with mobility, sight, hearing, learning, developmental and kidney disabilities that substantially limit one or more of their major life activities") (quotation marks omitted); *Rodriguez*, 591 F.3d at 1118 ("the inclusion of future class members in a class is not itself unusual or objectionable").

[108] *Lyon v. U.S. Immigration & Customs Enforcement*, Case No. 3:13-5878, 2014 WL 1493846, at *5 (N.D. Cal. Apr. 16, 2014) (citations and internal quotation marks omitted).

[109] *See* Docket No. 355 at 5.

[110] *See* 1 Rubenstein, supra, §§ 1:12; 3:11.

27

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

1
2
3
4

particularly for those persons with claims that would be uneconomical to litigate individually,[111] including for injunctive relief.  A class or subclass with more than 40 members "raises a presumption of impracticability based on numbers alone."[112]  This is especially true where, as here, the class and subclass include future, unknowable class members.[113]

5
6
7
8
9

CFMG concedes and stipulates that Plaintiffs meet the numerosity element, and joinder of all class members would be impracticable.[114]  The County similarly does not argue against numerosity.[115]  Because the class and subclass are each over 40 members, and Defendants provide no real opposition on this point, the court finds Plaintiffs meet the numerosity requirement.

**C.**

10
11
12
13
14
15
16

As to commonality, there must be "questions of law and fact common to the class,"[116] and class members must "'have suffered the same injury,'" and not merely violations of "the same provision of law."[117]  "[T]he class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'"[118]  "Put another way, the key inquiry is not whether the plaintiffs have raised

17
18

[111] *See Phillips Petroleum Co.*, 472 U.S. at 809; 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1762 (3d ed. 2005).

19
20

[112] 1 William Rubenstein, *Newberg on Class Actions* § 3:12, at 198 (5th ed. 2011); *see also Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010); *Gen. Tel. Co. of the N.W. v. EEOC*, 446 U.S. 318, 330 (1980).

21
22

[113] *See Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986).

23

[114] *See* Docket No. 169 at 15.

24

[115] *See* Docket No. 133 at 19-21; Docket No. 355 at 6.

25

[116] Fed. R. Civ. P. 23(a)(2).

26

[117] *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551.

27
28

[118] *Parsons,* 754 F.3d at 675; *Mazza*, 666 F.3d at 588 (quoting *Wal–Mart*, 131 S. Ct. at 2551) (internal alteration omitted).

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

common questions, 'even in droves,' but rather whether class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'"[119]

Dissimilarities between class members must be considered in determining whether a common question will generate a common answer because dissimilarities within the proposed class can "impede the generation of common answers."[120]  Thus commonality may be determined based on substantive law[121] and an understanding of the nature and merit of the underlying claims.[122] Plaintiffs need not show, however, that "every question in the case, or even a preponderance of questions, is capable of class-wide resolution.  So long as there is 'even a single common question,' a would be class can satisfy the commonality requirement of Rule 23(a)(2)."[123]  Thus, "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists."[124]

In civil rights cases, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."[125]  Where such a policy exists, "individual factual differences among the individual litigants or groups of litigants will not

---

[119] *Abdullah v. U.S. Sec. Ass'n, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart*, 131 S. Ct. at 2551 (emphasis in original)).

[120] *Id.* at 2551, 2556.

[121] *Stearns*, 655 F.3d at 1012.

[122] *Amgen*, 133 S. Ct. at 1194-95; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

[123] *Wang,* 737 F.3d at 544 (quoting *Wal–Mart,* 131 S. Ct. at 2556); *see also Mazza,* 666 F.3d at 589 (9th Cir. 2012) (noting that "commonality only requires a single significant question of law or fact").

[124] *Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015, 1029 (9th Cir.2012) (quotation marks and citation omitted).

[125] *Armstrong v. Davis*, 275 F.3d at 868.

29

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California

1
2
3

preclude a finding of commonality."[126]  The Supreme Court's *Wal-Mart* decision reaffirmed that where a system-wide policy or practice is the cause of class members' injuries, plaintiffs satisfy the commonality requirement.[127]

Post-*Wal-Mart*, courts continue to find the commonality requirement satisfied in cases challenging correctional facility conditions similar to those at issue here.[128]  Recently, in *Parsons*,[129] the defendants' argument against commonality was that "a systemic constitutional violation [of the sort alleged here] is a collection of individual constitutional violations, each of which hinges on the particular facts and circumstances of each case."[130]  But the Ninth Circuit affirmed class certification, holding that "[t]he putative class and subclass members . . . all set forth numerous common contentions whose truth or falsity can be determined in one stroke: whether the specified [system-]wide policies and practices to which they are all subjected . . . expose them to a

---

[126] *Id.*

[127] *See Wal-Mart*, 131 S. Ct. at 2553; *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1111-13 (9th Cir. 2014).

[128] *See Parsons v. Ryan*, 289 F.R.D. 513, 516-23 (D. Ariz. 2013) (commonality in case challenging medical and mental healthcare provided to 33,000 inmates in Arizona); *Jones v. Gusman*, 296 F.R.D. 416, 465-66 (E.D. La. 2013) (commonality for claims by pre- and post-trial detainees regarding failures to protect inmates from violence and inadequacies in medical and mental health care at jails in New Orleans Parish); *Butler v. Suffolk County*, 289 F.R.D. 80, 97-98 (E.D.N.Y. 2013) (commonality for claims that unsanitary conditions in jail constituted cruel and unusual punishment); *Henderson v. Thomas*, 289 F.R.D. 506, 511 (M.D. Ala. 2012) (commonality for ADA claims challenging Alabama prison policy of segregating HIV positive inmates from general prison population); *Olson v. Brown*, 284 F.R.D. 398, 410-12 (N.D. Ind. 2012) (commonality for class claims regarding, among other things, constitutionality of jail mail policy); *Hughes v. Judd*, Case No. 8:12-cv-568-MAP, 2013 WL 1821077, at *23-24 (M.D. Fla. Mar. 27, 2013) (commonality for claims regarding constitutionality of jail's policies for protecting juvenile inmates from violence) (*report and recommendation adopted as modified*, 8:12-cv-568-SDM, 2013 WL 1810806 at *2 (M.D. Fla. Apr. 30, 2013)).

[129] *See Parsons*, 754 F.3d at 662, 683.

[130] *Id.* at 675 (alteration in original) (internal quotation marks omitted).

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

substantial risk of harm."[131]   Because of the nature of the plaintiffs' system-wide challenge, "either

each of the policies and practices is unlawful as to every inmate or it is not."[132]   Any determination

of the merits would "not require [the court] to determine the effect of those policies and practices

upon any individual class member (or class members) or to undertake any other kind of

individualized determination."[133]

   "Commonality cannot be determined without a precise understanding of the nature of the

underlying claims."[134]   "To assess whether the putative class members share a common question,

the answer to which 'will resolve an issue that is central to the validity of each one of the [class

members's] claims,' we must identify the elements of the class members'[] case-in-chief."[135]

---

[131] *Id.* at 678 (citing *Wal-Mart*, 131 S. Ct. at 2551) ("What all members of the putative class and subclass have in common is their alleged exposure, as a result of specified statewide ADC policies and practices that govern the overall conditions of health care services and confinement, to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent. . . .[A]lthough a presently existing risk may ultimately result in different future harm for different inmates—ranging from no harm at all to death—every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide . . . policy or practice that creates a substantial risk of serious harm"); *id.* at 678-79 (holding that since "every inmate . . . is necessarily subject to the same medical, mental health, and dental care policies and practices" and because "any one of them could easily fall ill, be injured, need to fill a prescription, require emergency or specialist care, crack a tooth, or require mental health treatment . . . [,] every single ADC inmate faces a substantial risk of serious harm if ADC policies and practices provide constitutionally deficient care for treatment"); *Plata*, 131 S. Ct. at 1940 ("[Inmates] who are not sick or mentally ill do not yet have a claim that they have been subjected to care that violates the Eighth Amendment, but in no sense are they remote bystanders in California's medical care system. They are that system's next potential victims").

[132] *Parsons*, 754 F.3d at 678.

[133] *Id.* at 679.

[134] *Id.* at 676; *see Amgen Inc.,* 133 S. Ct. at 1194–95 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (citation omitted)); *Ellis*, 657 F.3d at 981 ("[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class.").

[135] *Stockwell*, 749 F.3d at 1114, (quoting *Wal–Mart*, 131 S. Ct. at 2551).

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

**United States District Court**
For the Northern District of California

Here, a central question of injury is whether Defendants' policies and practices reflect deliberate indifference as to Plaintiffs' medical care, mental health care, and safety needs.[136]  The court's broad yes-or-no answer to that question is "apt to drive the resolution of the litigation" because it determines whether Plaintiffs' constitutional rights have been violated and whether an injunction directing Defendants to remedy the constitutional violations is appropriate.[137]  The deliberate indifference standard focuses on the risk of future illness or injury to which defendants expose inmates.[138]  "This kind of claim is firmly established in our constitutional law."[139]

---

[136] *See Wilson v. Seiter*, 501 U.S. 294 298 (1991) (constitutional violation occurs where deprivation was "sufficiently serious" and the official has acted with "deliberate indifference" to inmate health or safety); *Farmer v. Brennan*, 511 U.S. 825, 828, 833 (1994) (deliberate indifference to inmates' safety from "violence at the hands of other [inmates]" (internal quotation marks omitted)); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (deliberate indifference to inmates' serious medical needs); *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (deliberate indifference to inmates' serious mental health care needs); *Coleman v. Brown*, 938 F. Supp. 2d 955, 970 n.24 (E.D. Cal. 2013) (elements of a constitutional correctional mental health system).

[137] *Wal-Mart*, 131 S. Ct. at 2551.

[138] *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) (holding that prison officials may not "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year"); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  A plaintiff establishes deliberate indifference by showing that a public entity "(1) had a policy that posed a substantial risk of serious harm . . . ; and (2) kn[ew] that its policy posed this risk."[138]  In class actions challenging a jail facility's healthcare systems or safety practices, liability may also be premised on a showing of "systematic or gross deficiencies in staffing, facilities, equipment or procedures."  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *see also Plata*, 131 S. Ct. at 1925 n.3; (upholding, in case against California prison system, sweeping injunctive relief to remedy "system-wide deficiencies in the provision of medical and mental health care that, taken as a whole, subject sick and mentally ill [inmates] in California to [a] substantial risk of serious harm" (internal quotation marks omitted)); *Madrid v. Gomez*, 889 F. Supp. 1146, 1256 (N.D. Cal. 1995) ("In class actions challenging the entire system of mental or medical health care, courts have traditionally held that deliberate indifference can be shown by proving either a pattern of negligent acts or serious systemic deficiencies in the prison's health care program.").

[139] *Parsons*, 754 F.3d at 676.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

Defendants argue that what is reasonable treatment to one inmate may not be appropriate or reasonable treatment to another[140]—and whether Defendants have acted with deliberate indifference—will require distinct legal questions, burdens of proof and "mini-trials" for each Plaintiff.[141]  System-wide allegations require proof of either an official policy or admissible and convincing proof rather than just allegations that a constitutional violation persists system-wide[142]—something Plaintiffs cannot show, according to Defendants.[143]

But Plaintiffs have produced adequate evidence of specific system-wide policies and practices exposing inmates to a substantial risk of serious harm, violating their constitutional or statutory rights; and they have clearly defined the class claims.[144]  "That the Eighth Amendment protects against future harm to inmates is not a novel proposition."[145]  Noting that it "would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them," *Helling* rejected a proposition like the Defendants' here that "only deliberate indifference to current serious health problems of

---

[140] *See* Docket No. 21-22.

[141] *See* Docket No. 133 at 17.

[142] *See Armstrong v. Davis*, 275 F.3d at 870; *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1073-74 (9th Cir. 2010); *Lewis*, 518 U.S. at 359-60 (stressing, regarding inmate access to a law library, that a system wide injunction can only be issued upon proof of system wide, not isolated, problems);  *Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, 417 (1977) ("Instead of tailoring a remedy commensurate with the three specific violations, the Court of Appeals imposed a system wide remedy going beyond their scope"); *id*., at 420 ("Only if there has been a system wide impact may there be a system wide remedy"); *Califano*, 442 U.S. at 702 ("The scope of injunctive relief is dictated by the extent of the violation established.").

[143] *See* Docket No. 133 at 30; Docket No. 169 at 9-10, 16-17.

[144] Fed. R. Civ. P. 23(c)(1)(B); *Parsons*, 754 F.3d at 683; Docket No. 355 at 8-21.

[145] *Helling,* 509 U.S. at 33.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California

inmates is actionable under the Eighth Amendment."[146]  In *Farmer v. Brennan,* the Court elaborated on *Helling*'s recognition that a "remedy for unsafe conditions need not await a tragic event"[147] by holding that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."[148]  Prison officials are definitively constitutionally prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm.[149]

In *Brown v. Plata,* the Supreme Court distinguished the kind of systemic, future-oriented constitutional and statutory claims at issue here from claims in which a past instance of mistreatment is alleged to have violated the Constitution:

> Because plaintiffs do not base their case on deficiencies in care provided on any one occasion, this Court has no occasion to consider whether these instances of delay—or any other particular deficiency in medical care complained of by the plaintiffs—would violate the Constitution under *Estelle v. Gamble,* 429 U.S. 97, 104–105 . . . (1976), if considered in isolation. Plaintiffs rely on system-wide deficiencies in the provision of medical and mental health care that, taken as a whole, subject sick and mentally ill [inmates] in California to "substantial risk of serious harm" and cause the delivery of care in the prisons to fall below the evolving standards of decency that mark the progress of a maturing society.[150]

---

[146] *Id.* at 33, 34, 113 S. Ct. 2475; *see also id.* at 33, 113 S. Ct. 2475 ("We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year.").

[147] *Id.*

[148] 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994).

[149] *See, e.g., Graves v. Arpaio,* 623 F.3d 1043, 1049 (9th Cir.2010) (substantial risk of harm from exposure of pretrial detainees on psychotropic medication to extreme heat); *Wallis v. Baldwin,* 70 F.3d 1074, 1076 (9th Cir.1995) (substantial risk of harm from sustained exposure to asbestos).  *See Thomas v. Ponder,* 611 F.3d 1144, 1151 n. 5 (9th Cir.2010) ("In its order, the district court erroneously considers whether the prison officials were aware that Thomas was 'suffering serious harm from the deprivation' of exercise. The correct issue for consideration is, however, whether the prison officials were subjectively aware of a 'serious *risk* of substantial harm.'" (citing *Farmer,* 511 U.S. at 837, 114 S. Ct. 1970; *Helling,* 509 U.S. at 32)).

[150] *Farmer,* 511 U.S. at 834; *Plata,* 131 S. Ct. at 925 n.3.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

Thus, "[i]ndividual claims for injunctive relief related to medical treatment are discrete from the claims for systemic reform addressed in *Plata*"[151] and here.  The constitutional and statutory claims in this case are of the same basic kind as the claims in *Helling*, *Farmer*, *Plata*, *Graves*, *Wallis*, and *Parsons*.  In those cases, courts have asked only whether the plaintiffs were exposed to a substantial risk of harm to which prison officials were deliberately indifferent—and have recognized that many inmates can simultaneously be endangered by a single policy.[152]

Here, all members of the putative class and subclass have in common their alleged exposure to a substantial risk of serious future harm to which Defendants are allegedly deliberately indifferent, as a result of policies and practices that govern the overall conditions of health care services and confinement.[153]  While results of exposure may vary, ranging from no harm to death, each inmate suffers the same constitutional or statutory injury when exposed to a policy or practice that creates a substantial risk of serious harm.[154]  For example, inadequate health care in a prison system endangers every inmate:  "[e]ven [inmates] with no present physical or mental illness may become afflicted, and all [inmates] in California are at risk so long as the State continues to provide inadequate care. . . . [Inmates] who are not sick or mentally ill . . . [are] in no sense [ ] remote bystanders in California's medical care system.  They are that system's next potential victims."[155]

---

[151] *Pride v. Correa,* 719 F.3d 1130, 1137 (9th Cir.2013).

[152] *See Helling,* 509 U.S. at 33 (unsafe drinking water); *Graves,* 623 F.3d at 1049 (heat exposure); *Wallis,* 70 F.3d at 1076 (asbestos); *Hoptowit v. Spellman,* 753 F.2d 779, 783–84 (9th Cir.1985) (substandard fire prevention).

[153] *See Parsons*, 754 F.3d at 678.

[154] *See, e.g., Farmer,* 511 U.S. at 834, 114 S. Ct. 1970; *Helling,* 509 U.S. at 33; *cf. Plata,* 131 S. Ct. at 1923 ("For years the medical and mental health care provided by California's prisons has fallen short of minimum constitutional requirements and has failed to meet [inmates'] basic health needs. Needless suffering and death have been the well-documented result.").

[155] 131 S. Ct. at 1940.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

The court need only determine if it can answer the question "whether [Defendants'] staffing policies pose a risk of serious harm to . . . the entire class 'in one stroke.'"[156]  The identified 37 policies and practices to which all members are exposed hold together the putative class and subclass.[157]

Defendants' proffered changes in intake health screening and the future hiring of more medical staff, even if successful, cannot defeat commonality.[158]  "Either [Defendants] employ[] enough nurses and doctors [and custody staff] to provide adequate care to all . . . inmates or [they] do[] not; there is no need for an inmate-by-inmate inquiry to determine whether all inmates in [the Jail] are exposed to a substantial risk of serious harm by [Defendants'] staffing policies."[159]  CFMG and the County admit to mistakes in care and treatment, and their knowledge of the risks to which their acknowledged system-wide policies and practices expose Plaintiffs can be evaluated on a class-wide basis.[160]  The County also admits to system-wide, insufficient accommodations for persons with disabilities,[161] and whether Defendants had knowledge of any insufficiencies can also be evaluated in "one-stroke" for the entire sub-class.  No individualized inquiry into the experiences of any particular inmate or Plaintiff is necessary.  The claims of the inmates with disabilities sub-class also satisfy the commonality requirement:  either the Plaintiffs are housed in a

---

[156] *Parsons*, 754 F.3d at 679 (citing *Wal-Mart*, 131 S. Ct. at 2551).

[157] *See id.* at 678.

[158] *See id.* at 680; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013).

[159] *Parsons*, 754 F.3d at 680; *see* Docket No. 356 at ¶ 53.

[160] *See* Docket No. 355 at 16-17.

[161] *See* Docket No. 371.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

facility that comports with the ADA or they are not.[162]  As exemplified by *Plata,* claims of this

kind, involving detailed factual and legal allegations of specified systemic deficiencies in prison

conditions giving rise to a substantial risk of serious harm, have long been brought in the form of

class actions lawsuits.[163]  "In fact, without such a means of challenging unconstitutional prison

conditions, it is unlikely that a state's maintenance of prison conditions that violate the Eighth

Amendment could ever be corrected by legal action."[164]

---

[162] A public entity must take steps, including altering existing or constructing new facilities, to accommodate inmates with disabilities unless to do so would fundamentally alter a program or create an undue financial or administrative burden.  *See* 28 C.F.R. §§ 35.150, 35.152. Whether a facility was constructed prior to 1992 only determines whether the structure itself must comply fully with the ADA's architectural guidelines.  *See* 28 C.F.R. § 35.151(a) & (b).  That the jail was constructed prior to 1992 does not vitiate Defendants' obligation to accommodate inmates with disabilities or alter the reasonableness of an accommodation in any way.

[163] *See also, e.g., Armstrong v. Davis,* 275 F.3d at 849.

[164] *Parsons*, 754 F.3d at 680; *see, e.g., Chief Goes Out v. Missoula Cnty.,* Case No. 12-cv-155-DWM, 2013 WL 139938, at *5 (D. Mont. Jan. 10, 2013) ("[C]ourts have long recognized that, in prison condition cases like this one, the injury is the [deprivation] itself, not just the negative effects resulting from the [deprivation]. . . . [O]ther courts have certified classes of inmates claiming unconstitutional deprivation of outdoor exercise, and scores of courts have certified classes of [inmates] claiming other unconstitutional prison conditions."); *Butler*, 289 F.R.D. at 98 ("Whether the County was aware of and deliberately indifferent to the conditions at the [prison] is a common question subject to class-wide resolution."); *Hughes*, 2013 WL 1821077, at *23 ("Plaintiffs' claims related to these [prison] conditions are capable of class-wide resolution: Plaintiffs seek permanent injunctive and declaratory relief that would enjoin allegedly unconstitutional behavior as applied to the entire class. Importantly, the questions of law are applicable in the same manner to each potential class member . . . .  Each class member, if proceeding separately against Defendants, would need to meet the same test under the Eighth and Fourteenth Amendments to prevail."); *Rosas v. Baca*, Case No. 12-cv-428-DDP, 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012) ("In a civil rights suit such as this one ... commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. Under such circumstances, individual factual differences among class members pose no obstacle to commonality."); *Indiana Prot. & Advocacy Servs. Comm'n v. Comm'r, Indiana Dep't of Correction*, Case No. 08-cv-1317-TWP, 2012 WL 6738517, at *18 (S.D. Ind. Dec. 31, 2012) ("The mentally ill [inmates] here, have demonstrated through a wealth of evidence, that the class is united by the common question of whether the lack of treatment and isolated living conditions in IDOC facilities violate the Eighth Amendment."); *see also Armstrong v. Davis,* 275 F.3d at 868.

37

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

Here, as in *Parsons*, Plaintiffs have met or exceeded *Wal-Mart*'s requirement of proof that there are "*in fact* . . . common questions of law or fact."[165]  The materials that they submitted include six thorough and neutral or County-appointed expert reports, two Plaintiff-retained expert declarations, the detailed allegations in the 135-page complaint, hundreds of internal documents, and declarations by the named Plaintiffs—constituting more than sufficient evidence at this stage in the litigation of the existence of policies and practices that allegedly expose all members of the putative class and subclass to a substantial risk of serious harm.  These policies and practices are defined with sufficient precision and specificity; they involve particular and readily identifiable conduct on the part of the defendants, such as failing to hire enough medical staff, failing to fill prescriptions, denying inmates access to medical specialists, depriving suicidal and mentally ill inmates access to basic mental health care, and failure to accommodate disabilities that affect communication and mobility.[166]  The evidence submitted by the plaintiffs adequately demonstrates the existence of the challenged statewide policies and practices.

"A clear line of precedent, stretching back long before *Wal–Mart* and unquestionably continuing past it, firmly establishes that when inmates provide sufficient evidence of systemic and centralized policies or practices in a prison system that allegedly expose all inmates in that system to a substantial risk of serious future harm, Rule 23(a)(2) is satisfied."[167]  Here, Plaintiffs'

---

[165] 131 S. Ct. at 2551; *see also Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (noting that "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question" (quotation marks and citations omitted)); *DL v. District of Columbia*, 713 F.3d 120, 126 (D.C. Cir. 2013) (concluding that commonality had not been shown where the plaintiffs in a putative IDEA class action had not identified a "single or uniform policy or practice that bridges all their claims"); *M.D. v. Perry*, 675 F.3d 832, 844 (5th Cir. 2012) (cautioning that "mere allegations of systemic violations of the law . . . will not automatically satisfy Rule 23(a)'s commonality requirement" (quotation marks and citations omitted)).

[166] *Compare M.D.*, 675 F.3d at 844 (noting that commonality is not shown when plaintiffs allege an amorphous claim of undefined and unspecified systemic misconduct).

[167] *Parsons*, 754 F.3d at 684.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

1    constitutional and statutory claims satisfy all of those criteria.  The factual and legal questions that

2    they present can be answered "yes" or "no" in one stroke as to the entire class, dissimilarities

3    among class members do not impede the generation of common answers to those questions, and the

4    capacity of class-wide proceedings to drive the resolution of this litigation is not in doubt.[168]  The

5    claims, defenses, relevant facts, and substantive law are all common across the class and

6    subclass.[169]

7

8                                                    **D.**

9            The question of typicality[170]  "refers to the nature of the claim or defense of the class

10   representative, and not to the specific facts from which it arose or the relief sought."[171]  "[T]he

11   typicality inquiry involves comparing the injury asserted in the claims raised by the named

12   plaintiffs with those of the rest of the class."[172]  "Under the rule's permissive standards,

13   representative claims are 'typical' if they are reasonably co-extensive with those of absent class

14   members; they need not be substantially identical."[173]  The test of typicality is "whether other

15   members have the same or similar injury, whether the action is based on conduct which is not

16   unique to the named plaintiffs and whether other class members have been injured by the same

17

18

19   _____

20   [168] *See Wal–Mart,* 131 S. Ct. at 2551–52.

21   [169] *See, e.g.*, *Parsons*, 754 F.3d at 684-86.

22   [170] *See* Fed. R. Civ. P. 23(a)(3).

23   [171] *Parsons*, 754 F.3d at 686 (internal quotation marks omitted).

24   [172] *Armstrong v. Davis*, 275 F.3d at 869.

25   [173] *See* Fed. R. Civ. P. 23(a)(3); *Parsons*, 754 F.3d at 686 ("Rule 23(a)(3) requires only that their
     claims be 'typical' of the class, not that they be identically positioned to each other or to every
26   class member."); *Armstrong v. Davis*, 275 F.3d at 869; *Hanlon*, 150 F.3d at 1020; *Hanon v.
     Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) (typicality analysis "refers to the nature of
27   the claim or defense of the class representative, and not to the specific facts from which it arose or
     the relief sought" (internal quotation marks omitted)).

28

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

*United States District Court*
For the Northern District of California

1    course of conduct."[174]  "Typicality refers to the nature of the claim or defense of the class

2    representative, and not to the specific facts from which it arose or the relief sought."[175]

3          While typicality and commonality occasionally merge,[176] typicality derives its independent

4    legal significance from its ability to "screen out class actions in which the legal or factual position

5    of the representatives is markedly different from that of other members of the class even though

6    common issues of law or fact are present."[177]  But it is not necessary "that the named plaintiffs'

7    injuries be identical to those of other class members, only that the unnamed class members have

8    injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious

9    course of conduct."[178]

10         To the County, the typical grievances and complaints named Plaintiffs make in this case are

11    adequacy or timely care, which Defendants believe are individual, unique issues, requiring

12    individual, unique responses and assessments of specific inquiries on an individual level.[179]  The

13    determination of deliberate indifference, the County asserts, would require individual analysis,

14    undermining any judicial economy found in certifying a class.[180]  Using the same defenses as for

15    commonality, CFMG attempts to discount any problems any named Plaintiff has had with any

16    aspect of CFMG's medical and mental care, but the medical records show otherwise.[181]

---

[174] *Hanon*, 976 F.2d at 508.

[175] *Id.*

[176] *See Wal-Mart*, 131 S. Ct. at 2551 n. 5; *Armstrong v. Davis,* 275 F.3d at 868–69.

[177] 7A Wright, § 1764 (emphasis added).

[178] *Armstrong v. Davis*, 275 F.3d at 869.

[179] *See* Docket No. 133 at 24.

[180] *See id.*

[181] *See* Docket No. 355 at 25; Docket Nos. 52-3 to 52-30.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

Here, the transitory putative class and subclass members are all inmates in the jail.  Each named Plaintiff declares exposure, like all other members of the putative class and subclass, to a substantial risk of serious harm due to the challenged policies and practices. The named Plaintiffs allege "the same or [a] similar injury" as the rest of the putative class; they allege that this injury is a result of a course of conduct that is not unique to any of them; and they allege that this injury follows from the "same, injurious course of conduct" at the center of the class claims.[182]   Relief for one individual would provide relief to everyone.[183]  "[G]iven that *every* inmate in [the Jail] is highly likely to require medical, mental health, and dental care, each of the named plaintiffs is similarly positioned to all other [Jail] inmates with respect to a substantial risk of serious harm resulting from exposure to defendants' policies and practices."[184]  This applies as well for the subclass.  "It does not matter that the named plaintiffs may have in the past suffered varying injuries or that they may currently have different health care needs; Rule 23(a)(3) requires only that their claims be 'typical' of the class, not that they be identically positioned to each other or to every class member."[185]

**E.**

As to adequacy of representation,[186] class representatives are adequate if they do not have "any conflicts of interest with other class members" and if they will "prosecute the action

---

[182] *See* Fed. R. Civ. P. 23(a)(3); *Armstrong v. Davis*, 275 F.3d at 869.

[183] *See Parsons*, 754 F.3d at 689 n.35 (rejecting *Shook v. Bd. of County Comm'rs*, 543 F.3d 597 (10th Cir. 2008)).

[184] *Id.*; *see also Plata*, 131 S. Ct. at 1940; *Armstrong*, 275 F.3d at 869.

[185] *Parsons*, 754 F.3d at 686; *see Ellis*, 657 F.3d at 985 n.9 ("Differing factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality.").

[186] *See* Fed. R. Civ. P. 23(a)(4).

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   vigorously on behalf of the class."[187]  Class representatives have less risk of conflict with unnamed

2   class members when they seek only declaratory and injunctive relief.  With regard to claims, the

3   honesty and credibility of a class representative is a relevant consideration into adequacy, because

4   an untrustworthy plaintiff could reduce the likelihood of prevailing on the class action[188] and may

5   be considered to have interests antagonistic to the class.[189]  But a plaintiff is inadequate only "when

6   attacks on the [plaintiff's] credibility . . . are so sharp as to jeopardize the interests of absent class

7   members" and "where the representative's credibility is questioned on issues directly relevant to

8   the litigation."[190]

9

10       The County argues that the named Plaintiffs are inadequate because, among other things,

11   they request conflicting relief.  For example, some Plaintiffs wish to see mentally ill inmates

12   segregated from the rest of the inmates, and others admonish Defendants for failure to "ensure that

13   inmates or detainees with disabilities are housed in the most integrated setting appropriate to the

14   needs of the individuals."[191]  Citing certain deposition testimony and counsel's role in preparing

15   defendants, CFMG contends the named Plaintiffs are not adequate representatives because they are

16   not credible and because they can establish neither the requisite case or controversy nor personal

17   injury from being subjected to the alleged risks.[192]  As to this latter point, CFMG disputes that any

18   named Plaintiffs were exposed to the inadequate conditions they challenge relating to  in screening,

---

[187] *Hanlon*, 150 F.3d at 1020.

[188] *See Harris v. Vector Marketing Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010)); *Feske v. MHC Thousand Trails L.P.*, Case No. 5:11-cv-4124-PSG, 2013 U.S. Dist. LEXIS 37232, at *36-41(N.D. Cal. 2013).

[189] *Harris*, 753 F. Supp. 2d at 1015.

[190] *Id.* (internal quotation marks and citations omitted); *see also Feske*, 2013 WL 1120816, at *13.

[191] *See* Docket No. 133 at 27.

[192] *See* Docket No. 169 at 18, *Lewis*, 518 U.S. at 357; *Berger v. Home Depot USA*, Inc. 741 F.3d 1061, 1067 (9th Cir. 2014).

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

**United States District Court**
For the Northern District of California

1  staffing, facilities, requests for care, care, treatment quality management, training, suicide

2  prevention and use of safety cells.[193]   CFMG also questions whether certain Plaintiffs suffering

3  from mental illness can adequately represent a class.[194]

4        Any minor disagreements between various class representatives' individual beliefs

5  regarding appropriate remedies do not render the class representatives inadequate.  Rather than

6  personal relief, Plaintiffs ask for relief from Defendants' problematic system-wide policies and

7  practices.  For example, while opinions may differ about housing inmates with mental illness in

8  general population or in special housing units, all plaintiffs agree inmates with mental illnesses

9  should not be housed in administrative segregation, and this is part of the relief they request.[195]

10  And "[i]nconsistent deposition testimony in and of itself will not serve as a ground for denial of

11  class certification."[196]   While lack of credibility is an issue for Plaintiffs to consider in constructing

12  their case, the court does not consider the named Plaintiffs inadequate.  Nor are alleged cognitive

13  impairments a valid reason to deem Plaintiffs inadequate.[197]

**F.**

16        Counsel may be appointed under Fed. R. Civ. P. 23(g)(1) and (4) if they are adequate; that

17  is, if counsel does not have "any conflicts of interest with other class members" and if they will

19  [193] *See* Docket No. 169 at 18-19.

20  [194] *See id.* at 21-22, 24-25, 26-29.

21  [195] *See* Docket No. 355 at 29-30.

22  [196] *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 357 (E.D.N.Y. 1997) *aff'd,* 164 F.3d 81 (2d
23  Cir. 1998).

24  [197] *See Ingles v. City of New York*, Case No. 01-cv-8279-DC, 2003 WL 402565, at *1, *7
25  (S.D.N.Y. Feb. 20, 2003) (ruling that class representative who was currently on psychiatric
medication and had a "psychiatric condition" was an adequate class representative); *Hill v. Priority
26  Fin. Servs., Inc.*, Case No. 98-cv-1319-SEB, 2000 WL 1876582, at *1 (S.D. Ind. Dec. 22, 2000)
(noting that even if the class representative were "currently undergoing treatment for mental
27  illness," that would not disqualify him if it did not "affect his understanding of the case, his
processing of information, or his ability to perform his duties as class representative").

28

43

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

"prosecute the action vigorously on behalf of the class."[198]  Here, appointment is sought by the following counsel:  Rosen Bien Galvan & Grunfeld LLP, Monterey County Public Defender James Egar and the American Civil Liberties Union.

Under Fed. R. Civ. P. 23(g)(1) and (4), class counsel with experience with class action lawsuits, class action lawsuits regarding conditions in correctional facilities, criminal justice issues and commitment of resources are likely to adequately represent the class.[199]

The County posits that the Rosen Bien firm may be financially interested in keeping inmates in jail, while the Office of the Public Defender's incentives may aim to keep inmates out of jail.[200]  The County further argues the Office of the Public Defender has declared conflict in representing six of the named Plaintiffs.[201]  The County also claims that because Egar filed a declaration in support of Plaintiffs' motion for class certification in which he testified to his personal knowledge of the conditions at the jail, he is a witness in this lawsuit, disqualifying him from representation in this lawsuit.[202]  CFMG focuses on a letter Egar once wrote lauding Fithian's work.[203]

---

[198] *Hanlon*, 150 F.3d at 1020.

[199] *See* Fed. R. Civ. P. 23(g)(1)(A)(i), (ii), (iii), and (iv); Fed. R. Civ. P. 23(g)(4).

[200] *See* Docket No. 133 at 27.

[201] *See id.* at 4.

[202] *Reich v. Club Universe*, 125 Cal. App. 3d 965, 970-972 (1981) ("The reasons for the rule prohibiting such a dual role by an attorney-potential witness are (1) an attorney who attempts to be both advocate and witness impairs his credibility as a witness and diminishes his effectiveness as an advocate, and (2) such conduct may diminish the public's respect and confidence toward the profession"); see also *Sicinski v. Reliance Funding Corp.,* 82 F.R.D. 730, 734 (S.D.N.Y. 1979) ("As stated in Ethical Consideration 5-9 of the Code of Professional Responsibility, '(t)he roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively;'); *Arthur v. Zearley*, 320 Ark. 273, 279-82 (1995) (finding attorney for plaintiffs in prospective class action who testified at class certification hearing improperly testified and acted as advocate in same proceeding).

[203] *See* Docket No. 169 at 1-2.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

Defendants' arguments as to plaintiffs' counsel's conflicting incentives are unpersuasive, especially where the class is transitory[204] and where Rosen Bien advocates for reducing jail and prison overcrowding.[205]  Pursuant to Cal. Gov. Code § 27706(g), conflicts in criminal cases do not carry over into civil cases,[206] and Egar's representation does not implicate California ethics rules.[207]  An attorney may be both counsel and witness in a single action, although Plaintiffs have stated they do not intend to call Egar to testify.[208]  The letter Egar once sent to Fithian also does not undermine his ability to represent the plaintiffs adequately.  Rosen Bien Galvan & Grunfeld LLP, Egar and the ACLU all have the necessary experience and resources to litigate cases such as this one.

## G.

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  *Wal-Mart* summarized Rule 23(b)(2)'s requirements as follows:

> the key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  In other words, Rule 23(b)(2)

---

[204] *See* Docket No. 128 at 13-16.

[205] *See* Docket No. 355 at 32; Docket No. 358 at ¶ 2; Docket No 358-1, Ex. A.

[206] *See also State v. Lucas*, 123 Ariz. 39, 41 (1979) (no conflict between prosecutor prosecuting man while simultaneously defending the county against the man's civil lawsuit).

[207] Cal. R. Prof. Conduct 3-100(C).

[208] *See Colyer v. Smith*, 50 F. Supp. 2d 966, 974 (C.D. Cal. 1999) (finding that attorneys are not necessarily disqualified even if they are compelled to be fact witnesses at trial); *cf.* Cal. R. Prof. Conduct 5-210 (allowing attorneys to act as witnesses in jury trials under certain circumstances); *Yaman v. Galipo*, Case No. 12-cv-7908-GW, 2014 WL 2566129, at *3 (C.D. Cal. June 3, 2014); *McLellan v. McLellan*, 23 Cal. App. 3d 343, 360 (Cal. Ct. App. 1972) (allowing attorney declaration).

45

**United States District Court**
For the Northern District of California

applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.[209]

These requirements unquestionably are satisfied when putative class members seek uniform injunctive or declaratory relief from policies or practices generally applicable to the class as a whole.[210]  Such an inquiry "does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries."[211]  Rather, as the rule's text makes clear, this inquiry asks only whether "the party opposing the class has acted or refused to act on grounds that apply generally to the class."[212]

The primary role of this provision is the certification of civil rights class actions.[213]

Following Rule 23(b)(2)'s text and purpose, courts have repeatedly invoked it to certify classes of

---

[209] 131 S. Ct at 2557 (citation omitted).

[210] *See Rodriguez*, 591 F.3d at 1125.

[211] *Parsons*, 754 F.3d at 688 (citing *Rodriguez*, 591 F.3d at 1125; *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).

[212] Fed. R. Civ. P. 23(b)(2).

[213] *See Amchem Products, Inc.*, 521 U.S. at 614 ("Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.' Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." (citations omitted)); *Walters*, 145 F.3d at 1047 ("Rule 23(b)(2) was adopted in order to permit the prosecution of civil-rights actions."); *Baby Neal for & by Kanter*, 43 F.3d at 63 ("The writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights." (citations omitted)); Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1776 (3d ed.) ("[S]ubdivision (b)(2) was added to Rule 23 in 1966 in part to make it clear that civil-rights suits for injunctive or declaratory relief can be brought as class actions ... [T]he class suit is a uniquely appropriate procedure in civil-rights cases, which generally involve an allegation of discrimination against a group as well as the violation of rights of particular individuals. By their very nature, civil-rights class actions almost invariably involve a plaintiff class, although they may also be brought against a defendant class."

46

1   inmates seeking declaratory and injunctive relief for alleged widespread constitutional and

2   statutory violations in prison systems.[214]

3       As in *Parsons*, here Plaintiffs "seek uniform injunctive or declaratory relief from policies or

4   practices that are generally applicable to the class as a whole."[215]  In their prayer for relief,

5   Plaintiffs request that Defendants be ordered "to protect [inmates] from substantial risk of harm

6   from other [inmates], to provide minimally adequate medical [and mental] care to [inmates], and to

7   cease discriminating against and failing to provide accommodations to [inmates] with disabilities; .

8   . . from continuing the unlawful acts, conditions, and practices described in this Complaint; . . . to

9   develop and implement, as soon as practical, a plan to eliminate the substantial risk of harm,

10  discrimination, and statutory violations that Plaintiffs and members of the class and subclass they

11  represent suffer due to the unlawful acts, omissions, conditions and practices described in this

12  Complaint [detailing needs for population, staffing, physical plant, protection from harm, training,

13  classification and housing, medical care, access to care, medical staffing, emergency care, chronic

14  care, medical records, specialist and outside treatment, mental health care, quality assurance, and

15  accommodation for inmates with disabilities];  . . . the costs of this suit and reasonable attorneys'

16  fees and litigation expenses; . . . retaining jurisdiction . . . until Defendants have fully complied

17  with the orders of this Court, and there is reasonable assurance that Defendants will continue to

18  comply in the future absent continuing jurisdiction; and [a]n award to Plaintiffs of such other and

---

[214] *Id.* at § 1776.1 "[I]t should be noted that a common use of Rule 23(b)(2) is in [inmate] actions brought to challenge various practices or rules in the prisons on the ground that they violate the constitution. For example, Rule 23(b)(2) class actions have been utilized to challenge prison policies or procedures alleged to . . . violate the [inmates'] Eighth Amendment rights to be free from cruel and unusual punishment." see also, e.g., Butler, 289 F.R.D. at 101 (certifying Rule 23(b)(2) class of inmates alleging systemic Eighth Amendment violations); *Hughes*, 2013 WL 1821077, at *20 (same); *Rosas*, 2012 WL 2061694, at *5 (same); *Indiana Prot. & Advocacy Servs. Comm'n*, 2012 WL 6738517 at *18 (same).

[215] *Parsons*, 754 F.3d at 688 (quoting Fed. R. Civ. P. 23(b)(2)).

47

further relief as the Court deems just and proper."[216]  Plaintiffs' expert reports also include

descriptions of the kinds of court-ordered changes in the jail's policy and practices that could

alleviate the alleged systemic constitutional and statutory violations, as well as affirmations by all

experts that court-ordered injunctive relief could effectively alleviate the deficiencies in the jail's

policies and practices identified in their reports.

The County argues Plaintiffs' requests are too vague regarding constitutional adequacy and

deficiency.[217]  But the civil rights claims of the inmate class and the inmates with disabilities

subclass "are precisely the sorts of claims that Rule 23(b)(2) was designed to facilitate."[218]

Defendants "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

whole."[219]  Plaintiffs satisfy Rule 23(b)(2) because "class members seek uniform relief from a

practice applicable to all of them."[220]  "Contrary to the [D]efendants' assertion that each inmate's

alleged injury is amenable only to individualized remedy, every inmate in the proposed class is

allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every

class member by uniform changes in [jail] policy and practice."[221]  Plaintiffs request no damages or

relief for any specific Plaintiff.[222]  Instead, Plaintiffs seek injunctive and declaratory relief from a

---

[216] *See* Docket No. 41 at 132-35.

[217] *See* Docket No. 133 at 33-34.

[218] *Walters*, 145 F.3d at 1047.

[219] Fed. R. Civ. P. 23(b)(2).

[220] *Rodriguez*, 591 F.3d at 1125; *Parsons*, 754 F.3d at 688.

[221] *Parsons*, 754 F.3d at 689.

[222] Docket No. 41 at ¶¶ 410-17.

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

specific set of Defendants' policies and practices,[223] and while each may not affect every member of the proposed class and subclass in exactly the same way, they constitute shared grounds for all inmates in the proposed classes.[224]  "For example, every inmate in [jail] custody is allegedly placed at risk of harm by [the jail's] policy and practice of failing to employ enough doctors—an injury that can be remedied on a class-wide basis by an injunction that requires [the jail] to hire more doctors, with the exact number of necessary additional hires to be determined by the district court if, after a trial, it ultimately concludes that the defendants engaged in unlawful conduct."[225] Because Defendants allegedly established systemic policies and practices that place every inmate in the jail in peril, and by allegedly doing so with deliberate indifference to the resulting risk of serious harm to them, Defendants have acted on grounds that apply generally to the proposed class and subclass, such that Plaintiffs' prayer for relief would provide an appropriate remedy for both.[226]  Accordingly, Plaintiffs satisfy Rule 23(b)(2).

## V.

The court GRANTS Plaintiffs' motion for class certification under Rule 23(b)(2), and appoints named Plaintiffs as class representatives.  The court also designates as class counsel under Rule 23(g) Michael Bien and Gay Crosthwait Grunfeld of Rosen Bien Galvan & Grunfeld LLP,

---

[223] *See* Docket No. 355 at 33; Docket No. 41 at ¶¶ 410-17; Docket No. 108-2 at 2-5; *see Parsons*, 754 F.3d at 687.

[224] *See Rodriguez*, 591 F.3d at 1125–26; *Walters*, 145 F.3d at 1047.

[225] *Parsons*, 754 F.3d at 689.

[226] *See* Fed. R. Civ. P. 23(b)(2).  Plaintiffs also claim the class and subclass can also be certified under Rule 23(b)(1)(A) and (B).  *See* Docket No. 355 at 35; *Ashker*, 2014 WL 2465191 at *7 (prison conditions case certified under Rule 23(b)(1)(A) for class actions that create a risk of inconsistent adjudications); Docket No. 358-4, Ex. VV at 107-10; *Gray v. County of Riverside*, Case No. 13-cv-0444-VAP, Docket No. 131 at 107-10 (C.D. Cal., Sept. 2, 2014) (Order Granting Plaintiffs' Motion for Class Certification, Denying Defendant's Motion to Dismiss, certifying jail conditions class action under both Rule 23(b)(1)(A) and (B)).  Because the court has found for certification appropriate under Rule 23(b)(2), the court does not address whether Plaintiffs also satisfy Rule 23(b)(1).

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE

Monterey County Public Defender James Egar, Alan Schlosser of the American Civil Liberties Union of Northern California and Eric Balaban of the American Civil Liberties Union-National Prison Project.  The class and subclass are defined as follows: "all adult men and women who are now, or will be in the future, incarcerated in Monterey County Jail" and "all qualified individuals with a disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in Monterey County Jail."

**SO ORDERED.**

Dated: January 29, 2015

PAUL S. GREWAL
United States Magistrate Judge

Case No.: 5:13-cv-2354-PSG
ORDER GRANTING MOTION TO CERTIFY CLASS AND DENYING MOTION TO STRIKE