1    MICHAEL W. BIEN – 096891
     ERNEST GALVAN – 196065
2    GAY C. GRUNFELD – 121944
     VAN SWEARINGEN – 259809
3    MICHAEL FREEDMAN – 262850
     KRISTA STONE-MANISTA – 269083
4    SARAH P. ALEXANDER – 291080
     ROSEN BIEN
5    GALVAN & GRUNFELD LLP
     315 Montgomery Street, Tenth Floor
6    San Francisco, California  94104-1823
     Telephone:    (415) 433-6830
7    Facsimile:    (415) 433-7104
     Email: mbien@rbgg.com
8
9    JAMES EGAR – 065702
     Public Defender
10   DONALD E. LANDIS, JR. – 149006
     Assistant Public Defender
11   OFFICE OF THE PUBLIC DEFENDER
     COUNTY OF MONTEREY
12   111 West Alisal Street
     Salinas, California  93901-2644
13   Telephone:    (831) 755-5806
     Facsimile:    (831) 755-5873
14   Email:    EgarJS@co.monterey.ca.us
               LandisDE@co.monterey.ca.us

     ALAN SCHLOSSER – 049957
     MICAELA DAVIS – 282195
     AMERICAN CIVIL LIBERTIES UNION
     FOUNDATION OF NORTHERN
     CALIFORNIA, INC.
     39 Drumm Street
     San Francisco, California  94111-4805
     Telephone:    (415) 621-2493
     Facsimile:    (415) 255-8437
     Email:    aschlosser@aclunc.org
               mdavis@aclunc.org

     ERIC BALABAN (admitted pro hac vice)
     CARL TAKEI – 256229
     NATIONAL PRISON PROJECT of the
     AMERICAN CIVIL LIBERTIES UNION
     915 15th Street N.W., 7th Floor
     Washington, D.C.  20005-2302
     Telephone:    (202) 393-4930
     Facsimile:    (202) 393-4931
     Email:    ebalaban@npp-aclu.org
               ctakei@npp-aclu.org

15   Attorneys for Plaintiffs

16                    UNITED STATES DISTRICT COURT

17                   NORTHERN DISTRICT OF CALIFORNIA

18   JESSE HERNANDEZ et al., on behalf of        Case No. CV 13 2354 PSG
     themselves and all others similarly situated,
19                                                **[PROPOSED] ORDER FOR FINAL
                        Plaintiffs,               APPROVAL OF SETTLEMENT
20                                                AGREEMENT**
             v.
21                                                Judge:  Hon. Paul S. Grewal
     COUNTY OF MONTEREY; MONTEREY                 Date:   August 18, 2015
22   COUNTY SHERIFF'S OFFICE;                     Time:   10:00 a.m.
     CALIFORNIA FORENSIC MEDICAL                  Crtrm.: 5, 4th Floor
23   GROUP, INCORPORATED, a California
     corporation; and DOES 1 to 20, inclusive,   Trial Date:        September 7, 2015
24
                        Defendants.
25

26

27

28

1    WHEREAS, Plaintiffs and Defendants submitted to this Court a Stipulated Motion
2    for Preliminary Approval of Class Action Settlement; Extension of Time for Preliminary
3    Injunction Compliance on May 14, 2015 (Dkt. No. 483, hereinafter "Stipulated Motion");

4    WHEREAS, this Court granted preliminary approval of the parties' Settlement
5    Agreement on May 15, 2015, finding that it "falls within the range of possible approval,"
6    and that it was "the product of arm's-length, serious, informed and non-collusive negotia-
7    tions between experienced and knowledgeable counsel who have actively prosecuted and
8    defended this litigation" (Dkt. No. 485; hereinafter, the "May 15, 2015 Order");

9    WHEREAS, the Court's May 15, 2015 Order directed that notice be provided to the
10   class, and set the final approval hearing pursuant to Rule 23(e) for the Federal Rules of
11   Civil Procedure for August 4, 2015 (later reset to August 18, 2015);

12   WHEREAS, on May 27, 2015, Defendants confirmed that notice had been provided
13   to the Class pursuant to the Court's May 15, 2015 Order, including by posting notices
14   throughout the Monterey County Jail as well as on the Monterey County Sheriff's Office
15   web site (Dkt. No. 486);

16   WHEREAS the May 15, 2015 Order required that any objections to the Settlement
17   Agreement may be sent to the Court and postmarked by July 11, 2015, and the Court
18   received one third-party objection to the settlement on the ground that damages were
19   unavailable under the settlement (and one class member voiced her objection to Plaintiffs'
20   counsel on the same ground);

21   WHEREAS, on July 28, 2015, the parties submitted a Joint Motion for Final
22   Approval of Settlement Agreement (Dkt. No. 489, hereinafter "Joint Motion");

23   WHEREAS, on August 18, 2015, this matter came before the Court for hearing
24   pursuant to Federal Rule of Civil Procedure 23(e) and the Order of this Court dated June
25   23, 2015, to consider final approval of the proposed settlement set forth in the parties
26   Stipulated Motion, with no objectors appearing at the hearing; and

27   WHEREAS, due and adequate notice having been given to the Plaintiff class
28   defined below as required by the Court's May 15, 2015 Order, and the Court having

1  considered all papers filed and proceedings in this case, the pleadings and papers filed in

2  support of final approval of the settlement, and otherwise being fully informed regarding

3  this litigation and good cause appearing therefore; the Court now finds and orders as

4  follows:

5  **FINDINGS**

6      1.     The Court finds that the proposed settlement is the product of arm's-length,

7  serious, and non-collusive negotiations between experienced and knowledgeable counsel

8  for the Plaintiff class and Defendants, who have actively and competently prosecuted and

9  defended this litigation.

10      2.     The Court finds that distribution of notice to the class has been completed in

11  conformance with the Court's May 15, 2015 Order and that no class member objected to

12  the substantive provisions of the Settlement Agreement.

13      3.     The Court, having carefully considered the settlement set forth in the parties

14  Joint Motion for Final Approval of Settlement Agreement and supporting documents filed

15  July 28, 2015, finds that the settlement is fair, adequate, and reasonable, and further finds

16  that the benefit to the Plaintiff class supports final approval of the proposed settlement in

17  light of all of the relevant considerations.

18  **IT IS HEREBY ORDERED THAT:**

19      1.     This Court has jurisdiction over the subject matter of this litigation and over

20  all parties to the action, including all members of the Plaintiff class and sub-class.

21      2.     The notices disseminated to the Plaintiff class pursuant to the Court's

22  May 15, 2015 Order and effected pursuant to the Declaration of Cmdr. James H. Bass

23  Affirming Publication of Notice of Class Settlement (Dkt. No. 486) constituted the best

24  notice practicable under the circumstances.  Said notices provided due and adequate notice

25  of proceedings for approval of the settlement and of the matters set forth therein, including

26  the proposed settlement set forth in the Joint Motion, to all persons entitled to such notice,

27  and said notices fully satisfied the requirements of Rule 23(e) of the Federal Rules of Civil

28  Procedure, the Constitution of the United States, due process and any other applicable

2                                                                                    CV 13 2354 PSG

[~~PROPOSED~~] ORDER FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

1  rule(s) of this Court.

2      3.      A district court's role in reviewing the substance of a class action settlement

3  under Rule 23 is to ensure that it is 'fair, adequate, and free from collusion.'"  *Lane v.*

4  *Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 8 (2013)

5  (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).  The Court finds

6  that in all respects the settlement in this case is fair, adequate, and free from collusion, and

7  that all of the relevant *Hanlon* factors weigh in favor of granting final approval in this case.

8  *See Hanlon*, 150 F.3d 1011 at 1026.  The Court thus grants final approval of the settlement

9  pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

10      4.      The parties' Settlement Agreement, attached as **Exhibit A,** is granted final

11  approval and incorporated by reference, and has the full force and effect of an order of this

12  Court.  For the purposes of jurisdiction and enforcement of this Settlement Agreement

13  only, the Court finds that this Settlement Agreement satisfies the requirements of 18

14  U.S.C. § 3626(a)(1)(A) in that it is narrowly drawn, extends no further than necessary to

15  correct the violation of the Federal right, and is the least intrusive means necessary to

16  correct the violation of the Federal right of the Plaintiffs.  In the event the Court finds that

17  Defendants have not substantially complied with the Agreement, it shall in the first

18  instance require Defendants to submit a plan for approval by the Court to remedy the

19  deficiencies identified by the Court. In the event the Court subsequently determines that

20  the Defendants' plan did not remedy the deficiencies, the Court shall retain the power to

21  enforce this Agreement through all remedies provided by law, excluding the imposition of

22  a consent decree.

23      5.      Pursuant to Section IV of the Settlement Agreement, as described in

24  Paragraphs 31 through 34 of the Settlement Agreement, the parties shall develop

25  Implementation Plans that will be enforceable by the Court as part of the Settlement

26  Agreement.  Pursuant to Paragraph 33(a) of the Settlement Agreement, by July 30, 2015,

27  Defendants shall submit to Plaintiffs the plans identified in the Order Granting Motion for

28  Preliminary Injunction.  No later than 10 days thereafter, Plaintiffs shall respond with

1  specific comments or objections if any.  By September 8, 2015, the parties shall have

2  completed meeting and conferring concerning Defendants' plans. If there are any

3  unresolved issues, the parties agree to submit the unresolved issues to Magistrate Judge

4  Cousins.  If the parties are still unable to agree to the content of the Implementation Plans

5  pertaining to the Preliminary Injunction Order, the parties shall seek redress with the

6  Court.  Pursuant to Paragraph 33(b) of the Settlement Agreement, no later than October 15,

7  2015, the parties shall have completed meeting and conferring concerning the Implementa-

8  tion Plans.  At that time, if there are any unresolved issues, the parties agree to submit the

9  unresolved issues to Magistrate Judge Cousins.  If the parties are still unable to agree to the

10  content of the Implementation Plans, the parties shall seek redress with the Court.

11      6.      Pursuant to Section VI of the Settlement Agreement, as described in

12  Paragraphs 44 through 49 of the Settlement Agreement, the Court retains jurisdiction to

13  enforce and administer the Settlement Agreement, including resolving disputes regarding

14  the Settlement Agreement.

15      7.      Within 7 days after this Order granting Final Approval, the written notice of

16  final settlement (the "Notice") shall be disseminated to the Class in English and Spanish,

17  substantially in the form attached as Exhibit B to the Declaration of Michael Bien

18  accompanying the Joint Motion by the following means:  (1) For the benefit of all class

19  and sub-class members, written Notices shall be posted throughout the Monterey County

20  Jail, in the same locations within the Jail that the Parties agreed class certification and

21  preliminary settlement notices were to be placed.  (2) Copies of the Settlement Agreement

22  shall be available in the Jail library and made available to Jail inmates upon request.

23  (3) Inmates under the custody of the Monterey County Sheriff's Office who reside at other

24  locations (such as Natividad Medical Center or the jail in Alameda County) shall be sent

25  the Notice by first class mail to their last known address, or shall be provided with the

26  notice in person by custodial staff.  (4) The Notice and the Settlement Agreement shall be

27  posted on the website of the Monterey County Sheriff's Office and made available for

28  public review and downloading.

1    8.    The expense of giving notice to the class members shall be paid by the

2 Defendants.  Dissemination of the Notice as provided above is hereby authorized and

3 approved, and satisfies the notice requirement of Rule 23(e), Federal Rules of Civil

4 Procedure, the Constitution of the United States, due process and any other applicable

5 rule(s) of this Court.  No later than September 25, 2015, Defendants must file and serve on

6 Plaintiffs' counsel an affidavit affirming that they published notice as required in the

7 Court's order.

8    **IT IS SO ORDERED.**

9

10 DATED:  _August 18_____, 2015         _____
                                                             Paul S. Grewal
11                                                           United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1 | **EXECUTION COPY**

2

3

4

5

6

7

8

9       UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated, | Case No. CV 13 2354 PSG |
| Plaintiffs, | **SETTLEMENT AGREEMENT** |
| v. | Judge:  Hon. Paul S. Grewal |
| COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive, | Trial Date:        September 8, 2015 |
| Defendants. | |

20

21

22

23

24

25

26

27

28

[2695914-1]

## I.   INTRODUCTION

1.   Plaintiffs are prisoners in the custody of the Monterey County Sheriff's Office ("MCSO").

2.   Defendants are the County of Monterey, Monterey County Sheriff's Office and, California Forensic Medical Group, Incorporated ("CFMG").

3.   The Court has certified this case as a class action.  The class is defined as "all adult men and women who are now, or will be in the future, incarcerated in the Monterey County Jail."  The Court has also certified a sub-class of "all qualified individuals with a disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in the Monterey County Jail."

4.   The Court on April 14, 2015, entered a Preliminary Injunction.

5.   The purpose of this Settlement Agreement is to settle the above-captioned case.  The parties believe this agreement is fair, reasonable, and adequate to protect the interests of all parties.

6.   Defendants deny every allegation in each of the Complaints filed in this case. This Settlement Agreement does not constitute, and shall not be construed, as an admission of or evidence of any act of deliberate indifference to any inmate's constitutional rights, violation of 42 U.S.C. § 1983, violation of the ADA, violation of the U.S. Constitution, or any other wrongdoing or liability by any party.  The Defendants expressly deny any liability.  Defendants deny that any of their policies, procedures and/or practices subject inmates to a risk of harm or result in any deliberate indifference to inmates' safety, medical, mental health, dental, or accessibility needs  in violation of their state or federal constitutional rights, state or federal law, or the ADA and Rehabilitation Act. The parties agree that nothing in this Settlement Agreement shall be used against any Defendant in any other litigation that has been or may be filed against any Defendant.

7.   The Defendants state that prior to and since the initiation of this litigation, the County of Monterey and Monterey County Sheriff's Office ("Monterey Defendants")

and California Forensic Medical Group ("CFMG") had commenced significant initiatives to enhance the delivery of mental health services and medical care, improve the safety of the MCJ and improve jail and program accessibility, and the process has been ongoing throughout the course of the litigation.

8.    The parties will jointly file this Settlement Agreement with the Court, and ask that the Court issue an order directing notice to the class, setting an objection period, and a fairness hearing ("Preliminary Approval"), and that the Court approve it as final after the fairness hearing ("Final Approval"). Final Approval is a condition precedent to the Agreement's effectiveness, except as to the specific steps that the parties herein agree to perform after Preliminary Approval.

## II.    PRELIMINARY AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT

9.    By May 29, 2015, the parties shall jointly submit this Settlement Agreement to the Court for Preliminary Approval and with a proposed order for Preliminary Approval providing a schedule for notice, proposed notices of Preliminary Approval, objection period, and fairness hearing, and proposed notice of the final remedy for posting upon Final Approval under Rule 23(e) of the Federal Rules of Civil Procedure. Concurrent with this filing the parties shall file a request to modify the dates mandated by the preliminary injunction.

## III.    DEFINITIONS

10.    "Substantial compliance" shall mean adherence to the requirements of the Settlement Agreement and the Implementation Plans in all material respects, recognizing that 100% compliance is not required. Non-systemic deviations from the requirements of the Settlement Agreement and the Implementation Plans shall not prevent a finding of substantial compliance, provided that the Defendants demonstrate that they have (a) implemented a system for tracking compliance, where appropriate and practical, and for taking corrective measures in response to instances of non-compliance, and (b) that Defendants have instituted policies, procedures, practices, and resources that are capable of

Settlement Agreement—Execution Copy

[2695914-1]

1 durable and sustained compliance.  Substantial compliance shall be assessed by the

2 subject-area monitors and shall govern all requirements for the Settlement Agreement and

3 Implementation Plans.

4       11.    "Administrative Segregation" shall be defined as a classification or program

5 in which prisoners are removed from the general population and confined in a designated

6 unit to separate them from other prisoners.

7       12.    "MC":  County of Monterey.

8       13.    "MCSO":  Monterey County Sheriff's Office.

9       14.    "CFMG":  California Forensic Medical Group.

10       15.    "Day(s)":  Calendar days unless otherwise specified.

11       16.    "Facility" or "Jail":  Monterey County Jail.

12       17.    "Disability" and "Disabilities" shall be defined in the same manner as to

13 include all persons considered to have a disability under the Americans with Disabilities

14 Act, and/or the Rehabilitation Act.

15       18.    "Mediator" shall refer to the Honorable Nathanael Cousins.  The parties

16 consent to the jurisdiction of the Honorable Nathanael Cousins to serve in this capacity.

17       19.    "Prisoner(s)" shall be construed broadly to refer to one or more individuals

18 detained at, or otherwise housed, held, in the custody of, or confined at the Jail, or under

19 the custody of MCSO at another location, such as a hospital or other treatment facility. The

20 term "prisoner" shall not include those individuals who are on parole or probation and not

21 physically in the custody of the MCSO.  The term "prisoner" shall not include those

22 individuals who are detained during the process of investigation or arrest prior to booking

23 into jail. It shall also not include individuals participating in various pretrial release

24 programs.

25       20.    To "implement" a policy means that the policy has been drafted and

26 distributed to all staff responsible for following or applying the policy; and, if appropriate,

27 all relevant staff have been trained on the policy; compliance with the policy is monitored

28

1    and tracked, if practical, to assure the policy is consistently applied; and there are
2    corrective action measures to address lapses in application of the policy.

3        21.    "Qualified Medical Professional" means a currently licensed physician,
4    physician assistant, nurse practitioner, or registered nurse qualified to deliver those health
5    care services he or she has undertaken to provide.

6        22.    "Qualified Mental Health Professional" refers to an individual with training
7    in psychology, social work, psychiatric nursing, or marriage and family therapy, who is
8    currently licensed by the State of California to deliver those mental health services he or
9    she has undertaken to provide.

10       23.    A Psychiatrist is a licensed Medical Doctor who has completed an approved
11   residency in psychiatry and is either certified by the American Board of Psychiatry and
12   Neurology or is eligible to take the exam for board certification.

13       24.    "Staff members" or "staffing" includes all employees of MC or CFMG,
14   including correctional officers, who have contact with prisoners.

15       25.    "Medical Clearance" is a clinical assessment of physical and mental status
16   before an individual is admitted into the facility.  The medical clearance may come from
17   on-site health staff or may require sending the individual to the hospital emergency room.
18   The medical clearance is to be documented in writing.

19       26.    "Face-to-face interview" refers to an encounter between a clinician and
20   patient.  The encounter is typically in-person, but this term does not preclude the use of
21   telemedicine and/or tele-psychiatry services.

22       27.    "Initial Health Screening" is a face-to-face interview conducted by nursing
23   staff with the arriving individual that identifies immediate medical, mental health and/or
24   dental needs and provides for medication continuity.

25       28.    "Initial Health Assessment" is a medical, mental health, dental and
26   communicable diseases screening which includes a history and physical examination by
27   appropriate clinical staff.

28

29.   "Mental Health Screening" is a face-to-face interview conducted by Qualified Mental Health Professional using a standardized Mental Health Screening questionnaire.

30.   "Psychological Evaluation" is a confidential face-to-face interview and file review conducted by a QUALIFIED MENTAL HEALTH PROFESSIONAL or PSYCHIATRIST, primarily for purposes of determining diagnosis, level of functioning, and recommended level of care and course of treatment.

## IV.   SUBSTANTIVE PROVISIONS

31.   The parties shall develop Implementation Plans in the following subject areas for improvement of care, services, programs, and activities at the Jail.  The plans are intended to ensure that the class is not exposed to substantial risks of serious harm, and that the subclass is not subject to discrimination on account of disability.  These Implementation Plans will be adopted as part of the Settlement Agreement.  The recitation of subject matters to be addressed by the Implementation Plans is for purposes of describing the scope of the Settlement Agreement and does not constitute an admission by Defendants that existing policies and procedures are inadequate.

a.   Intake Screening.  Defendants will develop and implement an Intake Screening Implementation Plan that specifies standards and timelines to ensure  that arriving prisoners are promptly screened for urgent medical, mental health and dental needs, with prompt follow-up and disability accommodations.  The standards and timelines shall include Medical Clearance on arrival at the jail to determine whether the prisoner must be excluded on medical or mental health grounds, Intake Health Screening on arrival at the jail, and Initial Health Assessment within time frames determined by the conditions and acuity found in the Intake Health Screening.  The Implementation Plan shall include a mental health assessment tool to be used with all prisoners at intake to determine which prisoners need Psychological or Psychiatric Evaluation and on what time frame.  The Implementation Plan shall also include standards and timelines for Dental Evaluation. The Intake Screening Implementation Plan shall provide for appropriate infectious disease

1  screening and follow-up, including but not limited to screening for tuberculosis and
2  methicillin resistant staphylococcus aureus (MRSA).  The Intake Screening
3  Implementation Plan shall also provide for standards and timelines for medication
4  continuity either through outside verification or on-site physician medication order, Initial
5  Health Assessment for all incoming prisoners with chronic illnesses, Psychological
6  Evaluation for persons with signs of development disability, Psychological Evaluation for
7  persons with signs and/or histories of mental illness that meet certain thresholds, clinical
8  evaluation of persons in need of detoxification with clinical determinations for any use of
9  sobering, safety or isolation cells, use of a suicide risk assessment tool, with Psychological
10  Evaluation for those with positive findings on the suicide assessment.
11        b.    Infection Control
12        i.    Defendants' tuberculosis identification, control and treatment
13  program shall comply with the standards laid out in Prevention and Control of
14  Tuberculosis in Correctional and Detention Facilities: Recommendations from CDC (June
15  2006).
16        ii.    All inmates newly booked into the jail shall receive a timely
17  tuberculosis symptom screening administered by adequately trained health care staff (nurse
18  or higher level staff).
19        iii.    Defendants shall have a reliable system to track whether all
20  newly booked inmates have received tuberculosis screening and appropriate follow-up
21  testing and treatment.
22        c.    Detoxification
23        i.    Medical staff shall timely conduct the initial evaluation to
24  determine if an inmate is intoxicated and/or suffering from withdrawal or at high risk for
25  withdrawal.
26        ii.    The Health Care and Mental Health Implementation Plans shall
27  provide for necessary coordination between medical staff and custody regarding placement
28  of prisoners in a sobering cell, addressing the prisoner's medical and mental health needs,

1   custody's overall responsibility for safety and security of prisoners, prompt reviews by
2   medical of all placements, and a process of resolving disagreements between medical and
3   custody.

4           iii.     Medical providers shall be timely involved in assessing and
5   treating inmates potentially undergoing withdrawal, and non-provider medical staff shall
6   timely refer to providers those inmates undergoing withdrawals when clinically indicated.

7           d.     Safety Cells.  The Health Care and Mental Health Implementation
8   Plans shall provide for necessary coordination between medical staff and custody
9   regarding placement of prisoners in a safety cell, addressing the prisoner's medical and
10  mental health needs, custody's overall responsibility for safety and security of prisoners,
11  prompt reviews by medical of all placements, and a process of resolving disagreements
12  between medical and custody.

13          e.     Medication Continuity

14          i.     All inmates newly booked into the jail, who at the time of
15  booking are prescribed medications in the community, shall be timely continued on those
16  medications, or prescribed comparable appropriate medication, unless a medical provider
17  makes an appropriate clinical determination that medications are not necessary for
18  treatment.

19          ii.     Inmates who, at the time of booking, report to Defendants that
20  they are taking community-prescribed medications, but whose medications cannot be
21  verified by Defendants, shall be timely assessed by a medical provider and timely
22  prescribed medications necessary to treat their health needs.

23          f.     Custody Staffing

24          i.     Defendants will develop and implement a Custody Staffing
25  Implementation Plan to address inmate and staff safety and to address medical, mental
26  health, disability-related, and other required programs and services.

27          ii.     The Staffing Implementation Plan will include necessary posts
28  and functions to increase prisoners' access to out-of-cell activity, yard, education and other

1 | in-house jail programs, including using programs necessary for milestone credit earning

2 | under Cal. Penal Code § 4019 or any other applicable law.

3 |               iii.     The Staffing Implementation Plan will identify all needed posts

4 | and positions for custody staff members based on current and projected Jail population,

5 | and the number and qualification of correctional staff to cover each post and position, with

6 | shift relief.

7 |               iv.     The Staffing Implementation Plan will ensure adequate

8 | coverage to supervise each housing and specialized housing area, to escort prisoners for

9 | court, for visits and legal visits, medical and mental health appointments, yard and other

10 | operations of the Jail, and to respond to medical, mental health, security, and natural

11 | disaster emergencies.

12 |               g.     Clinical Staffing.  Defendants will develop and implement a Clinical

13 | Staffing Implementation Plan to establish and maintain Qualified Medical Professional and

14 | Qualified Mental Health Professional staffing at the Jail to ensure adequate staffing to

15 | provide all necessary medical and mental health care, including intake, sick call, chronic

16 | and emergency care, psychiatric therapy, medication management, records management,

17 | and suicide prevention.  The plan will identify all needed positions based on current and

18 | projected Jail population, and the number and qualifications of medical and mental health

19 | care staff to cover each position, with shift relief.

20 |               h.     Medical Care

21 |               i.     Defendants shall develop and implement a Health Care

22 | Implementation Plan to expand the provision of care for inmates with serious medical

23 | and/or mental health needs and to ensure they receive timely treatment appropriate to the

24 | acuity of their conditions.

25 |               ii.     Defendants shall ensure timely access to necessary treatment

26 | by Qualified Medical Professionals for prisoners with medical issues, including

27 | appropriate medication practices, appropriate treatment, adequate clinical and

28 | administrative treatment space, access to specialists and hospitalization, appropriate

[2695914-1]

1  emergency response, appropriate means for requesting medical attention in all levels of

2  custody including segregation, appropriate chronic care, appropriate follow up medical

3  attention for prisoners discharged from the hospital, and appropriate supervision of all

4  medical staff.

5          iii.    Defendants shall ensure that appropriate and complete medical

6  records are maintained to ensure adequate treatment of prisoners' serious medical and

7  mental health needs.  Medical records shall include all records, results, and orders received

8  from off-site consultations and treatment conducted while the prisoner is in the Jail

9  custody.

10         i.    Mental Health Care

11          i.    Defendants shall develop and implement a Mental Health Care

12  Implementation Plan to more thoroughly ensure timely access to necessary treatment by

13  Qualified Mental Health Professionals for prisoners with mental illness, including

14  appropriate screening, detoxification and medication practices, appropriate therapies,

15  adequate clinical and administrative treatment space, access to hospitalization and

16  inpatient care, appropriate suicide prevention practices and policies, appropriate use of

17  seclusion, and appropriate disciplinary policies and practices regarding the mentally ill,

18  and appropriate training of corrections and mental health staff to recognize and treat

19  prisoners' mental illness.

20         ii.    Defendants shall develop policies and procedures for the safe

21  and appropriate use of restraint chairs and similar means of physical restraint, including

22  but not limited to prompt clinical consultations, and observations.

23         iii.    The Mental Health Implementation Plan shall require

24  classification to assess a totality of factors when assigning prisoners to administrative

25  segregation units.  It is the understood that the goal of Defendants is to limit the use of

26  administrative segregation for prisoners with serious mental illness.  The Mental Health

27  Implementation Plan shall require placement screening of all prisoners for mental illness

28  and suicidality before or promptly after they are housed  in administrative segregation, and

require procedures to mitigate the impact of administrative segregation on persons with mental illness, including but not limited to structured therapeutic activity outside the segregation cell and where feasible assignment of cell mates.

        iv.    The Mental Health Implementation Plan shall address suicide watch and suicide precaution procedures to ensure that prisoners in crisis are not placed in punitive and/or unsanitary conditions.

        v.    Defendants shall remove hanging points and other hazards in jail administrative segregation cells that pose an unreasonable risk of being used by inmates to harm themselves or attempt suicide.  While it is recognized that it is impossible to suicide proof a jail, Defendants will in good faith work with a consultant to develop and implement a plan to reduce hanging points and other suicide hazards in the jail administrative segregation cells.

        vi.    The Implementation Plans shall address standards for health and safety checks of all inmates housed in segregation cells  at irregular intervals with the specific frequency of checks to be addressed in the Plans to address the needs of particular classifications of inmates.

        vii.    Nursing staff shall conduct daily mental health rounds in segregation.

        j.    Dental Care:  Defendants shall develop and implement a Dental Care Implementation Plan to ensure timely access to necessary treatment for dental and oral health conditions, including but not limited to Intake Screening, access to care other than extractions, a safe and sanitary on or off-site facility for necessary dental care, periodic dental care for long-term prisoners, and access to dental hygiene supplies.

        k.    Safety

        i.    Defendants shall develop and implement a Violence Reduction Implementation Plan to provide prisoners with a safe and secure environment and intended to ensure reasonable safety from harm.  Defendants shall take all reasonable measures to improve inmate and custodial staff safety.  The Implementation Plan shall ensure that

during the course of incarceration, prisoners are not subjected to unnecessary or excessive force by Staff and are reasonably protected from violence by other prisoners.

    ii. Defendants' plan shall include physical and structural issues to improve safety and security, which may include camera installation.  Defendants' plan shall, to the extent possible, prioritize the use of evidence-based policies, including but not limited to increasing Work Alternative Program limits, Involuntary Home Detention, Pre-trial Release though Probation, a revised Own Recognizance (OR) eligibility policy, Choices/Liberty Pride (or equivalent programs) educational early release kickouts, Penal Code 4018.1 and 4014.1 kickouts.  The parties recognize that pre-trial release, diversion, split sentencing, the use of home and GPS monitoring are also available and beneficial, and should be tracked, but are dependent on the discretion of the Monterey County Superior Court and District Attorney.

    l. Prisoners with Disabilities

    i. Defendants shall develop and implement an ADA Implementation Plan to improve accessibility to inmate programs and services.  The Implementation Plan will ensure that prisoners with disabilities are not discriminated against and are not denied the benefits of, or participation in, programs, services, and activities at the Jail.

    ii. Defendants shall design and implement a system for identifying and tracking all inmates who are qualified individuals with disabilities, as that term is defined by the ADA and its implementing regulations, including but not limited to inmates with mobility impairments or who are deaf, hard of hearing or unable to speak.  Defendants shall also design and implement a system for identifying and tracking the reasonable accommodations necessary for qualified inmates with disabilities to participate in programs, services and activities offered by Defendants at the Jail.

    iii. Prisoners' requests for a particular type of accommodation shall be given primary consideration and shall be granted unless the request is

1  unreasonable for specific articulated reasons allowable under Title II of the ADA or pose a

2  significant safety or security threat.

3        iv.    Defendants shall furnish qualified sign language interpreters to

4  any inmates for whom sign language is their only or primary method of communication, in

5  all circumstances where a qualified sign language interpreter is necessary to ensure an

6  inmate has an equal opportunity to participate in, and enjoy the benefits of, programs,

7  services and activities offered by Defendants. The interactions for which Defendants must

8  furnish qualified sign language interpreters include but are not limited to the intake

9  process, at classification hearings, disciplinary hearings, all medical, mental health and

10 dental treatment, religious services, educational classes such as Choices and Pride classes

11 or the equivalent, Narcotics and Alcoholics Anonymous meetings or the equivalent, and

12 any other interactions with staff that implicate an inmates' due process rights.  Defendants

13 may employ alternatives to a live sign language interpreter such as video remote

14 interpreting providing that Defendants demonstrate to the ADA monitor the efficacy of the

15 alternatives employed.  Defendants need not maintain a full-time staff sign language

16 interpreter, but may use on-call services.

17        v.     Defendants shall implement a system to document that

18 Defendants have provided qualified sign language interpreters or reasonable alternatives to

19 inmates who need them and that the inmates have understood the information conveyed by

20 the qualified sign language interpreter or alternative form of communication as outlined in

21 Paragraph iv above.

22        vi.    The County Defendants shall offer inmates with ambulatory

23 disabilities all programs, services and activities offered to other inmates, including but not

24 limited to outdoor exercise, religious services, education programs such as Choices and

25 Pride classes or the equivalent, and Narcotics and Alcoholics Anonymous meetings or the

26 equivalent, in locations that do not require them to climb stairs in order to access the

27 programs, services and activities, as long as those programs, services and activities are

28 offered to the general population.

32.     The Implementation Plans outlined in this Settlement Agreement shall not extend to subject areas beyond what is addressed in Section IV of this Agreement.

33.     The parties agree to begin work on development of the Implementation Plans immediately, without awaiting Final Approval of the class action settlement.  If the parties agree on all aspects of the Implementation Plans, the settlement agreement will be amended to incorporate the plans.

a.     No later than July 30, 2015, Defendants shall submit to Plaintiffs the plans identified in the Order Granting Motion for Preliminary Injunction (Docket No. 460, at 42-43.)  No later than 10 days thereafter, Plaintiffs shall respond with specific comments or objections if any.  The parties shall meet and confer to resolve all disputed items within 30 days thereafter.  Any unresolved items shall be submitted to the agreed upon mediator.  If the parties are still unable to agree to the content of the plans, the parties shall seek redress with the Court.

b.     No later than October 15, 2015, the parties shall have completed meeting and conferring concerning the Implementation Plans.  At that time, if there are any unresolved issues, the parties agree to submit the unresolved issues to the agreed upon mediator.  If the parties are still unable to agree to the content of the Implementation Plans, the parties shall seek redress with the Court.  The parties shall jointly file all Implementation Plans with the Court, requesting that the Court approve the plans as an amendment to the Settlement Agreement.

34.     All provisions of the Implementation Plans will be enforceable by the Court, as part of the Settlement Agreement.

**V.     MONITORING**

35.     The parties agree that expert monitors will be retained to monitor Defendants' compliance with this Settlement Agreement and the Implementation Plans in the following subject areas:

a.     ADA Compliance.

b.     Mental health care.

c.    Medical care.

d.    General conditions of confinement and jail security.

e.    Dental care.

36.    The parties shall meet and confer on the process for selecting monitors.  If no monitors are selected by Oct. 1, 2015, the parties shall submit lists of names to the mediator for selection.

37.    If any of the monitors become unavailable to monitor their respective areas, the parties will meet and confer, and assign a new expert to monitor compliance with this Settlement Agreement and the Implementation Plans for their respective areas of expertise. The parties may agree at any time to remove and replace a monitor.

38.    Defendants shall pay the fees and costs incurred by the designated monitors and their staff.  Invoices will be provided to all parties for their review before payment. There will be a yearly budget negotiated with each designated monitor.  If any monitor exceeds the budget for fees or costs without prior approval, he or she may be removed and replaced through the process described in Paragraph 36 above.  If the parties do not agree on removal, either party may refer the matter to the mediator, and if necessary to the Court to determine whether the monitor should be retained or removed.

39.    The designated monitors shall have access to all jail facilities upon reasonable notice, to assess substantial compliance with this Settlement Agreement, and the incorporated Implementation Plans.  All site visits shall take place on consecutive days. There shall be no more than two (2) site visits in each year, per monitor, that the Settlement Agreement is in effect.  These visits may take up to two (2) days each.

40.    The designated monitors shall have access to meet and interview personnel whose duties pertain to the provision of services and/or who work with inmates in the area of the expert's expertise.

a.    The designated monitors shall have a reasonable opportunity to conduct confidential interviews of inmates to assess whether Defendants are in compliance with the terms of the Settlement Agreement and Implementation Plans.

b.     The designated monitors may request to review County or CFMG documents, except those documents protected by attorney-client or work product privileges, or by state or federal law, to monitor Defendants' compliance with the terms of this Settlement Agreement and all Implementation Plans.  If these documents are requested in conjunction with a site visit, Defendants will provide these documents to the extent feasible within ten (10) days prior to the visit.

c.     During the site visits, the designated  medical, mental health and dental monitors shall have reasonable access to current inmate health records, including mental health records, consistent with Defendants' obligations under  Federal and State law, as those obligations have been modified by Court order.

d.     Monitors shall be provided with and agree to be bound by any protective or Court orders entered in this case to protect the confidentiality of prisoner records and security sensitive information.

e.     The designated monitor will prepare a draft written report on the Defendants' efforts to meet the terms of this Settlement Agreement and all Implementation Plans at least twice a year and within 30 days of the later of the monitor's site inspection and the monitor's receipt of all requested documents and information, and in no case later than 45 days after the inspection.  Each report shall contain a determination of whether Defendants are "substantially complying" with the applicable Implementation Plan. The draft report will be delivered to all parties to this Agreement.  If the designated monitor concludes that Defendants have not substantially complied with the terms of any provision or provisions of the Settlement Agreement and Implementation plans, the designated monitor shall make recommendations as to actions they believe to be necessary to substantially comply with the terms of the provision or provisions.  The parties will have 30 days to provide written comments, objections or to cure issues and 7 days to reply.  The monitor may re-inspect before issuing a final report.  Final reports shall be due 20 days after the later of the monitor's receipt of any comments, objections or replies, or any re-inspection.

41.     Plaintiffs are entitled to conduct reasonable monitoring of Defendants' compliance with this Agreement, including the right to inspect the jail, interview staff and inmates, review relevant records and observe practices related to Defendants' compliance with the provisions of this Agreement.  Plaintiffs' routine monitoring will not exceed four (4) inspections of not more than one day per inspection of Jail operations per year, limited to no more than one attorney and one expert per inspection.  Defense counsel reserves the right to be present for any inspections and/or staff interviews.  The parties shall develop a monthly report for the purposes of monitoring and tracking performance under the Implementation Plans.  Plaintiffs shall use the Office of the Public Defender for monitoring as appropriate.  The parties shall meet and confer regarding any disputes regarding the scope and extent of inspections or access to information, and if necessary, shall seek the involvement of the mediator.

42.     Defendants will notify Plaintiffs at least 30 days in advance of any scheduled training sessions related to substantial compliance with this Settlement Agreement and/or the Implementation Plans, and shall provide Plaintiffs with all training materials at least 10 days in advance of the training.

43.     The parties shall agree on a mechanism for promptly addressing concerns raised by Plaintiffs' counsel regarding individual class members and emergencies.  Before contacting Defendants, Plaintiffs' counsel will make every effort to verify that the concerns of individual class members are accurate, substantive and not frivolous, such as having the Office of the Public Defender meet with the individual class members. The parties agree that Defendants may appeal to the Court for modification of this paragraph should a significant number of concerns raised by Plaintiffs' counsel be found to be inaccurate, lacking substantive, or frivolous.

## VI.    RESERVATION OF JURISDICTION AND ENFORCEMENT

44.     The parties consent to the reservation and exercise of jurisdiction by the District Court over all disputes between and among the parties arising out of this

1  Settlement Agreement.  The parties agree this Settlement Agreement shall not be construed

2  as a consent decree.

3      45.    For the purposes of jurisdiction and enforcement of this Settlement

4  Agreement only, the parties jointly request the Court find that this Settlement Agreement

5  satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that it is narrowly drawn,

6  extends no further than necessary to correct the violation of the Federal right, and is the

7  least intrusive means necessary to correct the violation of the Federal right of the Plaintiffs.

8  In the event the Court finds that Defendants have not substantially complied with the

9  Agreement, it shall in the first instance require Defendants to submit a plan for approval by

10  the Court to remedy the deficiencies identified by the Court. In the event the Court

11  subsequently determines that the Defendants' plan did not remedy the deficiencies, the

12  Court shall retain the power to enforce this Agreement through all remedies provided by

13  law, excluding the imposition of a consent decree.

14      46.    The Court shall retain jurisdiction to enforce the terms of this Settlement

15  Agreement and, once they are approved, the Implementation Plans for a period of five

16  years, unless Plaintiffs' counsel can demonstrate to the Court through noticed motion that

17  jurisdiction should be retained for a longer period.  The Court shall have the power to

18  enforce the terms of this Settlement Agreement through specific performance and all other

19  remedies permitted by law or equity, excluding the imposition of a Consent Decree.

20      47.    The Court shall be the sole forum for the enforcement of this Settlement

21  Agreement.  Any order to achieve substantial compliance with the provisions of this

22  Settlement Agreement shall be subject to the applicable provisions of the Prison Litigation

23  Reform Act, 18 U.S.C. Section 3626.

24      48.    If Plaintiffs' counsel believes that Defendants are not substantially

25  complying with any of the acts required by this Settlement Agreement or the

26  Implementation Plans, they shall notify Defendants in writing of the facts supporting their

27  belief.  Defendants shall investigate the allegations and respond in writing within 30 days.

28  If Plaintiffs' counsel are not satisfied with Defendants' response, the parties shall conduct

negotiations to resolve the issue(s). If the parties are unable to resolve the issue(s) satisfactorily, the parties agree to present the issue(s) to the agreed upon mediator. If the parties are still unable to resolve the issue(s), either party may move the Court for any relief permitted by law or equity. In cases of particular urgency that are central to the purpose of the Settlement Agreement, a party may opt to bring disputes directly to the District Court, or both parties may consent to bypass the use of the mediator if the parties agree the issue should be briefed to the Court with prior notice to the mediator.

49.     This Settlement Agreement may be enforced only by the parties hereto. Nothing contained in this Settlement Agreement is intended or shall be construed to evidence of an intention to confer any rights or remedies upon any person other than the parties hereto.

## VII.   TERMINATION

50.     The parties or any party may agree or request a finding that Defendants are in substantial compliance with a particular Implementation Plan or any material part thereof and have maintained substantial compliance for a period of twelve months. [*See* definitions and monitoring sections.] Such a finding will result in a reduction or suspension of monitoring of that issue. If Plaintiffs present evidence that Defendants are no longer in substantial compliance with requirements previously found in substantial compliance, the Court may order additional relief including but not limited to reinstating full monitoring.

51.     If at any time, the Court finds that Defendants are in substantial compliance with all requirements of this Settlement Agreement and all Implementation Plans, Defendants may move the Court for an order terminating the Settlement Agreement.

52.     The parties intend to work in good faith to achieve substantial compliance with all requirements of this Settlement Agreement and all Implementation Plans within five (5) years from Court approval of the Settlement Agreement and Implementation Plans. If Plaintiffs believe that the Defendants are not in substantial compliance at the end of five (5) years from Court approval of the Implementation Plans, Plaintiffs may move for an

order extending jurisdiction over the Settlement Agreement.  In order to extend jurisdiction, the Plaintiffs must establish and the Court must determine that Defendants are not in substantial compliance.  Unless jurisdiction is extended by the Court, the Settlement Agreement shall terminate five (5) years from Court approval of the Settlement Agreement and Implementation Plans.  Nothing in this paragraph shall limit the parties' rights to challenge or appeal any finding as to whether Defendants are not in substantial compliance with the Settlement Agreement and all Implementation Plans, or consequent order entered by the Court.

## VIII.  AMENDMENTS

53.     By mutual agreement, the parties may change the terms of this Settlement Agreement, including, but not limited to, the timetables for taking specific actions, provided that such mutual agreement is memorialized in writing, signed by the parties and approved by the Court.

54.     Defendants shall not make any changes to any policy provision implementing the provisions of this Settlement Agreement and Implementation Plans without providing Plaintiffs a written draft of such policy or policies, for their review and comment.

55.     Without prior agreement of the parties, Defendants may not amend any policy provision to conflict with the terms of this Settlement Agreement while the Settlement Agreement remains in effect.

56.     Defendants shall not approve any changes to a policy maintained by its health care provider that conflicts with the terms of this Settlement Agreement and Implementation Plans.

## IX.     FUNDING

57.     The parties acknowledge that implementation of this Settlement Agreement and the Implementation Plans are subject to the availability and receipt of appropriated funds.

58.    The parties further acknowledge that the lack of funding does not preclude the Court from entering any order to achieve compliance with this Settlement Agreement that comports with the applicable provisions of the Prison Litigation Reform Act, 18 U.S.C. Section 3626 and with other applicable law, provided that Defendants reserve the right to assert that the lack of funding should be taken into account in any remedial order.

59.    Defendants agree to make all possible good faith efforts to seek all necessary funding to implement this Settlement Agreement and all Implementation Plans. In the event that the parties are unable to agree as to whether there is sufficient funding to implement fully this Settlement Agreement and Implementation Plans, the parties shall meet and confer, and if necessary, consult the Court.  In the event that the parties continue to be unable to agree, either Defendants or Plaintiffs may seek the assistance of the Court and if necessary consult the mediator.

## X.    ATTORNEY'S FEES AND EXPENSES

60.    Attorney's fees and expenses shall be addressed as follows.

61.    Plaintiffs shall provide the Court and Defendants with a fees application including the supporting materials provided by Civil L.R. 54-5.

62.    Fees and expenses through Final Approval of Settlement Agreement, including approval of all Implementation Plans:  Plaintiffs agree not to seek fees and expenses from the Court in an amount above $4.8 million, for fees and expenses incurred through Final Approval of the Settlement Agreement, including approval of all Implementation Plans. Defendants agree not to object to plaintiffs' petition for fees and expenses up that amount.  The parties acknowledge that Court approval of the fees and expenses is required.

63.    Fees and expenses after Final Approval of Settlement Agreement: Plaintiffs may petition the Court for an award of no more than $250,000 per year in fees and expenses arising from monitoring work, inspections, negotiations, meet and confer processes, mediation, review of documents, and correspondence with class members, until termination of Court enforcement.  The parties contemplate that Plaintiffs will use the

services of the Public Defender as part of this post-settlement monitoring and enforcement. In any petition to the Court for fees and expenses, the Court should consider the efficiency of the services rendered, including how Plaintiffs' counsel allocated services among the different private counsel and the Public Defender.  The $250,000 annual cap does not apply to (1) Plaintiffs' motions to enforce the Settlement Agreement and Implementation Plans; and (2) Plaintiffs' opposition to any motions filed by defendant(s) arising out of the Settlement Agreement and Implementation Plans.  The standard for Plaintiffs' eligibility for fees and expenses arising from Plaintiffs' motions to the Court shall be that no fees and expenses shall be awarded unless the Court finds (1) that the motion or opposition was necessary to enforce substantial rights of the class under the Eighth Amendment and Fourteenth Amendments to the United States Constitution, Article I,  Sections 7 and 17 of California Constitution, the Americans with Disabilities Act, Rehabilitation Act, or California Government Code § 11135; and, (2) that Plaintiffs attempted to resolve the matter and/or narrow the issues as much as possible by meeting and conferring with Defendants, taking full opportunity of recourse to the mediator before presenting the issues to the Court.  Defendants shall be eligible for an award of fees and costs from plaintiffs' private counsel, and Plaintiffs shall receive none, in the event that the Court finds that Plaintiffs' motion was frivolous, unreasonable or groundless, or that Plaintiffs continued to litigate it after it clearly became so.  Furthermore, Plaintiffs agree that they may not seek more than $150,000 each year in fees and expenses on motions to enforce the Settlement Agreement.

64.     If the Court determines that any enforcement motion is filed or opposed in bad faith, it may award sanctions in the form of attorneys' fees and expenses, among other remedies. The caps in Paragraph 63 do not apply to enforcement motions opposed in bad faith by Defendants.

65.     The parties commit to work together in good faith to resolve any future disputes over fees and expenses.  They agree to confer, and mediate, before presenting a fee dispute motion to the Court.

1

2 **XI.    MISCELLANEOUS PROVISIONS**

3        66.    Plaintiffs agree that if the Court does not grant Final Approval of this

4 Settlement Agreement, then Defendants reserve their right to appeal the preliminary

5 injunction entered in this case.

6        67.    The parties agree to issue a joint press release announcing the settlement.

7        68.    This Agreement constitutes the entire agreement among the parties as to all

8 claims raised by Plaintiffs in this action, and supersedes all prior agreements,

9 representations, statements, promises, and understandings, whether oral or written, express

10 or implied, with respect to this Agreement. Each Party represents, warranties and

11 covenants that it has the full legal authority necessary to enter into this Agreement and to

12 perform the duties and obligations arising under this Agreement.  The County Defendant

13 shall be the last signatory to this agreement.  This agreement may be signed in counterparts

14 and a copy shall be as good as an original and may be introduced as evidence.

15        69.    This is an integrated agreement and may not be altered or modified, except

16 by a writing signed by all representatives of all parties at the time of modification.

17        70.    This Agreement shall be binding on all successors, assignees, employees,

18 agents, and all others working for or on behalf of Defendants and Plaintiffs.

19

20 DATED:                              ROSEN BIEN GALVAN & GRUNFELD LLP

21                                    By: _____

22                                        Michael W. Bien

23

24 DATED:                              OFFICE OF THE PUBLIC DEFENDER
                                       COUNTY OF MONTEREY
25

26                                    By: _____

27                                        James Egar, Public Defender
                                          Donald Landis, Assistant Public Defender
28

1   DATED:                          AMERICAN CIVIL LIBERTIES UNION
2                                   FOUNDATION OF NORTHERN CALIFORNIA

3                                   By: _____
                                        Alan Schlosser
4

5   DATED:                          ACLU NATIONAL PRISON PROJECT

6                                   By: _____
                                        Eric Balaban
7
                                    Attorneys for Plaintiffs
8

9   DATED:                          COUNTY OF MONTEREY

10  5/7/15
                                    By: _____
11                                      Simon Salinas

12                                  Chair of the Board of Supervisors

13  DATED:                          CALIFORNIA FORENSIC MEDICAL GROUP

14                                  By: _____
15

16

17  Approved as to Form:

18
    DATED: 5/7/15
19                                  OFFICE OF THE COUNTY COUNSEL
                                    COUNTY OF MONTEREY
20
                                    By: _____
21                                      Charles J. McKee
                                        County Counsel
22
                                    Attorneys for Defendants
23                                  COUNTY OF MONTEREY and MONTEREY
                                    COUNTY SHERIFF'S OFFICE
24

25

26

27

28

1    DATED:                          BERTLING & CLAUSEN, L.L.P.

2                                    By: _____

3                                         Peter G. Bertling

4                                    Attorneys for Defendant
                                     CALIFORNIA FORENSIC MEDICAL GROUP,
5                                    INCORPORATED

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## XI.   MISCELLANEOUS PROVISIONS

66.    Plaintiffs agree that if the Court does not grant Final Approval of this Settlement Agreement, then Defendants reserve their right to appeal the preliminary injunction entered in this case.

67.    The parties agree to issue a joint press release announcing the settlement.

68.    This Agreement constitutes the entire agreement among the parties as to all claims raised by Plaintiffs in this action, and supersedes all prior agreements, representations, statements, promises, and understandings, whether oral or written, express or implied, with respect to this Agreement. Each Party represents, warranties and covenants that it has the full legal authority necessary to enter into this Agreement and to perform the duties and obligations arising under this Agreement.  The County Defendant shall be the last signatory to this agreement. This agreement may be signed in counterparts and a copy shall be as good as an original and may be introduced as evidence.

69.    This is an integrated agreement and may not be altered or modified, except by a writing signed by all representatives of all parties at the time of modification.

70.    This Agreement shall be binding on all successors, assignees, employees, agents, and all others working for or on behalf of Defendants and Plaintiffs.

DATED:
May 7 2015

ROSEN BIEN GALVAN & GRUNFELD, LLP

By: _____
Michael W. Bien

DATED:

OFFICE OF THE PUBLIC DEFENDER
COUNTY OF MONTEREY

By: _____
James Egar, Public Defender
Donald Landis, Assistant Public Defender

1

2  **XI.    MISCELLANEOUS PROVISIONS**

3          66.     Plaintiffs agree that if the Court does not grant Final Approval of this

4  Settlement Agreement, then Defendants reserve their right to appeal the preliminary

5  injunction entered in this case.

6          67.     The parties agree to issue a joint press release announcing the settlement.

7          68.     This Agreement constitutes the entire agreement among the parties as to all

8  claims raised by Plaintiffs in this action, and supersedes all prior agreements,

9  representations, statements, promises, and understandings, whether oral or written, express

10 or implied, with respect to this Agreement. Each Party represents, warranties and

11 covenants that it has the full legal authority necessary to enter into this Agreement and to

12 perform the duties and obligations arising under this Agreement.  The County Defendant

13 shall be the last signatory to this agreement.  This agreement may be signed in counterparts

14 and a copy shall be as good as an original and may be introduced as evidence.

15         69.     This is an integrated agreement and may not be altered or modified, except

16 by a writing signed by all representatives of all parties at the time of modification.

17         70.     This Agreement shall be binding on all successors, assignees, employees,

18 agents, and all others working for or on behalf of Defendants and Plaintiffs.

19

20 DATED:                                ROSEN BIEN GALVAN & GRUNFELD LLP

21                                       By: _____

22                                            Michael W. Bien

23

24 DATED: 5/7/15                         OFFICE OF THE PUBLIC DEFENDER
                                         COUNTY OF MONTEREY
25

26                                       By: _____

27                                            James Egar, Public Defender
                                             Donald Landis, Assistant Public Defender
28

1  DATED:                          AMERICAN CIVIL LIBERTIES UNION
                                   FOUNDATION OF NORTHERN CALIFORNIA
2  5/7/15
                                   By: _____
3                                       Alan Schlosser

4

5  DATED:                          ACLU NATIONAL PRISON PROJECT

6                                   By: _____
                                        Eric Balaban
7
                                   Attorneys for Plaintiffs
8

9  DATED:                          COUNTY OF MONTEREY

10                                  By: _____
                                        Simon Salinas
11
                                   Chair of the Board of Supervisors
12

13 DATED:                          CALIFORNIA FORENSIC MEDICAL GROUP

14                                  By: _____

15

16

17 Approved as to Form:

18 DATED:                          OFFICE OF THE COUNTY COUNSEL
                                   COUNTY OF MONTEREY
19
                                   By: _____
20                                      Susan K. Blitch
21                                      Senior Deputy County Counsel
22
                                   Attorneys for Defendants
23                                 COUNTY OF MONTEREY and MONTEREY
                                   COUNTY SHERIFF'S OFFICE
24

25

26

27

28

1   DATED:                          AMERICAN CIVIL LIBERTIES UNION
2                                   FOUNDATION OF NORTHERN CALIFORNIA

3                                   By: _____
4                                        Alan Schlosser

5   DATED: May 7, 2015              ACLU NATIONAL PRISON PROJECT

6                                   By: _____
7                                        Eric Balaban

8                                   Attorneys for Plaintiffs

9   DATED:                          COUNTY OF MONTEREY

10                                  By: _____
11                                       Simon Salinas

12                                  Chair of the Board of Supervisors

13  DATED:                          CALIFORNIA FORENSIC MEDICAL GROUP

14                                  By: _____
15

16

17  Approved as to Form:

18  DATED:                          OFFICE OF THE COUNTY COUNSEL
19                                  COUNTY OF MONTEREY

20                                  By: _____
21                                       Susan K. Blitch
                                         Senior Deputy County Counsel
22
                                    Attorneys for Defendants
23                                  COUNTY OF MONTEREY and MONTEREY
                                    COUNTY SHERIFF'S OFFICE
24

25

26

27

28

[2695914-1]
                                        23                         13-2354 PSG

1 DATED: AMERICAN CIVIL LIBERTIES UNION
2 FOUNDATION OF NORTHERN CALIFORNIA
3 By: _____
4     Alan Schlosser
5 DATED: ACLU NATIONAL PRISON PROJECT
6 By: _____
7     Eric Balaban
8 Attorneys for Plaintiffs
9 DATED: COUNTY OF MONTEREY
10 By: _____
11     Simon Salinas
12 Chair of the Board of Supervisors
13 DATED: CALIFORNIA FORENSIC MEDICAL GROUP
14 By: _____
15     Raymond Herr, M.D.
16
17 Approved as to Form:
18 DATED: OFFICE OF THE COUNTY COUNSEL
19        COUNTY OF MONTEREY
20 By: _____
21     Charles J. McKee
       County Counsel
22 Attorneys for Defendants
23 COUNTY OF MONTEREY and MONTEREY
   COUNTY SHERIFF'S OFFICE
24
25
26
27
28

1  DATED: 5·11·2015                    BERTLING & CLAUSEN, L.L.P.

2                                      By: _Peter G. Bertling_____

3                                           Peter G. Bertling

4                                      Attorneys for Defendant
                                       CALIFORNIA FORENSIC MEDICAL GROUP,
5                                      INCORPORATED

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28