# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| JESSE HERNANDEZ, et al.,<br>　　Plaintiffs,<br>　v.<br>COUNTY OF MONTEREY, et al.,<br>　　Defendants. | Case No. 13-cv-02354-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>[ECF 599] |

In this class action brought on behalf of inmates at the Monterey County Jail ("Jail"), the parties entered into a Settlement Agreement requiring changes in Jail policies and practices. Plaintiffs move to enforce that Settlement Agreement against Defendant County of Monterey ("County") and Defendant California Forensic Medical Group ("CFMG"), the private company hired by the County to provide medical and mental health services to Jail inmates.

Having considered the briefing of the parties and the extensive oral argument of counsel, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion to enforce the Settlement Agreement.

## I. BACKGROUND

Plaintiffs are a class of all inmates held at the Jail and a subclass of inmates with disabilities. Plaintiffs brought this suit in May 2013 to challenge the medical care, mental health care, safety, and disability access at the Jail. Compl., ECF 1. After substantial discovery, motion practice, and issuance of a preliminary injunction, the parties entered into a Settlement Agreement. On August 18, 2015, Magistrate Judge Paul S. Grewal, to whom the case then was assigned, granted final approval of the Settlement Agreement. Final Approval Order, ECF 494.

Among other things, the Settlement Agreement requires the parties to develop implementation plans in specific subject areas "for improvement of care, services, programs, and

activities at the Jail." Settlement Agreement ¶ 31, Exh. A to Final Approval Order, ECF 494. CFMG and the County submitted proposed implementation plans and on May 27, 2016, Judge Grewal approved those plans in part. Order Granting-In-Part Defendants' Motions for Approval of Implementation Plans, ECF 549.

CFMG's proposed implementation plan included a staffing plan requiring, among other things, employment of a psychiatrist on-site at the Jail forty hours per week and employment of an on-call psychiatrist twenty-four hours a day, seven days a week. CFMG Implementation Plan, Exh. A to CFMG's Motion for Approval, ECF 532. Both CFMG's proposed plan and the County's proposed plan included provisions relating to care of Jail inmates at Natividad Medical Center ("Natividad"). *Id.*; County Implementation Plan, Exh. A to County's Motion for Approval, ECF 514. While Judge Grewal approved the implementation plans in part, he found a number of shortcomings in the plans. Order Granting-In-Part Defendants' Motions for Approval of Implementation Plans at 3, ECF 549. Importantly for purposes of the present motion, he found that the plans did not adequately address telepsychiatry, and he ordered as follows:

"**Telepsychiatry**: Defendants' implementation plans must have standards for when they can deviate from a typical in-person encounter and use telemedicine or telepsychiatry." *Id.* at 3. CFMG provided Class Counsel with a proposed Telepsychiatry Policy in June 2017. CFMG Telepsychiatry Policy, Exh. 11 to Swearingen Decl., ECF 599-2.

Plaintiffs assert that CFMG has not complied with its staffing obligations and that its proposed Telepsychiatry Policy does not contain the standards required by Judge Grewal's order. Plaintiffs also assert that the County has denied Class Counsel and court-appointed monitors access to Natividad records which are necessary to confirm Defendants' compliance with the Settlement Agreement and related court orders.

**II.  CFMG**

    **A.  Staffing Obligations**

The Court finds that as of the filing of Plaintiffs' motion to enforce, CFMG was not in compliance with its obligation to employ a psychiatrist on-site at the Jail for forty hours per week. CFMG does not dispute this fact, but it claims that despite good-faith efforts it had difficulty

recruiting a psychiatrist to fill a full-time position at the Jail. However, CFMG recently hired Dr. Paul Francisco to work as a full-time on-site psychiatrist at the Jail, effective September 6, 2017. Fithian Decl. ¶ 4, ECF 606-1.

Plaintiffs have expressed concern that CFMG may not have a substitute psychiatrist available to fill in at the Jail in the event of Dr. Francisco's absence due to illness or vacation. CFMG's counsel represented at the hearing that CFMG does have substitute psychiatrists in place who can cover any absences by Dr. Francisco. Given the recent hiring of Dr. Francisco and the representation by CFMG's counsel on the record, the Court is satisfied that CFMG now is in compliance with its obligation to provide an on-site psychiatrist for forty hours per week. At the hearing, Class Counsel requested a copy of CFMG's contract with Dr. Francisco as well as records of hours actually worked by Dr. Francisco on an ongoing monthly basis. CFMG agreed to provide the contract with the salary redacted and the monthly record of work hours.

Accordingly, while the Court reiterates that CFMG must provide an on-site psychiatrist for forty hours per week, each and every week, the portion of Plaintiffs' motion seeking to enforce CFMG's staffing obligations is DENIED AS MOOT.

### B.  Telepsychiatry Policy

Plaintiffs contend that CFMG's proposed Telepsychiatry Policy ignores Judge Grewal's direction to provide standards clarifying when CFMG may "*deviate from a typical in-person encounter* and use telemedicine or telepsychiatry." Order Granting-In-Part Defendants' Motions for Approval of Implementation Plans at 3, ECF 549 (emphasis added). CFMG's proposed policy contemplates using telepsychiatry in a wide variety of circumstances, including initial consultations, and it appears to presume that telepsychiatry is equally effective as, and equivalent to, treatment by an on-site psychiatrist. CFMG Telepsychiatry Policy, Exh. 11 to Swearingen Decl., ECF 599-2. Plaintiffs ask the Court to require CFMG to revise its proposed policy in a manner which meets the following twelve standards, which are taken verbatim from Plaintiffs' proposed order:

> 1. Defendants' use of telepsychiatry is limited to non-initiating, routine, low-risk appointments – such as medication renewals for stable patients.

2. All patients requiring psychiatric services who initiate mental health treatment following booking shall receive an on-site evaluation by a psychiatrist. The on-site evaluation may include an assessment to determine whether the patient's condition and communication needs are appropriate for further treatment using telepsychiatry before the patient is treated or evaluated using telepsychiatry. Patients may not be seen by a telepsychiatrist prior to such an assessment.

3. Telepsychiatry shall not be used with patients who are in crisis (including those who are suicidal, homicidal, and/or gravely disabled). Patients experiencing a mental health crisis should be seen as soon as possible by the on-site psychiatrist or the on-call psychiatrist. In the event that the on-site psychiatrist or the on-call psychiatrist cannot see the patient in crisis within a reasonably short time frame, the patient should be transferred to Natividad Medical Center for evaluation and treatment.

4. Telepsychiatry shall not be used with patients have a cognitive, speech, vision, or hearing disability, or who require a language interpreter.

5. Telepsychiatry shall not be used without the patient's informed consent, documented in writing in the patient's medical record. Informed consent for use of telepsychiatry with a patient should include, at minimum: discussion of the structure and timing of services; procedures for coordination of care with other professionals; scheduling, including a protocol for contact between sessions; record keeping, including the process by which patient information will be documented and stored; privacy and confidentiality; potential risks; an agreed upon emergency plan; and information specific to the nature of videoconferencing, inducing the potential for technical failure.

6. Telepsychiatry providers shall have adequate access to the patient's medical record during telepsychiatry sessions, including complete documentation of recent psychiatric diagnoses, lab results, progress notes, prescriptions, medical administration records, and other relevant history.

7. Telepsychiatrists must adequately document each patient session. Such documentation should include the date and duration of the encounter, the psychiatrist's assessment, patient history, treatment plan, and informed consent.

8. Telepsychiatrists must maintain regular and appropriate communication and collaboration with the patient's on-site treatment team.

9. Defendants' Telepsychiatry facilities and technological capabilities must be regularly vetted to ensure: the normal operation of the devices do not have technological difficulties; up-to-date antivirus software and a firewall is installed; reliable management software is used to provide consistent oversight of applications; adequate security by using point-to-point encryption; and the maintenance of the most reliable connection method to access the Internet. Technical problems that interrupt or prevent adequate patient assessment should be documented in a log as well as the patient record.

10. Patients being evaluated for involuntary medication shall see an on-site psychiatrist.

11. Defendants' Telepsychiatry Policy should ensure that telepsychiatric care is subject to Quality Assurance monitoring that addressed the particular requirements for telemedicine, including but not limited to whether records are being reviewed as appropriate, whether the technology is working, and whether

patients are consenting to telemedicine sessions, and getting timely access to on-site care when they do not consent.

12. Telepsychiatry sessions shall be conducted with adequate privacy so that clinical discussion cannot be overheard by other patients and/or correctional officers.

Plaintiffs' Proposed Order, ECF 599-1.

With respect to items 1, 2, and 3, the Court concludes that further proceedings are necessary in order to develop the record as to the efficacy of telepsychiatry. With the parties' consent, the Court has referred to Magistrate Judge Cousins "all issues regarding use of telepsychiatry implicated by items 1, 2, and 3 on page 10 of Plaintiffs' Proposed Order Granting Plaintiffs' Motion to Enforce Settlement Agreement (ECF 599-4)." Order Referring Specified Issues, ECF 617.

With respect to item 4, it is the Court's determination that the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., requires that reasonable accommodation be provided to inmates requiring medical or mental health services, and that there is no need for additional direction from the Court on that point.

With respect to item 5, the parties have agreed to work together to develop a written informed consent form to address Plaintiffs' concerns.

With respect to items 6, 7, 9, 10, 11, and 12, the parties have reached tentative agreement. It is the Court's determination that item 8 is subsumed into items 6 and 7. Should the parties be unable to finalize their tentative agreement as to one or more of the items, the Court would entertain a renewed motion.

Accordingly, the portion of Plaintiffs' motion seeking to enforce CFMG's obligation to develop an appropriate telepsychiatry policy is REFERRED to Judge Cousins with respect to items 1, 2, and 3; DENIED as to item 4; and DENIED AS MOOT with respect to items 6, 7, 8, 9, 10, 11, and 12.

### III. COUNTY

Plaintiffs assert that the County unreasonably has denied Class Counsel and court-appointed monitors access to the records of Jail inmates treated at Natividad. In response, the County states that it does not object to the production of those records, but that any such

production must comply with federal and state law. In particular, the County raises concerns regarding compliance with California's Lanterman-Petris-Short Act ("LPS"), governing evaluation and treatment of individuals for mental health issues. The relevant provision of LPS, Welfare & Institutions Code § 5328, provides that all information and records obtained in the course of providing services under LPS are confidential and may not be disclosed except in certain enumerated circumstances. The only enumerated circumstance which applies here is set forth in § 5328(f), which permits disclosure "[t]o the courts, as necessary to the administration of justice." Cal. Welfare & Instit. Code § 5328(f). Based on this language, the County asserts that it may produce mental health records from Natividad only in compliance with a specific Court order and only to the Court itself, not to Class Counsel or monitors.

The Court appreciates the County's commitment to protecting the privacy interests of an extremely vulnerable population. However, "in a civil rights action brought pursuant to a federal claim, state statutory privileges are not binding." *Doe v. Meachum*, 126 F.R.D. 444, 449 (D. Conn. 1989); *see also I.R. v. City of Fresno*, No. 1:12-CV-00558-AWI, 2014 WL 1419305, at *4 (E.D. Cal. Apr. 11, 2014) (holding that federal common law rather than state law privilege under Welfare & Institutions Code § 5328 governed request for documents in case involving both federal and state law claims). Moreover, "[c]ourts are virtually unanimous in holding that class counsel in institutional litigation of this nature has a right to examine client medical records to determine whether a systemic failure exists in the institution's health care system." *Ginest v. Bd. of Cty. Comm'rs of Carbon Cty.*, 306 F. Supp. 2d 1158, 1159 (D. Wyo. 2004). "Individual and state privacy interests must yield to the federal interest in discovering whether public officials and public institutions are violating federal civil rights." *Id.* at 1159-60. The Court therefore concludes that the LPS provision requiring production only to the Court is not binding here and that the Court has authority to order production of the records in question to Class Counsel and court-appointed monitors.

Having concluded that it has authority to order the production requested by Plaintiffs, the Court next must determine whether and how it should exercise that authority. While there are few cases on point, the Court finds guidance in *Meachum*, which involved challenges to the policies of

1  the Connecticut Department of Corrections regarding inmates who were infected by Acquired
2  Immune Deficiency Syndrome ("AIDS") or related disorders. *Meachum*, 126 F.R.D. 444. The
3  defendants argued that under state law they could not produce inmates' medical and mental health
4  records to the plaintiffs absent written consent by each class member. *Id.* at 448. Recognizing
5  that the state statute was not binding in a federal civil rights action, the district court nonetheless
6  carefully considered the propriety of ordering production of sensitive records which were
7  protected by a state privilege. *Id.* at 449. The district court applied a four-part test in deciding
8  whether to order production: "First, is the identification of the individuals required for effective
9  use of the data? Second, is the invasion of privacy and risk of psychological harm being limited to
10  the narrowest possible extent? Third, will the data be supplied only to qualified personnel under
11  strict controls over confidentiality? Fourth, is the data necessary or simply desirable?" *Id.*
12  (citation omitted). The *Meachum* court concluded that the factors favored disclosure, as the
13  inmates' identities were necessary to evaluation of issues in the case, protective orders had been
14  entered, and the records were critical to the plaintiffs' experts. *Id.*

While *Meachum* is not binding here, the Court finds the four-factor test to be a sensible approach to balancing the privacy interests of individual inmates against Plaintiffs' interest in ensuring Defendants' compliance with the Settlement Agreement and court orders. Class Counsel indicated at the hearing that Plaintiffs seek records for targeted individuals and defined groups of individuals for the purpose of determining whether Defendants are complying with their obligations. The inmates' identities and the records of their treatment at Natividad are necessary to effectuate this purpose. Protective orders have been entered in this case and the records in question would be produced only to Class Counsel and the neutral monitors. Under these circumstances, the Court concludes that a balancing of the interests at stake favor production.

However, the Court is not willing to issue a blanket order directing Natividad to produce any and all records requested by Class Counsel or the monitors. Such an order would deprive the County of the opportunity to raise objections to production of particular records once those records have been identified. Accordingly, the Court directs Plaintiffs to meet and confer with the County whenever Plaintiff wishes to request production of particular records from Natividad. The

Court expects that in light of the present ruling the County will stipulate to most requests and that those requests may be presented to the Court by means of a stipulation and proposed order. In the event the parties cannot reach a stipulation with respect to a particular request, that dispute may be presented to the Court in the form of an administrative motion under Civil Local Rule 7-11 and the Court will either rule on the papers or hold a telephonic hearing as soon as is practicable.

In light of the foregoing discussion, the Court finds that the *in camera* review requested by the County is unnecessary. A district court may use *in camera* review as a tool to determine the merits of a claim of privilege. *See United States v. Zolin*, 491 U.S. 554, 568-69 (1989). However, *in camera* review places a significant burden on district courts, "which may well be required to evaluate large evidentiary records without open adversarial guidance by the parties." *Id.* at 569. "[T]he decision whether to engage in *in camera* review rests in the sound discretion of the district court," and "[t]he court should make that decision in light of the facts and circumstances of the particular case." *Id.* at 572. Because the state law privilege created by LPS is not binding, and the burden to the Court in conducting serial review of records would be significant, the Court sees no benefit to use of *in camera* review in this case. This is particularly true given the Court's expectation that the parties will be able to reach agreement on the majority of record requests.

Accordingly, the portion of Plaintiffs' motion seeking access to Natividad records is GRANTED, subject to Plaintiffs' submission of particularized requests to the Court by means of stipulation and proposed order or administrative motion.

At the hearing, Class Counsel raised the possibility of recovering attorneys' fees incurred in bringing future administrative motions for records under a provision of the Settlement Agreement authorizing the Court to award attorneys' fees in connection with a motion to enforce the Settlement Agreement. *See* Settlement Agreement ¶ 63, Exh. A to Final Approval Order, ECF 494. That provision states in relevant part as follows:

> The standard for Plaintiffs' eligibility for fees and expense arising from Plaintiffs' motions to the Court shall be that no fees and expenses shall be awarded unless the Court finds (1) that the motion or opposition was necessary to enforce substantial rights of the class under the Eighth Amendment and Fourteenth Amendments to the United States Constitution, Article I, Sections 7 and 17 of [the] California Constitution, the Americans with Disabilities Act, Rehabilitation Act, or California Government Code § 11135; and, (2) that Plaintiffs attempted to resolve the matter

and/or narrow the issues as much as possible by meeting and conferring with Defendants, taking full opportunity of recourse to the mediator before presenting the issues to the Court.

*Id.* The Court indicated that in the event Plaintiffs believe that they are entitled to attorneys' fees with respect to any future administrative motion, Plaintiffs may file a motion for such fees. The Court will consider any such fee motions on a case-by-case basis.

**IV. ORDER**

For the reasons discussed above, Plaintiffs' motion to enforce the Settlement Agreement is GRANTED IN PART AND DENIED IN PART as follows:

(1) The portion of Plaintiffs' motion seeking to enforce CFMG's staffing obligations is DENIED AS MOOT;

(2) The portion of Plaintiffs' motion seeking to enforce CFMG's obligation to develop an appropriate telepsychiatry policy is REFERRED to Judge Cousins with respect to items 1, 2, and 3 of Plaintiffs' proposed order; DENIED as to item 4; and DENIED AS MOOT with respect to items 6, 7, 8, 9, 10, 11, and 12;

(3) The portion of Plaintiffs' motion seeking access to Natividad records is GRANTED, subject to Plaintiffs' submission of particularized requests to the Court by means of stipulation and proposed order or administrative motion; and

(4) If Plaintiffs believe that they are entitled to attorneys' fees in connection with any future administrative motion for Natividad records, Plaintiffs MAY file a motion for attorneys' fees under paragraph 63 of the Settlement Agreement. The Court will consider any such fee motions on a case-by-case basis.

Dated: November 1, 2017

_____
BETH LABSON FREEMAN
United States District Judge