MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
VAN SWEARINGEN – 259809
ANDREW G. SPORE – 308756
ROSEN BIEN
GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California  94105-2235
Telephone:     (415) 433-6830
Facsimile:      (415) 433-7104
Email:     mbien@rbgg.com
               egalvan@rbgg.com
               vswearingen@rbgg.com
               aspore@rbgg.com

ERIC BALABAN (*admitted pro hac vice*)
NATIONAL PRISON PROJECT of the
AMERICAN CIVIL LIBERTIES UNION
915 15th Street N.W., 7th Floor
Washington, D.C.  20005-2302
Telephone:     (202) 393-4930
Facsimile:      (202) 393-4931
Email:     ebalaban@aclu.org
               ctakei@aclu.org

Attorneys for Plaintiffs

ALAN SCHLOSSER – 049957
MICAELA DAVIS – 282195
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:     (415) 621-2493
Facsimile:      (415) 255-8437
Email:     aschlosser@aclunc.org
               mdavis@aclunc.org

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. CV 13 2354 BLF (NC)<br><br>**SECOND STIPULATION AND [PROPOSED] ORDER REGARDING TELEPSYCHIATRY ISSUES**<br><br>Judge:  Hon. Nathanael Cousins |

THE PARTIES THROUGH THEIR COUNSEL HEREBY STIPULATE AS FOLLOWS:

WHEREAS, on May 27, 2016, the Court entered an Order Granting-In-Part Defendants' Motions for Approval of Implementation Plans and Denying as Moot CFMG's First Motion for Approval of Implementation Plan, Docket No. 549, ruling under the heading "Telepsychiatry" that "Defendants' implementation plans must have standards for when they can deviate from a typical in-person encounter and use telemedicine or telepsychiatry." Dkt. 549 at 3.

WHEREAS, on June 17, 2017, the Plaintiffs filed a Motion to Enforce Settlement Agreement Regarding Psychiatric Staffing and Telepsychiatry. Dkt. 599.

WHEREAS, on November 1, 2017 after full briefing and a hearing, the Court entered an Order Granting in Part and Denying in Part Plaintiffs' Motion to Enforce Settlement Agreement, finding that CFMG had come into compliance with the staffing requirement after Plaintiffs' filed their motion by hiring a full-time on-site psychiatrist, and directing the parties to finalize their tentative agreement as to certain issues regarding the use of telepsychiatry, and referred the remaining issues to Magistrate Judge Cousins for disposition. Dkt. 619.

WHEREAS, on December 8, 2017, the Court approved a Stipulation and Order Regarding Telepsychiatry, setting forth specific requirements regarding patient informed consent, access to medical and mental health records, documentation of patient sessions, technological standards, quality assurance monitoring, and confidentiality of telepsychiatry sessions. Dkt. 622.

WHEREAS, while preparing for the evidentiary hearing on the remaining issues, the parties continued meeting and conferring over additional standards and policies for the use of telepsychiatry at the Monterey County Jail that could resolve the remaining issues.

WHEREAS, on March 21, 2018, counsel reached agreement on a single policy document to incorporate the December 8, 2017 Stipulation and Order Regarding Telepsychiatry, as well as additional requirements to resolve the remaining issues.

1      THEREFORE, THE PARTIES HEREBY JOINTLY REQUEST THAT THE

2  COURT:

3      (1) Vacate the Evidentiary Hearing now set for May 1, 2018, and associated dates;

4      (2) Approve the attached Telepsychiatry Policy as an amendment to the

5  Implementation Plans approved by the Court on May 27, 2016.

6

7

8  DATED:  March 21, 2018          Respectfully submitted,

9                                  ROSEN BIEN GALVAN & GRUNFELD LLP

10                                 By:    /s/ Van Swearingen
                                         _____
11                                        Van Swearingen

12                                 Attorneys for Plaintiffs

13

14

15  DATED:  March 21, 2018         OFFICE OF THE COUNTY COUNSEL
                                   COUNTY OF MONTEREY
16

17                                 By:    /s/ Susan K. Blitch
                                         _____
                                          Susan K. Blitch
18                                        Senior Deputy County Counsel

19                                 Attorneys for Defendants
                                   COUNTY OF MONTEREY and
20                                 MONTEREY COUNTY SHERIFF'S OFFICE

21

22  DATED: March 21, 2018          BERTLING LAW GROUP

23                                 By:    /s/ Peter G. Bertling
                                         _____
24                                        Peter G. Bertling

25                                 Attorneys for Defendant
                                   CALIFORNIA FORENSIC MEDICAL GROUP,
26                                 INC.

27

28

1

## [PROPOSED] ORDER

2          Pursuant to the parties' stipulation, Defendants' use of telepsychiatry services with

3    patients at the Monterey County Jail must comply with the attached requirements.  These

4    requirements are amendments to the Implementation Plans approved by the Court on May

5    27, 2016.  The Evidentiary Hearing now set for May 1, 2018 as well as the associated dates

6    set forth in ECF 629 are vacated.

7          **IT IS SO ORDERED**.

8    DATED:  March ___, 2018

9                                                        Nathanael M. Cousins
                                                         United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CV 13 2354 BLF (NC)

[3236003.1]

**SECOND STIPULATION AND [PROPOSED] ORDER REGARDING TELEPSYCHIATRY ISSUES**

# ATTACHMENT

**Tele-Psychiatry Program**

**I.      Standards for Use of Tele-Psychiatry**

CFMG provides 40 hours of on-site psychiatric services at the Monterey County Jail.  However, there are circumstances when a psychiatrist is unavailable to provide on-site services and inmates will then have access to a tele-psychiatrist. The circumstances when a psychiatrist is unavailable to provide services include, but are not limited to:

> (1)     Weekend, holidays or any other time a psychiatrist in not on-site;

> (2)     Gaps in on-site staffing which may be due to recruitment delays, vacations, illnesses or emergencies.  Such circumstances are addressed by the attached CFMG policy on gaps in psychiatric staffing, which describes a variety of measures that CFMG employs to ensure coverage, including temporary staffing as well as telepsychiatry.  **See Exhibit A**.

According to the American Telemedicine Practice Guidelines for Video-Based Online Mental Health Services "no studies have identified any patient subgroup that does not benefit, or is harmed by, mental health care provided through remote videoconferencing," including patients with psychosis and phobic disorders.[1]  Tele-psychiatry, however, is not well-studied in jails and prisons. Nearly all of the research has been in community settings.

Tele-psychiatry, when employed as part of an overall system of medical and mental health care, is an acceptable supplement and sometimes alternative to in-person on-site encounters with a psychiatrist.  The decision regarding whether an inmate is an appropriate candidate for tele-psychiatry will be determined by the tele-psychiatrist following evaluation and referral by on-site medical and mental health staff or on-site psychiatrist who is scheduled to see the inmate.

Tele-psychiatry may be used to provide psychiatric services which include, but are not limited to: initial psychiatric consultations; diagnostic and treatment evaluations; formulation of individual treatment plans; medication management; emergency psychiatric assessments including patients who are suicidal or at risk

---

[1] American Telemedicine Association, Practice Guidelines for Video-Based Online Mental Health Services (May 2013) at 3.

for suicide; patients who are a danger to themselves or others; patients who may require the administration of involuntary medications; other crisis interventions and patient education.  Special caution, however, is necessary for patients who are actively engaging in self-harm or towards others.

Consistent with national standards and guidelines for telemedicine, the telepsychiatrist shall be considered an active part of the patient's treatment team and shall be available for discussion of the case with local clinicians at the Monterey County Jail.[2]  Telepsychiatrists shall prepare appropriate progress notes and ensure that they are included in the patient's Monterey County Jail medical record.

Any telepsychiatrist who treats patients at the Monterey County Jail shall become familiar with the general living conditions of the patients, so that the provider can understand the context in which the patients' conditions arise, and in which treatment must take place.

Any telepsychiatrist who regularly treats patients at Monterey County Jail shall participate in an in-person tour of the jail once in the first year of their employment, and once within six months of substantial architectural changes, such as the opening of the new Jail facilities.  Telepsychiatrists shall have the ability to request photos and/or video of physical spaces within the Jail to better understand the layout and other physical attributes of the housing units and medical treatment areas.  Absent a compelling reason for non-attendance, telepsychiatrists shall participate in quarterly Quality Assurance meetings.

CFMG shall provide all telepsychiatrists with:

(1)     a written description of the jail's housing assignments and programs, so that providers will understand patient references to their living conditions;

(2)     a list of all clinical staff at the Monterey County Jail, with phone numbers, which shall be kept updated to reflect staff change and vacancies;

---

[2] American Telemedicine Association, Practice Guidelines for Video-Based Online Mental Health Services, August 2009, Guideline (e) "Communication and Collaboration with the Patient's Treatment Team."

(3)     the formulary, procedures for ordering non-formulary medications, and the medication pass procedures, including information on the availability of direct observation treatment (DOT);

(4)     an emergency management protocol, which is described in more detail below.

CFMG and its telepsychiatrists shall develop an emergency management protocol to ensure that the telepsychiatrist is familiar with the emergency resources and response times available should the need for emergency services arise during a telepsychiatry session.[3]

The emergency management protocol shall inform telepsychiatrists that Monterey County Jail patients can be treated at Natividad Medical Center, located in the same county complex as the jail.   The emergency management protocol shall also inform telepsychiatrists that they are able to order the patient transferred to Natividad Medical Center, including the Mental Health Unit therein, when the patient requires acute mental health services that are beyond those available on site.

In order to ensure effective differential diagnosis, management of medication side effects, management of elevation in symptoms, and/or issues related to medication non-compliance, the telepsychiatrist shall be familiar with the patients' prescribed medications, the availability of specific medications at the Monterey County Jail, and the extent to which the patient already has an active relationship with a prescribing professional at the Monterey County Jail.  The telepsychiatrist shall coordinate with the prescribing professionals at the jail, to ensure that the inmate's medical and psychiatric treatment is well-coordinated, and to ensure that possible organic causes for psychiatric symptoms are detected and addressed, or ruled out.

Telepsychiatry practice at the Monterey County Jail shall be structured so as to ensure that the telepsychiatrist has access to the medical information necessary to make a complete evaluation and diagnosis, recognizing the importance of the

---

[3] American Telemedicine Association, Practice Guidelines for Video-Based Online Mental Health Services, August 2009, Guidelines (a)(A)(2)(b); (f).

medical component of a psychiatric examination.[4]  The telepsychiatrist, being remote, cannot perform a physical examination him or herself, and thus must rely on information obtained by an on-site physician or mid-level provider[5] and their independent observations during the telepsychiatry session.

Telepsychiatry practice at the Monterey County Jail shall be structured so as to ensure that the telepsychiatrist is able to make effective referrals for medical care, including laboratory and bloodwork as well as immediate and emergency care, and for the results to be communicated effectively back to the telepsychiatrist.  The telepsychiatrist provider has the same authority and ability to make referrals and timely receive results as does the on-site psychiatrist.

The safe management of psychotropic medications requires affirmative steps to diagnose side effects, including movement disorders, which can cause life-long harm if not detected and controlled by the prescribing psychiatrist in conjunction with medical staff.  Where telepsychiatry is used for medication management at Monterey County Jail and there is a history of antipsychotic prescribing, telepsychiatry sessions shall either be preceded by a movement disorder screening by a qualified medical clinician using the Abnormal Involuntary Movement Scale (AIMS), or, if pre-screening is not practicable, then the patient shall be accompanied in the telepsychiatry session by a qualified medical clinician who can assist the telepsychiatrist in conducting the AIMS screening.

---

[4] See American Telemedicine Association, Practice Guidelines for Video-Based Online Mental Health Services, August 2009, Guideline (g) [Medical Issues] ("Patients receiving treatment through telemental health should have an active relationship with a prescribing professional in their physical vicinity.").  See also, American Psychiatric Association, Practice Guidelines for the Psychiatric Evaluation of Adults, Third Edition, Guideline VI, Assessment of Medical Health, at 32:  "[A]n an understanding of the patient's medical status is important to 1) properly assess the patient's psychiatric symptoms and their potential cause, 2) determine the patient's need for medical care, and 3) consider potential effects on the patient's medical conditions or related treatments when choosing among psychiatric treatments."

[5] See American Psychiatric Association, Practice Guidelines for the Psychiatric Evaluation of Adults, Third Edition, Guideline VI, Assessment of Medical Health, at 34:  "The physical examination may be performed by the psychiatrist, another physician, or a medically trained clinician. Elements of the examination, such as vital signs, height, and weight, may also be obtained by nursing staff or a medical assistant. The results of the patient's most recent physical examination may also be relied on in obtaining information about the patient's physical status."

In order to achieve the necessary levels of coordination, the list below provides examples of the most common types of psychiatric encounters at the jail, and the steps ordinarily necessary to ensure coordination of on-site care.

| Description | Local coordination steps |
|---|---|
| Follow-up After Continuity of Psych Meds from Community. Newly arrived inmates who were on psych meds in the community to be seen by psychiatrist within 5-7 days after Booking RN continues medication based on psychiatrist verbal order.  (CFMG Implementation Plan at 9.) | Where the 5-7 day follow-up is by telepsychiatry, the patient shall be seen locally by a physician or mid-level provider before the session to rule out organic causes of psychiatric symptoms and to administer the AIMS for patients already on antipsychotic medications.  If pre-screening is not practicable, then the patient shall be accompanied in the telepsychiatry session by a qualified medical clinician who can assist the telepsychiatrist in conducting the necessary screening. |
| Initial Evaluations, for example per Mental Health Referral at 14-Day Health Inventory is followed by "a baseline history and … psychiatric examination" if the clinician makes a psychiatric referral.  (CFMG Implementation Plan at 20-21.) | Where the baseline history is by telepsychiatry, the patient shall be seen locally by a physician or mid-level provider within 24 hours (before or after) the telepsychiatry session.  If this evaluation occurs after the telepsychiatry encounter, the local physician or mid-level provider shall have access to and consult the telepsychiatric progress notes of the preceding session. |
| Evaluation of Patients in Safety Cells. | Where telepsychiatry is used to evaluate a patient after safety cell placements, a psychiatric nurse shall be present locally to assist with the evaluation, and to follow-up on treatment recommendations and/or emergency hospital referrals. |

| Description | Local coordination steps |
|---|---|
| <u>Patients returned from NMC after mental health crisis admission</u>. | Where telepsychiatry is used to evaluate a patient following return from NMC for psychiatric evaluation and/or treatment, a psychiatric nurse shall be present locally to assist with the evaluation, and to follow-up on treatment recommendations and/or emergency hospital referrals. |
| <u>Medication Checks Every 30 Days Until Stable</u>.  "Patients on psychiatric medications will be seen by the psychiatrist every thirty days until determined stable …."  (CFMG Implementation Plan at 21.) | Where the 30-day medication checks are performed by telepsychiatry, the patient shall be seen locally by a physician or mid-level provider to rule out organic causes of psychiatric symptoms and to administer the AIMS for patients already on medications if requested by the telepsychiatrist.  A qualified medical clinician who has received appropriate training[6] shall be present in the session to assist the telepsychiatrist in observing the patient's behavior and gait upon entering the treatment area, and to assist the tele-psychiatrist in examining the patient. |

---

[6] Annual training shall include:  (1) identifying symptoms of mental illness that may not be observable to telepsychiatry provider (such as whispering to oneself); (2) identifying symptoms of medical illness that may not be observable to telepsychiatry provider (such as the smell of diabetic ketones, indicative of diabetic ketosis); (3) methods to facilitate and/or improve the therapeutic alliance; (4) methods of operating the telepsychiatry machinery to better capture patient symptoms (including the patient's gait and hand tremors); (5) protocols for emergency treatment and transfer; and (6) methods to improve coordination of care between on-site and off-site providers.  Trainings should include the participation of one or more telepsychiatrists that provide services to patients at the Jail.

| Description | Local coordination steps |
|---|---|
| <u>Medication Checks Every 60-90 Days When Stable on Meds</u>. "Patients on psychiatric medications will be seen by the psychiatrist every thirty days until determined stable and then at least every 60 to 90 days.  More frequent evaluations by a psychiatrist will be scheduled if necessitated by the patient's condition."  (CFMG Implementation Plan at 21.) | See above for same procedure as 30-day medication checks. |
| Chronic Care 90-Day Checks. "Patients with identified chronic medical/mental health conditions shall be scheduled for Chronic Care Clinic and seen by the physician or the psychiatrist at least every ninety days if condition is stable or more frequently if condition is unstable while in custody."  (CFMG Implementation Plan at 21.) | See above for same procedure as 30-day medication checks . |
| Involuntary Medication Order. Monterey County Jail is not licensed for involuntary medication.  Involuntary medication may be ordered only when "immediately necessary for the preservation of life or the prevention of serious bodily harm to the inmate or others."  (CFMG Implementation Plan at 86.) | If involuntary medication is initiated at Monterey County Jail due to emergency, patient shall be transferred to NMC for further treatment. If involuntary medication is being continued at Monterey County Jail pursuant to prior involuntary medication orders, follow procedures set forth above for medication management by telepsychiatry. |

| Description | Local coordination steps |
|---|---|
| Involuntary Medication Follow-Up. "The inmate will be evaluated by the responsible prescribing physician at a minimum of every 72 hours."  (CFMG Implementation Plan at 87.) | Where telepsychiatry is used for involuntary medication follow-up, a Qualified Medical Professional shall be present locally to assist with the evaluation, and to follow-up on treatment recommendations and/or emergency hospital referrals. |

Culturally competent interpreter services shall be provided in the patient's preferred language when the patient and the telepsychiatrist do not speak the same language.[7]

Patients with disabilities shall receive reasonable accommodations/modifications as necessary to ensure that they receive equally effective communication in the delivery of mental health services.  In some cases such reasonable accommodations/modifications may preclude the use of telepsychiatry where the patient's communication needs are not consistent with this mode of treatment. For example, for some patients who rely on sign language interpreters, the video arrangement may not adequately convey the range of gestures needed for effective interpretation, and in such cases the patient will need to be treated by an on-site provider.

## II.    Additional Requirements

### A.    Informed Consent

Telepsychiatry shall not be used without the patient's informed consent, documented in writing in the patient's medical record.  Informed consent for use of telepsychiatry with a patient shall include, at minimum:  discussion of the structure and timing of services; procedures for coordination of care with other professionals; scheduling, including a protocol for contact between sessions; record keeping, including the process by which patient information will be documented and stored; privacy and confidentiality; potential risks; an agreed

---

[7] American Telemedicine Association, Practice Guidelines for Video-Based Online Mental Health Services, August 2009, Guideline (i).

upon emergency plan; and information specific to the nature of videoconferencing, inducing the potential for technical failure.  An informed consent form to be reviewed with the patient prior to providing psychiatric services via telepsychiatry is attached as **Exhibit B**.

### B.      Telepsychiatrist Access to Records

The telepsychiatrist shall have access to relevant clinical data of the patient as if they were being seen in person.  Relevant clinical data may be provided to the telepsychiatrist by (1) facsimile transmission, (2) secured encrypted HIPAA compliant internet based formats including email, or (3) direct discussions with any of the patient's medical or mental health care providers.  Relevant clinical data on each patient will be provided to the telepsychiatrist at least 1 hour before the start of the telepsychiatry session.  All pertinent information, i.e., pertinent history, lab results, progress notes from mental health provider, medication compliance, etc., will be included.  This information may be provided either by: (1) providing the patient's entire medical and mental health file to the telepsychiatrist; or (2) providing pertinent records documenting the patient's active psychiatric and medical conditions (including treatments and responses), past medical and psychiatric treatments (including treatments and responses), pertinent lab results and progress notes, and an abbreviated social history to the telepsychiatrist.  Information provided by way of the second option shall be captured and documented in a chart review form.  Additional clinical data may be sent to the telepsychiatrist during or after the telepsychiatry session as necessary.

### C.      Telepsychiatry Provider Charting

Telepsychiatrists must adequately document each patient session, and transmit the documentation electronically to the facility for inclusion in the patient's medical record within 24 hours of the clinic visit.  Such documentation shall include the date and duration of the encounter, the psychiatrist's assessment, patient history, treatment plan, and informed consent.

### D.      Technical Requirements

Defendants' Telepsychiatry facilities and technological capabilities must be regularly vetted to ensure: the normal operation of the devices do not have technological difficulties; up-to-date antivirus software and a firewall is installed; reliable management software is used to provide consistent oversight of

applications; adequate security by using point-to-point encryption; and the maintenance of the most reliable connection method to access the Internet. Technical problems that interrupt or prevent adequate patient assessment shall be documented in a log as well as the patient record.

### E.   Quality Assurance

Telepsychiatry care is subject to Quality Assurance monitoring that addresses the particular requirements for telemedicine, including but not limited to whether records are being reviewed as appropriate, whether the technology is working, and whether patients are consenting to telemedicine sessions and getting timely access to on-site care when they do not consent.

### F.   Confidentiality

Telepsychiatry sessions shall be conducted so that clinical discussion cannot be overheard by other patients.  Custody staff may maintain visual supervision but may not be close enough to overhear communication, absent security concerns based on an individualized determination of risk which includes consideration of a request by a qualified mental health practitioner requiring that custody staff be closer at hand for that specific inmate.

### III.   Tele-Psych Clinic Procedure

(1)   Inmates being referred to the clinic will be placed on the sick call list.

(2)   The mental health worker, who will be a Qualified Mental Health Professional, will set up the clinic for the scheduled day.  The tele-psych referral form will be completed and sent to the psychiatrist for each individual patient being seen.

(3)   The telepsychiatrist shall have access to relevant clinical data of the patient as if they were being seen in person, as described in Section II.B above. Once the clinic begins the mental health worker will facilitate the process:

(a)   Provide privacy for the patient, as described in Section II.F above. The medical assistant will work with the facility staff to do everything possible to ensure privacy for the patients.  If at any time the patient requests to speak to the doctor privately,

the medical assistant will advise the appropriate detention staff and leave room.

    (b)    Assist the inmate by explaining the process and providing support during the procedure.

(4)    Medication

    (a)    Informed consent for medication

        (i)    The psychiatrist will verbally provide the inmate with the rationale for the use of the specific medication, the benefits, and potential side effects; the potential risks of refusing to take the medication; and document this information and the patient's level of understanding in the medical record.

        (ii)    The medical assistant will complete the consent form, obtain the patient's signature and fax the consent form to the psychiatrist for signature.  The completed, signed form will be faxed back to the county and filed in the inmate's medical record.

    (b)    Medication monitoring

        (i)    All patients on medications will be seen by an on-site psychiatrist or telepsychiatrist and re-evaluated every 30 days until condition stable; then every 60 to 90 days at the clinical discretion of the psychiatrist.  More frequent evaluations will be scheduled as indicated by the patient's condition.

(5)    On-site monitoring/follow up of patient status

    (a)    The on-site mental health provider will routinely monitor patient status and report significant changes to the psychiatrist between scheduled tele-psychiatry clinics.

(b)    Urgent or emergent patient conditions will be referred to local community providers through consultation with the on-site medical director.

Exhibit A

This policy addresses vacancies in the on-site psychiatrist position at the Monterey County Jail.

CFMG provides 40 hours of on-site psychiatric services at the Monterey County Jail. In addition CFMG supplements psychiatric staffing at Monterey County Jail with tele-psychiatrist services.

For any vacancy in which the on-site psychiatrist is unable to provide the required 40 hours of on-site psychiatric services, or any part thereof, CFMG will first attempt to have the on-call psychiatrist fill the vacancy.  In the event that the on-call psychiatrist is not able to fill the vacancy (or only partially fill the vacancy), the below procedures will be followed, according to type of vacancy.  For purposes of this policy, the following types of vacancies are defined:

(1) "Scheduled vacations/leaves"
(2) "Illnesses/emergencies"
(3) "Termination/Separation"

1.      Scheduled Vacations/Leaves

Whenever possible, the on-site psychiatrist will notify the CFMG Program Manager within 30 days of any Scheduled Vacation/Leave.

Upon receipt of the notice, the Program Manager will:

a.      Notify the CMGC Medical Director of the on-site psychiatrist's planned absence; and

b.      Attempt to hire a qualified psychiatrist to provide on-site psychiatric services at the Monterey County Jail during the planned absence.  CFMG maintains an up-to-date panel of at least one psychiatrist who is capable of filling such vacancies.  CFMG will attempt in good faith to recruit three psychiatrists who will agree to be a part of their on call psychiatrist panel.

c.      If the Program Manager is unable to hire a qualified psychiatrist, CFMG will employ a staffing agency, such as Aligned Telehealth, to provide a qualified tele-psychiatrist or on-site psychiatrist who is able to perform psychiatric services at the Monterey County Jail during the on-site psychiatrist's planned absence.

      d.      If the Schedule Vacation/Leave is for a period of more than two weeks (14 calendar days), CFMG shall not rely on tele-psychiatry for the entire period, but instead will ensure that the staffing agency provides an on-site psychiatrist to perform psychiatric services at the Monterey County Jail until the CFMG-employed on-site psychiatrist resumes work at the Jail.

2.      Illnesses/Emergencies

If the on-site psychiatrist has an unplanned or unforeseen absence (e.g., emergency or illness), the Program Manager will attempt to cover the absence with the on-call psychiatrist position described above, and then with the panel coverage described in 1.b above.

If for some reason, neither the on-call nor the panel coverage can fill the absence, then CFMG will employ a staffing agency, such as Aligned Telehealth, to provide a qualified tele-psychiatrist or on-site psychiatrist who is able to perform psychiatric services at the Monterey County Jail during the on-site psychiatrist's unplanned absence.

If the illness/emergency absence is persists for more than two weeks (14 calendar days) CFMG will ensure that the staffing agency provides an on-site psychiatrist to perform psychiatric services at the Monterey County Jail until the CFMG-employed on-site psychiatrist resumes work at the Jail.

3.      Termination/Separation

      a.      If CMGC/CFMG receives notice that the on-site psychiatrist will be terminated, or intends resign or otherwise stop practicing at the Monterey County Jail for an indeterminate period of time, the following shall occur: Within 3 business days of the notice, CFMG/CMGC through counsel shall provide notice to the Court and counsel in *Hernandez v. County of Monterey,* Case No. CV 13-2354 BLF (N.D. Cal.).

      b.      CMGC/CFMG shall take all reasonable steps to fill the on-site psychiatry position.

      c.      If the position is not filled during the notice period before the on-site psychiatrist's departure, CFMG shall ensure that a staffing agency provides an on-site psychiatrist to perform psychiatric services at the Monterey County Jail until the position is filled.

This policy and procedure applies only to the Monterey County Jail.  It is not intended to apply to any other County where CFMG or CMGC provides mental health services, including tele-psychiatry.

Exhibit B

Confidentiality Disclosure and Consent for Treatment by Telepsychiatry

**Inmate Name**: _____

**Booking #**: _____

**Housing Unit**: _____

## Confidentiality Disclosure Statement

I understand that Telepsychiatry sessions shall be conducted with adequate privacy so that clinical discussion cannot be overheard by other patients and/or correctional officers.

I understand there are limits to the confidentiality within a correctional setting.  I understand that the treating Telepsychiatrist is required to disclose any information regarding: Suicidal, Homicidal, and Self Injurious Ideation; Unreported Child or Elder Abuse/Neglect; as well as Safety and Security Issues.

I understand that the treating Telepsychiatrist may disclose information to on-site staff for the purposes of coordinating my mental health care and/or housing placement.

I understand that, in rare cases, a poor Internet connection or equipment failure may make it difficult for the Telepsychiatrist to communicate with me or make an appropriate medical decision.  Additionally, in rare cases, security protocols could fail, causing a breach of privacy of my personal medical information.

## Consent to Treatment by Telepsychiatry

I understand that I may refuse Telepsychiatry at any time and will then be scheduled to see an on-site psychiatrist.

I understand that I have the right to refuse any medications that I am prescribed, and that I may withdraw my consent to treatment with my prescribed medications at any time.

The Telepsychiatrist has explained to me the structure and timing of my treatment, including the procedures for coordinating my care with on-site mental health staff and the scheduling of my next appointment.  I have been informed of how to access mental health staff if I have a crisis or emergency, including an urge to hurt myself or others.  The Telepsychiatrist and I have agreed upon a plan in the event that I undergo a psychiatric emergency.

The Telepsychiatrist has explained to me that details of this appointment, including the date and duration of the encounter, my patient history, the Telepsychiatrist's assessment, treatment plan, and my informed consent, will be documented in my medical record, a copy of which will be stored on-site at the Monterey County Jail.

I understand my responsibilities include participating in the treatment program and alerting medical staff to any problems or issues that may arise as a result of treatment.

This informed consent process included the opportunity for me to ask questions in regard to my treatment.  My questions have been answered and the risks, benefits, and any practical alternatives have been discussed with me in a language in which I understand.

I voluntarily consent to treatment provided by the Telepsychiatrist identified below.

☐ I consent to treatment by Telepsychiatry

☐ I reject treatment by Telepsychiatry and demand an on-site psychiatrist

_____
Patient Signature

_____
Date

☐ Patient Refused to Sign

Provide Reason:

_____
Clinician Name (Print)

_____
Title

_____
Clinician Signature

_____
Date