United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| JESSE HERNANDEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY, et al.,<br><br>Defendants. | Case No. 13-cv-02354-BLF<br><br>**ORDER VACATING HEARING ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES; AND GRANTING MOTION**<br><br>[ECF 640] |

Plaintiffs move for an award of $150,000 in attorneys' fees and expenses for the period May 27, 2017 through May 26, 2018. The motion, which has been fully briefed, is appropriate for disposition without oral argument. *See* Civ. L.R. 7-1(b). The Court VACATES the May 16, 2016 hearing. The motion is GRANTED for the reasons discussed below.

## I.  BACKGROUND

This class action was filed in May 2013 on behalf of inmates housed at the Monterey County Jail ("Jail"), challenging the medical care, mental health care, safety, and disability access provided at the Jail. Compl., ECF 1. After substantial discovery, motion practice, and issuance of a preliminary injunction, the parties entered into a Settlement Agreement which required changes to Jail policies and practices. Settlement Agreement, Exh. A to Swearingen Decl., ECF 640-1. Magistrate Judge Paul S. Grewal, then assigned to the case, granted final approval of the class action settlement in an order issued August 18, 2015. Final Approval Order, ECF 494.

Among other things, the Settlement Agreement required Defendants to develop implementation plans in specific subject areas "for improvement of care, services, programs, and activities at the Jail." Settlement Agreement ¶ 31. Defendants County of Monterey ("County")

United States District Court
Northern District of California

1 and California Forensic Medical Group ("CFMG") submitted proposed implementation plans. *See* 2 County Implementation Plan, Exh. A to County's Motion for Approval, ECF 514; CFMG 3 Implementation Plan, Exh. A to CFMG's Motion for Approval, ECF 532. Judge Grewal approved 4 those plans in large part, although he required some modifications. Order Granting-In-Part 5 Defendants' Motions for Approval of Implementation Plans, ECF 549. For example, while he 6 found no fault with CFMG's proposal that a psychiatrist be employed on-site at the Jail forty 7 hours per week, Judge Grewal found that the proposed implementation plans did not adequately 8 address standards for use of telepsychiatry. *Id.* He ordered that "Defendants' implementation 9 plans must have standards for when they can deviate from a typical in-person encounter and use 10 telemedicine or telepsychiatry." *Id.* at 3.

The Settlement Agreement contemplates that Plaintiffs may incur fees and expenses in monitoring and enforcing Defendants' compliance. Under Paragraph 63 of the Settlement Agreement, Plaintiffs may petition the Court for: (a) no more than $250,000 per year in fees and expenses arising from monitoring work, inspections of the Jail, meet-and-confer, and the like, and (b) no more than $150,000 per year in fees and expenses arising from motions to enforce the Settlement Agreement. Settlement Agreement ¶ 63. The parties agree that for purposes of these provisions, the first monitoring year ran from May 27, 2016 through May 26, 2017. The second monitoring year – the year at issue here – ran from May 27, 2017 through May 26, 2018.

On July 17, 2017, Plaintiffs filed a motion to enforce the Settlement Agreement, asserting that: (a) CFMG had not complied with its staffing obligations under the Settlement Agreement; (b) CFMG's proposed Telepsychiatry Policy did not contain the standards required by Judge Grewal's order; and (c) the County had denied Class Counsel and court-appointed monitors access to inmates' records of treatment at Natividad Medical Center ("Natividad") which were necessary to confirm Defendants' compliance with the Settlement Agreement and related court orders. Motion to Enforce, ECF 599. The Court heard the motion on September 20, 2017. *See* Minute Entry, ECF 613. A number of issues were resolved on the record, and the Court indicated that it would refer certain outstanding issues to Magistrate Judge Cousins for resolution. Hrg. Tr., ECF 618.

The Court issued a written order on November 1, 2017. Order Granting in Part and Denying in Part Plaintiffs' Motion to Enforce Settlement Agreement, ECF 619. The Court found that "as of the filing of Plaintiffs' motion to enforce, CFMG was not in compliance with its obligation to employ a psychiatrist on-site at the Jail for forty hours per week." *Id*. at 2. The Court noted that after the motion to enforce was filed, CFMG hired Dr. Paul Francisco to work as a full-time on-site psychiatrist. *Id.* at 3. The Court accepted the oral representations of CFMG's counsel that there were substitute psychiatrists available to cover any absences of Dr. Francisco. *Id.* Thus, the Court concluded that the portions of the motion to enforce directed to CFMG's staffing obligations were moot. *Id.*

The Court observed that the parties had "agreed to work together" and had "reached tentative agreement" on the bulk of the telepsychiatry issues. Order Granting in Part and Denying in Part Plaintiffs' Motion to Enforce Settlement Agreement at 5, ECF 619. The Court referred the remaining telepsychiatry issues to Judge Cousins. *Id.* The proceedings before Judge Cousins resulted in stipulated resolution of the remaining telepsychiatry issues. Stipulation and Order Regarding Telepsychiatry, ECF 622; Second Stipulation and Order Regarding Telepsychiatry Issues, ECF 633.

Finally, the Court granted the requested access in inmates' Natividad medical records "subject to Plaintiffs' submission of particularized requests to the Court by means of stipulation and proposed order or administrative motion." Order Granting in Part and Denying in Part Plaintiffs' Motion to Enforce Settlement Agreement at 8, ECF 619.

Plaintiffs now seek attorneys' fees and expenses incurred in litigating the issues described above. Plaintiffs claim that they incurred $335,648 in fees and $12,594 in expenses, but they limit their request to the $150,000 annual cap on fees and expenses set forth in the Settlement Agreement.

**II. DISCUSSION**

Plaintiffs' motion is governed by Paragraph 63 of the Settlement Agreement, which provides in relevant part as follows:

63. Fees and expenses after Final Approval of Settlement Agreement:

Plaintiffs may petition the Court for an award of no more than $250,000 per year in fees and expenses arising from monitoring work, inspections, negotiations, meet and confer processes, mediation, review of documents, and correspondence with class members, until termination of Court enforcement. . . . The $250,000 annual cap does not apply to (1) Plaintiffs' motions to enforce the Settlement Agreement and Implementation Plans; and (2) Plaintiffs' opposition to any motions filed by defendant(s) arising out of the Settlement Agreement and Implementation Plans. *The standard for Plaintiffs' eligibility for fees and expense arising from Plaintiffs' motions to the Court shall be that no fees and expenses shall be awarded unless the Court finds (1) that the motion or opposition was necessary to enforce substantial rights of the class* under the Eighth Amendment and Fourteenth Amendments to the United States Constitution, Article I, Sections 7 and 17 of California Constitution, the Americans with Disabilities Act, Rehabilitation Act, or California Government Code § 11135; *and, (2) that Plaintiffs attempted to resolve the matter and/or narrow the issues as much as possible by meeting and conferring with Defendants, taking full opportunity of recourse to the mediator before presenting the issues to the Court.* Defendants shall be eligible for an award of fees and costs from plaintiffs' private counsel, and *Plaintiffs shall receive none, in the event that the Court finds that Plaintiffs' motion was frivolous, unreasonable or groundless*, or that Plaintiffs continued to litigate it after it clearly became so. Furthermore, *Plaintiffs agree that they may not seek more than $150,000 each year in fees and expenses on motions to enforce the Settlement Agreement.*

Settlement Agreement ¶ 63 (emphasis added).

To summarize, the Settlement Agreement provides that the Court may award Plaintiffs up to $150,000 a year in attorneys' fees and expenses incurred in litigating a motion to enforce the Settlement Agreement if: (a) the motion was necessary to enforce substantial rights of the class under the Eighth and Fourteenth Amendments or other enumerated laws; (b) Plaintiffs attempted to resolve the issues through meet-and-confer and mediation prior to bringing an enforcement motion; and (c) the motion was not frivolous, unreasonable, or groundless.

CFMG argues that these standards are not met with respect to the portions of the motion seeking enforcement of CFMG's obligations relating to staffing and telepsychiatry. The County argues that these standards are not met with respect to the portions of the motion seeking access to patient's Natividad medical records.

**A. CFMG's Staffing Obligations and Telepsychiatry Standards**

The Court has no difficulty finding that the requisite standards are met with respect to the portions of the motion to enforce directed to CFMG's obligations. CFMG's arguments to the contrary are unpersuasive.

### 1.     The Motion was Necessary to Enforce Substantial Rights of the Class

CFMG's obligations related to psychiatric staffing and appropriate telepsychiatry standards go to the heart of Plaintiffs' federal constitutional rights as litigated and settled in this action. CFMG does not argue otherwise. Instead, CFMG argues that Plaintiffs' motion to enforce was not necessary to enforce those rights and that, in fact, Plaintiffs did not prevail on or accomplish anything through their motion.

With respect to its staffing obligations, CFMG concedes that it was "out of compliance with the Implementation Plan requirement regarding providing 40 hours of onsite psychiatry when Plaintiffs' counsel filed their Motion to Enforce." CFMG's Opp. at 7, ECF 643. CFMG nonetheless argues that Plaintiff's motion to enforce the 40-hour requirement was unnecessary because "Plaintiffs' counsel knew CFMG had been diligently attempting to hire an onsite psychiatrist." *Id*. CFMG does not offer any evidence that Plaintiffs' counsel knew of, and reasonably could have relied on, CFMG's efforts to hire a psychiatrist to work onsite forty hours per week. To the contrary, based on evidence submitted by Plaintiffs, it appears that during the months prior to the filing of Plaintiffs' enforcement motion, CFMG was advocating for a policy that would permit telepsychiatry to be used as the primary mode of providing psychiatric services at the Jail. Swearingen Reply Decl. ¶ 2, ECF 645-1. Only after Plaintiffs filed their enforcement motion did CFMG hire Dr. Francisco to start work in September 2017, more than three months into the 2017-2018 monitoring year.

At the hearing on the enforcement motion, CFMG's counsel still appeared to be suggesting that telepsychiatry could take the place of in-person treatment in most respects and that failure to provide an onsite doctor for forty hours per week could be excused if telepsychiatry were available. *See* Hrg. Tr. 28:10 – 35:4, ECF 618. Plaintiffs requested clarification, which the Court provided in its order, that "CFMG must provide an on-site psychiatrist for forty hours per week, each and every week." Order Granting in Part and Denying in Part Plaintiffs' Motion to Enforce Settlement Agreement at 3, ECF 619. Because CFMG had brought itself into compliance with that requirement prior to the hearing on Plaintiffs' motion, however, the Court ruled that "the portion of Plaintiffs' motion seeking to enforce CFMG's staffing obligations is DENIED AS

1  MOOT." *Id.*

2  With respect to telepsychiatry, CFMG argues that Plaintiff was unsuccessful in persuading the Court to grant its proposed order imposing twelve separate standards. CFMG concedes that "[d]uring the hearing on Plaintiffs' Motion to Enforce, CFMG stipulated to some of the Telepsych standards requested by Plaintiffs' counsel." CFMG's Opp. at 7, ECF 643. However, CFMG argues that it already had agreed to those provisions before Plaintiffs filed the enforcement motion and that the motion therefore was unnecessary. CFMG does not offer any evidence showing that it previously had agreed to all of the provisions to which it stipulated at the hearing. At the start of the hearing, the Court commented on CFMG's proposed telepsychiatry policy, stating that "I don't think it complies in any way with the Settlement Agreement." Hrg. Tr. 5:4-6, ECF 618. The Court then stated that neither it nor Plaintiffs would be rewriting the policy and that the focus of the hearing would be on finding solutions. Hrg. Tr. 5:6-9. After a lengthy discussion with all counsel about telepsychiatry and other issues raised in the enforcement motion, the Court expressed the hope that counsel for Plaintiffs and counsel for CFMG could make progress if they discussed the issues, and broke for lunch. Hrg. Tr. 55:4-56:7. Upon return from the lunch break, counsel for Plaintiffs and counsel for CFMG announced that they had discussed the matter over lunch and that of the twelve standards requested by Plaintiffs, CFMG had agreed to six, including "Number 6, Number 7, 9, 10, 11, 12." Hrg. Tr. 57:3-16. The Court characterized that agreement as "substantial." Hrg. Tr. 57:7.

With respect to the remaining six standards requested by Plaintiffs, the Court found that Number 4 did not require an express order from the Court because the relief sought is mandated by the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and Number 8 was subsumed Numbers 6 and 7. Order Granting in Part and Denying in Part Plaintiffs' Motion to Enforce Settlement Agreement at 5, ECF 619. The parties agreed to work out Number 5. *Id.* The Court referred the remaining three standards, Numbers 1, 2, and 3, to Judge Cousins for further proceedings, and denied as moot the remaining portions of the motion directed to telepsychiatry. *Id.* Prior to the hearing date set for Judge Cousins, the parties reached agreement on telepsychiatry standards. The parties ultimately submitted two stipulations and proposed orders, which were

6

approved by the Court, resolving the remaining issues related to telepsychiatry and establishing telepsychiatry standards. *See* Stipulation and Order Regarding Telepsychiatry, ECF 622; Second Stipulation and Order Regarding Telepsychiatry Issues, ECF 633.

On this record, the Court finds that Plaintiffs' motion to enforce was necessary to enforce substantial class rights. Prior to the filing of the motion, CFMG was not in compliance with its staffing obligations or its obligation to implement appropriate telepsychiatry standards. It is reasonable to infer that the motion prompted CFMG to hire expeditiously an onsite psychiatrist, and it certainly resulted in the Court's clarification of CFMG's obligation to maintain and onsite psychiatrist for forty hours a week, each and every week. Moreover, through litigating the motion, the parties reached agreement on telepsychiatry standards. CFMG argues that the standards it ultimately agreed to were the same standards it always had advocated. That position is not borne out by the record, which reflects that it was only after substantial discussion with the Court and with Plaintiffs' counsel during the hearing on the motion that CFMG agreed to six of Plaintiffs' proposed standards. Moreover, to the extent that Plaintiffs did not obtain everything they requested in the way of telepsychiatry standards, Plaintiffs did obtain substantial results which allowed for implementation of standards which both Plaintiffs and the Court found to be acceptable. Under these circumstances, the Court finds that Plaintiffs have satisfied the first requirement for a recovery of fees and expenses under Paragraph 63 of the Settlement Agreement. This finding is not undermined by the fact that CFMG brought itself into compliance with some aspects of the Settlement Agreement prior to the hearing, and that the parties ultimately stipulated to resolution. *See Balla v. Idaho*, 677 F.3d 910, 921 (9th Cir. 2012) (upholding district court's award of attorneys' fees and expenses under Prison Litigation Reform Act where inmate-plaintiffs' motion to enforce injunction re prison conditions was catalyst for state's compliance).

**2.     Plaintiffs Attempted to Resolve the Issues Before Filing the Motion**

Plaintiffs present the declaration of their counsel, Van Swearingen, who states that before filing the enforcement motion Plaintiffs attempted to reach resolution through meet and confer efforts, and through presentation of the issues to Judge Cousins. Swearingen Decl. ¶ 5, ECF 640-1. CFMG does not dispute Mr. Swearingen's statement.

7

### 3. The Motion to Enforce was not Frivolous, Unreasonable, or Groundless

For the reasons discussed in part II.A.1 above, Plaintiffs' motion to enforce was not frivolous, unreasonable, or groundless. The motion was the catalyst for, or otherwise resulted in, CFMG's compliance with its obligations under the Settlement Agreement.

### B. Access to Inmates' Medical Records at Natividad

Turning to Plaintiffs' motion for fees and expenses related to the portion of their enforcement motion seeking access to inmates' medical records, the Court agrees with the County that the motion for access to inmates' records was not a motion for "enforcement" of the Settlement Agreement as contemplated in Paragraph 63. As set forth above, the Settlement Agreement authorizes Plaintiffs to seek up to "$250,000 per year in fees and expenses arising from monitoring work, inspections, negotiations, meet and confer processes, mediation, review of documents, and correspondence with class members," and up to "$150,000 each year in fees and expenses on motions to enforce the Settlement Agreement." Settlement Agreement ¶ 63. The portions of the Settlement Agreement addressing access to inmate' medical records are those relating to designated monitors' access to facilities and records. *See, e.g.,* Settlement Agreement ¶¶ 39-41.

The Settlement Agreement expressly provides that monitors shall have "reasonable access" to records, including mental health records, "consistent with Defendants' obligations under Federal and State law, as those obligations have been modified by Court order." Settlement Agreement ¶ 40.c. As is reflected in Defendant County of Monterey's opposition to Plaintiffs' enforcement motion, the County did not dispute Plaintiffs' right to inmate records, only the appropriate mechanism for producing the records. *See* County's Opp. to Motion to Enforce at 3, ECF 605. The County's position was consistent with its view of the state laws protecting the privacy interests of the Plaintiff class. *See id.* After evaluating applicable laws, the Court determined that a balancing of the interests at stake favored production, but that it was not appropriate "to issue a blanket order directing Natividad to produce any and all records requested by Class Counsel or the monitors." Order Granting in Part and Denying in Part Plaintiffs' Motion to Enforce Settlement Agreement at 7, ECF 619. The Court implemented a streamlined process

under which Plaintiffs may submit particularized requests for access to medical records by means of stipulation or administrative motion. *See id.* at 7-8. In the Court's view, these issues properly related to "monitoring" Defendants' compliance with the Settlement Agreement rather than "enforcement" of that compliance. As a result, the Court concludes that fees and expenses for litigating access to inmates' medical records are not recoverable as fees and expenses incurred in seeking to "enforce" the Settlement Agreement.

### C. An Award of $150,000 in Fees and Expenses is Appropriate

Plaintiffs have established that they are entitled to recover fees and expenses for those portions of the motion to enforce directed to CFMG's obligations. The Court next must determine whether an award in the requested amount of $150,000 is appropriate.

Plaintiffs have provided documentation showing that they expended more than 640 hours litigating the motion to enforce judgment, amounting to $335,648 at counsel's billing rates. Swearingen Decl. ¶¶ 22-27 & Exh. H, ECF 640-1. Defendants do not contest either the number of hours worked or the rates charged. The Court finds no reason to adjust the lodestar of $335,648. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (enumerating the factors that may be considered in adjusting the lodestar amount). Plaintiffs incurred more than $12,594 in expenses related to the motion to enforce. Swearingen Decl. ¶ 27. Defendants do not contest those expenses. The Court thus finds that Plaintiffs reasonably incurred a total of $348,242 in fees and expenses in connection with their motion to enforce.

Approximately 90% of Plaintiffs' work on the motion to enforce related to CFMG's obligations. Swearingen Decl. Exh. E, ECF 640-1. Records demonstrate that 64.2 hours were devoted to the Natividad records access issue at a fee of $35,794.50. Thus, even excluding fees and expenses related to the County's production of inmates' medical records, Plaintiffs reasonably incurred more than $313,000 in seeking to enforce CFMG's compliance with the Settlement Agreement. Plaintiffs' showing is more than adequate to warrant an award of $150,000 in fees and expenses, which is the maximum permitted under the Settlement Agreement but less than half of counsel's lodestar. Plaintiffs' motion for an award of attorneys' fees and expenses in the amount of $150,000 for the period May 27, 2017 through May 26, 2018 is GRANTED.

9

Having concluded that Plaintiffs are entitled to $150,000 in fees and expenses under the Settlement Agreement, the Court need not reach Plaintiffs' alternative arguments that they are entitled to attorneys' fees under various federal and state statutes.

**D.     Interest**

Plaintiffs request interest on the award of attorneys' fees and expenses, and they assert that interest should run from July 2, 2018, the date Plaintiffs asked Defendants to stipulate to $150,000 in enforcement fees for period May 27, 2017 through May 26, 2018. *See* Swearingen Decl. ¶ 9, ECF 640-1. The Settlement Agreement itself does not provide for interest on fees and expenses awarded under Paragraph 63. To the contrary, the plain language of the Settlement Agreement appears to contemplate a *total* award of $150,000 in connection with a motion to enforce.

Plaintiffs cite *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391-92 (9th Cir. 1995), in support of their request for interest. In *Friend*, the Ninth Circuit held that when plaintiffs are awarded attorneys' fees under 42 U.S.C. § 1988, they are entitled to post-judgment interest running from "the date that entitlement to fees is secured, rather than from the date that the exact quantity of fees is set." *Id*. 1392. In *Friend*, the plaintiffs had been awarded attorneys' fees in an order issued in June 1990, but the amount of fees was set in a later order issued in July 1990. *Id*. The Ninth Circuit held that the plaintiffs were entitled to post-judgment interest running from the earlier June order. *Id*. *Friend* is distinguishable from the present case, in that Plaintiffs here are awarded fees and expenses under a provision of the Settlement Agreement and not under § 1988. Moreover, Plaintiffs' entitlement to the $150,000 in fees and expenses was not "secured" until the issuance of the present order. Plaintiffs have cited no legal authority supporting an award of interest on the contractual fees and expenses awarded in this case.

Accordingly, Plaintiffs' request for post-judgment interest is DENIED.

//

//

//

//

//

10

**III. ORDER**

(1) Plaintiffs' motion for an award of attorneys' fees and expenses in the amount of $150,000 for the period May 27, 2017 through May 26, 2018 is GRANTED; and

(2) Plaintiffs' request for post-judgment interest is DENIED.

Dated: May 1, 2019

BETH LABSON FREEMAN
United States District Judge