MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
VAN SWEARINGEN – 259809
CARA E. TRAPANI – 313411
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:        mbien@rbgg.com
              egalvan@rbgg.com
              vswearingen@rbgg.com
              ctrapani@rbgg.com

ERIC BALABAN (*admitted pro hac vice*)
NATIONAL PRISON PROJECT of the
AMERICAN CIVIL LIBERTIES UNION
915 15th Street N.W., 7th Floor
Washington, D.C.  20005-2302
Telephone:    (202) 393-4930
Facsimile:    (202) 393-4931
Email:        ebalaban@aclu.org

KATHLEEN GUNERATNE – 250751
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:    (415) 621-2493
Facsimile:    (415) 255-8437
Email:        kguneratne@aclunc.org

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. CV 13 2354 BLF<br><br>**STIPULATION AND [PROPOSED] ORDER APPOINTING NEUTRAL MONITORS AND ORDER OF REFERENCE**<br><br>Judge:  Hon. Beth Labson Freeman |

1    The Settlement Agreement approved by the Court on August 18, 2015 provides for
2  the appointment of five expert monitors to evaluate Defendants' compliance with the
3  Settlement Agreement and the Implementation Plans.  Dkt. No. 494 at ECF 21-22.  The
4  monitors' duties are set forth in Paragraphs 39 and 40 of the Settlement Agreement.  *See*
5  *id.* at ECF 22-23.  Two previously-appointed Monitors—Timothy A. Gilbert, the monitor
6  for disability compliance, and Michael Hackett, the monitor for corrections and safety, *see*
7  Dkt. No. 563 at ECF 2—have become unavailable to monitor their respective areas.
8  Pursuant to Paragraph 37 of the Settlement Agreement, Dkt. No. 494 at ECF 22, the parties
9  met and conferred to assign replacement experts to monitor these areas.

10    The parties hereby jointly file this stipulation requesting that the Court appoint the
11  following Monitors to replace Mr. Gilbert and Mr. Hackett:  for disability compliance,
12  Mike Brady; and for corrections and safety, Richard Bryce.  Current CVs for Mr. Brady
13  and Mr. Bryce are attached to this Order as Exhibits A and B, respectively.  The parties
14  respectfully request that the Court issue an order appointing Mr. Brady and Mr. Bryce as
15  neutral monitors.

16

17  DATED:  July 30, 2019                    Respectfully submitted,

18                                           ROSEN BIEN GALVAN & GRUNFELD LLP

19                                           By:  */s/ Van Swearingen*
20                                                Van Swearingen

21                                           Attorneys for Plaintiffs

22

23

24

25

26

27

28

[3414785.1]

1    DATED:  July 30, 2019                COUNTY COUNSEL COUNTY OF MONTEREY

2                                         By:  */s/ Susan K. Blitch*
3                                              Susan K. Blitch
                                               Deputy County Counsel
4
5                                         Attorneys for Defendants
                                          COUNTY OF MONTEREY and MONTEREY
6                                         COUNTY SHERIFF'S OFFICE

7    DATED:  July 30, 2019                BERTLING & CLAUSEN, L.L.P.

8
                                          By:  */s/ Peter G. Bertling*
9                                              Peter G. Bertling

10                                        Attorneys for Defendant
                                          CALIFORNIA FORENSIC MEDICAL GROUP,
11                                        INCORPORATED

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Northern District General Order 45(X)(B), I hereby attest that I have on file approvals for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

DATED: July 30, 2019                    ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Van Swearingen*
Van Swearingen

Attorneys for Plaintiffs

## [PROPOSED] ORDER

The Court has reviewed the above Stipulation of the parties.  Good cause appearing and in accordance with the Settlement Agreement and its remedial purposes, and pursuant to the Court's inherent power, it is hereby:

ORDERED that the following individuals are appointed as Monitors:  for disability compliance, Mike Brady; and for corrections and safety, Richard Bryce.  Current CVs for Mr. Brady and Mr. Bryce are attached to this Order as Exhibits A and B, respectively.

FURTHER ORDERED that the Monitors shall have the responsibilities, powers, and protections set forth in the Settlement Agreement and in this Order.

FURTHER ORDERED that:

1.      The following terms of the Settlement Agreement are adopted as part of this Order:

2.      "Substantial compliance" shall mean adherence to the requirements of the Settlement Agreement and the Implementation Plans in all material respects, recognizing that 100% compliance is not required.  Non-systemic deviations from the requirements of the Settlement Agreement and the Implementation Plans shall not prevent a finding of substantial compliance, provided that the Defendants demonstrate that they have (a) implemented a system for tracking compliance, where appropriate and practical, and for taking corrective measures in response to instances of non-compliance, and (b) that Defendants have instituted policies, procedures, practices, and resources that are capable of

[3414785.1]

durable and sustained compliance.  Substantial compliance shall be assessed by the subject-area monitors and shall govern all requirements for the Settlement Agreement and Implementation Plans.

3.      If any of the monitors become unavailable to monitor their respective areas, the parties will meet and confer, and assign a new expert to monitor compliance with the Settlement Agreement and the Implementation Plans for their respective areas of expertise. The parties may agree at any time to remove and replace a monitor.

4.      Defendants shall pay the fees and costs incurred by the designated monitors and their staff.  Invoices will be provided to all parties for their review before payment. There will be a yearly budget negotiated with each designated monitor.  If any monitor exceeds the budget for fees or costs without prior approval, he or she may be removed and replaced through the process described in Paragraph 37 of the Settlement Agreement.  Dkt. No. 494 at ECF 22.  If the parties do not agree on removal, either party may refer the matter to the mediator, and if necessary to the Court to determine whether the monitor should be retained or removed.

5.      The designated monitors shall have access to all jail facilities upon reasonable notice, to assess substantial compliance with the Settlement Agreement, and the incorporated Implementation Plans.  All site visits shall take place on consecutive days. There shall be no more than two (2) site visits in each year, per monitor, that the Settlement Agreement is in effect.  These visits may take up to two (2) days each.

6.      The designated monitors shall have access to meet and interview personnel whose duties pertain to the provision of services and/or who work with inmates in the area of the expert's expertise.

7.      The designated monitors shall have a reasonable opportunity to conduct confidential interviews of inmates to assess whether Defendants are in compliance with the terms of the Settlement Agreement and Implementation Plans.

8.      The designated monitors may request to review County or CFMG documents, except those documents protected by attorney-client or work product

[3414785.1]

privileges, or by state or federal law, to monitor Defendants' compliance with the terms of this Settlement Agreement and all Implementation Plans.  If these documents are requested in conjunction with a site visit, Defendants will provide these documents to the extent feasible within ten (10) days prior to the visit.

9.      During the site visits, the designated medical, mental health and dental monitors shall have reasonable access to current inmate health records, including mental health records, consistent with Defendants' obligations under Federal and State law, as those obligations have been modified by Court order.

10.      Monitors shall be provided with and agree to be bound by any protective or Court orders entered in this case to protect the confidentiality of prisoner records and security sensitive information.

11.      The designated monitor will prepare a draft written report on the Defendants' efforts to meet the terms of the Settlement Agreement and all Implementation Plans at least twice a year and within 30 days of the later of the monitor's site inspection and the monitor's receipt of all requested documents and information, and in no case later than 45 days after the inspection.  Each report shall contain a determination of whether Defendants are "substantially complying" with the Settlement Agreement and the applicable Implementation Plan.  The draft report will be delivered to all parties to this Agreement.  If the designated monitor concludes that Defendants have not substantially complied with the terms of any provision or provisions of the Settlement Agreement and Implementation Plans, the designated monitor shall make recommendations as to actions they believe to be necessary to substantially comply with the terms of the provision or provisions.  The parties will have 30 days to provide written comments, objections or to cure issues and 7 days to reply.  The monitor may re-inspect before issuing a final report.  Final reports shall be due 20 days after the later of the monitor's receipt of any comments, objections or replies, or any re-inspection.

12.      In addition to the above-recited terms of the Settlement Agreement, the Monitors shall be governed by the following terms.

Case No. CV 13 2354 BLF
STIPULATION AND [PROPOSED] ORDER APPOINTING NEUTRAL MONITORS AND ORDER OF REFERENCE

[3414785.1]

13.     The Monitors shall not engage in *ex parte* communications, verbal or written with counsel for either party.  All written communications, emails, and document productions to or from the Monitors shall be copied to counsel for all parties.

14.     The Monitors shall not engage in *ex parte* communications with the Court. The Monitors may engage in *ex parte* communications with the Mediator, Magistrate Judge Cousins.

15.     The Monitors may engage in *ex parte* communications with each other.

16.     Tours conducted by the monitors shall be conducted without counsel present, unless the parties agree good cause exists for counsel to observe the tours.  If the parties cannot agree on the necessity for counsel to be present on monitor tours, they shall submit the mater to Magistrate Judge Cousins for decision.

17.     Monitor budgets and invoices, like other written communications, shall be copied to all parties.

18.     Within the limitations set by the yearly budget, the Monitors shall have the authority to employ and/or contract with all necessary expert, administrative, and clerical staff.  The staff and contractors of the Office of the Monitor shall have whatever access to records and documents the Monitor believes is necessary to fulfill the staff or contracting role; within the limits set by Paragraph 8 above.

19.     In preparing reports under Paragraph 11 above the Monitors shall identify all sources of information relied upon for facts and recommendations.  If the source of information is an interview or conversation whether with staff, inmates, another Monitor, or any other person, the Monitors shall identify the person who is the source of the information, and the date on which the Monitor spoke to the person.  If the source of the information is a document, the Monitor shall make the documents available to counsel for all parties, or identify the document in a manner that makes it accessible to all parties.

20.     Monitors shall be compensated directly by Defendants upon submission of invoices to all parties.

Case No. CV 13 2354 BLF
STIPULATION AND [PROPOSED] ORDER APPOINTING NEUTRAL MONITORS AND ORDER OF REFERENCE

[3414785.1]

21.     The parties shall meet and confer periodically regarding the efficacy of the procedures described herein, and shall submit a joint statement to the Court if any changes are needed.

DATED: _____July 30, 2019_____, 2019

_____

Beth Labson Freeman
United States District Judge

Case No. CV 13 2354 BLF

STIPULATION AND [PROPOSED] ORDER APPOINTING NEUTRAL MONITORS AND ORDER OF REFERENCE

[3414785.1]

**Exhibit A**
**Resume of Mike Brady**

**Mike Brady**
**101 Parkshore Drive, Suite 100**
**Folsom, California 95630**
**916-798-2504**

## SUMMARY OF QUALIFICATIONS

Over the last thirty years, I have worked in executive level positions for Sabot Consulting, the California Department of Corrections and Rehabilitation, the California State Legislature, an attorney/partner in private law practice with extensive jury trial experience (Over 100 jury trials including 25 homicides and 6 death penalty cases), and as a Sacramento County Judge Pro Tempore in 1989-1990.  As a Senior Public Policy Consultant for the California State Senate President Pro Tempore I specialized in serving the most vulnerable populations in the community and solving the most complex state operational problems in the areas of corrections, parole, probation, Americans with Disabilities, developmentally disabilities, substance abuse, dual diagnosis, medical, dental, and mental health treatment programs.  In addition, I have held executive level and rank and file positions in the Department of Corrections including Assistant Secretary, Deputy Secretary, Chief Auditor, Deputy Commissioner at the Board of Parole Hearings, Chief of Court Compliance and Director of Programs at the Division of Juvenile Justice. During my tenure at Corrections, I was responsible for overseeing six major federal civil rights class action lawsuits Armstrong (ADA), Clark (Developmental Disabilities), Valdivia (ADA, Parole Revocation Due Process, Parole Revocation Hearing Tracking Software Development), LH (Juvenile ADA, Due Process, Juvenile Parole Revocation Tracking System Software Development), Farrell (Education, Medical, Dental, Mental Health, Sex Offenders, Safety and Security, and Wards with Disabilities), and Rutherford (Lifer Hearing Due Process, Risk Assessment Tools, ADA, Lifer Hearing Due Process, Realtime, Networked Hearing Tracking System Software) including but not limited to meeting and conferring with plaintiffs' counsel, negotiating settlements, drafting remedial plans, overseeing the development of complex policies, procedures, post orders, duty statements, establishing new budgets with the attendant position authority, monitoring compliance, and conducting comprehensive training for parole agents, parole hearing officers, custody and support staff for the Adult and Juvenile Parole Board, Adult and Juvenile Parole Division, Adult and Juvenile Justice Facilities Division.

As a leader and manager, I am a strong proponent of establishing well defined standards and criteria for compliance, real time data collection and analysis, key baseline performance measurements, regular/systematic internal/external monitoring, and timely corrective action plans for episodic and systemic non-compliance with policies, procedures and remedial plans.

In my leadership roles, I have a proven ability to develop and maintain professional relationships with internal and external stakeholders.   As a professional, I pride myself on having a tremendous work ethic, strong leadership, analytic, and organizational skills as well as the ability to comprehend and solve complex problems in a cost effective and efficient manner.  Through my lifelong love of learning and self improvement, I have developed excellent oral and written communication skills, and I have extensive education, training and experience in the areas of the law, Custody Operations at the state and county level, American With Disabilities Act, Developmental Disabilities, Medical, Mental Health, Dental, Education, and Substance Abuse

Programs, Project Management, Business, Parole Revocation and Suitability Hearings, and In Custody Misconduct Hearings.

While with the Department of Corrections and Rehabilitation, each of my job changes were the result of gubernatorial appointments or internal promotions. I was called upon many times by the administration to work with a department or division struggling in transition. In each assignment I was successful in getting the department, division, or reform efforts back on track in a timely, efficient and cost effective manner. Every major civil rights class action case in which I negotiated the settlement and was in charge of overseeing their implementation and monitoring compliance, all have been found to be in substantial compliance and dismissed by the courts in large part because of the systems, experts, and collaborative approach to compliance with plaintiffs, defendants, and experts that I put in place during my tenure. (Valdivia, Rutherford/Lugo, LH, and Farrell).

These successes were the direct result of a multi-disciplinary, inclusive, collaborative task force approach with open minds, and a client focused approach to the delivery of integrated services.

## EMPLOYMENT

**Sabot Consulting**

**Director, Criminal Justice Division**
**June 2012-Present**

Division encompasses all aspects of federal, state and local corrections and jail operations, parole and probation operations/programs, risk/needs assessments, substance abuse, medical, dental, and mental health programs.  My extensive education and experience as a trial attorney, project manager, parole board hearing officer, high level executive in corrections, chief of court compliance and years of management of complex civil rights litigation including the development and implementation of large IT projects with strict deadlines, allows me, along with a cadre of subject matter experts, to advise federal, state, and local governments on what is needed to run cost effective and constitutional prison, jail, parole, parole board, and probation operations. We do so by maximizing the use of evidence based practices, real time data, community resources and programs while minimizing the use of expensive custodial beds that should be reserved for only those who are a current threat to public safety. I have worked very closely with the federal and state court judges in implementing complex remedial plans for adult and juvenile systems, and I have developed entire adult and juvenile parole revocation and release hearing systems for the state of California. I have conducted over one thousand parole violation and parole suitability hearings as a hearing officer.  In addition, from 2008-2011 as Assistant Secretary of Audits and Compliance and Chief of Court Compliance, I oversaw internal peer review audits and external audits by the Office of the Inspector General, the Office of the State Auditor,  and I oversaw  monitoring and compliance with the Department Operations Manual, Security and Escape, Business Operations, Medical, Mental Health, Dental, and Developmental Disability Programs as well as contracts with outside entities and their billings for 34 California State Prisons, 5 California Youth Prisons, and parole violation hearings in 58 California county jails.

In several federal class action litigation cases in California and across the nation, I currently serve as an expert/joint expert and jail monitor for plaintiffs and defendants in the area of the Americans with Disabilities Act, Due Process, and Corrections Operations. Those positions are as follows:

Illinois Federal District Court–  Morales v Monreal - Plaintiffs Expert Witness, Due Process (Case was settled)

Illinois Federal District Court  – Whitfield v Atchingson – Plaintiffs  Expert Witness, Due Process (Jury Trial w Verdict for Plaintiff)

California Federal District Court – Mays v County of Sacramento - Joint  Expert, Project Lead (Ongoing)

California Federal District Court - Jewett v Shasta County - Joint Expert Project Lead (Ongoing)

Solano County –  Custody Operations Gap Analysis Project Manager (Completed 2013)

Montana Federal District Court– Langford v Bullock -  Joint Expert/Arbitrator (Ongoing)

Federal District Court Michigan – Joint Expert - McBride v MDOC et. al. (Ongoing)

Northern California Federal District Court – Babu v County of Alameda - Joint Expert (Ongoing)

Santa Clara County - Cole v Santa Clara County (Ongoing) - I served as a joint expert/ project lead on: 1) a comprehensive ADA program and architectural accessibility review, 2) a three year comprehensive use of force incident review with findings and recommendations, 3) A comprehensive custody health gap analysis including medical, mental health, dental, and  suicide prevention, 4)  the development of an 8 hour comprehensive ADA training for badge staff, medical staff, and program staff as well as every Department of Correction Academy Class, and 5)  the ADA training for the Santa Clara County Office of the Sheriff  and Custody Health Executive Staff in 2015-16.

I currently serve as an expert/consultant/jail monitor for the Santa Clara County Chief Executive Officer in all areas of corrections and custody health operations.

**Department of Corrections and Rehabilitation**

**Office of the Secretary**

**Assistant Secretary of Audits and Court compliance**
**July 2010 to June 2012**

At the Office of Audits and Court Compliance, consisting of over 130 staff, I oversaw the implementation and compliance monitoring of class action court ordered remedial plans including but not limited to Armstrong, Valdivia, Clark, LH, Rutherford/Lugo, and Farrell.  I was also responsible for overseeing the performance of internal and external fiscal audits to identify waste, fraud and inefficiency for CDCR.  Moreover, I oversaw peer reviews including auditing state prisons and juvenile facilities, ensuring compliance with the departmental operational procedures, as well as collaboratively drafting corrective action plans where the department was out of compliance. I also oversaw the re-engineering of the COMPSTAT software program currently in use by CDCR.

**Division of Juvenile Justice**
**Chief of Court Compliance/Director of Programs**
**March 2009 to July 2010**

I led the Farrell v Cate remedial plan implementation efforts.  I was responsible for the oversight of a multi-disciplinary task force with internal and external stakeholders that oversaw and implemented 7 Farrell remedial plans (Medical, Mental Health, Dental, Sex Behavior Treatment, Education, Safety and Welfare, Youth with Disabilities) as well as community based aftercare programs. I oversaw the creation and revision of complex Division of Juvenile Justice policies and procedures, contracts, budget change proposals, programs, large IT projects, and communication process with experts, plaintiffs, the court, and the Office of the Special Master. I raised Juvenile Justice's substantial compliance from 66% to 84% in 18 months ending the threat of a court ordered receiver.
In addition, I designed the Division of Juvenile Justice Parole Revocation process in LH v Brown, and I oversaw its implementation which resulted in its successful dismissal.

**Board of Parole Hearings**
**Deputy Commissioner**
**November 2006 to March 2009**

I conducted over 1,000 parole revocation proceedings (including probable cause hearings and contested hearings with witnesses) as an administrative hearing officer for the Board of Parole Hearings in compliance with the Valdivia v Schwarzenegger Stipulated Permanent Injunction and Board of Parole Hearings policies and procedures as well as relevant hearing directives. As a hearing officer, compliance with the American's with Disabilities Act was a critical component of giving parolees and life inmates meaningful access to the parole revocation/suitability hearing process.

**Litigation Management Unit**
**Senate Employee on Inter-Agency Contract**
**Project Manager**
**December 2003 to November 2006**

I designed the new adult parole revocation system for the State of California in 2003, and I was the principal state negotiator for the Valdivia remedial plan. I was the Project Manager and oversaw the implementation of and monitored compliance with the Valdivia Remedial Plan of which compliance with the American with Disabilities Act was a major component.  My duties included establishing new positions, preparing budget and workload justifications, drafting policies and procedures, negotiating contracts, heading a 25-member multi-divisional task force within the Youth and Adult Correctional Agency.  I was responsible for the training of Deputy Commissioners, Correctional Counselors, and various other program staff as required for the new Valdivia Remedial Plan.  I administratively oversaw the development of a modified Revocation Tracking Information Technology System as well as the planning and construction of 13 new Decentralized Revocation Units located in County Jails. A major component of the Valdivia Remedial Plan was monitoring compliance with the American's with Disabilities Act through the Armstrong II Remedial Plan.

**Deputy Secretary- Appointed by Governor Gray Davis**
**February 2003 to December 2003**

Subject Areas: Board of Prison Terms Parole Violation and Parole Suitability Hearings; Adult and Juvenile Drug Treatment Programs; Legislation; Alternative placement of the Elderly; and other areas as needed by the Secretary and Undersecretary

**California State Senate**

**President Pro Tempore**
**Senator John L. Burton**
**Public Policy Consultant**
**California State Senate, Sacramento**
**September 2000 to February 2003**

Subject areas: Department of Corrections; Board of Prison Terms; Public Safety; Proposition 36; Community based Chemical Dependency/Mental Health Treatment/Dual Diagnosis programs; Attorney Diversion and Assistance Program.

**Brady, Stawicki & Kent**

**Partner/Trial Attorney**
**1984 – 1998**
Trial attorney in homicide and death penalty trials as well as general criminal defense practice. Over 100 jury trials including 25 homicides and 6 death penalty cases.

## EDUCATION

2013        **Boston University**
             Professional Fund Development Certificate

2010        **University of California Davis**
             Project Management Certificate

1979–1983   **University of the Pacific, McGeorge School of Law, Sacramento, CA**
             Juris Doctorate
             Member 1981 International Moot Court Team – National Champions 1981
             2nd Place World Competition 1981

1977-1979   **California Polytechnic Institute, San Luis Obispo, CA**
             English Major, six units shy of Bachelor of Arts Degree
             (accident/hospitalization prevented completion of last summer quarter)

1975-1977   **Cuesta Community College, San Luis Obispo, CA**
             AA Degree
             Highest Honors
             Student Body President 1976-1977

## PUBLICATIONS & LEGISLATION
- Protecting the Public by Assisting Addicted Lawyers in Overcoming Substance Abuse
- Senate Bill 479 Lawyer's Assistance Program enabling legislation
- Senate Bill 223 Prop 36 Drug Testing Bill and clean up legislation

## COMMITTEE ASSIGNMENTS
- Judicial Council Proposition 36 Workgroup 2001-2003; Judge Darrell Stevens, Chair
- Judicial Council Collaborative Justice Committee 2001-2003; Judge Darrell Stevens, Chair
- Proposition 36 Statewide Advisory Committee 2001-2003; Senator Burton's representative
- California Center for Collaborative Substance Abuse Policy Research 2001-2003

## COMMUNITY BOARD AND PROGRAM PARTICIPATION

- Mercy Perinatal Recovery Network Advisory Board (outpatient program for chemically dependent pregnant women and women with children 5 and under)
  Vice Chair 2001-2006, Chair 2006-2009
- Project Help, Inc. Vice President
  Sacramento Mobilizing Against Substance Abuse
  Charter Member, Board of Directors 2001
- Physicians and Lawyers for National Drug Policy
  Leadership Council Charter Member 2003
- Mercy San Juan Hospital Community Leadership Council 2009-2012
- Saint Ignatius of Loyola Parish, Mission and Outreach Board whose mission is to serve the most vulnerable populations in the community 2011-2015
- Jesuit Restorative Justice Initiative Board of Directors 2012-2013
- Anti-Recidivism Coalition, Inc. Community Advisory Board Member and mentor for at risk formerly incarcerated youth in the community 2010 – Present
- Inside Out Writers Community Advisory Board Member 2014- Present

**Exhibit B**
**Resume of Richard Bryce**

# *RICHARD S. BRYCE*

*Criminal Justice Consultant*
*4459 East O'Gara Road*
*Harrison, Idaho 83833*

### Expert Witness

*Ventura County Sheriff's Department background includes over **33 years** of law enforcement and management experience.*

PROFESSIONAL EXPERIENCE:

6/93-8/99 **Undersheriff**
Responsible for the administration of the entire Sheriff's Department under the direction of the Sheriff. At the time of my appointment as Undersheriff, the Sheriff's Department was reorganized into 4 major divisions headed by a chief deputy. Each chief deputy reported directly to me. The 4 divisions of the Sheriff's Department are composed of the Detention Services Division, East Valley Police Services Division, West County Police Services Division and Support Services Division. The Sheriff's Department employed 1,355 individuals with an operational budget in excess of $140,000,000.00.

3/86-6/93 **Assistant Sheriff**
Responsible for the administration and direction of 4 of the 8 major divisions within the Sheriff's Department. Primary responsibilities included; providing administrative direction to the Custody Division and Unit with the design, development and construction of a new 2000 bed jail, provided administrative control over the entire Department's operational budget, gave primary approval for most disciplinary actions within the Department, presented budget requests and other Department related matters to the Board of Supervisors, represented the Sheriff in public forums on a frequent basis.

2/83-3/86 **Commander**
Responsible for the overall operation and administration of the Sheriff's Custody Division, which included; 5 facilities, 339 employees

and the supervision of over 1500 inmates.  Developed budget requests totaling over 20 million dollars annually.  Developed and implemented division policy. Trained subordinates in jail operations and management.

10/82-2/83   **Commander**
Responsible for the overall operation and administration of the Sheriff's Special Services Division, which included; major criminal investigation, narcotics investigation, vice and criminal intelligence investigation, criminalistics laboratory, air unit and other special investigative functions.

12/80-10/82   **Lieutenant**
Special Services Division, Special Investigations Bureau Commander, management of the Sheriff's Narcotics, Vice and Criminal Intelligence Units, with an annual operating budget totaling $948,787.00.

11/79-12/80   **Lieutenant**
Support Services Division, Court Services Bureau Commander. General management responsibilities of a major bureau with a specific goal of justification, preparation, presentation and implementation of a Division.  The successful realization of this goal resulted in the second only such merger in California history, with initial first year savings of $476,500.00.

1/79-11/79   **Lieutenant**
Custody Division, Facility Manager, Oxnard Branch Jail.  Management of  a county branch jail housing 90 special situation inmates, (high risk, high violence potential), development of operation policy, budget construction and collateral management responsibilities of the Sheriff's Inmate Transportation Unit and Court Holding Facilities.

5/78-1/79   **Sergeant**
Support Services Division, Court Services Supervisor; supervise all bailiffs and court security deputies servicing the Ventura County Superior Court.

12/76-5/78   **Sergeant**

Custody Division, Administrative Sergeant, Branch Jail Honor Farm, budget construction, scheduling of all personnel, development of operational policy.

4/66-12/76    **Deputy/Sr. Deputy**
During this period of time I was assigned to various criminal investigation, patrol and personnel assignments.

FORMAL EDUCATION:

1985          **Master of Public Administration**
University of La Verne

1982          **Bachelor of Science: Criminal Justice**
University of La Verne

PROFESSIONAL CERTIFICATES:

**P.O.S.T.** Management Certificate

**P.O.S.T.** Supervisory Certificate

**P.O.S.T.** Advanced Certificate

**P.O.S.T.** Intermediate Certificate

**P.O.S.T.** Basic Certificate

**California Community College** Teaching Credential (life)

PROFESSIONAL MEMBERSHIPS:

American Correctional Association

American Jail Association

California State Sheriff's Association

California Peace Officer's Association

4

California Narcotic Officer's Association

National Sheriff's Association

Southern California Jail Manager's Association

Ventura County Deputy Sheriff's Association

CONSULTANT:

Shasta County Sheriff's Department, Redding, California; Development of Jail Policy and Procedures Manual.

Humbolt County Sheriff's Department, Eureka, California: Staffing analysis.

Washington County Department of Public Safety, Hillsboro, Oregon:  Staffing analysis.

Texas Attorney General's Office, Austin, Texas:  Alternative housing facilities.

Oklahoma County Sheriff's Department, Oklahoma City, Oklahoma:  Booking policies and procedures development.

Lectured on Jail Management, Construction and Operations at:

The American Corrections Association Conference
The American Jail Association Conference
California Jail Manager's Association Conference
Large Jail Network, National Institute of Corrections

EXPERT WITNESS:

Santa Clara County, California
        Leal v. Officer Siegal et al. – Sep 06 D
        Garcia et al. v. County of Santa Clara – Dec 06 D
        Richard Carrasco v. County of Santa Clara – Jan 07 D
        Marino v. County of Santa Clara – Mar 07 D

Fresno, California
        Eliseo Renteria v. Tulare County – Sep 03 P

5

Cindy Staunton v. City of Clovis – Jun 01 P

City of Houston, Texas
Claudia Navarro Pineda, et al. v. City of Houston – Dec 00 D

Pasadena, Texas
Moises Delao v. The City of Pasadena, Texas – Dec 96 D

Palm Springs, California
Sandra Lee Denham v. City of Palm Springs – Nov 99 P

Harris County, Texas
Alberti, v. Harris County – Apr 92 D
Laura Sherrard v. Harris County – Nov 93 D
Robert Earl McMullen III v. Harris County – Sep 94 D
Jason Aguillard v. Joseph McGowen – Feb 96 D
Alphonso Robinson v. Constable A. B. Chambers – May 98 D
Brad Allen Mathes v. Harris County – Jun 99 D

Liberty County, Texas
Womack v. Liberty County – Nov 93 D

Orleans Parish, Louisiana
Hamilton v. Morial – Jun 93 D

Bexar County, Texas, Texas Attorney General
DeVonish v. Lopez – Oct 93 D

Monterey County, California
Thomas Dewey v. Monterey County, et al. Jun 15 D
Claypole v. County of Monterey – Sep 15 D

Los Angeles County, California
Dion Starr v. County of Los Angeles et al. --  09 D
William Russell v. County of Los Angeles et al. – Jul 09 D
Justin Henderson, et al. v. County of Los Angeles – Sep 10 D
Ronald Johnson v. County of Los Angeles – Nov 10 D
Kevin King v. County of Los Angeles – May 11 D
Mariano Duvall v. Richard Torres et al. – Aug 12 D
XYZ Distributors Inc. v. County of Los Angeles – Oct 12 D

Christopher Brown v. County of Los Angeles – Jan 13 D
Timothy Smith v. County of Los Angeles – May 13 D
Mancilla v. County of Los Angeles – May 13 D
Tyler Willis v. Deputy Vazquez, et al. – June 13 D
Frank Martinez v. County of Los Angeles, et al. – Jan 15 D
Helen Jones v. County of Los Angeles – Jun 15 D

City of Los Angeles, California
Kathleen Washington v. City of Los Angeles – Apr 12 D

Cass County, Michigan
Nash v. Sheriff Joseph Underwood Jr.  P (pending)

Warren, Michigan
Sondey v. Wolowiec, et al. P (pending)

City of Long Beach, California
Pream v. City of Long Beach – May 18 P

City of Huntington Beach, California
Shay v. City of Huntington Beach – Aug 18 P

Department of Justice
Lion v. ICE  -- Jan 16 D
Doe v. Duke – Jan 18 D