| | |
|---|---|
| 1 | Peter G. Bertling (SBN 131602) |
| 2 | Jemma Parker Saunders (SBN 227962) |
|   | Bertling Law Group |
| 3 | 21 East Canon Perdido Street, Suite 204B |
|   | Santa Barbara, CA 93101 |
| 4 | Telephone: 805-879-7558 |
|   | Facsimile: 805-962-0722 |
| 5 | peter@bertlinglawgroup.com |
| 6 | jemma@bertlinglawgroup.com |
| 7 | Attorneys for Defendant |
|   | CALIFORNIA FORENSIC MEDICAL GROUP |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated, | Case No.: 5:13-cv-02354-BLF |
| Plaintiffs, | |
| v. | **WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]** |
| COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive, | |
| Defendants | **Hearing Date: August 24, 2023**<br>**Hearing Time: 9:00 a.m.**<br>**Ctrm: 3** |
| | Judge: Hon. Beth Labson Freeman<br>Ctrm: 3 |

5:13-cv-02354-BLF

WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT
AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]

# TABLE OF CONTENTS

I. INTRODUCTION……………………………………………………………….....1-2

II. STATEMENT OF FACTS……………………………………………………...3-9

    A. Wellpath has Assembled a New Team of Well-Qualified Supervisory Staff at the Local and Corporate Levels to Achieve Sustained, Substantial Compliance with the IP ……………………………………........................3-5

    B. Wellpath Complied with the Court's May 29, 2020, Order ……………......6

    C. Wellpath is Complying with the Court's June 3, 2022, Order …………….7

    D. Medical Monitoring and Mentoring……………………………………...7-8

    E. Mental Health Mentoring and Monitoring ………………………………...8

    F. Dental Mentoring and Monitoring ………………………………………...9

III. LEGAL ARGUMENT ……………………………………………………..10-11

    A. Plaintiffs' Proposed Order that the Court Find Wellpath is in Sustained Noncompliance with Forty-Four Requirements of the Settlement Agreement and Wellpath Implementation Plan Should be Denied Because it is Based on Antiquated Evidence …………………………………………………..10

    B. Plaintiffs' Motion to Enforce is Premature …………………………....10-11

IV. CONCLUSION …………………………………………………………………..11

5:13-cv-02354-BLF

i

**WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]**

## I. INTRODUCTION

Wellpath contends Plaintiffs' Motion to Enforce the Settlement Agreement is premature and supported by antiquated evidence that does not accurately reflect the current status of Wellpath's compliance with the Implementation Plan ("IP"). Wellpath reasonably believes that by August 24, 2023, when the Court hears oral argument, the primary issues raised by Plaintiffs with their motion will be moot. This is precisely what happened when the Court ruled on Plaintiffs' previous Motion to Enforce and several items were denied, denied as moot, or referred to Magistrate Judge Nathanael Cousins for disposition. (ECF No. 619, p. 5:21-24)

On December 16, 2022, Plaintiffs' counsel notified Defendants they intended to file an enforcement motion because Wellpath was not substantially complying with the Settlement Agreement ("SA") and IP. On January 25, 2023, Susan Blitch, Chief Assistant County Counsel, notified Plaintiffs' counsel:

- They ignored the fact Defendants were working with "brand new" mental health monitors to achieve compliance with the IP. (Exhibit 1, p. 1: January 25, 2023, letter from Ms. Blitch to Plaintiffs' counsel, Van Swearingen and Ben Hattem.)
- They had not given Defendants "any appreciable time" to process and give the mentoring by medical monitor, Dr. Bruce Barnett ("Dr. Barnett"); mental health monitor, Dr. James Vess ("Dr. Vess") and dental monitor, Dr. Vivian Winthrop ("Dr. Winthrop"), a chance to work. Ms. Blitch explained "the shadowing the mentors will conduct will allow the staff to obtain concrete steps toward achieving compliance" (Exhibit 1, p. 2.)
- They ignored the fact the "County recently authorized and spent considerable money in hiring more mental health care providers at the jail" and had "not given Defendants any reasonable time for this staffing increase to work" (Exhibit 1, p. 1).

On February 14, 2023, Peter G. Bertling, Wellpath's counsel, notified Plaintiffs' counsel that Ms. Blitch's response "sets forth much of Wellpath's position" to their

5:13-cv-02354-BLF

1

WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]

December 16, 2022, letter.  (Exhibit 2: February 14, 2023, email from Peter G. Bertling to Van Swearingen and Ben Hattem.)

Wellpath now contends Plaintiffs' Motion is premature, and should be denied for several reasons, including, but not limited to:

- Plaintiffs' proposed findings regarding Wellpath's noncompliance with the IP is based on antiquated evidence that does not accurately reflect the current status of Wellpath's compliance with the IP.
- Since this Court's June 2, 2022, Order, Wellpath assembled a new team of well qualified supervisory staff at the local and corporate levels who are working with Drs. Barnett, Vess and Dr. Winthrop to achieve sustained, substantial compliance with the IP.  Plaintiffs did not give Wellpath a reasonable amount of time to allow these collaborative efforts to work before they filed this Motion.
- Drs. Barnett, Vess and Winthrop are proactively working with Wellpath's clinical and supervisory staff, through enhanced monitoring and mentoring, to identify what specifically needs to be done for the MCJ to achieve substantial compliance with the IP.  These collaborative efforts include developing additional corrective action plans (CAPS) to remedy deficiencies with the IP.  Plaintiffs did not give Wellpath a reasonable amount of time to allow these collaborative efforts to work before they filed this Motion.
- The County has approved and funded the hiring of four (4) new mental health providers, and Wellpath has already filled 3 of these positions.  In addition, in order to achieve substantial compliance with the IP requirements regarding dental services, Wellpath has increased dental staffing from the IP staffing requirement of 24 hours per week (ECF No. 532, p. 140) to 104 hours per week. Plaintiffs have not given these staffing increases a reasonable amount of time to impact Wellpath's compliance with the IP.

///
///

5:13-cv-02354-BLF

**2**

**WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]**

## II. STATEMENT OF FACTS

On March 4, 2020, in order to address the global COVID-19 outbreak and pandemic, Governor Gavin Newsom declared that "**A STATE OF EMERGENCY**" existed in California. (Exhibit 3: "Governor Newsom Declares State of Emergency to Help State Prepare for Broader Spread of COVID-19. Press release from the California Office of the Governor, March 4, 2020.)

On March 17, 2020, after two cases of COVID-19 were confirmed in Monterey County, Dr. Edward Moreno, Monterey County Health Officer and Director of Public Health, issued a shelter in place order that required Monterey County residents to "stay home except for 'essential needs' to reduce the spread of the new coronavirus." (Exhibit 4: Romero, Sheyanne N; Ostly Ayrto. "UPDATE: Two confirmed cases of COVID-19 in Monterey County." *The Salinas Californian*, March 17, 2020.)

On July 21, 2020, Monterey County Sheriff Steve Bernal reported that "180 inmates and nine staffers at Monterey County Jail [had] tested positive for COVID-19." (Exhibit 5: Tom Wright. "Coronavirus: Sheriff reports 180 Monterey County Jail inmates tested positive." *Monterey Herald*, July 21, 2020. It is undisputed that the sudden and unforeseen COVID crisis substantially impacted Wellpath's ability to comply with the Implementation Plan ("IP"), as clinical and custodial staff focused their efforts and resources on responding to this global crisis.

### A. Wellpath has Assembled a New Team of Well-Qualified Supervisory Staff at the Local and Corporate Levels to Achieve Sustained, Substantial Compliance with the IP.

Following an unexpected turnover in supervisory and clinical staff at MCJ during the COVID crisis, Wellpath assembled a new team of well qualified supervisory staff, both at the local and corporate levels, to focus their efforts on achieving sustained, substantial compliance with the IP. The members of this team include, but are not limited to, the below individuals.

Ann Marie Natali, DBe, MA, MBA, is Wellpath's Implementation Specialist at MCJ. Her position is not required by the IP staffing matrix, but Wellpath believes this

5:13-cv-02354-BLF

3

**WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]**

position is necessary to achieve substantial compliance with the IP.  Dr. Natali is a salaried employee and regularly works more than her full-time hours.  (See Declaration of Ann Marie Natali in Support of Opposition to Motion to Enforce "Natali Dec. for Opp. to MTE" at ¶¶ 1, 4.)  She is responsible for developing strategic initiatives, CAPS, and supervising Wellpath's overall compliance with the IP.  (See Natali Dec. for Opp. to MTE ¶2.)  Dr. Natali has been willing to work extended hours because she is focused on achieving substantial compliance with the IP and providing Wellpath's patients with timely medical, mental health, and dental services.  (See Natali Dec. for Opp. to MTE at ¶¶4-7, 9.)

Paulette Torres is Wellpath's Health Services Administrator ("HSA").  (See Declaration of Torres in Support of Opposition to Motion to Enforce "Torres Dec. for Opp. to MTE" at ¶1.)  She is a salaried employee and regularly works more than her full-time hours since starting her position as Wellpath's HSA at MCJ on February 7, 2023. She is willing to work extended hours because she is focused on achieving substantial compliance with the IP, and providing Wellpath patients with quality medical, mental health and dental services in a timely fashion. (See Torres Dec. for Opp. to MTE" at ¶4.). Ms. Torres' responsibilities include achieving sustained, substantial compliance with the IP requirements related to dental services.  (See Torres Dec. for Opp. to MTE" at ¶6.)

Linda Corfman, R.N., is Wellpath's Director of Nursing at MCJ. She is a salaried employee and regularly works more than her full-time hours since starting her position as Wellpath's DON at MCJ on March 13, 2023.  (See Declaration of Corfman in Support of Opposition to Motion to Enforce "Corfman Dec. for Opp. to MTE" at ¶¶1-3.)  She trains nursing staff regarding how they can achieve substantial compliance with the IP, and properly implement Wellpath's Policies and Procedures into their daily clinical practices. (See Corfman Dec. for Opp. to MTE at ¶5.)   Ms. Corfman's responsibilities also include interviewing and hiring qualified clinical nursing candidates to staff the MCJ.  (See Corfman Dec. for Opp. to MTE at ¶4.). Ms. Corfman is willing to work extended hours because she is focused on achieving substantial compliance with the IP, and providing

5:13-cv-02354-BLF

4

WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]

Wellpath patients with quality medical, mental health, and dental services in a timely fashion. (See Corfman Dec. for Opp. to MTE at ¶¶3, 5.)

Dr. Meenu Vaid is Wellpath's onsite Medical Director at MCJ. She has been working full time at MCJ since December 5, 2022 and her duties include, but are not limited to, providing direct patient care, supervising mid-level providers, and working with Dr. Barnett, to achieve sustained, substantial compliance with the IP.

Wellpath has assigned several corporate level staff members to focus on achieving substantial compliance with the IP. Dheeraj Taranath, DO, MBA, MS, is Wellpath's Vice President Medical Director of Local Government. He regularly consults with Dr. Barnett regarding quality-of-care issues, IP deficiencies related to medical care, CAP development and achieving sustained, substantial compliance with the IP. (See Natali Dec. for Opp. to MTE at ¶¶6, 7.)

Nicole Taylor, PhD, JD, CCHP-MH, is Wellpath's Vice President of Mental Health for the Western Region. Carin Kottraba, PhD, CCHP, is Wellpath's Vice President of Mental Health Innovations. They consult with Dr. Vess regarding quality-of-care issues, IP deficiencies, CAP development and achieving sustained, substantial compliance with the IP requirements related to mental health services. (See Natali Dec. for Opp. to MTE at ¶¶6, 7.)

Dr. Kottraba performed a detailed staffing analysis in 2022 to determine the mental health staffing necessary to comply with the IP requirements regarding mental health services at MCJ. This analysis resulted in a January 2023 Amendment to Wellpath's Contract with the County that funded the hiring of 4 additional mental health staff members. (See Natali Dec. for Opp. to MTE at ¶8.)

Donald Taylor is Wellpath's Chief Dental Officer. He regularly consults with Dr. Winthrop regarding quality-of-care issues, IP deficiencies related to dental services, dental CAP and achieving sustained, substantial compliance with the IP requirements related to dental services. (See Torres Dec. for Opp. to MTE at ¶¶6, 7.)

///

5:13-cv-02354-BLF

5

WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]

### B.     Wellpath Complied with the Court's May 29, 2020, Order.

In February 2020, at the start of the COVID crisis, Wellpath began extensive negotiations with Plaintiffs' counsel which resulted in a stipulation to develop CAPS designed to remedy those areas where the monitors determined Wellpath was not in substantial compliance with the IP.  Wellpath also agreed to pay the monitors for "reasonable increased monitoring" that the monitors believed was necessary.  However, the monitors never conducted increased monitoring in 2020, 2021, and most of 2022, because of the obstacles and limitations created by the COVID pandemic.  Wellpath also agreed to extend the Court's jurisdiction over this litigation from August 31, 2021, until August 31, 2022.  (ECF No. 671.)  Based on parties' Stipulation, on May 29, 2020, the Court ordered:

"Defendants will develop, under the direction and guidance of the neutral monitors and with input from Plaintiffs' counsel, corrective action plans to remedy all the areas for which the neutral monitors have found Defendants to be not in substantial compliance." (ECF No. 671 p. 4:23-26.)

"The terms of the Settlement Agreement and Implementation Plans, as well as the Court's jurisdiction over this litigation and over all parties to enforce and administer the Settlement agreement and Implementation Plans are extended for a one-year period, through August 31, 2022." (ECF No. 671 at p. 5:13-16.)

"The parties' dispute whether the final neutral monitor reports should be filed with the Court or otherwise be made public is to be resolved by the mediator, Judge Cousins." (ECF No. 671 at p. 5:23-24.)

Wellpath complied with the Court's May 29, 2020, Order.  It took the parties more time than anticipated to complete the Dental CAP because of significant disagreements between Dr. Winthrop, and all defense counsel regarding proper interpretation of what the IP required.  Nonetheless, after protracted and challenging negotiations, Dr. Winthrop and the parties finally agreed to a Dental CAP without any Court intervention.
///

5:13-cv-02354-BLF

**6**
**WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]**

### C. Wellpath is Complying with the Court's June 3, 2022, Order.

As the COVID crisis worsened and significantly impacted Wellpath's ability to achieve substantial compliance with the IP, Wellpath stipulated to extend the Court's jurisdiction over the SA and IP from August 31, 2022, until August 31, 2025. (ECF NO. 751.)  Wellpath also agreed to pay the monitors for enhanced monitoring and mentoring of clinical staff so they could achieve substantial compliance with the IP.  Wellpath agreed the monitors could conduct these visits up to four times a year and each visit could last a week.  These visits allow the monitors to "mentor and shadow staff, review patient files, provide guidance, and train staff in the requirements of the Implementation Plan."  This enhanced monitoring is in addition to the monitors' ability to conduct two site visits per year, with each visit lasting up to two days.  (ECF NO. 751 pp. 3:14 – 4:6.)  Based on the parties' Stipulation, on June 3, 2022, the Court ordered that:

> The neutral monitors for the compliance areas of mental health, medical, dental, and ADA-programmatic issues shall have the ability to visit the Monterey County Jail ("Jail") on at least a bi-annual basis, with an option to increase the visits that occur up to a maximum of four times per year as decided by each monitor, for a week-long period. The purpose of these visits will be to allow the monitors to mentor and shadow staff, review patient files, provide guidance, and train staff in the requirements of the Implementation Plans.  The visits will not require any written reports. These visits will be in addition to the monitoring inspections already conducted by the monitors pursuant to the Orders of Appointment and the May 29, 2020 Order. (ECF No. 751 pp. 6:23 –7:5.)

Wellpath is complying with the Court's June 3, 2022, Order, and the monitors have started conducting enhanced monitoring and mentoring.  (See, e.g., Natali Dec. for Opp. to MTE at ¶11.)

### D. Medical Monitoring and Mentoring.

On January 25, 2023, Dr. Barnett reported his finding and recommendations based on a review of 29 patients who filed formal grievances and one suicide. (ECF No. 788-1 at pp. 4:27- 5:2, Exhibit 14-1.)  His report assessed the performance of the clinical medical staff who provided care in these cases, and he made recommendations for

5:13-cv-02354-BLF

7

WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]

medical education to promote professional performances in compliance with the Implementation Plan. (ECF NO. 788-1, Exhibit 14-1 Trapani Declaration) Dr. Taranath responded to Dr. Barnett's concerns and developed a CAP requiring remedial education of all staff.

On January 25, 2023, Dr. Barnett proposed the following enhanced monitoring and mentoring schedule: March 6-10, 2023; April 19-21, 2023; June 19-23, 2023; October 17-18, 2023 and December 2023. (Exhibit 6: Proposed 2023 Schedule for MCJ Audits by Bruce Barnett, MD- Enhanced Monitoring.)

On March 6-9, 2023, Dr. Barnett visited MCJ and trained staff regarding how they could perform medical services in order to achieve substantial compliance with the IP. He also considered the timing of future site visits. Dr. Barnett recognized April 2023 was too soon for another audit because he believed Wellpath needed all of April to deploy CAPS developed during his March visit. (ECF NO. 788-1, Exhibit 15 Trapani Declaration). Dr. Barnett is currently scheduled to conduct an onsite audit of MCJ on June 7-8, 2023. (See Natali Dec. for Opp. to MTE at ¶9).

### E. Mental Health Mentoring and Monitoring.

Between May 8-11, 2023, Dr. Vess conducted an audit of the mental health services at MCJ. It was attended by Dr. Kottraba, Dr. Natali, Ms. Torres, Ms. Corfman, Dr. Josephine Shaar, Wellpath's and Dr. Cassandra Newkirk, Wellpath's Chief Psychiatric Officer who flew in from Florida to attend the audit. In addition, Dr. Nicole Taylor attended several sessions of Dr. Vess' audit remotely. (See Natali Dec. for Opp. to MTE at ¶10.)

Wellpath is waiting for a draft of Dr. Vess' report and recommendations. In the meantime, Wellpath has already developed a mental health CAP to implement the recommendations Dr. Vess previously identified, and those identified during his May 8-11 audit. (See Natali Dec. for Opp. to MTE at ¶10.)

///
///

### F. Dental Mentoring and Monitoring.

On December 5-6, 2022, Dr. Winthrop conducted her 9th Dental Audit. The audit focused on dental services provided at MCJ between June 1, 2022, and December 31, 2022. (ECF No. 788-1, Exhibit 47-2 Trapani Declaration). Wellpath is still waiting for the final report of Dr. Winthrop's 9th Dental Audit.

The current dental team at MCJ consists of two dentists: Dr. Gabriel Choi and Dr. David Shampain. Dr. Choi works eight (8) hour shifts on Monday – Wednesday. Dr. Shampain works eight (8) hour shifts on Thursday – Saturday. The dental team also consists of two dental assistants: Claudia Arroyo and Ana Tapia. Ms. Arroyo works 8 hour shifts on Monday – Thursday. Ms. Tapia works eight (8) hour shifts on Thursday – Saturday. Dr. Shampain and Ms. Tapia have been hired as per diem providers to help eliminate the dental backlog at MCJ. (See Natali Dec. for Opp. to MTE at ¶8.)

Ms. Torres works closely with the dental providers and Dr. Winthrop to focus on achieving substantial compliance with the IP requirements regarding dental services. She reports to Dr. Donald Taylor, and they serve together on MCJ's dental subcommittee. Dr. Taylor and Ms. Torres are working with Dr. Winthrop to monitor the effectiveness of the dental CAP and achieve sustained, substantial compliance with the IP. (See Torres Dec. for Opp. to MTE at ¶¶6, 7.)

Between April 10-14, 2023, Dr. Winthrop conducted enhanced monitoring and mentoring at MCJ, pursuant to the Court's June 3, 2023, Order. She was assisted by Paige York, a registered dental assistant. Ms. York mentored Ms. Arroyo and Ms. Torres regarding actions they needed to take in order to achieve substantial compliance with the IP. (See Natali Dec. for Opp. to MTE at ¶11; Torres Dec. for Opp. to MTE at ¶7.)

Dr. Winthrop is currently scheduled to conduct her 10th dental audit and enhanced mentoring at MCJ between June 26-29, 2023. This will be the first time Dr. Winthrop conducts a formal audit of the current dental team at MCJ. (See Natali Dec. for Opp. to MTE at ¶11; Torres Dec. for Opp. to MTE at ¶8.)

///

5:13-cv-02354-BLF

9

WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]

### III.  LEGAL ARGUMENT

#### A.  Plaintiffs' Proposed Order that the Court Find Wellpath is in Sustained Noncompliance with Forty-Four Requirements of the Settlement Agreement and Wellpath Implementation Plan Should be Denied Because it is Based on Antiquated Evidence.

Plaintiffs are asking the Court to issue an Order regarding findings of noncompliance based on antiquated evidence. There is no evidence before the Court that Wellpath is currently in noncompliance with these Forty-Four IP requirements. The most recent audit of Dr. Barnett, which analyzed Wellpath's compliance with the IP requirements regarding medical services, is dated January 25, 2023. (ECF NO. 788-1, Exhibit 13-1 Trapani Declaration). Dr. Barnett's tour of MCJ for this audit occurred on October 13, 2022. This audit does not reflect Wellpath's current compliance with the IP.

The most recent audit of Dr. Vess, which analyzed Wellpath's compliance with the IP requirements regarding mental health services, is based on a tour he conducted on July 21-22. (ECF NO. 788-1, p. 22:19-22, 2023 Trapani Declaration). Dr. Barnett's tour of MCJ for this audit occurred on October 13, 2022. This audit does not reflect Wellpath's current compliance with the IP.

The most recent audit of Dr. Winthrop, which analyzed Wellpath's compliance with the IP requirements regarding dental services, focused on services provided at MCJ between June 1, 2022, and December 31, 2022. (ECF No. 788-1, Exhibit 47-2 Trapani Declaration). Wellpath is still waiting for the final report of Dr. Winthrop's 9th Dental Audit. However, this audit does not analyze the dental services that have been provided since Wellpath increased their dental staffing, nor does it analyze the current dental team. Dr. Winthrop is currently scheduled to conduct her next dental audit on June 26-29, 2023. This will be the first time she conducts a formal audit of the current dental team at MCJ. (See Natali Dec. for Opp. to MTE at ¶11; Torres Dec. for Opp. to MTE at ¶8.)

#### B.  Plaintiffs' Motion to Enforce is Premature.

Wellpath voluntarily stipulated to extend the Court's jurisdiction over the SA and IP until August 31, 2025. (ECF NO. 751.) Since that time, Wellpath has assembled a

5:13-cv-02354-BLF

10

WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]

new team of well qualified supervisory staff at the local and corporate levels who are working with Drs. Barnett, Vess, and Dr. Winthrop to achieve sustained, substantial compliance with the IP before August 31, 2025. Plaintiffs have not given Wellpath a reasonable amount of time to allow the new Wellpath team an opportunity to do their job and implement measures that are necessary to achieve substantial compliance with the IP.

Drs. Barnett, Vess, and Winthrop are proactively working with Wellpath's clinical and supervisory staff, through enhanced monitoring and mentoring, to identify what specifically needs to be done for Wellpath to achieve substantial compliance with the IP. Wellpath voluntarily agreed to this enhanced monitoring and mentoring, and it has been productive and beneficial. (See Torres Dec. for Opp. to MTE at ¶¶6, 7.) Unfortunately, before filing this Motion, Plaintiffs did not give Wellpath's enhanced mentoring and collaborative efforts with the monitors a reasonable amount of time to work.

The County recently approved and funded the hiring of four (4) new mental health providers, and Wellpath has already filled three (3) of these positions. In addition, in order to achieve substantial compliance with the IP requirements regarding dental services, Wellpath has increased dental staffing from the IP staffing requirement of 24 hours per week (ECF No. 532, p. 140) to 104 hours per week. Plaintiffs have not given Wellpath, or the monitors, a reasonable amount of time to analyze how this increased mental health and dental staffing has impacted Wellpath's ability to achieve substantial compliance with the IP.

### III.   CONCLUSION

Since Plaintiffs' Motion to Enforce the Settlement Agreement is premature and supported by antiquated evidence that does not accurately reflect the current status of Wellpath's compliance with the Implementation Plan, and based on the foregoing facts and argument, Wellpath respectfully requests this Court deny Plaintiffs' Motion to Enforce the Settlement Agreement in its entirety.

///

///

5:13-cv-02354-BLF

**11**
**WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]**

|   |   |   |
|---|---|---|
| | | Respectfully submitted, |
| | DATED: May 30, 2023 | BERTLING LAW GROUP |
| | | */s/ Peter G. Bertling* |
| | | Peter G. Bertling |
| | | Jemma Parker Saunders |
| | | Attorneys for Defendant |
| | | CALIFORNIA FORENSIC MEDICAL GROUP |

5:13-cv-02354-BLF

12

**WELLPATH'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]**