Jaqueline Aranda Osorno (308084)
PUBLIC JUSTICE
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
jaosorno@publicjustice.net

*Counsel for Intervenors Monterey County Weekly, First Amendment Coalition, Patricia and Jennifer Ramirez, and Yvette, Xavier, and Janel Pajas*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED., a California corporation; and DOES 1 to 20, inclusive,

Defendants.

Case No. CV 13 2354 BLF

**NOTICE OF MOTION AND MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF UNSEALING COURT RECORDS AND PROTECTING ACCESS TO PUBLIC PROCEEDINGS**

Hearing Date: November 16, 2023
Hearing Time: 9:00 am

Judge: Beth Labson Freeman

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on November 16, 2023, at 9:00 a.m., or as soon thereafter as the matter may be heard, Monterey County Weekly, the First Amendment Coalition, Patricia Ramirez, Jennifer Ramirez, Rafael Ramirez, Yvette Pajas, Xavier Pajas, and Janel Pajas (collectively, "Proposed Intervenors") will and hereby do move pursuant to Federal Rule of Civil Procedure 24(b) for permissive intervention for the limited purpose of unsealing Plaintiffs' Motion to Enforce the Settlement Agreement and Wellpath Implementation Plan ("Motion to Enforce") and related court records (Docs 787, 788, 793, 794, and all attachments).

This motion is based on (1) the accompanying Memorandum of Points and Authorities, (2) the Declarations of Proposed Intervenors and Exhibits filed in support of this Motion, (3) the Notice of Motion and Memorandum of Points and Authorities in Support of Proposed Intervenors' Motion to Unseal Court Records and Protect Access to Public Proceedings ("Motion to Unseal," filed concurrently), and (4) the entire record in this action. By separate motion, Proposed Intervenors will also request that the Court hear their Motions at or before the upcoming August 24, 2023, hearing on Plaintiffs' Motion to Enforce. *See* Doc. 788.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Four people have died while caged at the Monterey County Jail (the "Jail") this calendar year alone. Ex. 1. They join a group of at least twenty-one other people who have died inside the Jail since this case was filed in 2013. *See* Doc. 776 at 9; Doc. 786. Every death at the Jail raises the same question: could this death have been prevented? The fact that the disturbingly long list of names keeps growing raises another: what is happening inside the Jail? The answers to these questions are largely—and unlawfully—hidden from the public. Monterey County Weekly, the First Amendment Coalition, and the families of two people who lost their lives because of the Jail's inability or unwillingness to provide them with necessary care (collectively, "Proposed Intervenors"), seek to put a stop to that secrecy. As discussed further in their Motion to Unseal,

Proposed Intervenors have First Amendment and common law rights of access to court records. Those rights attach to Plaintiffs' Motion to Enforce and the evidence submitted in support thereof. Docs 787, 788, 793, 794, and all attachments (together "the requested records").

In their Motion to Enforce, Plaintiffs allege that the Jail has, for the past eight years, provided systemically inadequate care to incarcerated people, resulting in a death rate that is more than twice the national average and a suicide rate more than three times the average for California jails. Doc. 788 at 9. The public has a compelling interest in accessing the evidence supporting that claim.

**INTERESTS OF MOVANTS**

**Monterey County Weekly** is a community newspaper established in 1988 whose mission is to inspire independent thinking and conscious action. Ex. 2 at ¶ 2. The Weekly, like all professional news agencies in democratically governed nations, relies on access to public records in its daily reporting. *Id.* at ¶ 6. Staff regularly request and review court records which are incorporated into their journalism on a regular basis. *Id.* The Weekly has been covering local government, including operations at the Jail, for more than 34 years. *Id.* at ¶ 7. Because much of the evidence generated by the *Hernandez* settlement has been shielded from the public, the Weekly's coverage of the *Hernandez* litigation and of current conditions at the Jail has been limited. *Id.* at ¶ 11. The Weekly seeks to intervene in this case to ensure it can produce timely and accurate reporting that enables community leaders, government officials and the interested public to make the best decisions about how to care for people incarcerated at the Jail. *Id.* at ¶ 12-13.

**The First Amendment Coalition** ("FAC") is a nonpartisan public interest nonprofit dedicated to protecting and promoting a free press, freedom of expression, and the people's right to know. Ex. 3 at ¶ 4. FAC believes that the broadest range of engaged and informed communities is essential to the health of our democracy, and that the values expressed by the First Amendment provide a blueprint for an inclusive, equitable society and a responsive, accountable government. *Id.* at ¶ 5. Because information relating to incarceration, policing, and civil rights is of significant public concern, FAC has a demonstrated commitment to ensuring law enforcement's exercise of its power is exposed to public scrutiny. *Id.* at ¶ 7. FAC seeks to intervene in this case to protect

the public's right to see what information is before the court so the public can assess for itself the true state of conditions in the Jail and hold elected officials accountable as the public sees fit. *Id.* at ¶¶ 8, 10-11.

**Patricia and Jennifer Ramirez**[1] (together "the Lara family") are adult children of Rafael Ramirez Lara, who died while caged at the Jail on December 22, 2019, over four years after the *Hernandez* settlement agreement was approved. *See* Ex. 4 at ¶ 2; Ex. 5 at ¶ 2. Mr. Lara, who had a documented history of mental illness that the Jail was well aware of, was incarcerated in September 2019. Casey Bastian, *$775,000 Paid for Mentally Ill California Jail Detainee Who Compulsively Drank Water Until He Died*, Prison Legal News (June 15, 2023), https://tinyurl.com/muebsrkz. Despite documentation by Jail staff that he was mentally decompensating over the months during which he was incarcerated, the Jail repeatedly failed to provide him mental health treatment. *Id.* The County coroner determined that Mr. Lara died from psychogenic polydipsia, resulting from untreated schizophrenia—meaning he drowned to death from overconsumption of water. *Id.* On the morning of Mr. Lara's death, a Jail custody officer conducting "welfare checks" repeatedly ignored liquid flooding from Mr. Lara's cell onto the tier floor—making note of the water, then moving on —leaving Mr. Lara was to die alone in a pool of water and bodily fluids. *Id*. The Lara family brought a lawsuit against the County of Monterey and the County's correctional health provider, Wellpath, alleging that the Jail was deliberately indifferent to Mr. Lara's medical and mental health needs and failed to protect him from harm, which settled in 2022 for $2.5 million. Royal Caulkins, *Another Monterey County Jail death claim settled*, Voices of Monterey Bay (Oct. 19, 2022), https://tinyurl.com/3u4z28zc. The Lara family firmly believes that shedding light on the failures of the jail system is crucial to initiating positive change and seeks to intervene to ensure their father did not die in vain. *See* Ex. 4 at ¶ 8; Ex. 5 at ¶ 7, 8.

---

[1] The Lara family previously intervened in this case for the limited purpose of modifying the protective order in order to gain access to their father's records. *See* Doc. 700.

**Yvette, Xavier, and Janel Pajas** (together, "the Pajas family") are adult children of Mark Pajas, Sr., who died while caged at the Jail on January 20, 2015. Ex. 6 at ¶¶ 1-2; Ex. 7 at ¶¶ 1-2; Ex. 8 at ¶¶ 1-2. Although Mr. Pajas reported his daily heroin use and need for detoxification assistance, the Jail did not provide him necessary medical treatment. *Pajas v. Cty. of Monterey*, No. 16-CV-00945-LHK, 2016 WL 3648686 at *2 (N.D. Cal. July 8, 2016). Despite his obvious suffering, Jail custody staff failed to conduct the welfare checks required for his medical condition, leaving him alone to suffer and die an excruciating, preventable death. Joe Szydlowski, *Jury awards $1.6M to family of Monterey County Jail inmate who died*, Californian (Feb. 7, 2019), https://rb.gy/2hiqt. The Pajas family brought a lawsuit against the County of Monterey and California Forensic Medical Group (now Wellpath) alleging violations of, among others, Mr. Pajas's constitutional right to receive adequate medical care. *Pajas v. Cty. of Monterey*, 2016 WL 3648686 at *3. On February 7, 2019, a jury ruled in favor of the Pajas family, awarding them $1.6 million after finding that the County failed to provide Mr. Pajas with necessary medical treatment. Szydlowski, *supra*. The Pajas family seeks to intervene to ensure the County is held accountable for making changes at the Jail that could prevent more people from dying. Ex. 6 at ¶ 6; Ex. 7 at ¶ 5; Ex. 8 at ¶ 5.

## ARGUMENT

Proposed Intervenors seek access to Plaintiffs' heavily-redacted Motion to Enforce, which likely "enumerates each of the specific healthcare requirements for which the neutral monitors have found that Wellpath is non-compliant and sanctions are sought; summarizes seven years of neutral monitor reports covering wide-ranging aspects of medical, mental health and dental care at the Jail; and includes summaries of medical records, custody files, and findings from the Court-appointed neutral monitors regarding multiple recently deceased members of the Plaintiffs' class." Doc. 773. Proposed Intervenors also seek access to the evidence submitted in support of that Motion, which is largely sealed, and related briefing. The Court should permit Proposed Intervenors to intervene in this action for the limited purpose of asserting their First Amendment and common law rights of access to these records.

"Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b)(2)." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999); *see* Fed. R. Civ. P. 24. Ordinarily, a court may grant permissive intervention if the movant presents "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). Consistent with the requirements of Rule 24(b), the court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Because Proposed Intervenors seek to intervene only for the limited purpose of unsealing court records, they need not "demonstrate independent jurisdiction or a common question of law or fact," only that their motion is timely. *Cosgrove v. Nat'l Fire & Marine Ins. Co.*, 770 F. App'x 793, 795 (9th Cir. 2019) (citing *Beckman*, 966 F.2d at 473); *see Greer v. Cty. of San Diego*, No. 19CV378-JO-DEB, 2023 WL 4479234, at *3 (S.D. Cal. July 10, 2023) ("a party who seeks to intervene solely to unseal filed documents only needs to show timeliness"). In determining whether the motion is timely, a court must consider "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *San Jose Mercury News*, 187 F.3d at 1101.

None of these factors indicate that Proposed Intervenors' Motion to Intervene is untimely. Proposed Intervenors took reasonably prompt action and filed their Motions less than three months after Plaintiffs filed their initial Motion. *See id.* (citing cases to demonstrate that "delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records"). Furthermore, because the degree of secrecy involved in these proceedings may infringe on the press and public's presumptive right of access to the upcoming August 24, 2023, hearing, Proposed Intervenors' Motions to Intervene and Unseal are well-timed. *See* Ex. 2 at ¶ 12; *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983) (holding that "civil trials [and enforcement proceedings] which pertain to the release or incarceration of prisoners and the conditions of their confinement are presumptively open to the press and public"). Granting this

Motion to Intervene would not prejudice the parties. But even if it did, once an intervenor asserts "a legitimate, presumptive right to open the court record . . . , the potential burden or inequity to the parties should affect not the right to intervene but, rather, the court's evaluation of the merits of the applicant's motion." *San Jose Mercury News*, 187 F.3d at 1101 (quoting *Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 787 (1st Cir. 1988)).

Finally, allowing Proposed Intervenors to intervene will not unduly delay or prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b)(3). As explained in Proposed Intervenors' Motion to Unseal, Defendants have an existing burden to establish that there are compelling reasons for keeping these court records sealed. "The mere fact that Defendants will need to explain why the relevant records should remain sealed is not, itself, unduly prejudicial." *Muhaymin v. City of Phoenix*, No. CV-17-04565-PHX-DLR, 2021 WL 5173767, at *1 (D. Ariz. Nov. 3, 2021). Further, because the parties in this case have already completed briefing on whether certain court records (the neutral monitor reports) should be maintained under seal, any burden on the parties in presenting relevant argument and evidence on the issues raised by Proposed Intervenors' Motions will be minimal. *See* Docs. 776, 782, 786.

**CONCLUSION**

Because Proposed Intervenors satisfy the requirements for permissive intervention under Rule 24(b), the Court should grant their Motion and allow them to assert their First Amendment and common law rights of access to court records.

Dated: July 20, 2023

Submitted,

/s/ Jaqueline Aranda Osorno
*Counsel for Proposed Intervenors*

Jaqueline Aranda Osorno (308084)
PUBLIC JUSTICE
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
jaosorno@publicjustice.net