LESLIE J. GIRARD, SBN 098986
County Counsel
SUSAN K. BLITCH, SBN 187761
Chief Assistant County Counsel
ELLEN S. LYONS, SBN 136011
Deputy County Counsel
County of Monterey
168 West Alisal Street, Third Floor
Salinas, California 93901-2653
Telephone: (831) 755-5045
Facsimile: (831) 755-5283
Email: blitchsk@co.monterey.ca.us
       lyonse@co.monterey.ca.us

Attorneys for Defendants COUNTY OF MONTEREY
and MONTEREY COUNTY SHERIFF'S OFFICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Jose Division

| | |
|---|---|
| JESSE HERNANDEZ, et al., on behalf of themselves and all others similarly situated,<br><br>                                        Plaintiffs,<br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive,<br><br>                                        Defendants. | Case No. 5:13-cv-02354 BLF<br><br>**SUPPLEMENTAL DECLARATION OF SUSAN K. BLITCH IN SUPPORT OF DEFENDANTS COUNTY OF MONTEREY AND MONTEREY COUNTY SHERIFF'S OFFICE REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT CALIFORNIA FORENSIC MEDICAL GROUP'S MOTION FOR STAY**<br><br>Judge: Hon. Beth Labson Freeman |

I, SUSAN K. BLITCH, do hereby declare and affirm as follows:

1. The matters within this declaration are based upon my own personal knowledge and I can competently testify to these matters if I were called upon to do so.

2. I am a Chief Assistant County Counsel for the County of Monterey and am admitted to practice before the United States District Court, Northern District of California and

1

1  the Ninth Circuit Court of Appeals.  I am the attorney of record in the above-captioned action for
2  Defendants County of Monterey and Monterey County Sheriff's Office.
3        3.    Subsequent to the filing of my original declaration in support of our Reply, Mr.
4  Swearingen emailed me vehemently denying he agreed to keep the monitor reports confidential.
5  In the interest of full disclosure to the Court, I attach as Exhibit A the email exchange that
6  occurred this morning between myself and Mr. Swearingen.  Mr. Swearingen points to a joint
7  status conference statement acknowledging there is a dispute whether the final monitor reports
8  should be filed with the Court.  I agree that there is a dispute among the parties.  My position
9  remains, that Mr. Swearingen agreed to keep them confidential and then later denied the
10 agreement.

12 I declare under penalty of perjury under the laws of the State of California and the United
13 States that the foregoing is true and correct.  Executed this 28 day of July, 2023, at Salinas,
14 California.

                                    */s/ Susan K. Blitch*
                                    SUSAN K. BLITCH

2

*Hernandez, et al. v. County of Monterey, et al.*                                    Case No.  13-cv-02354 BLF
Supplemental Declaration of Susan K. Blitch ISO County's Reply to Plaintiffs' Opposition to CFMG's Motion for Stay

# Exhibit A

## Blitch, Susan K.

| | |
|---|---|
| **From:** | Van Swearingen <VSwearingen@rbgg.com> |
| **Sent:** | Friday, July 28, 2023 10:42 AM |
| **To:** | Blitch, Susan K. |
| **Cc:** | Peter Bertling; Monterey County Jail Team; Lyons, Ellen; Holmes, Janet L.; Zarco, Cassandra; Brito, Angelica |
| **Subject:** | RE: Hernandez litigation - request to correct false statements in public filings [IMAN-DMS.FID40388] |
| **Attachments:** | [Dkt 0671] Joint Status Report and Order re CAPs, Increased Monitoring, Ext of Time, 05-29-20, 1187-10.pdf; CET-Blitch and Bertling, Re 06-26-20 Mediation, 06-23-2020, 1187-10.pdf; FW: RE: Covid positive inmate [IWOV-DMS.FID51875] |

[CAUTION: This email originated from outside of the County. Do not click links or open attachments unless you recognize the sender and know the content is safe.]

Susan,

You are incorrect.

There was no such agreement at the May 20-21, 2020 summit. Indeed, a week after the summit, the parties filed a stipulation in which you agreed to the following language: "The parties have a dispute whether the final neutral monitor reports should be filed with the Court or otherwise be made public, and the parties request the assistance of the mediator, Judge Cousins, to resolve the dispute." Judge Freeman entered the stipulated order the same day, which is attached. Also attached is a letter from our office to you dated June 26, 2020—over a month after the summit and three days before the status conference with Judge Cousins which was specifically calendared to discuss our dispute about the monitor reports—in which our office argues why the reports should be made public. These documents categorically refute your assertion about some "off the record" agreement at the May 20-21, 2020 summit.

My email July 10, 2020 email (reattached here) is not about Mr. Brady's covid report. Rather, it documents the meet and confer that you and I had that day regarding the confidentiality of all of the monitor reports in advance of the July 17, 2020 deadline that Judge Cousins had set for the parties to submit briefs on whether the reports should be publicly filed as a matter of course. That is why my July 10 email references "the monitors' position on public filing" and "our right to file the reports at a later time" and that we can notify the "monitors" of the outcome of our discussion.

Regarding the security claims you note below about the monitor reports, you have identified nothing that the County itself already placed in the public record. *See, e.g.*, County IP at ECF 8 ("A safety check for inmates in safety and sobering cells, consisting of direct visual observation that is sufficient to assess the inmate's well-being and behavior, shall occur twice every 30 minutes."); id at ECF 15 ("Custody staff believes the best practice for welfare checks within the Administrative Segregation units would be to continue the hourly checks supplemented with random additional checks which when added together should achieve the every 30 minutes goal."). Despite the fact that the County itself submitted this information in its own IP, you informed the Court yesterday that: "The publication of this information might make it easier for an inmate to do harm to oneself or others."). Dkt. 815. Again, this is representation is highly misleading to the Court.

I reiterate my request that you inform the Court immediately that the above representations are false. The Court directed defendants to file any reply motion in response to their stay motion by noon today. Dkt. 813. Plaintiffs will be prejudiced if your correction is not made by noon or the time by which Wellpath files a reply brief in support of defendants' stay motion (if it does so), whichever occurs earlier.

Van

1

**From:** Blitch, Susan K. <BlitchSK@co.monterey.ca.us>
**Sent:** Friday, July 28, 2023 9:52 AM
**To:** Van Swearingen <VSwearingen@rbgg.com>
**Cc:** Peter Bertling <peter@bertlinglawgroup.com>; Monterey County Jail Team <MontereyCountyJailTeam@rbgg.com>; Lyons, Ellen <LYONSE@co.monterey.ca.us>; Holmes, Janet L. <HolmesJL@co.monterey.ca.us>; Zarco, Cassandra <ZarcoC@co.monterey.ca.us>; Brito, Angelica <BritoA@co.monterey.ca.us>
**Subject:** RE: Hernandez litigation - request to correct false statements in public filings [IMAN-DMS.FID40388]

[EXTERNAL MESSAGE NOTICE]

Van,

I stand by my statement. You agreed to keep the reports confidential. The discussion at the Summit was one that took place off the record like many other conversations during those two days. I confirmed with two people in my office that we had reached this agreement. No one is disputing your right to submit the monitor reports under seal to the Court. But, in my opinion, you violated the agreement we had in asking for them to be publicly filed.

The email you attached is from a conversation regarding publishing Mike Brady's report on Covid due to your insistence that the "public" was afraid and had a right to know the measures we were taking to help prevent the spread of Covid in the jail. Mike Brady's executive summary is the one report publicly filed because ultimately the County did believe there was much panic in the community.

For the Monitor Reports, I am surprised you are not aware of this because they are implementation plan requirements:

July 21-22, 2022 Mental Health Monitor Report

p. 11: "A safety check for inmates in safety and sobering cells, consisting of direct visual observation that is sufficient to assess the inmate's well-being and behavior, shall occur twice every 30 minutes."

p. 31 for Administrative Segregation: "Welfare checks will consist of direct visual observation that is sufficient to assess the inmate's well-being and behavior. Custody staff will conduct hourly checks supplemented with random additional checks which when added together should achieve the every 30 minute goal."

May 18-19, 2021 Mental Health Monitor Report

p. 13 "A safety check for inmates in safety and sobering cells, consisting of direct visual observation that is sufficient to assess the inmate's well-being and behavior, shall occur twice every 30 minutes."

p. 34 "Welfare checks will consist of direct visual observation that is sufficient to assess the inmate's well-being and behavior, Custody staff will conduct hourly checks supplemented with random additional checks which when added together should achieve the every 30 minute goal.
• Deputies shall continue to conduct hourly welfare checks, but will add an additional three checks per shift at random intervals, during the day and night shifts and an additional six checks per shift at random intervals during the midnight shift. Welfare checks shall include a visual observation of each inmate in the unit with verbal interaction if necessary."

**From:** Van Swearingen <VSwearingen@rbgg.com>
**Sent:** Thursday, July 27, 2023 4:59 PM
**To:** Blitch, Susan K. <BlitchSK@co.monterey.ca.us>
**Cc:** Peter Bertling <peter@bertlinglawgroup.com>; Monterey County Jail Team <MontereyCountyJailTeam@rbgg.com>
**Subject:** Hernandez litigation - request to correct false statements in public filings [IMAN-DMS.FID40388]

2

[CAUTION: This email originated from outside of the County. Do not click links or open attachments unless you recognize the sender and know the content is safe. ]

Susan,

I am very disappointed to see the false statements that you made about me today in Dkts. 815 and 815-1. Specifically, the following statements are false:

- [Dkt. 815] First, Defense counsel points out that Plaintiffs' counsel, Van Swearingen, orally agreed that the monitors' reports would remain confidential and would not be filed with the Court. This occurred during a meeting with Plaintiffs' counsel and Defense counsel via zoom May 20-21, 2020.
- [Dkt. 815-1] At a "summit" or meeting between Plaintiffs' counsel, Defense counsel, and the appointed monitors at the time, May 20-21, 2020, the parties, including, Plaintiffs' counsel Van Swearingen agreed to keep the monitor reports confidential.
- [Dkt. 851] when Defense counsel confronted Mr. Swearingen with the agreement, Mr. Swearingen denied the agreement and equivocated.
- [Dkt. 815-1] I have since spoken to Mr. Swearingen and he has denied the agreement, essentially equivocating when asked point blank about the agreement.

Rule 3.3 of the Rules of Professional Conduct provides that a lawyer shall not offer evidence that the lawyer knows to be false nor knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. FRCP Rule 11 requires that the factual contentions in representations to the court have evidentiary support.

The transcript for the May 20-21, 2020 "summit" is attached. It contains no such agreement.

In connection with the parties' dispute in 2020 concerning whether RBGG would publicly file monitor reports as they were issued (as opposed to filing in connection with a dispositive motion), I specifically informed you by email on July 10, 2020 at 11:02 a.m. that Plaintiffs would not waive their right to file the monitor reports at a later time. The email is attached. Notably, the concern we discussed about public filing at that time—the potential for chilling communication with the neutral monitors—has been considered and rejected by the Court as a basis for sealing the monitor reports. See Dkt. 802 at 5 ("the Court finds that filing of the neutral monitor reports on the public docket will not impair the free flow of information necessary for the neutral monitors to fulfil their responsibilities.").

Finally, the County's representation to the Court in Dkt. 815 at 3 that "the monitor reports disclose to inmates when welfare checks are done" is highly misleading. Please identify with specificity which monitor report(s) and page numbers thereof identify when, precisely, safety checks are conducted such that incarcerated persons would know the time of future checks and risk harming themselves or others. If no such report exists, you should so notify the court.

I request that you inform the Court immediately that the above representations are false. The Court directed defendants to file any reply motion in response to their stay motion by noon tomorrow. Dkt. 813. Plaintiffs will be prejudiced if your correction is not made by noon tomorrow or the time by which Wellpath files a reply brief in support of defendants' stay motion (if it does so), whichever occurs earlier.

Van

Van Swearingen
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, CA 94105
(415) 433-6830
VSwearingen@rbgg.com

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com.

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
VAN SWEARINGEN – 259809
CARA E. TRAPANI – 313411
CAROLINE E. JACKSON – 329980
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830
Facsimile:    (415) 433-7104
Email: mbien@rbgg.com
        egalvan@rbgg.com
        vswearingen@rbgg.com
        ctrapani@rbgg.com
        cjackson@rbgg.com

ERIC BALABAN (admitted *pro hac vice*)
NATIONAL PRISON PROJECT of the
AMERICAN CIVIL LIBERTIES UNION
915 15th Street N.W., 7th Floor
Washington, D.C. 20005-2302
Telephone:   (202) 393-4930
Facsimile:    (202) 393-4931
Email:        ebalaban@aclu.org

KATHLEEN GUNERATNE – 250751
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111-4805
Telephone:   (415) 621-2493
Facsimile:    (415) 255-8437
Email:        kguneratne@aclunc.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. CV 13 2354 BLF <br><br> **JOINT STATUS REPORT AND [PROPOSED] ORDER** <br><br> Judge: Hon. Beth Labson Freeman <br> Crtrm.: 3, 5th Floor, San Jose |

## JOINT STATUS REPORT

The parties offer this joint status report to update the Court on recent developments in this case, and respectfully request that the Court adopt the parties' agreements as set forth below.

Approximately five years ago, Defendants California Forensic Medical Group, Inc., or "CFMG", the County of Monterey, the Monterey County Sheriff's Office (collectively "Defendants") and Plaintiffs—the class of all persons held at the Monterey County Jail ("Jail"), and a subclass of persons with disabilities—entered into, and the Court approved, a Settlement Agreement to improve the provision of medical, mental health, and dental care, safety, and disability access at the Jail. *See* Dkt. 494, Ex. A.[1] Pursuant to the Settlement Agreement, the parties developed Implementation Plans with detailed requirements in these five subject matter areas. *See* Dkt. 532, Ex. A (CFMG's Implementation Plan); Dkt. 528-1, Ex. A (County's Implementation Plan). On May 27, 2016, the Court approved in-part Defendants' Implementation Plans and resolved all other disputes concerning the Plans. *See* Dkt. 549. The Court also granted Defendants a 90-day extension, through August 2016, to meet the deadlines in the Plans. *Id.* at 3.

Since August 2016, the Court-appointed neutral monitors for the five subject matter areas have assessed Defendants' substantial compliance with the Implementation Plans and Settlement Agreement. *See* Dkts. 494 & 658 (Orders Appointing Neutral Monitors and Orders of Reference). On February 6, 2020, pursuant to the findings in the monitors' periodic reports and the dispute resolution process outlined in Paragraph 48 of the Settlement Agreement, *see* Dkt. 494 at 25-26, Plaintiffs' counsel submitted a letter to Defendants' counsel identifying requirements under the Implementation Plans and Settlement Agreement for which Plaintiffs' counsel assert the monitors have found

---

[1] All references to page numbers in documents filed in the Court's Electronic Case Filing (ECF system) are to the page number assigned by the ECF system and located in the upper right hand corner of the page.

1  Defendants to be not in substantial compliance.

2        Since February 2020, the parties have met and conferred several times regarding
3  their dispute over Defendants' substantial compliance, including during a two-day all-
4  parties summit that took place on May 20 and 21, 2020, and included all five monitors.
5  The parties recognize that the following agreement is contingent upon the Monterey
6  County Board of Supervisors' approval. Pursuant to these extensive negotiations, the
7  parties now stipulate and agree, contingent upon County Board approval, to the following:

8        1.    The parties agree to a process whereby Defendants will develop, under the
9  direction and guidance of the neutral monitors and with input from Plaintiffs' counsel,
10 corrective action plans to remedy all the areas for which the neutral monitors have found
11 Defendants to be not in substantial compliance. Each corrective action plan will include
12 an estimated date by which the plan will be completed. Defendants will work with the
13 monitors to develop initial drafts of the corrective action plans and provide Plaintiffs with
14 draft corrective action plans within 30 days of this filing. Plaintiffs will review and
15 comment within 30 days of receipt of the corrective action plans. The parties will then
16 meet and confer under the direction and guidance of the neutral monitors to revise the
17 corrective action plans as necessary. Once finalized, the neutral monitors shall approve the
18 corrective action plans. Defendants will implement the neutral monitor-approved
19 corrective action plans no later than 90 days from the date of this filing, or 30 days from
20 the date the monitor approves the plan, whichever is later.

21       2.    The parties agree to provide for reasonable increased monitoring of the terms
22 of the Settlement Agreement and Implementation Plans by the neutral monitors, if
23 necessary. The parties agree to meet and confer in good faith to discuss how increased
24 monitoring may be accomplished, including an additional monitoring tour (either onsite,
25 virtual or by paper audit) and report per year for each monitor, if necessary. Defendants
26 agree to bear the additional costs of increased monitoring pursuant to agreements
27 Defendants make with the neutral monitors.

28       3.    The parties agree the terms of the Settlement Agreement and Implementation

1  Plans, as well as the Court's jurisdiction over this litigation and over all parties to enforce
2  and administer the Settlement Agreement and Implementation Plans, currently last through
3  August 31, 2021. The parties further agree to additional time for monitoring of substantial
4  compliance with the requirements set forth in the Implementation Plans and Settlement
5  Agreement. The parties therefore request that the Court extend the terms of the Settlement
6  Agreement and Implementation Plans, as well as its jurisdiction over this litigation and
7  over all parties to enforce and administer the Settlement Agreement and Implementation
8  Plans, for an additional one-year period through August 31, 2022.

9      4.    The parties agree that Defendants will make available to Plaintiffs' counsel
10 the death reviews of in-custody deaths at Monterey County Jail for those inmates who have
11 died since Settlement. Defendants will provide Plaintiffs' counsel non-downloadable
12 access to the death reviews within 30 days of this filing. For all future in-custody deaths,
13 should any occur, Defendants will provide Plaintiffs' counsel non-downloadable access to
14 the death reviews within 30 days from the date the review is completed. The parties agree
15 that the death reviews are Confidential Information, as that term is defined by the
16 protective order in this matter (Dkt. 401).

17     5.    The parties have a dispute whether the final neutral monitor reports should
18 be filed with the Court or otherwise be made public, and the parties request the assistance
19 of the mediator, Judge Cousins, to resolve the dispute.

20     IT IS SO STIPULATED.

21                               Respectfully submitted,

22 DATED: May 29, 2020           ROSEN BIEN GALVAN & GRUNFELD LLP

23
                              By: /s/ Van Swearingen
24                                   Van Swearingen

25                               Attorneys for Plaintiffs
26
27
28

[3551993.1]

| | | |
|---|---|---|
| 1 | DATED: May 29, 2020 | OFFICE OF THE COUNTY COUNSEL<br>COUNTY OF MONTEREY |
| | | By: /s/ Susan K. Blitch<br>Susan K. Blitch<br>Assistant County Counsel |
| | | Attorneys for Defendants<br>COUNTY OF MONTEREY and<br>MONTEREY COUNTY SHERIFF'S OFFICE |
| 8 | DATED: May 29, 2020 | BERTLING LAW GROUP |
| | | By: /s/ Peter G. Bertling<br>Peter G. Bertling |
| | | Attorneys for Defendant CFMG |

Pursuant to General Order 45(X)(B), I hereby attest that I have on file approvals for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

DATED: May 29, 2020          ROSEN BIEN GALVAN & GRUNFELD LLP

By: /s/ Van Swearingen
Van Swearingen

Attorneys for Plaintiffs

### [PROPOSED] ORDER

Having reviewed the foregoing stipulation of the parties, and good cause appearing, the Court hereby accepts the parties' stipulation. THE COURT ORDERS THAT:

Upon approval by Defendants' respective Boards, Defendants will develop, under the direction and guidance of the neutral monitors and with input from Plaintiffs' counsel, corrective action plans to remedy all the areas for which the neutral monitors have found Defendants to be not in substantial compliance. Each corrective action plan will include an estimated date by which the plan will be completed. Defendants shall work with the neutral monitors to develop initial drafts of the corrective action plans and provide

Plaintiffs with draft corrective action plans within 30 days of the date of the parties' stipulation. Plaintiffs shall review and comment within 30 days of receipt of the corrective action plans. The parties shall thereafter meet and confer under the direction and guidance of the neutral monitors to revise the corrective action plans as necessary, and the neutral monitors shall approve the corrective action plans. Defendants shall implement the neutral monitor-approved corrective action plans no later than 90 days from the date of this filing, or 30 days from the date the monitor approves the plan, whichever is later.

The parties shall meet and confer in good faith to discuss how increased monitoring may be accomplished, including an additional monitoring tour (either onsite, virtual or paper audit) and report per year for each monitor, if necessary. Defendants shall bear the additional costs of increased monitoring pursuant to agreements Defendants make with the neutral monitors.

The terms of the Settlement Agreement and Implementation Plans, as well as the Court's jurisdiction over this litigation and over all parties to enforce and administer the Settlement Agreement and Implementation Plans are extended for a one-year period, through August 31, 2022.

Defendants will provide Plaintiffs' counsel non-downloadable access to the death reviews of post-Settlement in-custody deaths within 30 days of this filing. For all future in-custody deaths, should any occur, Defendants will provide Plaintiffs' counsel non-downloadable access to the death reviews within 30 days from the date the review is completed. The death reviews are Confidential Information, as that term is defined by the protective order in this matter (Dkt. 401).

The parties' dispute whether the final neutral monitor reports should be filed with the Court or otherwise be made public is to be resolved by the mediator, Judge Cousins.

IT IS SO ORDERED.

DATED: May 29, 2020

_Beth Labson Freeman_
Honorable Beth Labson Freeman
United States District Judge