MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
VAN SWEARINGEN – 259809
CARA E. TRAPANI – 313411
CAROLINE E. JACKSON – 329980
BEN HATTEM – 335232
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: mbien@rbgg.com
egalvan@rbgg.com
vswearingen@rbgg.com
ctrapani@rbgg.com
cjackson@rbgg.com
bhattem@rbgg.com

AVRAM D. FREY
(*admitted pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: afrey@aclunc.org

ERIC BALABAN (*admitted pro hac vice*)
NATIONAL PRISON PROJECT of the
AMERICAN CIVIL LIBERTIES UNION
915 15th Street N.W., 7th Floor
Washington, D.C. 20005-2302
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
Email: ebalaban@aclu.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; WELLPATH, INC., a California corporation; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. CV 13 2354 BLF<br><br>**DECLARATION OF ERICK STEWART**<br><br>Judge: Hon. Beth Labson Freeman<br>Date: August 24, 2023<br>Time: 9:00 a.m.<br>Crtrm.: 3 |

I, Erick Stewart, declare:

1. I have personal knowledge of the matters set forth in this declaration, and if

[4271261.3]                                                                               Case No. CV 13 2354 BLF
DECLARATION OF ERICK STEWART

called as a witness, I could and would competently so testify. I make this declaration in support of Plaintiffs' Notice of Motion and Motion to Enforce Settlement Agreement and Implementation Plan.

2.  I am currently incarcerated at the Monterey County Jail ("the Jail"). My current booking number is FN2301004. I was booked into the Jail on February 8, 2023. I was previously housed at the Jail between August and November 2022. I recently was sentenced to a prison term and I will soon be transported to a CDCR institution.

3.  Since February 2023, I have been housed in Z-Pod. After arriving to Z-Pod, I met James Hall and we soon became friends. Mr. Hall was already at the Jail when I arrived in Z-Pod. He was housed in cell Z-108, and my cell is Z-102. Both of our cells are on the bottom tier. The angle of my cell and the large windows in the door allowed me to have a clear view into Mr. Hall's cell. We would talk to each other almost every day. We also would do Bible study together.

4.  When we talked, Mr. Hall would often tell me about his health problems. I learned from Mr. Hall that he was brought to the Jail from out of state, but his CPAP machine did not transfer with him. Mr. Hall told me he submitted a grievance asking for a CPAP machine. At first, the Jail staff did not respond. Weeks later, I heard medical staff tell Mr. Hall that he needed to have someone bring his CPAP machine to the Jail for him. I heard Mr. Hall explain that he can't have a family member bring it because the machine was out of state. I heard the medical staff person respond by telling Mr. Hall that they do not provide CPAP machines to people at the Jail.

5.  Mr. Hall told me he was having trouble breathing at night because he didn't have his CPAP machine. When we talked in the housing unit, he told me multiple times that he wakes up in the middle of the night gasping for air. When I learned this, I called Rosen Bien Galvan & Grunfeld LLP ("RBGG") near the end of March 2023 and asked them for help. At their suggestion, I encouraged Mr. Hall to contact them directly and he

did. I am informed and believe that an attorney at RBGG advocated for Mr. Hall to receive a CPAP machine after he spoke with them. But the Jail never provided him one.

6. On the morning of Friday, April 7, 2023, I came out of my cell in the morning for my socialization time. Mr. Hall was still in his cell, but I talked to him through his cell door. Mr. Hall told me that he woke up the night before gasping for air as if he were suffocating and that he felt that he almost died. He told me he still had not gotten a CPAP machine, and that was why he was having trouble breathing at night. Mr. Hall told me that his time to get let out to dayroom that day was at 5 PM, and he would not have access to a phone until then. He told me he was worried he wouldn't be able to call RBGG's office before it closed. He asked that I call RBGG and tell them he had not received his CPAP machine yet and that he was still having problems breathing at night.

7. Right after that, I called RBGG and told a paralegal what was going on. Afterwards, I told Mr. Hall to call RBGG when he got released to dayroom and to leave a voicemail if necessary. He told me he would. After that, I went back to my cell when my socialization time ended.

8. Later that same day in the afternoon, the top tier was out for dayroom. I was in my cell at the time. All of a sudden, I heard people yelling, "man down" because they saw that Mr. Hall had collapsed on the floor in his cell. Someone goes "man down" when they are in need of emergency medical attention. I later learned that Mr. Hall's cellmate was in the top bunk sleeping at the time.

9. There are emergency buttons in each person's cell in Z-Pod, and when you press the button, a speaker will ask "what is your medical emergency?" But then even if you state you are in need of emergency medical attention, only custody staff respond. After custody staff arrive, only then do they decide if they need to call medical staff.

10. This is what happened on the afternoon of April 7 after people began calling "man down" for Mr. Hall. I soon saw deputies arrive to the unit and open Mr. Hall's cell door and pull him out of his cell into the dayroom. I could see a deputy start chest

1 compressions on Mr. Hall. When they first pushed on his chest, it looked like the entire contents of Mr. Hall's stomach came out of his mouth. But Mr. Hall was otherwise not responsive.

11. I saw deputies performing chest compressions until the nurses came several minutes later and hooked Mr. Hall up to a machine that seemed to analyze his heart. During this time, I heard the machine periodically saying something like, "Step back. Don't touch. Analyzing heart. Resume heart compressions." Whenever the machine stopped making noise, the deputies resumed the chest compressions. This cycle went on until paramedics arrived and took over. The paramedics worked on Mr. Hall for another approximately 15-20 minutes, and they were still working on him when they placed him on a stretcher and carried him out of the unit.

12. Even though I observed the incident from inside my cell, I could see the dayroom clearly. I did not see Mr. Hall breathe or make any voluntary movements, even after medical staff came. From what I could see, I believe Mr. Hall had died or was unconscious by the time staff responded.

13. Later that day, two officers came to the unit and spoke to some of the people on the top tier who were in the dayroom when the incident happened. They also talked to Mr. Hall's cellmate, and I saw them escort the cellmate out of the unit.

14. I later got confirmation that Mr. Hall had died because he never came back to the unit and staff took all of his belongings out of his cell.

15. Witnessing Mr. Hall's death has caused me significant distress and mental anguish. Since that day, I have even experienced physical pain in the form of a headache and stomach ache when I think about Mr. Hall. I feel angry and also helpless because Mr. Hall needed medical attention and was asking staff for help, but they never gave him his CPAP machine. The medical and mental health treatment that I and others have experienced at this Jail is absolutely atrocious.

16. Since Mr. Hall's death, I have heard some people insinuate that Mr. Hall died from an overdose. But if medical staff suspected Mr. Hall had overdosed, they should have administered Narcan. I never saw any staff member administer Narcan to Mr. Hall when they were responding to the incident. I also never heard Mr. Hall mention anything about having access to drugs. When I spoke to him on the morning of his death, he did not appear to be under the influence of any drug. It is my belief that Mr. Hall's health deteriorated because he did not have his CPAP machine for months on end. The medical staff at the Jail knew he needed a CPAP machine, but they never provided one.

17. I have also received inadequate medical care at the Jail. When I came to the Jail the first time in August 2022, the medical staff changed my medication and I had to go to the hospital to deal with the side effects. The medical staff at the Jail has also tried to change my mental health and heart medications, and initially prescribed different ones than the ones I have been taking for years, which did not work as well. There was no need for the Jail to change my medication that has been working well for me for years. It was very stressful not being able to have my regular medications continued.

18. The Jail staff also took away my orthopedic wrist braces, which I still have not received back. They took my walker for a day and a half when I was first booked.

19. I require incontinence supplies, but it took the Jail approximately 10 days to provide me with adult diapers when I first arrived. Initially they provided me with some hazard bags, but they no longer provide those. Staff have never provided me with wipes.

20. At first I tried to advocate for myself to get my incontinence supplies, but the staff just ignored me so I was discouraged from raising it again. In my experience, the staff at this Jail are very callous and cavalier about people's medical concerns. I often hear staff tell me and other people that if we have a situation, we should put it on the tablet. It feels like we are just an app to them, not real people. Nursing staff never have the paper grievance forms for people to use when they do not know how to use the tablets.

21. Luckily, I had brought some adult diapers with me to the Jail, so I had some I could use after I was booked. But since the Jail refused to provide hazard bags, I have been forced to save the brown paper bags from my meals and place my soiled diapers in the bag and keep them in my cell until the end of each day when a staff member comes to collect it. This is dehumanizing treatment that no one should have to endure.

22. A few weeks ago, the Jail again stopped giving me my diapers. When I asked why, a nurse told me the order had expired and the doctor decided I didn't need them anymore. This is ridiculous, as I have a chronic condition that I will have for my whole life. After several days of having to use the remaining extra diapers I had brought with me to the Jail when I was first booked, a nurse who knew me gave me the diapers and the hazard bag I requested. Since then, I have been getting diapers but not the bags.

23. On or around Monday, April 10, 2023, there was no morning medication pass in Z-Pod. We were told that it was due to nursing staff shortages. I have to take my heart medication every morning, but it was not provided to me that day. When I asked to get my heart medication at the noon med pass, the nurse told me she could not provide it because it was a different time. I therefore missed my dose completely, and was forced to wait until the following day to receive my heart medication. Similar things have happened to me before. For example, if a nurse forgets to pack someone's medications, they do not go back to the pharmacy to get it, they just skip the medication that day. This has happened to me more than once at the Jail. This is distressing and totally inappropriate.

24. I believe that without radical improvements to the Jail's medical and mental health care, more people will suffer like I have. I am very concerned that more people like Mr. Hall might die. I believe other people who clearly need medical and mental health attention are unable or too scared to advocate for themselves. Because of this, more people will get hurt unless something changes.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge, and that this declaration is

1  executed at Salinas, California this \_14\_ day of April, 2023.

*[Signature: Erick Laton Stewart SR]*
Erick Stewart

ERICK LATON STEWART. SR
E. L. S. SR