MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
VAN SWEARINGEN – 259809
CARA E. TRAPANI – 313411
CAROLINE E. JACKSON – 329980
BEN HATTEM – 335232
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: mbien@rbgg.com
egalvan@rbgg.com
vswearingen@rbgg.com
ctrapani@rbgg.com
cjackson@rbgg.com
bhattem@rbgg.com

CORENE KENDRICK – 226642
KYLE VIRGIEN – 278747
NATIONAL PRISON PROJECT of the
AMERICAN CIVIL LIBERTIES UNION
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
Email: ckendrick@aclu.org
kvirgien@aclu.org

AVRAM D. FREY
(*admitted pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: afrey@aclunc.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED., a California corporation; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 5:13-cv-02354-BLF<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND WELLPATH IMPLEMENTATION PLAN [ECF NO. 788]**<br><br>Judge: Beth Labson Freeman<br>Date: August 24, 2023<br>Time: 9:00 a.m.<br>Crtrm.: 3 |

**INTRODUCTION**

Wellpath does not contest that it is noncompliant with the 44 Settlement Agreement and Implementation Plan provisions at issue in Plaintiffs' Enforcement Motion (Dkt. 788). Nor does Wellpath dispute that its noncompliance has caused, and continues to cause, serious harm and death to the Plaintiff class. On May 22, 2023, another person died at the Jail. This marks the third in-custody death this year, and the fourth person to die at the Jail since November 2022. Wellpath's arguments that it has hired four staff members—nearly all of whom are temporary hires to replace outgoing staff—and needs more time to achieve substantial compliance are factually and legally insufficient to avoid contempt sanctions. Wellpath has not, and cannot, show that it has met its burden to take all reasonable steps to cure its years-long violations of this Court's orders. Plaintiffs' proposed order (Dkt. 788-4) is necessary to address the ongoing harm to the Plaintiff class.

**I.   WELLPATH'S OPPOSITION FALLS WOEFULLY SHORT OF SHOWING IT HAS TAKEN ALL REASONABLE STEPS TO ENSURE COMPLIANCE**

Civil contempt fines are appropriate to compel compliance in longstanding prison and jail class actions, especially where, as here, the magnitude of the harm threatened by Wellpath's contumacy is ever-increasing. *See Parsons v. Ryan*, 949 F.3d 443, 455 (9th Cir. 2020) (affirming contempt against prison system); *Stone v. City & Cnty. of S.F.*, 968 F.2d 850, 858-59 (9th Cir. 1992) (affirming contempt for noncompliance in jail conditions case). To avoid contempt, Wellpath needed to show it was not at fault for its persistent violations of the Court's orders for the past seven years—that it took "all reasonable steps within [its] power to insure compliance"—and still could not comply. *Stone*, 968 F.2d at 856. Wellpath has utterly failed to meet this burden. It is uncontested that Wellpath has been consistently noncompliant with the 44 provisions at issue in Plaintiffs' Motion for most or all of this action. Wellpath provides no evidence of steps taken to comply with these requirements, let alone evidence that its noncompliance occurred in spite of its reasonable efforts. This alone is sufficient to issue Plaintiffs' proposed order. *See Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (once moving party establishes

noncompliance with a court order, burden shifts to contemnors to show "categorically and in detail" that they took every reasonable step to comply); *Stone*, 968 F.2d 856 n.9.

Wellpath does not dispute or even acknowledge the evidence of noncompliance and ongoing patient harm, up to and including the most recent monitoring reports from January and March 2023. For example, Wellpath's Opposition does not address why it is that the dental care monitor has *never* found Wellpath compliant with the vast majority of the dental requirements at issue. *See* Dkt. 788 at 17-18.[1] Indeed, the dental clinic has been in such a state of disarray that the dental monitor devoted nearly her entire April 2023 mentoring visit to setting up the clinic appropriately. *See* Reply Decl. of Cara E. Trapani, filed concurrently herewith ("Reply Trapani Decl.") at ¶ 2. The Ninth Circuit is clear that such a history of persistent noncompliance justifies contempt sections. *See Stone*, 968 F.2d at 857 ("[T]he City's history of noncompliance … is highly relevant in finding the City in contempt"); *Hook v. Ariz. Dep't of Corrs.*, 107 F.3d 1397, 1404 (9th Cir. 1997) (in light of "extensive history of noncompliance …. [t]he district court could not be assured the defendants would comply … in the absence of a coercive sanction"). Wellpath's attempt to blame COVID for its violations is disingenuous at best. *See* Dkt. 790 (hereafter "Opp.") at 5. Wellpath was noncompliant before, during, and since the pandemic.

## II.  WELLPATH'S STAFFING CLAIMS SIMPLY SHOW THE SAME TURNOVER THAT HAS PREVENTED SUBSTANTIAL COMPLIANCE IN THE PAST

Wellpath's central argument is that it has hired four new supervisory staff since December 2022, that corporate-level staff "regularly consult[] with" the monitors (without providing detail), and that Wellpath "reasonably believes" that "the primary issues" in Plaintiffs' Motion will be moot by August 24, 2023. Opp. at 3, 5-7. The Opposition contains no evidence whatsoever to support this claim. It simply recycles the same false

---

[1] All citations refer to ECF page numbers. Additionally, Plaintiffs have conditionally redacted portions of this Reply Brief and the concurrently filed Reply Trapani Declaration in accord with their pending administrative motion under Civ. L.R. 79-5(f) (Dkt. 776).

1  promises this Court has previously rejected.  *See, e.g.*, Dkt. 169 at 16-17 (arguing in 2014
2  that because "CFMG [now, Wellpath] is committed to providing adequate staffing," issues
3  to support class certification "are now moot").  As the Ninth Circuit makes clear, "[i]ntent
4  is irrelevant to a finding for civil contempt, and therefore, good faith is not a defense."
5  *Stone*, 968 F.2d at 856; *see also Donovan*, 716 F.2d at 1240; *Hook*, 107 F.3d at 1404.
6       The notion that after years of ignoring the monitors' recommendations about how to
7  remedy its noncompliance, Wellpath's four new staff will miraculously achieve substantial
8  compliance by August with the 44 provisions at issue—many of which have *never* been
9  found substantially compliant—is wishful thinking at best.  Wellpath omits key facts from
10 its brief, including that three of the four new staff members are filling in for someone on
11 leave or replaced staff who no longer work at the Jail, and that Ann Marie Natali (Imple-
12 mentation Specialist), Paulette Torres (Health Services Administrator), and Linda Corfman
13 (Director of Nursing) are all interim staff.  *See* Reply Trapani Decl., Ex. 1 at 3; Decl. of
14 Ann Marie Natali In Supp. of Wellpath Opp., Dkt. 790-7 at ¶ 1.  Moreover, Wellpath had
15 to hire these staff because of its ongoing staff retention and turnover problems, which the
16 monitors have repeatedly found contribute to its noncompliance.  *See, e.g.*, Decl. of
17 Cara E. Trapani ISO Pls.' Enforcement Mot. ("Trapani Decl."), Dkt. 788-1 at Ex. 11 (11th
18 Medical Report) at 18; *id.*, Ex. 28 (6th Mental Health Report) at 15; *id.*, Ex. 45 (8th Dental
19 Report) at 8.  The new staff described in the Opposition are simply the current hiring wave
20 in a continued churn of Wellpath staff.
21      Even with these new staff, Wellpath remains out of compliance with its staffing
22 obligations.  *See* Reply Trapani Decl., ¶ 3 & Ex. 1 at 3.  Wellpath does not argue that it is
23 substantially compliant with staffing requirements, and all of the recent monitoring reports
24 find Wellpath noncompliant with its staffing obligations.  *See* Trapani Decl., Dkt. 788-1 at
25 ¶¶ 26-27, 68-69, 114-15.  Wellpath has provided no evidence that its new staff have
26 improved patient care, and such claims would be belied by the numerous instances of harm
27 and death that have occurred as a result of Wellpath's continued violations.  *See* Section
28 IV, *infra*.  The fact that Dr. Natali, Ms. Torres, and Ms. Corfman all work more than their

full-time hours, *see* Opp. at 6, is evidence of understaffing and lack of corporate support at the Jail. Wellpath itself found that its staffing shortages contributed to patients' deaths in April 2022 and January 2023. *See* Trapani Decl., Dkt. 788-1, Ex. 60 (J.C. Suicide Safety Gap Analysis) at 3-4; Reply Trapani Decl., Ex. 2 (M.M. M&M Report Part III) at 4.

### III.   WELLPATH FAILED TO COMPLY WITH PRIOR COURT ORDERS

Contrary to Wellpath's assertions, it is not in compliance with this Court's prior orders. *See* Opp. at 8-9. It is undisputed that Wellpath is noncompliant with the 2015 Settlement Agreement and 2016 Implementation Plan. The May 29, 2020 Order required Wellpath to "draft corrective action plans ["CAPs"] within 30 days" and "implement [them] … no later than 90 days from the date of this filing." Dkt. 671 at 6. Not only did Wellpath fail to adhere—by *months*—to the 30-day creation timeline for all the CAPs (not just the dental CAP, *contra* Opp. at 8), it still has not fully implemented any of them, more than three years later. *See, e.g.*, Trapani Decl., Dkt. 788-1 at ¶¶ 99, 146-47 & Ex. 12 (12th Medical Report) at 3. Additionally, Wellpath has at times prevented the enhanced mentoring provisions under the June 3, 2022 Order (Dkt. 751) from working—for example, in October 2022, Wellpath blocked Dr. Winthrop from conducting such a visit when it knew (but did not disclose) that the dentist was not actively treating patients due to understaffing. *See* Trapani Decl., Dkt. 788-1 at Ex. 47 (draft 9th Dental Report) at 9-11.

Wellpath argues that it just needs more time to work with the monitors "through enhanced monitoring and mentoring, to identify what specifically needs to be done for Wellpath to achieve substantial compliance." Opp. at 13. The neutral monitors have issued 33 reports to date, each with specific (often repeated) recommendations to Wellpath about how to remedy its noncompliance, and Wellpath has repeatedly ignored and failed to implement the recommendations. Wellpath's claim that it is still unaware of what it must do to achieve substantial compliance is preposterous. The fact that the monitors are continuing to perform monitoring and mentoring under the June 2022 Order is not a reason to allow Wellpath to go on flouting the Court's orders and its obligation to provide adequate care.

[4301961.9]                                            4                    Case No. 5:13-cv-02354-BLF
PLS' REPLY ISO PLS' MOT. TO ENFORCE [ECF NO. 788]

Moreover, civil contempt sanctions imposed to coerce compliance with court orders require that the contemnor have the opportunity to purge. *UMW v. Bagwell*, 512 U.S. 821, 829 (1997). If Wellpath does indeed achieve substantial compliance during the cure period with any of the 44 provisions identified in Plaintiffs' Motion, contempt fines would not be issued for that provision. *See* Pls.' Prop. Order, Dkt. 788-4 at 6. But in considering whether to issue Plaintiffs' proposed order, the relevant inquiry is whether Wellpath has shown that its longstanding and continued noncompliance has occurred even though it has taken all reasonable steps to comply. *Stone*, 968 F.2d at 856. Wellpath has not even attempted to meet that burden.

## IV.  WELLPATH'S ARGUMENT THAT THE MONITORS' REPORTS ARE "ANTIQUATED" SHOULD BE REJECTED; WELLPATH'S NONCOMPLIANCE CONTINUES TO CAUSE SUFFERING AND DEATH

The Court should reject Wellpath's specious argument that the monitors' reports are too "antiquated" to establish current noncompliance. *See* Opp. at 12. Plaintiffs cited the most recent monitoring reports at the time of filing their Motion, all of which were issued in the last nine months. *See, e.g.*, Trapani Decl., Dkt. 788-1 at ¶ 23 & Ex. 15 (March 2023 medical mentoring report); *id.*, ¶ 112 & Ex. 47 (March 21, 2023 draft 9th dental report); *id.*, ¶ 65 & Ex. 34 (November 4, 2022 9th mental health report). The Settlement Agreement requires several months' delay between the monitors' inspections, draft reports, and final reports to allow the monitors time to draft as well as for the parties to comment on the monitors' draft findings. *See* Dkt. 494 at 23. Wellpath does not identify any more recent monitor reports than the ones cited in Plaintiffs' Motion because there are none.

Contrary to Wellpath's baseless claim, the monitors' findings in the months since Plaintiffs initiated this enforcement process on December 16, 2022 show that the ongoing harm to incarcerated people has only increased. In his January 2023 enhanced monitoring report, the medical monitor noted the case of a woman who was admitted to the hospital for blood loss after Wellpath failed to provide timely treatment for heavy vaginal bleeding. Reply Trapani Decl., ¶ 8. The medical monitor found that Wellpath provided "deficient care" and that the patient "could go into shock and die from blood loss." *Id.* After the

1  patient was seen by a doctor in January 2023, she waited another six weeks for a follow-up
2  visit and was hospitalized again in late March 2023 for blood loss.  *Id.*  In April 2023, she
3  again went to emergency room after undergoing a hysterectomy to address this problem,
4  because her incision site opened, started bleeding, and became infected after she received
5  no medical care from Wellpath for four days.  *Id.*

6        In February 2023, a woman at the Jail who was four months pregnant asked for
7  immediate medical help getting family planning services to terminate her pregnancy.
8  Trapani Decl., Dkt. 788-1, Ex. 15 at 3.  For weeks, Wellpath ignored her request.  *Id.* at 5.
9  After the medical monitor happened to notice the grievance she had filed when he was
10 conducting record reviews, he interviewed the patient and urged Wellpath to take
11 appropriate action.  *Id.* at 3, 5.  Even so, the patient was only barely able to get the care she
12 needed before her pregnancy became too advanced for termination options to be available.
13 *See* Reply Trapani Decl. at ¶ 9.

14       In April 2023, a patient was discharged in acute renal failure and close to death
15 because of inadequate care at the Jail.  *Id.*, Ex. 4 at 4-5.  That same month, Wellpath failed
16 to appropriately treat a patient's profound hypothyroidism, which resulted in a near coma
17 and an 18-day hospital stay.  *Id.*, Ex. 4 at 1.  Despite the patient's suicidal ideation and
18 covering himself in feces, staff failed to refer him to a physician or psychiatrist.  *Id.*

19       While the monitors have issued no new final reports since Plaintiffs filed their
20 Motion, the medical and mental health monitors have identified ongoing deficiencies and
21 noncompliance.  *See id.* at ¶¶ 10-11 & Ex. 4 at 6.  On May 11, 2023, a patient suffering a
22 psychiatric crisis was made to wait for emergency medication because Wellpath had no
23 on-site psychiatrist and could not reach one by phone.  *Id.* ¶ 11.  A patient booked on
24 May 16, 2023 and housed in the infirmary was forced to lie in his own excrement and rely
25 on another patient to help him attend to his activities of daily life.  *Id.* ¶ 12.  On May 29,
26 2023, the medical monitor preliminarily found continued noncompliance in every area of
27 the Implementation Plan and only 36.5% compliance overall.  *Id.*, Ex. 4 at 6.
28       Tragically, another person died shortly after booking on May 22, 2023.  *See* Reply

Trapani Decl. at ¶ 5.  The monitors are still evaluating this patient's death, but preliminary findings and the decedent's medical records suggest multiple violations of the Implementation Plan.  *Id.*  The Jail's death rate continues to skyrocket—this is the third death in 2023 alone, and the fourth in seven months.  *Id.* ¶ 6.  The Jail's annual death rate since the Settlement Agreement has jumped from 350 to 361 deaths per 100,000 people since Plaintiffs filed their Motion.  *Id.*  The Jail is on track for its deadliest year since the Settlement Agreement was finalized in 2015.  At least two of this year's three deaths involved Wellpath staff responding inappropriately to signs of drug overdose, and the vast majority of patients who have died at the Jail in the last two years required closer monitoring by mental health staff.  *See*, *id.* ¶ 7; Trapani Decl., Dkt. 788-1, ¶¶ 160-66.

In sum, the neutral monitors' findings from *this year* belie Wellpath's specious and unsupported claim that the most recent monitoring reports "do[] not reflect Wellpath's current compliance."  Opp. at 12.  Wellpath remains noncompliant to this day.

## CONCLUSION

The neutral monitors have repeatedly issued concrete, practicable recommendations for achieving substantial compliance, but Wellpath has failed to make progress for more than seven years.  The abysmal medical, mental health, and dental care at the Jail is the direct result of Wellpath's noncompliance.  Wellpath has not met its burden to avoid contempt for its longstanding and continued noncompliance.  The contempt sanctions Plaintiffs seek are necessary to finally bring Wellpath into compliance and end this cycle that harms all of the individuals incarcerated at the Jail.

DATED:  June 9, 2023

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Cara E. Trapani*
Cara E. Trapani

Attorneys for Plaintiffs