LINDSEY M. ROMANO (SBN: 337600)
lromano@grsm.com
ALLISON J. BECKER (PRO HAC VICE)
abecker@grsm.com
ELIZABETH B. MCGOWAN (PRO HAC VICE)
emcgowan@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111
Telephone: (415) 875-4126
Facsimile:  (415) 986-8054

Attorneys for Defendants
CALIFORNIA FORENSIC MEDICAL GROUP, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation, and DOES 1-20,<br><br>Defendants. | CASE NO. 5:13-cv-02354-BLF<br><br>**DECLARATION OF JOSHUA RAFINSKI**<br><br>Judge: Hon. Beth Labson Freeman |

I, Joshua Rafinski, declare as follows:

1. I am an Industrial Engineer, with a focus in designing, building, and maintaining robust processes in healthcare systems. I am currently the Head of Correctional Health Analytics at the Cook County Jail.  Please see my attached CV, **Exhibit 62**.

2. My education was focused on statistics and incorporates techniques of "Six Sigma" methodologies, which is a set of tools for process improvement which is especially helpful in the correctional healthcare environment. I am also well-versed in national best practices

-1-
DECLARATION OF JOSHUA RAFINSKI

   in correctional healthcare, including National Commission on Correctional Health Care standards.

3. For the past thirteen years, I have provided reliable healthcare data analytics services at the Cook County Jail in Chicago, Illinois, including in connection with auditing compliance with class action settlements and assisting court-ordered neutral monitors with their audits of the site. I also helped develop the Cook County Jail's internal healthcare monitoring systems, which were instrumental in achieving compliance with its own implementation plan. I utilized the same practices to randomize and calculate the percentage of compliance with each area and for the system as a whole.

4. In order to prepare this declaration, I reviewed the following documents:

  a. Dkt. 563 Order Appointing and Granting Neutral Monitors and Order of Reference

  b. MCJ Medical Audit Report and Audit Tool Dated March 25-26, 2024 [Dkt. 882]

  c. MCJ MH Monitor Final Report Dated April 2024 [Dkt. 895]

  d. MCJ Dental Report Dated April 2024 and Audit Tool [Dkt. 902]

  e. Article: "Effects of the Transformation of the Veterans Affairs Health Care System on the Quality of Care." By: Ashisa K. Jha, Jonathan B. Perlin, Kenneth W. Kizer, R. Adams Dudley.

  f. "The Central Limit Theorem"[1]

  g. Acute Care (#17) (CFMG-36)(Rafinski-36) (Exhibit 17)

  h. Chronic Care (#16) and Psychiatry FU (#19) (CFMG-35)(Rafinski-35) (Exhibit 23)

  i. Chronic Care (#16) and Psychiatry FU (#19) (CFMG-38)(Rafinski-38) (Exhibit 24)

  j. Initial MH Screening (#12) (CFMG-32)(Rafinski-32) (Exhibit 26)

  k. Outpatient Services (#18) (CFMG-37)(Rafinski-37) (Exhibit 27)

---

[1] http://www.stat.ucla.edu/~nchristo/introeconometrics/introecon_central_limit_theorem.pdf

-2-

DECLARATION OF JOSHUA RAFINSKI

l. Suicide Risk Assess and Safety (#24) (CFMG-43)(Rafinski-43) (Exhibit 28)

m. Tx Planning (#15) and Med Record (#25) (CFMG-34)(Rafinski-34) (Exhibit 29)

n. Tx Planning (#15) and Med Record (#25) (CFMG-44)(Rafinski-44) (Exhibit 30)

o. 3 - Sick Call Excel (CFMG-46; Rafinski-46) (Exhibit 1)

p. 6 Month -Annual Physical Exam - SCHEDULED - 3.25.24 to 4.5.24(CFMG-4)(Rafinski-4) (Exhibit 2)

q. 6-Month-Annual Physical Task Report - 3.25.24 to 4.5.24 (CFMG-5)(Rafinski-5) (Exhibit 3)

r. Medical - Outside Care - ERMA Report - Off-Site Appoinments March- April 2024 (CFMG-10)(Rafinski-10) (Exhibit 4)

s. Medical - Outside Care- CorEMR Report- Offsite Appts - 3-25-24  -  4-5-24 (CFMG-11)(Rafinski-11) (Exhibit 5)

t. 8 - Sobering Cell List (CFMG - 31; Rafinski - 31) (Exhibit 6)

u. Communicable Disease - CorEMR Report - Forms - PPD Read - 3-25-24  -  4-5-24 (CFMG-14)(Rafinski-14) (Exhibit 7)

v. Communicable Disease- CorEMR- STD & MRSA testing - 3-25-24 - 4-5-24 (CFMG-15)(Rafinski-15) (Exhibit 8)

w. Communicable Disease-CorEMR Report – Task – PPD Read – 3-25-24 – 4-5-23 (CFMG-16) (Rafinski-16) (Exhibit 9)

x. 14-Day Health Assessment - SCHEDULED - 3.25.24 to 4.5.24 (CFMG-6)(Rafinski-6) (Exhibit 10)

y. 14-Day Health Assessments - Completed - 3.25.24 to 4.5.24 (CFMG-7)(Rafinski-7) (Exhibit 11)

z. Chronic Care Forms Report - 5 to 7 Days Requirement - 3.25.24 to 4.5.24 (CFMG-2)(Rafinski-2) (Exhibit 12)

aa. Chronic Care Forms Report - Every 90 Days - 3.25.24 to 4.5.24 (CFMG-3)(Rafinski-3) (Exhibit 13)

bb. Withdrawal Forms Report - 3.25.24 ONLY (CFMG-12)(Rafinski-12) (Exhibit 15)

cc. Withdrawal Forms Report - 3.25.24 to 4.5.24 (CFMG-13)(Rafinski-13) (Exhibit 16)

dd. 29. Dental - Dental Intake Screening- Referral to Dental - 3-25-24 - 4-5-24 (CFMG-17)(Rafinski-17) (Exhibit 31)

ee. 30. Dental - Initial Health Inventory- Dental Form - 3-25-24 - 4-5-24 (CFMG-18)(Rafinski-18) (Exhibit 32)

ff. 30. Dental - Initial Health Inventory- Medical Form - 3-5-24 - 4-5-24 (CFMG-19)(Rafinski-19) (Exhibit 33)

gg. 32. Dental - Treatment for Urgent and Emergent Conditions - CorEMR Report - Dental Sick Call Level 1- 3-25-24 - 4-5-24 (CFMG-20)(Rafinski-20) (Exhibit 34)

hh. 33. Dental- Dental Sick Call - CorEMR Report- Nurse Sick Call- Completed- 3-25-24 - 4-5-24 (CFMG-21)(Rafinski-21) (Exhibit 35)

ii. 33. Dental- Dental Sick Call - CorEMR Report- Nurse Sick Call- Refused- Cancelled- Open- 3-25-24 - 4-5-24 (CFMG-22)(Rafinski-22) (Exhibit 36)

jj. 36. Dental- Restorative - CorEMR Report- Dental Treatment- Completed- 3-25-24 - 4-5-24 (CFMG-24)(Rafinski-24) (Exhibit 37)

kk. 37. Dental- Extractions- ERMA Report - Off-Site Appt. 3-25-24 - 4-5-24 (CFMG-25)(Rafinski-25) (Exhibit 38)

ll. 38. Dental- Specialty Care Referrals- ERMA Report - Off-Site Appt. 3-25-24 - 4-5-24 (CFMG-26)(Rafinski-26) (Exhibit 39)

mm. 40. Dental- Periodontics - CorEMR Report - Dental Periodontal Program- 3-24-24 - 4-5-24 (CFMG-28)(Rafinski-28) (Exhibit 40)

-4-
DECLARATION OF JOSHUA RAFINSKI

nn. 43. Dental- Monterey Dental Priority Compliance Report - 3-25-24 - 4-5-24 (CFMG-30)(Rafinski-30) (Exhibit 41)

oo. Bookings 03-25-24 through 04-05-24 (CFMG-29)(Rafinski-29) (Exhibit 42)

pp. IPs in-custody 180+ and 365+ days (CFMG-23)(Rafinski-23) (Exhibit 43)

qq. IPs in-custody 180+ and 365+ days (CFMG-27)(Rafinski-27) (Exhibit 44)

## Opinions Regarding Validity of Monitor Reports

5. I have analyzed the statistical credibility of the available audit tools used in the medical, mental health, and dental monitor reports. Overall, I do not find the findings in the monitor reports completed by Dr. Barnett, Dr. Vess, or Dr. Winthrop to be statistically reliable due to a number of methodological problems.

6. First, in order to form any reliable conclusions about the state of a healthcare system, independent monitors must use best practice audit sampling in their review, which includes auditing patient charts that are independent, randomized, and stratified. In other words, the monitors should not be reviewing charts that are hand-selected by the parties since this introduces sample bias and violates our sampling best practice. Instead, the monitors should select a sampling of charts at random from the entire patient population for any specific given indicator.

7. For example, if the monitor is auditing sick call, the monitor should pull a random sample of charts from all sick call patients during the relevant time period.

8. The monitors are not following this process and each is, in part, including a review of charts which have been hand-selected by Plaintiffs' counsel as part of their audit ("Class Cases"). Such a process is neither neutral nor random, and will result in skewed and unreliable findings. These "Class Cases" should not be used in final audit conclusions, from a statistical perspective.

9. Essentially, when the monitors are reviewing cases hand selected by Plaintiffs, there is no way to determine whether the cases selected by Plaintiffs represent an accurate picture of the state of the care at the Monterey County Jail, or whether they are actually outliers in an otherwise healthy system.

10. Second, chart samples should be of a sufficiently large size in order for most significance models to hold true. The Central Limit Theorem (CLT) is a fundamental theorem in statistics, which states that if you take a "large" sample average from a population, and then repeat with additional sample averages, the distribution of all the sample averages will approach a Normal Distribution curve. The Normal Distribution curve allows for standard confidence intervals to be utilized during an audit and the true "average" will be equal to the sample average.

11. The following criteria must be satisfied to comply with the CLT: (i) samples are independent of each other; (ii) samples are random; and (iii) the sample size is sufficiently "large." It has been demonstrated mathematically that a random and independent sample size of at least 30 will satisfy the CLT in most cases.

12. This is why a sample size of at least 30 patients is the standard widely accepted for many industries, including healthcare, in order to provide reliable results. For small populations with less than 30 patients, the entire population should be reviewed and the subjective experience of auditors should be used.

13. None of the monitors are currently reviewing a patient sample size large enough to sufficiently or credibly evaluate the state of the care at the jail. All are reviewing less than 30 charts for each indicator, some are inappropriately reviewing the same chart across multiple indicators, and one monitor—Dr. Winthrop—is only reviewing one or two patient charts per month, despite the dental program seeing over 100 patients per month.

-6-
DECLARATION OF JOSHUA RAFINSKI

14. The sample sizes used by the monitors are far too low to allow anyone—this Court, the parties, or the public—to draw reliable conclusions about the state of patient care at the Monterey County Jail.

10. This is especially true when all three monitors use a lookback period of several months (some as long as nine months) and then average the scores together in coming to their conclusions. In order to provide an accurate picture of compliance at the end of March 2024, the monitors should be looking at care provided after completion of the purge period to determine whether CFMG had corrected the deficiencies in compliance with the Court's September Enforcement Order.

11. Unfortunately, the monitors did not review sufficient data from the end of March 2024 to gain any insight into exactly how the system was functioning at the end of the purge period contemplated by the Court's Enforcement Order. In fact, to my knowledge, the monitors have not been on site to review any care provided <u>after</u> the expiration of the purge period on March 25, 2024. Instead, the monitors are looking at old information for their reports, which cannot be used to determine the current state of affairs.

12. In order to provide reliable and accurate insights into the state of the healthcare system at the Monterey County Jail, going forward, the monitors should review randomized samples of 30 unique patients for each indicator, and where the patient population is less than 30, review the entire patient population before coming to their conclusions. As structured this way, these reports would be reliable as retrospective reviews but still may not be reliable to report on the status of compliance at a moment in time, as in after the discharge of a purge period for contempt.

13. Going forward, should the monitors be used to determine compliance with sanction orders by a date certain, they should employ the same approach as outlined in paragraph 12 with

-7-
DECLARATION OF JOSHUA RAFINSKI

review), using appropriately large, randomized, and independent samples.

## Opinions Regarding Timelines for Organizational Change

14. Additionally, based upon my training, experience, and review of pertinent literature, measurable changes in organizational culture in healthcare settings typically require at least a decade to achieve. The fact that CFMG has not yet achieved substantial compliance in all 43 areas of the Court's Enforcement Order during the six-month purge period (or even over the last 8 years) is not surprising, and instead is in line with most timetables for organizational change in healthcare systems in my experience.

## Creation of New Audit Tools

15. In order to determine if CFMG reached substantial compliance in medical, mental health, and dental by the end of the purge period, CFMG provided me with spreadsheets with patient booking numbers for thirty-four areas of compliance set out in the September 2023 Order. See **Exhibits 1-44**.

16. I randomized the Booking IDs for Medical, Mental Health, and Dental Stratified Category Groups using a randomization tool in Microsoft Excel. For a given group N, I applied the RAND() formula against each record. RAND() will produce a decimal value between 0 and 1 randomly (for example: 0.41143561). If RAND $<=$ 40/N for a group (40 being the desired n), then we select the record for review.

17. I then produced a table with randomized Booking IDs for Medical Stratified Category Groups, Dental Stratified Category Groups, and Mental Health Stratified Category Groups. See **Exhibits 45, 51, and 53.**

18. I created the randomized stratified category groups by doing the following for Medical, Mental Health, and Dental:

-8-
DECLARATION OF JOSHUA RAFINSKI

a. Based on the provided N samples (total possible records in the time range), I randomly selected 40 Booking IDs for each group (n). It was the expectation that the auditor will be able to audit at least 30 records from each group.

b. Only "yes" and "no" responses count towards the 30 for each audit question. I provided around 40 random booking numbers to decrease the number of NA values.

c. It is encouraged to audit more than 30 for stronger statistical reliability.

d. There were areas, which contained a patient population smaller than 30 due to the limited audit period, March 25, 2024 to April 8, 2024. In that case, all Booking IDs were used and provided to the auditor for review.

19. I instructed the auditors, via a note at the beginning of the randomized list, that for sub indicators that contain less than 30 Yes/No answers, all charts should be reviewed. Moreover, the auditor should make a subjective decision on the compliance of the audit question.

20. As I opined above, there is less statistical reliability for groups with less than 30 records, therefore, the compliance decision must be deemed subjective for those questions.

21. After the auditor completed the review and audit of the patient charts, I determined the compliance score based on the results of each patient chart and audit question. I determined a total compliance percentage for each area of compliance as well as an overall system compliance score. Those results are summarized in **Exhibit 48, 52, 54**.

## Opinions Regarding Sanctions Compliance Audit

22. The audit process summarized above is in compliance with best practices for statistical methods and should contain statistically valid results for all patient populations with audit sizes of 30 or more.

23. For those patient populations with less than 30 charts available in the pertinent time period, all available patient charts were reviewed for completeness. While I cannot certify that these audits are statistically reliable, this process at least ensures there are no outliers and

-9-
DECLARATION OF JOSHUA RAFINSKI

that the auditor's conclusion is based on a review of the entire patient population for that indicator, and not just a small portion or some cases that were hand selected by the parties.

24. Overall, these audits present a much more balanced, statistically reliable, and accurate picture of the delivery of care at the Monterey County Jail and the functioning of the medical, mental health, and dental systems as a whole than any currently available report from the Court-appointed monitors in my review.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct, and that this declaration is executed on August 16, 2024 in Chicago, Illinois.

By: /s/ _____
Joshua Rafinski, Declarant

**Gordon Rees Scully Mansukhani, LLP**
315 Pacific Avenue
San Francisco, CA 94111

-10-
DECLARATION OF JOSHUA RAFINSKI