# Exhibit A

1   MICHAEL W. BIEN – 096891
    ERNEST GALVAN – 196065
2   VAN SWEARINGEN – 259809
    CAROLINE E. JACKSON – 329980
3   MAYA E. CAMPBELL – 345180
    ROSEN BIEN
4   GALVAN & GRUNFELD LLP
    101 Mission Street, Sixth Floor
5   San Francisco, California  94105-1738
    Telephone:    (415) 433-6830
6   Facsimile:    (415) 433-7104
    Email:    mbien@rbgg.com
7            egalvan@rbgg.com
             vswearingen@rbgg.com
8            cjackson@rbgg.com
             mcampbell@rbgg.com
9
    CORENE KENDRICK – 226642
10  KYLE VIRGIEN – 278747
    ACLU NATIONAL PRISON PROJECT
11  425 California St., Ste. 700
    San Francisco, CA 94104
12  Telephone:    (202) 393-4930
    Facsimile:    (202) 393-4931
13  Email:    ckendrick@aclu.org
             kvirgien@aclu.org
14

AVRAM D. FREY
(*admitted pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:    (415) 621-2493
Facsimile:    (415) 255-8437
Email:    afrey@aclunc.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated, | Case No. 5:13-cv-02354-BLF |
| Plaintiffs, | **PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT WELLPATH** |
| v. | Judge:   Beth Labson Freeman |
| COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED., a California corporation; and DOES 1 to 20, inclusive, | |
| Defendants. | |

PROPOUNDING PARTY:          Plaintiffs JESSE HERNANDEZ et al.

RESPONDING PARTY:          Defendant WELLPATH

SET NO.:          ONE (1)

PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of Civil Procedure and Local Rule 33.1, Plaintiffs, on behalf of themselves and all persons similarly situated, by their attorneys, hereby propound this First Set of Interrogatories on Defendant California Forensic Medical Group, Incorporated, a/k/a Wellpath.  Defendants are required to respond under oath, to the following Interrogatories within fourteen (14) days.

**INSTRUCTIONS**

1.      These instructions and definitions should be construed to require answers based upon the knowledge of, and information available to you and your agents, representatives, employees, servants and, unless privileged, your attorneys.  This includes information subject to your possession and/or control, and not merely information known of your own personal knowledge.

2.      In answering these interrogatories, quote each interrogatory before each answer and IDENTIFY all persons who provided the facts forming the basis for the answer.

3.      These discovery requests are intended as continuing requests, requiring you to supplement your interrogatory responses to the extent required by Rule 26 of the Federal Rules of Civil Procedure.

4.      If you object to part of an interrogatory and refuse to answer that part, state your objection and respond to the remaining portion of that interrogatory.  No part of an interrogatory should be left unanswered merely because an objection is interposed to another part of the interrogatory.  If a partial or incomplete answer is provided, you shall state that the answer is partial or incomplete.  If you cannot answer a particular interrogatory in full after exercising due diligence to secure the information to do so, answer to the extent possible, specify your inability to answer the remainder, and state

1   whatever knowledge you have concerning the unanswered portion.

2       5.      For any information withheld on the ground of privilege or work product

3   protection, please state:

4           a.      the nature of the information being withheld and to which

5                   interrogatory it relates;

6           b.      the specific factual basis which gives rise to the objection or refusal

7                   and the specific legal ground on which the objection or refusal is

8                   based;

9           c.      the identity of the person on whose behalf the privilege is asserted;

10          d.      the full identity of any documents containing such information,

11                  including:

12                  i.      the nature of the document (e.g., letter, memorandum, etc.);

13                  ii.     date of the document;

14                  iii.    its title (if any);

15                  iv.     its authors, addressees, recipients, or parties;

16                  v.      the identity of any other individuals to whom the document

17                          was disseminated and their relationship to Defendants;

18                  vi.     whether the document includes any attachments and, if so, a

19                          description of the attachments; and

20                  vii.    its present location and identity of its custodian;

21          e.      whether your objection or refusal is directed to the entire interrogatory

22                  or part thereof; and

23          f.      if your objection or refusal goes to part of the interrogatory, specify

24                  the specific part(s) of the interrogatory to which your objection or

25                  refusal is directed, and answer the interrogatory to the extent that it

26                  calls for non-privileged and unprotected material.

27      6.      If you elect to specify and produce business records in answer to any

28  interrogatory, the specification shall be in sufficient detail to permit Plaintiffs to readily

locate and identify the business records from which the answer may be ascertained.

7.     Where acts set forth in answers or portions thereof are supplied upon information and belief, rather than upon actual knowledge, the answer should so state and specifically identify the source or sources of such information and belief.

8.     Notwithstanding any definition below, each word, term, or phrase used in these interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

9.     In the event that your answer to any interrogatory is "not applicable" or any similar phrase or answer, explain in detail why that interrogatory is not applicable.

10.    In the event that your answer to any interrogatory is "do not know" or any similar phrase or answer, explain in detail who, if anyone, would know the answer to that interrogatory, where the answer to that interrogatory might be found, and all efforts made by you to obtain the answer to that interrogatory.

11.    In construing these interrogatories, the singular shall include the plural and the plural shall include the singular.  A masculine, feminine, or neutral pronoun shall not exclude the other genders, so that the interpretation applied results in the more expansive production.

## DEFINITIONS

Unless otherwise indicated, the following definitions and terms shall apply to these interrogatories:

1.     The terms "ANY" and "ALL," as used herein, shall include "each" and "every" and are not to be construed to limit an interrogatory.

2.     The term "AUDIT PERIOD" means the period of time covered by the audits that Defendants produce in support of Defendant California Forensic Medical Group, Inc.'s Show Cause Response Regarding Imposition of Contempt Sanctions, Dkt. No. 905, which Defendants have stated is March 25, 2024 through April 8, 2024.  *See* Dkt. No. 905 at 3.

3.     The term "AUDIT TOOL" shall have the same meaning as applied in the

Declaration of Dr. Alexander Meagher Regarding Medical Audit Findings, Dkt. No. 905-1, the Declaration of Dr. Morton Rosenberg Regarding Dental Audit Findings, Dkt. No. 905-3, and the Declaration of Dr. Brian Waxler Regarding Mental Health Audit Findings, Dkt. No. 905-4.

4.      The term "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records,  reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including an Android or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, text messages, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X, Zoom, and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

5.      The term "CONTINUOUS QUALITY IMPROVEMENT" means WELLPATH's self-auditing process, examples of which are set forth in Exhibits 49 and 50 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905.

6.      The term "CorEMR" means WELLPATH's electronic medical records system.

7.      The term "COUNTY" means Defendant Monterey County and anyone acting on its behalf.

8.      The terms "DEFENDANTS," "YOU," or "YOUR" means the County of Monterey; Monterey County Sheriff's Office; California Forensic Medical Group, Incorporated, a/k/a Wellpath, and anyone acting on their behalf.

9.      The term "DEFENDANTS' SHOW CAUSE BRIEF" means the pleading styled Defendant California Forensic Medical Group, Inc.'s Show Cause Response

1   Regarding Imposition of Contempt Sanctions, Dkt. No. 905.

2        10.    The term "DOCUMENT" means any writing, however produced or

3   reproduced, of every kind and regardless of where located, which is in YOUR possession,

4   custody, or control, including drafts; or in the possession, custody or control of any servant

5   or agent of YOU or of YOUR attorneys.  The terms include the following: electronically

6   recorded information such as electronic mail, text messages, html files, databases, data

7   processing cards or tapes, computerized data, computer diskettes, or information otherwise

8   contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes,

9   view-graphs, or any information maintained on digital, electronic, magnetic or other

10  media; medical records, including electronically kept medical records; and any other

11  summary, schedule, memorandum, note, statement, letter, telegram, interoffice

12  communication, report, diary, worksheet, list, graph, chart, or index, tape record, partial or

13  complete report of telephone or oral conversation, transcript or minutes, compilation,

14  tabulation, study, analysis, or other such writing or recording.  The terms "DOCUMENT"

15  and "DOCUMENTS" include any originals, all file copies, all other copies, no matter how

16  prepared, and all drafts prepared in connection with such DOCUMENTS, whether or not

17  used, as well as the file in which the DOCUMENTS are maintained.  A draft or non-

18  identical copy of a DOCUMENT, including a copy or duplicate of a DOCUMENT which

19  has any nonconforming notes, marginal annotations or other markings, and any

20  preliminary version, draft or revision of the foregoing, is a separate DOCUMENT within

21  the meaning of these terms.  The term "DOCUMENT" does not include any writing that

22  constitutes a privileged or otherwise protected communication between YOU and YOUR

23  attorneys.

24       11.    The term "EMPLOYEE" means any employee, director, officer, owner,

25  CONTRACTOR, agent, or any other person working for or on behalf of an entity, such as

26  the COUNTY, the SHERIFF'S DEPARTMENT, or WELLPATH.

27       12.    The term "ENFORCEMENT REQUIREMENT" means any of the forty-

28  three requirements of the Settlement Agreement and Wellpath Implementation Plan

1 identified as requirements 1-13 and 15-44 in the Order Granting Plaintiffs' Motion to

2 Enforce Settlement Agreement and Wellpath Implementation Plan, Dkt. No. 838.

3       13.    The term "FINAL REPORTS" means the 11th Dental Care Audit Report,

4 produced by neutral monitor produced by Dr. Viviane Winthrop on July 30, 2024 and filed

5 with the Court as Dkt. Nos. 902-1, 902-2, 902-3 and 902-4; the 12th Mental Health Care

6 Audit Report, produced by Dr. James Vess on July 23, 2024 and filed with the Court as

7 Dkt. No. 895-1; and the 16th Medical Care Audit Report, produced by Dr. Bruce Barnett

8 on June 4, 2024 and filed with the Court as Dkt. No. 882.

9       14.    The term "GRIEVANCE" means a written complaint completed by or on

10 behalf of an INCARCERATED PERSON to DEFENDANTS by a person or entity other

11 than Plaintiffs' counsel.

12       15.    The term "HEALTH CARE" means the provision of care or services, to

13 identify and/or address health needs of an INCARCERATED PERSON (including

14 medical, mental health, dental care, and vision care needs), whether those needs arise as a

15 result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic

16 or preventive purposes.

17       16.    The term "HEALTH CARE STAFF" means any person or entity providing

18 HEALTH CARE services, or providing administrative and/or support services related to

19 HEALTH CARE at the JAIL.

20       17.    The term "HEALTH SERVICES REQUEST" means a request for HEALTH

21 CARE services completed by or on behalf of an INCARCERATED PERSON, colloquially

22 known as a "sick slip."

23       18.    The terms "INCARCERATED PERSON(S)" or "INCARCERATED

24 PEOPLE" mean any person incarcerated, detained, or in the custody of the MONTEREY

25 COUNTY SHERIFF'S DEPARTMENT.

26       19.    "IDENTIFY," with respect to an INCARCERATED PERSON or formerly

27 INCARCERATED PERSON, means to state the INCARCERATED PERSON's full name,

28 booking number, date of birth, booking date, and CURRENT housing location (if still in

custody) or date of release (if no longer in custody).

20. "IDENTIFY," with respect to a non-INCARCERATED PERSON, means to state the person's name, employer, professional title, credentials and licensing information if applicable, and professional address.

21. The term "JAIL" means the Monterey County Jail, including all of its facilities.

22. The term "MEDICAL PROVIDER" means WELLPATH employee who holds a licensure as a Doctor of Medicine, Family Nurse Practitioner, Physician Assistant or Registered Nurse.

22. The term "POLICIES AND PROCEDURES" means policies, procedures, handbooks, advice, directives, training materials, forms, instructions, and guidelines that comprise established standards, regardless of the author.

23. The terms "RELATED TO," "RELATING TO," or "REGARDING" means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains to directly or indirectly to, reflects, refers to, regards, relates to, responds to, states, summarizes, or in any way relevant to the particular subject matter identified.

24. The term "SUBSTANTIAL COMPLIANCE" shall have the meaning set forth in ¶ 10 of the Settlement Agreement, Dkt. No. 494.

25. The term "WELLPATH" means California Forensic Medical Group, Incorporated, a/k/a Wellpath, and anyone acting on their behalf.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

IDENTIFY each person that WELLPATH intends to call as a witness for the evidentiary hearing currently scheduled for December 16-17, 2024, and describe the subject matter of their testimony and the capacity in which they will be testifying (*e.g.*, as a fact witness or as an expert witness).

1    **INTERROGATORY NO. 2:**

2          For each of Exhibits 1-44 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No.

3    905, describe with specificity the information that the exhibit was intended to capture.

4    **INTERROGATORY NO. 3:**

5          For Dr. Alexander Meagher, Dr. Brian Waxler, Dr. Morton Rosenberg, Joshua

6    Rafinski, and each person that WELLPATH intends to call as an expert witness, state:

7          (a) the date the expert witness was hired or retained;

8          (b) the compensation to be paid for the study and testimony in the case, including

9          the hourly rate and hours worked to date; and

10         (c) the facts or data considered by the expert witness in forming all opinions the

11         expert witness will express, including the nature of the expert witness's access to

12         "patient charts" (*e.g.*, the witness received access to CorEMR; the witness was

13         provided a complete medical record for each patient; the witness was provided a

14         partial medical record for each patient).

15   **INTERROGATORY NO. 4:**

16         For each AUDIT TOOL set forth in Exhibits 56 through 58 to DEFENDANTS'

17   SHOW CAUSE BRIEF, Dkt. No. 905:

18         (a) IDENTIFY all persons responsible for developing the AUDIT TOOL and their

19         roles in developing the AUDIT TOOL;

20         (b) describe the process used to develop the AUDIT TOOL; and

21         (c) state which portions of the AUDIT TOOL, if any, were developed exclusively

22         for use in this case.

23   **INTERROGATORY NO. 5:**

24         For each individual listed in Exhibits 2, 3, 10, 11 and 26 to DEFENDANTS'

25   SHOW CAUSE BRIEF, Dkt. No. 905, provide their booking date and release date, if any.

26   **INTERROGATORY NO. 6:**

27         Provide the name and booking number for each individual listed in Exhibits 45, 51

28   and 53 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905.

**INTERROGATORY NO. 7:**

For each individual listed in Exhibits 4 and 5 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905, provide the date that this individual was initially referred for the specialty care referenced in the Exhibit.  (Note: It is Plaintiffs' understanding that the Exhibits 4 and 5 indicate the date on which the individual was scheduled for a specialty care appointment and the date the individual attended the specialty care appointment, but do not indicate the date the patient was referred for specialty care).

**INTERROGATORY NO. 8:**

For each of the FINAL REPORTS from Dr. Barnett, Dr. Vess and Dr. Winthrop, identify all facts set forth in the FINAL REPORT that WELLPATH contends are incorrect.

**INTERROGATORY NO. 9:**

For each Request for Admission where WELLPATH's response was anything less than an unqualified admission:

(a) state the number of the request;

(b) set forth all facts on which you base your response; and

(c) identify all individuals who have knowledge of those facts.


DATED:  August 23, 2024                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP


By:   */s/ Caroline E. Jackson*
                    Caroline E. Jackson

Attorneys for Plaintiffs

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
VAN SWEARINGEN – 259809
CAROLINE E. JACKSON – 329980
MAYA E. CAMPBELL – 345180
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:     (415) 433-7104
Email:          mbien@rbgg.com
                    egalvan@rbgg.com
                    vswearingen@rbgg.com
                    cjackson@rbgg.com
                    mcampbell@rbgg.com

CORENE KENDRICK – 226642
KYLE VIRGIEN – 278747
ACLU NATIONAL PRISON PROJECT
425 California St., Ste. 700
San Francisco, CA 94104
Telephone:    (202) 393-4930
Facsimile:     (202) 393-4931
Email:          ckendrick@aclu.org
                    kvirgien@aclu.org

AVRAM D. FREY
(*admitted pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:    (415) 621-2493
Facsimile:     (415) 255-8437
Email:          afrey@aclunc.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED., a California corporation; and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. 5:13-cv-02354-BLF <br><br> **PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT WELLPATH, SET ONE** <br><br> Judge:   Beth Labson Freeman |

PROPOUNDING PARTY:      Plaintiffs JESSE HERNANDEZ et al.

RESPONDING PARTY:       Defendant WELLPATH

SET NO.                 ONE (1)

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 36, Plaintiffs, on behalf of themselves and all persons similarly situated, by their attorneys, hereby demand that Defendant WELLPATH, respond under oath admitting the matters stated below within fourteen (14) days.

## INSTRUCTIONS

1.      Each request for admission must be responded to separately, fully, and in writing.

2.      If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.

3.      A denial shall fairly respond to the substance of the requested admission. When good faith requires that a party qualify an answer or deny on a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

4.      Lack of knowledge or information is not a reason for failing to admit or deny any matter unless the answering party has made a reasonable inquiry, the information the answering party knows or has obtained as a result of that inquiry is insufficient to enable the party to admit or deny, and the response so states.

5.      If objection is made to any request below, the grounds for objecting shall be stated.  The answering party may not object solely on the ground that the request presents a genuine issue for trial.  Plaintiffs reserve all rights under the Federal Rules of Civil Procedure, including the right to file a motion regarding the sufficiency of an answer or objection pursuant to Rule 36(a)(6).

## DEFINITIONS

Unless otherwise indicated, the following definitions and terms shall apply to these requests for admission:

1.    The terms "ANY" and "ALL," as used herein, shall include "each" and "every" and are not to be construed to limit an interrogatory.

2.    The term "AUDIT PERIOD" means the period of time covered by the audits that Defendants produce in support of Defendant California Forensic Medical Group, Inc.'s Show Cause Response Regarding Imposition of Contempt Sanctions, Dkt. No. 905, which Defendants have stated is March 25, 2024 through April 8, 2024.  *See* Dkt. No. 905 at 3.

3.    The term "AUDIT TOOL" shall have the same meaning as applied in the Declaration of Dr. Alexander Meagher Regarding Medical Audit Findings, Dkt. No. 905-1, the Declaration of Dr. Morton Rosenberg Regarding Dental Audit Findings, Dkt. No. 905-3, and the Declaration of Dr. Brian Waxler Regarding Mental Health Audit Findings, Dkt. No. 905-4.

4.    The term "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records,  reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including an Android or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, text messages, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X, Zoom, and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

5.    The term "CONTINUOUS QUALITY IMPROVEMENT" means WELLPATH's self-auditing process, examples of which are set forth in Exhibits 49 and 50 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905.

6.    The term "CorEMR" means WELLPATH's electronic medical records

1  system.

2      7.      The term "COUNTY" means Defendant Monterey County and anyone

3  acting on its behalf.

4      8.      The terms "DEFENDANTS," "YOU," or "YOUR" means the County of

5  Monterey; Monterey County Sheriff's Office; California Forensic Medical Group,

6  Incorporated, a/k/a Wellpath, and anyone acting on their behalf.

7      9.      The term "DEFENDANTS' SHOW CAUSE BRIEF" means the pleading

8  styled Defendant California Forensic Medical Group, Inc.'s Show Cause Response

9  Regarding Imposition of Contempt Sanctions, Dkt. No. 905.

10     10.     The term "DOCUMENT" means any writing, however produced or

11 reproduced, of every kind and regardless of where located, which is in YOUR possession,

12 custody, or control, including drafts; or in the possession, custody or control of any servant

13 or agent of YOU or of YOUR attorneys.  The terms include the following: electronically

14 recorded information such as electronic mail, text messages, html files, databases, data

15 processing cards or tapes, computerized data, computer diskettes, or information otherwise

16 contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes,

17 view-graphs, or any information maintained on digital, electronic, magnetic or other

18 media; medical records, including electronically kept medical records; and any other

19 summary, schedule, memorandum, note, statement, letter, telegram, interoffice

20 communication, report, diary, worksheet, list, graph, chart, or index, tape record, partial or

21 complete report of telephone or oral conversation, transcript or minutes, compilation,

22 tabulation, study, analysis, or other such writing or recording.  The terms "DOCUMENT"

23 and "DOCUMENTS" include any originals, all file copies, all other copies, no matter how

24 prepared, and all drafts prepared in connection with such DOCUMENTS, whether or not

25 used, as well as the file in which the DOCUMENTS are maintained.  A draft or non-

26 identical copy of a DOCUMENT, including a copy or duplicate of a DOCUMENT which

27 has any nonconforming notes, marginal annotations or other markings, and any

28 preliminary version, draft or revision of the foregoing, is a separate DOCUMENT within

the meaning of these terms.  The term "DOCUMENT" does not include any writing that constitutes a privileged or otherwise protected communication between YOU and YOUR attorneys.

11.     The term "EMPLOYEE" means any employee, director, officer, owner, CONTRACTOR, agent, or any other person working for or on behalf of an entity, such as the COUNTY, the SHERIFF'S DEPARTMENT, or WELLPATH.

12.     The term "ENFORCEMENT REQUIREMENT" means any of the forty-three requirements of the Settlement Agreement and Wellpath Implementation Plan identified as requirements 1-13 and 15-44 in the Order Granting Plaintiffs' Motion to Enforce Settlement Agreement and Wellpath Implementation Plan, Dkt. No. 838.

13.     The term "FINAL REPORTS" means the 11th Dental Care Audit Report, produced by neutral monitor produced by Dr. Viviane Winthrop on July 30, 2024 and filed with the Court as Dkt. Nos. 902-1, 902-2, 902-3 and 902-4; the 12th Mental Health Care Audit Report, produced by Dr. James Vess on July 23, 2024 and filed with the Court as Dkt. No. 895-1; and the 16th Medical Care Audit Report, produced by Dr. Bruce Barnett on June 4, 2024 and filed with the Court as Dkt. No. 882.

14.     The term "GRIEVANCE" means a written complaint completed by or on behalf of an INCARCERATED PERSON to DEFENDANTS by a person or entity other than Plaintiffs' counsel.

15.     The term "HEALTH CARE" means the provision of care or services, to identify and/or address health needs of an INCARCERATED PERSON (including medical, mental health, dental care, and vision care needs), whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

16.     The term "HEALTH CARE STAFF" means any person or entity providing HEALTH CARE services, or providing administrative and/or support services related to HEALTH CARE at the JAIL.

17.     The term "HEALTH SERVICES REQUEST" means a request for HEALTH

CARE services completed by or on behalf of an INCARCERATED PERSON, colloquially known as a "sick slip."

18.    The terms "INCARCERATED PERSON(S)" or "INCARCERATED PEOPLE" mean any person incarcerated, detained, or in the custody of the MONTEREY COUNTY SHERIFF'S DEPARTMENT.

19.    "IDENTIFY," with respect to an INCARCERATED PERSON or formerly INCARCERATED PERSON, means to state the INCARCERATED PERSON's full name, booking number, date of birth, booking date, and CURRENT housing location (if still in custody) or date of release (if no longer in custody).

20.    "IDENTIFY," with respect to a non-INCARCERATED PERSON, means to state the person's name, employer, professional title, credentials and licensing information if applicable, and professional address.

21.    The term "JAIL" means the Monterey County Jail, including all of its facilities.

22.    The term "MEDICAL PROVIDER" means WELLPATH employee who holds a licensure as a Doctor of Medicine, Family Nurse Practitioner, Physician Assistant or Registered Nurse.

22.    The term "POLICIES AND PROCEDURES" means policies, procedures, handbooks, advice, directives, training materials, forms, instructions, and guidelines that comprise established standards, regardless of the author.

23.    The terms "RELATED TO," "RELATING TO," or "REGARDING" means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains to directly or indirectly to, reflects, refers to, regards, relates to, responds to, states, summarizes, or in any way relevant to the particular subject matter identified.

24.    The term "SUBSTANTIAL COMPLIANCE" shall have the meaning set forth in ¶ 10 of the Settlement Agreement, Dkt. No. 494.

25.     The term "WELLPATH" means California Forensic Medical Group, Incorporated, a/k/a Wellpath, and anyone acting on their behalf.

**REQUESTS FOR ADMISSION**

<u>**REQUEST FOR ADMISSION NO. 1:**</u>

Admit that WELLPATH is not in SUBSTANTIAL COMPLIANCE with ENFORCEMENT REQUIREMENT No. 26, identified in Dkt. No. 905-4 as "Corrective Action Plans."

<u>**REQUEST FOR ADMISSION NO. 2:**</u>

Admit that WELLPATH is not in SUBSTANTIAL COMPLIANCE with ENFORCEMENT REQUIREMENT No. 34, identified in Dkt. No. 905-3 as "Chronic Care."

<u>**REQUEST FOR ADMISSION NO. 3:**</u>

Admit that WELLPATH is not in SUBSTANTIAL COMPLIANCE with ENFORCEMENT REQUIREMENT No. 39, identified in Dkt. No. 905-3 as "Endodontics."

<u>**REQUEST FOR ADMISSION NO. 4:**</u>

Admit that WELLPATH is not in SUBSTANTIAL COMPLIANCE with ENFORCEMENT REQUIREMENT No. 3, identified in Dkt. No. 905-1 as "Sick Call."

<u>**REQUEST FOR ADMISSION NO. 5:**</u>

Admit that WELLPATH is not in SUBSTANTIAL COMPLIANCE with ENFORCEMENT REQUIREMENT No. 11, identified in Dkt. No. 905 as "Medical Quality Assurance."

<u>**REQUEST FOR ADMISSION NO. 6:**</u>

Admit that WELLPATH is not in SUBSTANTIAL COMPLIANCE with ENFORCEMENT REQUIREMENT No. 12, identified in Dkt. No. 905-4 as "Initial Mental Health Screening."

<u>**REQUEST FOR ADMISSION NO. 7:**</u>

Admit that WELLPATH is not in SUBSTANTIAL COMPLIANCE with

ENFORCEMENT REQUIREMENT No. 16, identified in Dkt. No. 905-4 as "Chronic Care."

**REQUEST FOR ADMISSION NO. 8:**

Admit that WELLPATH is not in SUBSTANTIAL COMPLIANCE with ENFORCEMENT REQUIREMENT No. 20, identified in Dkt. No. 905-4 as "Consideration of Mental Health in Discipline."

**REQUEST FOR ADMISSION NO. 9:**

Admit that WELLPATH is not in SUBSTANTIAL COMPLIANCE with ENFORCEMENT REQUIREMENT No. 21, identified in Dkt. No. 905-4 as "Segregation Placement Screenings."

**REQUEST FOR ADMISSION NO. 10:**

Admit that WELLPATH is not in SUBSTANTIAL COMPLIANCE with ENFORCEMENT REQUIREMENT No. 22, identified in Dkt. No. 905-4 as "Mental Health Programming in Segregation."

**REQUEST FOR ADMISSION NO. 11:**

Admit that WELLPATH is not in SUBSTANTIAL COMPLIANCE with ENFORCEMENT REQUIREMENT No. 30, identified in Dkt. No. 905-3 as "Initial Health Inventory."

**REQUEST FOR ADMISSION NO. 12:**

Admit that WELLPATH is not in SUBSTANTIAL COMPLIANCE with ENFORCEMENT REQUIREMENT No. 32, as identified in Dkt. No. 905-3 as "Treatment for Urgent and Emergent Conditions."

**REQUEST FOR ADMISSION NO. 13:**

Admit that WELLPATH is not in SUBSTANTIAL COMPLIANCE with ENFORCEMENT REQUIREMENT No. 36, identified in Dkt. No. 905-3 as "Restorative and Palliative Care."

**REQUEST FOR ADMISSION NO. 14:**

Admit that a WELLPATH employee developed the AUDIT TOOL used in Exhibit

56 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905.

**REQUEST FOR ADMISSION NO. 15:**

Admit that Dr. Alexander Meagher did not develop the AUDIT TOOL used in Exhibit 56 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905.

**REQUEST FOR ADMISSION NO. 16:**

Admit that Joshua Rafinski did not develop the AUDIT TOOL used in Exhibit 56 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905.

**REQUEST FOR ADMISSION NO. 17:**

Admit that a WELLPATH employee developed the AUDIT TOOL used in Exhibit 57 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905.

**REQUEST FOR ADMISSION NO. 18:**

Admit that Dr. Brian Waxler did not develop the AUDIT TOOL used in Exhibit 57 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905.

**REQUEST FOR ADMISSION NO. 19:**

Admit that Joshua Rafinski did not develop the AUDIT TOOL used in Exhibit 57 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905.

**REQUEST FOR ADMISSION NO. 20:**

Admit that a WELLPATH employee developed the AUDIT TOOL used in Exhibit 58 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905.

**REQUEST FOR ADMISSION NO. 21:**

Admit that Dr. Morton Rosenberg did not develop the AUDIT TOOL used in Exhibit 58 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905.

**REQUEST FOR ADMISSION NO. 22:**

Admit that Joshua Rafinski did not develop the AUDIT TOOL used in Exhibit 58 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905.

**REQUEST FOR ADMISSION NO. 23:**

Admit that all FINAL REPORTS produced by the neutral monitors in this case and filed with the Court are admissible in evidence.

1
**REQUEST FOR ADMISSION NO. 24:**

2
Admit that all DOCUMENTS that WELLPATH has produced to Plaintiffs'

3
counsel, which also carry a Bates stamp, are authentic.

4

5
DATED:  August 23, 2024          Respectfully submitted,

6
ROSEN BIEN GALVAN & GRUNFELD LLP

7

8
By:   */s/ Caroline E. Jackson*

9
Caroline E. Jackson

10
Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT WELLPATH

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
VAN SWEARINGEN – 259809
CAROLINE E. JACKSON – 329980
MAYA E. CAMPBELL – 345180
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:    mbien@rbgg.com
              egalvan@rbgg.com
              vswearingen@rbgg.com
              cjackson@rbgg.com
              mcampbell@rbgg.com

CORENE KENDRICK – 226642
KYLE VIRGIEN – 278747
ACLU NATIONAL PRISON PROJECT
425 California St., Ste. 700
San Francisco, CA 94104
Telephone:    (202) 393-4930
Facsimile:    (202) 393-4931
Email:    ckendrick@aclu.org
              kvirgien@aclu.org

AVRAM D. FREY
(*admitted pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:    (415) 621-2493
Facsimile:    (415) 255-8437
Email:    afrey@aclunc.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED., a California corporation; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 5:13-cv-02354-BLF<br><br>**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT WELLPATH**<br><br>Judge:  Beth Labson Freeman<br>Hearing Date:  Dec. 16-17, 2024 |

[4541751.3]

PROPOUNDING PARTY:          Plaintiffs JESSE HERNANDEZ et al.

RESPONDING PARTY:           Defendant WELLPATH

SET NO.:                    ONE (1)

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

   PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 34, Plaintiffs, on behalf of themselves and all persons similarly situated, by their attorneys, hereby demand that Defendant Wellpath, respond to the following document requests, and produce or permit inspection and copying of the original documents and materials described below at Rosen Bien Galvan & Grunfeld LLP, fourteen (14) days after service of this demand.

**INSTRUCTIONS**

   1.     In responding to this Request for Production of Documents, you are requested to furnish all documents which are in your possession, custody, or control, including information in the possession of your attorneys, or other persons directly or indirectly employed or retained by you, or connected with you or your attorneys, or anyone else acting on your behalf or otherwise subject to your control.

   2.     In responding to this Request for Production of Documents, every effort shall be made to produce exhibits in Excel format.

   3.     If an electronically generated document does not currently exist as a "hard copy" and if it has been deleted from the hard drives of personal computers, you are requested to retrieve it from any other electronic medium (e.g., a network server or a backup tape disc) from which it is retrievable.

   4.     If you cannot respond to any document request in full, respond to the fullest extent possible, explain why you cannot respond to the remainder, and describe the nature of the documents which you cannot furnish.

   5.     If you object to part of a request and refuse to answer that part, state your objection and respond to the remaining portion of that request.  If you object to the scope or time period of a request and refuse to respond for that scope or time period, state your

1  objection and respond to the request for the scope or time period you believe is

2  appropriate.

3      6.    With respect to any requested document that you refuse to produce in

4  response to these Requests for Production on the basis of any asserted privilege, please

5  state:

6           a.    the full identity of the document including:

7                 i.    the nature of the document (e.g., letter, memorandum, etc.);

8                 ii.   date of the document;

9                 iii.  its title (if any);

10                iv.   its authors, addressees, recipients, or parties;

11                v.    the identity of any other individuals to whom the document

12                      was disseminated and their relationship to Defendants;

13                vi.   whether the document includes any attachments and, if so, a

14                      description of the attachments; and

15                vii.  its present location and identity of its custodian;

16           b.    whether your objection or refusal is directed to the entire document or

17                part thereof;

18                i.    if your objection or refusal goes to part of the document,

19                      specify the specific part(s) of the document to which your

20                      objection or refusal is directed; and

21                ii.   the specific factual basis which gives rise to the objection or

22                      refusal and the specific legal ground on which the objection or

23                      refusal is based.

24      7.    If any of the following requested documents cannot be located or produced

25  after exercising due diligence to secure the information, please so state and respond to the

26  extent possible, specifying your inability to respond fully, and stating whatever

27  information you have relating to the non-produced documents.  If your response is

28  qualified in any particular manner, please set forth the details of such qualification.

## DEFINITIONS

Unless otherwise indicated, the following definitions and terms shall apply to these requests for production:

1.  The terms "ANY" and "ALL," as used herein, shall include "each" and "every" and are not to be construed to limit an interrogatory.

2.  The term "AUDIT PERIOD" means the period of time covered by the audits that Defendants produce in support of Defendant California Forensic Medical Group, Inc.'s Show Cause Response Regarding Imposition of Contempt Sanctions, Dkt. No. 905, which Defendants have stated is March 25, 2024 through April 8, 2024.  See Dkt. No. 905 at 3.

3.  The term "AUDIT TOOL" shall have the same meaning as applied in the Declaration of Dr. Alexander Meagher Regarding Medical Audit Findings, Dkt. No. 905-1, the Declaration of Dr. Morton Rosenberg Regarding Dental Audit Findings, Dkt. No. 905-3, and the Declaration of Dr. Brian Waxler Regarding Mental Health Audit Findings, Dkt. No. 905-4.

4.  The term "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records,  reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including an Android or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, text messages, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X, Zoom, and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

5.  The term "CONTINUOUS QUALITY IMPROVEMENT" means Wellpath's

1  self-auditing process, examples of which are set forth in Exhibits 49 and 50 to
2  DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905.

3         6.       The term "CorEMR" means Wellpath's electronic medical records system.

4         7.       The term "COUNTY" means Defendant Monterey County and anyone
5  acting on its behalf.

6         8.       The terms "DEFENDANTS," "YOU," or "YOUR" means the County of
7  Monterey; Monterey County Sheriff's Office; California Forensic Medical Group,
8  Incorporated, a/k/a Wellpath, and anyone acting on their behalf.

9         9.       The term "DEFENDANTS' SHOW CAUSE BRIEF" means the pleading
10  styled Defendant California Forensic Medical Group, Inc.'s Show Cause Response
11  Regarding Imposition of Contempt Sanctions, Dkt. No. 905.

12         10.      The term "DOCUMENT" means any writing, however produced or
13  reproduced, of every kind and regardless of where located, which is in YOUR possession,
14  custody, or control, including drafts; or in the possession, custody or control of any servant
15  or agent of YOU or of YOUR attorneys.  The terms include the following: electronically
16  recorded information such as electronic mail, text messages, html files, databases, data
17  processing cards or tapes, computerized data, computer diskettes, or information otherwise
18  contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes,
19  view-graphs, or any information maintained on digital, electronic, magnetic or other
20  media; medical records, including electronically kept medical records; and any other
21  summary, schedule, memorandum, note, statement, letter, telegram, interoffice
22  communication, report, diary, worksheet, list, graph, chart, or index, tape record, partial or
23  complete report of telephone or oral conversation, transcript or minutes, compilation,
24  tabulation, study, analysis, or other such writing or recording.  The terms "DOCUMENT"
25  and "DOCUMENTS" include any originals, all file copies, all other copies, no matter how
26  prepared, and all drafts prepared in connection with such DOCUMENTS, whether or not
27  used, as well as the file in which the DOCUMENTS are maintained.  A draft or non-
28  identical copy of a DOCUMENT, including a copy or duplicate of a DOCUMENT which

has any nonconforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing, is a separate DOCUMENT within the meaning of these terms.  The term "DOCUMENT" does not include any writing that constitutes a privileged or otherwise protected communication between YOU and YOUR attorneys.

11.     The term "EMPLOYEE" means any employee, director, officer, owner, CONTRACTOR, agent, or any other person working for or on behalf of an entity, such as the COUNTY, the SHERIFF'S DEPARTMENT, or WELLPATH.

12.     The term "ENFORCEMENT REQUIREMENT" means any of the forty-three requirements of the Settlement Agreement and Wellpath Implementation Plan identified as requirements 1-13 and 15-44 in the Order Granting Plaintiffs' Motion to Enforce Settlement Agreement and Wellpath Implementation Plan, Dkt. No. 838.

13.     The term "FINAL REPORTS" means the 11th Dental Care Audit Report, produced by neutral monitor produced by Dr. Viviane Winthrop on July 30, 2024 and filed with the Court as Dkt. Nos. 902-1, 902-2, 902-3 and 902-4; the 12th Mental Health Care Audit Report, produced by Dr. James Vess on July 23, 2024 and filed with the Court as Dkt. No. 895-1; and the 16th Medical Care Audit Report, produced by Dr. Bruce Barnett on June 4, 2024 and filed with the Court as Dkt. No. 882.

14.     The term "GRIEVANCE" means a written complaint completed by or on behalf of an INCARCERATED PERSON to DEFENDANTS by a person or entity other than Plaintiffs' counsel.

15.     The term "HEALTH CARE" means the provision of care or services, to identify and/or address health needs of an INCARCERATED PERSON (including medical, mental health, dental care, and vision care needs), whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

16.     The term "HEALTH CARE STAFF" means any person or entity providing HEALTH CARE services, or providing administrative and/or support services related to

HEALTH CARE at the JAIL.

17.     The term "HEALTH SERVICES REQUEST" means a request for HEALTH CARE services completed by or on behalf of an INCARCERATED PERSON, colloquially known as a "sick slip."

18.     The terms "INCARCERATED PERSON(S)" or "INCARCERATED PEOPLE" mean any person incarcerated, detained, or in the custody of the MONTEREY COUNTY SHERIFF'S DEPARTMENT.

19.     "IDENTIFY," with respect to an INCARCERATED PERSON or formerly INCARCERATED PERSON, means to state the INCARCERATED PERSON's full name, booking number, date of birth, booking date, and CURRENT housing location (if still in custody) or date of release (if no longer in custody).

20.     "IDENTIFY," with respect to a non-INCARCERATED PERSON, means to state the person's name, employer, professional title, credentials and licensing information if applicable, and professional address.

21.     The term "JAIL" means the Monterey County Jail, including all of its facilities.

22.     The term "MEDICAL PROVIDER" means WELLPATH employee who holds a licensure as a Doctor of Medicine, Family Nurse Practitioner, Physician Assistant or Registered Nurse.

23.     The term "POLICIES AND PROCEDURES" means policies, procedures, handbooks, advice, directives, training materials, forms, instructions, and guidelines that comprise established standards, regardless of the author.

24.     The terms "RELATED TO," "RELATING TO," or "REGARDING" means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains to directly or indirectly to, reflects, refers to, regards, relates to, responds to, states, summarizes, or in any way relevant to the particular subject matter identified.

25.     The term "SUBSTANTIAL COMPLIANCE" shall have the meaning set forth in ¶ 10 of the Settlement Agreement, Dkt. No. 494.

26.     The term "WELLPATH" means California Forensic Medical Group, Incorporated, a/k/a Wellpath, and anyone acting on their behalf.

<b>REQUESTS FOR PRODUCTION</b>

**REQUEST FOR PRODUCTION NO. 1:**

ANY and ALL DOCUMENTS that WELLPATH intends to introduce into evidence during the evidentiary hearing currently scheduled for December 16-17, 2024.

**REQUEST FOR PRODUCTION NO. 2:**

Read-only access to CorEMR, including the ability to generate reports.

**REQUEST FOR PRODUCTION NO. 3:**

The complete medical record for all individuals listed in Exhibits 1-44 in support of DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905, produced both in Excel format and in Portable Document Format (PDF).

**REQUEST FOR PRODUCTION NO. 4:**

The complete medical record for all individuals whose records were reviewed in preparation of Exhibits 49 and 50 in support of DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905, produced both in Excel format and in Portable Document Format (PDF).

**REQUEST FOR PRODUCTION NO. 5:**

DOCUMENTS sufficient to show all individuals at the Jail who were under a "mental health" alert or "SMI" alert during the AUDIT PERIOD, such as a report from CorEMR.

**REQUEST FOR PRODUCTION NO. 6:**

DOCUMENTS sufficient to show all individuals who were waiting to be scheduled for off-site specialty care during the AUDIT PERIOD, showing the date the task was created and (if applicable) completed, such as a task report from CorEMR.  (Note: It is Plaintiffs' understanding that the task report listing individuals waiting to be scheduled for off-site appointments is distinct from the task report listing patients who have been

1  scheduled for such appointments, which was produced as Exhibits 4 and 5 in support of

2  DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905).

3  **REQUEST FOR PRODUCTION NO. 7:**

4      DOCUMENTS sufficient to show all individuals referred for chronic care

5  appointments following their intake assessment, such as a task report from CorEMR.

6  **REQUEST FOR PRODUCTION NO. 8:**

7      DOCUMENTS sufficient to show all individuals whose medical records indicate an

8  affirmative response to the following questions, which appear on the Receiving Screening

9  Form produced to Plaintiffs as CMFG February 2024 001324:

10  • Behavior:  Appears under the influence/intoxicated/withdrawing from substance.

11  • Does the patient appear to be acutely intoxicated?

12  • Do you have, or have you ever had:  Diabetes.

13  • Do you have, or have you ever had:  High Blood Pressure.

14  • Do you have, or have you ever had:  Heart Condition.

15  • Do you have, or have you ever had:  Asthma.

16  • Do you have, or have you ever had:  COPD.

17  • Do you have, or have you ever had:  Kidney Disease.

18  • Do you have, or have you ever had:  Seizure Disorder.

19  • Do you have, or have you ever had:  HIV/AIDS.

20  • Do you have, or have you ever had:  Hepatitis.

21  • For "Do you use: Alcohol":  Frequency: daily.

22  • For "Do you use: Alcohol":  Currently withdrawing.

23  • For "Do you use: Benzodiazepines":  Frequency: daily.

24  • For "Do you use: Benzodiazepines":  Currently withdrawing.

25  • For "Do you use: Opiates": Frequency: daily.

26  • For "Do you use: Opiates":  Currently withdrawing.

27  • For "Do you use: Synthetics":  Frequency: daily.

28  • For "Do you use: Synthetics":  Currently withdrawing.

1  •  For "Do you use: Methamphetamines":  Frequency: daily.

2  •  For "Do you use: Methamphetamines":  Currently withdrawing.

3  •  Do you, or are you: Feeling so hopeless you don't want to live another moment?

4  •  Have you wished you were dead or wished you could go to sleep and not wake up?

5  •  Have you had any actual thoughts of killing yourself?

6  •  Have you been thinking about how you might kill yourself?

7  **REQUEST FOR PRODUCTION NO. 9:**

8  DOCUMENTS sufficient to show all visits to holding and isolation cells by a

9  MEDICAL PROVIDER during the AUDIT PERIOD, such as a task report from CorEMR.

10  **REQUEST FOR PRODUCTION NO. 10:**

11  DOCUMENTS sufficient to show all individuals on Medication Assisted Treatment

12  for a Substance Use Disorder who were incarcerated at the JAIL during the AUDIT

13  PERIOD, such as a report from CorEMR.

14  **REQUEST FOR PRODUCTION NO. 11:**

15  DOCUMENTS sufficient to show all individuals with positive PPD reads who were

16  incarcerated at the JAIL during the AUDIT PERIOD, such as a report from CorEMR.

17  **REQUEST FOR PRODUCTION NO. 12:**

18  For each individual listed in Exhibits 1, 35, 36 and 41 in support of

19  DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905, all HEALTH SERVICES

20  REQUESTS of any type and all GRIEVANCES submitted between March 20, 2024 and

21  April 25, 2024.  These documents may be produced in Portable Document Format (PDF).

22  **REQUEST FOR PRODUCTION NO. 13:**

23  For each individual whom Dr. Meagher, Dr. Rosenberg or Dr. Waxler determined

24  did not experience "harm" due to a deficiency in their care, all HEALTH SERVICES

25  REQUESTS of any type and all GRIEVANCES submitted between October 30, 2023 and

26  August 30, 2024.  These documents may be produced in Portable Document Format

27  (PDF).

28  / / /

**REQUEST FOR PRODUCTION NO. 14:**

A blank copy of all forms that WELLPATH had available for use during the AUDIT PERIOD to obtain informed consent for dental procedures or treatment of any kind.  These documents may be produced in Portable Document Format (PDF).

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS that WELLPATH contends sets forth the standard of care for medical, mental health, and dental care that is currently applicable to this case.  These documents may be produced in Portable Document Format (PDF).

**REQUEST FOR PRODUCTION NO. 16:**

Any and all DOCUMENTS reflecting COMMUNICATIONS between DEFENDANTS and any member of the HEALTH CARE STAFF who began working at the JAIL in September 2023 and whose employment ended in December 2023 or January 2024.  These documents may be produced in Portable Document Format (PDF).

**REQUEST FOR PRODUCTION NO. 17:**

For the time period January 1, 2024 to April 30, 2024, any and all DOCUMENTS reflecting COMMUNICATIONS between DEFENDANTS and any member of the HEALTH CARE STAFF in which the member of the HEALTH CARE STAFF expressed concern or disapproval regarding the care provided to individuals at the JAIL or the training the HEALTH CARE STAFF member had received upon hire.  These documents may be produced in Portable Document Format (PDF).

**REQUEST FOR PRODUCTION NO. 18:**

For Dr. Alexander Meagher, Dr. Brian Waxler, Dr. Morton Rosenberg, Joshua Rafinski, and each person that WELLPATH intends to call as an expert witness, any and all facts, data, or other DOCUMENTS that the expert witness relied upon to form their opinion, including any and all DOCUMENTS reflecting COMMUNICATIONS between WELLPATH or WELLPATH's attorneys and the expert witness, such as COMMUNICATIONS related to compensation for the expert's study or testimony, facts or data that the attorney provided and that the expert considered in forming the opinions to

be expressed, assumptions that the attorney provided and that the expert relied on in forming the opinions to be expressed.

**REQUEST FOR PRODUCTION NO. 19:**

All retainer agreements for Dr. Alexander Meagher, Dr. Brian Waxler, Dr. Morton Rosenberg, and Joshua Rafinski.  These documents may be produced in Portable Document Format (PDF).

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS reflecting time spent working on this case, including invoices and evidence of payment, for Dr. Alexander Meagher, Dr. Brian Waxler, Dr. Morton Rosenberg, and Joshua Rafinski.  These documents may be produced in Portable Document Format (PDF).

**REQUEST FOR PRODUCTION NO. 21:**

For Dr. Alexander Meagher, Dr. Brian Waxler, Dr. Morton Rosenberg, Joshua Rafinski, and each person that WELLPATH intends to call as an expert witness, all COMMUNICATIONS regarding the FINAL REPORTS of Dr. Barnett, Dr. Vess and Dr. Winthrop.  These documents may be produced in Portable Document Format (PDF).

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS related to the AUDIT TOOLS used in Exhibits 56-58 to DEFENDANTS' SHOW CAUSE BRIEF, Dkt. No. 905, including non-final drafts of the AUDIT TOOLS, COMMUNICATIONS regarding the AUDIT TOOLS, the qualifications of the individual primarily responsible for developing each AUDIT TOOL, and all DOCUMENTS showing facts or data considered during the development of the AUDIT TOOLS.

**REQUEST FOR PRODUCTION NO. 23:**

For each fact identified in response to Interrogatory No. 8 as incorrect, any and all DOCUMENTS supporting WELLPATH's contention that the fact is incorrect.

**REQUEST FOR PRODUCTION NO. 24:**

Any and all DOCUMENTS that any WELLPATH witness relies upon to refresh

1 | their recollection or prepare to testify in response to Plaintiffs' 30(b)(6) deposition notice.

2 | **REQUEST FOR PRODUCTION NO. 25:**

3 | Other than DOCUMENTS already produced to Plaintiffs, any and all

4 | DOCUMENTS reflecting self-audits or other CONTINUOUS QUALITY

5 | IMPROVEMENT ("CQI") measures conducted between March 1, 2024 and June 30,

6 | 2024, including the medical records and other patient records reviewed and the Excel

7 | spreadsheets showing the raw data.

8 | **REQUEST FOR PRODUCTION NO. 26:**

9 | For all Interrogatories, all DOCUMENTS that support the information set forth in

10 | DEFENDANTS' responses to Plaintiffs' Interrogatories.

11 | **REQUEST FOR PRODUCTION NO. 27:**

12 | For all Requests for Admission where WELLPATH's response was anything less

13 | than an unqualified admission, all DOCUMENTS that support YOUR response.

14 |

15 | DATED:  August 23, 2024                    Respectfully submitted,

16 |                                                            ROSEN BIEN GALVAN & GRUNFELD LLP

17 |

18 |                                                            By:   */s/ Caroline E. Jackson*

19 |                                                                    Caroline E. Jackson

20 |                                                            Attorneys for Plaintiffs

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1  MICHAEL W. BIEN – 096891
   ERNEST GALVAN – 196065
2  VAN SWEARINGEN – 259809
   CAROLINE E. JACKSON – 329980
3  MAYA E. CAMPBELL – 345180
   ROSEN BIEN
4  GALVAN & GRUNFELD LLP
   101 Mission Street, Sixth Floor
5  San Francisco, California  94105-1738
   Telephone:    (415) 433-6830
6  Facsimile:    (415) 433-7104
   Email:        mbien@rbgg.com
7                egalvan@rbgg.com
                 vswearingen@rbgg.com
8                cjackson@rbgg.com
                 mcampbell@rbgg.com
9
   CORENE KENDRICK – 226642
10 KYLE VIRGIEN – 278747
   ACLU NATIONAL PRISON PROJECT
11 425 California St., Ste. 700
   San Francisco, CA 94104
12 Telephone:    (202) 393-4930
   Facsimile:    (202) 393-4931
13 Email:        ckendrick@aclu.org
                 kvirgien@aclu.org
14
   Attorneys for Plaintiffs
15

AVRAM D. FREY
(*admitted pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:    (415) 621-2493
Facsimile:    (415) 255-8437
Email:        afrey@aclunc.org

16                  UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18 JESSE HERNANDEZ et al., on behalf of
   themselves and all others similarly situated,

19                     Plaintiffs,

20        v.

21 COUNTY OF MONTEREY; MONTEREY
22 COUNTY SHERIFF'S OFFICE;
   CALIFORNIA FORENSIC MEDICAL
23 GROUP, INCORPORATED., a California
   corporation; and DOES 1 to 20, inclusive,
24
                       Defendants.
25

Case No. 5:13-cv-02354-BLF

**PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT
COUNTY OF MONTEREY**

Judge:   Beth Labson Freeman

26
27
28
[4547369.3]

Case No. 5:13-cv-02354-BLF

PROPOUNDING PARTY:     Plaintiffs JESSE HERNANDEZ et al.

RESPONDING PARTY:     Defendant COUNTY OF MONTEREY

SET NO.:     ONE (1)

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

     PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 34, Plaintiffs, on behalf of themselves and all persons similarly situated, by their attorneys, hereby demand that Defendant County of Monterey, respond to the following document requests, and produce or permit inspection and copying of the original documents and materials described below at Rosen Bien Galvan & Grunfeld LLP, fourteen (14) days after service of this demand.

## INSTRUCTIONS

1.     In responding to this Request for Production of Documents, you are requested to furnish all documents which are in your possession, custody, or control, including information in the possession of your attorneys, or other persons directly or indirectly employed or retained by you, or connected with you or your attorneys, or anyone else acting on your behalf or otherwise subject to your control.

2.     In responding to this Request for Production of Documents, every effort shall be made to produce exhibits in Excel format.

3.     If an electronically generated document does not currently exist as a "hard copy" and if it has been deleted from the hard drives of personal computers, you are requested to retrieve it from any other electronic medium (e.g., a network server or a backup tape disc) from which it is retrievable.

4.     If you cannot respond to any document request in full, respond to the fullest extent possible, explain why you cannot respond to the remainder, and describe the nature of the documents which you cannot furnish.

5.     If you object to part of a request and refuse to answer that part, state your objection and respond to the remaining portion of that request. If you object to the scope or time period of a request and refuse to respond for that scope or time period, state your

1    objection and respond to the request for the scope or time period you believe is

2    appropriate.

3         6.    With respect to any requested document that you refuse to produce in

4    response to these Requests for Production on the basis of any asserted privilege, please

5    state:

6              a.    the full identity of the document including:

7                    i.     the nature of the document (e.g., letter, memorandum, etc.);

8                    ii.    date of the document;

9                    iii.   its title (if any);

10                   iv.    its authors, addressees, recipients, or parties;

11                   v.     the identity of any other individuals to whom the document

12                          was disseminated and their relationship to Defendants;

13                   vi.    whether the document includes any attachments and, if so, a

14                          description of the attachments; and

15                   vii.   its present location and identity of its custodian;

16             b.    whether your objection or refusal is directed to the entire document or

17                   part thereof;

18                   i.     if your objection or refusal goes to part of the document,

19                          specify the specific part(s) of the document to which your

20                          objection or refusal is directed; and

21                   ii.    the specific factual basis which gives rise to the objection or

22                          refusal and the specific legal ground on which the objection or

23                          refusal is based.

24        7.    If any of the following requested documents cannot be located or produced

25   after exercising due diligence to secure the information, please so state and respond to the

26   extent possible, specifying your inability to respond fully, and stating whatever

27   information you have relating to the non-produced documents.  If your response is

28   qualified in any particular manner, please set forth the details of such qualification.

**DEFINITIONS**

Unless otherwise indicated, the following definitions and terms shall apply to these requests for production:

1.      The terms "ANY" and "ALL," as used herein, shall include "each" and "every" and are not to be construed to limit an interrogatory.

2.      The term "AUDIT PERIOD" means the period of time covered by the audits that Defendants produce in support of Defendant California Forensic Medical Group, Inc.'s Show Cause Response Regarding Imposition of Contempt Sanctions, Dkt. No. 905, which Defendants have stated is March 25, 2024 through April 8, 2024.  See Dkt. No. 905 at 3.

3.      The term "AUDIT TOOL" shall have the same meaning as applied in the Declaration of Dr. Alexander Meagher Regarding Medical Audit Findings, Dkt. No. 905-1, the Declaration of Dr. Morton Rosenberg Regarding Dental Audit Findings, Dkt. No. 905-3, and the Declaration of Dr. Brian Waxler Regarding Mental Health Audit Findings, Dkt. No. 905-4.

4.      The term "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records,  reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including an Android or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, text messages, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X, Zoom, and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

5.      The term "CONTINUOUS QUALITY IMPROVEMENT" means Wellpath's

[4547369.3]

3

1   self-auditing process, examples of which are set forth in Exhibits 49 and 50 to Defendants'

2   Show Cause Brief, Dkt. No. 905.

3       6.      The term "CorEMR" means Wellpath's electronic medical records system.

4       7.      The term "COUNTY" means Defendant Monterey County and anyone

5   acting on its behalf.

6       8.      The terms "DEFENDANTS," "YOU," or "YOUR" means the County of

7   Monterey; Monterey County Sheriff's Office; California Forensic Medical Group,

8   Incorporated, a/k/a Wellpath, and anyone acting on their behalf.

9       9.      The term "DEFENDANTS' SHOW CAUSE BRIEF" means the pleading

10  styled Defendant California Forensic Medical Group, Inc.'s Show Cause Response

11  Regarding Imposition of Contempt Sanctions, Dkt. No. 905.

12      10.     The term "DOCUMENT" means any writing, however produced or

13  reproduced, of every kind and regardless of where located, which is in YOUR possession,

14  custody, or control, including drafts; or in the possession, custody or control of any servant

15  or agent of YOU or of YOUR attorneys.  The terms include the following: electronically

16  recorded information such as electronic mail, text messages, html files, databases, data

17  processing cards or tapes, computerized data, computer diskettes, or information otherwise

18  contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes,

19  view-graphs, or any information maintained on digital, electronic, magnetic or other

20  media; medical records, including electronically kept medical records; and any other

21  summary, schedule, memorandum, note, statement, letter, telegram, interoffice

22  communication, report, diary, worksheet, list, graph, chart, or index, tape record, partial or

23  complete report of telephone or oral conversation, transcript or minutes, compilation,

24  tabulation, study, analysis, or other such writing or recording.  The terms "DOCUMENT"

25  and "DOCUMENTS" include any originals, all file copies, all other copies, no matter how

26  prepared, and all drafts prepared in connection with such DOCUMENTS, whether or not

27  used, as well as the file in which the DOCUMENTS are maintained.  A draft or non-

28  identical copy of a DOCUMENT, including a copy or duplicate of a DOCUMENT which

has any nonconforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing, is a separate DOCUMENT within the meaning of these terms.  The term "DOCUMENT" does not include any writing that constitutes a privileged or otherwise protected communication between YOU and YOUR attorneys.

11.     The term "EMPLOYEE" means any employee, director, officer, owner, CONTRACTOR, agent, or any other person working for or on behalf of an entity, such as the COUNTY, the SHERIFF'S DEPARTMENT, or WELLPATH.

12.     The term "ENFORCEMENT REQUIREMENT" means any of the forty-three requirements of the Settlement Agreement and Wellpath Implementation Plan identified as requirements 1-13 and 15-44 in the Order Granting Plaintiffs' Motion to Enforce Settlement Agreement and Wellpath Implementation Plan, Dkt. No. 838.

13.     The term "FINAL REPORTS" means the 11th Dental Care Audit Report, produced by neutral monitor produced by Dr. Viviane Winthrop on July 30, 2024 and filed with the Court as Dkt. Nos. 902-1, 902-2, 902-3 and 902-4; the 12th Mental Health Care Audit Report, produced by Dr. James Vess on July 23, 2024 and filed with the Court as Dkt. No. 895-1; and the 16th Medical Care Audit Report, produced by Dr. Bruce Barnett on June 4, 2024 and filed with the Court as Dkt. No. 882.

14.     The term "GRIEVANCE" means a written complaint completed by or on behalf of an INCARCERATED PERSON to DEFENDANTS by a person or entity other than Plaintiffs' counsel.

15.     The term "HEALTH CARE" means the provision of care or services, to identify and/or address health needs of an INCARCERATED PERSON (including medical, mental health, dental care, and vision care needs), whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

16.     The term "HEALTH CARE STAFF" means any person or entity providing HEALTH CARE services, or providing administrative and/or support services related to

1   HEALTH CARE at the JAIL.

2        17.    The term "HEALTH SERVICES REQUEST" means a request for HEALTH

3   CARE services completed by or on behalf of an INCARCERATED PERSON, colloquially

4   known as a "sick slip."

5        18.    The terms "INCARCERATED PERSON(S)" or "INCARCERATED

6   PEOPLE" mean any person incarcerated, detained, or in the custody of the MONTEREY

7   COUNTY SHERIFF'S DEPARTMENT.

8        19.    "IDENTIFY," with respect to an INCARCERATED PERSON or formerly

9   INCARCERATED PERSON, means to state the INCARCERATED PERSON's full name,

10  booking number, date of birth, booking date, and CURRENT housing location (if still in

11  custody) or date of release (if no longer in custody).

12       20.    "IDENTIFY," with respect to a non-INCARCERATED PERSON, means to

13  state the person's name, employer, professional title, credentials and licensing information

14  if applicable, and professional address.

15       21.    The term "JAIL" means the Monterey County Jail, including all of its

16  facilities.

17       22.    The term "POLICIES AND PROCEDURES" means policies, procedures,

18  handbooks, advice, directives, training materials, forms, instructions, and guidelines that

19  comprise established standards, regardless of the author.

20       23.    The terms "RELATED TO," "RELATING TO," or "REGARDING" means,

21  without limitation, anything that, in whole or in part, analyzes, comments upon, comprises,

22  concerns, constitutes, contains, describes, discusses, embodies, evidences, explains,

23  identifies, manifests, mentions, pertains to directly or indirectly to, reflects, refers to,

24  regards, relates to, responds to, states, summarizes, or in any way relevant to the particular

25  subject matter identified.

26       22.    The term "MEDICAL PROVIDER" means WELLPATH employee who

27  holds a licensure as a Doctor of Medicine, Family Nurse Practitioner, Physician Assistant

28  or Registered Nurse.

PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT COUNTY OF MONTEREY

1       24.    The term "SUBSTANTIAL COMPLIANCE" shall have the meaning set

2   forth in ¶ 10 of the Settlement Agreement, Dkt. No. 494.

3       25.    The term "WELLPATH" means California Forensic Medical Group,

4   Incorporated, a/k/a Wellpath, and anyone acting on their behalf.

5   **REQUESTS FOR PRODUCTION**

6   **REQUEST FOR PRODUCTION NO. 1:**

7       All Disciplinary Action Reports issued during the AUDIT PERIOD (these

8   documents do not need to be produced in Excel format).

9   **REQUEST FOR PRODUCTION NO. 2:**

10      DOCUMENTS sufficient to show all individuals incarcerated at the JAIL on

11  April 8, 2024, including their name, booking number, housing location, and booking date.

12  **REQUEST FOR PRODUCTION NO. 3:**

13      DOCUMENTS sufficient to show all individuals incarcerated at the JAIL on

14  March 26, 2024, including their name, booking number, housing location, booking date,

15  and release date.

16  **REQUEST FOR PRODUCTION NO. 4:**

17      DOCUMENTS sufficient to show all individuals transferred from the JAIL to a

18  governmental institution of any kind, including the Department of State Hospitals and the

19  California Department of Corrections and Rehabilitation, during the AUDIT PERIOD.

20

21  DATED:  August 23, 2024        Respectfully submitted,

22                      ROSEN BIEN GALVAN & GRUNFELD LLP

23

24                      By:  */s/ Caroline E. Jackson*

25                          Caroline E. Jackson

26                      Attorneys for Plaintiffs

27

28

[4547369.3]

PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT COUNTY OF MONTEREY