MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
VAN SWEARINGEN – 259809
CAROLINE E. JACKSON – 329980
BEN HATTEM – 335232
MAYA E. CAMPBELL – 345180
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: mbien@rbgg.com
egalvan@rbgg.com
vswearingen@rbgg.com
cjackson@rbgg.com
bhattem@rbgg.com
mcampbell@rbgg.com

CORENE KENDRICK – 226642
KYLE VIRGIEN – 278747
ACLU NATIONAL PRISON PROJECT
425 California St., Ste. 700
San Francisco, CA 94104
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
Email: ckendrick@aclu.org
kvirgien@aclu.org

AVRAM D. FREY
(*admitted pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: afrey@aclunc.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED., a California corporation; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 5:13-cv-02354-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND IMPLEMENTATION PLANS**<br><br>Judge: Hon. Beth Labson Freeman<br><br>Date: July 24, 2025<br>Time: 9:00 a.m.<br>Crtrm.: 1 |

[4678041.5]

Case No. 5:13-cv-02354-BLF

PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND IMPLEMENTATION PLANS

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ..................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................................2

LEGAL STANDARD ...................................................................................................................4

ARGUMENT .................................................................................................................................5

I. THE COUNTY IS RESPONSIBLE FOR PROVIDING HEALTH CARE TO PEOPLE IN ITS CUSTODY, INCLUDING THROUGH ITS CONTRACTORS ...............5

II. THE LATEST MONITORING REPORTS SHOW THAT THE COUNTY IS VIOLATING THE REQUIREMENTS OF THE SETTLEMENT AGREEMENT AND IMPLEMENTATION PLANS ................................................................................6

    A. Lack of Substantial Compliance with Medical Requirements ..................................7

    B. Lack of Substantial Compliance with Mental Health Requirements ........................7

    C. Lack of Substantial Compliance with Dental Requirements....................................8

III. JOINT AND SEVERAL LIABILITY FOR SANCTIONS IS THE APPROPRIATE REMEDY .........................................................................................................................9

IV. PLAINTIFFS' PROPOSED ORDER COMPLIES WITH THE PLRA .............................10

CONCLUSION ............................................................................................................................10

# TABLE OF AUTHORITIES

Page

**CASES**

*Ancata v. Prison Health Servs., Inc.*,
    769 F.2d 700 (11th Cir. 1985) ........................................................................................... 5

*Brown v. Plata*,
    563 U.S. 493 (2011) ........................................................................................................... 5

*Coleman v. Newsom*,
    131 F.4th 948 (9th Cir. 2025) ................................................................................. 4, 7, 8

*Cortez v. County of Los Angeles*,
    294 F.3d 1186 (9th Cir. 2002) ......................................................................................... 5

*Donovan v. Mazzola*,
    716 F.2d 1226 (9th Cir. 1983) ......................................................................................... 4

*Gen. Signal Corp. v. Donallco, Inc.*,
    787 F.2d 1376 (9th Cir. 1986) ......................................................................................... 8

*Hernandez v. County of Monterey*,
    110 F. Supp. 3d 929 (N.D. Cal. 2015) ............................................................................ 5

*Kelly v. Wengler*,
    822 F.3d 1085 (9th Cir. 2016) ......................................................................................... 4

*King v. Kramer*,
    680 F.3d 1013 (7th Cir. 2012) ..................................................................................... 5, 6

*Leach v. Shelby Cnty. Sheriff*,
    891 F.2d 1241 (6th Cir. 1989) ......................................................................................... 5

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ...................................................................................................... 5, 6

*Parsons v. Ryan* (*Parsons II*),
    949 F.3d 443 (9th Cir. 2020) .................................................................................. 4, 5, 6

*Parsons v. Ryan*,
    912 F.3d 486 (9th Cir. 2018) ......................................................................................... 10

*Parsons v. Shinn*,
    No. 12-cv-601, 2021 WL 718102 (D. Ariz. Feb. 24, 2021) ......................................... 9

*Rouser v. White*,
    825 F.3d 1076 (9th Cir. 2016) ......................................................................................... 7

*Shuffler v. Heritage Bank*,
    720 F.2d 1141 (9th Cir. 1983) ................................................................................... 4, 10

*UMW v. Bagwell*,
       512 U.S. 821 (1994) ........................................................................................................ 4

*United States v. Rylander*,
       460 U.S. 752 (1983) ........................................................................................................ 4

*West v. Atkins*,
       487 U.S. 42 (1988) .......................................................................................................... 5


**STATUTES**

18 U.S.C. § 3626 ......................................................................................................................... 10

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 24, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs will and hereby do move the Court for an order finding Defendant County of Monterey ("the County") noncompliant with the Settlement Agreement and Implementation Plans in 40 of the 43 areas identified in the Court's September 26, 2023 Order (Dkt. 838), and requiring: (1) Defendant County of Monterey to comply with these provisions of the Settlement Agreement and Implementation Plans by three months after the Court's order; (2) Defendant County of Monterey to show cause after the next monitoring reports following that purge period why contempt fines should not issue for any requirements with which it remains noncompliant; and (3) continued monitoring and contempt sanctions until Defendant County of Monterey comes into compliance. As a result, the County will be prospectively liable along with Defendant CFMG for any future fines levied pursuant to the Court's prior order, Dkt. 838.

Plaintiffs' motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Caroline Jackson in support thereof, Plaintiffs' [Proposed] Order Granting Plaintiffs' Motion to Enforce, any oral argument, and the entire record in this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

In September 2023, this Court held Defendant health care provider California Forensic Medical Group, Inc. ("CFMG")[1] in civil contempt for its noncompliance with 43 requirements of the parties' Settlement Agreement and the CFMG Implementation Plan (the "Contempt

---

[1] Plaintiffs previously stated that CFMG had changed its name to Wellpath, based on representations from CFMG's prior counsel. *See* Dkt. 825 at 5. Wellpath's bankruptcy filings indicate that CFMG is instead a "professional corporation" through which Wellpath operates in California to comply with State law requiring physician ownership of medical corporations. *See* Debtor's Emergency Mot. (Dkt. 15) at 4, No. 24-90533 (Bankr. S.D. Tex. Nov. 12, 2024); *see also* Cal. Bus. & Prof. Code § 2408. Plaintiffs now correct this error.

Requirements"). Dkt. 838 at 26.[2]  More than 18 months after the Court's contempt finding, Defendants remain noncompliant with the overwhelming majority of these Court-ordered requirements, and no Defendant has faced any consequence for this continued noncompliance.

Instead, on November 1, 2024, three days after CFMG and its affiliate Wellpath, Inc. conceded ongoing noncompliance and agreed to pay contempt fines, news broke that Wellpath would file for bankruptcy. Dkt. 946 at 2.  Wellpath quickly obtained from the bankruptcy court a stay of all monetary claims against CFMG, including this Court's contempt fines.  Dkt. 948 at 2–3.  On February 20, 2025, the County issued a Request for Proposals for a new contract to provide health care at the Jail, and it is likely to name the winner of the contract imminently.  Decl. of Caroline Jackson, filed herewith ("Jackson Decl."), ¶ 6.  If a new contractor takes over for CFMG, the coercive effect of this Court's sanctions order against CFMG will vanish.

Plaintiffs now seek to hold the County jointly and severally liable on a prospective basis for future fines imposed under the Court's September 2023 contempt order.  This will ensure the continuation of the contempt remedy regardless of whether the County continues to contract with CFMG and regardless of future bankruptcy proceedings.  The County is ultimately responsible for providing constitutionally adequate medical, mental health, and dental care to people in its custody, whether it does so on its own or through a contractor.  The Court-ordered requirements of the Settlement Agreement bind the County as much as they do CFMG.  The Court should find the County in civil contempt for its noncompliance with 40 of the 43 Contempt Requirements.  If the County fails to come into compliance, the Court should impose, going forward, the same sanctions jointly and severally against the County that it has already found appropriate to impose on CFMG.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs are a class of all people incarcerated at the Monterey County Jail.  Defendants are the County, the Monterey County Sheriff's Office, and CFMG, the County's longtime health care contractor at the Jail.  Plaintiffs brought suit in 2013 challenging conditions at the Jail, including medical, mental health, and dental care.  *See* Dkt. 431 at 1–2, 6–8.  In August 2015, the Court

---

[2] Citations to documents filed on the Court's docket refer to ECF page numbers.

1   approved a Settlement Agreement, ordered Defendants to comply with its terms, and ordered the
2   parties to develop Implementation Plans effectuating the Settlement Agreement.  Dkt. 494 at 4, 13.
3   The Court ordered Defendants to "implement" these Plans, see, e.g., id. ¶ 31(a), and it made the
4   Implementation Plans "enforceable by the Court as part of the Settlement Agreement," id. at 4.
5   The Court approved the Implementation Plans in May 2016.  See Dkt. 549 at 2.
6       For the next six years, Defendants regularly failed to comply with the health care
7   requirements of the Settlement Agreement and Implementation Plans.  Dr. Bruce Barnett, the
8   Court-appointed neutral monitor for medical care, found that Defendants' overall medical
9   compliance "*decreased* from 48.1% in March 2017 to 42.6% in October 2022."  Dkt. 838 at 7.
10  After two stipulated orders against the County and CFMG failed to result in Defendants'
11  compliance with Court-ordered requirements, Plaintiffs moved for an order holding CFMG in
12  contempt for Defendants' failure to comply with 44 of the medical, mental health, and dental care
13  requirements of the Settlement Agreement and Implementation Plans.  Id. at 3–4; see also Dkt.
14  825 at 6–7.  The Court granted Plaintiffs' motion in September 2023, found CFMG in contempt
15  for 43 of the 44 requirements, and ordered CFMG to pay ongoing contempt sanctions of $25,000
16  per noncompliant requirement after each round of subsequent monitoring if it failed to purge the
17  contempt within six months.  Dkt. 838 at 26.
18      The purge deadline came and went, and the neutral monitors continued to find that
19  Defendants were not in substantial compliance with the vast majority of the 43 requirements for
20  which the Court had imposed conditional civil contempt sanctions.  See Dkt. 893-1 at 1–3; Dkt.
21  902-1 at 50–65.  CFMG nonetheless resisted its obligation to pay the Court-ordered sanctions,
22  retaining its own experts in an effort to prove compliance with the majority of the Contempt
23  Requirements.  See Dkt. 905 at 3–6.
24      After months of discovery in preparation for a Court-scheduled evidentiary hearing,
25  CFMG abruptly stipulated that it could not "meet its burden of proof to establish that it was in
26  substantial compliance nor that it purged the contempt by March 25, 2024," and accepted most of
27  the Court-ordered contempt fines.  Dkt. 944 at 3–4.  Three days later, the news service Bloomberg
28  reported that Wellpath, the private equity-owned company that provides health care at the Jail

through its affiliation with CFMG, was "preparing to file for bankruptcy." Dkt. 946-1 at 1. Wellpath soon filed for Chapter 11 bankruptcy and obtained an order from the bankruptcy court staying all monetary claims against Wellpath and CFMG for the duration of the bankruptcy. Dkt. 948-1 ¶ 4. This order barred Plaintiffs from enforcing the contempt sanctions against CFMG. Wellpath and the County took the position that the stay barred claims against the County as well.

On December 4, 2024, Plaintiffs notified the County that it was not in substantial compliance with nearly all of the 43 Contempt Requirements. Jackson Decl., Ex. A, at 1. Plaintiffs asked the County to stipulate to joint liability with CFMG for any future fines issued for noncompliance with those requirements. *Id.* at 3. The County refused. *Id.*, Ex. B, at 1. The parties mediated this dispute in a series of sessions with Judge Cousins. On March 7, 2025, Judge Cousins authorized Plaintiffs to move for this relief once Wellpath's bankruptcy stay expired. The bankruptcy stay ended on May 7, 2025.

## LEGAL STANDARD

A party may be held in civil contempt when it fails to comply with a specific and definite judicial order. *Parsons v. Ryan* (*Parsons II*), 949 F.3d 443, 454 (9th Cir. 2020). The moving party bears the initial burden of establishing by clear and convincing evidence that the contemnors violated a specific and definite order of the Court. *See id.*; *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983). The burden then shifts to the contemnor to "show[] that it took 'all reasonable steps to comply' with court orders," *Coleman v. Newsom*, 131 F.4th 948, 958 (9th Cir. 2025) (quoting *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016)), or that "compliance was 'factually impossible,'" *id.* at 960 (quoting *United States v. Rylander*, 460 U.S. 752, 757 (1983)).

After being found in contempt, a civil contemnor must have "an opportunity to purge"—a chance to come into compliance before the contempt fine must be paid. *See UMW v. Bagwell*, 512 U.S. 821, 829 (1994). The court must also make "'a reasoned consideration' of 'the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Parsons II*, 949 F.3d at 457 (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983)). This obligation is satisfied when the court "document[s] Defendants' failures to comply … and explain[s] that the sanctions were

warranted to 'address Plaintiffs' injuries resulting from [Defendants'] noncompliance.'" *Id.*

## ARGUMENT

### I. THE COUNTY IS RESPONSIBLE FOR PROVIDING HEALTH CARE TO PEOPLE IN ITS CUSTODY, INCLUDING THROUGH ITS CONTRACTORS

Government entities are responsible for providing constitutionally adequate health care to people in their custody. *Brown v. Plata*, 563 U.S. 493, 511 (2011); *see also Hernandez v. County of Monterey*, 110 F. Supp. 3d 929, 934 (N.D. Cal. 2015). That remains true when the government hires a contractor to provide health care on its behalf. "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West v. Atkins*, 487 U.S. 42, 56 (1988). The Ninth Circuit has affirmed contempt fines against State defendants for failing to ensure that their health care contractor provided adequate care to incarcerated people. *Parsons II*, 949 F.3d at 452–53.

This principle applies equally to counties. A county is liable for constitutional violations resulting from a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Under *Monell*, counties that delegate policymaking authority are liable for the unlawful acts of their delegees. *See, e.g.*, *Cortez v. County of Los Angeles*, 294 F.3d 1186, 1189–90, 1192 (9th Cir. 2002).

For that reason, courts have widely held that liability for providing deficient health care attaches to counties that contract for health care in their jails. *See King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1250 (6th Cir. 1989); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 706 & n.11 (11th Cir. 1985). A "[c]ounty cannot shield itself from § 1983 liability by contracting out its duty to provide medical services." *King*, 680 F.3d at 1020. The County of Monterey has long delegated responsibility for medical, mental health, and dental care at the Jail to its contractor CFMG. Jackson Decl. ¶ 5. Accordingly, the County is accountable for CFMG's misconduct. *See King*, 680 F.3d at 1020.

The Settlement Agreement provides an additional, independent basis for the County's

liability. The Settlement Agreement makes all Defendants—including the County—responsible for complying with its medical, mental health, and dental requirements. None of the substantive health care requirements of the Settlement Agreement were imposed on CFMG alone. *See* Dkt. 494 ¶ 31(g)–(j). For instance, "Defendants" were ordered to "develop and implement an Intake Screening Implementation Plan" with medical, mental health, and dental components. *Id.* ¶ 31(a). "Defendants" were ordered to "ensure adequate staffing to provide all necessary medical and mental health care." *Id.* ¶ 31(g). And "Defendants" were ordered to "ensure timely access to necessary treatment for dental and oral health conditions" as well. *Id.* ¶ 31(j).

The Settlement Agreement further requires all "Defendants" both to "develop" *and* to "implement" the Implementation Plans to improve medical, mental health, and dental care. *See id.* ¶ 31(h)(i) ("Defendants shall develop and implement a Health Care Implementation Plan …."); *id.* ¶ 31(i)(i) ("Defendants shall develop and implement a Mental Health Care Implementation Plan …."); *id.* ¶ 31(j) ("Defendants shall develop and implement a Dental Care Implementation Plan …."). The County's delegation of authority to CFMG for developing some of the Implementation Plans does not reduce the County's ultimate responsibility for complying with the Plans. *See King*, 680 F.3d at 1020 ("[T]he private company's policy becomes that of the County if the County delegates final decision-making authority to it."); *see also Monell*, 436 U.S. at 694; *Parsons II*, 949 F.3d at 452–53. Both by law and under the Settlement Agreement, the County shares equal responsibility with CFMG for complying with the Court-ordered medical, mental health, and dental requirements of the Settlement Agreement and Implementation Plans.

## II. THE LATEST MONITORING REPORTS SHOW THAT THE COUNTY IS VIOLATING THE REQUIREMENTS OF THE SETTLEMENT AGREEMENT AND IMPLEMENTATION PLANS

The reports of the medical, mental health, and dental monitors provide clear and convincing evidence that the County is not substantially compliant with 40 of the 43 Contempt Requirements. Plaintiffs identify below the monitors' findings that demonstrate the County's noncompliance. The Court based its prior contempt findings on similar reports. Dkt. 838 at 9–24.

Since Plaintiffs' 2023 enforcement motion, all three monitors have started using a "partial compliance" rating for some requirements with which Defendants are not substantially compliant.

Jackson Decl. ¶ 14.  Partial compliance is not a defense to contempt.  To avoid contempt, the County must show *substantial* compliance—it must demonstrate that it has "achieved near-total compliance through the exhaustion of all reasonable efforts."  *Coleman*, 131 F.4th at 956.  "[M]erely taking significant steps toward implementing [a] decree falls far short of 'substantial compliance.'"  *Id.* at 957 (quoting *Rouser v. White*, 825 F.3d 1076, 1082 (9th Cir. 2016)).

### A.   Lack of Substantial Compliance with Medical Requirements

Dr. Barnett's January 2025 report provides clear and convincing evidence that the County is not in substantial compliance with any of the 11 medical requirements identified in the Court's September 2023 contempt order.  Dkt. 952 at 15–20; Jackson Decl. ¶ 8.  This is consistent with Dr. Barnett's prior reports.  *See* Dkt. 838 at 9–13.  Indeed, Dr. Barnett's January 2025 report represents a decline from his June 2024 report, where he found Defendants substantially compliant with the Pharmaceutical Services requirement.  Dkt. 882 at 15.

The 11 medical Contempt Requirements with which the County is not in substantial compliance are:  (1) Clinical Staffing (Dkt. 952 at 15); (2) Medical Intake Screening (*id.*); (3) Sick Call (*id.* at 16); (4) Chronic Care (*id.* at 17); (5) Health Care Maintenance (*id.*); (6) Continuity of Care (*id.* at 18); (7) Outside Care Referrals (*id.*); (8) Treatment of Intoxicated Patients (*id.*); (9) Treatment of Communicable Diseases (*id.* at 18–19); (10) Pharmaceutical Practices (*id.* at 19); and (11) Medical Quality Assurance (*id.*).  *See* Jackson Decl. ¶ 8.

### B.   Lack of Substantial Compliance with Mental Health Requirements

The most recent final report from Dr. Vess, the mental health neutral monitor, provides clear and convincing evidence that the County is not in substantial compliance with 16 of the 17 mental health Contempt Requirements, including the mental health component of clinical staffing.  *See* Dkt. 957 at 79–80; Jackson Decl. ¶ 9.  These findings are similar to Dr. Vess's prior findings.  *See* Dkt. 897-1 at 2–3; Dkt. 838 at 9–10, 13–19.  The 16 mental health Contempt Requirements with which the County is not in substantial compliance are:  (1) Clinical Staffing (Dkt. 957 at 41–43, 79); (12) Initial Mental Health Screening (*id.* at 15–17, 79); (13) Nursing Rounds in Administrative Segregation (*id.* at 56, 79); (15) Treatment Planning (*id.* at 47–50, 79); (16) Chronic Care (*id.* at 20–23, 79); (17) Acute Care (*id.* at 24–25, 79); (18) Outpatient Services (*id.* at 25–26, 79);

(20) Consideration of Mental Health in Discipline (*id.* at 50–51, 79); (21) Segregation Placement Screenings (*id.* at 52–53, 79); (22) Mental Health Programming in Segregation (*id.*); (23) Involuntary Medication (*id.* at 36–39, 79); (24) Suicide Risk Assessments and Safety Planning (*id.* at 59–61, 80); (25) Medical Records (*id.* at 69–70, 80); (26) Corrective Action Plans (*id.* at 73–74, 80); (27) Provider Visits to Holding and Isolation Cells (*id.* at 20, 80); and (28) Mental Health Quality Assurance (*id.* at 70–73, 80).  *See* Jackson Decl. ¶ 9.

In two of these areas, Chronic Care and Involuntary Medication, Dr. Vess found that Defendants were compliant with certain elements of the requirement but noncompliant with others.  As to Chronic Care, Dr. Vess found Defendants noncompliant with the Chronic Care requirement to provide offsite services to patients whose chronic conditions cannot be managed at the Jail, but he found Defendants substantially compliant with the requirement to perform specific assessments during patients' 90-day chronic care appointments. Dkt. 957 at 20–24.  For Involuntary Medication, Dr. Vess found Defendants noncompliant with the requirements to transfer patients who need involuntary medication to appropriate community facilities and to develop a process for evaluating those individuals' competency.  *Id.* at 37.

Dr. Vess has repeatedly documented both of these problems.  *See id.* at 21 ("All of my prior reports dating from July 2022 through April 2024 have found that these issues remained unchanged.").  Defendants' consistent failures to comply with significant elements of these requirements are not "technical or inadvertent violations."  *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986).  Defendants' compliance with some elements of these Contempt Requirements does not excuse noncompliance with other elements.  *See Coleman*, 131 F.4th at 959 (affirming contempt due to noncompliance with social worker and psychologist staffing, despite "adequate staffing with respect to psychiatrists and recreation therapists").

### C. Lack of Substantial Compliance with Dental Requirements

The most recent final report from Dr. Winthrop, the dental care neutral monitor, provides clear and convincing evidence that the County is not in substantial compliance with 15 of the 17 Contempt Requirements related to dental care, including the dental component of clinical staffing.  *See* Dkt. 902-1 at 50–66; Jackson Decl. ¶ 12.  These findings are consistent with Dr. Winthrop's

prior reports.  *See* Dkt. 838 at 9–10, 19–24.  The 15 dental Contempt Requirements with which the County is not in substantial compliance are: (1) Clinical Staffing (Dkt. 902-1 at 50); (29) Dental Intake Screening (*id.* at 51); (30) Initial Health Inventory (*id.* at 52–54); (31) Dental Training for Intake Staff (*id.* at 54–55); (32) Treatment for Urgent and Emergent Conditions (*id.* at 55–56); (33) Dental Sick Call (*id.* at 56); (34) Chronic Care (*id.* at 56–57); (35) Comprehensive Care (*id.* at 57–58); (36) Restorative and Palliative Care (*id.* at 58–59); (38) Specialty Care Referrals (*id.* at 60–61); (39) Endodontics (*id.* at 61); (40) Periodontics (*id.* at 61–62); (41) Informed Consent (*id.* at 62–63); (43) Electronic Medical Records (*id.* at 64–65); and (44) Dental Quality Assurance (*id.* at 65–66).  *See* Jackson Decl. ¶ 12.

Dr. Winthrop has submitted a draft report from her October 2024 dental tour, but the report has not been finalized.  *See* Jackson Decl. ¶ 14.  The draft report indicates that the County remains out of compliance with the same 15 Contempt Requirements.  *See id.*  Plaintiffs will file the final report once it is received, per this Court's prior orders.  *See* Dkt. 838 at 27.

### III. JOINT AND SEVERAL LIABILITY FOR SANCTIONS IS THE APPROPRIATE REMEDY

The County should be found in contempt for its noncompliance with each of the medical, mental health, and dental requirements listed above.  Plaintiffs request relief that is consistent with the Court's prior order against CFMG.  Pursuant to that order, "[a]fter each round of monitoring reports is filed," CFMG may be "required to pay an additional $25,000 fine for each such requirement" with which it remains out of substantial compliance.  Dkt. 838 at 27.  Plaintiffs request that the Court give the County three months following issuance of its order to purge the contempt by coming into compliance.  A three-month purge period is more than sufficient given the County's ultimate responsibility as well as its longstanding notice of these deficiencies, *see* Jackson Decl. ¶¶ 15–16, and it is three times as long as the one-month period granted to the State defendants in *Parsons* in that court's second contempt order.  *See Parsons v. Shinn*, No. 12-cv-601, 2021 WL 718102, at *2–3 (D. Ariz. Feb. 24, 2021).  The Court should further order that the neutral monitors tour the Jail three months after the end of the purge period and that the monitors review only records that post-date the end of the purge period to assess Defendants' compliance.

If the monitors find that the County has not come into compliance, the County must show cause why it should not be required to pay contempt fines for each requirement that is not in substantial compliance. If it cannot, the Court should impose the same $25,000 fine for each of the 40 Contempt Requirements above jointly and severally against the County and CFMG that the Court otherwise would impose against CFMG alone under the September 2023 order.

Under this requested order, the County would remain liable for ongoing fines after each round of monitoring until it comes into compliance—even if the County hires a new contractor to replace CFMG or the health care contractor fails to pay the sanctions. This proposal reasonably accounts for "the character and magnitude of the harm threatened by" the County's "continued contumacy," ensures that all Defendants are compelled to comply with the Court's orders, and preserves the Court's contempt remedy regardless of whether the County continues to contract with CFMG or whether there are new bankruptcy proceedings. *Shuffler*, 720 F.2d at 1148.

## IV. PLAINTIFFS' PROPOSED ORDER COMPLIES WITH THE PLRA

The Prison Litigation Reform Act ("PLRA") requires "prospective relief" to be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Plaintiffs' proposed order satisfies the PLRA for the same reasons as the Court's September 2023 order. *See* Dkt. 838 at 28. Years of less intrusive remedies have not brought the County into compliance with the Court-ordered requirements of the Settlement Agreement and Implementation Plans. The Court has found that the Settlement Agreement and the Implementation Plans incorporated therein are narrowly drawn, extend no further than necessary to correct the violation of Plaintiffs' federal rights, and are the least intrusive means necessary to correct the violation. Dkt. 494 at 4. Because Plaintiffs' proposed order is necessary "to enforce compliance" with the Settlement Agreement and Implementation Plans, the proposed order satisfies the PLRA. *Parsons v. Ryan*, 912 F.3d 486, 501 (9th Cir. 2018).

## CONCLUSION

Plaintiffs respectfully ask the Court to enter the proposed order filed herewith.

| | | |
|---|---|---|
| 1 | DATED:  May 8, 2025 | Respectfully submitted, |
| 2 | | ROSEN BIEN GALVAN & GRUNFELD LLP |
| 3 | | By: /s/ Ben Hattem |
| 4 | | Ben Hattem |
| 5 | | Attorneys for Plaintiffs |