LINDSEY M. ROMANO (SBN: 337600)
lromano@grsm.com
ALLISON J. BECKER (PRO HAC VICE)
abecker@grsm.com
ELIZABETH B. MCGOWAN (PRO HAC VICE)
emcgowan@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111
Telephone: (415) 875-4126
Facsimile:  (415) 986-8054

Attorneys for Defendant
CALIFORNIA FORENSIC MEDICAL GROUP, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation, and DOES 1-20,<br><br>Defendants. | CASE NO.  5:13-cv-02354-BLF<br><br>**NOTICE OF DISCHARGE AND INJUNCTION AS TO NON-PARTY WELLPATH LLC**<br><br>Judge: Hon. Beth Labson Freeman |

**TO THE HONORABLE JUDGE OF SAID COURT:**

California Forensic Medical Group, Inc, respectfully request that this Court take notice that pursuant to the *Findings of Fact, Conclusions of Law, and Order (I) Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis* [Case No. 24-90533, ECF No. 2596] entered by the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") on May 1, 2025 (the "Confirmation Order"), attached hereto as **Exhibit A** and the *General Form of Order Regarding Lift Stay Motions* [Case No. 24-

90533, ECF No. 2907] entered by the Bankruptcy Court on June 4, 2025 (the "Stay Order")[1], attached hereto as **Exhibit B**, all Claims and Causes of Action against Wellpath Holdings, Inc. and its affiliated debtors (the "Debtors")[2] are discharged and holders of such Claims and Causes of Action are permanently enjoined from, among other things, commencing or continuing any proceeding of any kind, including the instant proceeding, in connection with such claims, or enforcing recovery from the Debtors, the Debtors' estates, or the Post-Restructuring Debtors.

1. On November 11, 2024 (the "Petition Date"), the Debtors, who include Wellpath Holdings, Inc. and its affiliated companies (each filed petitions in the Bankruptcy Court under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Cases"). The Bankruptcy Cases were jointly administered under case number 24-90533.

2. On May 1, 2025, the Bankruptcy Court entered the Confirmation Order confirming the Plan, and on May 9, 2025 (the "Effective Date"), the Debtors filed the *Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Administrative Claims Bar Date* [ECF No. 2680, Case No. 24-90533] giving notice that the Plan was effective.

3. On June 4, 2025, the Bankruptcy Court entered the Stay Order for the purpose of providing guidance regarding the impact of the chapter 11 cases, including the Plan's discharge

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Confirmation Order, Stay Order, or the *First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates (with Technical Modifications)* (as modified, amended, or supplemented from time to time, the "Plan"), a copy of with is attached as **Exhibit A** to the Confirmation Order. The rules of interpretation set forth in Article I.B of the Plan shall apply hereto. For the avoidance of doubt, unless otherwise specified, all references herein to "Articles" refer to articles of the Plan.

[2] "Debtors" include Wellpath Holdings, Inc.; Physicians Network Association, Inc.; Alpine CA Behavioral Health HoldCo, LLC; CCS-CMGC Intermediate Holdings 2, Inc.; CCS-CMGC Intermediate Holdings, Inc.; CHC Companies, LLC; Conmed Healthcare Management, LLC; Correct Care Holdings, LLC; Correctional Healthcare Companies, LLC; Correctional Healthcare Holding Company, LLC; HCS Correctional Management, LLC; Healthcare Professionals, LLC; Jessamine Healthcare, LLC; Justice Served Health Holdings, LLC; Missouri JSH Holdco; Missouri JSH Manager, Inc.; Perimeter Hill RPA, LLC; Wellpath CFMG, Inc.; Wellpath Community Care Holdings, LLC; Wellpath Community Care Management, LLC; Wellpath Community Care Centers of Virginia, LLC; Wellpath Education, LLC; Wellpath Group Holdings, LLC; Wellpath Hospital Holding Company, LLC; Wellpath LLC; Wellpath Management, Inc.; Wellpath SF Holdco, LLC; WHC, LLC; WPMed, LLC; Zenova Management, LLC; and Zenova Telehealth, LLC.

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

and injunction, on stayed prepetition actions against the Debtors and the entities against whom holders of Claims and Causes of Action could continue to pursue pursuant to the Plan.

    4.    Pursuant to Article IX.A. of the Plan and Paragraph 3 of the Stay Order, all Claims and Causes of Action against the Debtors are discharged as a result of the Plan becoming effective. The Plan states in relevant part:

> the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties

Plan, Article IX.A.

    5.    Pursuant to Article IX.F of the Plan, holders of Claims and Causes of Action that are discharged or released are permanently enjoined from among other things,

> (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan

Plan, Article IX.F.

    6.    Moreover, pursuant to Article IX.F. of the Plan, any holders of Claims or Causes of Action against the Debtors or against Non-Debtor Defendants subject to the Third Party Release who did not affirmatively opt out of the Third Party Release (the "<u>Enjoined Parties</u>")

are permanently enjoined from taking any action, including the commencement, further prosecution of, or collection efforts, against the Debtors or Non-Debtor Defendants (the "Injunction"). However, as outlined in the Stay Order, holders of Claims or Interests that affirmatively elected to opt out of the Plan's Third-Party Release may bring or continue to pursue claims against the Non-Debtor Defendants, including employees of the Debtors or employees of the Post-Restructuring Debtors. *See* Stay Order, ¶ 5; Plan, Article IX.F. ("provided, that, for the avoidance of doubt, this Article IX.F shall not apply to parties that timely opt out of the Third-Party Release to preserve their claims against the Released Parties").

7. Regardless of any opt out election, the Professional Corporations and their employees are not released under the Confirmation Order. Actions pending against them before the Petition Date may proceed in the ordinary course as it relates to those entities (but not to any Debtor co-defendants). *See* Stay Order, ¶ 8.

8. Any attempt by Enjoined Parties to proceed with their Claims or Causes of Action against the Debtors violates the Injunction and such Claims or Causes of Action must be dismissed against the Debtors pursuant to the Confirmation Order and Stay Order.

9. A Liquidating Trust has assumed the Debtors' liability for all General Unsecured Claims, including personal injury and wrongful death claims that arose before the Petition Date. Plan, Articles IV.N., VII; Confirmation Order at 2–3. The Liquidating Trust is funded solely by assets transferred to it under the Plan, and recoveries on such claims are limited to a pro-rata distribution from the Trust. Enjoined Parties may not seek payment for this liability from the Debtors, the Post-Restructuring Debtors, or the property of either entity beyond this distribution. *See* Plan, Article IV.N.; Stay Order, ¶ 4. Holders of Claims against the Debtors are subject to the Trust Distribution Procedures ("TDPs"), including the non-binding alternative dispute resolution process set forth therein to determine, if necessary, the allowed amount for their Claim. *Id.*

Respectfully submitted,

Dated: June 30, 2025

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/Allison J. Becker*
　　Lindsey M. Romano
　　Allison J. Becker (pro hac vice)
　　Elizabeth B. McGowan (pro hac vice)
　　Attorneys for CFMG