UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JESSE HERNANDEZ, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; and CALIFORNIA FORENSIC MEDICAL GROUP, INC.,<br><br>Defendants. | Case No. 13-cv-02354-BLF<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND IMPLEMENTATION PLANS AGAINST THE COUNTY**<br><br>[Re: ECF 963] |

Through this class action, Plaintiffs and their counsel have spent more than a dozen years seeking to ensure that inmates of the Monterey County Jail ("the Jail") receive adequate health care, accommodations for disabilities, and protection from violence. *See* Compl., ECF 1. The Jail is operated by Defendants County of Monterey and the Monterey County Sheriff's Office (collectively, "the County"). The County contracts with Defendant California Forensic Medical Group, Inc. ("CFMG")[1] to provide health care to inmates at the Jail.

The parties entered into a Settlement Agreement that was approved by the Court in 2015, which included development of separate Implementation Plans for the County and CFMG. *See* Final Approval Order and Ex. A (Settlement Agreement), ECF 494; County Implementation Plan, ECF 514; CFMG Implementation Plan, ECF 532; Order, ECF 549. Nearly a decade later, however, Court-appointed monitors continue to find that the Jail is not in compliance with agreed-upon requirements for medical care, mental health care, and dental care. *See* Neutral Monitor Reports, ECF 957, 969, 970.

---

[1] Some prior orders refer to CFMG as "Wellpath" based on the Court's understanding that CFMG had undergone a name change. The parties now advise that there has been no name change.

1    In May 2023, Plaintiffs moved to enforce the Settlement Agreement and CFMG
2 Implementation Plan against CFMG. *See* Pls.' Mot., ECF 788. The Court issued a written order
3 granting the motion and finding CFMG in civil contempt of 43 requirements of the Settlement
4 Agreement and the CFMG Implementation Plan ("CFMG Contempt Order"). *See* CFMG
5 Contempt Order, ECF 838. The Court imposed a conditional coercive civil contempt fine against
6 CFMG and granted CFMG six months to purge the contempt. *See id.* Plaintiff did not assert any
7 misconduct by the County during those proceedings, and the County did not participate in the
8 briefing or argument of Plaintiffs' motion. Plaintiffs and CFMG have stipulated to resolution of
9 the contempt sanctions, subject to the Court's approval. *See* Joint Stipulation, ECF 981. The
10 parties have advised the Court that CFMG's contract with the County expires at the end of 2025
11 and will not be renewed.

12    Plaintiffs now move to enforce the Settlement Agreement and the CFMG Implementation
13 Plan against *the County* based on noncompliance with 40 of the 43 requirements identified in the
14 CFMG Contempt Order.[2] *See* Pls.' Mot. ECF 963. Plaintiffs ask the Court to impose a
15 conditional coercive civil contempt fine against the County and grant the County three months to
16 purge the contempt. *See* Pls.' Proposed Order, ECF 963-2. The County opposes the motion,
17 arguing that there is no basis to hold the County in contempt for CFMG's failure to comply with
18 the Settlement Agreement and the CFMG Implementation Plan. *See* County's Opp., ECF 965.

19    While the Court is sympathetic to Plaintiffs' frustration with the continued inadequacy of
20 health care at the Jail, and the potential complications that may result from the County's retention
21 of a new health care provider, Plaintiffs' motion is not well-taken. The motion is DENIED as
22 discussed below.

23 **I.    BACKGROUND**

24    Plaintiffs filed this class action in May 2013 on behalf of themselves and all other similarly
25 situated Jail inmates, alleging that the County and CFMG failed to provide adequate health care,

---

[2] Although Plaintiffs caption their motion as seeking enforcement of the Settlement Agreement and "Implementation Plans," Plaintiffs do not base their motion on any asserted violations of the County Implementation Plan.

2

reasonable accommodations for disabilities, and protection from violence. *See* Compl., ECF 1. The Court granted class certification in January 2015, defining the class to include "all adult men and women who are now, or will be in the future, incarcerated in Monterey County Jail[.]" Order at 50, ECF 431.

### A. Settlement Agreement

In May 2015, Plaintiffs, Defendant County, and Defendant CFMG entered into a Settlement Agreement. *See* Final Approval Order Ex. A (Settlement Agreement), ECF 494. The key provisions of the Settlement Agreement are summarized below.

#### 1. No Admission of Liability

The Settlement Agreement does not contain an admission of liability on the part of Defendants. To the contrary, the Settlement Agreement provides in relevant part:

> Defendants deny every allegation in each of the Complaints filed in this case. This Settlement Agreement does not constitute, and shall not be construed, as an admission of or evidence of any act of deliberate indifference to any inmate's constitutional rights, violation of 42 U.S.C. § 1983, violation of the ADA, violation of the U.S. Constitution, or any other wrongdoing or liability by any party. The Defendants expressly deny any liability. Defendants deny that any of their policies, procedures and/or practices subject inmates to a risk of harm or result in any deliberate indifference to inmates' safety, medical, mental health, dental, or accessibility needs in violation of their state or federal constitutional rights, state or federal law, or the ADA and Rehabilitation Act.

Settlement Agreement ¶ 6.

#### 2. Substantive Provisions of Settlement Agreement

The Settlement Agreement's substantive provisions are set forth in paragraphs 31-34. Paragraph 31 directs that "[t]he parties shall develop Implementation Plans in the following subject areas for improvement of care, services, programs, and activities at the Jail." Settlement Agreement ¶ 31. Paragraph 31 goes on to list the twelve subject areas: Intake Screening, Infection Control, Detoxification, Safety Cells, Medication Continuity, Custody Staffing, Clinical Staffing, Medical Care, Mental Health Care, Dental Care, Safety, and Prisoners with Disabilities. *See id.* Paragraph 34 provides that all provisions of the Implementation Plans developed by the parties will be enforceable by the Court "as part of the Settlement Agreement." *Id.* ¶ 34.

### 3. Neutral Monitors

The next several paragraphs of the Settlement Agreement provide for appointment of expert monitors to monitor Defendants' compliance with the Settlement Agreement and Implementation Plans. *See* Settlement Agreement ¶¶ 35-43.

### 4. Enforcement

The Court retains jurisdiction to enforce the terms of the Settlement Agreement and Implementation Plans. *See* Settlement Agreement ¶¶ 44, 46-47.

Paragraph 48 of the Settlement Agreement provides a mechanism for Plaintiffs to seek enforcement. If Plaintiffs believe that Defendants are out of compliance with the Settlement Agreement and/or Implementation Plans, they must give Defendants written notice of their belief and the facts supporting their belief. *See* Settlement Agreement ¶ 48. Defendants must investigate and respond to the notice within 30 days. *See id.* The parties must attempt informal resolution, first through negotiation and then through mediation. *See id.* If the parties cannot resolve the issues, either party "may move the Court for any relief permitted by law or equity." *Id*.

Paragraph 45 directs that if the Court finds that Defendants have not substantially complied with the Settlement Agreement, the Court in the first instance shall require Defendants to submit a plan for approval by the Court to remedy the deficiencies. *See* Settlement Agreement ¶ 45. If the Court subsequently determines that Defendants' plan did not remedy the deficiencies, the Court may enforce the Settlement Agreement "through all remedies provided by law[.]" *Id*.

### 5. Court's Approval of Settlement Agreement

The Court approved the Settlement Agreement in August 2015. *See* Final Approval Order and Ex. A (Settlement Agreement), ECF 494. In granting approval, the Court expressly found that the Settlement Agreement satisfies the requirements of the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A), stating as follows:

> For the purposes of jurisdiction and enforcement of this Settlement Agreement only, the Court finds that this Settlement Agreement satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that it is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right of the Plaintiffs.

Final Approval Order at 4, ¶ 4.[3]

### B. Development and Approval of Implementation Plans

The County and CFMG separately developed Implementation Plans as required under the Settlement Agreement, and submitted them to the Court for approval.

The County submitted for Court approval the County Implementation Plan, addressing the following areas: Intake Screening, Safety Cell and Sobering Cell monitoring, Custody Staffing, Mental Health, Safety and Violence Reduction, Suicide Prevention, ADA, Health and Safety Checks, and Compliance. *See* County Mot. & Ex. 1 (County Implementation Plan), ECF 514. The County's motion advised that the County had contracted with CFMG to provide health care at the Jail, and that "CFMG has developed its own implementation plan to address those portions of the settlement agreement . . . dealing specifically with health care concerns." *Id*. at 3.

CFMG submitted for Court approval the CFMG Implementation Plan, addressing Medical Care, Mental Health Care, and Dental Care, and related areas including staffing and records. *See* CFMG Mot. & Ex. A (CFMG Implementation Plan), ECF 532. The CFMG Plan states that it "is designed to be used in concert with the County of Monterey's Implementation Plan." *See* CFMG Implementation Plan at 9.

The Court approved both the County Implementation Plan and the CFMG Implementation Plan, with modifications, in May 2016. *See* Order, ECF 549.

### C. Appointment of Neutral Monitors

In August 2016, the Court appointed neutral monitors to monitor Defendants' compliance with the Settlement Agreement and Implementation Plans. *See* Order, ECF 563. The Court authorized each monitor to conduct two site visits per year, and to prepare written reports regarding Defendants' compliance. *See id.* at 3-4.

### D. Plaintiffs' Written Notices of Noncompliance in 2020 and 2022

In February 2020, Plaintiffs gave Defendants written notice of Plaintiffs' belief that Defendants were not in substantial compliance with the Settlement Agreement and

---

[3] All page numbers refer to the ECF page numbers printed across the top of the document.

5

Implementation Plans. *See* 2020 Joint Status Report and Order, ECF 671. The parties met and conferred several times and participated in a two-day "summit" that included all parties and all five monitors. *See id.* at 3. The parties thereafter entered into a stipulation requiring Defendants to develop corrective action plans addressing all areas in which the neutral monitors had found lack of substantial compliance. *See id.* The Court approved the parties' stipulation and incorporated its terms in an order dated May 29, 2020. *See id.* at 5-6.

In January 2022, Plaintiffs gave Defendants a second written notice of Plaintiffs' belief that Defendants were not in substantial compliance with the Settlement Agreement and Implementation Plans. *See* 2022 Joint Status Report and Order, ECF 751. The parties thereafter met and conferred several times, and ultimately entered into another stipulation. *See id.* The parties agreed that Defendants would be released from neutral monitoring of certain requirements, and that the neutral monitors could provide enhanced monitoring and mentoring with respect to other requirements. *See id.* at 4. The Court approved the stipulation and incorporated its terms in an order dated June 3, 2022. *See id.* at 7-8.

In December 2022, Plaintiffs gave Defendants a third written notice of Plaintiffs' belief that Defendants were not in substantial compliance with the Settlement Agreement and Implementation Plans. *See* Dec. 16, 2022 Letter, ECF 825-8. Counsel for Plaintiffs, the County, and CFMG met and conferred but were not able to resolve the issues raised by Plaintiffs. *See id.* ¶ 6. The parties then attempted to mediate with the aid of Magistrate Judge Nathanael Cousins. *See id.* Judge Cousins conducted two mediation sessions with the parties, on February 17, 2023 and April 7, 2023. *See* Minute Entries, ECF 765, 771. Plaintiffs and the County resolved their issues, but Plaintiffs and CFMG were not able to reach resolution. *See* Minute Entry, ECF 771.

### E. Plaintiffs' Motion to Enforce against CFMG

In May 2023, Plaintiffs filed a motion to enforce against CFMG, asserting that CFMG was not in substantial compliance with 44 requirements of the Settlement Agreement and the CFMG Implementation Plan. *See* Pls.' Mot., ECF 788. The motion was not directed against the County, and the County did not brief or argue the motion. The Court found CFMG to be in civil contempt of 43 requirements of the Settlement Agreement and CFMG Implementation Plan. *See* CFMG

1  Contempt Order, ECF 838.  The Court imposed a conditional coercive civil contempt fine against

2  CFMG and granted CFMG six months to purge the contempt.  *See id*.  Plaintiffs and CFMG have

3  proposed a resolution of those contempt sanctions, which will be addressed by a separate order.

4        The parties have advised the Court that CFMG's contract with the County expires at the

5  end of 2025, and that the County will contract with another health care provider for the Jail.

### F. Plaintiffs' Written Notice of Noncompliance in 2024

7        On December 4, 2024, Plaintiffs sent a letter to the County providing written notice of

8  Plaintiffs' belief that the County was not in compliance with 39 of the 43 requirements of the

9  Settlement Agreement and CFMG Implementation Plan for which the Court had found CFMG in

10 civil contempt.  *See* Jackson Decl. Ex. A (Letter), ECF 963-1.  Plaintiffs asked "that the County

11 stipulate to be held jointly and severally liable with Defendant CFMG on an ongoing basis for any

12 contempt fines the Court may impose based on Defendants' continued noncompliance with these

13 39 requirements."  *Id*.

14       The County responded by letter dated January 3, 2025, stating:  "At no time during these

15 negotiations did the County agree to be jointly and severally liable for CFMG's potential

16 noncompliance with the Settlement Agreement or CFMG's Implementation Plan."  *See id*. Ex. B

17 (Letter).  The parties mediated the matter with Magistrate Judge Cousins on January 16, February

18 13, and March 7, 2025, but were unable to resolve the dispute.  *See* Jackson Decl. ¶ 4.

### G. Plaintiffs' Current Motion to Enforce against the County

20       Plaintiffs now move to enforce the Settlement Agreement and CFMG Implementation Plan

21 against the County based on noncompliance with 40 of the 43 requirements identified in the

22 CFMG Contempt Order.  *See* Pls.' Mot. ECF 963.  Plaintiffs ask the Court to impose a conditional

23 coercive civil contempt fine against the County and give the County three months to purge the

24 contempt.  *See* Pls.' Proposed Order, ECF 963-2.  According to Plaintiffs, any contempt fines

25 imposed on the County should run jointly and severally with any fines for the same requirements

26 in the same monitoring period imposed on CFMG pursuant to the CFMG Contempt Order.  *See id.*

27       The County argues that there is no basis to hold it in contempt for CFMG's failure to

28 comply with the CFMG Implementation Plan.  *See* County's Opp., ECF 965.

7

## II. LEGAL STANDARD

Civil contempt sanctions may be imposed "when the district court finds by clear and convincing evidence that a party violated a specific and definite order of the court." *Parsons v. Ryan*, 949 F.3d 443, 454 (9th Cir. 2020) (internal quotation marks and citation omitted). The moving party has the burden of showing such violation by clear and convincing evidence. *See Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992). "The burden then shifts to the contemnors to demonstrate why they were unable to comply." *Id*. (citation omitted). "They must show they took every reasonable step to comply." *Id*. (citation omitted).

"A court may wield its civil contempt powers for two separate and independent purposes: (1) to coerce the defendant into compliance with the court's order; and (2) to compensate the complainant for losses sustained." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (internal quotation marks and citation omitted). "Coercive sanctions may only be imposed after a reasoned consideration of the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id*. (internal quotation marks and citation omitted). The contemnor must have the ability to comply with the court's order and thus "purge" the contempt. *Id.* at 629-30. "[T]he ability to purge is perhaps the most definitive characteristic of coercive civil contempt." *Id*. at 629. For that reason, "coercive civil sanctions . . . generally take the form of conditional fines." *Id*.

Due process does not require a hearing before a court imposes civil contempt sanctions. *See United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999). However, the civil contempt sanctions may be imposed in an ordinary civil proceeding only "upon notice and an opportunity to be heard." *Id*.

## III. DISCUSSION

Seemingly out of the blue, Plaintiffs ask the Court to impose civil contempt sanctions on *the County* because 40 of the 43 areas identified in the CFMG Contempt Order have not been rectified. Plaintiff did not assert any misconduct by the County during the proceedings that resulted in the CFMG Contempt Order, and the County did not brief or argue its position in

8

response to Plaintiffs' motion.

The Court understands Plaintiffs to be asserting two bases for imposing contempt sanctions against the County. First, Plaintiffs contend that under well-established law, governmental entities are liable for the constitutional violations of their contractors in the jail setting. Under those authorities, Plaintiffs argue, the County may be held accountable for CFMG's misconduct in failing to come into compliance with the Settlement Agreement and CFMG Implementation Plan.

Second, Plaintiffs assert that "[t]he Settlement Agreement provides an additional, independent basis for the County's liability." Pls.' Mot. at 10-15, ECF 963. Plaintiffs claim that the Settlement Agreement requires the County to comply with the CFMG Implementation Plan, and may be held in contempt for failure to do so.

The County argues that neither the law nor the Settlement Agreement obligate it to ensure CFMG's compliance with its obligations, or to comply with the CFMG Implementation Plan. The Court addresses Plaintiffs' theories in turn.

### A. Liability for CFMG's Constitutional Violations

Plaintiffs argue that the County is responsible for the constitutional violations resulting from the deficient health care provided by its contractor, CFMG. Plaintiffs cite a number of cases holding that a county may not escape liability for failing to provide constitutionally adequate health care by contracting out its duty to provide medical services. *See, e.g., King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) ("The County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services."); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1250 (6th Cir. 1989) (Sheriff's deliberate indifference to prisoners' needs in the jail was "not excused by a claim of reliance upon the attendant medical staff").

The Court has no disagreement with Plaintiffs' legal citations, but the cited cases are distinguishable from the present case, because the cited cases arose in the litigation context while the present case arises in the context of a settlement. While Plaintiffs may well have been able to rely on *King* and *Leach* to hold the County liable for CFMG's constitutional violations had this case gone to trial, nothing in those cases speaks to the validity of a settlement agreement in which a county and its contractor divide responsibility for inmate care to effectuate a settlement with the

9

full consent of the plaintiffs.  *King* and *Leach* seem particularly inapplicable given that the County expressly disclaimed any liability as part of the settlement bargain.  *See* Settlement Agreement ¶ 6 ("The Defendants expressly deny any liability.").

Plaintiffs argue that the County nonetheless may be held liable for the misconduct of CFMG, because the Court's approval of the Settlement Agreement in this case necessarily acknowledged the existence of a constitutional violation.  Plaintiffs rely on *Parsons v. Ryan*, 912 F.3d 486 (9th Cir. 2018), which addressed a settlement of a lawsuit alleging systemic Eight Amendment violations in Arizona's prison system.  *See Parsons*, 912 F.3d at 501.  The district court issued various orders interpreting and enforcing the settlement agreement, including an "Outside Provider Order" that the defendants argued did not comply with the Prison Litigation Reform Act ("PLRA").  *See id.* at 499-501.

"Under the PLRA, a court may not order 'any prospective relief [with respect to prison conditions] unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.'"  *Parsons*, 912 F.3d at 501 (quoting 18 U.S.C. § 3626(a)(1)(A)) (brackets in original).  The defendants in *Parsons* argued that the PLRA was not satisfied because the district court never determined that a constitutional violation had occurred.  *See Parsons*, 912 F.3d at 501.  The Ninth Circuit rejected that argument, finding that the district court's express holding that the settlement agreement "was necessary to correct the violations of the Federal right of the Plaintiffs" necessarily required a finding of a constitutional violation.  *Id*.  The Ninth Circuit stated that "if there were no violation of a federal right, there would be nothing for the [settlement agreement] to 'correct.'"  *Id*.  Under those circumstances, the Ninth Circuit concluded that the district court found the requisite constitutional violation in granting initial prospective relief.  *Id*.

Plaintiffs point out that the Final Approval Order, approving the Settlement Agreement in the present case, contains nearly identical language to that found sufficient to establish a constitutional violation on *Parsons*.  In the present case, the court found:

> For the purposes of jurisdiction and enforcement of this Settlement Agreement only, the Court finds that this Settlement Agreement satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that it is narrowly drawn, extends no further than necessary to *correct the violation of the Federal right*, and is the least intrusive means necessary to *correct the violation of the Federal right of the Plaintiffs*.

Final Approval Order at 4, ¶ 4 (emphasis added).

This Court agrees that based on *Parsons*, the language of the Final Approval Order in the present case establishes the existence of constitutional violations at the Jail. However, nothing in *Parsons* suggests that the existence of constitutional violations precludes a county from settling potential liability flowing from such violations in the manner the case was settled here. The concern of the *Parsons* court was whether the district court's order for prospective relief complied with the PLRA, and the Ninth Circuit held that it did. That holding did not address the question presented here, whether parties to a settlement may allocate settlement responsibility for redressing constitutional violations as part of the settlement bargain. The Court is not persuaded that *Parsons* may be extended in the manner argued by Plaintiffs here.

Plaintiffs' motion to enforce is DENIED to the extent it is based on the theory that the County may be subject to contempt sanctions based on CFMG's failure to comply with its obligations.

### B. Violation of the Settlement Order and CFMG Implementation Plan

Plaintiffs next argue that the County may be held in contempt for its own violation of the CFMG Implementation Plan. Plaintiffs point to language in the Settlement Agreement directing that "*[t]he parties* shall develop Implementation Plans," and that "[t]hese Implementation Plans will be adopted as part of the Settlement Agreement." Settlement Agreement ¶ 31 (emphasis added). In addition, the Court's Final Approval Order states that "*the parties* shall develop Implementation Plans that will be enforceable by the Court as part of the Settlement Agreement." Final Approval Order p. 4, ¶ 5 (emphasis added). Plaintiffs contend that this language requires the County comply not only with its County Implementation Plan, but also with the CFMG Implementation Plan. According to Plaintiffs, the County's failure to comply with 40 of the 43 requirements identified in the CFMG Contempt Order renders the County equally subject to contempt sanctions as CFMG.

11

1  Plaintiffs' argument simply ignores the structure of the Settlement Agreement and more
2  than a decade of conduct by the parties.  The County and CFMG developed separate
3  Implementation Plans.  The County Implementation Plan addresses Intake Screening, Custody
4  Staffing, Health and Safety Checks, and other areas for which the County has taken responsibility
5  in the last decade.  *See* County Mot. & Ex. 1 (County Implementation Plan), ECF 514.  The
6  CFMG Implementation Plan addresses Medical Care, Mental Health Care, and Dental Care, and
7  related areas, all of which CFMG has taken responsibility for over the last decade.  *See* CFMG
8  Mot. & Ex. A (CFMG Implementation Plan), ECF 532.  When seeking approval of their own
9  plans, each party acknowledged the existence of and complementary nature of the other's plan.
10 The County's motion advised that the County had contracted with CFMG to provide health care at
11 the Jail, and that "CFMG has developed its own implementation plan to address those portions of
12 the settlement agreement . . . dealing specifically with health care concerns."  *Id*. at 3.  The CFMG
13 Plan states that it "is designed to be used in concert with the County of Monterey's
14 Implementation Plan."  *See* CFMG Implementation Plan at 9.
15 From the time the Implementation Plans were approved until now, Plaintiffs have never
16 suggested that each Defendant is bound to comply with the other's Implementation Plan.  Such a
17 suggestion would be absurd.  Taking Plaintiffs' argument to its natural conclusion, CFMG would
18 be required to ensure that the County meets its obligations regarding custody staffing and security
19 issues set forth in the County Implementation Plan.  That is not how the Settlement Agreement is
20 drafted.  To the contrary, the County Implementation Plan states expressly that, "The County
21 Implementation Plan and the Settlement Agreement represent the totality of the County's
22 obligations. . . ."  County Implementation Plan at 1.
23 Viewing the Settlement Agreement and Implementation Plans as a whole, the Court has no
24 difficulty concluding that interpretation advanced by Plaintiffs is unreasonable.  Accordingly,
25 Plaintiffs' most recent written notice of noncompliance, citing the County's failure to comply with
26 the CFMG Implementation Plan, was not sufficient to trigger the proceedings outlined in
27 paragraphs 48 and 45 of the Settlement Agreement.  *See* Jackson Decl. Ex. A (Letter), ECF 963-1.
28 At the hearing, Plaintiffs suggested that the stipulated orders issued by the Court following

1  Plaintiffs' 2020 and 2022 notices of noncompliance could support a contempt finding against the
2  County here. *See* Orders, ECF 671, 751.  In response, the County argued that those orders were
3  not mentioned in Plaintiffs' briefing, and as a result the County had no idea that Plaintiffs might
4  be seeking to impose contempt sanctions against the County based on those orders.  The Court
5  likewise had no notion Plaintiffs might be trying to base its current motion to enforce on the orders
6  in question.  Moreover, it appears that all disputes between Plaintiffs and the County were
7  resolved with the assistance of Judge Cousins.  *See* Minute Entry, ECF 771.

The Court finds that Plaintiffs have not shown by clear and convincing evidence that the County violated an order that specifically and definitely applies to the County, as required for imposition of contempt sanctions.  The Settlement Agreement and Implementation Plans, taken together, divide the responsibility for tasks at the Jail between the County and CFMG.  The Settlement Agreement simply cannot reasonably be read to mean that the County was responsible for ensuring that CFMG's Implementation Plan was effectuated, or vice versa.

Plaintiffs' own conduct reflects their understanding that CFMG alone was obligated to comply with the CFMG Implementation Plan, as Plaintiffs chose to bring their prior motion to enforce the CFMG Implementation Plan only against the County.  As noted above, the County was not a part of that proceeding, and therefore had no occasion or opportunity to be heard regarding the asserted noncompliance with the CFMG Implementation Plan.  Plaintiffs easily could have brought their prior motion to enforce against both Defendants.

Based on this record, it appears likely that Plaintiffs' current attempt to wrap the County into the prior civil contempt findings against CFMG stems from the fact that CFMG will not be the Jail health care provider after the end of the year.  Attempting to impose contempt liability on the County for CFMG's conduct is not the proper way to address that change.

Like all negotiated agreements, this Settlement Agreement has its limits, and it is not a viable vehicle for the relief Plaintiffs seek in the present motion.  Plaintiffs' motion to enforce the Settlement Agreement and CFMG Implementation Plan against the County is DENIED.

//

//

**IV. ORDER**

(1) Plaintiffs' motion to enforce the Settlement Agreement and Implementation Plans against the County is DENIED.

(2) This order terminates ECF 963.

Dated: October 7, 2025

_____
BETH LABSON FREEMAN
United States District Judge