MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
VAN SWEARINGEN – 259809
CAROLINE E. JACKSON – 329980
BEN HATTEM – 335232
MAYA E. CAMPBELL – 345180
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: mbien@rbgg.com
egalvan@rbgg.com
vswearingen@rbgg.com
cjackson@rbgg.com
bhattem@rbgg.com
mcampbell@rbgg.com

CORENE KENDRICK – 226642
KYLE VIRGIEN – 278747
ACLU NATIONAL PRISON PROJECT
425 California St., Ste. 700
San Francisco, CA 94104
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
Email: ckendrick@aclu.org
kvirgien@aclu.org

AVRAM D. FREY
(*admitted pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: afrey@aclunc.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 5:13-cv-02354-BLF<br><br>**JOINT MOTION FOR FINAL APPROVAL OF CFMG CIVIL CONTEMPT LIABILITY SETTLEMENT**<br><br>Judge: Beth Labson Freeman<br><br>Date: Jan. 15, 2026<br>Time: 9:00 a.m.<br>Crtrm.: 1 |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION .................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................... 2

SUMMARY OF THE PROPOSED SETTLEMENT ................................................................ 3

ARGUMENT ............................................................................................................................. 5

I. SETTLEMENT CLASS MEMBERS WERE ADEQUATELY NOTIFIED OF THE PROPOSED SETTLEMENT ................................................................. 5

II. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ................................................................................................................. 6

    A. Class Counsel Have Adequately Represented the Plaintiff Class ................... 7

    B. The Proposed Settlement Was Negotiated At Arm's Length ......................... 8

    C. The Proposed Settlement Provides Adequate Relief ...................................... 9

    D. The Proposed Settlement Equitably Distributes the Settlement Fund .......... 10

III. The Objections Do Not Warrant Rejecting the Proposed Settlement ....................... 11

CONCLUSION ........................................................................................................................ 14

# TABLE OF AUTHORITIES

Page

**CASES**

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) .................................................................................... 5, 7, 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 7

*Helling v. McKinney*,
    509 U.S. 25 (1993) ........................................................................................................... 14

*Hernandez v. County of Monterey*,
    305 F.R.D. 132 (N.D. Cal. 2015) ................................................................................. 8, 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................................. 8

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ............................................................................................. 7

*In re Snap Inc. Securities Litig.*,
    No. 17-cv-3679, 2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ........................................... 7

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................................. 9

*Kim v. Allison*,
    87 F.4th 994 (9th Cir. 2023) .............................................................................................. 7

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) .......................................................................... 9, 10

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .......................................................................................... 5, 7

*Moses v. N.Y. Times Co.*,
    79 F.4th 235 (2d Cir. 2023) .............................................................................................. 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................................... 9

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .......................................................................................... 5, 6

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................................................ 11

*Uschold v. NSMG Shared Servs., LLC*,
    333 F.R.D. 157 (N.D. Cal. 2019) ..................................................................................... 10

**RULES**

Fed. R. Civ. P. 23 ................................................................................................. 5, 6, 7, 10

Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment ............... 7, 8, 11

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 15, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs and Defendant California Forensic Medical Group, Inc. ("CFMG") will and hereby do move the Court for an order granting final approval of the proposed settlement of CFMG's liability for civil contempt sanctions under the Court's September 26, 2023 Order (Dkt. 838).

This motion is based on the accompanying Memorandum of Points and Authorities, the Proposed Settlement attached thereto, the Declarations of Ben Hattem and Scott M. Fenwick filed concurrently herewith, the [Proposed] Order Granting Joint Motion for Final Approval, any oral argument, and the entire record in this action.

# MEMORANDUM OF POINTS AND AUTHORITIES

This Court held CFMG in contempt in September 2023 for noncompliance with the Settlement Agreement and CFMG Implementation Plan. To date, no contempt fines have been paid. CFMG was initially given a six-month period to purge the contempt. Following the expiration of that six-month period, the court-appointed neutral monitors conducted another evaluation of CFMG's care at the Monterey County Jail, finding that CFMG remained out of compliance in certain areas. Since then, because CFMG's decades-long tenure as the health care provider at the Jail is ending on December 31, 2025, the parties have been negotiating a settlement of CFMG's civil contempt sanctions.

To ensure the Plaintiff class receives the benefit of the Court's 2023 contempt findings and to avoid protracted litigation of CFMG's fines following its departure from the Jail, Plaintiffs and CFMG ask the Court to approve the proposed settlement of CFMG's civil contempt liability. The proposed settlement would distribute nearly all of the $2,470,000 settlement fund directly to class members exposed to the noncompliant medical, mental health, and dental care provided by CFMG since the Implementation Plan was entered in 2016. The proposed settlement's substantial value to the Plaintiff class warrants its approval.

## FACTUAL AND PROCEDURAL BACKGROUND

This class action lawsuit concerns conditions at the Monterey County Jail, including the medical, mental health, and dental care provided to incarcerated people by the County's longtime health care contractor CFMG. The constitutional and statutory claims of the Plaintiff class were resolved by a Settlement Agreement in August 2015, and the Court approved Implementation Plans in May 2016 to effectuate the terms of the Settlement Agreement. *See* Dkts. 494 & 549.

In September 2023, the Court found CFMG in contempt for failing to provide health care at the Jail that complied with the Settlement Agreement and CFMG Implementation Plan. Dkt. 838 at 26. The Court imposed ongoing civil contempt sanctions against CFMG of $25,000 per noncompliant requirement, which would continue to accrue after each subsequent round of reports from the neutral monitors for medical, mental health, and dental care until CFMG brought the care it provided into compliance with the Settlement Agreement and Implementation Plan. *Id.* at 26–27. The Court granted CFMG until March 25, 2024, to purge the contempt and avoid fines by coming into compliance with the Settlement Agreement and Implementation Plan. *Id.* at 26.

In October 2024, Plaintiffs and CFMG reached a settlement of CFMG's liability for the first round of civil contempt sanctions, covering the purge period of September 2023 to March 2024. *See* Dkt. 945 at 3–5. This settlement followed extensive discovery between the parties in anticipation of a scheduled evidentiary hearing about whether CFMG had come into compliance during that period. *Id.* at 2–3. The Court approved the parties' stipulation on October 29, 2024. *Id.* at 6–7. The total amount of CFMG's sanctions for the September 2023 to March 2024 period was ultimately fixed at $620,000 under the framework established by the October 2024 stipulation. *See* Dkt. 981 at 4.

From November 2024 to May 2025, all monetary claims against CFMG were stayed by the bankruptcy proceedings of Wellpath, Inc., the company that CFMG contracts with to provide it with management services (human resources, policies and procedures, payroll, administration, etc.). *See* Dkt. 948-1 ¶ 4. In June 2025, after the second round of

monitoring reports since the Court's 2023 order were filed (Dkts. 952, 957 & 969-1), Plaintiffs informed CFMG of their intent to request an order to show cause why CFMG should not be ordered to pay $25,000 for each of the forty-one contempt requirements found noncompliant in those subsequent reports. Decl. of Ben Hattem, filed concurrently herewith ("Hattem Decl.") ¶ 2. The parties met and conferred thereafter and participated in a mediation with Judge Cousins on July 18, 2025, to discuss a global settlement of all of CFMG's contempt liability through the end of its contract at the Jail, which will expire on December 31, 2025. *Id.* ¶¶ 3–4. The parties' conferrals and mediation resulted in the proposed settlement for which Plaintiffs and CFMG now seek final approval. *Id.* ¶ 4; *see also* Dkt. 981 at 3–4.

## SUMMARY OF THE PROPOSED SETTLEMENT

The proposed settlement is attached hereto as Exhibit A. The settlement requires CFMG to pay a total of $2,470,000 to resolve all of its liability for civil contempt sanctions through December 31, 2025. Proposed Settlement of CFMG Civil Contempt Liability, filed concurrently herewith ("CFMG Contempt Settlement") ¶¶ 2–3. This total consists of $620,000 for the period of September 2023 to March 2024 under the parties' prior stipulation, along with $1,850,000 to resolve CFMG's potential contempt liability from March 2024 to December 31, 2025. The settlement does not include any amount for Plaintiffs' attorneys' fees. *Id.* ¶ 5.

The settlement amount will be paid to adult individuals incarcerated at the Monterey County Jail from May 27, 2016 through December 31, 2025 (the "Settlement Period") who submit claims to the settlement administrator during the claims period. The Court previously approved this definition of the class entitled to benefit from the proposed settlement (the "Settlement Class"). Dkt. 1004 at 2. All people incarcerated at the Jail during the Settlement Period will be eligible to receive payment from the settlement fund. CFMG Contempt Settlement ¶ 6. Filed herewith is a declaration by Scott M. Fenwick, a Senior Director of proposed settlement administrator Kroll, outlining the administration and notice process that will be followed if this settlement is granted final approval.

Each member of the Settlement Class who submits a claim during the claims period will receive a minimum, fixed dollar amount from the settlement fund. *Id.* In addition, each claimant will receive a further amount for each day they were incarcerated at the Jail during the Settlement Period, so a claimant who was incarcerated for 20 days will receive the minimum award plus 20 times the per diem amount. *Id.* The exact numbers for the minimum award and per diem additional amounts will be determined based on the number of claimants to ensure the distribution of the full settlement fund. *Id.* As an example, if 20% of the Settlement Class submitted claims, the average total award would be approximately $336 for each of the 7,000 claimants.

The County of Monterey has provided Plaintiffs with records about the Settlement Class that are sufficient to determine the number of days that each member of the class was incarcerated at the Jail during the Settlement Period, through October 28, 2025. Plaintiffs anticipate that the County will update these records through December 31, 2025 once such data becomes available. Claimants who are currently incarcerated may elect to have their award sent to an address outside the Jail to access after their release from custody or may designate another individual to receive the funds on their behalf, such as a family member or guardian. CFMG Contempt Settlement ¶ 9.

The settlement administrator will attempt to notify members of the Settlement Class about the proposed settlement by means of the notice plan outlined in the Fenwick declaration. *See* Decl. of Scott M. Fenwick, filed concurrently herewith ("Fenwick Decl.") ¶¶ 6–18. The costs of the notice plan and settlement administration are estimated at $112,094 and will be paid from the settlement fund. *See id.* ¶ 5; CFMG Contempt Settlement ¶ 5. These estimated costs are approximately 4.5% of the total fund.

To the extent feasible, any unclaimed amount of the settlement fund at the conclusion of the claims period will be distributed pro rata by the administrator to all members of the Settlement Class who submitted claims. CFMG Contempt Settlement ¶ 7. This unclaimed amount will be divided equally among the claimants. *Id.* If any residual amount remains in the fund—for instance, because some distributed checks are not

deposited or because too little money is left in the fund at the end of the claims period for redistribution to be feasible—this residual amount will be donated as a *cy pres* award to a charitable organization selected by the Court. *Id.* ¶ 8. Plaintiffs will provide a list of potential nonprofit recipients for the Court to review if this residual *cy pres* award becomes necessary. *Id.* As a result of this distribution process, aside from the costs of settlement administration, all or nearly all of the settlement fund will be paid directly to the members of the Settlement Class.[1]

## ARGUMENT

### I. SETTLEMENT CLASS MEMBERS WERE ADEQUATELY NOTIFIED OF THE PROPOSED SETTLEMENT

Before approving a proposed class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). The Court has concluded that while the settlement notice and approval provisions of Rule 23(e) are not binding with regard to the proposed settlement of CFMG's civil contempt liability, they

---

[1] The parties' initial stipulation proposed that all of the settlement funds would be distributed to a *cy pres* recipient. *See* Dkt. 981 at 4–5. After further research regarding direct distribution options, and in light of the overwhelming preference of the members of the Settlement Class who submitted letters regarding the proposed settlement, Plaintiffs instead propose direct distribution of the funds to the Settlement Class under the terms described in the proposed settlement. CFMG does not take a position on how the settlement funds are distributed.

should be considered a "general guide" for the process. Tr. of Oct. 16, 2025 Hr'g 9:18–20, Dkt. 1001.

Pursuant to the proposed notice plan submitted by Plaintiffs, notice of the proposed settlement was distributed in both English and Spanish to class members in the Jail and throughout the Monterey County community. Dkt. 1003-1 at 4–6. Notice was provided in the Monterey County community in partnership with thirteen community organizations that serve formerly incarcerated people in Monterey County, as well as the offices of the Monterey County Probation Department and the re-entry center run by the Monterey County Sheriff's Office. *See id.* at 5 (identifying ten community organizations and noting Plaintiffs' continued communications with additional organizations); *see also* Hattem Decl. ¶ 7. Class members currently incarcerated at the Jail were notified by displaying the notice of the proposed settlement in the Jail locations where the 2015 Settlement Agreement is currently displayed. Dkt. 1003-1 at 4–5.

The Court approved this plan for providing notice to the Settlement Class, as well as the form of the notice. Dkt. 1004 at 2–3. The notice "communicated the essentials of the proposed settlement in a sufficiently balanced, accurate, and informative way" by describing the terms of the settlement and the options for distribution of the settlement funds "neutrally, simply, and understandably." *Rodriguez*, 563 F.3d at 962–63; *see* Dkt. 1002-1 (English notice). The parties were able to execute all aspects of the notice plan approved by the Court. Hattem Decl. ¶¶ 5–7. The large number of letters submitted to the Court by members of the Settlement Class regarding the proposed settlement—nearly 250 letters as of the date of this filing—demonstrate that notice was seen by a substantial part of the Settlement Class. *See* Dkts. 1007, 1010–1256. The Court should find that notice of the proposed settlement was reasonably directed to the Settlement Class.

## II. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

A court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In deciding

whether to approve a class settlement, the Court "consider[s] the overall fairness of 'the settlement taken as a whole, rather than the individual component parts,' because '[n]either the district court nor this court ha[s] the ability to "delete, modify or substitute certain provisions."'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 569 (9th Cir. 2019) (en banc) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *see also Hanlon*, 150 F.3d at 1026 ("The settlement must stand or fall in its entirety.")

"A number of factors guide the district court" in determining whether the proposed settlement is "fair, adequate, and free from collusion." *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1027). Since 2018, Rule 23(e)(2) has specifically required courts to consider whether "the class representatives and class counsel have adequately represented the class," whether "the proposal was negotiated at arm's length," whether "the relief provided for the class is adequate," and whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). These factors substantially overlap with those previously developed by Ninth Circuit: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill.*, 361 F.3d at 575. The applicable factors are discussed below.

### A. Class Counsel Have Adequately Represented the Plaintiff Class

The requirement of adequate representation in settlement negotiations under Rule 23(e)(2)(A) is similar to the adequacy requirement for class certification in Rule 23(a)(4). *See Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023). This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment. Class counsel provide adequate representation when they "prosecute[] the case with diligence and success." *In re Snap Inc. Securities Litig.*, No. 17-cv-3679, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18,

2021).

The Court has previously found class counsel adequate in this case. *Hernandez v. County of Monterey*, 305 F.R.D. 132, 161–62 (N.D. Cal. 2015). Counsel has diligently litigated this case for more than a decade, including extensive enforcement of the 2015 Settlement Agreement. *See, e.g.*, Dkt. 599 (2017 enforcement motion regarding telepsychiatry and access to medical records); Dkt. 718 (2021 enforcement motion regarding neutral monitor inspections); Dkt. 825 (2023 contempt motion against CFMG). Counsel's prosecution of this case resulted in the Court's civil contempt finding in 2023 and the fines that the proposed settlement would resolve. *See* Dkt. 838 (granting Plaintiffs' contempt motion). Class counsel continue to provide adequate representation to people incarcerated at the Jail and have done so in negotiating the proposed settlement.

### B. The Proposed Settlement Was Negotiated At Arm's Length

Rule 23(e)(2)(B) asks whether the settlement terms were "negotiated at arm's length." Courts look for circumstances demonstrating a truly adversarial bargaining process, such as the involvement of a neutral, third-party mediator. *See* Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests"). That occurred in this case: Following meet and conferral and an exchange of proposals between the parties, the proposed settlement was negotiated in a mediation session facilitated by Magistrate Judge Nathanael Cousins. Hattem Decl. ¶¶ 3–4.

In addition, none of the factors that the Ninth Circuit has identified as signs of potential collusion are present. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). The settlement contains no distribution for counsel or clear sailing arrangement regarding attorney's fees, and any residual amount in the settlement fund will not revert to CFMG under the proposed settlement. *See id.* The involvement of Judge Cousins and the absence of any of the *Bluetooth* factors support a finding that the proposed settlement is non-collusive and was negotiated at arm's length.

### C. The Proposed Settlement Provides Adequate Relief

In assessing whether proposed relief is adequate, courts "must balance the risks of continued litigation, including the strengths and weaknesses of [the] plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). Courts evaluating a proposed settlement "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Knapp*, 283 F. Supp. 3d at 832 (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

For the purge period of September 2023 to March 2024, CFMG's liability was fixed at $620,000 under the framework established by the parties' October 2024 stipulation. *See* Dkt. 945 at 3–4. This framework imposed the full $25,000 fine authorized by the Court's September 2023 contempt order for each requirement found noncompliant by the neutral monitors, but reduced to $5,000 the fine for all requirements found partially compliant. *Id.*

Prior to the settlement, Plaintiffs estimated that the maximum potential further fines CFMG could face from March 2024 to December 2025 would be $3,300,000. This estimate assumed (1) that CFMG would not reach substantial compliance with *any* requirement for which it was not substantially compliant at the end of the purge period; (2) that the Court would not reduce the $25,000 fine for areas where CFMG was found in partial compliance; and (3) that CFMG would be fined for three rounds of monitoring reports assessing care that CFMG provided after the purge period (as well as an additional report from Dr. Barnett), including a round of reports that would likely be issued after CFMG left the Jail but would consider care provided during CFMG's tenure.

Each of these assumptions was subject to litigation risk and would have been litigated absent the proposed settlement. For instance, CFMG may have retained experts to challenge the monitors' noncompliance findings, as it did before the stipulated

resolution of its purge period fines in October 2024. *See* Dkts. 905-1 to -4 (expert declarations challenging purge period findings). The parties had previously agreed to a discounted fine for partial compliance in the purge period, and the Court might have imposed a similar discount in litigation for fines that accrued after the purge period. Such a discount would significantly decrease the total liability amount because the monitors have recently found partial compliance in the majority of areas they have reviewed since the September 2023 Contempt Order. *See, e.g.*, Dkt. 970-1 at 10–15. Finally, it was not clear at the time of the parties' settlement how many more reports the monitors would issue during CFMG's tenure or whether CFMG would be subject to fines for any reports issued after its departure. CFMG estimated its maximum potential exposure to civil contempt fines at just $850,000 based on alternative assumptions about the resolution of these expected disputes.

The vigorous litigation of CFMG's purge period contempt liability before the parties' October 2024 stipulation indicated that there would be considerable "risk, expense, complexity, and likely duration of further litigation" if CFMG's remaining contempt liability were not settled as well. *Churchill Vill.*, 361 F.3d at 575. The $2,470,000 settlement ultimately reached by the parties—roughly midway between their respective estimates of CFMG's maximum potential liability—is not "clearly inadequate" to provide relief for the contempt claims. *Knapp*, 283 F. Supp. 3d at 832; *see also Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 172 (N.D. Cal. 2019) (finding that settlement amounting to "approximately 19.4% of the high-end estimate of potential damages" provided adequate relief). The adequacy of the settlement is supported by "the reaction of the class members" who have submitted letters regarding the settlement, only twenty-one of whom have objected to the amount of the settlement. *Churchill Vill.*, 361 F.3d at 575.

### D. The Proposed Settlement Equitably Distributes the Settlement Fund

Finally, the proposed distribution of the settlement fund "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This requirement protects against "special rewards for counsel's individual clients" to ensure that litigants are not

incentivized to "bring[] cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves." *Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003). The rule "requires that class members be treated *equitably*, not identically." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023) (emphasis in original). Different class members should receive different settlement amounts when "the apportionment of relief among class members takes appropriate account of differences among their claims." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment.

The proposed settlement provides a fixed baseline amount to each claimant based on their incarceration in the Jail during the Settlement Period, and it provides additional per diem amounts to account for differences in the length of each claimant's incarceration. This apportionment is equitable because people who spent more time at the Jail were exposed for longer periods to the substantial risk of serious harm caused by CFMG's noncompliance with the Settlement Agreement and Implementation Plan. The differences in the amounts each claimant will receive under the proposed settlement are justified by differences in their relative exposure to the conduct that resulted in CFMG's contempt; a claimant who was exposed to deficient medical care for a week should and will receive less than a claimant who was exposed to deficient medical care for a year. For that reason, the proposed settlement equitably distributes the settlement fund in compliance with Rule 23(e)(2)(D).

## III.    The Objections Do Not Warrant Rejecting the Proposed Settlement

The vast majority of class members who have responded to notice of the proposed settlement have not objected to it. Out of nearly 250 letters submitted by the Settlement Class, only twenty-eight individuals objected to the proposed settlement.

Four of the objectors did not state the basis of their objections. *See* Dkts. 1155, 1156, 1158, 1160. Two substantive objections were submitted.

*First*, twenty-one people objected to the proposed settlement on the ground that the amount of the settlement should be greater. *See* Dkts. 1012, 1013, 1018, 1029, 1035,

1068, 1073, 1074, 1076, 1078, 1094, 1104, 1109, 1138, 1171, 1172, 1175, 1221, 1225, 1232, 1247.  Many of those who discussed the reason for this objection expressed a belief that the settlement would end the substantive claims in this case or that the settlement is intended to compensate people for specific harms they experienced as a result of deficient health care at the Jail.  *See, e.g.*, Dkt. 1138 at 1 (stating that proposed amount "is a disrespectful mon[e]tary amount being offered to settle this case"); Dkt. 1171 at 1–2 (proposing settlement of $10.5 million).

The proposed settlement does not resolve the underlying injunctive claims in this case or affect the 2015 Settlement Agreement that sets forth the ongoing remedy for those claims.  The settlement also is not intended to and does not compensate class members for any medical malpractice or other tort claims they may possess based on health care provided at the Jail, nor would it preclude class members from bringing such claims on an individual basis.  To address these objections, the proposed settlement includes an express provision indicating that it has no preclusive effect on class members' individual tort claims.  The basis for the proposed settlement amount is discussed above and is adequate to provide relief for CFMG's civil contempt liability.  *See supra* § II(C).

*Second*, four objectors[2] stated that people who experienced particularly serious harm at the Jail due to deficient health care should receive more money from the settlement or should be the only recipients of the settlement funds.  *See* Dkt. 1247 at 2 (letter from mother of individual who died at the Jail stating that "those harmed, including families of those who died, should be directly recognized"); Dkt. 1097 at 2 (stating that "those entitled should be the actual victims of the County and not just those who were in jail and had no complaints"); *see also* Dkts. 1015, 1021.

The proposed settlement's apportionment of funds based on the length of each claimant's incarceration endeavors to take into account claimants' exposure to CFMG's noncompliance with the Court's orders.  Adjusting claimants' awards in response to

---

[2] One letter objected on both grounds.  *See* Dkt. 1247.

individualized assessments of harm is not feasible. Not all injuries that occur at the Jail necessarily result from noncompliance with the Implementation Plan; for instance, one of the deaths at the Jail since the 2015 Settlement Agreement was found by the neutral monitors not to have been preventable with appropriate care and not to have involved violations of the Settlement Agreement or CFMG Implementation Plan. *See* Dkt. 825 at 9. Determining whether the harm a particular claimant suffered was caused by CFMG's noncompliance with the Implementation Plan would require an individualized review of that claimant's records by the neutral monitors. Conducting these individualized reviews for all 35,000 members of the Settlement Class—or even the subset of the class that submits claims—would unreasonably burden the neutral monitors and inhibit their performance of their monitoring duties.

Apportionment based on the harm suffered by each claimant would be impractical even if it did not depend on a determination that the harm was caused by CFMG's noncompliance. To apportion the fund based on injury, either claimants would need to submit documentation proving the harm they experienced or the settlement administrator would need to review the Jail's health records for each claimant to confirm the accuracy of their claims. Claimants may not have received documentation from the Jail proving their injuries or may no longer have access to that documentation, resulting in inequitable allocations of the settlement based on claimants' access to evidence rather than their injury. Moreover, many of the harms caused by CFMG's noncompliance would not be reflected in records of treatment that claimants may have received from the Jail because the harm resulted from lack of care, such as failures to provide timely screenings or appointments with practitioners. Alternatively, individualized back-end review of the Jail's medical records for each claimant to look for evidence of their injuries would delay awards and drive up administration costs.

Finally, the requirements of the Settlement Agreement and Implementation Plans with which CFMG has not complied are meant to protect all people incarcerated at the Jail from being exposed to a substantial risk of serious harm. *See* Dkt. 494 at 4 (finding that

Settlement Agreement "extends no further than necessary to correct the violation of" Plaintiffs' federal rights). Absent compliance with the Settlement Agreement and Implementation Plan, all Plaintiff class members are exposed to that risk of harm because of the Jail's "system-wide policies and practices." *See Hernandez*, 305 F.R.D. at 155–56. As this Court has found, class members remain at risk regardless of whether they have "current serious health problems" because "a 'remedy for unsafe conditions need not await a tragic event.'" *Id.* at 156 (quoting *Helling v. McKinney*, 509 U.S. 25, 33–34 (1993)). Therefore, the proposed settlement appropriately apportions relief for CFMG's contempt based on the amount of time each class member was exposed to CFMG's noncompliance, rather than individualized assessments of the harm resulting from that exposure.

## CONCLUSION

For the foregoing reasons, Plaintiffs and CFMG respectfully request that the Court approve the proposed settlement filed herewith.

Respectfully submitted,

DATED: December 18, 2025          ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Ben Hattem*
    Ben Hattem

Attorneys for Plaintiffs

DATED: December 18, 2025          GORDON REES SCULLY MANSUKHANI

By: */s/ Allison J. Becker*
    Allison J. Becker

Attorneys for Defendant
CALIFORNIA FORENSIC MEDICAL
GROUP, INCORPORATED

As required by Local Rule 5-1, I, Ben Hattem, attest that I obtained concurrence in the filing of this document from Allison J. Becker, counsel for Defendants, and that I have maintained records to support this concurrence.

DATED: December 18, 2025          /s/ Ben Hattem
                                  Ben Hattem