MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
VAN SWEARINGEN – 259809
CAROLINE E. JACKSON – 329980
BEN HATTEM – 335232
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:     (415) 433-6830
Facsimile:     (415) 433-7104
Email:          mbien@rbgg.com
                   egalvan@rbgg.com
                   vswearingen@rbgg.com
                   cjackson@rbgg.com
                   bhattem@rbgg.com

CORENE KENDRICK – 226642
KYLE VIRGIEN – 278747
ACLU NATIONAL PRISON PROJECT
425 California St., Ste. 700
San Francisco, CA 94104
Telephone:     (202) 393-4930
Facsimile:     (202) 393-4931
Email:          ckendrick@aclu.org
                   kvirgien@aclu.org

AVRAM D. FREY
(*admitted pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:     (415) 621-2493
Facsimile:     (415) 255-8437
Email:          afrey@aclunc.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 5:13-cv-02354-BLF<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF FINAL APPROVAL OF CFMG CIVIL CONTEMPT LIABILITY SETTLEMENT**<br><br>Judge:  Hon. Beth Labson Freeman<br><br>Date:    June 18, 2026<br>Time:    9:00 a.m.<br>Crtrm:   1 |

**INTRODUCTION**

On January 26, 2026, the Court approved the amount of Defendant California Forensic Medical Group, Inc. ("CFMG")'s $2,470,000 settlement of its civil contempt liability stemming from the Court's September 2023 contempt order.  Since then, Kroll Settlement Administration, the designated administrator for the settlement, has conducted an extensive notice campaign and has received and processed more than two thousand claims from people currently and formerly incarcerated at the Monterey County Jail.  Plaintiffs provide the information in this filing in response to the Court's order for briefing to "explain how the notice plan was implemented, advise the Court how many individuals filed claims to the settlement funds, and propose a plan for distribution of the settlement funds."  Dkt. 1312 at 1.  The substantial benefits that CFMG's civil contempt liability settlement will provide to the Plaintiff class warrant its approval by the Court.

**I.    THE PARTIES AND THE SETTLEMENT ADMINISTRATOR PROVIDED EFFECTIVE NOTICE TO THE CLASS**

Following the Court's order approving the amount of the CFMG civil contempt settlement, the parties and Kroll undertook and implemented every aspect of the notice plan described in the Court's order and the Declaration of Scott M. Fenwick submitted in connection with the parties' joint motion for final approval.  *See* Order, Dkt. 1288 at 3–4 (Jan. 26, 2026); *see also* Decl. of Scott M. Fenwick, Dkt. 1257-3 ¶¶ 6–18.  Plaintiffs' counsel and Kroll created final English and Spanish versions of the notice and claim form, as well as separate English and Spanish notice documents to be posted at the Jail describing the process for people incarcerated at the Jail to submit claims.  *See* Suppl. Decl. of Ben Hattem in Supp. of Final Approval of CFMG Civil Contempt Liability Settlement, filed concurrently herewith ("Suppl. Hattem Decl.") ¶¶ 2–8 & Exs. A–F.  Plaintiffs' counsel also created a large print version of the claim form to be distributed to class members with vision disabilities.  *See id.* ¶ 9 & Ex. G.

As detailed in the concurrently filed Supplemental Declaration of Tara Trapani of Kroll Settlement Administration LLC in Connection with Final Approval of CFMG Civil

Contempt Liability Settlement ("Suppl. Trapani Decl."), Kroll established a settlement website and toll-free telephone number for the settlement hotline in January 2026 following the Court's order.  Suppl. Trapani Decl. ¶¶ 6–7.  Prior to the Court's order, Kroll established a post office box to receive claim forms as well.  *Id.* ¶ 5.  Kroll has received more than 1,000 calls to the settlement hotline since its establishment.  *Id.* ¶ 7.

Kroll undertook a digital media campaign to reach settlement class members from February 17 to March 20, 2026.  *Id.* ¶ 9.  This campaign included targeting audiences in Monterey County and throughout California with online display banner advertisements; running English and Spanish language social media advertisements on Facebook and Instagram, as well as targeted social media outreach on those platforms; and creating advertisements for Google search results pages in response to keyword searches.  *Id.* ¶ 9 & Ex. C.  Kroll also published information about the settlement in *Prison Legal News*, the *Monterey County Herald*, the *Salinas Californian*, the *Salinas Valley Tribune*, the *Monterey County Weekly*, and the *Carmel Pine Cone*.  *Id.* ¶ 10 & Ex. C.  Kroll issued a press release in both English and Spanish over PR Newswire's California and California Hispanic newslines as well.  *Id.* ¶ 11 & Ex. C.

In addition, Kroll conducted broad outreach to community organizations, churches, and other groups in Monterey County that may interact with members of the settlement class, providing English and Spanish notices of the settlement to more than 100 local organizations.  *Id.* ¶ 9.  Plaintiffs' counsel also provided the English and Spanish language notices to the community organizations listed in the proposed class notice plan (Dkt. 1003-1 at 5) and two other Monterey County community organizations with clients that are likely to include members of the settlement class.  Suppl. Hattem Decl. ¶ 10.  Plaintiffs' counsel provided notice documents to counsel for the County of Monterey as well to post in the offices of the Monterey County Probation Department and the Re-Entry Resource Center operated by the Monterey County Sheriff's Department.  *Id.*

Finally, the parties and Kroll worked to provide direct mail notice to people in the settlement class who are now housed in State prisons in California.  On January 8, 2026,

PLS.' SUPPL. BRIEF IN SUPPORT OF FINAL APPROVAL OF CFMG CIVIL CONTEMPT SETTLEMENT

counsel for the County of Monterey provided Plaintiffs' counsel with a complete class list showing individuals who were incarcerated at the Jail from May 27, 2016 to December 31, 2025.  *Id.* ¶ 11.  Plaintiffs provided that list to Kroll the same day.  Suppl. Trapani Decl. ¶ 4.  This class list contained 35,979 unique records with booking numbers and dates of incarceration, but it did not contain addresses for the Settlement Class.  *Id.*

Using publicly available inmate locator information from the California Department of Corrections and Rehabilitation's website, Plaintiffs' counsel separately developed a list of incarcerated people in State prisons for whom Monterey County was listed as the individual's county of commitment in the California Incarcerated Records and Information Search database.  Suppl. Hattem Decl. ¶ 12.  Plaintiffs provided this information to Kroll, and Kroll cross-checked it against the list of settlement class members to identify people in State custody who were members of the settlement class.  *See* Suppl. Trapani Decl. ¶ 4.  Kroll mailed notices and claim forms to all of the 1,158 settlement class members identified as currently housed in State prison facilities.  *Id.* ¶¶ 4, 8.

The notice provided to the class through the steps outlined above fulfilled all requirements of the Court's order, *see* Dkt. 1288 ¶ 6, and notified the class "in a reasonable manner" of the settlement and claims process.  Fed. R. Civ. P. 23(e)(1)(B); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962–63 (9th Cir. 2009).

## II.     THE CLAIMS RATE ENSURES THAT THE CLASS WILL RECEIVE MEANINGFUL BENEFITS FROM THE SETTLEMENT

As of the date of this filing, Kroll has received 2,814 settlement claims, for a total claims rate of approximately 7.8 percent (2,814 claims divided by 35,979 class members). *See* Suppl. Trapani Decl. ¶ 13.  This includes 507 paper claim forms received through the mail and 1,370 claim forms filed through the Settlement Website, reflecting the efficacy of the notice plan in reaching class members who were formerly incarcerated at the Jail.  *Id.* The total count of claims also includes 260 letters with claims information that were submitted to the Court, to Plaintiffs' counsel, or to Kroll, as well as 677 claims submitted through the Jail's tablets by people who were incarcerated at the Jail during the claims

period.  *Id.*  Plaintiffs' counsel have also regularly received claims from class members by mail and have provided those claims promptly to Kroll through a secure file sharing portal.  *See id.*; *see also* Suppl. Hattem Decl. ¶ 13.

Settlement claims rates often fall well below the rate in this case, even in circumstances where the class members' contact information is known and it is possible to mail direct notice to the class.  In *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015), for instance, the Ninth Circuit affirmed the approval of a settlement where approximately 3.4 percent of the 35 million people who were sent email and mail notices submitted claims.  *See id.* at 941; *see also In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 678 (9th Cir. 2025) (finding settlement with 1.8 percent claims rate fair, reasonable, and adequate); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting evidence that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns").  Courts have described a settlement claims rate of 7.7 percent as "higher than average."  *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015).

Kroll reviewed these claims to ensure their validity and to remove duplicate claims submitted by the same individual.  Suppl. Trapani Decl. ¶ 15.  The review process is still ongoing for some claims.  *Id.* ¶¶ 13, 15.  Kroll's initial review identified 1,019 claims as clear matches and a further 1,075 claims as likely matches—individuals whose name matched a settlement class member but who did not provide a matching booking number.  *Id.* ¶ 15.  As a result, the total number of estimated valid claims is 2,094 as of this filing.  *Id.* ¶¶ 15–16.

Of the remaining claims, Kroll has determined that 198 are duplicates, and 511 are undergoing individual review because the names and booking numbers provided by the claimants did not have an apparent match in the settlement class records.  *Id.* ¶ 15.  Plaintiffs will be prepared to provide updated claims data at the hearing on June 18, 2026, and can submit additional filings with such data as ordered by the Court.

/ / /

## III.    THE SETTLEMENT FUNDS WILL BE EQUITABLY DISTRIBUTED TO CLASS MEMBERS

As discussed with the Court during the January 15, 2026 hearing on approval of the amount of the CFMG civil contempt settlement, Plaintiffs propose that after deducting administration costs, one third of the settlement fund should be allocated to pay a baseline minimum amount to all members of the settlement class who submitted claims.  Hearing Tr. (Jan. 15, 2026) at 14:16–14:19.  Under Plaintiffs' proposal, the remaining two thirds of the settlement fund would be allocated to pay additional per diem amounts to claimants who were incarcerated at the Jail for more than ten days during the settlement period of May 27, 2016 to December 31, 2025.  *Id.* at 14:19–14:21, 18:14–18:23, 22:5–8.  Providing additional per diem amounts to class members who were incarcerated for more than ten days is consistent with the settlement notice approved by the Court.  Dkt. 1288 at 7.

Kroll currently estimates that the total cost of administering the settlement will be $146,271.95.  Suppl. Trapani Decl. ¶ 16.  This estimated cost is approximately 5.9 percent of the total settlement amount of $2,470,000.  The increase from Kroll's initial estimate of $112,094 is due primarily to the cost of the direct mailing campaign to class members incarcerated in State prisons, which was not anticipated in the original proposal.  *Id.* ¶ 20.  This campaign was undertaken in response to the Court's order to "make copies of the *Notice of Settlement and Claim Process* available to inmates of state prisons known to house persons formerly detai[n]ed or incarcerated at the Monterey County Jail."  Dkt. 1288 ¶ 6.  The increase also resulted from unexpectedly high call volume to the settlement hotline, a higher than anticipated volume of paper claim form submissions, and the administration costs associated with providing appropriate tax forms to claimants receiving larger settlement awards, as discussed below.  Suppl. Trapani Decl. ¶ 20.  No attorney's fees will be paid from the settlement, and no settlement funds will revert to CFMG, so the remaining 94.1 percent of the settlement will be distributed directly to settlement class members or donated as a *cy pres* distribution if necessary.  Dkt. 1257-1 ¶¶ 5, 7–8.

After deducting administration costs, the amount of the settlement fund for

distribution to class members is estimated to be $2,323,728.05.  Suppl. Trapani Decl. ¶ 16. From that amount, Kroll has estimated that $733,801.44 (33.3 percent)[1] will be used to make the baseline minimum payments for all claimants, and the remaining $1,549,926.61 will be used to provide the additional per diem payments to claimants who were incarcerated for more than ten days during the settlement period.  *Id.* ¶¶ 16–17.  If the likely matches are confirmed and no further claims can be validated beyond the 2,094 confirmed and probable matches found to date, Kroll estimates that the baseline award each claimant receives would be $366.20.  *Id.* ¶ 16.  Claimants who were incarcerated for more than ten days during the settlement period would receive an additional per diem amount of approximately $1.66 for each day beyond their tenth day of incarceration.  *Id.*

Based on Kroll's projections of the overall estimated claim distribution from the 1,019 claims that have been fully validated so far, the two individuals with the highest number of total days of incarceration among all validated claims (individuals who were incarcerated for the vast majority of the settlement period) are likely to receive an award of just over $5,000.  *Id.* ¶ 18.  Twelve claimants are projected to receive more than $4,000, and 125 people are projected to receive awards of $2,000 or greater.  *Id.*  Thirty claimants would receive the minimum award, and all other claimants would receive awards between the baseline amount and $2,000.  *Id.*  For the reasons discussed in the parties' joint motion for final approval of the CFMG civil contempt settlement, Dkt. 1257 at 14–15, the distribution plan outlined above "treats class members equitably relative to each other" and

---

[1] Plaintiffs believe the figure provided by Kroll for the baseline payment may be incorrect: 33.3 percent of $2,323,728.05 is $773,801.44, not $733,801.44.  The per diem figure provided by Kroll appears to be accurate.  This would adjust the baseline award amount to $369.53, but it should not otherwise affect the figures in this brief and the accompanying declaration.  Plaintiffs attempted to address this issue with Kroll after discovering it on June 10, 2026, but were unable to do so before filing.  Suppl. Hattem Decl. ¶ 14.

complies with Federal Rule of Civil Procedure 23(e)(2)(D).  Fed. R. Civ. P. 23(e)(2)(D); *Moses v. N.Y. Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023).

For claims of $2,000 and above, Kroll will be required by law to request a Form W-9 from the claim recipient and subsequently send a Form 1099-MISC to the recipient reporting the claim amount.  *See IRS Reporting Threshold Rises to $2,000: What It Means for Your Settlement*, Kroll, https://www.kroll.com/en/publications/irs-reporting-threshold-raised (Dec. 15, 2025).  Kroll will be able to pay these settlement claims regardless of whether the individual returns the W-9, but for individuals who do not return the form, Kroll will be required to withhold 24 percent of the claim amount for remission to the IRS before sending the remainder of the award to the recipient.  Suppl. Trapani Decl. ¶ 19.  The anticipated costs of distributing and processing these forms contributed to the increased amount expected for settlement administration.  *Id.* ¶ 20.  For all claimants, the Internal Revenue Code requires settlement awards to be reported as income on tax filings, outside of exceptions not applicable here.  *See* 26 U.S.C. §§ 61, 104(a); *see also Comm'r of Internal Revenue v. Schleier*, 515 U.S. 323, 327–30 (1995) (describing "broad definition of 'gross income'" and exceptions under § 104(a) for certain settlement proceeds).

## CONCLUSION

For the foregoing reasons and the reasons set forth in the parties' joint motion for final approval of the CFMG civil contempt liability settlement, Dkt. 1257, Plaintiffs respectfully request that the Court grant final approval of the settlement, Dkt. 1257-1, and order distribution of the settlement fund under the terms described herein.

DATED:  June 10, 2026                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Ben Hattem*
     Ben Hattem

Attorneys for Plaintiffs