MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
VAN SWEARINGEN – 259809
CAROLINE E. JACKSON – 329980
BEN HATTEM – 335232
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:      (415) 433-6830
Facsimile:      (415) 433-7104
Email:          mbien@rbgg.com
                egalvan@rbgg.com
                vswearingen@rbgg.com
                cjackson@rbgg.com
                bhattem@rbgg.com

CORENE KENDRICK – 226642
KYLE VIRGIEN – 278747
ACLU NATIONAL PRISON PROJECT
425 California St., Ste. 700
San Francisco, CA 94104
Telephone:      (202) 393-4930
Facsimile:      (202) 393-4931
Email:          ckendrick@aclu.org
                kvirgien@aclu.org

AVRAM D. FREY
(*admitted pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:      (415) 621-2493
Facsimile:      (415) 255-8437
Email:          afrey@aclunc.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 5:13-cv-02354-BLF<br><br><u>CLASS ACTION</u><br><br>**SUPPLEMENTAL DECLARATION OF TARA TRAPANI OF KROLL SETTLEMENT ADMINISTRATION LLC IN CONNECTION WITH FINAL APPROVAL OF CFMG CIVIL CONTEMPT LIABILITY SETTLEMENT**<br><br>Date: June 18, 2026<br>Time: 9:00 a.m. PT<br>Dept: Courtroom 1<br><br>The Hon. Beth Labson Freeman |

I, Tara Trapani, declare as follows:

**INTRODUCTION**

1. I am a Senior Director of Kroll Settlement Administration LLC ("Kroll"),[1] the settlement administrator appointed in the above-captioned case, whose principal office is located at One World Trade Center, 285 Fulton Street, 31st Floor, New York, New York 10007. I am over 21 years of age and am authorized to make this declaration on behalf of Kroll and myself. The following statements are based on my personal knowledge and information provided by other experienced Kroll employees working with me and/or under my general supervision. This declaration is being filed in connection with final approval of the settlement.

2. Kroll has extensive experience in class action matters, having provided services in class action settlements involving antitrust, privacy, securities fraud, labor and employment, consumer, and government enforcement matters. Kroll has provided notification and/or claims administration services in more than 3,000 cases.

**BACKGROUND**

3. Kroll was appointed as the settlement administrator to provide notification and claims administration services in connection with the Proposed Settlement of CFMG Civil Contempt Liability (the "Settlement Agreement") entered into in this action. Kroll's duties in connection with the settlement have and will include: (a) receiving and analyzing the Settlement Class member list (the "Class List") from Plaintiffs' counsel; (b) creating a settlement website with online claim-filing capabilities; (c) establishing a toll-free telephone number; (d) establishing a post office box for the receipt of mail; (e) preparing and sending the *Notice of Settlement and of Claim Process* and *Claim Form* (together, the "Notice") via first-class mail to Settlement Class members in California State prison facilities; (f) designing and implementing a media campaign including online banners, social media ads, search ads, print ads, and a press release; (g) receiving mail from the United States Postal Service ("USPS") with forwarding addresses; (h) receiving undeliverable

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement (as defined below).

mail, without a forwarding address, from the USPS; (i) receiving and processing claim forms; and (j) such other tasks as counsel for the parties or the Court request Kroll to perform.

**NOTICE PROGRAM**

**Data and Case Setup**

4.      On January 8, 2026, Kroll received one (1) data file from Plaintiffs' counsel. The file contained 82,115 Settlement Class member names, booking numbers, dates of release, and number of days incarcerated.  The Class List did not include any addresses. Kroll undertook several steps to review the Class List including deduping, rolling up, and standardizing records to identify a total of 35,979 unique records. On January 30, 2026, Kroll received a second file from Plaintiffs' counsel containing 2,923 names of potential Settlement Class members who are currently incarcerated in State prison facilities in California, their CDCR Numbers, and prison locations. Kroll undertook several steps to review this secondary list for the mailing of Notices, including removing records that could not be matched to the record of an actual Settlement Class member on the Class List, and removing records containing inaccurate institutional names that could not be matched to the mailing address of an actual prison location, resulting in a final mailing list of 1,158 unique records.

5.      On January 22, 2026, Kroll designated a post office box with the mailing address *Hernandez v County of Monterey*, c/o Kroll Settlement Administration, P.O. Box 225391, New York, NY 10150-5391, in order to receive claim forms, requests for claim forms, and correspondence from Settlement Class members.

6.      On January 28, 2026, Kroll created a dedicated settlement website entitled www.montereyjailsettlement.com (the "Settlement Website").  The Settlement Website "went live" on February 13, 2026, and contains a summary of the settlement, important dates and deadlines, contact information for the settlement administrator, answers to frequently asked questions, downloadable copies of relevant documents, including the Settlement Agreement, Notice (in English and Spanish), and claim form, and allowed Settlement Class members an opportunity to file a claim form online.

7.    On January 30, 2026, Kroll established a toll-free telephone number, (833) 319-5926, for Settlement Class members to call and obtain additional information regarding the settlement through an Interactive Voice Response ("IVR") system and through speaking with a live operator. As of June 10, 2026, the IVR system has received 1,030 calls, and 463 callers have been connected to live operators.

**The Notice Program**

8.    On March 11, 2026, Kroll caused the mailing of 1,158 Notices via first-class mail. A true and correct copy of the *Notice of Settlement and Claim Process* and the *Claim Form* are attached hereto as **Exhibits A and B,** respectively.

9.    Kroll Notice Media Solutions ("Kroll Media"), a business unit of Kroll, commenced the digital media campaign on February 17, 2026, and the campaign ended on March 20, 2026. Online display banner ads targeted the following audiences in both English and Spanish: men aged 25-64 in Monterey County and surrounding areas, including African American and Hispanic men; California adults aged 18 years and older with lower household incomes; and visitors to local news and information websites in Monterey County and surrounding areas. Social media ads in English and Spanish ran on Facebook and Instagram and targeted men aged 25-64 in Monterey County, as well as adults aged 18 or older in Monterey County and throughout California. Additional impressions were served to people on Facebook and Instagram who liked, followed or engaged with relevant pages, accounts, or groups, including the Monterey County Sheriff's Office, Monterey County District Attorney's Office, CalMatters.org, Salinas News & Community Events, Soledad crime and Community News, La Tricolor 99.5 FM, and Salinas Neighborhood Watch, among others. Kroll conducted outreach to community organizations, churches, and other relevant groups across Monterey County, requesting their assistance in disseminating information about the settlement to their communities. To support these efforts, Kroll provided summary flyers in both English and Spanish for easy distribution. Over 100 organizations were contacted including ACLU California Action, All-In Monterey, Casa De Noche Buena, El Estero Presbyterian Church, Lighthouse Fellowship, and others. In addition, keyword search advertisements appeared on

Google search engine results pages. The digital media campaign served and delivered a total of 4,189,325 impressions.

10. A summary notice was published as approximate quarter-page or equivalent ad units in five local newspapers: on February 23, 2026, in the *Monterey County Herald*; on February 25, 2026, in the *Salinas Californian* and *Salinas Valley Tribune*; on February 26, 2026, in the *Monterey County Weekly*; and on February 27, 2026, in the *Carmel Pine Cone*. Additionally, the summary notice was published as a half-page ad unit in the March 2026 issue of *Prison Legal News*.

11. On February 17, 2026, a press release was issued in both English and Spanish over PR Newswire's California and California Hispanic newslines. Attached hereto as **Exhibit C** are true and correct copies of digital media ads, print ads, summary flyers, and press release.

## CLAIM ACTIVITY

12. The claim form deadline was April 20, 2026.

13. As of June 10, 2026, Kroll has received 507 paper claim forms through the mail, 260 "letter" claim forms received through the mail and from the Court, 677 "tablet" claim forms collected from Settlement Class members who are currently incarcerated at the Monterey County Jail and transmitted to Kroll by Plaintiffs' counsel through a secure file share portal, and 1,370 claim forms filed electronically through the Settlement Website, for a total of 2,814 claims received. Kroll is still in the process of reviewing and validating claim forms.

14. As of June 10, 2026, Kroll has received thirty-six (36) late Claim Forms, which are included in the claim form counts above.

## CLAIMS ANALYSIS

15. Upon preliminary review of the claim data from the first 2,803 claims received, Kroll has identified 1,217 claims in which the claimant name and booking number has been confirmed as matching a Settlement Class member record in the Class List, of which 198 claims are duplicate, resulting in 1,019 unique claimant matches. Additionally, Kroll has identified 1,075 claims in which the claimant name is a match with a Settlement Class member name in the Class List, but because a booking number could not be confirmed, additional review will be required to validate. For the remaining 511 claims, neither the claimant name nor the booking number clearly

matches a Settlement Class member record on the Class List. Individual review of these claims is ongoing to confirm whether any of these claims match a Settlement Class member record.

16.     Based on preliminary review results, the following is an example of a potential claim distribution plan for approved claims from the settlement fund:

| | |
|---|---|
| Settlement Fund | $2,470,000.00 |
| Estimated Administration Costs | <$146,271.95> |
| Available Funds for Claims Payments | $2,323,728.05 |
| Base Payment Subtotal (33.3% of Distribution) | $733,801.44 |
| Estimated Valid Claimants | 2,094 |
| Estimated Base Payment per Claimant | $366.20 |
| Per Diem Subtotal (66.6% of Distribution) | $1,549,926.61 |
| Estimated Days of Incarceration > 10 day | 931,294 |
| Estimated Per Diem | $1.66 |

17.     As set forth above, after deducting estimated administration costs from the settlement fund, the remaining funds available for payment of claims would be divided into two buckets. The first third of the available funds would be allocated as the "base payment" to all approved claimants for the first ten (10) or less days of incarceration. The other two thirds of the available funds would be allocated "per diem" to claimants with more than ten (10) days of incarceration, above the based payment they have already been allocated.

18.     Based on the data available for the 1,019 confirmed matching claims, modeling of the potential claim distribution plan was projected assuming 2,094 valid claims. This projection indicated approximately thirty (30) Settlement Class members would receive the minimum base payment amount, $366.20, as individuals incarcerated for ten (10) or fewer days. The remaining 2,064 Settlement Class members would qualify for a combined base payment plus per diem amount. Of the top payment amounts modeled, there would be 125 payments of $2,000 or greater, of which twelve (12) payments would be $4,000 or greater, of which two (2) would be just over $5,000.

19.     For payments greater than $1,999.99, Kroll will request the Settlement Class member provide a completed IRS Form W-9 prior to payment distribution. If a completed W-9 is not received within the requested response time, a backup withholding of 24% will be applied prior to payment distribution and remitted to the IRS. IRS Form 1099-MISC will be prepared and a copy shared with the Settlement Class member prior to January 31 of the following year.

## SETTLEMENT ADMINISTRATION COSTS

20.   As of June 10, 2026, Kroll has billed $105,296.76 for services and fees incurred in the administration of this matter, which includes media costs. Kroll estimates that it will bill an additional $40,975.19 to complete the administration of this settlement. The current estimate is subject to change depending on factors such as the number of claims remaining to be reviewed, and any settlement administration scope change not currently under consideration. This estimate is based on Kroll's many years of experience administering class action settlements. The total administrative costs are higher than originally estimated due to changes in administration scope, including the Notice mailing to 1,158 incarcerated individuals, a W-9 request and 1099 notification mailing, and additional document translation, as well as higher than anticipated call volume and significantly higher than anticipated volume of paper claim form submissions, including the 260 "letter" claim forms and 677 "tablet" claim forms received.

## CERTIFICATION

I declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge and that this declaration was executed on June 10, 2026, in Port Washington, New York.

_Tara Trapani_
Tara Trapani

SUPP. DECL. OF TARA TRAPANI OF KROLL
SETTLEMENT ADMINISTRATION LLC IN                - 7 -              CASE NO. 13-CV-02354-BLF
CONNECTION WITH FINAL APPROVAL

# Exhibit A

## NOTICE OF SETTLEMENT AND CLAIM PROCESS
### CFMG Contempt Fines – *Hernandez v. County of Monterey*

**If you were incarcerated at the Monterey County Jail between May 27, 2016 and December 31, 2025, a settlement may provide you with money. Please read this notice to learn more and submit a claim.**

*Hernandez v. County of Monterey,* is a class action lawsuit about conditions at the Monterey County Jail (the "Jail"). In September 2023, the Court found the Jail's health care provider California Forensic Medical Group, Inc. ("CFMG") in contempt for violating Court orders about medical, mental health, and dental care.

CFMG has agreed to pay **$2,470,000** to people incarcerated at the Jail from May 27, 2016 to December 31, 2025 (the "Settlement Period") to compensate for its violations of Court orders about minimum standards of care at the Jail. This settlement is **only** about CFMG's liability for contempt for violating the Court's orders. The settlement does **not** compensate people for personal medical conditions, and it does **not** affect any individual claims you might have about health issues or injuries you may have experienced at the Jail. Administration costs will be paid from the settlement amount.

**If you were incarcerated at the Jail between May 27, 2016 and December 31, 2025**, you can submit a claim online at **www.montereyjailsettlement.com** <u>or</u> submit a paper claim form by mail to *Hernandez v. County of Monterey* c/o Kroll Settlement Administration LLC, P.O. Box 225391, New York, NY 10150-5391. You can call **833-319-5926** to request a paper claim form.

To receive money, you must make a claim by **April 20, 2026**. If you are currently incarcerated, you can request that the money be sent to an address outside the Jail.

### *How much money will I receive?*

It is estimated that the minimum amount each person will receive may be as much as **$110**, depending on how many valid claims are submitted. This minimum amount will be the full payment if you were incarcerated for 10 days or fewer during the Settlement Period. If you were incarcerated for more than 10 days, you will receive an additional payment based on the number of days you were incarcerated.

The exact amount that each person receives may be changed by a further order of the Court once the number of valid claims is known.

### *How can I learn more and submit a claim?*

**To learn more**, go to the settlement website at **www.montereyjailsettlement.com**. The website has links to the settlement documents and claim form. You can also call **833-319-5926** or contact the attorneys who represent incarcerated people in this case at Rosen Bien Galvan & Grunfeld, LLP, P.O. Box 390, San Francisco, CA 94104.

[4813909.3]

# Exhibit B

8 3 3 4 8 0 0 0 0 0 0 0 0

<table>
<tr><td>**Your claim must be submitted online or <u>postmarked by</u>: April 20, 2026**</td><td>**CLAIM FORM**<br>*Jesse Hernandez, et al., v. County of Monterey, et al.*<br>Case No. 13-cv-02354-BLF<br>United States District Court<br>Northern District of California San Jose Division</td><td></td></tr>
</table>

## GENERAL INSTRUCTIONS

California Forensic Medical Group, Inc. (CFMG) has agreed to pay $2,470,000 to people incarcerated at the Jail from May 27, 2016 to December 31, 2025 (the "Settlement Period") to compensate for its violations of Court orders about minimum standards of care at the Jail. As an adult who was incarcerated at the Monterey County Jail at any time between May 27, 2016 and December 31, 2025, you may submit a claim for compensation from the Settlement fund as outlined below. Please refer to the Notice of Settlement and Claim Process, available in English and Spanish at **www.montereyjailsettlement.com**, for more information on submitting a Claim Form.

**<u>To receive benefits from this Settlement, you must submit a Claim Form by April 20, 2026.</u>**

To receive a payment, you must submit a Claim Form online via the Settlement Website at **www.montereyjailsettlement.com** or complete and mail a paper Claim Form to the address below by **April 20, 2026**. If you choose to complete a paper Claim Form, please type or legibly print all requested information in blue or black ink. Mail your completed Claim Form by first-class mail to:

*Hernandez v. County of Monterey*
c/o Kroll Settlement Administration LLC
P.O. Box 225391
New York, NY 10150-5391

If you are currently incarcerated at the Monterey County Jail, the Jail will notify you about how to submit a Claim Form, including whether you can submit a Claim Form on your tablet. If you are not able to submit a Claim Form on your tablet, you can ask custody staff for a paper copy of the Claim Form. Paper copies of the Claim Form will be collected in your housing unit. If you are able to submit a Claim Form on your tablet, you do <u>not</u> need to submit a paper Claim Form as well to receive a payment from the Settlement fund.

**<u>You may submit a claim for the following compensation:</u>**

All members of the Settlement Class are eligible to receive payments from the Settlement fund. Each claimant who is determined by the Settlement Administrator to be a member of the Settlement Class will receive a fixed minimum amount from the Settlement fund. If you were incarcerated for more than 10 days during the Settlement Period, you will receive an additional amount based on the number of days you were at the Jail. The amounts of the minimum award and additional payments based on length of incarceration will be determined based on the number of valid claims. Administration costs will be deducted from the Settlement before claims are paid.

If possible, any unclaimed amount of the Settlement fund at the conclusion of the claims period may be distributed proportionately to all members of the Settlement Class who submitted valid claims.

 

8 3 3 4 8 0 0 0 0 0 0 0 0

## I. CLASS MEMBER NAME AND CONTACT INFORMATION

Provide your name and contact information below. To update your address, you may use the *Contact Us* form on the Settlement Website, call the Toll-Free Number, or write to the Settlement Administrator.

**First Name**

**Last Name (at time of incarceration)**

**Address 1**

**Address 2**

**City**

**State**

**Zip Code**

**Telephone Number (optional): ( ____  ____  ____ )  ____  ____  ____  -  ____  ____  ____  ____**

## II. PROOF OF SETTLEMENT CLASS MEMBERSHIP

Provide one or more of the following details to support membership in the Settlement Class.

**Booking Number**

**Year of Most Recent Release from Monterey County Jail**

**Approximate Number of Days Incarcerated at the Monterey County Jail from May 27, 2016 to December 31, 2025**

☐  Check this box to certify that you are an adult individual who was incarcerated at the Monterey County Jail at any time between May 27, 2016 and December 31, 2025.

 

8 3 3 4 8 0 0 0 0 0 0 0 0

## III. PAYMENT SELECTION

All valid claims submitted will be paid by check to the address you provided above. Claimants who are currently incarcerated may choose to have their award sent to an address outside the Jail or may designate another individual to receive the funds on their behalf. If you select this option, please complete the following:

☐    I am currently incarcerated and want to have my award sent to an alternative address as outlined below.

_____    _____

**Designated Payee First Name**          **Designated Payee Last Name**

_____

**Designated Payee Address 1**

_____

**Designated Payee Address 2**

_____    ___ ____   ____ ____ ____ ____ ____

**Designated Payee City**                                **State**              **Zip Code**

## IV. ATTESTATION & SIGNATURE

I swear and affirm under the laws of my state that the information I have supplied in this Claim Form is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

_____    ____ ____ / ____ ____ / ____ ____ ____ ____

**Signature**                                                **Date (MM/DD/YYYY)**

_____

**Print Name**

 

# Exhibit C

Banner Ads









Social Media Ads





Search Ads

 

## 3041 Bird Rock Rd, Pebble Beach



3 Bed, 3 Bath, 2610 Sq Ft \ Listed for $2,750,000
Across from MPCC \ One Mile to the Ocean

### Alex Brant

DRE 01900460 // 831.264.3870 //
alex@alexbrant.com
@alexbrantproperties // alexbrant.com

CARMEL NATIVE, LOCAL EXPERTISE

Compass is a licensed real estate broker 01527235 in the State of California and abides by Equal Housing Opportunity laws. All material presented herein is intended for informational purposes only. Information is compiled from sources deemed reliable but is subject to errors, omissions, changes in price, condition, sale, or withdraw without notice. No statement is made as to accuracy of any description. All measurements and square footages are approximate. Exact dimensions can be obtained by retaining the services of an architect or engineer. This is not intended to solicit properties already listed.

COMPASS



BAKKER CONSTRUCTION
A DESIGN BUILD FIRM

Crafting Exquisite Homes

Designing and Building Peninsula Dream Homes Since 2008

WWW.BAKKERCONSTRUCTION.COM // 831.484.7812

---

6A    The Carmel Pine Cone    February 27, 2026

# Cops save suicidal man from bridge

By KELLY NIX

IT WAS a moment when one misstep could have been fatal, but a quick-acting deputy sheriff last week helped prevent anyone from being hurt — including the distraught man who apparently wanted to kill himself.

On Feb. 21 at about 11:30 a.m., deputies with the Monterey County Sheriff's Office were called to assist California Highway Patrol officers with a suicidal individual threatening to jump from the San Miguel Canyon Road overpass onto Highway 101 in Prunedale. The unidentified man at one point was straddling the bridge railing.

For two hours, CHP officers and sheriff's deputies — one of them a hostage negotiator — tried to convince the man to step away from the ledge.

"Despite their efforts, the individual remained on the railing," the sheriff's office said.

Things took a dangerous turn when the man repositioned himself, looked down at the freeway, and began praying. Sensing he was about to jump, deputy Alejandro Cosio sprang into action, quickly grabbing the man away from the ledge and — with help from deputy Patricia Osuna and two

See **SAVED** page 21A



PHOTO/MONTEREY COUNTY SHERIFF'S OFFICE

Sheriff's deputies and CHP officers rescue a man they said was suicidal and wanted to jump from a bridge onto Highway 101.

---

**NOTICE OF SETTLEMENT AND CLAIM PROCESS**
CFMG Contempt Fines – *Hernandez v. County of Monterey*

**If you were incarcerated at the Monterey County Jail between May 27, 2016 and December 31, 2025, a settlement may provide you with money.**

| *Please read this notice to learn more and submit a claim.* |
| --- |

*Hernandez v. County of Monterey* is a class action lawsuit about conditions at the Monterey County Jail (the "Jail"). In September 2023, the Court found the Jail's health care provider California Forensic Medical Group, Inc. ("CFMG") in contempt for violating Court orders about medical, mental health, and dental care.

CFMG has agreed to pay **$2,470,000** to people incarcerated at the Jail from May 27, 2016 to December 31, 2025 (the "Settlement Period") to compensate for its violations of Court orders about minimum standards of care at the Jail. This settlement is **only** about CFMG's liability for contempt for violating the Court's orders. The settlement does **not** compensate people for personal medical conditions, and it does **not** affect any individual claims you might have about health issues or injuries you may have experienced at the Jail. Administration costs will be paid from the settlement amount.

**If you were incarcerated at the Jail between May 27, 2016 and December 31, 2025**, you can submit a claim online at **www.MontereyJailSettlement.com**. To receive money, you must make a claim by **April 20, 2026**. If you were incarcerated during this period and are currently incarcerated, you can request that the money be sent to an address outside the Jail.

**HOW MUCH MONEY WILL I RECEIVE?**

It is estimated that the minimum amount each person will receive may be as much as **$110**, depending on how many valid claims are submitted. This minimum amount will be the full payment if you were incarcerated for 10 days or fewer during the Settlement Period. If you were incarcerated for more than 10 days, you will receive an additional payment based on the number of days you were incarcerated.

The exact amount that each person receives may be changed by a further order of the Court once the number of valid claims is known.

**HOW CAN I LEARN MORE AND SUBMIT A CLAIM?**

**For more information**, go to the settlement website at **www.MontereyJailSettlement.com**. The website has links to the complete settlement documents and a form for you to submit a claim. You can also call **833-319-5926** or contact the attorneys who represent incarcerated people in this case at Rosen Bien Galvan & Grunfeld, LLP, P.O. Box 390, San Francisco, CA 94104.

**WWW.MONTEREYJAILSETTLEMENT.COM**
**833-319-5926**



Red velvet sage Salvia confertiflora. This broadleaf deciduous, evergreen perennial has bright green new foliage that matures to dark green and reddish-purple stems. In the late summer and fall, the plant displays 6-to-10-inch spikes of fuzzy, rusty red flowers that rise above foliage. It grows 4 feet tall and 3 feet wide. The plant is native to Brazil. **COURTESY TOM KARWIN**

# PLANT
From Page 2

From Page 2

■ July-August: Stress-management window: rosemary (semi-firm tips), lavender (nonflowering firm tips) and salvia.
■ September-October: Prime semi-hardwood window: lavender, rosemary, germander (Teucrium) and santolina.
■ November-December: Transition to dormancy: rose, hydrangea and fuchsia (semi-hardwood).

## PROPAGATION PROJECTS

I have taken advantage of this season's opportunities to take cuttings from perennials in my garden. The January-February window is the time to propagate woody perennials, but cuttings take more time to establish roots than they would during the growing season.

Here are my current projects. I will write later about the results.

Butterfly rose (Rosa chinensis var. 'Mutabilis'). My plant's main stem was growing awkwardly, nearly horizontal, before rising normally, so I made a severe renovation pruning, hoping for a new upright stem from the roots. As a backup plan, I first made several stem cuttings. Online advice recommended planting rose cuttings in the ground near the mother plant, where the soil biota and micro-environment are familiar to the cutting, reducing stress and boosting survival rates. That makes sense. Still, rose stem cuttings should include some leaves, but my rose had few leaves at this season, so I have limited optimism for my cuttings.

Graham Thomas rose (Rosa 'Graham Thomas'). This rose has been quite healthy, so I took cuttings from it as a trial for propagating roses. I have not planned what to do with well-rooted cuttings.

Upright rosemary (Rosmarinus officinalis 'Tuscan Blue'). I recently removed an old rosemary shrub that had become woody and misshapen, creating space to install well-rooted cuttings.

Pork and beans (Sedum rubrotinctum). Succulent plants are easy to propagate, possibly during several different windows, so I anticipate that stem cuttings from this plant will root successfully.

Red velvet sage (Salvia confertiflora). Most of my salvias are herbaceous types, but this woody species is suitable for propagation during the January-February window. If these cuttings do not succeed, I can try taking cuttings from young, flexible shoots during the May-June window.

## ADVANCE YOUR GARDENING KNOWLEDGE

To determine how and when to make cuttings of one of your plants, enter your question into your computer. You can use an artificial intelligence chatbot (ChatGPT) or a web browser with a built-in chatbot (e.g., Google Chrome, search for Copilot or Bing; different names for Microsoft's chatbot, which is based on ChatGPT).

Presenting a simple prompt returns limited information, while a well-developed prompt provides more useful, detailed support for your propagation project.

To demonstrate the difference, try a simple example ("How to propagate perennials?") and compare the result from a better example ("How and when to take cuttings of a Salvia convertiflora for a garden on California's Central Coast?").

A prompt in Google Chrome generates a brief report, along with links to the websites on which it was based. Click on those links for more information, if needed.

AI continues to develop rapidly, offering greater capabilities and raising many questions among concerned skeptics. Sending garden-related prompts to a chatbot may still yield incorrect information, so users should carefully review the report on a trusted website. Still, even when using a chatbot for a garden issue, don't enter important personal facts.

## THIS WEEK IN THE GARDEN

Unless you are already propagating selected plants, consider adding stem cutting propagation to your gardening activities. Many gardeners find creating rather than buying plants to be rewarding for horticultural satisfaction and substantial cost reduction.

Enjoy your garden!

*Tom Karwin can be reached at gardening@karwin.com.*

# IDOL
From Page 2

From Page 2

as this wholesome boy, clean-cut and safe," the now 35-year-old said. "But I was afraid of the world, but for different reasons than people thought. That book, to me, was a continuation of having to make everything superficial — and it all was."

Archuleta says that his father, with whom he has a complicated relationship, made sure the book reinforced the squeaky-clean image he'd maintained on the show.

"That was not my life. But it was the way they wanted me to be perceived, like I'd made it and I'm so happy — but I wasn't happy. I just had to act like I was," he says. "Even when I got signed to a record label, I was showing them songs I had written, and they were like 'This music is too mature,' but that was what came out of me — that was real, that was how I felt."

Naturally, he received a lot of attention after appearing on the reality show, which included a record deal that led to his self-titled debut album and hit single "Crush." He put out several more albums, but he says he felt uncomfortable and unworthy in the spotlight. In 2021, Archuleta publicly came out as queer via a post on social media, and a year later, he officially left The Church of Jesus Christ of Latter-day Saints.

Neither of those decisions came easily.

In "Devout," Archuleta details the excruciating mental gymnastics he endured throughout his life when it came to his sexuality and his faith. The book begins with an interaction with a fan in an airport in 2022. The fan was also of Mormon faith, grappling with his sexuality and having suicidal thoughts.

Archuleta could relate. As he writes in the book: "I contemplated whether it would be better to admit to myself that I was gay or end my life."

This is just one of many reasons why he wrote, "Devout," he said, and he hopes that once it's out in the world, it can open a dialogue with The Church of Jesus Christ of Latter-day Saints.

"I'd love to have that conversation and say 'Hey, I know there is a way to include queer people in the church and allow them to still be in their same-sex relationships in the church, and I would like to show you how,'" he said. "They just haven't thought enough about it to think that just maybe there's room."

He doesn't shy away from talking about numerous sensitive issues. One of five children, he says his family underwent an immense amount of turmoil after relocating from Florida to Utah. Despite the low points vividly detailed throughout the chapters, the book is inspiring as well as heart-wrenching.

If you're left wondering how he's feeling now, look no further than songs he released just last year like "Crème Brulée," a playfully upbeat pop song Archuleta said was inspired a bit by Sabrina Carpenter, and "Can I Call You," a sultry, sexy ballad in which he confesses "my heart is on the line."

He's more confident these days, especially about the songs he's written that will be released in the coming weeks. "Old and Young" is about navigating life after you've left everything you know to start over; "On Purpose" explores being a little messy and not having everything all figured out; "Stay" is dedicated to those that may be feeling hopeless in the moment.

In all, the experience of writing the book was therapeutic. He's happy that one of his former "American Idol" judges, singer-songwriter and choreographer Paula Abdul, wanted to write the foreword of the book and that she remains a supportive figure in his life.

"Paula understood what it was like to be a performer and something that was never spoken but was always understood was that she also knew what it was like to be exploited," he said. "She knew what it was like to be an artist that was taken advantage of, and she had so much compassion for us. That was never performative. She's an amazing person — she's an icon. Paula didn't care about the performative aspect of it all; she cares about the human connection, and I relate to her a lot in that."

Revisiting his childhood for the book also bonded his siblings a little tighter, he shared. And as he watched his teenage self on episodes of "American Idol" to jumpstart some memories from that period of his life, he took a softer approach.

"I look back and cringe because I didn't like myself then — I hated who I was," he said. "But even though it was cringe, I had a lot more compassion for myself."



**PLEASE RECYCLE THIS NEWSPAPER.**
*Thank you!*

## NOTICE OF SETTLEMENT AND CLAIM PROCESS
CFMG Contempt Fines – *Hernandez v. County of Monterey*

### If you were incarcerated at the Monterey County Jail between May 27, 2016 and December 31, 2025, a settlement may provide you with money.

*Please read this notice to learn more and submit a claim.*

*Hernandez v. County of Monterey* is a class action lawsuit about conditions at the Monterey County Jail (the "Jail"). In September 2023, the Court found the Jail's health care provider California Forensic Medical Group, Inc. ("CFMG") in contempt for violating Court orders about medical, mental health, and dental care.

CFMG has agreed to pay **$2,470,000** to people incarcerated at the Jail from May 27, 2016 to December 31, 2025 (the "Settlement Period") to compensate for its violations of Court orders about minimum standards of care at the Jail. This settlement is **only** about CFMG's liability for contempt for violating the Court's orders. The settlement does **not** compensate people for personal medical conditions, and it does **not** affect any individual claims you might have about health issues or injuries you may have experienced at the Jail. Administration costs will be paid from the settlement amount.

**If you were incarcerated at the Jail between May 27, 2016 and December 31, 2025,** you can submit a claim online at www.MontereyJailSettlement.com. To receive money, you must make a claim by **April 20, 2026.** If you were incarcerated during this period and are currently incarcerated, you can request that the money be sent to an address outside the Jail.

### HOW MUCH MONEY WILL I RECEIVE?

It is estimated that the minimum amount each person will receive may be as much as **$110**, depending on how many valid claims are submitted. This minimum amount will be the full payment if you were incarcerated for 10 days or fewer during the Settlement Period. If you were incarcerated for more than 10 days, you will receive an additional payment based on the number of days you were incarcerated.

The exact amount that each person receives may be changed by a further order of the Court once the number of valid claims is known.

### HOW CAN I LEARN MORE AND SUBMIT A CLAIM?

**For more information**, go to the settlement website at www.MontereyJailSettlement.com. The website has links to the complete settlement documents and a form for you to submit a claim. You can also call **833-319-5926** or contact the attorneys who represent incarcerated people in this case at Rosen Bien Galvan & Grunfeld, LLP, P.O. Box 390, San Francisco, CA 94104.

### WWW.MONTEREYJAILSETTLEMENT.COM
### 833-319-5926



'25

WOODY'S
AT DEL MESA
831-624-1854
Call for reservations,
Walk In's Welcome,
Heck Everyone's Welcome

WHAT'S NEW WITH
WOODYS
NEW YEAR, NEW WOODY

NEW!
WEEKEND BRUNCH MENU,
BUILD YOUR OWN BLOODY
MARY BAR, WOODHOUSE
MIMOSAS = A CHEF POUR, FULL
SERVICE ESPRESSO BAR

COME ON, YOU KNOW IT'S FUN

BEGINNING FEBRUARY 7TH
SATURDAY & SUNDAY
10 AM - 2:30 PM
AT OUR DEL MESA LOCATION
OPEN WEDNESDAY - SUNDAY
LUNCH & DINNER

woodysmontereyairport.com

**NOTICE OF SETTLEMENT AND CLAIM PROCESS**
CFMG Contempt Fines – *Hernandez v. County of Monterey*

## If you were incarcerated at the Monterey County Jail between May 27, 2016 and December 31, 2025, a settlement may provide you with money.

> *Please read this notice to learn more and submit a claim.*

*Hernandez v. County of Monterey* is a class action lawsuit about conditions at the Monterey County Jail (the "Jail"). In September 2023, the Court found the Jail's health care provider California Forensic Medical Group, Inc. ("CFMG") in contempt for violating Court orders about medical, mental health, and dental care.

CFMG has agreed to pay **$2,470,000** to people incarcerated at the Jail from May 27, 2016 to December 31, 2025 (the "Settlement Period") to compensate for its violations of Court orders about minimum standards of care at the Jail. This settlement is **only** about CFMG's liability for contempt for violating the Court's orders. The settlement does **not** compensate people for personal medical conditions, and it does **not** affect any individual claims you might have about health issues or injuries you may have experienced at the Jail. Administration costs will be paid from the settlement amount.

**If you were incarcerated at the Jail between May 27, 2016 and December 31, 2025**, you can submit a claim online at **www.MontereyJailSettlement.com**. To receive money, you must make a claim by **April 20, 2026**. If you were incarcerated during this period and are currently incarcerated, you can request that the money be sent to an address outside the Jail.

### HOW MUCH MONEY WILL I RECEIVE?

It is estimated that the minimum amount each person will receive may be as much as **$110**, depending on how many valid claims are submitted. This minimum amount will be the full payment if you were incarcerated for 10 days or fewer during the Settlement Period. If you were incarcerated for more than 10 days, you will receive an additional payment based on the number of days you were incarcerated.

The exact amount that each person receives may be changed by a further order of the Court once the number of valid claims is known.

### HOW CAN I LEARN MORE AND SUBMIT A CLAIM?

**For more information**, go to the settlement website at **www.MontereyJailSettlement.com**. The website has links to the complete settlement documents and a form for you to submit a claim. You can also call **833-319-5926** or contact the attorneys who represent incarcerated people in this case at Rosen Bien Galvan & Grunfeld, LLP, P.O. Box 390, San Francisco, CA 94104.

## WWW.MONTEREYJAILSETTLEMENT.COM
## 833-319-5926

# NEWS

# Shake and Stir

For the first time, one of Carmel's three drinking establishment use permits may be available.

**By Katie Rodriguez**



DANIEL DREIFUSS

A.W. Shucks received one of only three use permits for drinking establishments in Carmel back in the 1990s. The Planning Commission decided on Feb. 11 it is a restaurant, not a drinking establishment.

In the 1990s, city officials decided the village of Carmel-by-the-Sea could only tolerate so many drinking establishments—businesses whose primary purpose is serving alcohol—to preserve the city's character. That number, debated at the time and still a source of tension, was three. The locations selected to receive the permits have changed very little since their inception and housed Barmel, Sade's Cocktails and A.W. Shucks (formerly Maxwell McFly's).

In the past year, that exclusive list has seen a shakeup. Today, A.W. Shucks operates as a full-service restaurant, with most of its revenue, roughly 5-to-1, coming from food sales rather than alcohol, according to co-owner Karen Basi during a Carmel Planning Commission meeting on Oct. 11. Over the past eight months, the use permit—which runs with the property, not the business owner—has come into question. Planning commissioners have debated whether the landlords should retain the permit if the business continues operating in its current form.

## "It's not a drinking establishment. It's not a bar."

On Wednesday, Feb. 11, when the Planning Commission discussed the issue for the fourth time, commissioners determined the landlords had abandoned the use permit. They voted 4-1 (with Commissioner Erin Allen dissenting) on a resolution giving the business owners six months to either scale back restaurant operations and convert back to a drinking establishment, or surrender the permit.

"I love the food and service at A.W. Shucks. I've been a regular customer for many years and was at

Maxwell McFly's back in the day," Commissioner Stephanie Locke said. "When McFly's changed to A.W. Shucks and added food service, it changed from a smelly cigarette-filled bar to a great restaurant over the years. But it's not a drinking establishment. It's not a bar."

John Plastini, who represents landlord TSD Carmel Properties, argued that removing the use permit would affect the property's value, and said the A.W. Shucks owners had relied on city officials' communication to ensure compliance.

"Our tenant purchased it in 2023 for a significant amount of money," Plastini said. "That use permit is worth about $250,000. When we market and lease the property, everyone knows that. We followed the rules and acted in good faith."

The lease with A.W. Shucks ends in nine years, with an option to renew. Parties have until Feb. 27 to appeal the decision to the City Council. Commissioners maintained their position that the city should allow only three drinking establishments rather than add a fourth permit. If this decision is upheld, the use permit could become available to other applicants in six months.

"In this case, the City acted with misdiscretion in continuing to approve a full-line restaurant," Commissioner Michael LePage said. "But as a planning commission, we are not bound by those decisions. This business is operating as a restaurant. What we're proposing is not a taking. It's our responsibility to make decisions on what the land use law says." ✦

# Park

Continued from Page 1A

"Big Basin is California's oldest state park, and this keystone expansion will help accelerate the park's recovery from the devastating 2020 CZU wildfire while supporting the Newsom administration's Outdoors for All and 30x30 initiatives," California State Parks Director Armando Quintero said in the news release. "Nora-Bella is the gateway into Big Basin and will serve as a world-class entrance to the park's new visitor center for generations to come."

## Big Basin Redwoods State Park features ancient redwoods

Big Basin Redwoods, established in 1902, is in the heart of the Santa Cruz Mountains, state park officials said.

"Its biggest attractions — literally — are its ancient coast redwoods," park officials said. "Some of these giants are more than 50 feet around and as tall as the Statue of Liberty. At 1,000 to 1,800 years old, some may predate the Roman Empire.

The park also features "spectacular views of the Pacific Ocean, many babbling brooks, and a fascinating natural and cultural history," according to park officials.

## Fire burned 97% of Big Basin Redwoods State Park's forest

In 2020, the CZU Lightning Complex Fire burned more than 97% of the state park's forest area, according to the California Department of Fish and Wildlife.

The fire, which started on Aug. 16, 2020 after "hundreds of lightning strikes in the Pacific coastal mountains" and took more than a month to fully contain, decimated the park's ecosystems, wildlife officials said.

"Prior to the CZU fire, nearly all of (the park) was covered with dense live vegetation cover," wildlife officials said.

The park partially reopened under a limited-access day-use reservation system in July 2022, according to state park officials.

The park continues to use a limited day-use access model as a rebuilding project is ongoing, with more trails and areas gradually reopening, according to the project's website, Reimagining Big Basin.

## These redwoods offer a 'forest of hope'

Despite the fire's widespread effects, the park is healing, according to the nonprofit Save the Redwoods League.

In addition to wildlife once again roaming the forest, the coast redwoods are "growing back at a phenomenal rate," the nonprofit said.

"There is something so inspiring about seeing a forest that was ravaged by fire spring back with such



Amphitheatre of the Big Basin Redwoods State Park, California.

stunning beauty," Debra Martwick, senior visitor services aide at Big Basin, told Save the Redwoods League in 2025. "I call it a 'forest of hope.'"

## Protecting NoraBella, 'The Gateway to Big Basin'

State park officials said they have had their sights set on protecting NoraBella, known as the Gateway to Big Basin, since before the 2020 fire, "due to its thriving natural ecosystems."

"The land, habitats, waterways, and redwoods at NoraBella have been through so much over more than a century — from clearcutting, to being treated like a junkyard, to the CZU wildfire — and it feels like redemption to finally secure the forest's future as part of Big Basin," Sempervirens Fund Executive Director Sara Barth said in the release. "Even before the 2020 wildfire, we knew NoraBella would provide a dramatic entranceway to Big Basin, and enhance the conservation values of the park."

By the turn of the 20th century, NoraBella "was almost entirely clear-cut of redwood trees," park officials said.

"A century later, the entire 153-acre NoraBella property is forested across three ridges down into creeks, waterfalls and canyons, forming a miniature basin of its own next to Big Basin," park officials said.

Wildlife observed on the property include mountain lions and gray foxes, according to state park officials.

"NoraBella is a conservation gem," David Cowman, Sempervirens Fund's director of land stewardship, said in the release. "Permanent protection of NoraBella as part of Big Basin is critical to ensure the long-term health of the Boulder Creek watershed and the San Lorenzo River system it supports."



Towering redwood sequoia trees at Big Basin Redwoods State Park. GETTY IMAGES

### The future of Big Basin Redwoods State Park

After the CZU wildfire, state park officials said they started Reimagining Big Basin: a "first-of-its-kind planning effort to reimagine a state park."

With the fire leaving nearly all the park's facilities, infrastructure and trails lost or badly damaged, state park officials have worked to create a new vision for the park.

"This year, State Parks expects to adopt the Facilities Management Plan, a General Plan Amendment, and Supplemental Environmental Impact Report that have been prepared to implement the renewed vision for the park," park officials said.

From there, park officials said they will begin to design the buildings, which include a new visitor center and recreational facilities, such as campgrounds.

**NOTICE OF SETTLEMENT AND CLAIM PROCESS**
CFMG Contempt Fines – *Hernandez v. County of Monterey*

## If you were incarcerated at the Monterey County Jail between May 27, 2016 and December 31, 2025, a settlement may provide you with money.

*Please read this notice to learn more and submit a claim.*

*Hernandez v. County of Monterey* is a class action lawsuit about conditions at the Monterey County Jail (the "Jail"). In September 2023, the Court found the Jail's health care provider California Forensic Medical Group, Inc. ("CFMG") in contempt for violating Court orders about medical, mental health, and dental care.

CFMG has agreed to pay **$2,470,000** to people incarcerated at the Jail from May 27, 2016 to December 31, 2025 (the "Settlement Period") to compensate for its violations of Court orders about minimum standards of care at the Jail. This settlement is **only** about CFMG's liability for contempt for violating the Court's orders. The settlement does **not** compensate people for personal medical conditions, and it does **not** affect any individual claims you might have about health issues or injuries you may have experienced at the Jail. Administration costs will be paid from the settlement amount.

**If you were incarcerated at the Jail between May 27, 2016 and December 31, 2025**, you can submit a claim online at **www.MontereyJailSettlement.com**. To receive money, you must make a claim by **April 20, 2026**. If you were incarcerated during this period and are currently incarcerated, you can request that the money be sent to an address outside the Jail.

### HOW MUCH MONEY WILL I RECEIVE?

It is estimated that the minimum amount each person will receive may be as much as **$110**, depending on how many valid claims are submitted. This minimum amount will be the full payment if you were incarcerated for 10 days or fewer during the Settlement Period. If you were incarcerated for more than 10 days, you will receive an additional payment based on the number of days you were incarcerated.

The exact amount that each person receives may be changed by a further order of the Court once the number of valid claims is known.

### HOW CAN I LEARN MORE AND SUBMIT A CLAIM?

**For more information**, go to the settlement website at **www.MontereyJailSettlement.com**. The website has links to the complete settlement documents and a form for you to submit a claim. You can also call **833-319-5926** or contact the attorneys who represent incarcerated people in this case at Rosen Bien Galvan & Grunfeld, LLP, P.O. Box 390, San Francisco, CA 94104.

### WWW.MONTEREYJAILSETTLEMENT.COM
### 833-319-5926



# TIME FOR A NEW FLAME?

Energy House has the largest selection of gas and electric fireplaces to fit your needs. We carry quality Fireplace Xtrordinair® gas and electric inserts that are not only beautiful, but functional and energy efficient. Check out all the ways Energy House can help convert your existing fireplace into an efficient, clean-burning heater.



**ENERGY HOUSE**
*The Fireplace Experts*

**ENERGY-HOUSE.COM**

*GAS FIREPLACES · FIREPLACE INSERTS · OUTDOOR FIREPLACES*

SAN CARLOS 650-593-1496    CAMPBELL 408-642-6610    GILROY 408-842-6570
1300 Industrial Rd. #17    46 East Campbell Avenue    8284 Murray Avenue

*Open Monday through Friday from 9-4 at all three locations.*


FIREPLACE
XTRORDINAIR

WEDNESDAY, FEBRUARY 25, 2026

A3

# SPORTS

**BASKETBALL**

# Aztec girls reach CCS semifinals

BY MICHAEL RAMIREZ
FREELANCE REPORTER

SALINAS VALLEY — Soledad High girls basketball has reached the semifinals of the Central Coast Section (CCS) Division IV Championships.

Soledad was seeded ninth in the division but won a play-in game on Friday at home against unseeded Overfelt Royals, 62-30, followed by a 44-43 victory against Christopher on Saturday.

Soledad played Tuesday night against the No. 1 seed Valley Christian Warriors of the West Catholic Athletic League in San Jose, the results of which were not available at press time.

Against the Royals, Soledad's Aliyah Velarde scored 18 points with six rebounds, four assists and six steals. Delylah Ocampo scored 13 points with nine rebounds, five assists and six steals. Jessica Morales scored



Michael Ramirez

*Soledad High School's Jessica Morales (#2) provides pressure last Friday in the girls basketball CCS play-in game with the Overfelt Royals.*

12 points, five rebounds, two assists and added five steals. Monique Trujillo finished with eight points and nine rebounds.

On Saturday against Christopher, Velarde had another solid game scoring a team-high 15 points. Ocampo and Landeros joined Velarde in double figures in scoring with 10 points apiece.

Soledad head coach Kevin Pena had high praise for his team in their winning rounds of CCS play.

"Our team defense has been outstanding, and our guard play has really stepped up on the offensive side of the ball," Pena said. "They are reading the floor well and making the right plays, whether that's kicking the ball out to shooters or dropping it off for our bigs. These have been two huge team wins for us."

→ See BASKETBALL, A4

**SOCCER**

# Soledad advances to semifinals, Gonzales falls in quarterfinals

BY MICHAEL RAMIREZ
FREELANCE REPORTER

SALINAS VALLEY — Soledad High boys soccer team advanced to the Central Coast Section Division V semifinals after defeating No. 7 seed Cristo Rey in penalty kicks on Saturday night at Everett Alvarez High School.

The Aztecs are the second seed in the division and will play El Camino on Wednesday night in Soledad. El Camino, the third seed in the division, beat sixth-seed Latino College Prep, 3-1, on Saturday.

Aztecs head coach Genaro Espinoza praised his team for their confident play against Cristo Rey.

"It was a game where we went from playing with nerves and missing confidence and we developed and grew as the game went," Espinoza said. "We had to adapt quickly to the field and the boys showed great resilience and character as they had each other's backs, and that is what won us the game."

Soledad's Jesus Ortiz scored two goals to reach 25 goals for the season and Julian Valdez was credited with two assists. Scoring in penalty kicks were: Joshua Guzman, Adrian Sanchez, Daniel Magana and Jason Rico.

The 2-2 game went into penalty kicks after regulation play and the overtime periods.

Gonzales, the No. 4 seed in Division III, lost in the

quarterfinals at home by a 4-1 score against fifth-seed Christopher of Gilroy on Saturday night at Dick Force Stadium.

"Macario Chavarin scored our goals on an assist from Jorge Uribe," said Spartans head coach Miguel Vidauri. "We couldn't recover after halftime after losing a key player to a head injury."

The Gonzales girls team were seeded No. 8 in Division V

and lost 4-1 to No. 1 seed Terra Nova in Oceana on Saturday. Janelle Garcia scored for the Spartans and Andrea Amador assisted on the goal.

"Not the finish we wanted, but we're proud of the heart, effort and resilience this team showed all season long," said Gonzales head coach Jose Tejeda. "A huge thank you to everyone who drove the two hours to support our girls. Your energy means everything to us."



**Client Focused. Relationship Driven.
A Tradition of Excellence Since 1928.**



NOLAND HAMERLY ETIENNE & HOSS
*Attorneys at Law*

*Agricultural Law • Business & Transactions
Construction • Dispute Resolution • Employment Law
Estates & Trusts • Land Use • Litigation • Nonprofits
Public Agencies • Real Estate*

333 Salinas Street • Salinas, CA 93901 • 831.424.1414

*New Monterey location:*
584 Munras Avenue, Monterey, CA 93940 • 831.373.3622

*nheh.com*

**NOTICE OF SETTLEMENT AND CLAIM PROCESS**
CFMG Contempt Fines – Hernandez v. County of Monterey

### If you were incarcerated at the Monterey County Jail between May 27, 2016 and December 31, 2025, a settlement may provide you with money.

*Please read this notice to learn more and submit a claim.*

*Hernandez v. County of Monterey* is a class action lawsuit about conditions at the Monterey County Jail (the "Jail"). In September 2023, the Court found the Jail's health care provider California Forensic Medical Group, Inc. ("CFMG") in contempt for violating Court orders about medical, mental health, and dental care.

CFMG has agreed to pay **$2,470,000** to people incarcerated at the Jail from May 27, 2016 to December 31, 2025 (the "Settlement Period") to compensate for its violations of Court orders about minimum standards of care at the Jail. This settlement is **only** about CFMG's liability for contempt for violating the Court's orders. The settlement does **not** compensate people for personal medical conditions, and it does **not** affect any individual claims you might have about health issues or injuries you may have experienced at the Jail. Administration costs will be paid from the settlement amount.

**If you were incarcerated at the Jail between May 27, 2016 and December 31, 2025**, you can submit a claim online at www.MontereyJailSettlement.com. To receive money, you must make a claim by **April 20, 2026**. If you were incarcerated during this period and are currently incarcerated, you can request that the money be sent to an address outside the Jail.

**HOW MUCH MONEY WILL I RECEIVE?**

It is estimated that the minimum amount each person will receive may be as much as **$110**, depending on how many valid claims are submitted. This minimum amount will be the full payment if you were incarcerated for 10 days or fewer during the Settlement Period. If you were incarcerated for more than 10 days, you will receive an additional payment based on the number of days you were incarcerated.

The exact amount that each person receives may be changed by a further order of the Court once the number of valid claims is known.

**HOW CAN I LEARN MORE AND SUBMIT A CLAIM?**

**For more information**, go to the settlement website at **www.MontereyJailSettlement.com**. The website has links to the complete settlement documents and a form for you to submit a claim. You can also call **833-319-5926** or contact the attorneys who represent incarcerated people in this case at Rosen Bien Galvan & Grunfeld, LLP, P.O. Box 390, San Francisco, CA 94104.

**WWW.MONTEREYJAILSETTLEMENT.COM
833-319-5926**

**Caring for someone with Alzheimer's isn't always easy.
Cuidar a alguien con Alzheimer no siempre es fácil.**



**ALZHEIMER'S ASSOCIATION®**

**We are here for you. All day. All night.
Estamos aquí para ti. Todo el día. Toda la noche.**

24/7 HELPLINE
**800.272.3900 | alz.org**

24/7 LÍNEA DE AYUDA
**800.272.3900**
alz.org/español

deal in 2024, receiving a boost of about $20 million annually and agreeing to the 14 performance standards, up from five, Foley said.

The company has been fined for failing to meet standards in each of the quarters since the renewed contract was signed, Foley said, paying back a total of $3 million.

Centurion will be paid $212 million this year, Foley said.

Staffing has been an issue, Foley said, but there was no mass walkout of Centurion employees at Jefferson City Correctional Center.

Centurion contracts to provide the equivalent of 73 medically trained employees, mainly nurses, at the prison, Foley said. In the last six months of the year, there were 28 who changed jobs for promotions, resigned or were fired, he said.

In the same period, 19 new employees were hired.

"There was no single month that had more than 10 departures, no single week had more than three, and no single day had more than two," Foley said. "So I am not sure that there was anything that constituted an organized walkout."

Centurion transferred staff into the prison, made sure a supervisory team was on site and hired contract nurses to cover shifts, Foley said.

The performance standards that must be met include having 90% of a list of services completed in a specified period of time. There are also numerical standards for completing evaluations for substance abuse, tests for tuberculosis and referrals for mental health treatment.

The fines imposed on Centurion are for not meeting those standards, Foley said. While the contract has staffing requirements, the department wants the services provided and that is what the fines cover, he said.

That brought another question from Bush, who in addition to his legislative duties works as a registered nurse.

"Is it the same penalties that they've had or are they finding new ways to not live up to their contract?" he asked.

"I would say that it varies," Foley replied.

Jerika White, criminal justice policy manager at Empower Missouri, a nonprofit that advocates for low-income residents, joined Smith for testimony to counter Foley's assertions that meeting numerical goals for service are the right standards. She said conditions are getting worse inside prisons as medical staff are strained and overworked.

"I have spoken to more than 20 nurses and former staff members in the past few weeks and they have all shared major concerns with the quality and safety of medical care," White said. "Eleven nurses stated that they were asked to cover unsafe caseloads, including one nurse who reported that they were assigned to cover an entire wing alone."

Those conditions are also reflected in what current and former nurses at Jefferson City Correctional Center told *The Marshall Project–St. Louis*. Employees alleged that Centurion forced them to work long hours and extra shifts, creating a dangerous environment for them and their patients.

State Rep. Kimberly-Ann Collins of St. Louis, the ranking Democrat on the Corrections Committee, said she believes Centurion's contract should be terminated.

Collins began raising public concerns about conditions in Missouri prisons—and an increasing number of deaths—since she was a freshman lawmaker in 2021.

"I would like to see shorter wait lines for sick call," Collins said to Foley. "I would like to see (calls for help) answered. I would like to not see the thousands of letters that I get that are about medical issues."

**NOTICE OF SETTLEMENT AND CLAIM PROCESS**
CFMG Contempt Fines – *Hernandez v. County of Monterey*

## If you were incarcerated at the Monterey County Jail between May 27, 2016 and December 31, 2025, a settlement may provide you with money.

*Please read this notice to learn more and submit a claim.*

*Hernandez v. County of Monterey* is a class action lawsuit about conditions at the Monterey County Jail (the "Jail"). In September 2023, the Court found the Jail's health care provider California Forensic Medical Group, Inc. ("CFMG") in contempt for violating Court orders about medical, mental health, and dental care.

CFMG has agreed to pay **$2,470,000** to people incarcerated at the Jail from May 27, 2016 to December 31, 2025 (the "Settlement Period") to compensate for its violations of Court orders about minimum standards of care at the Jail. This settlement is **only** about CFMG's liability for contempt for violating the Court's orders. The settlement does **not** compensate people for personal medical conditions, and it does **not** affect any individual claims you might have about health issues or injuries you may have experienced at the Jail. Administration costs will be paid from the settlement amount.

**If you were incarcerated at the Jail between May 27, 2016 and December 31, 2025**, you can submit a claim online at **www.MontereyJailSettlement.com**. To receive money, you must make a claim by **April 20, 2026**. If you were incarcerated during this period and are currently incarcerated, you can request that the money be sent to an address outside the Jail.

### HOW MUCH MONEY WILL I RECEIVE?

It is estimated that the minimum amount each person will receive may be as much as **$110**, depending on how many valid claims are submitted. This minimum amount will be the full payment if you were incarcerated for 10 days or fewer during the Settlement Period. If you were incarcerated for more than 10 days, you will receive an additional payment based on the number of days you were incarcerated.

The exact amount that each person receives may be changed by a further order of the Court once the number of valid claims is known.

### HOW CAN I LEARN MORE AND SUBMIT A CLAIM?

**For more information**, go to the settlement website at **www.MontereyJailSettlement.com**. The website has links to the complete settlement documents and a form for you to submit a claim. You can also call **833-319-5926** or contact the attorneys who represent incarcerated people in this case at Rosen Bien Galvan & Grunfeld, LLP, P.O. Box 390, San Francisco, CA 94104.

## WWW.MONTEREYJAILSETTLEMENT.COM
## 833-319-5926

**NOTICE OF SETTLEMENT AND CLAIM PROCESS**

CFMG Contempt Fines – *Hernandez v. County of Monterey*

# IF YOU WERE INCARCERATED AT THE MONTEREY COUNTY JAIL

between May 27, 2016 & December 31, 2025

## a settlement may provide you with money

*Please read this notice to learn more and submit a claim.*

*Hernandez v. County of Monterey* is a class action lawsuit about conditions at the Monterey County Jail (the "Jail"). In September 2023, the Court found the Jail's health care provider California Forensic Medical Group, Inc. ("CFMG") in contempt for violating Court orders about medical, mental health, and dental care.

CFMG has agreed to pay **$2,470,000** to people incarcerated at the Jail from May 27, 2016 to December 31, 2025 (the "Settlement Period") to compensate for its violations of Court orders about minimum standards of care at the Jail. This settlement is **only** about CFMG's liability for contempt for violating the Court's orders. The settlement does **not** compensate people for personal medical conditions, and it does **not** affect any individual claims you might have about health issues or injuries you may have experienced at the Jail. Administration costs will be paid from the settlement amount.

**If you were incarcerated at the Jail between May 27, 2016 and December 31, 2025**, you can submit a claim online at www.MontereyJailSettlement.com. To receive money, you must make a claim by **April 20, 2026**. If you were incarcerated during this period and are currently incarcerated, you can request that the money be sent to an address outside the Jail.

## How much money will I receive?

It is estimated that the minimum amount each person will receive may be as much as **$110**, depending on how many valid claims are submitted. This minimum amount will be the full payment if you were incarcerated for 10 days or fewer during the Settlement Period. If you were incarcerated for more than 10 days, you will receive an additional payment based on the number of days you were incarcerated.

The exact amount that each person receives may be changed by a further order of the Court once the number of valid claims is known.

## How can I learn more and submit a claim?

For more information, go to the settlement website at **www.MontereyJailSettlement.com**. The website has links to the complete settlement documents and a form for you to submit a claim. You can also call **833-319-5926** or contact the attorneys who represent incarcerated people in this case at Rosen Bien Galvan & Grunfeld, LLP, P.O. Box 390, San Francisco, CA 94104.

**MONTEREYJAILSETTLEMENT.COM**

**833-319-5926**

# AVISO DE ACUERDO Y PROCESO DE RECLAMO

Multas por desacato de CFMG – Hernandez v. County of Monterey

# SI ESTUVO DETENIDO EN LA CÁRCEL DEL CONDADO DE MONTEREY

## entre el 27 de mayo de 2016 y el 31 de diciembre de 2025

## podría obtener dinero de un acuerdo de conciliación

*Lea este aviso para obtener más información y presentar un reclamo.*

*Hernandez v. County of Monterey* es una demanda colectiva sobre las condiciones en la cárcel del condado de Monterey (la "Cárcel"). En septiembre de 2023, el Tribunal declaró al proveedor de atención médica de la Cárcel, California Forensic Medical Group, Inc. ("CFMG"), en desacato por violar las órdenes judiciales relativas a la atención médica, mental y odontológica.

CFMG ha acordado pagar **$2.470.000** a las personas que estuvieron detenidas en la Cárcel entre el 27 de mayo de 2016 y el 31 de diciembre de 2025 (el "Período del Acuerdo") para compensar por sus violaciones de las órdenes judiciales relacionadas con los estándares mínimos de atención en la Cárcel. Este acuerdo se refiere **exclusivamente** a la responsabilidad de CFMG por desacato por violar las órdenes judiciales. El acuerdo **no** indemniza a las personas por sus afecciones médicas personales y no afecta a ningún reclamo individual que usted pueda tener sobre problemas de salud o lesiones que haya sufrido en la Cárcel. Los gastos administrativos se pagarán con cargo al monto del acuerdo.

**Si estuvo detenido en la Cárcel entre el 27 de mayo de 2016 y el 31 de diciembre de 2025**, puede presentar un reclamo en línea en **www.MontereyJailSettlement.com**. Para recibir dinero, debe presentar un reclamo a más tardar el 20 de abril de 2026. Si estuvo detenido durante ese período y se encuentra detenido en la actualidad, puede solicitar que el dinero se envíe a una dirección fuera de la Cárcel.

## ¿CUÁNTO DINERO RECIBIRÉ?

Se estima que la suma mínima que recibirá cada persona puede ascender a **$110**, según la cantidad de reclamos válidos que se presenten. Esta suma mínima será el pago total si estuvo detenido durante 10 días o menos durante el Período del Acuerdo. Si estuvo detenido durante más de 10 días, recibirá un pago adicional en función de la cantidad de días que haya estado detenido.

El importe exacto que reciba cada persona podrá modificarse mediante una nueva resolución del Tribunal una vez que se conozca el número de reclamos válidos.

## ¿CÓMO PUEDO OBTENER MÁS INFORMACIÓN Y PRESENTAR UN RECLAMO?

**Para obtener más información**, visite el sitio web del acuerdo **www.MontereyJailSettlement.com**. El sitio web contiene enlaces a los documentos completos del acuerdo y un formulario para presentar un reclamo. También puede llamar al **833-319-5926** o ponerse en contacto con los abogados que representan a las personas detenidas en este caso en Rosen Bien Galvan & Grunfeld, LLP, P.O. Box 390, San Francisco, CA 94104.

**MONTEREYJAILSETTLEMENT.COM**

**833-319-5926**

# Anyone incarcerated at the Monterey County Jail between May 27, 2016 and December 31, 2025 may be eligible for money from a settlement USA - English ▾

NEWS PROVIDED BY
**Kroll Settlement Administration** →
Feb 17, 2026, 09:30 ET

PHILADELPHIA, Feb. 17, 2026 /PRNewswire/ -- The following statement is being issued by Kroll Settlement Administration regarding *Hernandez v. County of Monterey*, Case No. 13-cv-02354-BLF (N.D. Cal.).

*Hernandez v. County of Monterey* is a class action lawsuit about conditions at the Monterey County Jail (the "Jail"). In September 2023, the Court found the Jail's health care provider California Forensic Medical Group, Inc. ("CFMG") in contempt for violating Court orders about medical, mental health, and dental care.

CFMG has agreed to pay **$2,470,000** to people incarcerated at the Jail from May 27, 2016 to December 31, 2025 (the "Settlement Period") to compensate for its violations of Court orders about minimum standards of care at the Jail. This settlement is **only** about CFMG's liability for contempt for violating the Court's orders. The settlement does **not** compensate people for personal medical conditions, and it does **not** affect any individual claims you might have about health issues or injuries you may have experienced at the Jail. Administration costs will be paid from the settlement amount.

**If you were incarcerated at the Jail between May 27, 2016 and December 31, 2025**, you can submit a claim online at **www.MontereyJailSettlement.com**. To receive money, you must make a claim by **April 20, 2026**. If you were incarcerated during this period and are currently incarcerated, you can request that the money be sent to an address outside the Jail.

It is estimated that the minimum amount each person will receive may be as much as **$110**, depending on how many valid claims are submitted. This minimum amount will be the full payment if you were incarcerated for 10 days or fewer during the Settlement Period. If you were incarcerated for more than 10 days, you will receive an additional payment based on the number of days you were incarcerated.

The exact amount that each person receives may be changed by a further order of the Court once the number of valid claims is known.

For more information, visit **www.MontereyJailSettlement.com** or call **833-319-5926**.

SOURCE Kroll Settlement Administration

# Cualquier persona que haya estado detenida en la cárcel del condado de Monterey entre el 27 de mayo de 2016 y el 31 de diciembre de 2025 puede tener derecho a recibir dinero de un acuerdo de conciliación. USA - español ▾

NEWS PROVIDED BY
**Kroll Settlement Administration �m**
Feb 17, 2026, 09:30 ET

FILADELFIA, Pensilvania, 17 de febrero de 2026 /PRNewswire-HISPANIC PR WIRE/ -- La siguiente declaración ha sido emitida por Kroll Settlement Administration en relación con *Hernandez v. County of Monterey*, Caso Nro. 13-cv-02354-BLF (N.D. Cal.).

*Hernandez v. County of Monterey* es una demanda colectiva sobre las condiciones en la cárcel del condado de Monterey (la "Cárcel"). En septiembre de 2023, el Tribunal declaró al proveedor de atención médica de la Cárcel, California Forensic Medical Group, Inc. ("CFMG"), en desacato por violar las órdenes judiciales relativas a la atención médica, mental y odontológica.

CFMG ha acordado pagar **$2.470.000** a las personas que estuvieron detenidas en la Cárcel entre el 27 de mayo de 2016 y el 31 de diciembre de 2025 (el "Período del Acuerdo") para compensar por sus violaciones de las órdenes judiciales relacionadas con los estándares mínimos de atención en la Cárcel. Este acuerdo se refiere **exclusivamente** a la responsabilidad de CFMG por desacato por violar las órdenes judiciales. El acuerdo **no** indemniza a las personas por sus afecciones médicas personales y **no** afecta a ningún reclamo individual que usted pueda tener sobre problemas de salud o lesiones que haya sufrido en la Cárcel. Los gastos administrativos se pagarán con cargo al monto del acuerdo.

**Si estuvo detenido en la Cárcel entre el 27 de mayo de 2016 y el 31 de diciembre de 2025**, puede presentar un reclamo en línea en **www.MontereyJailSettlement.com**. Para recibir dinero, debe presentar un reclamo a más tardar el **20 de abril de 2026**. Si estuvo detenido durante ese período y se encuentra detenido en la actualidad, puede solicitar que el dinero se envíe a una dirección fuera de la Cárcel.

Se estima que la suma mínima que recibirá cada persona puede ascender a **$110**, según la cantidad de reclamos válidos que se presenten. Esta suma mínima será el pago total si estuvo detenido durante 10 días o menos durante el Período del Acuerdo. Si estuvo detenido durante más de 10 días, recibirá un pago adicional en función de la cantidad de días que haya estado detenido.

El importe exacto que reciba cada persona podrá modificarse mediante una nueva resolución del Tribunal una vez que se conozca el número de reclamos válidos.

Para obtener más información, visite **www.MontereyJailSettlement.com** o llame al **833-319-5926**.

FUENTE Kroll Settlement Administration