United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JESSE HERNANDEZ, et al., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; AND CALIFORNIA FORENSIC MEDICAL GROUP, INC.,

Defendants.

Case No.  13-cv-02354-BLF

ORDER GRANTING FINAL APPROVAL OF SETTLEMENT OF CFMG'S CIVIL CONTEMPT LIABILITY; AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUND

[Re:  ECF 1314]

This class action was filed more than a dozen years ago by inmates ("Plaintiffs") seeking relief from constitutionally deficient conditions at the Monterey County Jail ("Jail").  The Jail is operated by Defendants County of Monterey and the Monterey County Sheriff's Office (collectively, "the County").  During the relevant period, the County contracted with Defendant California Forensic Medical Group, Inc. ("CFMG") to provide health care to Jail inmates.

After two years of litigation, the parties entered into a court-approved Settlement Agreement and thereafter developed court-approved Implementation Plans setting forth each defendant's areas of responsibility for improving conditions at the Jail.  *See* Final Approval Order and Ex. A (Settlement Agreement), ECF 494; County Implementation Plan, ECF 514; CFMG Implementation Plan, ECF 532.  Unfortunately, the settlement did not bring about the changes in Jail conditions anticipated by Plaintiffs.  Instead, Plaintiffs' counsel found themselves drawn into a decade-long struggle to enforce Defendants' compliance with their agreed-upon obligations.

United States District Court
Northern District of California

In 2023, this Court found CFMG in civil contempt for failing to comply with forty-three requirements of the Settlement Agreement and the CFMG Implementation Plan. *See* Contempt Order, ECF 838. The Court imposed conditional monetary contempt sanctions and granted CFMG six months to purge the contempt and thereby avoid paying those sanctions. *See id*. Failure to meet the purge conditions would subject CFMG to liability for civil contempt sanctions of $25,000 for each noncompliant requirement plus additional sanctions of $25,000 per noncompliant requirement after each future round of reports by court-appointed neutral monitors. At the conclusion of the purge period, the neutral monitors reported continued, sustained violations of the Settlement Agreement and the CFMG Implementation Plan in virtually all categories of medical care. After spending months arguing that it had cured or soon would cure the deficiencies in health care at the Jail, CFMG ultimately conceded that it could not show compliance. The parties then agreed to mediate CFMG's liability for its sustained noncompliance.

Plaintiffs and CFMG filed a stipulation for settlement of CFMG's contempt liability in the amount of $2,470,000. *See* Stip., ECF 981. With the Court's guidance, Plaintiffs created a plan for notice and distribution of the settlement fund to current and former inmates who were deprived of adequate health care at the Jail as a result of CFMG's conduct. As part of that process, the Court received and considered hundreds of letters from current and former Jail inmates. *See, e.g.*, Letters, ECF 1009-1256, 1258-1266.

The Court held a final approval hearing on June 18, 2026, and thereafter issued an interim order approving both the settlement of CFMG's contempt liability in the amount of $2,470,000 and Plaintiffs' proposed plan for distribution of the settlement fund. *See* Minute Entry, ECF 1316; Interim Order, ECF 1319. The interim approval order was issued to expedite distribution of the settlement fund pending the Court's issuance of a lengthier final approval order.

For the reasons discussed below, the Court HEREBY GRANTS FINAL APPROVAL of the settlement of CFMG's contempt liability in the amount of $2,470,000. The Court HEREBY AUTHORIZES DISTRIBUTION of the settlement fund to inmates and former inmates of the Jail pursuant to the distribution plan proposed by Plaintiffs in their supplemental brief filed on June 10, 2026. *See* Pls.' Suppl. Br., ECF 1314.

United States District Court
Northern District of California

## I.    BACKGROUND

*Class Action Filed in May 2013*

Plaintiffs filed this class action in May 2013 on behalf of themselves and all other similarly situated Jail inmates, alleging that the County and CFMG failed to provide adequate health care, reasonable accommodations for disabilities, and protection from violence at the Jail.  *See* Compl., ECF 1.  The Court certified a class defined to include "all adult men and women who are now, or will be in the future, incarcerated in Monterey County Jail[.]"  Order at 50, ECF 431.

*Settlement Agreement Approved in 2015 and Implementation Plans Approved in 2016*

In May 2015, Plaintiffs, Defendant County, and Defendant CFMG entered into a Settlement Agreement that was approved by the Court.  Among other things, the Settlement Agreement provided for Defendants' development of Implementation Plans for improvement of care, services, programs, and activities at the Jail.  *See* Settlement Agreement ¶ 31.  The County developed an Implementation Plan addressing Intake Screening, Safety Cell and Sobering Cell monitoring, Custody Staffing, Mental Health, Safety and Violence Reduction, Suicide Prevention, ADA, Health and Safety Checks, and Compliance.  *See* County Implementation Plan.  CFMG separately developed an Implementation Plan addressing Medical Care, Mental Health Care, Dental Care, and related areas.  *See* CFMG Implementation Plan.  The Court approved both plans with modifications in May 2016.  *See* Order, ECF 549.

The Implementation Plans developed by Defendants are enforceable by the Court "as part of the Settlement Agreement."  Settlement Agreement ¶ 34.  The Settlement Agreement provides for the appointment of neutral experts to monitor Defendants' compliance with the Settlement Agreement and Implementation Plans.  *See id*. ¶¶ 35-43.  The Court did appoint neutral monitors and authorized them to conduct site visits and prepare written reports regarding Defendants' compliance.  *See* Order, ECF 563.  The Court retains jurisdiction to enforce the terms of the Settlement Agreement and Implementation Plans.  *See* Settlement Agreement ¶¶ 44, 46-47.

*Defendants' Failure to Comply with Settlement Agreement and Implementation Plans*

Between February 2020 and December 2022, Plaintiffs gave the County and CFMG multiple written notices that they were not in substantial compliance with the Settlement

Agreement and Implementation Plans.  *See* 2020 Joint Status Report and Order, ECF 671; 2022 Joint Status Report and Order, ECF 751; Dec. 16, 2022 Letter, ECF 825-8.  Plaintiffs and the County resolved their issues through mediation with Magistrate Judge Nathanael M. Cousins, but Plaintiffs and CFMG were not able to reach resolution.  *See* Minute Entry, ECF 771.

*Civil Contempt Sanctions Imposed against CFMG in September 2023*

In May 2023, Plaintiffs filed a motion to enforce the Settlement Agreement and the CFMG Implementation Plan.  *See* Pls.' Mot. to Enforce, ECF 825 (unsealed version of ECF 788).  Plaintiffs asked the Court to issue coercive civil contempt sanctions against CFMG as a means to compel CFMG's compliance with the Settlement Agreement and the CFMG Implementation Plan.  *See id*.

After receiving extensive briefing and conducting a hearing, the Court issued an order granting Plaintiffs' motion in September 2023.   The Court found that CFMG was not in compliance with forty-three requirements of the Settlement Agreement and the CFMG Implementation Plan.  *See* Contempt Order, ECF 838.  The Court imposed conditional civil contempt sanctions against CFMG in the amount of $25,000 per each of those forty-three requirements.  *See id*. at 25-26.  CFMG was granted six months to purge the contempt and thereby avoid paying the sanctions.  *See id*.  The Court granted Plaintiffs leave to seek additional civil contempt sanctions in the amount of $25,000 per requirement after the filing of each round of monitoring reports.  *See id*. at 27.

*Litigation until October 2024 re CFMG's Compliance*

The parties thereafter engaged in protracted litigation regarding the extent to which CFMG had come into compliance (if at all) with the above-referenced forty-three requirements of the Settlement Agreement and the CFMG Implementation Plan.  The Court set deadlines for discovery, meet-and-confer, and settlement discussions with Magistrate Judge Cousins; held multiple status conferences; and set a two-day evidentiary hearing for December 2024.  *See* Order, ECF 900.  The parties submitted more than 1,000 pages of briefing and exhibits in advance of the evidentiary hearing.  *See, e.g.*, ECF 905-909, 913, 919-921, 939-941.  However, the hearing was vacated in October 2024 after the parties submitted a stipulation in which CFMG conceded it

could not prove compliance with its obligations under the Settlement Agreement and the CFMG Implementation Plan.  *See* Stip., ECF 944.  At the parties' request, the matter was referred to Magistrate Judge Cousins to mediate resolution of the remaining issues relating to CFMG's civil contempt liability.  *See* Order, ECF 945.

*Notice of Bankruptcy Stay filed in November 2024*

Resolution of CFMG's civil contempt liability was derailed when CFMG filed a notice of bankruptcy stay in November 2024, arising from the bankruptcy of an entity called Wellpath Holdings, Inc. ("Wellpath") and certain of its debtor affiliates.  *See* Notice of Stay, ECF 948.  The parties and the Court understood Wellpath to be Defendant CFMG operating under a new name.  *See* Order, ECF 950.  In June 2025, CFMG filed a notice of discharge of the bankruptcy stay as to "non-party Wellpath."  Notice, ECF 972.  It became clear that Wellpath was not the same entity as CFMG.

*Settlement of CFMG's Civil Contempt Liability in August 2025*

On August 22, 2025, Plaintiffs and CFMG filed a joint stipulation for resolution of CFMG's civil contempt liability.  *See* Stip., ECF 981.  The parties proposed a settlement under which CFMG's would pay contempt sanctions in the amount of $2,470,000 to a community organization for the establishment of a "Monterey County Jail Litigation Fund" that in turn would fund nonprofit organizations whose work benefits Jail inmates.  *See id*.

The Court rejected that approach, declining to sign the parties' stipulation and immediately issuing an order clarifying that any resolution of contempt sanctions imposed by the Court would require approval of the Court, and that distribution of funds would be approved by the Court and not delegated to a nonprofit organization.  *See* Order, ECF 982.  The Court also expressed concern about the proposed payment of the contempt sanctions to an organization unknown to the Court, questioning whether that proposal was in the best interest of the class.  *See id*.  The Court directed the parties to file a joint status report providing further information about the proposed settlement of CFMG's contempt liability.  *See id*.

The parties filed the requested status report on September 2, 2025, advising that CFMG would no longer be providing health care at the Jail after the expiration of its contract at the end of

5

2025.  *See* Joint Status Report, ECF 983.  Given CFMG's impending exit in a matter of months, Plaintiffs and CFMG had negotiated a settlement of all potential civil contempt fines against CFMG through December 31, 2025.  *See id*.  Upon receipt of that status report, the Court requested briefing addressing what notice (if any) should be provided to the class regarding the proposed settlement of CFMG's contempt liability.  *See* Order, ECF 984.  The Court also set a hearing for October 16, 2025 at 9:00 a.m.  *See id*.

At the October 16, 2025 hearing, the Court engaged in a lengthy discussion with counsel about the proposed settlement of CFMG's civil contempt liability, whether notice should be provided to the class, and related issues.  *See* Hrg. Tr. 10/16/25, ECF 995.  The Court and the parties agreed that Federal Rule of Civil Procedure 23 does not apply to the settlement of CFMG's liability for civil contempt, but the Court determined that there would be significant benefit to it and counsel if class members were invited to comment on distribution of the contempt sanctions that resulted from the inadequate medical care they received at the Jail.  *See id*. at 8:9-11:2.  The Court and Plaintiffs' counsel also agreed that any civil contempt sanctions paid by CFMG under the settlement belonged to the Plaintiff class.  *See id*. at 11:3-16.  It was agreed that Plaintiffs' counsel would develop a plan for giving notice of the settlement to the class and submit it to the Court for approval.  *See id*. at 12:15-13:4.  The Court made clear that it anticipated a robust community-based notice plan.  *See id*. at 10:4-16.

*Notice to Current and Former Jail Inmates of Settlement of CFMG's Contempt Liability*

Plaintiffs submitted their proposed class notice plan to the Court on October 29, 2025.  *See* Pls.' Proposed Class Notice Plan, ECF 1002.  Plaintiffs indicated that after researching the matter, they had concluded that all current and former inmates at the Jail during the period of CFMG's contemptuous conduct "are entitled to the benefits of the contempt fines issued by the Court[.]" *See id*. at 1.  In Plaintiffs' view, that class includes all inmates at the Jail between May 27, 2016, the date the CFMG Implementation Plan was approved, and December 31, 2025, the last day of CFMG's contract with the County.  *See id*. at 2.  Plaintiffs laid out a plan for giving notice to that "Settlement Class" through postings at the Jail and through community-based organizations.  *See id*. at 2-5.  Plaintiffs also submitted a proposed one-page written notice advising the Settlement

United States District Court
Northern District of California

Class of the proposed settlement of CFMG's civil contempt liability and requesting input as to who should receive the $2,470,000 settlement fund. *See* Pls.' Proposed Notice, ECF 1002-1. The notice stated that under Option 1 "[t]he money would be given to people who were incarcerated at the Jail between May 27, 2016 and December 31, 2025," while under Option 2 "[t]he money would go to the Community Foundation for Monterey County, a nonprofit organization." *Id*. The Court approved Plaintiffs' proposed notice plan on October 31, 2025. *See* Order, ECF 1004.

*Overwhelming Response of Inmates in November and December 2025*

Remarkably, hundreds of current and former inmates responded to the notice by letter. *See, e.g.*, Letters, ECF 1009-1256, 1258-1266. Unsurprisingly, the vast majority of them clearly indicated a strong preference for direct distribution of the settlement fund to individual members of the Settlement Class. *See id*.

Many of inmate letters expressed sentiments similar to the following: "I propose option 1 and for the money from the settlement to be shared among the inmates from the jail, because we are the ones that have had to suffer these unjust actions from the jail and its bad medical staff." Lopez Letter, ECF 1236; *see also* Williams Letter, ECF 1015 ("I vote us inmates going through this hazardist conditions and medical deprivation due to medical needs not being met should be paid not anyone else!"); Michmali Letter, ECF 1187 ("I choose option 1 that the money should go to the inmates that delt with the corrupt medical staff."); Gonzales Letter, ECF 1205 ("I request option 1 fund to inmates, and suffered condition in (Salinas) Monterey County Jail. The medical care is very poor I almost died[.]"); Cruz Letter, ECF 1234 ("So option 1 would be best where individuals who were incarcerated receive a sum of money for the pain and suffering we had to endure here in this jail."); Sanchez Letter, ECF 1244 ("I feel that option #1 would be best to choose from for all the inmates who suffered in this").

Some letters simply expressed a preference for Option 1, distribution of the civil contempt sanctions directly to inmates, without providing reasons. *See, e.g.*, Mason Letter, ECF 1016 ("I feel option 1 is good for me."); Chavez Letter, ECF 1261 ("I vote for option 1."); Perez Letter, ECF 1281 ("I would like the court to impose OPTION ONE in the above entitled case before it."); Rodriguez Letter, ECF 1292 ("[T]he settlement is fair I believe the best option would be to give

7

the money to the people who were incarcerated"). Finally, some letters described inmates' experiences at the Jail without expressly addressing distribution of the settlement fund. *See, e.g.*, Meneses Letter, ECF 1018 ("My experience here in Monterey County Jail is to deal with people dying and grief of seeing girls rolled in a body bags I waz depressed for a long time."); Turner Letter, ECF 1053 ("I witnessed an inmate have a severe sizure and due to the lack of response by medical I was forced to intervene and help the inmate by turning on his side and placing a tshirt in his mouth so he wouldn't injury himself.").

*Preliminary Approval of Settlement of CFMG's Contempt Liability in January 2026*

On January 15, 2026, the Court held a hearing on a joint motion brought by Plaintiffs and CFMG for approval of the proposed settlement of CFMG's civil contempt liability. *See* Minute Entry, ECF 1275. The parties proposed payment of $2,470,000 by CFMG to settle its contempt liability, distribution of that settlement fund directly to members of the Settlement Class, appointment of Kroll Settlement Administration LLC ("Kroll") as the settlement administrator, and issuance of a claim form pursuant to a proposed notice plan. *See* Pls.' Mot., ECF 1257. The Court granted the joint motion for preliminary approval of the settlement in a written order issued January 26, 2026. *See* Order, ECF 1288. The order reiterated the Court's prior determination that Rule 23 does not apply to the settlement of CFMG's contempt liability, but it indicated that the Court would evaluate the proposed settlement under the standards set forth in Rule 23(e). *See id*.

*Final Approval Hearing of Settlement of CFMG's Contempt Liability in June 2026*

The Court held a final approval hearing regarding the settlement of CFMG's civil contempt liability on June 18, 2026. *See* Minute Entry, ECF 1316. Plaintiffs filed a supplemental brief in advance of that hearing along with a supplemental declaration of Kroll employee Tara Trapani and a supplemental declaration of Plaintiffs' counsel Ben Hattem. *See* Pls.' Suppl. Br., ECF 1314; Suppl. Trapani Decl., ECF 1314-1; Suppl. Hattem Decl., ECF 1314-2.

The County provided 35,979 unique records of Settlement Class members who were incarcerated at the Jail between May 27, 2016 and December 31, 2025. *See* Suppl. Trapani Decl. ¶¶ 4, 11. Kroll established a settlement website and toll-free settlement hotline that has received more than 1,000 calls. *See id*. ¶ 7. Kroll also conducted a digital media campaign; conducted

outreach through community organizations, churches, and corrections staff; and provided direct mail notice to 1,158 Settlement Class members housed in California State prisons. *See id.* ¶¶ 9-11. Kroll received 2,814 settlement claims, a claims rate of approximately 7.8%. *See id.* ¶ 13. There were 507 paper claim forms received through the mail, 1,370 claim forms filed through the settlement website, 260 letters received by the Court, and 677 claims submitted through Jail tablets. *See id.* Kroll estimates that there are 2,094 valid claims. *See id.* ¶¶ 15-16.

Plaintiffs propose that after deducting approximately $146,000 in administration costs, one-third of the settlement fund should be allocated to pay a baseline minimum amount to all members of the Settlement Class. The remaining two-thirds of the settlement fund would be allocated to pay additional *per diem* amounts to claimants who were incarcerated for more than ten days. No attorneys' fees would be paid from the settlement fund, and no portion of the settlement fund would revert to CFMG.

Plaintiffs estimate that the baseline award per claimant could be as high as $391 and that claimants who were incarcerated for more than ten days would receive an additional *per diem* amount of approximately $1.95 per day beyond the tenth day of incarceration. *See* Interim Order at 3, ECF 1319. Those figures are slightly higher than the baseline award and additional *per diem* estimated by Kroll at the time Plaintiffs' supplemental briefing was filed. Plaintiff's counsel indicated at the hearing that the largest award would likely be approximately $6,000. About a dozen claimants would receive more than $4,000 and about 125 claimants would receive awards of $2,000 or more. *See* Suppl. Trapani Decl. ¶ 18. All other claimants would receive checks for amounts between the baseline of $391 and $2,000. *See id.*; Interim Order at 3.

*Interim Approval Order Issued in June 2018*

At the June 18, 2026 hearing, the Court stated that it intended to grant the motion for final approval of the proposed settlement and to authorize distribution of the settlement fund in the manner proposed by Plaintiffs, but that it would take some time to issue a reasoned final approval order. The Court directed Plaintiffs' counsel to submit a proposed interim approval order to expedite distribution of the settlement fund. The Court signed the interim approval order on June 22, 2026. *See* Interim Order, ECF 1319.

**II.    DISCUSSION**

Evaluation of Plaintiffs' motion for final approval of the proposed settlement and distribution plan involves two inquiries.  First, the Court must determine whether CFMG's $2,470,000 payment to settle its civil contempt liability properly may be distributed to members of the Settlement Class.  Second, the Court must determine whether the proposed settlement is fair. As noted above, Rule 23 does not control here, but in the Court's view the rule provides a useful framework in the absence of other applicable guidance regarding settlement of civil contempt sanctions in a class action.

**A.    The Settlement Fund may be Distributed to the Settlement Class**

There is a surprising dearth of authority addressing either settlement of civil contempt liability or distribution of civil contempt sanctions to individual class members in a class action. The Court therefore discusses the general legal standards governing courts' civil contempt power and then applies those standards to the facts of the present case.

**1.    Legal Standard**

"A court's contempt powers are broadly divided into two categories: civil contempt and criminal contempt." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016). "Criminal contempt sanctions are 'punitive' – meant to punish prior offenses." *Oracle USA, Inc. v. Rimini St., Inc.*, 81 F.4th 843, 858 (9th Cir. 2023) (citation omitted).  Generally, criminal contempt sanctions "may not be imposed without the constitutional protections afforded ordinary criminal proceedings." *Id*.  "In contrast, the purpose of civil sanctions is to 'coerce' compliance with a court order or to 'compensate' the aggrieved party for sustained losses." *Id*. (citing *Shell*, 815 F.3d at 629).  Fewer procedural protections for such civil contempt sanctions have been required.  *See id*. at 858.

Coercive civil contempt sanctions generally take the form of conditional fines payable to the court.  *See Shell*, 815 F.3d at 629.  A contemnor may avoid payment of such fines by purging the contempt, that is, by coming into compliance with the court's order.  *See id*.  The ability to purge distinguishes a coercive civil contempt sanction from a criminal contempt sanction, which cannot be avoided by coming into compliance.  *See id*. "Thus, the ability to purge is perhaps the

United States District Court
Northern District of California

most definitive characteristic of coercive civil contempt." *Id*.

Compensatory civil contempt sanctions are remedial. *See Shell*, 815 F.3d at 629. They are intended to compensate the contemnor's adversary for injuries suffered as a result of the contemptuous conduct. *See id*. Thus, compensatory civil contempt sanctions typically take "the form of unconditional monetary sanctions paid to the aggrieved party." *Oracle*, 81 F.4th at 859 (internal quotation marks and citation omitted). "Compensatory awards are limited to actual losses *sustained as a result of the contumacy*." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (internal quotation marks and citation omitted).

A civil contempt sanction can be coercive, compensatory, or both. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."); *Donallco*, 787 F.2d at 1380 ("Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both."). A district court should specify whether a contempt sanction is intended to be coercive or compensatory. *See Donallco*, 787 F.2d at 1380. If the contempt sanction is both coercive and compensatory, the district court should specify the amount awarded under each theory and split payment of the contempt sanction between the court and the contemnor's adversary accordingly. *See id*.

### 2. Analysis

Applying these legal standards, there is no question that the civil contempt sanctions imposed on CFMG in 2023 were coercive in nature. As discussed above, the contempt sanctions were imposed as part of the Court's order granting Plaintiffs' motion to enforce the Settlement Agreement and the CFMG Implementation Plan. *See* Pls.' Mot. to Enforce, ECF 825 (unsealed version of ECF 788); Contempt Order, ECF 838. Plaintiffs asserted that "[f]or more than seven and a half years, [CFMG][1] has defied its Court-ordered obligations and provided systemically

---

[1] Plaintiffs' motion to enforce refers to CFMG as "Wellpath," because at that time Plaintiffs and the Court were under the mistaken impression that CFMG had changed its name to Wellpath. To

11

inadequate care to people incarcerated at the Monterey County Jail[.]" Pls.' Mot. to Enforce at 1. It was Plaintiffs' position that "[CFMG]'s ongoing refusal to comply with this Court's orders, coupled with the continued harms to incarcerated people, shows that only the threat of monetary sanctions will force private equity-owned [CFMG] to take its obligations seriously." *Id*. at 3.

The Court agreed, opining that "[CFMG] has left it no viable option but to impose coercive sanctions in the form of a conditional fine in the hope that a threat to its bottom line may galvanize [CFMG]'s compliance where other measures have failed." Contempt Order at 25-26. The Court found CFMG to be in civil contempt of forty-three requirements of the Settlement Agreement and the CFMG Implementation Plan, and imposed "a conditional coercive civil contempt fine on [CFMG] in the amount of $25,000 per each of the forty-three requirements[.]" *Id*. at 26. The Court granted CFMG six months to purge the contempt, and thereby avoid paying the sanctions, by coming into substantial compliance with each and every one of the forty-three requirements as to which CFMG had been found to be out of compliance. *See id*. The Court granted Plaintiffs leave to seek additional civil contempt sanctions in the amount of $25,000 per requirement after the filing of each round of monitoring reports. *See id*. at 27. Those sanctions were to be paid to the Court. *See id*.

While the civil contempt sanctions clearly were coercive when imposed against CFMG in 2023, "it is possible for sanctions that were initially imposed for a civil, coercive purpose to change over time[.]" *Shell*, 815 F.3d at 629. "This is because, in order to categorize the contempt properly, a court must look to the purpose of the contempt at the time it is *enforced*, rather than at the time it is *imposed*." *Id*. at 630. In *Shell*, the Ninth Circuit considered whether fines that began as coercive civil contempt sanctions could evolve into criminal contempt sanctions. *See id*. at 629-30. The *Shell* court observed that the ability of the contemnor to comply with a coercive order may change over time, and that if that happens continued enforcement of a monetary sanction would constitute punishment implicating the due process protections required for criminal contempt proceedings. *See id*. at 630-31.

---

avoid confusion, the Court refers to the Jail health care provider as "CFMG" throughout this order even where the underlying documents refer to the provider as "Wellpath."

In the present case, there is no suggestion that the coercive civil contempt sanctions imposed by the Court in 2023 have evolved into criminal contempt sanctions. However, it is clear from the record that the sanctions at issue have evolved from coercive sanctions to compensatory sanctions. At the first hearing on the matter following the parties' proposal to settle CFMG's contempt liability for $2,470,000, both the Court and Plaintiffs' counsel expressed the view that the settlement "belongs to the Plaintiff[s], not the Court." Hrg. Tr. 10/16/25 at 11:8-10, ECF 995. The parties and the Court thereafter proceeded on the understanding that current and former inmates of the Jail "are entitled to the benefits of the contempt fines issued by the Court[.]" Pls.' Proposed Class Notice Plan at 1, ECF 1002. The only question was whether that benefit to the class would take the form of distribution of the settlement fund to a nonprofit organization for programs designed to help inmates and former inmates of the Jail, or direct distribution to inmates and former inmates of the Jail. *See id.* at 3. Based on letters received from hundreds of inmates and former inmates of the Jail, Plaintiffs' counsel abandoned their initial suggestion that the $2,470,000 be distributed to a *cy pres* recipient and instead proposed direct distribution of the fund to the Settlement Class. *See* Pls.' Mot. at 5 n.1, ECF 1257. CFMG did not take a position on how the settlement fund should be distributed. *See id.*

The *sub silentio* decision to treat CFMG's settlement payment as compensatory civil contempt sanctions rather than coercive civil contempt sanctions is consistent with the change in the factual landscape at the time the settlement was proposed and then fine-tuned. The parties advised the Court in a status report filed September 2, 2025 that CFMG would no longer be providing health care at the jail after the expiration of its contract with the County on December 31, 2025. *See* Joint Status Report, ECF 983. In light of that development, any continued efforts to compel CFMG's compliance with its obligations under the Settlement Agreement and the CFMG Implementation Plan would have been pointless. The only civil contempt sanctions that could have been imposed on CFMG were compensatory. A court retains the authority to award compensatory sanctions to the plaintiffs after a coercive sanction would no longer serve any purpose. *See Shell*, 815 F.3d at 630 ("Once an injunction has been terminated, a court may still award compensation to the plaintiff as a result of injuries caused by its opponent's contumacy. But

13

United States District Court
Northern District of California

a coercive sanction would no longer serve any purpose[.]").  The Court now states expressly the understanding that has underpinned the conduct of Plaintiffs' counsel, the current and former inmates who have taken the time to give their perspectives in this matter, and the Court since the settlement of CFMG's civil contempt liability was proposed:  the coercive civil contempt sanctions imposed on CFMG in 2023 have evolved into compensatory civil contempt sanctions. CFMG's payment of $2,470,000 in settlement of its civil contempt liability is deemed to be payment of compensatory civil contempt sanctions.  "[A] district court retains discretion to establish appropriate sanctions" based on the facts before it.  *United States v. Bright*, 596 F.3d 683, 696 (9th Cir. 2010).

Compensatory contempt sanctions must be limited to the actual losses resulting from the contumacy.  *See Donallco*, 787 F.2d at 1380.  As noted herein, the Court found that CFMG was not in compliance with forty-three separate requirements relating to health care in the Jail.  Those requirements include:  medical, mental health, and dental staffing; medical intake screening; sick call; chronic care; health care maintenance; continuity of care; outside care referrals; treatment of intoxicated patients; treatment of communicable diseases; pharmaceutical practices; medical quality assurance; initial mental health screening; nursing rounds in administrative segregation; treatment planning; chronic care; acute care; outpatient services; psychiatric follow-up visit intervals; consideration of mental health in discipline; segregation placement screenings; mental health programming in segregation; involuntary medication; suicide risk assessment; medical records; corrective action plans; provider visits to holding and isolation cells; mental health quality assurance; dental intake screening; initial health inventory; dental training for intake staff; treatment for urgent and emergent conditions; dental sick call; chronic care; comprehensive care; restorative and palliative care; extractions; specialty care referrals; endontics; periodontics; informed consent; sanitary treatment space; electronic medical records; and dental quality assurance.  *See* Contempt Order at 9-24.

The Court has no difficulty finding that inmates who were incarcerated at the Jail under those conditions suffered actual losses as a result of CFMG's failure to comply with the Settlement Agreement and the CFMG Implementation Plan.  Thus, to the extent the proposed

distribution of the settlement fund must be commensurate with the losses suffered by the members of the Settlement Class, the Court determines that to be the case here.  The baseline award of $391 per claimant constitutes reasonable compensation for living under the above conditions for up to ten days.  The per diem award of an additional $1.95 for each day beyond the tenth day of incarceration is quite modest given the severity of the deficiencies in health care caused by CFMG's contumacy, although as discussed below all members of the Settlement Class will receive a substantial benefit.

Accordingly, the Court finds that CFMG's $2,470,000 settlement payment is a compensatory civil contempt sanction that properly may be distributed to members of the Settlement Class.

### B.    The Settlement is Fair, Reasonable, and Adequate

The Court next evaluates the adequacy of the proposed settlement of CFMG's contempt liability using the Rule 23(e) factors as guideposts.  The Court finds that notice to the Settlement Class was adequate under Rule 23(e)(1).  In fact, the claims rate of 7.8% indicates that the notice was excellent.

The Court also finds that the proposed settlement is fair, reasonable, and adequate after consideration of the factors enumerated in Rule 23(e)(2).  Plaintiffs' counsel has diligently and zealously represented the class throughout the case, including with respect to issues relating to CFMG's civil contempt liability.  The proposed settlement agreement was negotiated at arm's length.  The proposed settlement confers substantial benefits on the Settlement Class, especially considering CFMG's historical intransigence and recent disassociation from the Jail.  The proposed settlement treats the members of the Settlement Class equally relative to each other by awarding all class members a substantial baseline award of $391 and thereafter apportioning the settlement fund based on the length of time each claimant spent at the Jail and subject to the deficient conditions cause by CFMG's conduct.

Finally, the Court finds that the objections submitted by members of the Settlement Class do not provide any basis to reject the proposed settlement under Rule 23(e)(5).  A number of the objectors simply assert that the proposed settlement is "unfair" without explaining why they

United States District Court
Northern District of California

15

formed that opinion.  *See, e.g.*, Objections, ECF 1155-1158, 1160, 1029.  Other objectors assert that the proposed settlement is unfair based on a bare assertion that the settlement amount should be higher.  *See, e.g.*, Objections, ECF 1012-1013, 1018, 1073, 1076, 1078.  Some of the objectors arguing for a higher settlement amount offer details regarding the ways in which they have suffered mentally or physically due to Jail conditions.  *See, e.g.*, Objection, ECF 1018, 1035, 1068, 1074.  A desire for a larger settlement fund does not constitute a meritorious objection to a proposed settlement.

In summary, after evaluating the proposed settlement of CFMG's civil contempt liability under the Rule 23(e) factors, the Court finds the proposed settlement to be fair, reasonable, and adequate, and an excellent result for the Settlement Class.

## III.   ORDER

(1)   The Court GRANTS final approval of the proposed settlement of CFMG's contempt liability in the amount of $2,470,000.

(2)   The Court AUTHORIZES distribution of the settlement fund to inmates and former inmates of the Jail pursuant to the distribution plan proposed by Plaintiffs and set forth in detail in the Interim Order issued on June 22, 2026 (ECF 1319).

(3)   The objections received by the Court are OVERRULED.

(4)   A status conference has been set for October 29, 2026 at 9:00 a.m. to address any remaining issues regarding distribution of the settlement fund.

Dated:  July 14, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

16